APPEAL NO. 22-5113

# In the United States Court of Appeals for the Tenth Circuit

UNITED STATES                                    PLAINTIFF/APPELLEE

v.                              (OKND 4:09-cr-43 SPF-2)
                                (OKWD 5:22-cr-357 F-1)

OSCAR STILLEY                                    DEFENDANT/APPELLANT

AN APPEAL FROM THE ORDER AND JUDGMENT 11-23-2022
REVOKING SUPERVISED RELEASE, ETC

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

THE HONORABLE STEPHEN P. FRIOT PRESIDING

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**APPELLANT'S OPENING BRIEF**
**AND REQUIRED ADDENDA**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

By: Oscar Stilley
10600 North Highway 59
Cedarville, AR 72932
479.384.2303
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF INTERESTED PERSONS (FRAP 26.1(d)(2) and 28(a)(1))

Appellate Court No. 22-5113

Short Caption: <u>United States v. Oscar Stilley</u>

1.      The undersigned pro se Appellant, Oscar Stilley, certifies that the following listed persons and entities have an actual, plausible, or potential interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1) Co-defendant Lindsey Kent Springer is not a direct party to this appeal, but may have an interest in this litigation and/or the outcome of this litigation.  Springer's direct appeal (10-5055) was consolidated with Stilley's attempt at a direct appeal, 10-5057. Pursuant to the rules, Springer may be entitled to join part or all of Stilley's appeal.  FRAP 28(i); 10th Cir. R. 31-2.  Appellant Stilley has been instructed by US Probation not to serve Springer with pleadings.
2)  Jeffrey Gallant is local counsel to Charles O'Reilly.  O'Reilly is a California attorney.
3) Vani Singhal is an attorney for the Northern District of Oklahoma enforcing the monetary portion of the judgment under attack.  The State of Arkansas, Department of Finance and Administration, will receive the funds collected from Stilley until the alleged "tax losses" of the State of Arkansas are fully satisfied.
4) Jerold Barringer, an attorney from Nokomis, IL, is a former attorney for Lindsey Springer.
5) Government attorneys on the direct appeal of Lindsey Springer, (10-5055) which Stilley was allowed to join, include Frank P. Cihlar, Alexander P. Robbins, and Gregory Victor Davis.
6) Clinton J. Johnson, US Attorney for the Northern District of Oklahoma, has certain duties to supervise Gallant, Singhal, and O'Reilly, over whom he has supervisory control.  Oklahoma Rules of Professional Conduct, Rule 5.1.

7) Charles Robert Burton, IV, was standby counsel for Stilley. Robert Williams was standby counsel for Springer. Kenneth Snoke participated in the prosecution until his retirement. Terry Lee Weber was involved as CJA attorney, in some capacity, early in the criminal litigation.

2.    The names of all law firms whose partners or associates have appeared for any party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Appellant is pro se and has been such at all stages of litigation, with the possible exception of Terry Lee Weber – see docket. The appellate docket shows Katie Bagley, Elissa Hart-Mahan, Samuel Robert Lyons, and Joseph Brian Syverson as counsel for Appellee.


Appellant's signature: /s/ Oscar Stilley          Date:  May 2, 2023
Appellant's Printed Name:  Oscar Stilley
Address:  10600 North Highway 59 Cedarville, AR 72932
Phone number:  479.384.2303          Fax Number:  479.401.2615
E-Mail Address:  oscarstilley@gmail.com

## WAIVER OF ORAL ARGUMENT

Appellant waives oral argument. Appellant takes the position that the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. FRAP 34(a)(2)(c).

# TABLE OF CONTENTS

## Contents

CERTIFICATE OF INTERESTED PERSONS (FRAP 26.1(d)(2) and 28(a)(1))................................................................................a

WAIVER OF ORAL ARGUMENT ........................................................ c

TABLE OF CONTENTS .....................................................................i

TABLE OF AUTHORITIES...............................................................iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES PRESENTED .....................................2

STATEMENT OF THE CASE ...........................................................5

SUMMARY OF ARGUMENT .............................................................25

APPELLANT'S ARGUMENT ............................................................30

I.   The Evidence Is Insufficient to Sustain the Judgment Entered by The District Court. ...............................................................30

   A.     Standard of review. ..............................................................30

   B.     The District Court was required to make findings with respect to the original offense of conviction, for revocation or for re-imposition of occupational restrictions. ...................................30

   C.     The District Court violated judicial estoppel, by making findings based on a theory first raised after the dispositive motion deadline..33

   D.     The special conditions, with their required findings, are inextricably intertwined with the underlying judgment and commitment order. .............................................................40

   E.     Neither the District Court nor the government believe that the evidence is sufficient to convict Stilley – of anything, on any theory, then or now. ...........................................................41

II.   The District Court Was Not Legally Authorized to Preside, Presided on the Basis of Invalid Summons and Charges, and Furthermore Repeatedly Declined to Keep His Own Word. ..................46

   A.     Standard of Review. ..............................................................46

B.    This court has stitched together at least 13 cross-designations, for Oklahoma district judges.................................................47

C.    Thirteen years and counting isn't statutorily authorized, and has been prejudicial to Stilley. ...................................................48

III.   The District Court Violated Due Process by Convicting Stilley Of A Legally Required Act. ...........................................................51

A.    Standard of Review. .................................................................51

B.    Due process requires fair warning that conduct may be criminal. 51

C.    Conduct may not at once be legally mandatory and criminally prohibited. ................................................................................54

IV.   O'Reilly And the District Court Have Worked Together to Perpetrate a Fraud Upon the Court. ......................................................56

A.    Standard of review ...................................................................56

B.    Legal test for "fraud on the court." ...........................................56

C.    The record below simplifies the analysis, and provides a straight shot at a legally correct ruling. ...................................................58

D.    Stilley's fundamental goal was and still is a ruling based on a truthful record. ........................................................................60

E.    Stilley was denied the one direct appeal to which he was by law entitled.......................................................................................62

F.    None of the "tax losses" attributed to Stilley were truthful, none are honestly believed by the government. ...................................63

CONCLUSION ..................................................................................67

CERTIFICATE OF SERVICE..............................................................68

CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS .68

## ADDENDA AS REQUIRED BY 10th CIRCUIT RULE 30.1

**Addenda page #**

Order Striking Pleadings, Docket 264 ..................................................... 1

Scheduling Order, Docket 290 ................................................................. 3

Judgment And Commitment Order, Docket 338 ..................................... 5

Judgment And Commitment Order, Docket 752 .................................... 11

Order Disposing of Remaining Counts, Docket 778 .............................. 19

Order Modifying Special Conditions, Docket 779 ................................. 29

Transcript Of Ruling, 4-23-2010, Pages 393-469 .................................. 34

Transcript Of Ruling, 11-21-2022, Pages 90-122 ................................ 111

# TABLE OF AUTHORITIES

## Cases

*Allen* v. *Zurich Ins. Co.*, 667 F.2d 1162 (CA4 1982) ...............................37

*Armstrong v. Manzo*, 380 U.S. 545 (1965) ..............................................65

*Bousley v. United States*, 523 U.S. 614 (1998)........................................42

*Burks* v. *United States*, 437 U.S. 1 (1978) .............................................31

*Commissioner v. Duberstein*, 363 U.S. 278 (1960)..................................51

*Davis* v. *Wakelee*, 156 U.S. 680 (1895) .................................................34

*Edwards* v. *Aetna Life Ins. Co.*, 690 F.2d 595 (CA6 1982) ...............34, 36

*Hudson v. Louisiana*, 450 U.S. 40 (1981) ...............................................31

*In re Cassidy*, 892 F.2d 637 (CA7 1990) .................................................37

*Johnson v. United States*, 529 U.S. 694 (2000)........................................31

*Kilgore v. Attorney Gen. of Co.*, 519 F.3d 1084 (10th Cir.2008) .............44

*Konstantinidis* v. *Chen*, 626 F.2d 933 (CADC 1980) ..............................37

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..............................................59

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .................................33, 36

*Oyler v. Allenbrand,* 23 F.3d 292 (10th Cir. 1992) .................................44

*Peach v. United States,* 468 F.3d 1269 (10th Cir. 2006).........................59

*Pegram* v. *Herdrich*, 530 U.S. 211 (2000) ..............................................34

*Robinson v. Ledezma*, 399 Fed. Appx. 329 (10th Circuit 2010)...............66

*Ross v. Blake*, 578 U.S. 632 (2016)..........................................................13

*Russell* v. *Rolfs*, 893 F.2d 1033 (CA9 1990) ...........................................37

*Scarano* v. *Central R. Co.*, 203 F.2d 510 (CA3 1953)..............................37

*United States v. Blackwell*, 127 F.3d 947, 950 (10th Cir. 1997)............30

*United States v. Cervini*, 379 F.3d 987 (10th Cir. 2004) ......................44

*United States v. Conley*, 942 F.2d 1125 (7th Cir. 1991)..........................51

*United States v. Gallup*, 812 F.2d 1271 (10th Cir. 1987) ......................64

*United States v. Haymond*, 139 S. Ct. 2369, 204 L. Ed. 2d 897 (2019)..44

*United States v. Haymond*, 869 F.3d 1153 (10th Cir. 2017)...................31

*United States* v. *Hook*, 195 F.3d 299 (CA7 1999)..................................34

*United States* v. *McCaskey*, 9 F.3d 368 (CA5 1993)...............................37

*United States v. Mike*, 632 F.3d 686 (10th Cir. 2011) ...........................32

*United States v. Patridge*, 507 F.3d 1092 (7th Cir. 2007)......................53

*United States v. Pearce*, 146 F.3d 771 (10th Cir. 1998)........ 30, 46, 51, 56

*United States v. Stillhammer*, 706 F.2d 1072 (10th Cir. 1983) ..............53

*United States v. Sunday*, 447 F. App'x 885 (10th Cir. 2012)............ 32, 41

*Weese v. Schukman*, 98 F.3d 542 (10th Cir. 1996) ................................56

## Statutes

18 U.S.C. § 3582(c) ............................................................ 14, 18, 60, 61

18 U.S.C. § 3583(e)(3)...............................................................31

18 U.S.C. § 3583(k)....................................................................31

22 U.S.C. § 1741 .......................................................................55

28 U.S.C. § 2255 ................................. 15, 18, 19, 39, 44, 55, 66

28 U.S.C. § 292(b).......................................................... 4, 28, 48

28 U.S.C. § 1291 .......................................................................... 1

## Rules

Ark. R. Prof. Cond. 1.15 ........................................................ 52

Cal. R. Prof. Cond. 3.8 .......................................................... 61

Fed. R. App. P. 10(a) .............................................................. 17

Fed. R. Civ. P. 60(b) ............................................................... 57

Rules of Procedure of the State Bar of California: Title IV. Standards For Attorney Sanctions For Professional Misconduct Part A.; *Standard 2.2: Commingling And Other Trust Account Violations* ....................... 35

## Other Authorities

7 *Moore's Federal Practice* P 60.33 ....................................... 57

Deuteronomy 16:20 ................................................................. 55

USSG § 5F1.5 ................................................................. 2, 25, 32, 40, 45

RELATED CASES: (taken from the District Court docket)

09-5165 10th Circuit Court
10-5101 10th Circuit
11-10096 US Supreme Court
13-5113 10th Circuit
14-5111 10th Circuit
17-8312 US Supreme Court

Related Case:  4:13-cv-00145-SPF-tlw

Appeals court case numbers:[1]

---

[1]     There is some overlap between the related case and appeals court case number lists.

