# In the United States Court of Appeals for the Tenth Circuit

UNITED STATES                                  PLAINTIFF/APPELLEE

v.                          (OKND 4:09-cr-43 SPF-2)
                            (OKWD 5:22-cr-357 F-1)

OSCAR STILLEY                                  DEFENDANT/APPELLANT

AN APPEAL FROM THE ORDER AND JUDGMENT 11-23-2022
REVOKING SUPERVISED RELEASE, ETC

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

THE HONORABLE STEPHEN P. FRIOT PRESIDING

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**APPELLANT'S REPLY BRIEF**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

By: Oscar Stilley
10600 North Highway 59
Cedarville, AR 72932
479.384.2303
479.401.2615 fax
oscarstilley@gmail.com

## Contents

TABLE OF CONTENTS...................................................................1

TABLE OF AUTHORITIES........................................................2

APPELLANT'S REPLY BRIEF ..............................................4

**I.  The Evidence is Insufficient to Sustain the Judgment Entered by the District Court.** ........................................5

**II.  The District Court Was Not Legally Authorized to Preside, Presided on the Basis of Invalid Summons and Charges, and Furthermore Repeatedly Declined to Keep His Own Word.**........24

**III.  The District Court Violated Due Process by Convicting Stilley Of A Legally Required Act.**......................................29

**IV.  This One's For You, Evan Gershkovich.** ...............31

**CERTIFICATE OF SERVICE**...............................................35

**CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS**..................................................................35

# TABLE OF AUTHORITIES

## Cases

*Apprendi v. New Jersey,* 530 U.S. 466 (2000) ........................................ 19

*Billy Wayne Engles v. State*, 366 P.3d 311 (Okla. Crim. App. 2015) ...... 15

*Bottone v. United States*, 350 F.3d 59 (2d Cir. 2003) ........................ 19, 20

*Gross v. Burggraf Const. Co.*, 53 F.3d 1531 (10th Cir. 1995) ................ 16

*Jones v. Wal-Mart, Inc.*, No. 22-5025 (10th Cir. Jan. 9, 2023) .............. 27

*Schlup v. Delo*, 513 U.S. 298 (1995) ........................................ 17

*State v. Burton*, 482 P.3d 739 (Okla. 2021) ............................................ 29

*United States v. Burd*, 86 F.3d 285 (2d Cir. 1996) ................................ 18

*United States v. Cox*, 83 F.3d 336 (10th Cir.1996) ................................ 17

*United States v. Dunkel,* 927 F.2d 955 (7th Cir. 1991) ........................... 16

*United States v. Engles*, 779 F.3d 1161 (10th Cir. 2015) ................. 14, 15

*United States v. Griggs*, 130 F. App'x 303 (11th Cir. 2005) ....... 13, 28, 29

*United States v. Gwendolyn Thomas*, 135 F.3d 873 (2d Cir. 1998). 18, 19, 21

*United States v. Merritt*, 16 F.3d 1222 (6th Cir. 1994) .................... 13, 21

*United States v. Millan*, 91-CR-685 (LAP) (S.D.N.Y. Apr. 6, 2020) ....... 20

*United States v. Ramse Thomas,* 274 F.3d 655 (2d Cir. 2001) (en banc) ................................................................................ 19

*United States v. Smith*, 121 F.3d 701 (4th Cir. 1997) ..................... 13, 21

*United States v. Turner*, 88 Fed. Appx. 307 (10th Cir. 2004) ........... 13, 17

*United States v. Vasquez-Perez*, 742 F.3d 896 (9th Cir. 2014) .......... 28, 29

*United States v. Warren*, 335 F.3d 76 (2d Cir. 2003) .............................. 21

*United States v. Wimberly*, 368 Fed. App'x. 556 (5th Cir. 2010) ....... 28, 29

## Statutes

18 U.S.C. § 3742 ........................................................................ 18

28 U.S.C. § 2106 ........................................................................ 18

28 U.S.C. 2241 ........................................................................... 20

28 U.S.C. 2255 ............................................................... 20, 21, 24

28 U.S.C. 292 ................................................................. 25, 26, 27

## Rules

10th Cir. R. 32.1 ....................................................................... 13

Fed. R. App. P. 32.1 .................................................................. 13

Oklahoma attorney's oath, Title 5, Attorneys and State Bar, Chapter 1,
Appendix 5, *Rules Governing Admission to the Practice of Law in the
State of Oklahoma, Rule 1* ................................................... 8

## APPELLANT'S REPLY BRIEF

The government filed a brief of 4,751 words, less than 37% of the maximum 13,000 words for a principal brief. The government left volumes unsaid – but certainly not because they used their word limit, or didn't have resources or time.

The government's brief is far more remarkable for what it doesn't say than it is for what it does say. It is plain to see that the government has adopted a strategy of ignoring everything for which it has no good answer.