10-5055 (#340) 10th Circuit,
10-5156 (#428) 10th Circuit,
11-5053 (#447) 10th Circuit,
13-5062 (#497) 10th Circuit,
14-5047 (#554) 10th Circuit,
14-5109 (#588) 10th Circuit,
15-5109 (#607) 10th Circuit,
18-5104 (#659) 10th Circuit,
20-5000 10th Circuit,
22-5000 10th Circuit

## JURISDICTIONAL STATEMENT

1.      This is an appeal from an order revoking Appellant's supervised release, sentencing him to prison and additional supervised release.

2.      Jurisdiction to appeal to the 10th Circuit is at 28 U.S.C. § 1291, for appeal from a final decision of a US District Court.

3.       The judgment and commitment order was entered 11-23-2022. Dkt. 752. Notice of appeal was filed by prison mailbox rule on Monday, December 5, 2022, which is within 14 days and thus timely.  The opening brief was originally due 3-21-2023.  A clerk's order extended the time to 4-20-2023.  By order dated 4-14-2023, the deadline was further extended to 5-22-2023.

This appeal is from a final order of the District Court, revoking supervised release, etc. Stilley seeks to bring up prior adverse orders, including but not limited to the original judgment and commitment order, Docket 338, to the extent that such is not inconsistent with law or rule.

# STATEMENT OF THE ISSUES PRESENTED

1.     Whether the evidence is sufficient to support the judgment, both as to the 3 months in prison and the imposition of special conditions of supervised release, and if appropriate the original judgment.

2.     Whether the original judgment and commitment order may be attacked in this proceeding, if the attack on the revocation judgment also impugns the original judgment and commitment order.

3.     Whether Stilley is entitled to judgment based on a truthful record.

4.     Whether Stilley may be punished, on revocation, on the basis of a theory not alleged in the indictment, not raised at trial, indeed not raised at all until after the final dispositive motion deadline.

5.     Whether "occupational restrictions" within the meaning of USSG § 5F1.5 may be based on factual findings contradicted by the record.

6.     Whether the District Court had the right to manufacture a new rule allowing it to add the pages of a motion to the pages of a brief, *sua sponte* declare the combination "brief" overlength, deny opportunity to shorten the pleadings, and refuse to rule on the merits of said pleadings.

7.     Whether Stilley may lawfully be convicted and incarcerated for

performing an act which Stilley had a legal duty to perform.

8.      Whether Stilley may lawfully be convicted and imprisoned for paying money out of his IOLTA account, to a person who according to the alleged grand jury and the government's pretrial theories had "earned" the money and was thus legally entitled to it.

9.      Whether Stilley may lawfully be sentenced to prison for failing to conclude that a *civil* rule had been incorporated into the local *criminal* rules, on the basis of ambiguous language in the local criminal rules.

10.     Whether Stilley may lawfully be convicted for failure to make *Springer's* tax returns, despite the fact that numerous laws, rules, regulations, forms, and legal principles prevent Stilley from doing that.

11.     Whether Stilley may lawfully be convicted for failing to make Springer's tax return, when Springer actually made a tax return for that year, within the meaning of the law, before the "tax deadline," and where the government also seized evidence sufficient to constitute a tax return, within the contemplation of 10th Circuit case law, before the "tax deadline" for that year.

12.     Whether serial cross designation orders, for at least the past 13 consecutive years, are nonetheless "temporary" within the meaning of

[28 U.S.C. § 292(b)](#) .

13.    Whether cross designation orders that are not published, not included in publicly available sets of rules, and not reasonably available to the public, and that allege no specific "public interest," are nevertheless within the "public interest" within the meaning of [28 U.S.C. § 292(b)](#).

14.    Whether Stilley may lawfully be punished based upon evidence known to be false.

15.    Whether Stilley may be punished based on math errors, with respect to which he has **_not yet_** been accorded one direct appeal.

16.    Whether a pattern of acts and omissions that destroyed Stilley's ability to get rulings on the merits of his claims, at district court or at the 10th Circuit, under circumstances that strongly suggest ex parte communication with the District Court, constitute or contribute to a "fraud upon the court" within the meaning of applicable law.

Oscar Stilley for many years was an attorney known for advocacy on behalf of taxpayers, in civil, criminal, and administrative proceedings, etc. Stilley primarily worked for individuals in criminal or civil trouble with the IRS.

Stilley came to be under criminal investigation in the middle of 2004, when he prepared a 10th Circuit criminal appellate brief[2] for Ms. Judy Patterson, concerning amongst other things the Paperwork Reduction Act (PRA). Stilley drafted it, Patterson's attorney Jerry Barringer read, signed, and filed it.

The DOJ through various machinations procured a deal for Judy to drop her appeal in exchange for immediate termination of her prison sentence. *Id*. At the same time (middle of 2004) the DOJ started a retaliatory criminal investigation on Barringer, Stilley, and Lindsey Springer.

Springer and Stilley were purportedly indicted almost 5 years later, in 2009. The proper term is ***purportedly,*** because **no** indictment

---

[2] This is the docket only. Apparently the filed brief is unavailable.

was returned in open court.

The government proceeded under 4 different theories of criminal liability. [Dkt. 701, pg. 24](#).[3] Two theories were claimed pretrial, one was deceitfully raised during trial, and one was raised post-trial. The government resisted any response to a bill of particulars, on the very theory that the government is **bound by the particulars so stated**. [Dkt. 42, pg. 8](#).

During trial, Charles O'Reilly[4] casually handed Springer and Stilley copies of a proposed "gift" jury instruction, effectuating the theory switch from the pretrial theories to the trial theory.

This instruction was not filed **by the government**. Nor was it **openly** presented to the District Court. O'Reilly and company **left no fingerprints** on it. The District Court *sua sponte* came up with basically the same jury instruction, tweaked to make it harsher on the defendants, and submitted that instruction to the jury. [Dkt. 244, pg.](#)

---

[3]      Docket items are cited by docket and where appropriate page number. Transcripts are cited by page number, with "Sent. TR" for sentencing, and Revocation TR for revocation transcript pages. Links provided for the convenience of the reader sometimes require "click-through" to the original document.

[4]      Lead counsel for the prosecution in this case.

29-31.

On information and belief, O'Reilly engaged in *ex parte* communication with the District Court, to provide him with the jury instruction and theory switch that O'Reilly needed to avoid an adverse jury verdict.

On 12-8-2009, Stilley filed a consolidated motion for judgment as a matter of law, (JAML) and motion for new trial, along with a brief in support. Dkt. 261 and 263. Pages 4-13 of the brief argued that Stilley was legally obligated to pay out the money at issue, and that Stilley couldn't be held criminally liable for acts he had a legal duty to perform.

The District Court struck both pleadings *sua sponte*. Dkt. 264. This was utterly contrary to the District Court's stated opinion of the law, in written decisions both before and after striking Stilley's pleadings. Dkt. 701, pg. 44-49.

Stilley on 12-1-2009 filed a 5 page motion, Dkt. 254, and a five page brief, Dkt. 255. These pleadings laid out the utterly destructive impact of incarceration on Stilley's ability to prosecute an appeal, and requested transcripts at public expense. The government didn't respond at all – on the record. The District Court waited from 12-1-

2009 to 1-12-2010, some 42 days, then denied the unopposed motion. Dkt. 278.

The District Court's theories were incompatible with the published policy of the Administrative Office of the Courts. See Dkt. 701, pg. 59-67, esp. pg. 62 On information and belief the District Court once again engaged in *ex parte* contact with the government, to make this decision. Dkt. 278. By the District Court's own admission he was getting information from sources not disclosed on the record. *Id*.

The District Court on 1-22-2010 issued another *sua sponte* order, Dkt. 290 this one much more subtle that the one described above. This was in a scheduling order, quite often done *sua sponte*, without malice and without prejudice to the parties.

Tucked into this order was a cutoff date of 2-1-2010, for dispositive motions. A mere 12 days later the government switched to a "theft" theory of criminal liability, at least as to Count 4. See comment made 2-12-2010, at Dkt. 310, pg. 11, about Patrick Turner's "naive belief" that "Defendant Springer had any intention of repaying the money Defendants stole."

Indeed, the government on 3-3-2010 confessed that if the trial jury

had not adopted the post-trial "stealing" theory of the case, they would have returned verdicts of "not guilty," at least as to Count 4. Objections to PSR, page 3. They could do this with great confidence, since the District Court had ***cut clean off*** any opportunity to file any dispositive motions. Stilley was relegated to seeking relief on appeal.

In other words, the government admitted that their pretrial theories, as well as their new theory trotted out in the middle of trial under the most suspicious of circumstances, were all ***thoroughly*** incapable of supporting a criminal judgment.