That doesn't mean the government expects to lose. Quite the opposite. The government expects to win despite the fact that they have pretended not to notice a whole room full of elephants.

How do we know? The government regularly concedes arguments when they know they don't have a chance. Persistence in meritless arguments *burns political capital* at a prodigious rate. It makes the mighty US Department of Justice (DOJ) look unethical, greedy, and grasping. It conveys the attitude summarized by the phrase <u>*my side right or wrong*</u>.

Start with the organization. Appellant Oscar Stilley (Stilley)

carefully crafted a table of contents with four major headings.

The government includes *exactly none* of these issues in its table of contents. Under heading "A." the government says that "…Revocation of Supervised Release Was a Proper Exercise of the Court's Discretion." Under heading "B." the government says "Defendant's Arguments Fail." **That's all!** That's the whole of only two principal headings under the "Argument."

The table of contents is laughable because the government has no meritorious response to *any* of Stilley's arguments.

## I.  The Evidence is Insufficient to Sustain the Judgment Entered by the District Court.

Without controversy, insufficiency of the evidence was Stilley's chief argument. Stilley used 5,235 words on the mandatory introductory sections, from the Jurisdictional Statement through the Summary of the Argument, 3,455 words on the insufficiency of the evidence argument, and 4,296 words divided amongst three additional principal headings, under the "Appellant's Argument" portion of the brief.

The government has plenty of evidence on *that which Stilley never challenged*. Stilley counts 91 separate citations to the record. Stilley

repeatedly asked the government if they needed additional record material. They always said that record was fine for them.

Stilley never claimed to have put monitoring software on his computer and phone prior to the hearing. In fact, Stilley stated that he had asked for an agreed 30-day period to file a motion for relief from these special conditions, without fear of revocation. Rev. TR. 56. US Probation responded to say they would be "sending a letter" unless he installed the monitoring software immediately. *Id.*

This brings up a question. How much *evidence* did the government present to support the District Court's ***findings*** in support of imposition of special conditions in the Judgment and Commitment Order, Docket # 752?

The answer is – ***none, zip, zilch, zero, nada***. Let that sink in. Directly challenged to produce evidence, required by law, they produced exactly nothing. They didn't even include a subject heading concerning Stilley's number one point on appeal – challenging *the sufficiency of the evidence.*

On one side is a disbarred and disgraced former lawyer. On the other side are four lawyers from the appellate arm of the Tax Division

of the US Department of Justice. They also have S. Robert Lyons, Chief, Criminal Appeals and Tax Enforcement Policy Section. All these names are set forth under the name of David A. Hubbert, Deputy Assistant Attorney General.

Last but certainly not least is Clinton J. Johnson, United States Attorney for the Northern District of Oklahoma (OKND). His presence calls for an explanation. Stilley sent Mr. Johnson an email on 3-7-2022, with a copy of Docket #699, explaining that this pleading set forth various authorities and arguments showing that he is duty bound to supervise his subordinates, to ensure that they don't violate ethical rules. Stilley furthermore copied Mr. Johnson on a letter sent September 8, 2022. OKWD 5:22-cr-357F Dkt. 14-1. This letter explained that Mr. Johnson, among others, had an ethical duty to make the record conform to the truth. Id. @ 7. If all else fails, the Oklahoma Attorney's Oath unequivocally requires him to correct falsehoods. *Id.*

That's seven (7) licensed government lawyers against one virtually destitute pro se litigant. That's seven lawyers all of whom have grievously breached their ethical responsibilities – no matter where they are licensed. There is no set of attorney ethical rules in the United

States that authorizes or tolerates the government's behavior.

Clinton J. Johnson is "of counsel." Why? Because he prefers to attack and crush an honorable adversary, rather than keep his *word of honor* and his *solemn oath* as an attorney at law. And what is that oath? The Oklahoma attorney's oath, set forth in Title 5, Attorneys and State Bar, Chapter 1, Appendix 5, *Rules Governing Admission to the Practice of Law in the State of Oklahoma*, sometimes abbreviated as 5 Okl. St. Chap. 1, Appx. 5, Rule 1, provides as follows:

> RULE 1. Qualifications to Practice Law in Oklahoma
> Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: **You do solemnly swear** that you will support, protect and defend the Constitution of the United States, and the Constitution of the State of Oklahoma; **that you will do no falsehood or consent that any be done in court, and if you know of any <u>you will give knowledge thereof to the judges of the court,</u> or some one of them,** *that it may be reformed*; you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God.
> (Emphases added)

Mr. Johnson refuses to uphold his solemn oath, or the US or Oklahoma constitutions. He refuses to bring the falsehoods complained of by Stilley to the attention of any court, *that it may be reformed*. He

prefers to duck and run for cover, or perhaps to attack the messenger.