At sentencing, the government manufactured new theories of "tax loss" which resulted in dramatically higher offense levels and restitution amounts. These new theories were all either the product of 1) perjury, or 2) false evidence not arising to the level of perjury, or 3) mathematically impossible claims that won't even survive a trip to a calculator.

US Probation found a Total Offense Level of 26, corresponding to a guideline range of 63-78 months. *Original PSR dated 2-25-10, pg. 16, 19.* Stilley by objection got the calculated Total Offense Level down to 24, for a guideline sentence of 51-63 months. *Revised PSR dated 4-8-10,*

*pg. 15, 19.*

The government argued for a Total Offense Level of 32, with a Guideline Range of 121-151 months. The District Court mixed and matched, but still came up with the government's requested Total Offense Level and Guideline Range.

The District Court then slammed both Springer and Stilley with 180 months, denouncing Stilley as a "thief with a law degree." Sent. TR 450. When Stilley complained about the upward departure, the District Court claimed that it was a variance rather than a departure. Sent. TR 466. This can be fairly described as a distinction without a difference.

O'Reilly successfully opposed release pending appeal – once again, because he knew the devastating effects of a ***competent*** appeal upon his ***fraudulent*** case. The District Court ordered both defendants to jail that day, directing that Stilley and Springer not be incarcerated together. Dkt. 338, pg. 2.

The District Court 1) acknowledged that the right of self-representation is an important right, 2) that incarceration has a negative impact on the ability to exercise that right, and 3) promised to do what he reasonably could to ameliorate the impact of incarceration.

Sent. TR 455-456.

The DOJ, by and through its subsidiary the Federal Bureau of Prisons (DOJ-FBOP) made a complete mockery of the administrative remedy process. Dkt. 701, pages 70-80. They rendered it impossible to even get through the process during the pendency of the direct criminal appeal proceedings. *Id.*

After coming to home confinement, Stilley compiled the 10-5057 docket into convenient and readily accessible form, with ordinal numbers and links to material filings.  For a stacked 448 page set of 10-5057 docket items, click here.

This docket shows that from May 2010 through December 2011, Stilley filed not less than 13 pleadings in this 10th Circuit Court, trying to get access to the basic wherewithal for a **competent** appeal.  10-5057 docket ## 9, 11, 20, 21, 26, 28, 29, 34, 40, 43, and 56.

Stilley's wife packed up a set of the docket and docket items (created by Stilley prior to incarceration) and mailed them to Stilley. Dkt. 701, pg. 75.  The DOJ-FBOP arbitrarily returned them to her, without even giving Stilley a due process right to object.

Near the end of the proceedings in 10th Circuit 10-5057, Stilley

filed a 6 page motion[5] ([10-5057 Dkt. 56](#)) asking for permission to file an appeal brief after having completed the ridiculously pathetic administrative remedies to which he had been relegated.

The panel rejected the request, but not for the most obvious reason that could possibly be cited. If any judge on the 10-5057 panel thought Stilley had *already prosecuted* the one direct appeal to which he was entitled, they easily could have said that.

***Not one of the judges did that.*** Stilley specifically asked for a court order commanding the clerk to withhold issuance of the mandate pending completion of the administrative remedy process and court litigation of his right of reasonable access to the courts. Circuit judges Lucero, Baldock, and Tymkovich construed the motion "as a motion to stay the mandate." [10-5057 Dkt. 57](#). Knowing full well that Stilley wanted opportunity to brief the court at the conclusion of administrative remedies, and any legal challenges to follow, the panel denied the motion.

---

[5] Stilley has no idea how the second page of the document appears to be extraneous. Stilley was in prison, someone else helped him file the document. Filed page 2 has the correct filemark headers at the top.

Stilley on 4-15-2011 filed a district court motion with included brief (Dkt. 443) that the DOJ-FBOP was rendering the exhaustion of administrative remedies a practical impossibility. O'Reilly sprang into action, now willing to write, to oppose any relief. (Dkt. 444). Stilley replied. (Dkt. 454). The District Court denied the motion on the ground that Stilley was still seeking relief through administrative remedies. (Dkt. 455) Nothing was said about the allegations that the DOJ-FBOP was rendering administrative relief "unavailable" within the meaning of *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850 (2016).

Stilley spent over 400 days in SHU (Special Housing Unit, or jail for the prison) mostly either directly or indirectly due to his efforts to get the right of peaceful petition and due process. Dkt. 701, pg. 65. Stilley has been force fed with a nasogastric tube 8 times, and threatened with it many more times. Dkt. 701, pg. 75.

Stilley suffered approximately 13 "shots" (formal disciplinary incident reports) and lost about 6 months of "good conduct time," all or nearly all of which amounted to attacks on his right of due process and peaceful petition. Stilley's direct appeal of a district court challenge to the DOJ-FBOP's denials, evasions, retaliatory "shots," dirty tricks in

the administrative process, etc., was litigated at the 5th Circuit. *Stilley v. Garland* et al, 5th Cir. 21-60022. Stilley's opening brief, the government's response brief, Stilley's reply brief, and the official record on appeal are all available online. The 5th Circuit upheld the District Court's[6] dismissal without prejudice of Stilley's complaint.

The government claimed, with a straight face, that Stilley has attempted over 50 administrative remedies while in DOJ-FBOP custody, and has failed to exhaust a single remedy. Stilley v. Garland, government response brief, pg. 21.

The truth is that Stilley did exhaust his administrative remedies – long after the panel in Stilley's vain attempt for his one direct appeal as of right,[7] had rendered its opinion. The DOJ-FBOP just clammed up and refused to admit it.

After coming to home confinement, Stilley filed a motion for reduction of his sentence pursuant to 18 U.S.C. § 3582(c). Dkt. 694. Stilley submitted a proposed preliminary order, (*Id.*) which made it plain that Stilley's goal was to first get a truthful record, and then to

---

[6]    Southern District of Mississippi.
[7]    10th Cir. 10-5057.

get a ruling on his motion for reduction of sentence.  Stilley didn't get the truthful record.  The District Court denied the motion.

Stilley filed his motion under 28 U.S.C. § 2255 on 9-1-2021, within one year of coming to home confinement. Dkt. 701 The following day he filed a motion for the phone, email, and mailing address of his codefendant Lindsey Springer, as well as a request for the District Court to explain how he still has any authorization to hear the case, since no version of Miscellaneous #23 is currently valid.[8] Dkt. 702.

The government moved to "dismiss" Dkt. 701 and Dkt. 702.  Dkt. 705, Dkt. 707.  The District Court treated the entire 81 page motion, with numbered paragraphs under oath, as mere "argument."  Dkt. 719.  Since he unilaterally converted all of Stilley's evidence into "argument," Stilley couldn't possibly have any "new" evidence.  The District Court didn't deny that Stilley is "*actually innocent*."  The District Court "dismissed" both motions without acknowledging or discussing Stilley's *evidence*.  Id.

---

[8]     Stilley did not at the time realize that the 10th Circuit has been issuing cross designation orders annually, for at least the last 13 years.  Then again, the personnel at the Clerk's offices in US District Courts in Oklahoma didn't know that fact either.

Stilley prepared a district court docket with active links to pertinent pleadings, and also to the proposed order previously mentioned, seeking a truthful record. OKND 4:09-cr-43, ##693-730

In summary, this is what has transpired.

1) Stilley and Springer utterly devastated the government's pretrial theories, so much that the government abandoned them in favor of theories laughably inconsistent with the indictment.

2) Stilley was denied a trial, fair or otherwise, on the allegations of the purported indictment. Everyone concedes Stilley is innocent *of that*.

3) Stilley was denied any consideration of his motion for new trial and judgment as a matter of law, altogether contrary to the District Court's own written belief of the requirements of due process.

4) The District Court denied Stilley's unopposed motion for transcripts, at a time that would have allowed him to prepare appellate arguments on the issue of criminal liability, prior to incarceration. Stilley was denied transcripts until the DOJ[9] was

---

[9]    By and through its subsidiary the DOJ-FBOP.

able to deprive its ***adversary*** Stilley of access to the official record as defined by Fed. R. App. P. 10(a) .

5) The District Court *sua sponte* slammed the door on dispositive motions, just days before the government abandoned the trial theory of liability (itself inconsistent with the pretrial theory) and adopted the "theft theory."

6) The government for purposes of sentencing more than doubled its pretrial alleged "tax losses," knowing full well that the evidence in support of this claim was false and fraudulent. Dkt. 701, pg. 26.

7) Stilley and Springer were both locked up immediately upon the imposition of sentence, with instructions to keep the two separate. Dkt. 338, pg. 2. The District Judge ignored objection to interference with the US mails, committed with the apparent intention of obstructing peaceful petition and due process. Dkt. 364, 376.

8) Stilley repeatedly sought the wherewithal to prepare a competent appeal brief, by pleadings filed from May 2010 through November 2011. 10-5057 docket

9)  Stilley sought relief from District Court, for denial of access to those things necessary for a competent appeal, explaining that his administrative remedy requests were being obstructed, but was denied. Dkt. 443, pg. 7.

10)  Stilley has exerted full efforts since that time, up through a 5th Circuit appeal denying Stilley's complaint **without prejudice**, with respect to amongst other things the denial of **access to** those things necessary for the preparation of competent appeal briefs.

11)  Stilley filed a motion for sentence reduction under 18 U.S.C. 3582(c), requesting that the District Court first issue a preliminary order ensuring that the District Court could rule on the basis of an **honest** record.  Dkt. 694.  The District Court declined to order such relief.

12)  Stilley filed his motion under 28 U.S.C. § 2255 within one year of coming to home confinement, same being the earliest plausible time that Stilley was freed from obstruction of access to those things indispensable to a competent appeal. Nobody contends otherwise.

13)  The District Court "dismissed" Stilley's 2255 motion, as well

as his motion for Springer's contact information, and the District Court's claim of authority to decide this case. [Dkt. 719](#).  The District Court characterized Stilley's verified motion under 28 U.S.C. § 2255 as "argument."