Let's break the latest judgment and commitment order, Docket #752, into the constituent parts. Logically, this can be divided into:

1) A finding of guilt; and,

2) Three months incarceration; and,

3) "Restitution" in the amount of $815,874.93; and,

4) Imposition of 33 months of additional supervised release; and,

5) Imposition of special conditions of supervised release.

Consider the last item on the list – the special conditions of supervised release. Applicable legal authority, including the Sentencing Guidelines and binding caselaw, requires specific findings in order to impose special conditions. The District Judge confessed as much. Revocation TR 93.

The government in its response brief repeatedly alleged *evidence* of failure to install monitoring software and turn over usernames and passwords. This was never challenged. Stilley never claimed that he had done either of those things.

Mr. Jeff Gallant, primary prosecutor on revocation, knew full well that there was absolutely no *evidence* to support the District Court's

probable theory for the imposition of special conditions subsequent to the 3 months of incarceration. That's why he asked for 2 years of incarceration and no supervised release. Revocation TR pg. 105. The 2 years would allow him to stomp out Stilley's ability to effectively appeal. He already knew he was in hot water if he had to defend special conditions, of any kind.

Stilley challenged the government to pick a *theory of criminal liability* and stick to it. The seven lawyers assigned to the government's side of this appellate case refuse to perform this simple task. They already know that any theory they pick is fatally flawed. They won't pick a theory for two reasons, both evil. First, every potential theory has devastating, insurmountable *legal flaws*. Second, they know that there is no ***evidence*** to support any theory that could arguably support any special conditions.

Stilley challenged the *evidence* to support the District Court's imposition of special conditions. It cannot be denied that the District Court blasphemed the name of Stilley, with basically all the vitriol and invective used at the original sentencing. Revocation TR. 92-102.

The government in this case has committed all sorts of flagrantly

illegal acts, but let's distill the argument down to the inescapable core.

Conclusions are not equal to evidence – but both are essential. The government and the District Court were duty bound to 1) pick a theory of criminal liability and/or punishment, including particularly the special conditions, and 2) show sufficient evidence from the record to support that theory.

They didn't pick a theory, and they still won't pick a theory. There is a reason – however wicked and lawless -- for this abdication of duty. They *can't* pick a theory without getting the *theory* shot down for legal reasons. The pretrial theory fails because it assumes that Stilley performed a *legal duty* – plus they abandoned that theory. The trial theory fails because the trial theory leaves Stilley with the same legal duty to pay over the money to the *person entitled*.

The post-trial theory was first raised after the deadline for dispositive motions. Plus it was in irreconcilable conflict with the pretrial theory. The 5th Amendment right to indictment won't allow such ridiculous theory switches – no matter how much evidence is available to support the replacement theory.

The government has a veritable litany of additional problems.

First, there is no evidence to support their theory at sentencing. Second, the evidence – already plainly set forth by Stilley in his opening brief – affirmatively disproves the theory. The witnesses stated unequivocally that Stilley was simply following the plainly lawful orders of his clients. Appellant's Opening Brf. 38-39. He paid the money to the *person entitled* to the money. He paid out the money pursuant to the lawful orders of the *owners of the money*.

When the theory is breathtakingly illegal and the government has absolutely no evidence to support it, what does the government do? It cites an irrelevant proposition *in a footnote*. The government solemnly intones that the proceeds of theft are taxable income. Gov. Response Brf. At 22.

Stilley never challenged this legal principle. That wasn't Stilley's point at all. Stilley made it clear that the "theft theory" wasn't the grand jury's theory, or the government's theory pretrial. That much is inescapable. He also asserted and proved that there is **no evidence** to support the government's ridiculous *implied theory*.

The government erected its own straw man, then attacked it. They might as well forthrightly confess that the conviction and punishment

of Stilley is a *pure unadulterated fraud* – and that they well know and believe that fact. Why else engage in such childish silliness?

The government cited four unpublished cases, none of which were available on Casetext, the legal research tool that Stilley uses. Both this Court's rules and the Federal Rules of Appellate procedure require parties to make copies of such decisions available to the court and opposing parties. [Fed. R. App. P. 32.1(b)](Fed. R. App. P. 32.1(b)); [10th Cir. R. 32.1](10th Cir. R. 32.1). The government didn't do this, so Stilley will do it for them. The cases are:

[*United States v. Turner*](United States v. Turner), 88 Fed. Appx. 307 (10th Cir. 2004)

[*United States v. Smith*](United States v. Smith), 121 F.3d 701 (4th Cir. 1997)

[*United States v. Merritt*](United States v. Merritt), 16 F.3d 1222 (6th Cir. 1994) and

[*United States v. Griggs*](United States v. Griggs), 130 F. App'x 303 (11th Cir. 2005)

*Turner*, *Smith*, and *Merritt* are all cited at page 21 of the government's brief, for the general proposition that revocation proceedings can't be used to challenge the legality of the original sentence. *None* are binding authority – *anywhere* – which should give us some idea of the pathetic weakness of the government's legal theories.