14)The 10th Circuit denied a certificate of appealability on June 6, 2022, in case number 22-5000. The panel in a footnote declined to consider Stilley's motion to recall the mandate.

Thus we can see that Stilley wasn't *tried* on the allegations of the indictment, was denied *any* consideration of the most critical post-trial motions, was sentenced on an *altogether new theory*, after being barred from challenging it, was tagged for obviously *false and fraudulent* sentencing guideline "points" and restitution, was denied the *one direct appeal* to which he was legally entitled, was denied his 1st Amendment right of peaceful petition and due process for the duration of his incarceration, was repeatedly and extensively punished for efforts to get due process and the right of peaceful petition, and has never had so much as a pretense that any district court or circuit court has considered or decided any motion under 28 U.S.C. § 2255 *on the merits*.

At the conclusion of Stilley's home confinement, he was told that he would have to put monitoring software on his phone and computer, turn over all passwords and usernames, etc. Stilley asked permission to file a motion for relief from these admittedly onerous conditions. Stilley's Western District of Arkansas (ARWD) US Probation officer told him that revocation proceedings would be instituted unless he immediately installed the software.

The District Court[10] *sua sponte* transferred the cause to the Western District of Oklahoma. OKWD 5:22-cr-357-F, Dkt. 1. Thereupon certain personnel of the OKWD office of US Probation made accusations and procured a summons. There is no evidence in the record that any of the personnel of the OKND office of US Probation participated in these accusations.

Stilley challenged jurisdiction on grounds of lack of any cross-designations since return of the mandate. OKWD Dkt. 10. The District Court denied the motion but gave Stilley 14 days to challenge jurisdiction within the OKWD, stating that he would vacate the

---

[10] Stephen P. Friot was judge in OKND before transfer, in OKWD, and in OKND after transfer back to OKND.

transfer if it wasn't authorized by statute.  OKWD Dkt. 13.

Stilley challenged jurisdiction in the OKWD.  Dkt. 14, 15.  The District Court stated that it was not "sufficiently satisfied" that the transfer was statutorily authorized.  However, instead of forthrightly vacating the order of transfer, the District Court on 11-3-2022 transferred the accusations back to the OKND for prosecution there. Dkt. 20. The District Court the following day set a "revocation and sentencing hearing" for 11-21-2022.  OKND Dkt. 740.

Stilley on 11-16-2022 moved for an initial appearance.  Dkt. 741. This was denied the same day, on grounds that Stilley was suitably informed, knew that he could request counsel, etc.

Stilley on 11-20-2022 filed the following motions: 1) Motion to re-appoint standby counsel Robert Burton IV, Dkt. 744, 2) Motion to disqualify the District Judge for lack of statutory authorization, Dkt. 745,  3) Motion to quash summons, strike pleadings from OKWD, etc., and dismiss for lack of jurisdiction, Dkt. 746,  4) Motion for early PSR, Dkt. 747, 5) Motion for discovery and evidence, Dkt. 748, 6) Motion for a true and correct record, Dkt. 749, 7) Motion for clarification and modification of the special conditions of supervised release. Dkt. 750.

The minute sheet shows that the motion to disqualify the judge, to dismiss, for early PSR, for discovery, and for a true and correct record, were all denied. Stilley was given 15 days to supplement his request for counsel, but no time to seek counsel prior to the revocation hearing. A passing CJA lawyer, John Campbell, was asked to confer with Stilley, but Stilley had no time to confer with him for the few minutes that he was in the courtroom.

Stilley was told that the court would forgo the revocation hearing, if he would agree to comply going forward. Revocation TR 10. Stilley agreed with the government, whereupon the government presented the agreement to the District Court. Thereupon the District Court stated that the revocation hearing would proceed nevertheless. Revocation TR 20.

Stilley was given 21 days to supplement his pending motion to modify conditions of supervised release. However, he was sent to jail immediately after the hearing, and wasn't allowed to have access to the bare minimum of things necessary to perform that task. The District Court denied the motion. Dkt. 760. Unaware of that order, Stilley moved for an extension of time. Dkt. 763. The District Court denied

that motion. [Dkt. 765](#).

Stilley was found guilty on revocation counts 1 and 3, leaving counts 2 and 4 unadjudicated. The government requested 2 years confinement with no additional supervised release. The District Court sentenced Stilley to 3 months incarceration plus 33 months of additional supervised release. The District Court relied upon his own previous conclusions, as a basis for imposition of all the special conditions of supervised release previously imposed, including the occupational restrictions.

Stilley on 3-16-2023 filed another motion for modification of the conditions of supervised release, seeking the termination of all special conditions. [Dkt. 774](#). The District Court ordered the government to respond, but said that they could disregard any matters in the motion "…which question or challenge any aspect of the validity or legality of the underlying prosecution and convictions."

The District Court on 4-13-2023 dismissed counts 2 and 4. [Dkt. 778, pg. 10](#). In the same document, the District Court adopted the modified conditions proposed by the government, which were in ways harsher than the original.

Stilley on 3-30-2023 filed a [motion to recall the mandate in 10-5057](#). The government [responded](#) 4-6-2023. The government's response did not challenge the underlying facts claiming and demonstrating that Stilley is innocent, and that he never got the one direct appeal to which he is by law entitled. They raised nothing but technical issues designed to prevent Stilley from getting a ruling on the merits.

This Court on 4-14-2023 [denied Stilley's motion](#) for extension of time to reply, one day after the 7 day deadline. In the same order this Court denied Stilley's motion to recall the mandate, citing the fact that recall of a mandate is an "extraordinary" remedy, and the "profound interests of repose…"

Nothing in that order states or even suggests that Stilley was wrong on the merits. Nothing in that order challenges Stilley's claim that he has not, to this day, gotten the one direct appeal to which he is entitled.

To this Court's credit, that makes 3 times the Court could have claimed that Stilley had already gotten the one direct appeal – but didn't.

1. Both judgment and commitment orders ([Docket 338](#) and [752](#)) include special conditions of supervised release that are without controversy "occupational restrictions."

2. The District Court's findings in support of these occupational restrictions are 1) not supported by the evidence, and 2) affirmatively disproven by the evidence. They are also conclusory and fail to forthrightly identify any "offense of conviction" within the meaning of [USSG § 5F1.5](#).

3. Record evidence proves that Stilley committed no crimes in 2003 (Count 3) or 2005 (Count 4), arguably within the language of the indictment. Conclusory statements that Stilley is a "thief" are not sufficient to support a criminal judgment.

4. Based on the jury instructions given, Stilley could not possibly be guilty of Count 4 of the indictment. This means that Stilley is entitled to walk free immediately, since he has already served over 10 years, the maximum for the other two counts of conviction by any reckoning, plus additional years.

5. Stilley was denied access to the docket and docket items, after he

was incarcerated 4-23-2010, the last day of his 3-day sentencing. Dkt. 701, pg. 65, 75.

6.      It was impossible to prepare a competent appeal brief without the docket and docket items, (Dkt. 701, pg. 55, 65, 72) which at the time amounted to over 4,000 pages.

7.      Stilley had no knowledge of the plan of Springer and Patrick Turner, to use Stilley's IOLTA account to convey $250,000 from Turner to Springer, until long after all the money was gone from the IOLTA account.

8.      There is exactly zero evidence in the record, to the effect that Stilley intended to steal money from Turner, or help anyone else steal money from Turner, or even had knowledge of Springer and Turner's plans.

9.      The pretrial theory of liability was abandoned by the government at trial.

10.     Post-trial, the District Court slammed the door shut on dispositive motions. Dkt. 290, pg. 2

11.     Scant days later the government switched from the trial theory to the theory of "theft." Dkt. 701, pg. 23-25.

12.    Stilley had a legal duty to pay out the money to Springer, on both counts 3 and 4, based on the government's pretrial theories.

13.    The District Court *sua sponte* struck Stilley's motion for judgment as a matter of law and for new trial. Dkt. 264.

14.    The District Court opined in writing, both immediately before and long after striking Stilley's pleadings, that such an action violated the US constitution. Dkt. 701, pg. 44-49,

15.    Supreme Court caselaw says that such an unconstitutional order must be set aside, so the litigant is in the position he was in prior to the illegal order.

16.    Stilley is currently in custody[11] for having performed an act that he was legally required to perform, based on the government's own pretrial  theories.

17.    An act cannot at once be a legal duty and a federal crime.

18.    Based on the theories of the government and the District Court, Stilley only had a choice of which crime to commit: 1) pay money to the

---

[11]    Supervised release is custody for at least some purposes. Furthermore, supervised release can and often does "ripen" into another stint behind bars.  Stilley was given an object lesson as to this fact, on 11-21-2022.

party the government in pretrial pleadings said was ***entitled to the money***, or 2) refuse to pay the money, whereupon Stilley would unquestionably have criminal, civil, and ethical liabilities, all with severe, life shattering consequences.

19.    The 10th Circuit has issued judicial cross-designation orders[12] for at least 13 consecutive years, (Dkt. 745-1) despite the fact that the authorizing statute, 28 U.S.C. § 292(b)    says that such designations must be "temporary."

20.    Both of Stilley's judgment and commitment orders, Dkt. 338 and Dkt. 752, are based upon monetary claims, not one item of which is based upon the ***truth***.  Dkt. 723, pg. 12-29.

21.    The government obtained both judgment and commitment orders, and both orders of restitution, on the basis of 1) willful, malicious perjury, 2) false evidence, and 3) mathematical errors. *Id*.

22.    Stilley is legally entitled to consideration of his sufficiency of the evidence claim *first*, so as to protect his constitutional right to be free

---

[12]    For Oklahoma district judges.  Recent orders exclude from cross-designation the position which is Congressionally established as a judgeship for all 3 Oklahoma districts, currently occupied by the Honorable John F. Heil, III.

from double jeopardy.

23.     The government engaged in a systematic pattern of acts
constituting fraud upon the court.

24.     The willful refusal to allow a criminal defendant to get a ruling on
material issues amounts to a fraud upon the court, and furthermore
constitutes a "defect in the integrity of federal habeas proceedings."