Only *Turner* is a 10th Circuit case. *Turner* has a wealth of principles favorable to Stilley, none more significant than the fact that

the legality of the original sentence can be challenged on the basis of factual innocence.

Back up for a moment to look at *United States v. Engles*, 779 F.3d 1161, 1162–63 (10th Cir. 2015), one of only two 10th Circuit cases cited by the government on this issue, and the **only** published 10th Circuit case cited by the government on this issue. *Engles* involved an attempt to challenge a ***state*** *court* conviction in *federal* revocation proceedings. In fact that was the only challenge. The *Engles* court explained that:

> … Instead, his brief states that "the only issue" on appeal "is whether or not the conduct complained of [in Oklahoma state court] constituted 'loitering.' " Defendant therefore asserts only a straightforward collateral attack on his state court conviction.

The *Engles* court said that the proper forum for challenging a criminal conviction is the court (including applicable appellate courts) where the conviction was entered. Furthermore, at the end of the opinion the court made it clear that a successful attack on the criminal conviction would undermine the revocation sentence, saying:

> As we noted above, Defendant is currently challenging his conviction in Oklahoma state court. Should Defendant succeed with his state court appeal, nothing in this opinion should be construed to prejudice a future motion to vacate Defendant's supervised release revocation.

Rightly or wrongly, Billy Engles lost his state court criminal

appeal. *Billy Wayne Engles v. State*, 366 P.3d 311, 314 (Okla. Crim. App. 2015). Engles got his right to one direct criminal appeal.

The *Engles* court reminded the litigants of the requirement of *evidence* to support *propositions*. At page 1163 the Court said.

> Likewise, in *Reber,* the district court revoked the defendant's probation based not on a separate criminal conviction, but on his "failure to keep faith in reporting with the Court to keep it fully advised regarding [his] financial circumstances" for purposes of paying restitution to his victims. [876 F.2d at 83](#). On appeal, **we reversed because the record contained "no evidence supporting the court's conclusion that [the defendant] failed to provide financial information." *Id.***
> (Emphases added)

The government cited only two 10th Circuit cases in support of its core proposition. *Engles* was the only published case, and wasn't really on point because it was a collateral attack on the criminal judgment of another sovereign, parallel to a direct appeal in state court.

A party litigant should proceed with caution when the sole *published* case in support of its argument is a *de facto* indictment of that litigant's unethical behavior in the case. Stilley has challenged the government to provide record evidence in support of the District Court's factual findings. The government won't provide such evidence because **it can't**.

Evidence in support of the District Court's factual findings is conspicuous by its absence, but that's not all. The evidence affirmatively proves the falsity of the District Court's findings. That's why the government artfully dodges the question of sufficiency of the evidence. If they address the argument, *at all*, they lose.

If they *don't* address the argument or cite to the record, they still lose – just in a more embarrassing way. Here's what this Court said in *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995):

> Without a **<u>specific reference</u>**, "we ***will not*** search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Id.* at 1025; *accord, United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). We **<u>cannot</u>** consider these unsubstantiated allegations in reviewing this appeal.
> (Emphases added)

The government has invited this Court to their gravel parking lot to hunt for delicate white truffles[1] – and apparently to presume their existence as well. However, this Court has repeatedly said that it

---

[1]      In the history of hunting white truffles – which in 2022 were worth an average of $4,500 per pound to the mushroom hunter – none have ever been found in any gravel parking lot. This fact comes courtesy of Bard, Google's sophisticated city cousin. Experienced mushroom hunters laugh uproariously when they hear the question.

*cannot* and **will not** 1) go truffle hunting, or 2) presume record support for unsubstantiated allegations. The rule makes perfect sense for a lot of reasons, not the least of which is constitutional due process. Trying to help a favored litigant – however rarely – puts the disfavored litigant in the position of arguing **with** the court, as opposed to arguing **before** the court.

*Turner* is unpublished, but does not foreclose Stilley's arguments. Rather, it presumes they are legally authorized, on every level. Footnote 1 to that decision is reproduced below, in its entirety.

> **A defendant can also be excused from failing to raise a challenge on direct appeal by showing that the error has resulted in a fundamental miscarriage of justice.** See *United States v. Cox*, 83 F.3d 336, 341 (10th Cir.1996). The miscarriage of justice exception does not apply in this case because Mr. Turner "***has not made a colorable showing of factual innocence***." Id.; see also *Schlup v. Delo*, 513 U.S. 298, 321, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (noting that the miscarriage of justice exception is "explicitly tied" to defendant's innocence). (Emphases added)

The government won't touch the insufficiency of the evidence argument top, side, or bottom because they have no *evidence* in support of the District Court's *findings* in justification of the special conditions. That lack of *evidence* amounts to a blistering indictment of the government's prosecution of this case. That *same* lack of evidence

proves that *both* the convictions and the sentences – originally in 2010 as well as on revocation proceedings – were utterly illegal. Both judgments were fundamental miscarriages of justice. Stilley is actually innocent, within the meaning of applicable law.