25.     Fraud upon the court prevents the criminal judgment from ever
becoming "final."

# APPELLANT'S ARGUMENT

I.      The Evidence Is Insufficient to Sustain the Judgment Entered by The District Court.

A.      Standard of review.

The 10th Circuit reviews the district court's legal rulings de novo and its findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998); *accord United States v. Blackwell*, 127 F.3d 947, 950 (10th Cir. 1997).

B.      The District Court was required to make findings with respect to the original offense of conviction, for revocation or for re-imposition of occupational restrictions.

This appeal involves at least 1) three months of incarceration, and 2) the re-imposition of special conditions of supervised release, including but not limited to occupational restrictions.  Stilley also intends to challenge the original judgment and commitment order (Dkt. 338) to the extent that he is not legally barred from it.[13]

The question of sufficiency of the evidence must be considered before other errors, because insufficiency of the evidence precludes

_____

[13]     Motions for judgment of acquittal, at the close of the government's case, 11-5-2009, are at TR 2187-2199.

retrial pursuant to the Double Jeopardy clause. *Burks* v. *United States*, [437 U.S. 1](#) (1978); *Hudson v. Louisiana*, 450 U.S. 40, 43-44 (1981).

Prison time due to revocation proceedings is punishment ***for the original crime***. This Court eloquently explained in *United States v. Haymond*, 869 F.3d 1153, 1165 (10th Cir. 2017):

> Second, [18 U.S.C. § 3583(k)](#) is unconstitutional because it circumvents the protections of the Fifth and Sixth Amendments by expressly imposing an increased punishment for specific subsequent conduct. In <u>Johnson v. United States</u> , [529 U.S. 694](#), [120 S.Ct. 1795](#), [146 L.Ed.2d 727](#) (2000), the Supreme Court made clear that, in order to avoid serious constitutional concerns, **revocation of supervised release must be viewed as punishment for the original crime of conviction**, not as punishment for the violation of the conditions of supervised release. <u>Johnson</u> , [529 U.S. at 699–700](#), [120 S.Ct. 1795](#) ; <u>id.</u> at 700, [120 S.Ct. 1795](#) (noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."); <u>id.</u> at 701, [120 S.Ct. 1795](#) ("[P]ostrevocation penalties relate to the original offense."); <u>Cordova</u> , [461 F.3d at 1186](#) ("It is well-settled that supervised release is 'part of the penalty for the initial offense.' " (quoting <u>Johnson</u> , [529 U.S. at 700](#), [120 S.Ct. 1795](#) )). Specifically, **these concerns include the fact that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."** <u>Johnson</u> , [529 U.S. at 700](#), [120 S.Ct. 1795](#) (citing [18 U.S.C. § 3583(e)(3)](#) ). Further, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the

same offense." Id. "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." Id. (collecting cases). "We therefore attribute postrevocation penalties to the original conviction." Id.
(Emphases added)

This brings front and center the central question in this case. What was the "original crime of conviction?" Presumably this term has the same meaning as the term "offense of conviction" in USSG § 5F1.5. Thus far, the District Court and the government have both avoided these questions like the plague.

The District Court at the revocation hearing cited *United States v. Mike*, 632 F.3d 686 (10th Cir. 2011), a case also cited by *United States v. Sunday*, 447 F. App'x 885, 889-90 (10th Cir. 2012)(unpublished) Revocation TR 91-92. The District Court acknowledged that Stilley objected to the special conditions. *Id. lines 24-25 of 91, plus lines 1-2 of 92*. The District Court acknowledged a "conceivable" legal duty to make specific findings, as required by USSG §5F1.5. *Id. page 93*.

The District Court made its USSG §5F1.5 findings at Revocation TR 93-97. Those findings consisted of quotations or elaborations of the findings the District Court made at the original sentencing hearing in 2010. Furthermore, the District Court set forth its findings at Docket

[778, pages 4-6](#), stating specifically that they were quotations or elaborations of the 2010 findings.

Those findings are based *solely* on the "theft theory" that was raised by the government long after trial, and after the District Court's deadline for dispositive motions. [Dkt. 290, pg. 2](#).  There is nothing else.

Furthermore, there are no specific findings of fact, only *ad hominem* attacks.  The District Court doesn't say "Stilley stole X dollars from Patterson in 2003" (Count 3) or "Stilley stole X dollars from Turner in 2005," (Count 4) because *he can't*.

There was no attempt to make findings concerning the "offense of conviction."

**C.    The District Court violated judicial estoppel, by making findings based on a theory first raised after the dispositive motion deadline.**

That violates the doctrine of judicial estoppel.[14]  The core concept of judicial estoppel was set forth in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) as follows: "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may

---

[14]    Block quotes concerning this doctrine are available at [Docket 774, pages 11-15](#).

not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis* v. *Wakelee*, [156 U.S. 680, 689](156 U.S. 680, 689) (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram* v. *Herdrich*, [530 U.S. 211, 227](530 U.S. 211, 227), n. 8 (2000).

Several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States* v. *Hook*, [195 F.3d 299, 306](195 F.3d 299, 306) (CA7 1999). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982). A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See *Davis*, [156 U.S., at 689.](156 U.S., at 689.)

As to the first element, the government claimed pretrial, in written pleadings, not less than 6 times, that Springer *earned* money, and didn't pay taxes on it. Dkt. 701, pg. 24-25. You can click through to see the exact pleading referenced, for each entry in the Timeline.[15] Read the quotes in context, decide for yourself.

After trial the government confessed that, absent a finding that the defendants stole the money, the jury **would have acquitted**. Dkt. 701, pg. 23. The government's first and last theories of criminal liability are in irreconcilable conflict with each other.

If Springer earned the money, Stilley had a civil, criminal, and ethical duty to pay over the money. In fact, California bar disciplinary authorities say that failure to promptly so pay such monies is presumptively worthy of a 3 month suspension from the practice of law.[16] California rules are cited because they are exceptionally well

_____

[15] The filemarked version of this document, Dkt. 694-4, has corrupted embedded links, apparently arising out of the filing process. Thus the use of a version that doesn't have filemark headers.

[16] The referenced provision is at page 187 of Rules of Procedure of the State Bar of California: Title IV. Standards For Attorney Sanctions For Professional Misconduct Part A.; *Standard 2.2: Commingling And Other Trust Account Violations*. The page number may change with revisions of this resource.

developed and because Charles O'Reilly is licensed there, not because

other lawyer ethics rules would allow a different result.

The District Court accepted the government's original premise,

thus establishing the second element.  For example, on the first day of a

3 day sentencing proceeding, at page 85 of the sentencing transcript,

the District Court said:

> 4 But the overarching question of whether the funds that you
> 5 received over the years that were involved in this case were
> 6 **received by you for services rendered** has been **conclusively**
> **7 resolved against you by the jury verdict**.
> (Emphases added)

As to the third element, the government admitted, in writing, that

unless the jury relied on the theory of theft, they would have acquitted,

at least as to Count 4. Dkt. 701, pg. 23. In other words, Stilley is

***necessarily*** innocent of the crime, unless the jury relied on a theory

that violates the 5th Amendment right to indictment, judicial estoppel,

and a host of other salutary legal doctrines.

The US Supreme Court at pages 749-50 of *New Hampshire v.*

*Maine* explained that the fundamental purpose of the doctrine is "to

protect the integrity of the judicial process," *Edwards* v. *Aetna Life Ins.*

*Co.*, 690 F.2d 595, 598 (CA6 1982), by "prohibiting parties from

deliberately changing positions according to the exigencies of the moment," *United States* v. *McCaskey*, 9 F.3d 368, 378 (CA5 1993). See *In re Cassidy*, 892 F.2d 637, 641 (CA7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen* v. *Zurich Ins. Co.*, 667 F.2d 1162, 1166 (CA4 1982) (judicial estoppel "protect[s] the essential integrity of the judicial process"); *Scarano* v. *Central R. Co.*, 203 F.2d 510, 513 (CA3 1953) (judicial estoppel prevents parties from "playing `fast and loose with the courts.'" Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis* v. *Chen*, 626 F.2d 933, 938 (CADC 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell* v. *Rolfs*, 893 F.2d 1033, 1037 (CA9 1990).

All the equitable considerations in this case weigh in favor of application of judicial estoppel. The Court was mistaken about the substantive counts of conviction against Stilley, saying that he was convicted of tax fraud. Revocation TR 19. See also Revocation TR 94, line 8. Tax fraud is criminalized at 26 U.S.C. 7206, and carries a maximum penalty of 3 years per count. Id. In fact Stilley was convicted

of two counts of tax evasion under [26 U.S.C. 7201](), [17] which carries a maximum penalty of 5 years in prison.  [Dkt. 338, pg. 1]().

The government abandoned the original theory of criminal liability, apparently because they belatedly realized that their pretrial theory exonerates Stilley.  If the District Court plugged in the facts of the government's pretrial theory, for the latest iteration of the special conditions, it would have to explain why Stilley must now be prevented from paying the *just debts of trustors*, whose money is held in trust by Stilley. That's an absurdity. Add to this the fact that the alleged purposes of the expenditures was for 1st Amendment peaceful petition, constitutionally protected criminal defense, etc.

This Court can't use the first theory for another reason.  There are only two substantive counts.  Count 3 involves Eddy Patterson and tax year 2003.  Count 4 involves Patrick Turner and tax year 2005.  Eddy Patterson conceded that Stilley merely followed Patterson's instructions, in conveying his money from the trust account.  [Trial TR 798-799]().  He was a sophisticated businessman, and never complained about the billings. *Id.*

---

[17]    18 U.S.C. 2, the aider and abettor statute, is also listed.

Patrick Turner testified that Stilley just followed Turner's orders. Trial TR 1515.  He also said that he had no evidence that Stilley committed any crime, which wouldn't be true if Stilley stole or helped steal his money.  *Id.*  The government's pretrial theory is utterly precluded, with respect to Stilley, by *the evidence that the government presented*.

When Stilley filed his motion under 28 U.S.C. 2255, (Dkt. 701) to set aside his conviction, the government raised statute of limitations. The District Court dismissed that petition, solely on grounds of limitations, without requiring the government to respond to the factual allegations.