*United States v. Gwendolyn Thomas*, 135 F.3d 873 (2d Cir. 1998) is later than the 4th, 5th, and 6th Circuit decisions on page 21 of the government's brief. Consider the following pertinent text from page 876 of *Thomas*:

> The amended sentences were therefore "imposed in violation of law," 18 U.S.C. § 3742(e)(1), and we accordingly vacate them and remand the case to the district court, see id. at § 3742(f)(1). Additionally, **because Thomas' original sentence was also illegal, we likewise vacate that sentence and remand for resentencing.** See 28 U.S.C. § 2106; *United States v. Burd*, 86 F.3d 285, 288-89 (2d Cir. 1996) (noting that the courts of appeals may instruct the district courts to conduct any further proceedings that may be appropriate under the circumstances).
>
> It follows that there *could be no violation* of the probation that was illegally imposed by **these now-void sentences**. *As a result, the sentence based on the revocation of that probation **must also be vacated**. ….*
>
> We therefore remand for resentencing on the original wire-fraud conviction. **We vacate completely the sentence and conviction of probation violation, because there was <u>no lawfully imposed probation</u> that was violated**, and *the conduct that would have violated the probation, had the probation been legally imposed, was not in itself illegal*. Furthermore, because we are wiping the record clean of the probation violation,

and returning to matters as they existed at the time of appellant's original sentencing, *we direct the sentencing court <u>not to consider</u>, in its resentencing, the incident in which appellant cut off the bracelet.*
(Emphases added)

The government cites *Bottone v. United States*, 350 F.3d 59, 63 (2d Cir. 2003) for the proposition that 1) Stilley must be trying to circumvent the limitations on second or successive habeas petitions, and 2) such an attempt is not improved by couching it as a motion to recall the mandate.

*Gwendolyn Thomas*, [2] 135 F.3d 873 is a published decision in the 2nd Circuit. The *Bottone* Court didn't cite *Gwendolyn Thomas,* question its validity, or overrule it. On the basis of case law handed down after his appeal, Mr. Bottone sought to raise certain issues "because the later rulings in *Apprendi v. New Jersey,* [530 U.S. 466](), [120 S.Ct. 2348](), [147 L.Ed.2d 435]() (2000), and *United States v. [Ramse] Thomas,* [274 F.3d 655]() (2d Cir. 2001) (en banc), call into question our prior decision." *Bottone*, 350 F.3d at 61. However, the

---

[2] A decision with a party named Ramse Thomas is cited, (274 F.3d 655) but it is not the same case or the same party. Stilley includes the first name of Gwendolyn Thomas for clarity and ease of reading, even though the standard citation includes only the last name.

panel found that he had failed to raise those specific issues in his direct appeal. *Bottone*, 350 F.3d at 63. The *Bottone* panel at page 65 frankly acknowledged that "there appears to be some inequity in this situation." However serious or meritorious the challenge, Mr. Bottone's motion to recall the mandate wasn't allowed to proceed.

The *Bottone* court noted that Mr. Bottone had two additional separate petitions, one pursuant to 28 U.S.C. 2241 and one pursuant to 28 U.S.C. 2255, pending at the time. *Bottone*, 350 F.3d at 62. Stilley wasn't able to learn the outcome of those actions. However, we can know that the namesake party, Alfred V. Bottone, Jr., was released from prison in 2012, some 18 years after his conviction in May 1994. *United States v. Millan*, 91-CR-685 (LAP), at *44 n.8 (S.D.N.Y. Apr. 6, 2020)[3] That does not appear to be consistent with the service of a 30 year prison sentence.

*Bottone* presumes the right to raise a claim of actual innocence. *Bottone*, 350 F.3d at 63. Stilley has proven his actual innocence *from the record*. The government responds with nothing but artful dodging.

---

[3] Stilley found this on Casetext and assumes it is readily available to the Court and opposing counsel. Just in case, a link to Millan at the referenced chart is provided here.

*United States v. Warren*, 335 F.3d 76 (2d Cir. 2003) is no help whatsoever to the government. In that 2nd Circuit case Mr. Warren pleaded guilty and didn't appeal the conviction and sentence. On revocation proceedings, he didn't even object to the 3 year sentence, at the district court. Reviewing for plain error, the *Warren* court said that it found no error at all, much less "plain error." Once again the panel felt no need to overrule, distinguish, or even mention *Gwendolyn Thomas*.

Smith, 121 F.3d 701 and Merritt, 16 F.3d 1222 are in accord. Both say that the litigant who neither appeals nor files a motion under 28 U.S.C. 2255 is foreclosed from attacking a condition of supervised release. Whatever else may be said of Stilley, it cannot be rationally denied that he sought appeal, fought vigorously to get it, staked claim to an appeal after the abuse preventing a timely appeal ceased, and continues to vigorously pursue that right to this very day.