Statute of limitations is no defense here. The government chose to incarcerate Stilley again, knowing full well that their original conviction was legally and factually unsound.

Tellingly, counsel for the government didn't ask for the re-imposition of the special conditions. OKWD USPO Aric Holloway asked for re-imposition of the special conditions.  OKWD Dkt. 8, pg. 3.  Jeff Gallant, at the revocation hearing, asked for 2 years of prison, with no supervised release to follow.  Revocation TR 105.

Gallant and O'Reilly knew that incarceration destroyed Stilley's ability to appeal Docket 338. They didn't want to change a recipe that worked.

**D.** **The special conditions, with their required findings, are inextricably intertwined with the underlying judgment and commitment order.**

*All* the special conditions require at least some consideration of the nature of the offense **of conviction**. Honest consideration of that question would inevitably prove that there is no lawful and ethical theory upon which ***any*** special conditions might rest. Government lawyers are ethically barred from taking any position that would save the special conditions. Failure to correct known falsehoods in the record is a violation of the oath of office of any Oklahoma licensed attorney involved in this case. Dkt. 699, pg. 7.

USSG § 5F1.5 provides in pertinent part:

USSG § 5F1.5 **Occupational Restrictions**

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or **limiting the terms on which the defendant may do so**, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the **offense of conviction**; and

(2) imposition of such a restriction is reasonably necessary to protect the public because **there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to <u>that for which the defendant was convicted</u>.**
(Emphases added)

*United States v. Sunday*, 447 F. App'x 885, 889-90 (10th Cir. 2012)(unpublished) discusses the findings required for occupational restrictions.  Stilley at <u>Docket 750, pg. 9-11</u> quoted extensively from that case.  Since that information is a click away, it won't be necessary to reproduce the entire quote.

### E.     Neither the District Court nor the government believe that the evidence is sufficient to convict Stilley – of anything, on any theory, then or now.

Every theory relied upon by the government or the district court is fatally flawed.  By their acts they telegraph their knowledge and belief of that fact.  Consider the major flaws in the chief theories.

1) Pretrial theory – Stilley's conduct wasn't a crime at all, it was a legal duty.  He paid the just debts of clients out of client trust funds, at their express direction. Plus they abandoned it, by express words – how do they dredge it up again now?  They abandoned the pretrial theory because it proved Stilley was innocent.  It hasn't gotten better with age.

41

2) Trial theory – that doesn't solve the problem of criminal

liability for Stilley.  If the "gift vs. compensation for services"

dichotomy is basically irrelevant, Stilley had to pay the money

over *either way*.  It's a *black and white* ethical duty for lawyers.

3) Post-trial theft theory – this is flatly contradicted by the

evidence.  This theory wasn't even raised until after the

deadline for dispositive motions. Plus, the government would

need some evidence that Stilley knew about an effort to steal,

and helped in some way.  ALL of this is conspicuous by its

absence.

Humans often communicate more by their actions, accidentally,

than they do by their words. Plus, because these representations are

made subconsciously, they're more reliable indicators of the true state

of mind of the speaker.

The government cannot **lawfully** go beyond the indictment.  See

*Bousley v. United States*, 523 U.S. 614, 624, 118 S. Ct. 1604, 1612

(1998):

In this case, the Government maintains that petitioner must
demonstrate that he is ***actually innocent*** of both "using" and
"carrying" a firearm in violation of § 924(c)(1). But petitioner's

indictment charged him only with "using" firearms in violation of § 924(c)(1). App. 5-6. And there is no record evidence that the Government elected not to charge petitioner with "carrying" a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not "use" a firearm as that term is defined in *Bailey*.
(Emphasis added)

The government must prove 1) that Stilley is guilty of the charges of ***the indictment***, and 2) that the occupational restrictions at issue are necessary to prevent ***similar*** criminal activity in the future.

Pretrial, the government repeatedly stated their theory that Springer ***earned*** the money but didn't pay taxes on it. After trial, they said that if the jury hadn't concluded that Springer & Stilley stole Turner's $250,000, they would have acquitted.

In other words, the government admits that Stilley ***could not possibly be guilty*** of the charges **of the indictment**. That means when the District Court (or the panel assigned to this appeal) does the analysis required by USSG § 5F1.5, the findings will prove that the special conditions are thoroughly contrary to the Sentencing Guidelines.

A district court abuses its discretion when it ***bases a decision*** on a clearly erroneous finding of fact or an erroneous conclusion of law, or

when its ruling manifests a clear error of judgment. See *Kilgore v. Attorney Gen. of Co.*, 519 F.3d 1084, 1086 (10th Cir.2008).

Stilley has already served two full 5 year prison sentences, plus 3 additional years of additional custody,[18] as of April 22, 2023. Therefore, the loss of ***any*** count of conviction entitles Stilley to restoration of his full liberty, without any "supervised release." *United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed. 2d 897, 906-907 (2019).

That's an impressive attack on the government's case – especially when you consider that *the government is the attacker*. But you can see that they did it – and that's not ***the half of it***.

Stilley filed a second motion for modification of the special conditions of supervised release. Dkt. 774. The District Court was exceedingly displeased, and told the government that:

> In responding, the government may disregard all matters in the motion, doc. no. 774, which <u>question or challenge any aspect of the validity or legality of the underlying prosecution and convictions.</u> The response need only address the questions raised in the motion with respect to the defendant's conditions of supervision. **The defendant, Oscar Amos Stilley, is warned**

---

[18]    Supervised release is considered "custody" for purposes of a petition under 28 U.S.C. 2255. *U.S. v. Cervini*, 379 F.3d 987, 989 n.1 (10th Cir. 2004); <u>Oyler v. Allenbrand,</u> <u>23 F.3d 292, 293-94</u> (10th Cir. 1992)*.*

**that the filing of additional pleadings challenging any aspect of his underlying convictions may cause the court to impose filing restrictions.**
(Bold emphasis in original, underlining added)

The government filed a response in opposition. [Dkt. 776](). The government had not one word to say about the relationship between the "offense of conviction" and the special conditions of supervised release. They can't. They already know that Stilley is ___*not guilty*___ of the underlying offense – no matter which "underlying offense" they choose.

Stilley's record evidence is demoted to the status of "hyperbole and speculation." [Dkt. 776, pg. 4](). Jeff Gallant references "Stilley's past criminal activity" without saying *what specifically* this alleged "criminal activity" is. *Id.* Of course – he can't say what it is, without admitting that Stilley is absolutely right in saying that all of the government's theories are pure *garbage*. If he makes the slightest effort to shoulder his burden under [USSG § 5F1.5](), he confesses that Stilley is innocent – of the underlying charges embodied in [Docket #338](), and everything to follow.

Stilley asked the District Court to say what Stilley did wrong, offering to make corrections. [Dkt. 777](). The District Court excused the government from even responding to this motion, ([Dkt. 778, pg. 1]()) for

one reason.  The District Court knows that Stilley, in filing [Docket 774](#),

*did nothing wrong*.  Stilley did absolutely nothing to justify any filing

restrictions.  That's what both the District Court and the government

are saying, by their actions, if not by their words.

Stilley exercised his 1ˢᵗ Amendment right to peaceful petition.  He

is not guilty of any count of the purported indictment, or of any

violation of supervised release.  Every single theory of criminal liability

is ***fraudulent***.  There is no record evidence to support any theory of

criminal liability, that the government might choose.

The evidence is utterly insufficient to sustain any findings of guilt

or punishment whatsoever.

## II.    The District Court Was Not Legally Authorized to Preside, Presided on the Basis of Invalid Summons and Charges, and Furthermore Repeatedly Declined to Keep His Own Word.

### A.    Standard of Review.

This Court reviews the district court's legal rulings *de novo* and its

findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771,

774 (10th Cir. 1998).

## B.    This court has stitched together at least 13 cross-designations, for Oklahoma district judges.

Stilley at the first alleged that there was no cross-designation, authorizing Stephen P. Friot, a district judge in the OKWD, to preside in the OKND at any time after the return of the criminal mandate. Docket 735.

Stilley came by it honestly. The district court clerks didn't know of any such cross-designation orders. Nor did the 10th Circuit clerk – at first. Then Sheila Zuschek, of the Office of the Circuit Executive, kindly helped us out. She emailed me all the cross-designations 2009 through 2021 inclusive. Dkt. 745-1.

That's not a public law or properly promulgated rule. The lack of publication offends due process on its own. If this Court thinks that a *de facto* permanent rule created by stitching ostensibly "temporary" orders together is an honorable way to proceed, it should incorporate these orders into the appropriate local rules.

## C. Thirteen years and counting isn't statutorily authorized, and has been prejudicial to Stilley.

These cross-designation orders aren't "temporary" within the meaning of [28 U.S.C. § 292(b)](#). Nor are they in the public interest. They aren't constitutionally authorized. They aren't statutorily authorized.

Where did the judges of the OKND recuse in Stilley's case? The docket sheet should have recusals for each judge. They aren't there.

Stilley has argued that Stephen P. Friot was recruited to be the District Judge, because for example the fact that he **refused to rule at all**, when a ruling would have exonerated Skoshi Thedford Farr. [Docket 699, pg. 8-10](#).[19]

So what happened in this case?

1) The District Court transferred the case to the OKWD, *sua sponte*, ([OKWD Dkt. 1](#)) whereupon Aric *Holloway*, a US Probation Officer working in the William J. *Holloway,* Jr., Courthouse, made accusation against Stilley. Not a solitary OKND US Probation Officer has fingerprints on these accusations.

---

[19]    Using the filemark header pagination, which will be done other places as well. Links should make this protocol easier.

2) The District Court issued an order stating that he would vacate the order of transfer if Stilley could persuade him that jurisdiction didn't lie in the OKWD. Dkt. 13.

3) When Stilley "chinned the bar" with his jurisdictional arguments, the District Court decided to transfer all the allegations and process, including the summons, back to OKND. OKWD Dkt. 20.

4) The summons, formerly OKWD Docket #4, disappeared from the OKWD docket, without a trace or explanation. OKWD Docket, pg. 2.