*Gwendolyn Thomas* is still good law in the 2nd Circuit. At the very minimum, nothing in Casetext **or** in the *Warren* or *Bottone* decisions suggests that *Gwendolyn Thomas* has been overruled.

Anything less makes the law conflict with itself. As noted in Stilley's opening brief, punishment for revocation of supervised release is punishment *for the original crime*. Stilley's opening brf. at 31. If the original judgment is **illegal**, punishment on revocation of supervised release is a knowing, intentional punishment of the defendant *in defiance of law*.

The District Court was offended when Stilley challenged the evidence supporting the "theft theory" in a pleading. He said the government didn't have to respond to any theory that would undermine the original judgment. Dkt. 775.

The government in its 4 page response to the motion made no attempt to identify any *theory* **or** *evidence* that would support the special conditions *in the revocation judgment*. Dkt. 776. That's a tacit admission that evidence in support of the special conditions imposed on revocation is inextricably intertwined with the original conviction. That's a tacit admission that the evidence is insufficient to support either the original judgment, or the revocation judgment, or the special conditions to follow the 3 months of additional confinement.

This Court can see the multiple occasions in which Stilley has set

forth links to the record, showing the government's pretrial theory of criminal liability. For the pretrial theory, every single link goes to a pleading. Dkt. 694-4, pg. 1-7.[4] Stilley had no access to these pleadings while he was in prison. Stilley opening brf. at 11. He so stated under oath, and nobody challenged it. *Id.* Stilley filed a 5 page motion and 5 page brief in support of getting the transcript early, but on the standard schedule so the taxpayers would pay not a penny more than the minimum cost. Stilley opening brf. at 7. This was unilaterally denied, despite the lack of written opposition from the government.

Stilley has already shown that judges are not pigs, hunting for truffles. When the appeal was underway in 2010 and 2011, it was Stilley's job to prove the theory switch by citations to the official record as defined by Fed. R. App. P. 10(a). Stilley was denied access to the record, which rendered that task an impossibility.

Everyone knows that such conduct is illegal, immoral, and unethical. That conduct doesn't pass the "smell test" anywhere. Yet the government, to this very day, denounces Stilley for failing to do the

---

[4] This is a filed document, but the links don't work on the version that has filemark headers.

impossible.

Stilley reserved his rights, in plain language. Within 1 year of coming to home confinement, he filed a petition under 28 U.S.C. 2255, explaining the fraud that was practiced upon him, and showing that he is and at all times was factually innocent. Dkt. 701.

Query. What is the probability that Stilley would do the necessary work as quickly as practicable, and file before the expiry of any arguable deadline, *after* the mighty US DOJ lost the power to crush his ability to litigate, but would not do it *timely*, absent unlawful obstruction?

The answer is "zero." Without controversy, Stilley would have prosecuted his direct appeal to its lawful conclusion, but for the lawless obstruction of his adversary the US Department of Justice.

## II. The District Court Was Not Legally Authorized to Preside, Presided on the Basis of Invalid Summons and Charges, and Furthermore Repeatedly Declined to Keep His Own Word.

Stilley used only 4 main headings, and still came within 14 words of the 13,000-word limit. Stilley's request for overlength brief was denied. The government didn't follow Stilley's organization, doubtless to

avoid admitting that they had no meritorious argument against Stilley's #1 argument, as to the insufficiency of the evidence. They had no meritorious argument against *any* of the 4 primary headings. The lack of any headings corresponding to Stilley's headings makes the organization of the reply somewhat more problematic.

Stilley cited 28 U.S.C. 292(b) and provided a link. The text is short and direct, as follows:

> **(b)** The chief judge of a circuit may, ***in the public interest***, designate and assign ***temporarily*** any district judge of the circuit to hold a district court in any district within the circuit. (Emphases added)

The Chief Judges of 10th Circuit have for at least the past 14 years issued orders of mass cross-designations for the district judges for the 3 districts of Oklahoma. None of these orders purport to identify the public interest, or the need for cross-designating all judges who don't already have a bona fide commission, from Congress to all 3 districts.

Stilley contends that 1) there is no public interest supporting these cross designations, 2) they aren't temporary within the meaning of the law, and 3) that the designations were used to assign a judge hostile to Stilley and hostile to due process and peaceful petition.

The government doesn't claim the cross-designations, considered

in the aggregate, are *de facto* temporary. Rather the government claims Stilley cites no authority for his proposition.

Stilley admits that he did a search of all the circuits and the US Supreme Court. He can't find any case saying that repetitive cross-designations pursuant to 292(b) are illegal because they are not temporary. He also can't find any case saying that the cross designations have to state the specific public interest in support.

Stilley respectfully contends that this is an issue of first impression, and that this court should rule on the merits. Furthermore, if they are upheld, make them public by addition to the appropriate sets of local rules. Tell the world that these orders are *temporary and always will be*, by virtue of being done *one year at a time*.