5) The summons re-appeared as Docket #739[20] in the OKND. The docket entry honestly states the source as OKWD, and indicates that it "contains one or more restricted pdfs." Why the public shouldn't see this is not explained.

6) The District Court proceeded in such a "hurry-up" manner that he had no time for an initial appearance, (Dkt. 742) and no time to re-appoint standby counsel picked by the District Court. Dkt. 751, pg. 2. Stilley sought the re-appointment of Robert

---

[20]   This is 750 pages, a large file.

Burton, IV, who sat through the entire trial and sentencing, and upon whom the District Court lavished the most effusive praise, in an order granting him attorney's fees. Dkt. 418.

7) The District Court told Stilley that he would forgive the past if Stilley would comply going forward. Revocation TR pg. 10.

8) When Stilley agreed to comply, the District Court decided that he needed the hearing after all – right after Stilley mentioned attorney-client privileged materials. Revocation TR pg. 20. Soon after he found Stilley guilty, sentencing him to 3 months in prison plus 33 months with the same onerous special conditions of supervised release as before.

Stilley would love to explain further, but he has only 13,000 words. He asked for 18,000 words, but this was denied.

Stilley is entitled to complete relief on the basis of the other issues. Nevertheless, this Court currently has a secret system that gives all the Oklahoma US District Court judges a de facto commission to all three Oklahoma districts. Apparently this system allows, perhaps even presumes, the evasion of salutary rules calling for random assignment of judges.

Regardless of whether this panel is able to provide complete relief based on other points on appeal, the Court should remedy the system, and ensure that its rules and policies on this subject are reasonably available to the public.

## III. The District Court Violated Due Process by Convicting Stilley Of A Legally Required Act.

### A. Standard of Review.

This Court reviews the district court's legal rulings *de novo* and its findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998).

### B. Due process requires fair warning that conduct may be criminal.

In *United States v. Conley*, 942 F.2d 1125, 1127-1128 (7th Cir. 1991) the Court explained:

> [**2] Under *Commissioner v. Duberstein*, 363 U.S. 278, 285, 4 L. Ed. 2d 1218, 80 S. Ct. 1190 (1960), the donor's intent is the "critical consideration" in distinguishing between gifts and income. We reverse Conley's conviction and remand with instructions to dismiss the indictment against her because the government failed to present sufficient evidence of Kritzik's intent regarding the money he gave her. We also reverse Harris' conviction. The district court excluded as hearsay letters in which Kritzik wrote that he loved Harris and enjoyed giving things to her. These letters were central to Harris' defense that she [*1128] believed in good faith that the money she received was a

nontaxable gift, and they were not hearsay for this purpose.

**We do not remand Harris' case for retrial, however, because Harris had no fair warning that her conduct might subject her to criminal tax liability.** Neither the tax code, the Treasury Regulations, or Supreme Court or appellate cases provide a clear answer to whether Harris owed any taxes or not. ......
(Emphasis added)

Consider the facts:

1) The government says it is not criminal to earn income.  Dkt. 42 pg. 3

2) The government claimed not less than 6 times that Springer had earned income, which by necessary implication means he was *entitled* to the money; Timeline pg. 1-7

3) Pursuant to Arkansas Rule of Professional Conduct 1.15 (Ark. R. Prof. Cond. 1.15), Stilley had a legal and ethical duty to *promptly deliver* to any "third person entitled to receive" such moneys, or face professional discipline.  This is true whether the money was compensation, donation, or gift.

4) Asked if Stilley or Springer had interfered with any IRS official in the performance of their official duties, Brian Miller,[21] who

---

[21]     A "fraud technical advisor" at the IRS. TR 1964.

watched the whole trial, couldn't think of a single name. TR 2127

5) Stilley couldn't file Springer's tax return if he tried, amongst other reasons because of the requirements of Form 56 and Form 2848.

6) Springer answered all questions from IRS employees. TR 563; TR 2366 Without controversy, the IRS had sufficient information from which it could have assessed a tax, giving Springer fair notice and opportunity to litigate his contentions in a civil proceeding. The government also seized all of Springer's financial papers. Thus Springer already provided papers and answers sufficient to constitute a "tax return" as defined by *United States v. Stillhammer*, 706 F.2d 1072, 1074-1075 (10th Cir. 1983) and *United States v. Patridge*, 507 F.3d 1092, 1094-1095 (7th Cir. 2007). Dkt. 701, pg. 40.

Springer bitterly complained that he faced a "heads I win tails you lose" proposition, because O'Reilly said ***keeping*** property on which Patrick Turner had a lien was theft, but ***giving it back*** was tax evasion. Sent. TR 339

## C.    Conduct may not at once be legally mandatory and criminally prohibited.

That's the same trick bag for which Stilley is now serving supervised release after having served three consecutive five (5) year prison terms, plus 3 months on revocation of supervised release.  If Stilley pays the money to the "person entitled," in compliance with Ark. R. Prof. Cond. 1.15, he is denounced as a conspirator and a tax evader. If he doesn't, he is *in fact* a thief, guilty of a real crime that real people recognize as a crime and an evil deed.

How was Stilley placed on notice that paying money to a person who *by the government's own pretrial theories* allegedly "earned" the money, is nevertheless a crime?  How was Stilley was given notice of some lawful way, not contrary to his oath of office as an Arkansas attorney at law, to avoid criminal liability?  Stilley asked for this at Dkt. 701, pg. 40-41.

Stilley by his attorney's oath was bound not to refuse the *cause of the oppressed*, for considerations personal to himself.  Turner engaged in what otherwise appears to be bizarre behavior precisely because he had *twice* heard US Attorney Don Davis comment of defendants in criminal tax litigation that "we left them with too much money."  TR

1460.  Stilley alleged these facts in his 2255 motion.  Dkt. 701, pg. 37.

If wrecking a target's finances preparatory to a criminal prosecution doesn't make the victim "oppressed," how should we define that word?  The US government would not call this justice, if another sovereign did it.  Consider the pertinent parts of 22 U.S.C. §1741:

> **(a) Review**
> The Secretary of State shall review the cases of United States nationals detained abroad to determine if there is credible information that they are being detained unlawfully or wrongfully, based on criteria which may include whether-
> **(1)** United States officials receive or possess credible information indicating innocence of the detained individual;
> ...........
> **(5)** the individual is being detained in violation of the laws of the detaining country;
> .............
> **(10)** due process of law has been sufficiently impaired so as to render the detention arbitrary; …

Deuteronomy 16:20 says "**Justice**, and **only justice**, you shall follow, that you may live and inherit the land that Yahweh your Elohim is giving you."[22] We don't have to ask what Washington would say if another sovereign claimed this was "justice."  Look at what they say, justifiably, about the detention of Evan Gershkovich, by Moscow.

---

[22]      ESV, modified to insert the sacred name & authorized title.

Turner was terrified of the governmental frauds and corrupt practices that have caused Stilley to be sent to prison despite his innocence. Yet Charles O'Reilly assured the District Court that ***any rebuttal*** of Stilley's declaration under oath that the government had "scorched the earth" on him "*need not be said.*" Dkt. 705 pg. 5.

## IV. O'Reilly And the District Court Have Worked Together to Perpetrate a Fraud Upon the Court.

### A. Standard of review

This Court reviews the district court's legal rulings de novo and its findings of fact for clear error. *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998).

### B. Legal test for "fraud on the court."

The legal test for fraud on the court is set forth at *Weese v. Schukman*, 98 F.3d 542, 552 (10th Cir. 1996):

> Weese alleges that Dr. Schukman committed fraud on the court by allegedly concealing certain material facts during discovery and trial. When alleging a claim of fraud on the court, the plaintiff must show by clear and convincing evidence that there was fraud on the court, and all doubts must be resolved in favor of the **finality of the judgment**. We recently summarized the nature of the "fraud on the court" claim as follows:
>
>> Fraud on the court . . . is fraud which is directed to the judicial machinery itself and *is not fraud between the parties*

> or fraudulent documents, false statements or perjury. It has
> been held that allegations of nondisclosure in pretrial
> discovery will not support an action for fraud on the court . .
> . . It is thus fraud where the court or a member is corrupted
> or influenced or influence is attempted **or where the judge
> has not performed his judicial function**--thus where the
> impartial functions of the court have been directly corrupted.
> (Italics in original; other emphases added)

On the following page the *Weese* court explained the policy

considerations behind the strict construction of "fraud on the court:"

> (emphasis added.) *See also* 7 *Moore's Federal Practice* P 60.33, at
> 60-360 (noting that fraud on the court should "embrace only that
> species of fraud which does or attempts to, subvert the integrity of
> the court itself, or is a fraud perpetrated by ***officers of the court***
> so that the judicial machinery cannot perform in the usual
> manner its impartial task of adjudging cases that are presented
> for adjudication"). **"Fraud on the court" is tightly construed
> because the consequences are severe. It may permit a
> party to overturn a judgment *long after it has become
> final.*** Fed. R. Civ. P. 60(b) ("This rule does not limit the power of
> the court . . . to set aside a judgment for fraud upon the court.").
> Thus, it runs counter to the **strong policy of judicial
> finality**. *Robinson*, 56 F.3d at 1265-67; *see Moore's Federal Practice* P
> 60.33, at 60-357, 358, 360-61 for examples of what constitutes
> fraud on the court.
> (Emphases added.)

The doctrine of "fraud on the court" acts as a deterrent to the very

conduct Stilley complains of in this case. All the players in this case

worked together, to ensure that Stilley would be incapable of

submitting a competent appellate brief. That is a quintessential fraud

on the court, within the 10th Circuit's definition of the term. Stilley's

judgment therefore effectively never becomes final, unless and until

Stilley gets the one direct appeal to which he is by law entitled.

C.  The record below simplifies the analysis, and provides a straight shot at a legally correct ruling.

This case presents less difficulty, because the District Court twice

refused to rule on a proper motion. First the District Court on 12-9-

2009 *sua sponte* struck Docket 261 and 263, which would have

necessarily resulted in the entry of a judgment of acquittal, as to Oscar

Stilley. Dkt. 264.

Stilley repeatedly showed the District Court that his own

understanding of the law prohibited that *sua sponte* order. See e.g. Dkt.