The District Court in Docket #293, page 10, ruling on an attack on Misc. 23, the order in effect in 2009, said "…the designation included in misc. 23 is, by its terms, temporary."

Can Stilley ask the same question about the next 13 mass cross-designations? Dkt. 745-1. Are they *all* temporary, and thus immune from challenge? Does a finding that a one-year designation is "temporary" necessarily require a finding that the next 13 years are

also temporary? How about the next 20 years, or 50 years, or 100 years? Is there any practical limit so long as new cross-designations are issued annually?

In *Jones v. Wal-Mart, Inc.*, No. 22-5025, at *2 (10th Cir. Jan. 9, 2023), the court said:

> Invoking § 292(b) in an order dated December 16, 2021, the Chief Judge of the Tenth Circuit designated and assigned Judge Johnson (a district judge of the circuit) to hold court in the Northern District of Oklahoma (a district within the circuit) from January 1, 2022, through December 31, 2022.

This order was dated a mere week after the mass cross-designation order at page 28 of Docket 745-1. Judge Johnson has a commission as a district judge in the District of New Mexico. Presumably this cross-designation was actually intended to be temporary.

The government at page 5 of its brief, footnote 3, cites to docket entries 9 and 24 for the proposition that "…all the district judges of [OKND] were recused," and this was the reason Stephen P. Friot was assigned to the case. That claim simply isn't true. These two entries read as follows:

> 03/18/2009    9    MINUTE ORDER by Judge Payne, due to Court conflict, *recusing Judge James H Payne*, this case is hereby

returned to the Court Clerk for further reassignment, Court Clerk reassigned to case as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/18/2009)
(Emphasis added)

03/31/2009   24   MINUTE ORDER by Court Clerk at the direction of Chief Judge Claire V. Eagan, reassigning case to Judge Stephen P Friot. Court Clerk no longer assigned to case, changing case number to 09-CR-43-SPF as to Lindsey Kent Springer, Oscar Amos Stilley (a-hc, Dpty Clk) (Entered: 03/31/2009)

The minute order at docket #9 could not be clearer. Judge Payne recused himself **and nobody else**.

Stilley has long contended that Stephen P. Friot was hand-picked by Claire V. Eagan because he had just finished smashing Skoshi Thedford Farr by the dirty trick of refusing to rule when a ruling – any ruling – would ultimately result in the complete exoneration of the defendant. Stilley has already shown the timeline in other pleadings. Stilley's opening brf. at 48.  Click through for the full story.

The government cited *United States v. Griggs*, 130 Fed. App'x. 303 (11th Cir. 2005) and *United States v. Vasquez-Perez*, 742 F.3d 896 (9th Cir. 2014) in support of their theory that failure to hold an initial appearance was harmless. The District Court also cited a 3rd case, *United States v. Wimberly*, 368 Fed. App'x. 556 (5th Cir. 2010). Dkt. 742, pg. 2.

Griggs waived a preliminary or due process hearing. Vasquez-Perez got an initial appearance, with counsel – he only claimed inadequate notice of the violation charged. Wimberly likewise was afforded an initial appearance before a magistrate judge. He claimed error for the failure to hold a second "initial" appearance after an amended petition was filed.

Stilley filed an unopposed motion for an initial appearance – but got nothing. Stilley thinks he knows at least part of the reason. This will be explained later.

## III.    The District Court Violated Due Process by Convicting Stilley Of A Legally Required Act.

Stilley's standby counsel, Charles Robert Burton, IV, was disbarred by a decision February 23, 2021. *State v. Burton*, 482 P.3d 739 (Okla. 2021). According to this decision, he was removed from the Criminal Justice Act (CJA) panel[5] in 2018.  *Burton*, 482 P.3d at 747.

Amongst other offenses, he was disbarred for *converting* the money of his clients to his own use. *Burton*, 482 P.3d at 754. Burton

---

[5]    A panel of private attorneys who are paid by the federal government to represent indigent criminal defendants in federal court.

was disbarred for conversion, Stilley was sent to prison for **not**

converting[6] the money of his clients. Stilley went to prison for paying

money out pursuant to the *admittedly* lawful directives of his clients.

Stilley remains in official custody, being punished for **not converting**

money belonging to his clients.

Stilley is convinced that the District Court knew more than he

was saying. The District Court said he didn't think Burton was on the

CJA panel. Revocation TR at 5. What's the chance that he didn't know

that Burton was *also* disbarred? And why wouldn't he forthrightly state

the facts?

Perhaps because Stilley would inquire concerning the perception

of fairness in sending Stilley to prison for **not** converting client funds,

while disbarring his standby lawyer (at least in part) for the attorney

ethics offense of converting client funds?