695, pg. 19-23; Dkt. 701, pg. 44-49. It was illegal for a laundry list of

reasons. *Id.*

Stilley asked the District Court to order the government to

respond to pages 4-13 of Docket 263. Dkt. 774, pg. 5. That's 10 pages, it

can't be too long. Nobody contends that the government has ever

forthrightly responded to those arguments.

The District Court, rather than order the government to respond,

threatened filing restrictions. Dkt. 775. Stilley asked what he did

wrong, and asked for a chance to cure any defects. Dkt. 777. The District Court denied that motion without any response from the government. Dkt. 778, pg. 1.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976). The 10th Circuit has observed that a "failure to make any ruling on a claim that was properly presented in a habeas petition" represents a "defect in the integrity of federal habeas proceedings." *Peach v. United States,* 468 F.3d 1269, 1271 (10th Cir. 2006).

This is an appeal from revocation proceedings, not from a 2255 ruling. However, the legal principle would if anything be stronger here. Stilley faced successive punishment for the original "crime." He continues to face the threat of another prison sentence, amongst other things. What is the legal basis for refusing to rule upon a motion that would exonerate Stilley altogether? If the government thinks they have a legal basis for the District Court's continued refusal to rule, they need to say it and support it, in their response brief.

D.     Stilley's fundamental goal was and still is a ruling based on a truthful record.

Stilley is supplying access to docket numbers 693-779 (less 731), and the full set of OKWD filings. Stilley is also supplying a copy of his proposed preliminary order presented to the District Court preparatory for his motion for reduction of sentence pursuant to 18 U.S.C. 3582(c).

Why a proposed order that wasn't used?  Because Stilley wants this panel to know that the massive amount of time and energy devoted to preparing these documents was *for a reason*.  It was for a reason that has everything to do with the 1st Amendment right of peaceful petition, due process, and the rule of law.

From this proposed order, in particular from the bottom of page 3 through page 5 of this proposed order, you can plainly see the ultimate goal of all these efforts.  Since his transfer to home confinement, Stilley has been asking for a court ruling *on the basis of a truthful record*.

Both O'Reilly and the District Court know that the judgment and commitment orders against Stilley, Dkt. #338 and Dkt. 752, cannot survive a truthful record.  By their actions they tell the world that this is what they know and believe.  Stilley is not guilty.

The District Court's denial of the motion for reduction of sentence

clearly shows that both the government and the District Court conclude that no matter how much perjurious or simply false evidence taints a criminal judgment and commitment order, that is not cause for a reduction of sentence pursuant to 18 U.S.C. 3582(c). [Dkt. 698](), [Dkt. 700, pg. 4]().

If that is true, what is the logical reason for refusing to require the government to correct perjury and embarrassing falsehoods in the record, preparatory to a ruling on a motion for sentence reduction? Based on their legal reasoning, a truthful record would not *change the result*.

There is a reason. The refusal had nothing to do with the proceedings **then** before the court. It had **everything** to do with what both the District Court and Charles O'Reilly knew to be coming **later**.

Confessing to the truth of undeniable facts with respect to the judgment ensures that the prosecutor has an ethical duty to support Stilley's efforts to set aside the judgment. O'Reilly is a California bar licensed attorney. California Rule of Professional Conduct 3.8 provides in pertinent part as follows:

(g) When a prosecutor knows\*⁴ of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall seek to remedy the conviction.

This language tracks the model rules of the American Bar Association.

Thus the hostility to the idea of generating an accurate record.

That's why the District Court says that the unrebutted facts, stated under oath, which absolutely annihilate the foundation of the judgment and commitment order against Stilley, don't even **soften** his assessment of Stilley. Dkt. 700, pg. 4.

E.    Stilley was denied the one direct appeal to which he was by law entitled.

The District Court and O'Reilly would have this Court believe that Stilley did this work after coming to home confinement, but simply refused to do it while he was locked up in prison, in pursuance of the one direct appeal to which he was (and still is) entitled. This is contrary to human experience. The rational conclusion is that the government stomped out Stilley's ability to litigate while he was in prison, *precisely because they* ***didn't believe he was guilty***.

---

⁴    The presence of an asterisk means the word is defined by the California Rules of Professional Conduct.

O'Reilly has neither admitted nor denied Stilley's factual allegations, made under penalty of perjury. Rather, he claims that the falsity of Stilley's claims "*need not be said.*" Dkt. 705 pg. 5. This is of course antithetical to due process, and diametrically opposed to the ethical rules for attorneys. If Stilley's allegations under oath are false, such facts indeed **need to be said**.

Our legal system is heavily dependent upon referent power. In other words, judicial pronouncements should carry weight not merely because of consequences, but rather because our judicial system is fully committed to *finding the truth*, basing its power on more than brute force.

### F.   None of the "tax losses" attributed to Stilley were truthful, none are honestly believed by the government.

Stilley presented proof that *none* of the restitution order is based upon truthful evidence. **All** of the alleged personal tax liabilities of both Stilley and Springer were contrary to the government's own evidence at trial. Dkt. 701, pg. 25-38.

Furthermore, the math is simply wrong. The restitution order of $776,280 is $7,901 more than the amounts that can be found by adding up the claims the District Court used to arrive at a restitution figure to

be placed in his order.  See the table below:

| Basis for alleged liability | Page & line | Amount |
|---|---|---|
| Springer's federal tax liability | Sent. TR 409, line 6 | $299,591.00 |
| Stilley's federal tax liability | Sent. TR 408, line 11 | $377,161.00 |
| Stilley's state tax liability | Sent. TR 408, line 12 | $91,627.00 |
| **Total** | | $768,379.00 |

We can know that the math is wrong by looking at Sent. TR 409, line 12, in which the District Court calculates the total of both state and federal taxes, for both parties, in the amount of $848,565.  From this number subtract the $80,186 he found at line 7 of same page as the state tax obligation of Lindsey Kent Springer.  That mathematical calculation produces exactly the $768,379 shown in the table above.

An order for restitution cannot exceed the amount of the damage or loss.  *United States v. Gallup*, 812 F.2d 1271, 1282 (10th Cir. 1987) We have a plainly illegal restitution order, one which won't survive a trip to the calculator. Yet the government stubbornly refuses to confess to the slightest error, or make such errors known to the sentencing court, or to do any of the things plainly required by attorney ethical rules or their oaths of office.

They correctly divine this to be a slippery slope.  Once they get started, they won't stop until they hit rock bottom, their judgment and

commitment order in the garbage can where it belongs.

Three other claims were made against Stilley. Let's call them the Turner, Patterson, and Roberts claims. Not one of those claims is based on evidence sufficient to support a verdict. Dkt. 701, pg. 30-38. That's the kind of thing that the ethical rules necessarily require a lawyer to confess and correct.

This helps us understand why the District Court struck Stilley's motion for new trial/judgment as a matter of law, and also denied Stilley's motion to get the transcript for sentencing.

The Supreme Court has already stated the requirement that an illegal order be set aside, giving the litigant a fresh start. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62, 66-67 (1965). Applying the teachings of *Armstrong*, the District Court had a duty to set aside his order striking Dkt. 257, 258, 260, 261, and 263.

He knew that his planned judgment and commitment order could not possibly survive a **competent** attack on appeal. The District Court and Charles O'Reilly then tag-teamed to deny Stilley the ability to prosecute the one direct appeal to which he was entitled, precisely because any other approach would ensure the complete exoneration of

Stilley.

Stilley suffered the dismissal of Dkt. 701, his motion under 28 U.S.C. 2255.  Stilley in Docket #713, his response to the government's motion to dismiss his motion under 28 U.S.C. 2255, at pages 3-9, cited and discussed *Robinson v. Ledezma*, 399 Fed. Appx. 329, 329-330 (10th Circuit 2010)(unpublished).  This case indicates that the government had a choice whether or not to raise statute of limitations, in a motion under 28 U.S.C. 2255.  The District Court dismissed the entire 2255 motion on the basis of limitations, the day after the government's time for reply expired - without a reply, of course.

Ethics considerations loom large at every stage.  The question arises.  Can the mighty United States Department of Justice collect on a judgment that it knows to be founded upon false and perjurious testimony, as well as glaring math errors?  Can it collect upon a judgment when it knows of a certainty that the government failed to produce testimony sufficient to support a guilty verdict?  Can it proceed in a manner that violates ethical rules, and achieves a result impossible for a litigant who chooses to obey attorney ethical rules?

Courts are constituted to 1) say what the law is, and 2) to enforce

the law.  If an utterly fraudulent and corrupt judgment can be saved, preserved, and **later enforced** by the simple expedient of destroying the victim's appellate capabilities during the customary time for appeal, **the world** needs to know.  Stilley intends to cut off all plausible deniability concerning whether or not the US government arrogates to itself the raw power to commit a string of frauds to save the crown jewel *fraud first perpetrated*.

## CONCLUSION

This Court should reverse Docket 752, and remand with instructions to dismiss the revocation charges with prejudice to their refiling, and terminate supervision immediately.

To the extent that Stilley is not legally foreclosed from an attack on the original judgment and commitment order, Docket 338, the Court should remand with instructions to reverse and dismiss that judgment too, with prejudice.

To the extent that Stilley is foreclosed from attacking Docket 338 in this proceeding, Stilley respectfully requests explanation why evidence and argument that utterly annihilates the legal foundation for both judgments should nevertheless result only in the downfall of the

latter.

Respectfully submitted,

By: /s/ Oscar Stilley
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above as well as the signature set forth below certify that I have this May 2, 2023 by CM/ECF served all parties entitled to service in this case; furthermore, I certify that the parties to this case (or their counsel) have each, in writing, mutually waived the service of hard copy of briefs and record excerpts.

By: /s/ Oscar Stilley

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS

I, Oscar Stilley, by virtue of my signature below as well as the two foregoing signatures, certify that I produced this brief in the current version of Word, that I have performed a word count, and that the brief in chief herein has 12,986 words, which is less than 13,000 words. This count was obtained by starting with the jurisdictional statement and continuing until just before the words "Respectfully submitted" at the end of the brief.

By: /s/ Oscar Stilley