Stilley sought his right to the "Assistance of Counsel for his

defense," required by the plain language of the 6th Amendment. The

District Court gave Stilley 15 days to upgrade his motion – *from a*

---

[6]      "Conversion" is a civil tort in all 50 states. Thus says Bard.
Whether or not conversion is also a crime varies by state, and is
generally dependent on the facts.

*prison cell*. Revocation TR at 6-7. The District Judge made it clear that the request for counsel would not impact the proceedings that day. *Id*.

None of the cases cited by the District Court or by the government come close to authorizing the acts and omissions of the District Court.

From where was Stilley to select counsel? From Oklahoma City, or from Tulsa? The government and the District Court pretend that this matters not one whit. Stilley wasn't informed of the *venue* until just over two weeks prior to the hearing.

## IV. This One's For You, Evan Gershkovich.

The government acknowledged Stilley's point IV, alleging fraud upon the court. Gov. Response Brf. 18-19. That's all. They basically had nothing to say against Stilley's facts and argument. So what's to say in a reply?

Consider this adage of the legal profession. When the facts are on your side, pound the facts. When the law is on your side, pound the law. When neither fact nor law is on your side, pound the table!!!

The government in this case can't even pound the table. They can't pound the table for fear of *knocking down their ridiculous house of*

*cards!* They are relegated to *pretending not to notice.*

If Stilley's conviction is upheld, he can be sent back to prison at any time, for extortion, or even for a mere whim. Stilley bitterly complained that many of the special conditions were impossible of performance. See e.g. Revocation TR 69-71. The government and the District Court made no effort to prove that the conditions weren't impossible of performance. Rather, the government objected to that line of questioning, and the District Court shut it down.

Nobody even contends that Stilley got a trial – fair or otherwise – on the theory of criminal liability relied upon at conviction and sentence. Given three separate chances, this Court has never claimed that Stilley got the appeal to which he is by law entitled. Nobody contends that the factual contentions relied upon to punish Stilley have any support in the record.

***Nobody*** thinks Stilley could have been stiff-armed in such a lawless manner in 1973. All or virtually all of the procedural barriers that have prevented him from getting a fair hearing and a ruling on his meritorious legal claims have been erected in the past 50 years. The DOJ has lobbied for these rules (with taxpayer dollars of course) and

procured them from Congress. Of course, they **always but always** claim that there is an exception for "actual innocence" – which they promise to jealously defend.

Except that in this case, they won't talk about it. Stilley in his opening brief made it unmistakably clear that 1) he was innocent of the charges of the purported indictment, and 2) Charles O'Reilly, the lead prosecutor, had to know that fact because he said so, in writing. Stilley Opening Brf. pg. 43.

Faced with this confident claim, what did the government do? They wrote a brief in which the words "innocent" or "guilt," and alternative forms such as "innocence" or "guilty" are *conspicuous by their absence*.

Most respectfully, upholding the conviction and sentence in this case amounts to an indictment of our legal system. Reversal of the judgment below indicts the government's prosecution of a single case. At this point in time, the government has indicted itself.[7] That's history

---

[7]     Stilley sought the identity of his accuser, but was shut down by the government and the District Court. Revocation TR at 61. Counsel for the government later basically claimed that Stilley was his own accuser. Revocation TR at 116-117. Turn about is fair play.

– it can't be changed.

Most respectfully, the treatment of Oscar Stilley versus the treatment of Evan Gershkovich is a difference of *degree* and not *kind*. In each case the sovereign promises justice earlier or later, but never ***now***. Incarceration *precedes* due process. The prosecutor controls the place and conditions of confinement. The prosecutor uses the power of incarceration to interfere with a competent legal defense, but the courts won't stop it. The assignment and fairness of the judge is subject to question by reasonable persons.

America has assumed the mantle of honor and integrity in the dispensation of justice. America claims to wear the white hat. In fact, many American jurists have written decisions with which they disagreed (sometimes vehemently) stating that the only reason for their decision was *because the law required it*.

Stilley keenly sympathizes with Evan Gershkovich because he's been there. He's felt the pain, the trauma, and the powerlessness of incarceration.

This one's for Evan. The world needs to know that we still have some blindfolds of Lady Justice. The world needs to know that US

courts can still reverse a conviction *because the law requires it*.

Stilley is satisfied with the conclusion in the opening brief, and sees no need to add to it.

Respectfully submitted,

By: /s/ Oscar Stilley
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above as well as the signature set forth below certify that I have this July 5, 2023 by CM/ECF served all parties entitled to service in this case; furthermore, I certify that the parties to this case (or their counsel) have each, in writing, mutually waived the service of hard copy of briefs and record excerpts.

By: /s/ Oscar Stilley

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS

I, Oscar Stilley, by virtue of my signature below as well as the two foregoing signatures, certify that I produced this brief in the current version of Word, that I have performed a word count, and that the brief in chief herein has 6,459 countable words, which is less than 6,500 words.

By: /s/ Oscar Stilley