APPEAL,CUSTODY,GARN,LC–1,TRANSF,VJASSIGN

# U.S. District Court
## U.S. District Court for the Northern District of Oklahoma (Tulsa)
## CRIMINAL DOCKET FOR CASE #: <u>4:09–cr–00043–SPF–2</u>

Case title: USA v. Springer et al

Date Filed: 03/10/2009

Related Case:  4:21–cv–00361–SPF–CDL

Date Terminated: 04/28/2010

Assigned to: Judge Stephen P Friot

Appeals court case numbers:
'10–5057 (#348)' '10th Circuit',
22–5000 (#725) 10th Circuit,
22–5113 (#756) 10th Circuit

**Defendant (2)**

| | | |
|---|---|---|
| **Oscar Amos Stilley**<br>*TERMINATED: 04/28/2010* | represented by | **Oscar Amos Stilley**<br>#1189798<br>DAVID L MOSS CORRECTIONAL CENTER<br>300 N DENVER<br>TULSA, OK 74103<br>Email: oscarstilley@gmail.com<br>PRO SE |

**Charles Robert Burton , IV**
Burton Law Firm PC
15 E 5TH ST STE 4022
TULSA, OK 74103–4347
918–607–4891
Email: RobtBurton@aol.com
*TERMINATED: 04/27/2010*
*LEAD ATTORNEY*
*Designation: Public Defender or Community Defender Appointment*

**Terry Lee Weber**
Weber & Assoc PC
320 S BOSTON STE 825
TULSA, OK 74103
918–582–1910
Fax: 918–582–2015
Email: Terry.Weber@morelaw.com
*TERMINATED: 04/03/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA or Other Appointment*

1

| **Pending Counts** | **Disposition** |
|---|---|
| 18 USC 371: Conspiracy to Defraud the United States (1) | BOP 60 months; SR 3 years; Restitution $776,280; SMA $100; 11/21/22 SR REVOCATION: 3 months; SR: 33 months |
| 26 USC 7201: Tax Evasion and 18 USC 2 (3–4) | 11/21/22 SR REVOCATION: 3 months; SR: 33 months |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| USA | represented by | **Charles Anthony O'Reilly** |
|---|---|---|

DOJ–Tax
150 M Street N.E.
Room 2–404
Washington, DC 20002
202–616–0115
Fax: 202–514–9623
Email: charles.a.o'reilly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney (local,state,federal)*

**Jeffrey Andrew Gallant**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119–1013
918–382–2715
Fax: 918–560–7938
Email: Jeff.Gallant@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*
*(local,state,federal)*

**Kenneth P Snoke**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119−1013
918−382−2700
Fax: 918−560−7946
Email: ken.snoke@usdoj.gov
*TERMINATED: 06/08/2010*
*LEAD ATTORNEY*
*Designation: Government Attorney*
*(local,state,federal)*

**Vani Singhal**
U.S. Attorney's Office
110 W. 7th Street
Suite 300
Tulsa, OK 74119
918−382−2700
Email: vani.singhal@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*
*(local,state,federal)*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/10/2009 | 1 | | DEFENDANT INFORMATION SHEET(S) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 2 | | INDICTMENT by USA as to Lindsey Kent Springer (1) count(s) 1, 2, 3−4, 5−6, Oscar Amos Stilley (2) count(s) 1, 3−4 (pll, Dpty Clk) (Entered: 03/10/2009) |
| 03/10/2009 | 4 | | SUMMONS Issued by Court Clerk as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 665 | | SEALED UNREDACTED VERSION of Dkt # 2 per Local Rule 5.3(b) (pll, Dpty Clk) (Entered: 01/11/2019) Contains One or More Restricted PDFs |
| 03/18/2009 | 5 | | MOTION for Electronic Access by Lindsey Kent Springer as to Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 9 | | MINUTE ORDER *by Judge Payne, due to Court conflict*, recusing Judge James H Payne, *this case is hereby returned to the Court Clerk for further reassignment,* Court Clerk reassigned to case as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 14 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Initial Appearance held on 3/18/2009, Arraignment held on 3/18/2009, |

| | | | |
|---|---|---|---|
| | | | appointing CJA attorney Terry Lee Weber for Oscar Amos Stilley, setting/resetting bond as to Oscar Amos Stilley (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 15 | | ORDER by Magistrate Judge Paul J Cleary *(for purposes of initial appearance only)*, appointing CJA attorney as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 16 | | ORDER by Magistrate Judge Paul J Cleary, setting conditions of release as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 17 | | BOND approved by Magistrate Judge Paul J Cleary as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/19/2009 | 18 | | ORDER by Magistrate Judge Paul J Cleary *directing defendants regarding representation*, setting/resetting deadline(s)/hearing(s): *(copy of Order mailed to both defendants on 3/19/09)* ( Miscellaneous Deadline set for 3/30/2009) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/19/2009) |
| 03/23/2009 | 19 | | RESPONSE (Re: 8 MOTION for Bill of Particulars, 5 MOTION for Electronic Access, 7 Brief in Support of Motion, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 03/23/2009) |
| 03/24/2009 | 20 | | MOTION to Withdraw Attorney(s) *R. Scott Williams* by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/24/2009 | 21 | | MOTION for Hearing (Re: 20 MOTION to Withdraw Attorney(s) ) by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to remove reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/25/2009 | | | NOTICE of Docket Entry Modification; Error: During e–filing the attorney was prompted to select a case, all defendants were selected; Correction: Edited docket text to remove Oscar Stilley as these pleadings did not name him (Re: 20 MOTION to Withdraw Attorney(s), 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 03/25/2009) |
| 03/25/2009 | 22 | | MINUTE ORDER by Magistrate Judge Paul J Cleary, setting/resetting deadline(s)/hearing(s): ( Miscellaneous Hearing set for 3/30/2009 at 02:30 PM before Magistrate Judge Paul J Cleary) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/25/2009) |
| 03/30/2009 | 23 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Miscellaneous Hearing held on 3/30/2009 *re Representation; Defendants Waive Counsel*, ruling on motion(s)/document(s): #5 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 5 MOTION for Electronic Access ) (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/31/2009) |
| 03/31/2009 | 24 | | MINUTE ORDER *by Court Clerk at the direction of Chief Judge Claire V. Eagan*, reassigning case to Judge Stephen P Friot. Court Clerk no longer assigned to case, changing case number to 09–CR–43–SPF as to Lindsey Kent |

| | | | Springer, Oscar Amos Stilley (a–hc, Dpty Clk) (Entered: 03/31/2009) |
|---|---|---|---|
| 04/01/2009 | 25 | | MOTION for Protective Order by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/01/2009) |
| 04/02/2009 | 26 | | ORDER by Judge Stephen P Friot *(Protective Order)*, ruling on motion(s)/document(s): #25 Granted (Re: 25 MOTION for Protective Order ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/02/2009) |
| 04/03/2009 | 27 | | ORDER by Magistrate Judge Paul J Cleary *Appointing Standby Counsel*, adding attorney Robert Scott Williams for Lindsey Kent Springer, Charles Robert Burton, IV for Oscar Amos Stilley, ruling on motion(s)/document(s): #20 and #21 moot (Re: 20 MOTION to Withdraw Attorney(s) *R. Scott Williams*, 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 04/03/2009) |
| 04/06/2009 | 28 | | MOTION to Permit Oscar Stilley to File by CM/ECF by Oscar Amos Stilley (s–srb, Dpty Clk) (Entered: 04/07/2009) |
| 04/07/2009 | 29 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot, Scheduling Conference set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot) (Re: 8 MOTION for Bill of Particulars, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/07/2009) |
| 04/08/2009 | 31 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #28 Granted (Re: 28 MOTION to Permit Oscar Stilley to File by CM/ECF ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/08/2009) |
| 04/10/2009 | 33 | | MOTION for Bill of Particulars by Oscar Amos Stilley as to Lindsey Kent Springer, Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/10/2009) |
| 04/10/2009 | 34 | | ORDER by Judge Stephen P Friot *: setting Motion for hearing on 4/22/09* (Re: 33 MOTION for Bill of Particulars, 29 Order,,,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/10/2009) |
| 04/15/2009 | 39 | | MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 04/15/2009) |
| 04/15/2009 | 40 | | NOTICE NOTICE RE GOVERNMENT MOTION FOR LIMITED UNSEALING OF SEARCH WARRANT AFFIDAVIT AND MATERIALS FROM CASE 03–CR–043–CVE (Re: 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/15/2009) |
| 04/16/2009 | 41 | | ORDER by Judge Stephen P Friot *setting Motion for Hearing on 4/22/09* (Re: 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/16/2009) |

| | | | |
|---|---|---|---|
| 04/16/2009 | 42 | | RESPONSE in Opposition to Motion *Consolidated* (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/16/2009) |
| 04/22/2009 | 43 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 4/22/2009, Scheduling Conference held on 4/22/2009, ruling on motion(s)/document(s): #30 Granted, #6, 8, 33 Denied, #36, 37, 39 Granted in Part, Denied in part, taking motion(s) under advisement, setting/resetting deadline(s)/hearing(s): ( Motions due by 6/1/2009, Responses due by 6/15/2009, Motion Hearing set for 7/9/2009 at 09:00 AM before Judge Stephen P Friot, Jury Instructions, Voir Dire & Trial Briefs due by 8/3/2009, Pretrial Conference set for 10/21/2009 at 10:00 AM before Judge Stephen P Friot, Jury Trial set for 10/26/2009 at 09:30 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 04/22/2009) |
| 04/29/2009 | 46 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Responses due by 5/11/2009) (Re: 44 Reply to Response to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 5/1/2009 to seal PDF, as ENTERED IN ERROR; duplicate entry see Doc # 45 for correct entry (tjc, Dpty Clk). (Entered: 04/30/2009) Contains One or More Restricted PDFs |
| 05/01/2009 | | | NOTICE of Docket Entry Modification; Error: Duplicate entry, ENTERED IN ERROR; Correction: Sealed PDF as this was a duplicate entry; see Doc # 45 for correct entry (Re: 46 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 05/01/2009) |
| 05/08/2009 | 49 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *July 9, 2009, Hearing on Motion for Franks Issue and/or Suppress* (Re: 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), |

| | | | |
|---|---|---|---|
| | | | Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 05/08/2009) |
| 05/12/2009 | 50 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #49 Granted in Part, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 49 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 05/12/2009) |
| 05/15/2009 | 67 | | MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment* (Re: 2 Indictment ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove defendant Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 68 | | BRIEF in Support of Motion *to dismiss for fraud and violation of the 5th Amendment* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 69 | | JOINDER *of motions filed by Lindsey Springer* (in [51−66] Generally dispositive filed on May 15, 2009) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/18/2009 | | | NOTICE of Docket Entry Modification; Error: These documents were filed as to both defendants in error; Correction: Edited docket text and removed Lindsey Kent Springer from text (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), 68 Brief in Support of Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 05/18/2009) |
| 05/26/2009 | 70 | | ORDER by Judge Stephen P Friot *vacating the stay entered by the court on 4/22/2009 & directing government to turn over materials to defendant Stilley*, ruling on motion(s)/document(s): #35 denied (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 42 Response in Opposition to Motion,, 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting |

| | | | |
|---|---|---|---|
| | | | Deadline(s)/Hearing(s), 44 Reply to Response to Motion, 48 Surreply to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 05/26/2009) |
| 05/29/2009 | 71 | | RESPONSE in Opposition to Motion *Fifty−one through Sixty−seven* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/29/2009) |
| 06/01/2009 | 72 | | MOTION to Suppress *Grand Jury testimony and evidence* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/01/2009 | 73 | | BRIEF in Support of Motion (Re: 72 MOTION to Suppress *Grand Jury testimony and evidence* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/02/2009 | 78 | | SEALED MOTION (O'Reilly, Charles) (Entered: 06/02/2009) Contains One or More Restricted PDFs |
| 06/15/2009 | 80 | | RESPONSE in Opposition to Motion *Consolidated* (Re: 77 MOTION for Hearing *(submitted as part of Doc # 74 )*, 72 MOTION to Suppress *Grand Jury testimony and evidence*, 74 MOTION to Suppress ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/15/2009) |
| 06/15/2009 | 83 | | MOTION to Accelerate/Extend/Reset Hearings/Deadlines for filing of motion for bill of particulars by Oscar Amos Stilley (Stilley, Oscar) Modified on 6/16/2009; this is a two−event document and combined documents are not allowed with CM/ECF; also changed text to reflect correct motion event (sac, Dpty Clk). (Entered: 06/15/2009) |
| 06/16/2009 | 84 | | MINUTE ORDER by Court Clerk, Having reviewed the docket entry and/or PDF for Dkt # 83, the Court has determined that *this document contains two events and combined documents are not allowed with CM/ECF*. Attorney *Oscar Stilley* is hereby directed to re−file *his Adoption, using that event*. (Re: 83 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/16/2009) |
| 06/17/2009 | 85 | | MINUTE ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot), ruling on motion(s)/document(s): #83 Denied (Re: 82 |

| | | |
|---|---|---|
| | | MOTION for Bill of Particulars, <u>83</u> MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/17/2009) |
| 06/18/2009 | <u>87</u> | ORDER by Judge Stephen P Friot , *directing Sur−Reply*, ruling on motion(s)/document(s): #86 Denied (Re: 86 MOTION to Strike Document(s), <u>67</u> MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, <u>69</u> JOINDER *of motions filed by Lindsey Springer* (in [51−66] Generally dispositive filed on May 15, 2009), 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/18/2009) |
| 06/23/2009 | <u>91</u> | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #90 Granted (Re: 90 MOTION for Leave to Exceed Page Limitation, <u>67</u> MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/23/2009) |
| 06/23/2009 | <u>92</u> | JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/23/2009) |
| 06/25/2009 | <u>93</u> | SURREPLY (Re: 51 First MOTION to Dismiss, 53 Second MOTION to Dismiss, 55 Third MOTION to Dismiss, 57 Fourth MOTION to Dismiss, 59 Fifth MOTION to Dismiss, 61 Sixth MOTION to Dismiss, 63 Seventh MOTION to Dismiss, 65 Eighth MOTION to Dismiss) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 6/29/2009 to change text to reflect correct event and to change links to reflect base motions (sac, Dpty Clk). (Entered: 06/25/2009) |

| 06/29/2009 | | | NOTICE of Docket Entry Modification; Error: wrong event selected (Reply); wrong links made; Correction: changed text to reflect correct event (Surreply); created links to base motions (Re: 93 Reply, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/29/2009) |
|---|---|---|---|
| 06/30/2009 | 94 | | MOTION to Quash *Subpoenas* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/30/2009) |
| 07/01/2009 | 97 | | RESPONSE in Opposition to Motion (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/01/2009) |
| 07/01/2009 | 98 | | Clarification of (Re: 94 MOTION to Quash ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 7/2/2009 to correct title of event (pll, Dpty Clk). Modified on 7/2/2009 (pll, Dpty Clk). (Entered: 07/01/2009) |
| 07/01/2009 | 99 | | MOTION to Quash *subpoena* by Eddy Lynn Patterson as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 7/6/2009 to correct file date (lml, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | 100 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 7/2/2009, ruling on motion(s)/document(s): #51,53,55,57,59,61,63,65,67,69,72,74,77,92 Denied, #82 Granted in Part, Denied in part, #94 Moot, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 77 MOTION for Hearing *(submitted as part of Doc # 74 )*, 92 JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009), 69 JOINDER (in [51–66] Generally dispositive filed on May 15, 2009), 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 94 MOTION to Quash, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 72 MOTION to Suppress *Grand Jury testimony and evidence*, 82 MOTION for Bill of Particulars, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four, 74 MOTION to Suppress ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) Modified on 7/8/2009 to indicate attached PDF has incorrect hearing date. Date hearing held was 7/2/2009 (pll, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | 101 | | MINUTE ORDER by Judge Stephen P Friot *: Following the hearing held this date, the Motion to Quash filed by Eddy Lynn Patterson is hereby moot*, ruling on motion(s)/document(s): #99 Moot (Re: 99 MOTION to Quash *subpoena* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/02/2009) |

| 07/02/2009 | 103 | SEALED EXHIBIT(S) to Order/Minutes (Re: 100 Minutes of Motion Hearing,,,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 07/14/2009) Contains One or More Restricted PDFs |
|---|---|---|
| 07/08/2009 | 102 | ORDER by Judge Stephen P Friot *re: jury instructions* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/08/2009) |
| 07/14/2009 | 104 | BILL OF PARTICULARS (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/14/2009) |
| 08/03/2009 | 107 | PROPOSED JURY INSTRUCTIONS by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/03/2009) |
| 08/03/2009 | 108 | First PROPOSED JURY INSTRUCTIONS as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 109 | First MOTION to Dismiss Count(s) 1 *Conspiracy charge* (Re: 2 Indictment ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 110 | BRIEF in Support of Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/04/2009 | 111 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #106 Denied (Re: 106 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 08/04/2009) |
| 08/05/2009 | 112 | RESPONSE in Opposition to Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 8/6/2009 to delete "as to" defendant Springer (sac, Dpty Clk). (Entered: 08/05/2009) |
| 08/06/2009 | 114 | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 43 Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 11/5/2009 to |

| | | | |
|---|---|---|---|
| | | | remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | 115 | | TRANSCRIPT of Proceedings (Unredacted) of Motions Hearing held on 7/2/09 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 100 Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 11/5/2009 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | 116 | | RESPONSE in Opposition to Motion (Re: 105 Second MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) Modified on 8/7/2009 to delete "as to Oscar Amos Stilley" as this document states it is as to defendant Springer only (sac, Dpty Clk). (Entered: 08/06/2009) |
| 08/12/2009 | 120 | | OBJECTION to Proposed Jury Instructions (Re: 108 Proposed Jury Instructions ) by USA as to Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 08/12/2009) |
| 08/13/2009 | 126 | | NOTICE of Intent to Use Expert Witness Testimony by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/13/2009) |
| 08/17/2009 | 129 | | OBJECTION to Proposed Jury Instructions *Of the government* (Re: 108 Proposed Jury Instructions ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/17/2009) |
| 08/19/2009 | 131 | | REPLY to Response to Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 08/19/2009) |
| 08/19/2009 | 132 | | JOINDER (SUBMITTED AS DOC # 131 )(in 123 Eighth Motion to Dismiss Count(s) filed on 8/12/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/19/2009 | 133 | | ADOPTION *(SUBMITTED AS DOC # 131 )* (of [124, 130] Eighth Brief in Support of Motion, Reply to Response to Motion filed on 8/12/09, 8/19/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/20/2009 | | | NOTICE of Docket Entry Modification; Error: Document No. 131 is a multi–event document and only one event was e–filed; Correction: Filed the remaining events (Joinder in Motion) and (Adoption) as Document Nos. 132 & 133 (Re: 131 Reply to Response to Motion ) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 09/10/2009 | 134 | | NOTICE Pursuant to Federal Rule of Evidence 404(b) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/10/2009) |
| 09/16/2009 | 135 | | ORDER by Judge Stephen P Friot *re: Pretrial Conference* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/16/2009) |

| | | |
|---|---|---|
| 09/18/2009 | 136 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #105 denied; 109 denied; #123 denied (Re: 105 Second MOTION for Bill of Particulars, 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge*, 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 09/18/2009) |
| 09/21/2009 | 137 | MOTION in Limine by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/21/2009) |
| 09/21/2009 | 138 | TRIAL BRIEF by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 09/21/2009) |
| 09/21/2009 | 139 | NOTICE of Government's Proposed Summary of Indictment by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 140 | NOTICE of Summary of Indictment by Oscar Amos Stilley (Stilley, Oscar) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 149 | MOTION in Limine *regarding hearsay and confrontation issues* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 152 | MOTION for Subpoena(s) *pursuant to Rule 17(b)* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 153 | BRIEF in Support of Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 155 | JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09 as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/22/2009) |
| 09/22/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event *(Notice)* (Re: 139 MOTION Government's Proposed Summary of Indictment ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event (Notice) (Re: 140 MOTION Summary of Indictment ) as to Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | 156 | ORDER by Judge Stephen P Friot *: setting ex parte hearing*, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/9/2009 at 01:30 PM before Judge Stephen P Friot) (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | 157 | ORDER by Judge Stephen P Friot *re: 10/9/09 ex parte hearing* (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 156 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: |

| | | | |
|---|---|---|---|
| | | | 09/22/2009) |
| 09/23/2009 | 158 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/21/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 137 MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 148 Fifth MOTION in Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/23/2009) |
| 09/25/2009 | 160 | | SEALED MOTION (O'Reilly, Charles) Modified on 10/9/2009; this document is STRICKEN per 183 (sac, Dpty Clk). (Entered: 09/25/2009) Contains One or More Restricted PDFs |
| 09/25/2009 | 162 | | MOTION TAKE RULE 15 DEPOSITION by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 09/25/2009) |
| 09/30/2009 | 165 | | MINUTE ORDER by Judge Stephen P Friot *: Until further notice, all hearings in this case will be held at the Boulder Courthouse, 224 S Boulder, 3rd Floor Courtroom, Tulsa, OK* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/30/2009) |
| 10/01/2009 | 170 | | SEALED DOCUMENT (O'Reilly, Charles) Modified on 10/2/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/01/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 173 | | RESPONSE in Opposition to Motion (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09], 148 Fifth MOTION in Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 174 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/05/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 175 | | RESPONSE in Opposition to Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09], 141 MOTION for Subpoena(s) *under Rule 17* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 176 | | RESPONSE in Opposition to Motion (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/05/2009) |
| 10/06/2009 | 178 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #162 Granted (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/06/2009) |
| 10/07/2009 | 181 | | SEALED MOTION (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |

| 10/07/2009 | 182 | SEALED DOCUMENT (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |
| 10/08/2009 | 183 | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re: 160 SEALED MOTION ) (Documents Terminated: 160 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/08/2009) |
| 10/08/2009 | 186 | SEALED ORDER (s–srb, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/08/2009) |
| 10/09/2009 | 189 | NOTICE with Respect to Court's Order (Dkt#178) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 10/09/2009) |
| 10/09/2009 | 190 | ERRATA/CORRECTION (Re: 189 Notice (Other) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 10/13/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/09/2009) |
| 10/09/2009 | 191 | SEALED MINUTES (pll, Dpty Clk) (Entered: 10/13/2009) Contains One or More Restricted PDFs |
| 10/13/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Notice–Other); Correction: Edited docket text to reflect correct event (Errata/Correction to Document) (Re: 190 Notice (Other) ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 195 | ***Remark: *arrest warrant issued for material witness* as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 10/14/2009 to unseal docket entry (sjm, Dpty Clk). (Entered: 10/14/2009) Contains One or More Restricted PDFs |
| 10/14/2009 | 198 | RESPONSE in Opposition to Motion (Re: 179 MOTION Compel Clerk of Court to Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) by USA as to Lindsey Kent Springer (Snoke, Kenneth) Modified on 10/15/2009 to delete "as to" Oscar Stilley since this document is only as to Lindsey Kent Springer (sac, Dpty Clk). (Entered: 10/14/2009) |
| 10/14/2009 | 199 | RESPONSE (Re: 134 NOTICE ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 10/15/2009 to change text to reflect correct event and change link (sac, Dpty Clk). (Entered: 10/14/2009) |
| 10/15/2009 | | NOTICE of Docket Entry Modification; Error: all defendants were selected as to, but document only pertains to Lindsey Springer; Correction: deleted as to defendant Oscar Stilley (Re: 198 Response in Opposition to Motion, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/15/2009 | | NOTICE of Docket Entry Modification; Error: wrong event selected (Response in Opposition to Motion); wrong link made; Correction: changed text to reflect correct event (Response); changed link (Re: 199 Response in Opposition to Motion ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/16/2009 | 200 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #179 granted with specific limitations (Re: 179 MOTION Compel Clerk of Court to |

| | | | |
|---|---|---|---|
| | | | Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) as to Lindsey Kent Springer(djh, Dpty Clk) (Entered: 10/16/2009) |
| 10/20/2009 | 202 | | SEALED MOTION (Snoke, Kenneth) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 203 | | SEALED ORDER (pll, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 204 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 205 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 206 | | MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2009) |
| 10/21/2009 | 207 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 10/21/2009, Pretrial Conference held on 10/21/2009, ruling on motion(s)/document(s): #137,155 grant in part, deny in part; 144,146,147,150,151,159 denied; 148, 204, 205, 206 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 204 SEALED MOTION, 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 137 MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 148 Fifth MOTION in Limine, 159 MOTION Emergency Motion Regarding Denny Patridge, 144 First MOTION in Limine, 205 SEALED MOTION, 206 MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/21/2009 | 208 | | ***Remark: *Deposition Transcript of Vikki Lynn Wiggins received by court* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/24/2009 | 209 | | PROPOSED VOIR DIRE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/24/2009) |
| 10/24/2009 | 210 | | MOTION to Quash *Testimony of Vikki Wiggins* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/24/2009 | 211 | | BRIEF in Support of Motion (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/26/2009 | 212 | | RESPONSE in Opposition to Motion (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 10/27/2009 to remove Lindsey Kent Springer name from text, as his name should not have been selected, as this pleading does not pertain to him (tjc, Dpty Clk). (Entered: 10/26/2009) |

| 10/26/2009 | 213 | | NOTICE Regarding Defendants' Discovery by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/26/2009) |
|---|---|---|---|
| 10/26/2009 | 214 | | SEALED DOCUMENT (s–srb, Dpty Clk) (Entered: 10/26/2009) Contains One or More Restricted PDFs |
| 10/26/2009 | 215 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection began as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 216 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection held on 10/26/2009 as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 217 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial began as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 218 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *, continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 10/27/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/27/2009 | 220 | | ORDER by Judge Stephen P Friot *ruling on Government's Oral Motion re: witness Philip Roberts* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 10/27/2009 to correct title(pll, Dpty Clk). (Entered: 10/27/2009) |
| 10/27/2009 | 221 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #210 and 219 denied as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins*, 219 JOINDER (in 210 Motion to Quash filed on 10/24/09) ) (cds, Dpty Clk) (Entered: 10/27/2009) |
| 10/28/2009 | 222 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting deadline(s)/hearing(s): ( Jury Trial set for 10/29/2009 at 09:00 AM before Judge Stephen P Friot, Motion Hearing set for 11/3/2009 at 05:30 PM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 10/28/2009) |
| 10/29/2009 | 223 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #145 and 149 Denied, setting/resetting scheduling order date(s): ( Jury Trial set for 10/30/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 145 Second MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues* ) (cds, Dpty Clk) (Entered: 10/30/2009) |
| 10/30/2009 | 229 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): ( Jury Trial set for 11/2/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 11/03/2009) |
| 11/02/2009 | 230 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/3/2009 at 09:00 AM before Judge Stephen P Friot) as to |

| | | | |
|---|---|---|---|
| | | | Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 11/03/2009) |
| 11/03/2009 | 228 | | NOTICE re: Proposed Jury Instructions by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 11/4/2009 to correct event (tjc, Dpty Clk). (Entered: 11/03/2009) |
| 11/03/2009 | 231 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/4/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/03/2009) |
| 11/03/2009 | 232 | | JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/03/2009) |
| 11/04/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Proposed Jury Instructions); Correction: Edited docket text to reflect the correct event (Notice) (Re: 228 Proposed Jury Instructions ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 11/04/2009) |
| 11/04/2009 | 233 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *(continued to following day)* ( Jury Trial set for 11/5/2009 at 08:15 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/04/2009) |
| 11/05/2009 | 234 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *continued to following Monday*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/9/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/05/2009) |
| 11/05/2009 | 235 | | ORDER by Judge Stephen P Friot *re: USM and witnesses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/06/2009) |
| 11/08/2009 | 237 | | PROPOSED JURY INSTRUCTIONS *as to Venue* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 11/08/2009) |
| 11/08/2009 | 238 | | ADOPTION *of Springer's requested jury instructions* (of 236 ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/08/2009) |
| 11/09/2009 | 239 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *, continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/10/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/09/2009) |
| 11/10/2009 | 240 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to Thursday* ( Jury Trial set for 11/12/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/10/2009) |
| 11/12/2009 | 241 | | |

| | | | |
|---|---|---|---|
| | | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/13/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/12/2009) |
| 11/13/2009 | 242 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following Monday* ( Jury Trial set for 11/16/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/13/2009) |
| 11/16/2009 | 243 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial completed, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 244 | | JURY INSTRUCTIONS by Judge Stephen P Friot as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 245 | | JURY VERDICT as to Lindsey Kent Springer (1) Guilty on Count 1,2,3–4,5–6 and Oscar Amos Stilley (2) Guilty on Count 1,3–4 (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 246 | | SEALED EXHIBIT(S) to Order/Minutes (Re: 243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 11/17/2009) Contains One or More Restricted PDFs |
| 11/17/2009 | 247 | | ORDER by Judge Stephen P Friot *setting supplemental conditions following trial,* ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/20/2009 | 251 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2009) |
| 11/20/2009 | 252 | | RESPONSE in Opposition to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ), 224 MOTION to Reconsider ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 11/20/2009) |
| 11/23/2009 | 253 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #251 Granted (Re: 251 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/23/2009) |
| 12/01/2009 | 254 | | MOTION To provide transcript at public expense by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/01/2009 | 255 | | BRIEF in Support of Motion (Re: 254 MOTION To provide transcript at public expense ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/07/2009 | 258 | | REPLY to Response to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ) ) by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More |

| | | | Restricted PDFs |
|---|---|---|---|
| 12/08/2009 | <u>259</u> | | MOTION to Strike Document(s) (Re: 257 Reply to Response to Motion, <u>258</u> Reply to Response to Motion ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/08/2009) |
| 12/08/2009 | <u>261</u> | | MOTION for Judgment of Acquittal *and*, MOTION for New Trial by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # <u>264</u> (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/08/2009 | <u>263</u> | | BRIEF in Support of Motion (Re: <u>261</u> MOTION for Judgment of Acquittal *and* MOTION for New Trial ) by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # <u>264</u> (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/09/2009 | <u>264</u> | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #259 Granted, striking/withdrawing document(s) (Re: <u>259</u> MOTION to Strike Document(s), <u>261</u> MOTION for Judgment of Acquittal *and* MOTION for New Trial, 257 Reply to Response to Motion, <u>258</u> Reply to Response to Motion, 260 MOTION for Judgment of Acquittal, 262 MOTION for New Trial ) (Documents Terminated: 257 Reply to Response to Motion, <u>261</u> MOTION for Judgment of Acquittal *and* MOTION for New Trial, <u>258</u> Reply to Response to Motion, 260 MOTION for Judgment of Acquittal ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 12/09/2009) |
| 12/14/2009 | <u>267</u> | | MOTION to Reconsider (Re: <u>264</u> Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/14/2009 | <u>268</u> | | BRIEF in Support of Motion (Re: <u>267</u> MOTION to Reconsider ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/15/2009 | <u>269</u> | | RESPONSE in Opposition to Motion (Re: <u>267</u> MOTION to Reconsider ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/15/2009) |
| 01/12/2010 | <u>278</u> | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #254 Denied (Re: <u>254</u> MOTION To provide transcript at public expense ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/12/2010) |
| 01/22/2010 | <u>290</u> | | SCHEDULING ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/19/2010 at 10:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/22/2010) |
| 01/25/2010 | <u>291</u> | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/21/2010 at 10:00 AM before Judge Stephen P Friot) (Re: <u>290</u> Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/25/2010) |
| 01/28/2010 | <u>293</u> | | OPINION AND ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #224,232,262,265,267,271,273,285 Denied (Re: 265 MOTION to Vacate/Set Aside *Order dated December 9, 2009* MOTION |

| | | | |
|---|---|---|---|
| | | | Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1 MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein, 267 MOTION to Reconsider, 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ), 262 MOTION for New Trial, 224 MOTION to Reconsider, 273 MOTION to Strike Document(s), 271 MOTION Disqualify, Recuse, Removal and for Random Reassignment, 285 MOTION to Strike Document(s) *276 and 277* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/28/2010) |
| 02/01/2010 | 294 | | JOINDER (in [262, 265, 271, 272, 273, 274, 280, 281, 282, 283, 284, 285, 286, and 288] Multiple motions filed on 12/28/09 mostly) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | 296 | | MOTION to Modify Conditions of Pretrial Release by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | 297 | | First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* (Re: 278 Order, Ruling on Motion(s)/Document(s), 290 Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s), 291 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, 293 Opinion and Order,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), 24 Order,, Reassigning Case,, Changing Case Number, 264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, 247 Order, Ruling Re: Modification of Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/02/2010 | 298 | | BRIEF in Support of Motion (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*, 296 MOTION to Modify Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/02/2010) |
| 02/03/2010 | 299 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #296 denied (Re: 296 MOTION to Modify Conditions of Pretrial Release ) as to Oscar Amos Stilley (sjm, Dpty Clk) Modified on 2/4/2010 to remove Lindsey Kent Springer from text (lml, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 300 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #297 denied (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* #294 granted) as to Oscar Amos Stilley; (sjm, Dpty Clk) Modified on 2/3/2010 to correct entry ruling on #294 also(sjm, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 301 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Docket Entry Modification; Error: omitted ruling on docket #294; Correction: corrected entry to include ruling on docket #294 (Re: Ruling on Joinder in Motion ) as to Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 02/03/2010) |
| 02/11/2010 | 309 | | JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/11/2010) |
| 02/12/2010 | 310 | | RESPONSE in Opposition to Motion (Re: 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 02/12/2010) |
| 02/22/2010 | 312 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #280, 282, 284, 306 Denied, #309 Granted (Re: 282 MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 280 MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10), 284 MOTION to Dismiss Indictment/Information/Complaint *for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in MOTION to Dismiss Indictment/Information/Complaint for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/22/2010) |
| 02/23/2010 | 313 | | ORDER by Judge Stephen P Friot *re: consideration of non−standard conditions of supervised release* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/23/2010) |
| 02/25/2010 | 314 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #295 Denied (Re: 295 MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six *regarding regulations not in compliance with APA* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/25/2010) |
| 03/16/2010 | 315 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 03/16/2010) Contains One or More Restricted PDFs |
| 03/25/2010 | 316 | | ORDER by Judge Stephen P Friot, ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 3/25/2010 to add PDF (pll, Dpty Clk). (Entered: 03/25/2010) |
| 03/25/2010 | 317 | | NOTICE of Docket Entry Modification; Error: Document not attached; Correction: Attached document and included here (Re: 316 Order, Ruling Re: Modification of Conditions of Pretrial Release ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/25/2010) |
| 03/30/2010 | 318 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *Regarding Defendants'* Reference to Variance in Objections to PSIR by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 319 | | EXHIBIT LIST *and Witness List for Sentencing* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 320 | | SEALED DOCUMENT (Stilley, Oscar) (Entered: 03/30/2010) Contains One or More Restricted PDFs |
| 04/06/2010 | 326 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/06/2010) |
| 04/07/2010 | 328 | | RESPONSE in Opposition to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/07/2010) |
| 04/07/2010 | 329 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): *(Government's response deadline to Stilley's Motion to Continue Sentencing [Dkt. #326])* ( Miscellaneous Deadline set for 4/13/2010) as to Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/07/2010) |
| 04/08/2010 | 330 | | REPLY to Response to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/08/2010) |
| 04/09/2010 | 331 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #326 Denied (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) as to Oscar Amos Stilley Modified on 4/23/2010 to show Oscar Amos Stilley as single filer(cds, Dpty Clk). (Entered: 04/09/2010) |
| 04/16/2010 | 333 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 04/16/2010) Contains One or More Restricted PDFs |
| 04/23/2010 | 336 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Sentencing held on 4/23/2010, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/23/2010 | 348 | | NOTICE OF APPEAL to Circuit Court (Re: 338 Judgment and Commitment, Entering Judgment ) as to Oscar Amos Stilley (s–srl, Dpty Clk) Modified on 4/30/2010 to correct file date (s–srl, Dpty Clk). (Entered: 04/30/2010) |
| 04/27/2010 | 334 | | ORDER by Judge Stephen P Friot *entered without prejudice to the right of standby counsel to apply for compensation for their services,* terminating attorney Charles Robert Burton, IV and Robert Scott Williams as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/27/2010) |
| 04/27/2010 | 335 | | ***Remark: *Order [Dkt. #334] mailed to each defendant c/o David L. Moss Correctional Center, 300 N. Denver Ave., Tulsa, OK 74103* (Re: 334 Order,, Adding/Terminating Attorney(s), Adding/Terminating Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/27/2010) |
| 04/28/2010 | 338 | | JUDGMENT AND COMMITMENT by Judge Stephen P Friot, entering judgment as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/30/2010 | 346 | | ORDER by Judge Stephen P Friot *re: mailing addresses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 349 | | PRELIMINARY RECORD Sent to Circuit Court (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (With attachments) (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | | | NOTICE of Docket Entry Modification; Error: incorrect file date; Correction: corrected file date (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 353 | | Amended PRELIMINARY RECORD Sent to Circuit Court (Re: 348 Notice of Appeal to Circuit Court, 349 Preliminary Record Sent ) as to Oscar Amos Stilley (With attachments) (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 355 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 10–5057 (#348) (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/03/2010) |
| 05/06/2010 | 362 | | ORDER from Circuit Court *partially consolidating appeals* (Re: 348 Notice of Appeal to Circuit Court, 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/06/2010) |
| 05/28/2010 | 366 | | MOTION to Unseal Document(s) (Re: 203 Sealed Order, 186 Sealed Order, 181 SEALED MOTION, 182 Sealed Document, 202 SEALED MOTION ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/28/2010) |
| 06/03/2010 | 370 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #366 Granted, unsealing document(s) (Re: 366 MOTION to Unseal Document(s), 182 Sealed Document, 186 Sealed Order, 203 Sealed Order, 181 SEALED MOTION, 202 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/03/2010) |
| 06/08/2010 | 373 | | MOTION to Withdraw Attorney(s) *Kenneth P. Snoke* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/08/2010) |
| 06/08/2010 | 374 | | ORDER by Judge Stephen P Friot, terminating attorney Kenneth P Snoke, ruling on motion(s)/document(s): #373 Granted (Re: 373 MOTION to Withdraw Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/08/2010) |
| 06/10/2010 | 379 | | MINUTE ORDER by Court Clerk, directing Jerold W. Barringer to file by July 1, 2010 a Motion for Admission Pro Hac Vice per Local Civil Rule 83.2. Additionally, if you intend to practice in this district in the future and want to become a member of this district, please submit an application for attorney admission. as to Lindsey Kent Springer, Oscar Amos Stilley (lal, Dpty Clk) (Entered: 06/10/2010) |
| 06/11/2010 | | | MAIL to Oscar Amos Stilley Returned – marked return to sender – not in custody. Remailed on 6/14/10 to FCI Forrest Low, P O BOX 9000, FORREST |

| | | | |
|---|---|---|---|
| | | | CITY, AR 72336 – new address obtained from BOP website. (Re: 370 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Unsealing Document(s), Unsealing Document(s) ) as to Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 06/14/2010) |
| 06/16/2010 | 380 | | Supplemental CERTIFICATE of Service *Due to Returned Mail* (Re: 375 Response in Opposition to Motion, 373 MOTION to Withdraw Attorney(s), 366 MOTION to Unseal Document(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/16/2010) |
| 06/16/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justice Center, 300 N Denver, Tulsa, OK 74103 Returned – marked Return to Sender – not in custody. Remailed on 06/17/10 to FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336 – New address obtained from BOP Website. (Re: 376 Order, Ruling on Motion(s)/Document(s), 377 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), 374 Order, Adding/Terminating Attorney(s), Ruling on Motion(s)/Document(s) ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 6/18/2010 to remove additional Defendant (sdc, Dpty Clk). (Entered: 06/17/2010) |
| 07/12/2010 | 382 | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal 43 Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk). Modified on 7/13/2010 to create link to 340 (sac, Dpty Clk). Modified on 10/14/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 383 | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 07/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 100 Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 384 | | TRANSCRIPT of Proceedings (Unredacted) of Pretrial Hearing held on 10/21/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 139). NOTICE RE REDACTION OF TRANSCRIPTS: A party must |

| | | | |
|---|---|---|---|
| | | | file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 207 Minutes of Motion Hearing, Minutes of Pretrial Conference, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 385 | | TRANSCRIPT of Proceedings (Unredacted) of Voir Dire and Jury Trial held on 10/26/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne)(Pages: 1 to 242)(Re: 217 Minutes of Jury Trial Begun, 340 Notice of Appeal to Circuit Court, 218 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 216 Minutes of Voir Dire/Jury Selection Held) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk)(See Court Clerk to view this transcript) Modified on 7/13/2010 to include that Voir Dire is included in this transcript (sac, Dpty Clk). (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 386 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/27/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 243 to 515). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 221 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 387 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/28/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 516 to 640). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 222 Minutes of Jury Trial Held, Setting/Resetting Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 388 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/29/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 641 to 880). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically |

| | | | |
|---|---|---|---|
| | | | available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 223 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s), Setting/Resetting Scheduling Order Date(s) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 389 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/30/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 881 to 1130). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 229 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s) 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 390 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1131 to 1327). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 230 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 391 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/03/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1328 to 1608). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 231 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 392 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/04/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1609 to 1934). NOTICE RE REDACTION OF TRANSCRIPTS: A party must |

| | | | |
|---|---|---|---|
| | | | file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 233 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 393 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/05/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1935 to 2202). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 234 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 394 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/09/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2203 to 2454). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 239 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 395 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/10/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2455 to 2669). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 240 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |

| 07/12/2010 | 396 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/12/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2670 to 2949). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 241 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
|---|---|---|---|
| 07/12/2010 | 397 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/13/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2950 to 3056). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 242 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 398 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/16/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 3057 to 3090). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 399 | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/21/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1 to 210). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 |

| | | | |
|---|---|---|---|
| | | | to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 400 | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/22/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 211 to 390). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 401 | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/23/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 391 to 469). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/15/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justic Center, 300 N Denver, Tulsa OK 74103 Returned – marked return to sender – not in custody. Remailed on 7/15/10 – FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336. (Re: 379 Order, Directing Attorney to File PHV Motion,, ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 7/16/2010 ro remove reference to Lindsey Springer (sdc, Dpty Clk). (Entered: 07/15/2010) |
| 07/26/2010 | 412 | | RECORD on Appeal Sent to Circuit Court (Record includes: 4 volumes) (Re: 348 Notice of Appeal to Circuit Court, 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (s–srt, Dpty Clk) (Entered: 07/26/2010) |
| 08/17/2010 | 418 | | ORDER by Judge Stephen P Friot *titled: Memorandum of approval, with modification, of claim for professional services* as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 08/17/2010) |
| 09/09/2010 | 421 | | ATTORNEY APPEARANCE by Jeffrey Andrew Gallant on behalf of USA (Gallant, Jeffrey) (Entered: 09/09/2010) |
| 09/13/2010 | 422 | | TRANSCRIPT of Proceedings (Unredacted) of Miscellaneous Hearing held on 03/30/2009 before Magistrate Judge Paul J Cleary (Court Reporter: Tracy Washbourne) (Pages: 1–36). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for |

| | | | |
|---|---|---|---|
| | | | redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 23 Minutes of Miscellaneous Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 12/20/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 09/13/2010) |
| 02/24/2011 | 443 | | MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances by Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 02/24/2011) |
| 03/14/2011 | 444 | | RESPONSE in Opposition to Motion (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 03/14/2011) |
| 03/29/2011 | 450 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response* (Re: 444 Response in Opposition to Motion, 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 03/29/2011) |
| 03/30/2011 | 451 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #450 Granted (Re: 450 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response* MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response*, 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/30/2011) |
| 04/15/2011 | 453 | | ***Remark: *received copy of Docket 443 that was mailed to 10th Circuit and forwarded to USDC WD/OK* as to Oscar Amos Stilley (sdc, Dpty Clk). (Entered: 04/18/2011) |
| 04/18/2011 | 454 | | REPLY to Response to Motion (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 04/18/2011) |
| 04/20/2011 | 455 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #443 Denied (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/20/2011) |
| 10/26/2011 | 460 | | DECISION from Circuit Court affirming the Decision of the District Court (awaiting mandate) (Re: 348 Notice of Appeal to Circuit Court, 428 Notice of Appeal to Circuit Court, 447 Notice of Appeal to Circuit Court, 340 Notice of |

| | | | |
|---|---|---|---|
| | | | Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 10/26/2011) |
| 12/20/2011 | 463 | | MANDATE from Circuit Court (Re: 348 Notice of Appeal to Circuit Court, 460 Decision from Circuit Court, ) as to Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 12/20/2011) |
| 05/22/2012 | 465 | | MOTION for Release of Oscar Amos Stilley by Martha Durossette as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 5/25/2012 – **STRICKEN per 466** (tjc, Dpty Clk). (Entered: 05/23/2012) |
| 05/24/2012 | 466 | | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re: 465 MOTION for Release of Oscar Amos Stilley ) (Documents Terminated: 465 MOTION for Release of Oscar Amos Stilley ) as to Oscar Amos Stilley (cds, Dpty Clk) (Entered: 05/24/2012) |
| 05/29/2012 | 467 | | MAIL to Martha Durossette Returned – address was changed to address unknown. (Re: 466 Order, Striking/Withdrawing Document(s) ) as to Oscar Amos Stilley (s–srt, Dpty Clk) (Entered: 05/31/2012) |
| 06/01/2012 | | | MAIL Resent to Martha Durossette at 506 S Caddo, Muldrow, OK 74948 (Re: 466 Order, Striking/Withdrawing Document(s) ) as to Oscar Amos Stilley (s–srt, Dpty Clk) (Entered: 06/01/2012) |
| 05/03/2016 | 617 | | MOTION regarding visitation rights of Oscar Stilley by Martha Durossette as to Oscar Amos Stilley (jln, Dpty Clk) Modified on 5/6/2016– **STRICKEN per 618** (sac, Dpty Clk). (Entered: 05/04/2016) |
| 05/05/2016 | 618 | | ORDER by Judge Stephen P Friot , striking/withdrawing document(s) (Re: 617 MOTION regarding visitation rights of Oscar Stilley ) (Documents Terminated: 617 MOTION regarding visitation rights of Oscar Stilley ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 05/05/2016) |
| 05/06/2016 | | | ***Remark: *Copy of Order #618 mailed to Oscar Amos Stilley* (Re: 618 Order,, Striking/Withdrawing Document(s), ) as to Oscar Amos Stilley (jln, Dpty Clk) (Entered: 05/06/2016) |
| 05/16/2016 | 619 | | MAIL to Oscar Amos Stilley Returned – remailed on 5/17/16 to FCI Oakdale I, PO BOX 5000, OAKDALE, LA 71463 – new address obtained from BOP website. (Re: 618 Order, Striking/Withdrawing Document(s),, ) as to Oscar Amos Stilley (jln, Dpty Clk) (Entered: 05/17/2016) |
| 12/11/2017 | 624 | | MAIL to Oscar Amos Stilley Returned – remailed on 12/11/17 to FCI Beaumont Low, PO BOX 26020, BEAUMONT, TX 77720 – new address obtained from BOP website. (Re: #622 and #623) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 12/11/2017) |
| 01/29/2018 | 631 | | MOTION for Hearing by Martha Durossette as to Oscar Amos Stilley (2) (sc, Dpty Clk) Modified on 2/1/2018– **STRICKEN per 633** (srt, Dpty Clk). (Entered: 01/29/2018) |
| 01/31/2018 | 633 | | ORDER by Judge Stephen P Friot , striking/withdrawing document(s) (Re: 631 MOTION for Hearing ) (Documents Terminated: 631 MOTION for Hearing ) as to Oscar Amos Stilley (2) (kjp, Dpty Clk) (Entered: 01/31/2018) |
| 07/12/2018 | 651 | | |

| | | | |
|---|---|---|---|
| | | | MAIL to Oscar Amos Stilley Returned – remailed on 1/16/18 – FCI Yazoo City Low, PO BOX 5000, YAZOO CITY, MS 39194 – new address obtained from BOP website. (Re: #645 and #646) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 07/16/2018) |
| 07/23/2018 | 652 | | MAIL to Oscar Amos Stilley Returned – remailed on 7/23/2018 to FCI Yazoo City Low, PO BOX 5000, YAZOO CITY, MS 39194 – new address obtained form previous entry. (Re: #648) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 07/23/2018) |
| 05/11/2021 | 693 | | NOTICE of Change of Address as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 05/11/2021) |
| 05/12/2021 | 694 | | MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 05/12/2021) |
| 05/12/2021 | 695 | | BRIEF in Support of Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 05/12/2021) |
| 05/12/2021 | 696 | | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 7/16/2021) (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 05/12/2021) |
| 07/07/2021 | 698 | | RESPONSE in Opposition to Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/07/2021) |
| 07/21/2021 | 699 | | REPLY to Response to Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 07/21/2021) |
| 07/26/2021 | 700 | | ORDER by Judge Stephen P Friot *denying defendants Motion for Reduction of Sentence (Doc. 694)*, ruling on motion(s)/document(s): #694 denied (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 07/26/2021) |
| 09/01/2021 | 701 | | MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 by Oscar Amos Stilley (Stilley, Oscar) Civil case 4:21–cv–00361 opened. (Entered: 09/01/2021) |
| 09/02/2021 | 702 | | MOTION Disclose co–defendant's address, show authority for Friot to preside, 30 day stay of proceedings by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/02/2021) |
| 09/02/2021 | 703 | | MINUTE ORDER by Judge Stephen P Friot (Re: 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 09/02/2021) |
| 09/02/2021 | 704 | | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 9/30/2021) (Re: 702 MOTION Disclose co–defendant's address, show authority for Friot to preside, 30 day stay of proceedings , 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 09/02/2021) |

| 09/07/2021 | 705 | MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules (Re: 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 9/8/2021 to create link to doc 701 (sc, Dpty Clk). (Entered: 09/07/2021) |
| --- | --- | --- |
| 09/07/2021 | 706 | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 10/5/2021) (Re: 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 09/07/2021) |
| 09/08/2021 | 707 | MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case (Re: 702 MOTION Disclose co−defendant's address, show authority for Friot to preside, 30 day stay of proceedings ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/08/2021) |
| 09/14/2021 | 708 | MOTION to Clarify *Whether or Not Response to Motion is Required Absent Scheduling Order*, MOTION for Extension of Time to Respond to Motion (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/14/2021) |
| 09/16/2021 | 709 | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): Motion #708 Granted, setting/resetting deadline(s)/hearing(s): ( Responses due by 10/14/2021) (Re: 708 MOTION to Clarify *Whether or Not Response to Motion is Required Absent Scheduling Order* MOTION for Extension of Time to Respond to Motion , 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 09/16/2021) |
| 10/04/2021 | 710 | MOTION for Extension of Time to Respond to Motion *up through and including 11−30−2021* (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case , 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/04/2021) |
| 10/05/2021 | 711 | RESPONSE in Opposition to Motion (Re: 710 MOTION for Extension of Time to Respond to Motion *up through and including 11−30−2021* ) by USA as to Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 10/05/2021) |
| 10/05/2021 | 712 | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): #710 granted in part and denied in part, setting/resetting deadline(s)/hearing(s): ( Responses due by 10/20/2021) (Re: 710 MOTION for Extension of Time to Respond to Motion *up through and including 11−30−2021*, 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 10/05/2021) |
| 10/20/2021 | 713 | RESPONSE in Opposition to Motion (Re: 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in |

| | | | |
|---|---|---|---|
| | | | Violation of Local Rules ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2021) |
| 10/20/2021 | 714 | | RESPONSE in Opposition to Motion (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2021) |
| 10/25/2021 | 715 | | MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. by USA as to Oscar Amos Stilley [Note: Attorney Vani Singhal added to party USA(pty:pla).] (Singhal, Vani) (Entered: 10/25/2021) |
| 10/25/2021 | | | ***Motion(s) Referred to Magistrate Judge Christine D Little (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 10/26/2021) |
| 10/26/2021 | 716 | | MINUTE ORDER by Magistrate Judge Christine D Little , ruling on motion(s)/document(s): #715 granted (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. ) as to Oscar Amos Stilley  (This entry is the Official Order of the Court. No document is attached.) (tjc, Dpty Clk) (Entered: 10/26/2021) |
| 10/26/2021 | 717 | | WRIT of Garnishment Issued by Magistrate Judge Christine D Little as to Cornerstone Structural Engineering, Inc. as to Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 10/26/2021) |
| 11/04/2021 | 718 | | GARNISHEE'S ANSWER by Cornerstone Structural Engineering, Inc. as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 11/04/2021) |
| 11/04/2021 | 719 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): #701 dismissed, #702 dismissed, #705 granted, #707 granted, denying certificate of appealability (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case , 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules , 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 , 702 MOTION Disclose co−defendant's address, show authority for Friot to preside, 30 day stay of proceedings ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 11/04/2021) |
| 11/04/2021 | 720 | | JUDGMENT by Judge Stephen P Friot *dismissing defendant Oscar Amos Stilley's Motion to Vacate Sentence*, entering judgment as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 11/04/2021) |
| 11/14/2021 | 721 | | MOTION Transfer garnishment to district of residence by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/14/2021) |
| 11/24/2021 | 722 | | MOTION to Quash *Garnishment* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/24/2021) |
| 11/24/2021 | 723 | | BRIEF in Support of Motion (Re: 722 MOTION to Quash *Garnishment* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/24/2021) |
| 11/24/2021 | | | ***Motion(s) Referred to Magistrate Judge Christine D Little (Re: 722 MOTION to Quash *Garnishment* ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 12/01/2021) |

| 12/08/2021 | 724 | ORDER by Judge Stephen P Friot *granting defendant's Motion for Transfer of Garnishment Proceedings (Doc. 721). The Clerk of the Court is directed to effect the transfer of garnishment proceedings to the Western District of Arkansas,* ruling on motion(s)/document(s): #721 granted, directing court clerk to take action (Re: 721 MOTION Transfer garnishment to district of residence ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 12/08/2021) |
|---|---|---|
| 12/09/2021 | | ***Remark: *garnishment proceedings transferred to USDC WD/AR and opened as case #2:21−mc−00107−PKH* (Re: 724 Order, Ruling on Motion(s)/Document(s), Directing Court Clerk to Take Action,,, ) as to Oscar Amos Stilley (srt, Dpty Clk) (Entered: 12/09/2021) |
| 01/01/2022 | 725 | NOTICE OF APPEAL to Circuit Court (Re: 720 Judgment, Entering Judgment, 719 Order, Ruling on Motion(s)/Document(s), Denying Certificate of Appealability as to Oscar Amos Stilley (Stilley, Oscar) Modified on 1/3/2022 to remove links to doc #'s 278, 136, 43, 455, 111, 100, 293, 338, 24, 264, 207 and 331 (sc, Dpty Clk). (Entered: 01/01/2022) |
| 01/03/2022 | | NOTICE of Docket Entry Modification; Error: Linked to the incorrect documents; Correction: Removed link to Doc #'s 278, 136, 43, 455, 111, 100, 293, 338, 24, 264, 207 and 331 (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 01/03/2022) |
| 01/03/2022 | 726 | PRELIMINARY RECORD Sent to Circuit Court (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (With attachments) (sc, Dpty Clk) (Entered: 01/03/2022) |
| 01/03/2022 | 727 | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22−5000 (#725) (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 01/04/2022) |
| 01/05/2022 | 728 | APPEAL FEES Paid in Full (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 01/05/2022) |
| 01/05/2022 | | ***Remark: *copy of receipt emailed to 10th Circuit* (Re: 728 Appeal Fee Paid in Full ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 01/06/2022) |
| 01/21/2022 | 729 | CERTIFICATE of Service (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. , 717 Writ of Garnishment Issued ) by USA as to Oscar Amos Stilley (Singhal, Vani) (Entered: 01/21/2022) |
| 02/02/2022 | 730 | MOTION for Disbursement by USA as to Oscar Amos Stilley (Singhal, Vani) (Entered: 02/02/2022) |
| 02/10/2022 | 731 | ORDER by Magistrate Judge Susan E Huntsman , ruling on motion(s)/document(s): #730 granted (Re: 730 MOTION for Disbursement ) as to Oscar Amos Stilley (dlg, Dpty Clk) (Entered: 02/10/2022) |
| 06/06/2022 | 732 | DECISION from Circuit Court dismissing the Appeal (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 06/06/2022) |
| 08/24/2022 | 733 | TRANSFER by Judge Stephen P Friot of Jurisdiction of Probationer or Supervised Releasee to District of OKWD as to Oscar Amos Stilley (blc, Dpty Clk) Modified on 8/24/2022 to edit docket text to remove additional Order event language (blc, Dpty Clk). (Entered: 08/24/2022) |

| 08/24/2022 | 739 | | SUMMONS Issued by Court Clerk as to Oscar Amos Stilley (alg, Dpty Clk) Modified on 11/4/2022 to reflect the original filing originated from OK/WD case CR−22−00357−001−F (alg, Dpty Clk). (Entered: 11/04/2022) Contains One or More Restricted PDFs |
| 08/25/2022 | 734 | | NOTICE to USDC WD/OK of a Transfer of Jurisdiction of Probation/Supervised Release (Prob−22) as to Oscar Amos Stilley. Your case number is: 22−cr−357−F−1. Docket sheet and documents attached. The finance office will transmit the bond. If you require a financial ledger and/or certified copies of any documents, please send a request to CM−ECFIntake_oknd@oknd.uscourts.gov. If you wish to designate a different email address for future transfers, send your request to InterDistrictTransfer_TXND@txnd.uscourts.gov. as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 08/25/2022) |
| 09/11/2022 | 735 | | MOTION to Clarify *and disclose authority for Judge Friot to preside* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/11/2022) |
| 09/20/2022 | 736 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): GRANTED IN PART and DENIED IN PART (as fully set out in this order) (Re: 735 MOTION to Clarify *and disclose authority for Judge Friot to preside* ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 09/20/2022) |
| 11/03/2022 | 737 | | ORDER by Judge Stephen P Friot *Jurisdiction over dft is accepted and assumed by this court from and after the date of entry of this order. This order shall have the same effect as a Probation form 22 Transfer of Jurisdiction.* as to Oscar Amos Stilley (LLG, Chambers) (Entered: 11/03/2022) |
| 11/04/2022 | 740 | | MINUTE ORDER by Judge Stephen P Friot *setting a revocation and sentencing hearing for 11/21/2022 at 10:30 a.m.*, setting/resetting deadline(s)/hearing(s): ( Supervised Release Revocation Hearing set for 11/21/2022 at 10:30 AM before Judge Stephen P Friot, Sentencing set for 11/21/2022 at 10:30 AM before Judge Stephen P Friot) as to Oscar Amos Stilley  (This entry is the Official Order of the Court. No document is attached.) (alg, Dpty Clk) (Entered: 11/04/2022) |
| 11/16/2022 | 741 | | MOTION for initial appearance in revocation proceedings by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/16/2022) |
| 11/16/2022 | 742 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): denying (Re: 741 MOTION for initial appearance in revocation proceedings ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 11/16/2022) |
| 11/17/2022 | 743 | | MINUTE ORDER by Judge Stephen P Friot *the 11/21/22 Revocation and Sentencing hearing will be held in Courtroom 3, Fourth Floor* (Re: 740 Order,, Setting/Resetting Deadline(s)/Hearing(s), 738 Sealed Order on Release (re: Revocation), ) as to Oscar Amos Stilley  (This entry is the Official Order of the Court. No document is attached.) (crp, Dpty Clk) (Entered: 11/17/2022) |
| 11/20/2022 | 744 | | MOTION for Appointment of Counsel *Robert Burton IV, as standby counsel only, with included brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 745 | | MOTION to Disqualify Judge Stephen P. Friot *for lack of statutory authorization, and for a legally qualified judge to be assigned* by Oscar Amos |

| | | | |
|---|---|---|---|
| | | | Stilley (With attachments) (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 746 | | MOTION to Quash *summons and strike other documents from OKWD, and dismiss for lack of jurisdiction, with included supporting brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 747 | | MOTION early PSR *with included supporting brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 748 | | MOTION for Discovery *with included supporting brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 749 | | MOTION for a true and correct record *with included supporting brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/20/2022 | 750 | | MOTION to Clarify *and modify conditions of supervised release, with included supporting brief* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2022) |
| 11/21/2022 | 751 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Revocation Hearing held on 11/21/2022 , Supervised Release Revocation Final Hearing held on 11/21/2022 , Sentencing held on 11/21/2022 *Court finds SR Violations #1 and #3 have been proven by a preponderance of the evidence. SR Violations #2 and #4 are un–adjudicated*, ruling on motion(s)/document(s): #745 denied, #746 denied, #747 denied, #748 denied, #749 denied, setting/resetting deadline(s)/hearing(s): *Within 15 days, Defendant is to file a supplement to his Motion for Appointment of Counsel (Dkt. #744). Defendant has 21 days to supplement his pending Motion to Clarify and Modify Conditions of Supervised Release. The supplement shall include exact proposed modified conditions. Plaintiff's response is due 21 days thereafter* ( Miscellaneous Deadline set for 12/6/2022, Responses due by 1/2/2023), ordering defendant be detained as to Oscar Amos Stilley (Re: 747 MOTION early PSR *with included supporting brief*, 746 MOTION to Quash *summons and strike other documents from OKWD, and dismiss for lack of jurisdiction, with included supporting brief*, 745 MOTION to Disqualify Judge Stephen P. Friot *for lack of statutory authorization, and for a legally qualified judge to be assigned*, 748 MOTION for Discovery *with included supporting brief*, 749 MOTION for a true and correct record *with included supporting brief*, 744 MOTION for Appointment of Counsel *Robert Burton IV, as standby counsel only, with included brief*, 738 Sealed Order on Release (re: Revocation), 338 Judgment and Commitment, Entering Judgment, 750 MOTION to Clarify *and modify conditions of supervised release, with included supporting brief* ) (Court Reporter: Greg Bloxom) (With attachments) (crp, Dpty Clk) (Entered: 11/22/2022) Contains One or More Restricted PDFs |
| 11/23/2022 | 752 | | JUDGMENT AND COMMITMENT by Judge Stephen P Friot , entering judgment (re: revocation proceedings) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 11/23/2022) |
| 12/08/2022 | 755 | | NOTICE of Change of Address as to Oscar Amos Stilley (ll, Dpty Clk) (Entered: 12/08/2022) |
| 12/08/2022 | 756 | | NOTICE OF APPEAL to Circuit Court (Re: 752 Judgment and Commitment, Entering Judgment (re: revocation proceedings) ) as to Oscar Amos Stilley (ll, Dpty Clk) (Main Document 756 replaced on 12/8/2022 to show "forms" |

| | | | |
|---|---|---|---|
| | | | notation) (ll, Dpty Clk). (Entered: 12/08/2022) |
| 12/08/2022 | 757 | | PRELIMINARY RECORD Sent to Circuit Court (Re: 756 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (With attachments) (ll, Dpty Clk) (Entered: 12/08/2022) |
| 12/08/2022 | 758 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22–5113 (#756) (Re: 756 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (blc, Dpty Clk) (Entered: 12/08/2022) |
| 12/12/2022 | 759 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): denied (Re: 744 MOTION for Appointment of Counsel *Robert Burton IV, as standby counsel only, with included brief* ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 12/12/2022) |
| 12/13/2022 | 760 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): denied (Re: 750 MOTION to Clarify *and modify conditions of supervised release, with included supporting brief* ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 12/13/2022) |
| 12/15/2022 | 761 | | MOTION to Extend Time To Plead Further Regarding Counsel by Oscar Amos Stilley (sc, Dpty Clk) (Entered: 12/15/2022) |
| 12/16/2022 | 762 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): STRICKEN as moot (Re: 761 MOTION to Extend Time To Plead Further Regarding Counsel ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 12/16/2022) |
| 12/19/2022 | 763 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) (Re: 762 Order, Ruling on Motion(s)/Document(s) ) by Oscar Amos Stilley (blc, Dpty Clk) (Entered: 12/19/2022) |
| 12/19/2022 | 764 | | Letter *from Defendant re copies* as to Oscar Amos Stilley (blc, Dpty Clk) (Entered: 12/19/2022) |
| 12/20/2022 | 765 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): denied (Re: 763 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Oscar Amos Stilley (LLG, Chambers) (Entered: 12/20/2022) |
| 01/10/2023 | 766 | | TRANSCRIPT ORDER FORM (Transcripts ordered from Greg Bloxom (918.699.4878)) (Re: 756 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (tgb, Crt Rptr) (Entered: 01/10/2023) |
| 01/11/2023 | 767 | | APPEAL FEES Paid in Full (Re: 756 Notice of Appeal to Circuit Court, ) by Oscar Amos Stilley (sc, Dpty Clk) (Entered: 01/11/2023) |

**FILED**

MAR 1 0 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Case No. **09 CR 043 JHP**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **INDICTMENT** |
| | ) | [18 U.S.C. § 371, Conspiracy to |
| **v.** | ) | **Defraud the United States;** |
| | ) | **26 U.S.C. § 7201, Tax Evasion;** |
| **LINDSEY KENT SPRINGER,** | ) | **26 U.S.C. § 7203, Failure to File** |
| **OSCAR AMOS STILLEY,** | ) | **Tax Return]** |
| | ) | |
| **Defendants.** | ) | |

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    **LINDSEY KENT SPRINGER** ("Defendant **SPRINGER**") was a resident of the City of Kellyville, in the Northern District of Oklahoma.

2.    Defendant **SPRINGER** used the name Bondage Breakers Ministry to solicit and receive money. Defendant **SPRINGER**'s stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

3.    **OSCAR AMOS STILLEY** ("Defendant **STILLEY**") was an attorney residing in Fort Smith, Arkansas.

1

4.      Defendant **STILLEY** maintained an Arkansas IOLTA Foundation Trust Account ("IOLTA account") at Arvest Bank; an IOLTA account is an interest-bearing account used to hold client funds.

5.      Defendants **SPRINGER** and **STILLEY** each earned income in various ways, including assisting individuals being investigated and prosecuted for federal tax violations. Defendant **SPRINGER** referred individuals to Defendant **STILLEY**, and provided assistance on many of these cases.

6.      Defendant **SPRINGER** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

7.      Defendant **STILLEY** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

## COUNT ONE
### [18 U.S.C. § 371]

8.      General Allegations paragraphs 1 through 7  are incorporated as if fully set forth herein.

### OBJECT OF THE CONSPIRACY

9.      Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants **SPRINGER** and **STILLEY**, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions

2

of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

## MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, and was accomplished, through the following manner and means:

10.     Defendants **SPRINGER** and **STILLEY** would and did use Defendant **STILLEY**'s IOLTA account to conceal Defendant **SPRINGER**'s income, assets, and personal expenses;

11.     Defendant **SPRINGER** would and did use Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses;

12.     Defendants **SPRINGER** and **STILLEY** would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal Defendant **SPRINGER**'s income;

13.     Defendants **SPRINGER** and **STILLEY** would and did knowingly misrepresent the source and nature of Defendant **SPRINGER**'s income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

14.     Defendants **SPRINGER** and **STILLEY** would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the object thereof, Defendants **SPRINGER** and **STILLEY**, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

15.     On or about September 16, 2005, Defendant **SPRINGER** told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

16.     On or about January 20, 2006, Defendant **STILLEY** stated to Internal Revenue Service employees that people give money to Defendant **SPRINGER** for his ministry, and expect no services in return.

17.     On or about March 9, 2006, Defendant **STILLEY** provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to LINDSEY SPRINGER for any purpose."

18.     On or about June 24, 2003, Defendant **STILLEY** caused to be deposited a check for $112,500 into his IOLTA account.

19.     On or about June 30, 2003, Defendant **STILLEY** caused to be written a check for $14,359 from his IOLTA account to Defendant **SPRINGER**.

20.     On or about July 21, 2003, Defendant **STILLEY** caused to be written a check for $35,000 from his IOLTA account to Defendant **SPRINGER**.

21.     On or about July 31, 2003, Defendant **STILLEY**, using funds from his IOLTA account,  purchased a $37,000 cashier's check for Defendant **SPRINGER**.

22.     On or about July 31, 2003, Defendant **SPRINGER** used the $37,000 cashier's check to purchase a Chevrolet Corvette.

23.     On or about November 6, 2003, Defendant **STILLEY** caused $375,059.90 to be transmitted to his IOLTA account.

24.     On or about November 7, 2003, Defendant **STILLEY** caused three cashier's checks payable to Defendant **SPRINGER** in the amount of $20,000 each to be issued from his IOLTA account.

25.     On or about  November 7, 2003, Defendant **STILLEY** purchased $18,000 in money orders for Defendant **SPRINGER** using funds from his IOLTA account.

26.     On or about August 8, 2005, Defendant **SPRINGER** sent an email to a third person containing the account number, routing number, and name of Defendant **STILLEY**'s IOLTA account.

27.     On or about August 11, 2005, Defendants **SPRINGER** and **STILLEY** caused $192,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

28.     On or about August 15, 2005, Defendant **STILLEY** caused $166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of Defendant **SPRINGER** and his wife.

29.    On or about August 18, 2005, Defendants **SPRINGER** and **STILLEY** caused $58,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

30.    On or about August 26, 2005, Defendant **STILLEY** caused $5,560 to be transmitted from his IOLTA account to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of Defendant **SPRINGER**.

31.    On or about September 1, 2005, Defendant **STILLEY** caused $25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of Defendant **SPRINGER** and his wife.

32.    On or about September 19, 2005, Defendant **STILLEY** purchased two $10,000 cashier's checks payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

33.    On or about November 9, 2005, Defendant **STILLEY** purchased a $10,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

34.    On or about November 29, 2005, Defendant **STILLEY** purchased a $9,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

35. On or about December 9, 2005, Defendant **SPRINGER** caused $50,000 he earned from the sale of a motor home to be transmitted to Defendant **STILLEY**'s IOLTA account.

36. On or about May 2, 2006, Defendant **STILLEY** caused to be written a $1,993.56 check from his IOLTA account to Defendant **SPRINGER**.

37. On or about July 25, 2006, Defendant **STILLEY** caused to be deposited a $175,000 check in his IOLTA account.

38. On or about August 3, 2006, Defendant **STILLEY** caused to be written a $25,000 check from his IOLTA account to Bondage Breakers Ministry.

39. On or about January 15, 2009, Defendant **SPRINGER** represented that he earned no income and that the money he received was given "without any expectation for anything from anybody."

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO
### [26 U.S.C. § 7201]

40.　General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

41.　From on or about January 1, 2000, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.  Well knowing and believing the foregoing facts, Defendant **SPRINGER** did willfully attempt to evade and defeat the individual income taxes due and owing by him to the United States of America for the calendar year 2000, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion, including:  receiving income in a fictitious name; directing individuals to write "donation" or "gift" on checks that were payment for services; directing individuals to pay for services by cashier's check; using a check-cashing business to cash checks; using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income;  making false statements to agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

All in violation of Title 26, United States Code, Section 7201.

## COUNT THREE
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

42.    General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

43.    From on or about January 1, 2003, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.  Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2003, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion.  Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; using a check-cashing business to cash checks; and accepting collectible coins as payment for services.  Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion: using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and,

otherwise concealing and attempting to conceal from all proper officers of the United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code Section 2.

10

## COUNT FOUR
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

44.     General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

45.     From on or about January 1, 2005, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.   Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2005, by failing to file a United States Individual Income Tax Return despite earning income of sufficient amount to require the filing of an individual income tax return, and by committing various affirmative acts of evasion.  Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; and using a check-cashing business to cash checks.  Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion:  using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means of payment to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue

11

Service; and, otherwise concealing and attempting to conceal from all proper officers of the

United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201, and Title 18, United

States Code Section 2.

12

## COUNT FIVE
### [26 U.S.C. § 7203]

46.     General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

47.     During the calendar year 2002, Defendant **SPRINGER** had and received gross income in excess of $7,700.  By reason of such gross income, he was required by law, following the close of the calendar year 2002 and on or before April 15, 2003 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2003, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

13

## COUNT SIX
### [26 U.S.C. § 7203]

48.     General Allegations paragraphs 1, 2, 5 and 6 are incorporated as if fully set forth herein.

49.     During the calendar year 2004, Defendant **SPRINGER** had and received gross income totaling in excess of $15,900.  By reason of that gross income, he was required by law, following the close of the calendar year 2004 and on or before April 15, 2005 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2005, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

DAVID E. O'MEILIA
UNITED STATES ATTORNEY

CHARLES A. O'REILLY
Trial Attorney, Tax Division
United States Department of Justice

KENNETH P. SNOKE
Assistant United States Attorney

A TRUE BILL

/s/ Grand Jury Foreperson
Grand Jury Foreperson

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,          )
                               )
v.                             )      Case No. 09-CR-043-SPF
                               )
LINDSEY KENT SPRINGER,         )
OSCAR AMOS STILLEY,            )
                               )
        Defendants.        )

## <u>VERDICT</u>

### for <u>Lindsey K. Springer</u>

We, the jury, being duly sworn and upon our oaths, find the defendant Lindsey K. Springer:

**With respect to Count 1 -**

Not Guilty _____      Guilty _____ ✓

**With respect to Count 2 -**

Not Guilty _____      Guilty _____ ✓

**With respect to Count 3 -**

Not Guilty _____      Guilty _____ ✓

**(verdict form continues on next page)**

**With respect to Count 4 -**

**Not Guilty** _____          **Guilty** _____

**With respect to Count 5 -**

**Not Guilty** _____          **Guilty** _____

**With respect to Count 6 -**

**Not Guilty** _____          **Guilty** _____

11/16/09 _____

**DATE**                                   **FOREPERSON**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

### VERDICT

### for Oscar A. Stilley

We, the jury, being duly sworn and upon our oaths, find the defendant Oscar A. Stilley:

With respect to Count 1 -

Not Guilty _____     Guilty _____✓_____

With respect to Count 3 -

Not Guilty _____     Guilty _____✓_____

With respect to Count 4 -

Not Guilty _____     Guilty _____✓_____

11/16/09
_____
DATE

FOREPERSON

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

United States of America,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Case Number:  09-CR-043-SPF |
|  |  | Dates:  April 21-23, 2010 |
| vs. |  | Court Time:  4-21-10 - 10:00 a.m.-5:05 p.m. |
|  |  | 4-22-10 - 9:00 a.m.-4:55 p.m. |
| Lindsey Kent Springer and Oscar Amos Stilley, |  | 4-23-10 - 9:00 a.m.-11:55 a.m. |
|  | Defendants. | Actual Court Time:  16 hrs. 10 min. |

**MINUTE SHEET - SENTENCING**

| | | |
|---|---|---|
| Stephen P. Friot, U.S. District Judge | Lori Gray, Deputy Clerk | Tracy Washbourne, Reporter |

Counsel for Plaintiff:                                    Charles O'Reilly, Ken Snoke
Standby Counsel for Pro Se Defendant Springer:     Robert Williams, Appt.
Standby Counsel for Pro Se Defendant Stilley:       Robert Burton, Appt.
Probation Officer:                                       Todd Gollihare

[x] Defendants appear in person with standby counsel
[x] Plaintiff & Defendants reviewed PSI:          [x] Objs by:  [x] Pltf  [x] Defts
                                                  [x] Court overrules objections in part; sustains objections in part
[x] Plf's Exs. 1001-1156, 1159-1177, 1178A, 1179A admitted, and ordered  withdrawn at conclusion of proceeding.
[x] Dft Springer's Exs. 19, 22 admitted, and ordered  withdrawn at conclusion of proceeding.
[x] 18:3553 Findings re: PSI/Sentence made.
[x] Sentence re: Guideline as to dft Lindsey Kent Springer;  [x] Within guideline range;  [x] Findings made
[x] Sentence re: Guideline as to dft Oscar Amos Stilley;  [x] Variance  [x] Upward;  [x] Findings made
[x] Defendants and government counsel make statements prior to sentence being pronounced.
[x] Defendant Springer presents a Motion for Stay of Execution of Sentence and Release Pending Appeal. Dft Stilley joins in the motion.
    The Court denies the motion.

WITNESSES FOR PLAINTIFF:                          WITNESS FOR DEFENDANTS:

1.  IRS Special Agent Brian Shern (sworn)          1.  Lindsey Kent Springer (sworn)
2.  IRS Revenue Agent Brian Miller (sworn)         2.

**SENTENCE FOR DFT LINDSEY KENT SPRINGER: As to Count(s)      1-6       of the Indictment:**

[x] Bureau of Prison for a term of  60 months as to each of Counts 1, 2, 3, and 4, and 12 months as to each of Counts 5 and 6.  The
    terms imposed as to Counts 4-6 shall run concurrently with each other and with the terms imposed as to Counts 1, 2, and 3.  The
    terms imposed as to Counts 1, 2, and 3 shall run consecutively to each other, for a total sentence as to all counts of 180 months.
[x] Supervised Release for a term of  3 years as to each of Counts 1, 2, 3, and 4, and 1 year as to each of Counts 5 and 6, all such terms
    to run concurrently with each other.
[x] No fine is imposed.
[x] Restitution :  Federal - $691,343.00 to the IRS     [x] with interest
                 State -    $80,186.00 to the Oklahoma Tax Commission    [x] with interest
[x] Special Monetary Assessment:   $450.00 ($100.00 for each of Counts 1-4, $25.00 for each of Counts 5 and 6)  [x] due immediately

**STANDARD CONDITIONS** as previously adopted by this court including the following additional conditions:

[x] Firearm, Ammunition, Destructive Device or Any Other Dangerous Weapon (shall not possess)
[x] Controlled Substances (shall not illegally possess)     [x] Special Computer Restriction and Monitoring Conditions
[x] DNA Sample (cooperate with and submit to collection) [x] Special Financial Conditions
[] Alcohol Abstinence Condition                          [x] Special Search and Seizure Conditions
[] Immigration/Naturalization Conditions                 [] Special Sex Offender Conditions
[] Workforce Development Condition                        [] Special Substance Abuse and Testing Conditions
[] Mental Health Treatment Conditions                    [] To include inpatient treatment
[] Special Gambling Restriction Conditions               [] To include treatment program for gambling addiction
[] Community Service Conditions:                         For _____ hours to be performed

[] Community Confinement Conditions:                For _____ months in confinement and allowed to maintain employment
[] Curfew Condition:        [] Home Detention Condition: For _____ months to commence within ____ hours of sentencing/release
from imprisonment and to include electronic monitoring at the discretion
of the Probation Officer.
Entire cost of the electronic monitoring shall be paid by: [] Prob  [] Deft

[x]  Shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the
defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same
years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt
according to the payment schedule set by the IRS.

[x]  Will not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or
services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other
than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website
that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers
to any matter relating to federal or state taxation. The defendant will not file, without the expressed written permission of the Probation
Office, any civil action relating to federal income tax.  Further, the defendant is prohibited from engaging in any activities in or under
the name of Bondage Breakers Ministry.

[x]  Will not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade,
brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments.  The defendant
will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction.
The defendant shall maintain employment.  All employment must be approved in advance by the Probation Officer.  The defendant
shall abide by electronic monitoring, curfew requirements, and travel restrictions.

[x]  If instructed by the Probation Officer, shall provide originals or copies of all personal and business telephone phone records and all
credit card, checking account and PayPal statements to the U.S. Probation Officer.

[x]  Will report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check
cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall
refrain from transacting business with any check cashing service if so directed by the Probation Officer.

[x]  Will disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and
passwords. Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring
software and otherwise, with the costs of remote computer monitoring to be paid by the defendant.  The defendant will be prohibited
from accessing any on-line service using an alias or the internet account, name or designation or another person or entity.  The
defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the
appearance of data or images.  The defendant will be prohibited from altering or destroying records of computer use.

[x] Defendant advised of right to appeal                 [x] Defendant gives oral notice of appeal
[x] Court recommends to BOP that dft be designated to a facility as close as possible to Tulsa, OK, for which dft's security classification
makes him eligible, but court strongly recommends that dft not be designated to the same  facility to which co-dft Oscar Amos Stilley
is designated

                                                    [] Residential Drug Abuse Treatment Program
                                                    [] Other: _____
[] Bond exonerated                                  [] Appeal Bond set: $_____ ([] Cash or [] Surety);  [] Findings made
[] Deft to self surrender to designated institution by noon on: _____, U.S.M. to advise of institution;        [] Findings made
[] Remaining counts ordered dismissed: _____
[x] Defendant remanded to custody of U.S. Marshal

*********************************************************************************************************************************

**SENTENCE FOR <u>DFT OSCAR AMOS STILLEY</u>: As to Count(s) ___1, 3, and 4___ of the Indictment:**

[x]  Bureau of Prison for a term of  <u>60 months as to each of Counts 1, 3, and 4, all such terms to run consecutively to each other, for a total</u>
<u>sentence as to all counts of 180 months.</u>
[x]  Supervised Release for a term of  <u>3 years as to each of Counts 1, 3, and 4, all such terms to run concurrently with each other.</u>
[x]  No fine is imposed.
[x]  Restitution :  <u>Federal - $684,653.00 to the IRS</u>  [x]  with interest
                    <u>State -    $91,627.00 to the Arkansas Department of Finance and Administration</u>   [x] with interest
[x]  Special Monetary Assessment:  <u>$300.00 ($100.00 for each of Counts 1, 3 and 4)</u>  [x]  due immediately

**STANDARD CONDITIONS** as previously adopted by this court including the following additional conditions:

[x] Firearm, Ammunition, Destructive Device or Any Other Dangerous Weapon (shall not possess)
[x] Controlled Substances (shall not illegally possess)     [x] Special Computer Restriction and Monitoring Conditions
[x] DNA Sample (cooperate with and submit to collection) [x] Special Financial Conditions
[] Alcohol Abstinence Condition                             [x] Special Search and Seizure Conditions
[] Immigration/Naturalization Conditions                    [] Special Sex Offender Conditions
[] Workforce Development Condition                          [] Special Substance Abuse and Testing Conditions
[] Mental Health Treatment Conditions                       [] To include inpatient treatment
[] Special Gambling Restriction Conditions                  [] To include treatment program for gambling addiction
[] Community Service Conditions:                    For _____ hours to be performed
[] Community Confinement Conditions:                For _____ months in confinement and allowed to maintain employment
[] Curfew Condition:        [] Home Detention Condition: For _____ months to commence within ____ hours of sentencing/release
                                                    from imprisonment and to include electronic monitoring at the discretion
                                                    of the Probation Officer.
                                                    Entire cost of the electronic monitoring shall be paid by: [] Prob  [] Deft

[x] Shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

[x] Will not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation. The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

[x] Will not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments. The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction. The defendant shall maintain employment. All employment must be approved in advance by the Probation Officer. The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

[x] If instructed by the Probation Officer, shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

[x] Will report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

[x] Will disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords. Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant. The defendant will be prohibited from accessing any on-line service using an alias or the internet account, name or designation or another person or entity. The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images. The defendant will be prohibited from altering or destroying records of computer use.

[x] Defendant advised of right to appeal                [x] Defendant gives oral notice of appeal
[x] Court strongly recommends to BOP that dft not be designated to the same facility to which co-dft Lindsey Kent Springer is designated
                                                    [] Residential Drug Abuse Treatment Program
                                                    [] Other: _____
[] Bond exonerated                          [] Appeal Bond set: $_____ ([] Cash or [] Surety);  [] Findings made
[] Deft to self surrender to designated institution by noon on: _____, U.S.M. to advise of institution;      [] Findings made
[] Remaining counts ordered dismissed: _____
[x] Defendant remanded to custody of U.S. Marshal

**********************************************************************************************************

**Court Time**

| 4-21-10 | 4-22-10 | 4-23-10 |
|---|---|---|
| 10:00-12:15 | 9:00-12:15 | 9:00-11:55 a.m. |
| 1:15-5:05 | 1:00-4:55 p.m. | |
| 6' 5" | 7' 10" | 2' 55" |

Case 4:09-cr-00043-SPF   Document 336-1   Filed 04/23/10   Page 1 of 25
Case 4:09-cr-00043-SPF   Document 319-2   Filed 03/09/... DC ND/OK on 03/30/2020 Page 1 of 81
Appellate Case: 22-5113   Document: 010110832393   Date Filed: 03/09/... DC ND/OK on 03/30/2020 Page 1 of 81

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S** |
| v. | ) | **EXHIBIT AND WITNESS LIST** |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | Case No.        09-CR-043-SPF |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

| PRESIDING JUDGE | PLAINTIFF'S ATTORNEYS | DEFENDANTS' ATTORNEYS |
|---|---|---|
| STEPHEN P. FRIOT | CHARLES O'REILLY, SAUSA<br>KENNETH SNOKE, AUSA | LINDSEY SPRINGER, Pro se<br>OSCAR STILLEY, Pro se |
| **SENTENCING DATE**<br><br>April 21, 2010 | **COURT REPORTER**<br><br>TRACY WASHBOURNE - (405) 609-5505 | **COURTROOM DEPUTY**<br><br>LORI GRAY - (405) 609-5502 |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| | | | | 4-21 | Brian Miller, Revenue Agent, Internal Revenue Service |
| | | | | 4-21 | Brian Shern, Special Agent, Internal Revenue Service |
| | | | | | |
| 3 | | | | | Believers Broadcast Corporation check #17851 payable to Bondage Breakers for $5,000; Lea County Cashier's Check #30535 payable to Bondage Breakers Ministries for $8,000 |
| 4 | | | | | Bank of America Cashier Check #2002184783 payable to Bondage Breakers for $12,000 |
| 5 | | | | | Ortho/Neuro Medical Assoc. check #4188 payable to Lindsey Springer for $25,000 |
| 6 | | | | | Ortho/Neuro Medical Assoc. check #4288 payable to Lindsey Springer for $10,000 |
| 7 | | | | | Ortho/Neuro Medical Assoc. check #4340 payable to Lindsey Springer for $10,000 |
| 8 | | | | | First National Bank (replace chk #4347 - remitter Ortho/Neuro Medical Assoc.) payable to Lindsey Springer for $25,000 |
| 9 | | | | | Eddy or Judith Patterson check #3868 payable to Lindsey Springer for $10,000 |
| 10 | | | | | Eddy or Judith Patterson check #3889 payable to Lindsey Springer for $10,000 |
| 11 | | | | | Garlin Assoc. Ministries check #3192 to Bondage Breakers for $10,000 |
| 12 | | | | | Manufacturers Bank Cashier Check #148198 payable to Lindsey Springer for $10,000 |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 13 | | | | | Manufacturers Bank Cashier Check #148199 payable to Lindsey Springer for $10,000 |
| 14 | | | | | Eddy or Judith Patterson check #3943 payable to Lindsey Springer for $10,000 |
| 15 | | | | | DVAT check #369 payable to Lindsey Springer for for $10,000 |
| 16 | | | | | Garlin Assoc. Ministries check #3881 to Lindsey Springer $17,500; The Morning Star Trust check #2098 payable to Lindsey Springer for $50 |
| 17 | | | | | Garlin Assoc. Ministries check #3882 to Lindsey Springer $17,500 |
| 18 | | | | | Roberts Chiropractic Center check # 5457 payable to Lindsey Springer for $10,000 |
| 20 | | | | | Windyhill Management Company Trust check #2197 payable to Bondage Breakers Ministry for $400; Chippewa Trail Lodge check #1430 payable to Bondage Breakers Ministries for $13,000 |
| 21 | | | | | Chippewa Trail Lodge check #1432 payable to Bondage Breakers Ministries for $5,000 |
| 22 | | | | | Cynthia Hawkins check #0094 payable to Bondage Breakers Ministries for $30,000 |
| 23 | | | | | Cynthia Hawkins check #561 payable to Bondage Breakers Ministries for $37,000 |
| 24 | | | | | Chippewa Trail Lodge check #1022 payable to Bondage Breakers Ministries for $35,000 |
| 25 | | | | | Arkansas IOLTA Foundation Trust Acct. check #634 payable to Jerold Barringer for $668.75; Arkansas IOLTA Foundation Trust Acct. check #635 payable to Lindsey Springer for $14,539 |
| 26 | | | | | Arkansas IOLTA Foundation Trust Acct. check #641 payable to Lindsey Springer for $35,000; Arkansas IOLTA Foundation Trust Acct. check #642 to Jerold Barringer for $193.75 |
| 27 | | | | | Salvatore Pizzino and Melissa Pizzino check #567 payable to Lindsey Springer for $6,500 |
| 28 | | | | | Michael P. Burt check #7650 payable to Bondage Breakers Ministry for $7,500 |
| 29 | | | | | Compass Rose Enterprise check#1062 payable to Bondage Breakers for $3,750 |
| 30 | | | | | Sierra Foundation Mgmt., LLC check #963 payable to Bondage Breakers Ministries for $7,500 |
| 31 | | | | | Cynthia Hawkins check #893 payable to Bondage Breakers Ministries for $12,500 |
| 32 | | | | | Paragon Bank and Trust check #0007 payable to Lindsey Springer for $50,000 |
| 33 | | | | | Superior Bank Cashier's Check #1043 payable to Lindsey Springer for $20,000 |
| 34 | | | | | Superior Bank Cashier's Check #1044 payable to Lindsey Springer for $20,000 |
| 35 | | | | | Superior Bank Cashier's Check #1045 payable to Lindsey Springer for $20,000 |
| 36 | | | | | Superior Bank Money Orders withdrawn  IOLTA account totaling $18,000 |
| 37 | | | | | CitiBank check #233784633 (remitter Russell Young) payable to Lindsey Springer for $7,500 |
| 38 | | | | | Mayberry 2000, LLC check #1969 payable to Bondage Breakers Ministries for $45,000 |
| 39 | | | | | Sierra Foundation Mgmt, LLC check #983 payable to Bondage Breakers Ministry for $10,000 |
| 40 | | | | | Lone Star Enterprises Holding Trust check #1017 payable to Lindsey Springer for $25,000 |

Page 2 of  13 Pages

| PLF.<br>NO. | DEF.<br>NO. | DATE<br>OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 41 | | | | | Friendship Enterprises check #1472 payable to Bondage Breakers Ministry for $500 |
| 42 | | | | | Shelby County State Bank Cashier Check #088193 (remitter Denny Patridge) payable to Lindsey Springer for $6,000 |
| 43 | | | | | United States Postal Money Order #07369713393 (remitter Gary Goldman) payable to Lindsey Springer for $150; Windyhill Management Company Trust check #2486 payable to Bondage Breakers Ministries for $500; Guy Francis check #431 to Bondage Breakers Ministries for $4,000 |
| 44 | | | | | Lone Star Enterprises Holding Trust check #1023 to Lindsey Springer for $15,000 dtd 10/28/04 |
| 45 | | | | | Meracles Un-Limited check #2251 payable to Lindsey Springer for $10,500 |
| 46 | | | | | Shelby County State Bank Cashier Check #089649 (remitter Denny Patridge) payable to Lindsey Springer for $3,500 |
| 47 | | | | | Meracles Un-Limited check #2277 payable to Lindsey Springer for $13,000 |
| 48 | | | | | Denny Patridge check #1782 payable to Lindsey Springer for $10,000 |
| 49 | | | | | Herbert Mott and Charlene Mott check #1881 payable to Lindsey Springer for $10,000 |
| 50 | | | | | Denny Patridge and Judy Patridge check #4152 payable to Lindsey Springer for $5,000 |
| 51 | | | | | Beach Fire Corp Dba Tahiti Trader check #06-602 payable to Bondage Breakers for $20,000 |
| 52 | | | | | Believers Broadcasting Corp. check #12031 to Lindsey Springer for $20,000 |
| 53 | | | | | Denny Patridge and Judy Patridge check #3041 payable to Lindsey Springer for $5,000; Le Roy Peaslee check #225 payable to Lindsey K Springer for $250 |
| 54 | | | | | Beach Fire Corp Dba: Tropical Fruit Co. Dba: Tahiti Trader Co. check #7245 payable to Bondage Breakers Ministry for $5,000 |
| 55 | | | | | Denny Patridge check #563 payable to Lindsey Springer for $5,000 |
| 56 | | | | | American Savings Bank Cashier Check # 400942577 payable to Bondage Breakers Ministry for $45,000; Sam Palmer check #278 payable to Lindsey Springer for $500 |
| 57 | | | | | Guthrie Todd B check #0001403844 payable to Lindsey Springer for $500; American Savings Bank Cashier Check # 400942592 payable to Bondage Breakers Minst. for $5,000; Regions Bank Official Check #795083135 (remitter Creation Science Evangelism) payable to Bondage Breakers Ministry for $10,000 |
| 58 | | | | | Believers Broadcasting Corp. check #12602 to Bondage Breakers for $100,000 |
| 59 | | | | | Town & Country Bank cashier check#135325 (Remitter Lindsey Springer) payable to Lindsey Springer for $20,000 |
| 60 | | | | | Town & Country Bank cashier check #135326 (Remitter Lindsey Springer) payable to Lindsey Springer for $20,000 |
| 64 | | | | | Kathryn or James M. Stumpo check # 3287 payable to Bondage Breakers Ministries for $3,750 |
| 71 | | | | | Ortho/Neuro Medical Assoc. check #4185 payable to Oscar Stilley for $5,000 |
| 72 | | | | | Eddy or Judith Patterson check #3724 payable to Oscar Stilley for $5,000 |
| 73 | | | | | Ortho/Neuro Medical Assoc. check #4287 payable to Oscar Stilley for $20,000 |
| 74 | | | | | Ortho/Neuro Medical Assoc. check #4442 payable to Oscar Stilley for $10,000 |
| 75 | | | | | DVAT check #329 payable to Oscar Stilley for $20,000 |

Page 3 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 76 | | | | | Ortho/Neuro Medical Assoc. check #4772 payable to Oscar Stilley for $5,000 |
| 77 | | | | | Eddy or Judith Patterson check #3959 payable to Oscar Stilley for $5,000 |
| 78 | | | | | DVAT check #392 payable to Oscar Stilley for $15,000 |
| 79 | | | | | DVAT check #411 payable to Oscar Stilley for $5,000 |
| 80 | | | | | Ortho/Neuro Medical Assoc. check #4994 payable to Oscar Stilley for $10,000 |
| 81 | | | | | DVAT check #503 payable to Oscar Stilley for $5,000 |
| 82 | | | | | DVAT check #513 payable to Oscar Stilley for $1,500 |
| 83 | | | | | DVAT check #515 payable to Oscar Stilley for $3,000 |
| 84 | | | | | Ortho/Neuro Medical Assoc. check #5313 payable to Oscar Stilley for $5,000 |
| 85 | | | | | James Lake check #3678 payable to Oscar Stilley for $1,000 |
| 86 | | | | | DVAT check #550 payable to Oscar Stilley for $6,000 |
| 87 | | | | | James Lake check #993 payable to Oscar Stilley for $5,000 |
| 88 | | | | | Ernest Swisher check #210 payable to Oscar Stilley for $500 |
| 89 | | | | | Heber Springs State Bank Cashier's Check payable to Ernie Swisher for $4,000 |
| 90 | | | | | Arvest bank statement reflecting wire transfer deposit for $2,000 |
| 91 | | | | | Ozark Title Services check #2460 payable to Oscar Stilley, Attorney for $65,000 |
| 92 | | | | | Arkansas IOLTA Foundation Trust Acct. check #510 to Lindsey Springer $9,436 |
| 93 | | | | | Bank One Official Check payable to Oscar Stilley Atty. for $5,000; |
| 94 | | | | | Chippewa Trail Lodge check #1421 payable to Oscar Stilley - IOLTA for $4,445 |
| 95 | | | | | Chippewa Trail Lodge check #1429 payable to Oscar Stilley for $5,555 |
| 96 | | | | | Chippewa Trail Lodge check #1013 payable to IOLTA - Oscar Stilley for $8,000 |
| 97 | | | | | Chippewa Trail Lodge check #1021 payable to IOLTA - Oscar Stilley for $20,000 |
| 98 | | | | | Tulsa Sales and Rental check #10005 payable to Oscar Stilley for $5,000 |
| 99 | | | | | Joseph B. Albin check #1592 payable to Eddie Patterson and Judy Patterson for $112,500 |
| 100 | | | | | Salvatore Pizzino and Melissa Pizzino check #568 payable to Oscar Stilley for $2,500 |
| 102 | | | | | Superior Cashier's Check #057446 to Ed Bryson for $37,000 (notation - RE: Lindsey Springer) |
| 103 | | | | | Cynthia Hawkins check #894 payable to IOLTA - Oscar Stilley for $7,500. |
| 104 | | | | | Paragon Bank and Trust check payable to Oscar Stilley for $50,000 |
| 105 | | | | | Cynthia Hawkins check #726 payable to IOLTA - Oscar Stilley for $25,000 |
| 106 | | | | | Cynthia Hawkins check #727 payable to Bondage Breakers Minstries for $25,000 and deposited into Stilley's IOLTA account |
| 107 | | | | | Arkansas IOLTA Foundation Trust Account statement relecting $375,059.90 incoming wire from WT Hall Estill and wire advice |
| 108 | | | | | Tulsa Sales and Rental check #3560 payable to Oscar Stilley for $20,000 |
| 109 | | | | | Lone Star Enterprises Holding Trust check #1013 payble to Oscar Stilley for $25,000 |
| 110 | | | | | Michael P. Burt check #138 payable to Oscar Stilley for $2,100 and deposit slip |

Page 4 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 111 | | | | | Lone Star Enterprises Holding Trust check #1024 payble to Oscar Stilley for $10,000 with notation "Berringer" and deposit slip |
| 112 | | | | | Casabella Enterprises check #1946 payable to Oscar Stilley for $10,000; H.I.R. Fellowship Church check #1264 payable to Oscar Stilley for $545 and deposit slip |
| 113 | | | | | Salvatore Pizzino check payable to Oscar Stilley for $7,500 and deposit slip |
| 114 | | | | | Arvest Bank IOLTA account statement reflecting receipt of $192,000 and $58,000 wire transfers from Patricia L Turner |
| 116 | | | | | Arvest Bank statement reflecting wire transfer deposits for $5,000 remitter Wipe Out Trust and for $10,000 remitter B Swan Company Trust |
| 118 | | | | | Foremost Labs check #11252 payable to IOLTA Foundation for $5,000 and deposit slip |
| 119 | | | | | Foremost Labs check #11259 payable to IOLTA Foundation for $6,000 and deposit slip |
| 120 | | | | | Foremost Labs check #11264 payable to IOLTA Foundation for $5,000 and deposit slip |
| 121 | | | | | Foremost Labs check #11271 payable to IOLTA for $5,000 and deposit slip |
| 122 | | | | | East Coast Management check #207 payable to Oscar Stilley for $5,000 and deposit slip |
| 124 | | | | | Foremost Labs check #11294 payable to IOLTA Foundation for $2,000; Bancorp South Official Check #431010928 (remitter Bob Bouton) payable to Oscar Stilley for $1,000 |
| 126 | | | | | East Coast Management check #260 payable to Oscar Stilley for $3,000; The Logsdon Family Trust check #10443 payable to IOLTA Foundation for $2,000 and deposit slip |
| 127 | | | | | Foremost Labs check #11324 payable to IOLTA Foundation for $3,000; Regions Bank Official Check #742531384 (remitter Alyson Bradford) payable to Oscar Stilley for $5,000 and deposit slip |
| 128 | | | | | Doris Hanson or Byron Hanson check #2058 payable to Oscar Stilley for $40; Foremost Labs check #11332 payable to IOLTA Foundation for $3,000 and deposit slip |
| 131 | | | | | Beach Fire Corp Dba Tahiti Trader check #06-601 payable to Oscar Stilley for $10,000 and deposit slip |
| 132 | | | | | Wells Fargo Bank check payable to Oscar Stilley for $4,000 and deposit slip |
| 133 | | | | | Beach Fire Corp Dba Tahiti Trader check #7089 payable to Oscar Stilley, Attorney at Law for $10,000 and deposit slip |
| 134 | | | | | American Savings Bank Cashiers Check #400942480 payable to Oscar Stilley for $175,000 and deposit slip |
| 135 | | | | | Arkansas IOLTA Foundation check #2042 payable to Bondage Breakers Ministries for $25,000 |
| 136 | | | | | Land Shark Inc. check #1061 payable to Oscar Stilley for $3,500 and deposit slip |
| 137 | | | | | Land Shark Inc. check #1084 payable to Oscar Stilley for $5,000 and deposit slip |
| 138 | | | | | Arvest Bank Outgoing Wire Transfer advice from Oscar Stilley to Bennett for $50,000 |
| 139 | | | | | Arkansas IOLTA Foundation check #2049 payable to Alan Richey for $25,000 - memo "Bennett, Hamlet" |
| 140 | | | | | Land Shark Inc. check #1228 payable to Oscar Stilley for $10,000 and deposit slip |

Page 5 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 151 | | | | | Eddy Patterson check #3711 payable to Oscar Stilley for $2,275; John or Reta Remington check #3703 payable to Oscar Stilley for $200 and deposit slip |
| 152 | | | | | Eddy Patterson or Judy Patterson check #3078 payable to Oscar Stilley for $1,815; Paragon Foundation Inc. check #2633 payable to Oscar Stilley for $2,442.92 and deposit slip |
| 153 | | | | | Eddy Patterson or Judy Patterson check #1415 payable to Oscar Stilley for $862.50 and deposit slip |
| 154 | | | | | Eddy Patterson or Judy Patterson check #1497 payable to Oscar Stilley for $877 and deposit slip |
| 155 | | | | | Salvatore Pizzino and Melissa Pizzino check #541 and #545, each payable to Oscar Stilley for $2,500 |
| 156 | | | | | Carter Numismatics check #20778 payable to Lindsey Springer for $56,000 |
| 159 | | | | | DVAT check #419 payable to Linsey Springer for $5,000 |
| 160 | | | | | DVAT check #439 payable to Lindsey Springer for $3,000 |
| 201 | | | | | Chippewa Trail Lodge check #1402 payable to Lindsey Springer for $5,000 |
| 203 | | | | | Chippewa Trail Lodge check #1431 payable to Bondage Breakers Ministry for $7,000 |
| 206 | | | | | Chippewa Trail Lodge check #1480 payable to IOLTA - Oscar Stilley for $11,000 |
| 207 | | | | | Chippewa Trail Lodge check #1433 payable to Bondage Breakers Ministries for $8,000 |
| 209 | | | | | Cynthia Hawkins check #563 payable to IOLTA - Oscar Stilley for $27,000 |
| 212 | | | | | Cynthia Hawkins check #576 payable to Bondage Breakers Ministries for $8,000 |
| 221 | | | | | Patrick & Patricia Turner check #1322 payable to Lindsey Springer for $1,000 |
| 226 | | | | | Friendship Enterprises check #1422 payable to Bondage Breakers for $500 |
| 227 | | | | | Friendship Enterprises check #1446 payable to Bondage Breakers for $550 |
| 228 | | | | | Friendship Enterprise check #1498 payable to Bondage Breakers for $500 |
| 230 | | | | | Friendship Enterprise check #1539 payable to Bondage Breakers for $1,000 |
| 231 | | | | | Friendship Enterprise check #1548 payable to Bondage Breakers for $1,000 |
| 236 | | | | | Patrick and Patricia Turner check #1624 payable to Bondage Breakers for $1,000 |
| 675 | | | | | Summary - Gross Income for 2000 |
| 676 | | | | | Summary - Gross Income for 2001 |
| 677 | | | | | Summary - Gross Income for 2002 |
| 678 | | | | | Summary - Gross Income for 2003 |
| 679 | | | | | Summary - Gross Income for 2004 |
| 681 | | | | | Summary - Gross Income for 2005 |
| 683 | | | | | Summary for the Years 2000 through 2005 |
| 1001 | | 4-21 | | 4-21 | Hedberg Declaration Trust check #535 payable to Dale Hedberg for $111,701.50 |
| 1002 | | / | | / | The Okemah National Bank Cashier's Check #166794 (remitter Sam Palmer) payable to Lindsey Springer for $10,000 |

Page 6 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1003 | | 4-21 | | 4-21 | Midsummer Farms check #3692 payable to Bondage Breakers for $10,000 |
| 1004 | | | | | National Commercial Bank transfer USD Draft #6180 payable Bondage Breakers Ministry for $9,779.96 (USD $3,632.21) and Debit Advice for transaction from St. Vincent, West Indies |
| 1005 | | | | | A.C. & R. Group Ltd. check #1625 payable to Lindsey Springer for $6,000 |
| 1006 | | | | | Patrick R or Patricia L Turner check #1904 payable to Bondage Breakers for $900 |
| 1007 | | | | | Creation Science Evangelism Ministry check #1124 payable to Bondage Breakers Ministry for $10,000 and Guthrie Gift check #0091962353 payable to Lindsey Springer for $500 |
| 1008 | | | | | Creation Science Evangelism Ministry check #1151 payable to Bondage Breakers Ministry for $10,000 |
| 1009 | | | | | Dale & Cheryl Phillips check #3803 payable to Lindsey Springer for $7,500 |
| 1010 | | | | | Patrick R or Patricia L Turner check #1957 payable to Bondage Breakers for $400 |
| 1011 | | | | | Patrick & Patricia Turner Quicken Report including check #s 2061, 2062 and 2153 payable to Bondage Breakers Ministry totaling $1,000 |
| 1012 | | | | | Joe McCutchen check #3230 payable to Oscar Stilley for $2,500 |
| 1013 | | | | | Lewis & Associates Inc. check #123 payable to Oscar Stilley for $25,000 |
| 1014 | | | | | Lewis & Associates Inc. check #124 payable to Oscar Stilley for $25,000 |
| 1015 | | | | | Lewis & Associates Inc. check #4997 payable to Oscar Stilley for $3,000 |
| 1016 | | | | | Maddox & Madox check #3900 payable to Oscar Stilley Trustee for $6,033 |
| 1017 | | | | | Lewis & Associates Inc. check #5231 payable to Oscar Stilley for $10,598.37 |
| 1018 | | | | | Fish R Manufacturing Services check #1020 payable to Oscar Stilley Attorney for $1,000 |
| 1019 | | | | | Ronald R. or Brenda Gibbons check #7065 payable to Oscar Stilley for $5,000 |
| 1020 | | | | | Arvest State Bank Cashier's Check #466837 (remitter Jeanne Davenport) payable to Oscar Stilley for $2,500 |
| 1021 | | | | | Spirit State Bank Cashier's Check #004592 (remitter Jeanne Davenport) payable to Oscar Stilley for $2,500 |
| 1022 | | | | | Steven D. or Terri D. Young check #5032 payable to Oscar Stilley for $5,000 |
| 1023 | | | | | E. Kent Hirsh, P.A. check #2352 payable to Oscar Stilley for $1,278.88 and deposit slip |
| 1024 | | | | | E. Kent Hirsh, P.A. check #2360 payable to Oscar Stilley for $15,751.46 and deposit slip |
| 1025 | | | | | E. Kent Hirsh, P.A. check #2374 payable to Oscar Stilley for $12,845.94 and deposit slip |
| 1026 | | | | | Arthur B. Stephens and Brenda June Stephens check #1001 payable to Oscar Stilley for $1,012.50 and deposit slip |
| 1027 | | | | | L. Ward Dobbs check #1724 payable to Oscer [sic] Stilley for $1,000 |
| 1028 | | | | | Marcey Hamm wire remittance payable to Arkansas IOLTA Foundation Trust Acc for Oscar Stilley for $20,480.35 |
| 1029 | | | | | Mechanical Fisher check #3931 payable to IOLTA Trust Account for Oscar Stilley for $2,500 |

Page 7 of 13 Pages

Case 4:09-cr-00043-SPF   Document 336-1   Filed 04/23/10   Page 8 of 25
Case 4:09-cr-00043-SPF-5113   Document 319-2   Filed in USDC ND/OK on 03/30/2030 2023   Page 8 of 13
Appellate Case: 23-5113   Document: 010110853038   Date Filed: 03/30/2023   Page: 68

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1030 | | 4-21 | | 4-21 | Arvest Bank statement reflecting wire transfer deposit for $3,500 remitter Marcey Hamm |
| 1031 | | | | | Arkansas Municipal League check #013549 payable to Oscar Stilley, Esq. for $37.500 |
| 1032 | | | | | First State Bank Cashier's Check #250235 (remitter Kirk Stock) payable to Oscar Stilley for $2,000 and deposit slip |
| 1033 | | | | | Paragon Foundation, Inc. check #3473 payable to Oscar Stilley for $1,357.63; Joe McCutchen check #5434 payable to Oscar Stilley for $100 and deposit slip |
| 1034 | | | | | Arvest Bank Cashier's Check #0865382 (remitter Tobi A Walker) payable to Oscar Stilley for $1,580.78 and deposit slip |
| 1035 | | | | | Gary or Mary Morrow check #8948 payable to Oscar Stilley for $1,000 and deposit slip |
| 1036 | | | | | Gary or Mary Morrow check #2669 payable to Oscar Stilley for $1,000 and deposit slip |
| 1037 | | | | | Wells Fargo Bank check payable to Oscar Stilley for $5,000 and deposit slip |
| 1038 | | | | | First State Bank Cashier's Check #256489 (remitter Kirk Stock) payable to Oscar Stilley for $1,000 and deposit slip |
| 1039 | | | | | Esther M. Aberle check #1164 payable to Oscar Stilley for $7,500 and deposit slip |
| 1040 | | | | | Quantum Concepts check #1580 payable to Oscar Stilley for $2,000 and deposit slip |
| 1041 | | | | | Americans for Limited Government Foundation check #2716 payable to Oscar Stilley for $5,425.50 and deposit slip |
| 1043 | | | | | Quantum Concepts check #1595 payable to Oscar Stilley for $5,000 and deposit slip |
| 1044 | | | | | First State Bank Cashier's Check #259990 (remitter Kirk Stock) payable to Oscar Stilley for $300 and deposit slip |
| 1045 | | | | | Chase Official Check #541934310 (remitter Paul Frazell) payable to Oscar Stilley for $2,500 and deposit slip |
| 1046 | | | | | JFJ PA, Inc. check #1039 payable to Oscar Stilley for $15,000 and deposit slip |
| 1047 | | | | | Quantum Concepts check #1631 payable to Oscar Stilley for $5,000 and deposit slip |
| 1048 | | | | | Cathy C Peacock check #104 payable Oscar Stilley, Attorney for $1,500 |
| 1049 | | | | | Cathy C Peacock check #107 payable to Oscar Stilley, Att. for $475; Karen H. Page and Kathy L. Williams check #532 payable to Oscar Stilley for $5,000 and deposit slip |
| 1050 | | | | | Anshin Enterprise Inc. check #1031 payable to Oscar Stilley for $7,500 and deposit slip |
| 1051 | | | | | Washington Mutual Bank Official Check #889067207 payable to Oscar Stilley for $5,000 |
| 1052 | | | | | United States Postal Money Orders (ten) (remitter LFT) payable to IOLTA totaling $9,997 and deposit slip |
| 1053 | | | | | Morton Community Bank Cashier's Check #041322 (remitter Robert Lawrence) payable to Oscar Stilley for $3,065.97 and deposit slip |
| 1054 | | | | | Todd Guthrie and Patricia L Guthrie check #1125 payable to Oscar Stilley for $5,000 and deposit slip |
| 1055 | | | | | First State Bank Cashier's Check #28473 (remitter Kirk Stock) payable to Oscar Stilley for $250; Quantum Concepts check #1682 payable to Oscar Stilley for $2,500 and deposit slip |

Page 8 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1056 | | 4-21 | | 4-21 | JB Foundation check #223 payable to Oscar Stilley for $120; Anshin Enterprise Inc. check #1116 payable to Oscar Stilley for $7,500 and deposit slip |
| 1057 | | | | | Elite Care Center LLC check #4652 payable to Oscar Stilley Attorney at Law for $2,500; Americo Insurance check #05336175 payable to Leroy M Bennett Jr. for $10,651.51 and deposit slip |
| 1058 | | | | | Foley Road Boat check #8569 payable to Oscar Stilley for $3,000 and deposit slip |
| 1059 | | | | | Millenium Connection LLC check #156 payable to Oscar Stilley for $25,000 and deposit slip |
| 1060 | | | | | Todd Guthrie and Patricia L Guthrie check #1125 payable to Oscar Stilley for $28.54; Anshin Enterprise Inc. check #1175 payable to Oscar Stilley for $4,000 and deposit slip |
| 1061 | | | | | Lauren Anne Redeker check #103 payable to IOLTA Account for Oscar Stilley for $8,500; Warran T. Barry check #5036 payable to IOLTA Account for Oscar Stilley for $16,500 and deposit slip |
| 1062 | | | | | Eric P. Benson TTE check #0479 payable to Oscar Stilley for $20,000 and deposit slip |
| 1063 | | | | | Empower Enterprises check #10532 payable to Oscar Stilley for $25,000 and deposit slip |
| 1064 | | | | | Thomasville National Bank Cashier's Check #29148 (remitter Donnie Griner) payable to Oscar Stilley for $9,500 and deposit slip |
| 1065 | | | | | First State Bank Cashier's Check #30330 (remitter Kirk Stock) payable to Oscar Stilley for $250 and deposit slip |
| 1066 | | | | | Thomasville National Bank Cashier's Check #29235 (remitter Donnie Griner) payable to Oscar Stilley for $6,000 and deposit slip |
| 1067 | | | | | Natural Health Resources check #7677 payable to Oscar Stilley, Attorney at Law for $20,000; Empower Enterprises check #10589 payable to Oscar Stilley for $1025,000 and deposit slip |
| 1068 | | | | | Arvest Bank statement reflecting wire transfer deposit for $25,000 remitter Empower Enterprises |
| 1069 | | | | | Wayne McEachern and Sharon McEachern check #5377 payable to Oscar Stilley for $10,000 and deposit slip |
| 1070 | | | | | LaSalle Bank Official Check #036804136-5 (remitter Brent N Gross) payable to Oscar Stilley for $5,000 and deposit slip |
| 1071 | | | | | Truman Bank Cashier's Check #4976197296 (remitter John Calandrella) payable to Oscar Stilley Attorney at Law for $15,000 and deposit slip |
| 1072 | | | | | National Exteriors check #4304 payable to Oscar Stilley for $5,000 and deposit slip |
| 1073 | | | | | Daniel J. Delphia check #0007557895 payable to Stilley, Oscar Atty for $2,500; Avagon LLC check #1218 payable to Oscar Stilley for $5,000 and deposit slip |
| 1074 | | | | | L Richard Shearer M.D. Inc. check #2726 payable to Oscar Stilley for $4,500 and deposit slip |
| 1075 | | | | | Arvest Bank statement reflecting wire transfer deposit for $4,500 remitter L Richard Shearer MD Inc. |
| 1076 | | | | | Metropolitan National Bank Cashier's Check #059292 (remitter Rhonda Hartzell) payable to Oscar Stilley for $5,000 and deposit slip |
| 1077 | | | | | Avagon LLC check #1250 payable to Oscar Stilley for $5,000 and deposit slip |
| 1078 | | | | | Glenda K Sapp check #500 payable to Oscar Stilley for $5,000 and deposit slip |

Page 9 of 13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1079 | | 4-21 | | 4-21 | Bank of America Cashier Check #0052807 (remitter Hein Family Trust) payable to Paul or Loretta Hein for $5,000 and deposit slip |
| 1080 | | | | | Roger C. Mattson check #1979 payable to Mr. Oscar Stilley for $2,500; Gene Basile TTE and Virginia Ann Basile TTE check #4665 payable to Oscar Stilley for $15,000; Donnie C. Griner check #1051 payable to Oscar Stilley Att at Law for $4,000; Daniel J. Delphia check #0030250281 payable to Stilley, Oscar Atty for $1,000 and deposit slip |
| 1081 | | | | | Office of TTE Mark A Lobello and his Successors check #2002 payable to Oscar Stilley Trust Account for $9,000 and deposit slip |
| 1082 | | | | | Unknown Payor Name (check signed by Jan Mellor) payable to Oscar Stilley Attorney at Law for $4,561.83 |
| 1083 | | | | | Dr. Eric D. Nickhaus and Robin K. Nickhaus check #9231 payable to Mr. Oscar Stilley for $2,000; Office of TTE Mark A Lobello and his Successors check #2005 payable to Oscar Stilley Esq Trust Account for $10,000; Puyallup Chiropractic Clinic Inc. check #14453 payable to Oscar Stilley for $2,500 and deposit slip |
| 1084 | | | | | R.T. Mizuno LLC check #0120 payable to Oscar Stilley for $2,500; Dr. Eric D. Nickhaus and Robin K. Nickhaus check #9246 payable to Mr. Oscar Stilley for $1,500 and deposit slip |
| 1085 | | | | | Louis E Johnson check #2439 payable to Oscar Stilley Att at Law for $1,000 and deposit slip |
| 1086 | | | | | United States Postal Money Order #92965811062 (remitter Ward Scott Wood) payable to Oscar Stilley for $1,000; Kevin L Terry D.C. and Miran A Terry check #11192 payable to Oscar Stilley for $2,000; MidFlorida Federal Credit Union Cashier's Check #3909386 (payee illegible) for $2,500; Help and Support LLC check #381 payable to Oscar Stilley for $5,000 and deposit slip |
| 1087 | | | | | United States Postal Money Order #11051727693 (remitter Ward Scott Wood) payable to Oscar Stilley for $500 and deposit slip |
| 1088 | | | | | Donnie C. Griner check #1122 payable to Oscar Stilley for $2,000 and deposit slip |
| 1089 | | | | | Charles R. Glenn check #1066 payable to Oscar Stilley Attorney at Law for $2,500 |
| 1090 | | | | | Ann T. Gardner check #516 payable to Oscar Stilley for $1,000 and deposit slip |
| 1091 | | | | | Barry G. Brockman check #5163 payable to Oscar Stilley for $5,000; First State Bank Cashier's Check #37960 (remitter Kirk Stock) payable to Oscar Stilley for $721.60 and deposit slip |
| 1092 | | | | | United States Postal Money Order #92961167321 (remitter Ward Scott Wood) payable to Oscar Stilley for $250 and deposit slip |
| 1093 | | | | | Niehaus Chiropractic Clinic check #1138 payable to Oscar Stilley for $11,000; Total Wellness Solutions check #0080039609 payable to Stilley, Oscar Atty for $1,000 and deposit slip |
| 1094 | | | | | Gene P Borelli check #536 payable to Oscar Stilley for $2,000; Gene P Borelli check #535 payable to Oscar Stilley for $1,400; Bonnie B Brokaw check for $2,000 and deposit slip |
| 1095 | | | | | Minerals & Royalty, Inc. check #2057 payable to Oscar Stilley for $3,223.55 and deposit slip |
| 1096 | | | | | Donnie C. Griner check #1217 payable to Oscar Stilley for $7,000 and deposit slip |
| 1097 | | | | | Louis E Johnson check #2442 payable to Oscar Stilley Attorney at Law for $500; MidFlorida Cashier's Check #3910041 (remitter Robert King) payable to Oscar Stilley for $2,000; Puyallup Chiropractic Clinic Inc. check #14591 payable to Oscar Stilley for $500  and deposit slip |

Page 10 of  13 Pages

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1098 | | 421 | | 421 | Charles R. Glenn check #2289 payable to Oscar Stilley for $1,000; Total Wellness Solutions check #0016656103 payable to Stilley, Oscar Atty for $1,000; Donnie C. Griner check #1297 payable to Oscar Stilley for $4,000; R T Mizuno LLC check #4061 payable to Oscar Stilley for $5,000 and deposit slip |
| 1099 | | | | | Gene P Borelli check #538 payable to Oscar Stilley for $1,000; Louis E Johnson check #2443 payable to Oscar Stilley Att at Law for $500 and deposit slip |
| 1100 | | | | | Arvest Bank statement reflecting wire transfer deposit for $175,000 remitter Office of the Presiding |
| 1101 | | | | | Barry G. Brockman check #5562 payable to Oscar Stilley for $10,000 and deposit slip |
| 1102 | | | | | First Bank Official Check #10752574 (remitter Wayne McEachern) payable to Oscar Stilley for $500 and deposit slip |
| 1103 | | | | | Puyallup Chiropractic Clinic Inc. check #14637 payable to Oscar Stilley for $2,500; MidFlorida Cashier's Check #3910462 (remitter Patricia King) payable to Oscar Stilley for $582; Abrasive Innovations check #1229 payable to Oscar A. Stilley; Louis E. Johnson check #2444 payable to Oscar Stilley Att. at Law for $1,000 and deposit slip |
| 1104 | | | | | Niehaus Chiropractic Clinic check #1159 payable to Oscar Stilley for $6,000 and deposit slip |
| 1105 | | | | | Les Hugaboom and Imelda-Lisa Ignacio check #1580 payable to Oscar Stilley for $2,500; Barry L. Cox and Janis L. Cox check #1122 payable to Oscar Stilley for $2,500 and deposit slip |
| 1106 | | | | | Arvest Bank statement reflecting wire transfer deposit for $2,000 remitter Paul A Hein |
| 1107 | | | | | Donnie C. Griner check #1345 payable to Oscar Stilley for $3,000 and deposit slip |
| 1108 | | | | | Ideal Systems Inc. check #1039 payable to Oscar Stilley Atty at Law for $4,000 and deposit slip |
| 1109 | | | | | Shell Community Federal Credit Union Cashier's Check #75659 payable to Oscar Stilley or Ward Scott Wood for $1,110.70 |
| 1110 | | | | | L&F Farms LLC check #1311 payable to Oscar Stilley for 14,000 and deposit slip |
| 1111 | | | | | Eric P. Benson TTE The Dorian Foundation check #0682 payable to Oscar Stilley for $3,000 and deposit slip |
| 1112 | | | | | ABC Seamless Siding check #19953 payable to Oscar Stilley attorney at law for $2,500 and deposit slip |
| 1113 | | | | | Dale Parks check #366 payable to Oscar Stilley Attorney at Law for $5,000 and deposit slip |
| 1114 | | | | | Arvest Bank statement reflecting wire transfer deposit for $5,000 remitter Gary Bell |
| 1115 | | | | | Total Wellness Solutions check #0073678578 payable to Stilley, Oscar Atty for $2,500; Timothy and Neketta Marks check #1331 payable to Oscar Stilley for $1,000 and deposit slip |
| 1116 | | | | | First State Bank Cashier's Check #51092 (remitter Kirk Stock) payable to Oscar Stilley for $300 |
| 1117 | | | | | Barry Brockman check #6000 payable to Oscar Stilley for $5,000 |
| 1118 | | | | | Renee and Brett Dirr check #1060 payable to Oscar Stilley for $2,500 and deposit slip |
| 1119 | | | | | Renee and Brett Dirr check #1061 payable to Oscar Stilley for $3,441.64 and deposit slip |

Case 4:09-cr-00043-SPF Document 336-1 Filed 04/23/10 Page 12 of 25
Case 4:09-cr-00043-SPF Document 339-2 Filed in USDC ND/OK on 03/30/2010 Page 12 of 13
Appellate Case: 22-5111 Document: 010110805031 Date Filed: 01/25/2023 Page: 72

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1120 | | 4-21 | | 4-21 | Renee and Brett Dirr check #1063 payable to Oscar Stilley for $2,580 and deposit slip |
| 1121 | | | | | Chase Bank Official Check #111631974 (remitter C. Ledford) payable to Oscar Stilley Attorney at Law for $5,000 and deposit slip |
| 1122 | | | | | Ideal Systems Inc. check #1061 payable to Oscar Stilley Atty at Law for $2,000; Total Wellness Solutions check #0093947996 payable to Stilley, Oscar Atty for $1,000 and deposit slip |
| 1123 | | | | | ABC Seamless Siding check #20983 payable to Oscar Stilley attorney at law for $2,500 and deposit slip |
| 1124 | | | | | Les Hugaboom and Imelda-Lisa Ignacio check #1776 payable to Oscar Stilley for $2,500 and deposit slip |
| 1125 | | | | | United States Postal Money Order #12226728047 (remitter Tim Roney) payable to Oscar Stilley for $1,000 and deposit slip |
| 1126 | | | | | Total Wellness Solutions check #0013474036 payable to Stilley, Oscar Atty for $500 and deposit slip |
| 1127 | | | | | P.A. Pflum check #975 payable to Oscar Stilley for $2,500 and deposit slip |
| 1128 | | | | | Barry G. Brockman check #6221 payable to Oscar Stilley for $5,000; Chase Cashier's Check #9125700624 (remitter Charles Ledford) payable to Oscar Stilley for $5,000; Timothy Neil Marks M.D. PA check #114 payable to Oscar Stilley for $5,000; Timothy Marks check #0091 payable to Oscar Stilley for $5,000 and deposit slip |
| 1129 | | | | | TSEW Corporation check #1531 payable to Oscar Stilley for $2,000 and deposit slip |
| 1130 | | | | | Timothy and Neketta Marks check #1436 payable to Oscar Stilley for $4,200 and deposit slip |
| 1131 | | | | | Total Wellness Solutions check #0034700854 payable to Oscar Stilley Attorney for $2,000; Neighbors Credit Union Official Check #000090235 (remitter Gary Bell) payable to Oscar Stilley Attorney at Law for $500 and deposit slip |
| 1132 | | | | | ABC Seamless Siding check #21805 payable to Oscar Stilley attorney at law for $1,500 and deposit slip |
| 1133 | | | | | Imelda-Lisa Ignacio, DDS check #1417 payable to Oscar Stilley for $2,000; M. Rhona Lee and Anna J. Flaherty check #989 payable to Oscar Stilley for $700 and deposit slip |
| 1134 | | | | | Paypal Records for Account in the name of Lindsey Springer Covering 06/16/2006 through 12/30/2009 |
| 1135 | | | | | Paypal Records for Account in the name of Oscar Stilley Covering 11/14/2006 through 08/14/2009 |
| 1136 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1990 |
| 1137 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1991 |
| 1138 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1992 |
| 1139 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1993 |
| 1140 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1994 |
| 1141 | | | | | IRS Account Transcript of Lindsey Kent Springer for Tax Year 1995 |
| 1142 | | | | | IRS Account Transcript of Oscar Amos Stilley for Tax Year 2002 |
| 1143 | | | | | IRS Account Transcript of James Lake for Tax Year 2000 |
| 1144 | | | | | IRS Account Transcript of Eddy and Judith Patterson for Tax Year 1997 |

Page 12 of 13 Pages

Case 4:09-cr-00043-SPF  Document 336-1  Filed 04/23/10  Page 13 of 25
Case 4:09-cr-00043-SPF  Document 319-2  Filed in USDC ND/OK on 03/30/2010  Page 13 of 13
Appellate Case: 22-5119  Document: 010110809744  Date Filed: 01/25/2023  Page: 73

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS AND WITNESSES |
|---|---|---|---|---|---|
| 1145 | | 4-21 | | 4-21 | IRS Account Transcript of Eddy and Judith Patterson for Tax Year 1998 |
| 1146 | | | | | IRS Account Transcript of Eddy and Judith Patterson for Tax Year 1999 |
| 1147 | | | | | IRS Account Transcript of Eddy and Judith Patterson for Tax Year 2000 |
| 1148 | | | | | IRS Account Transcript of Philip Roberts for Tax Year 1992 |
| 1149 | | | | | IRS Account Transcript of Philip Roberts for Tax Year 1993 |
| 1150 | | | | | IRS Account Transcript of Philip Roberts for Tax Year 1994 |
| 1151 | | | | | IRS Account Transcript of Philip Roberts for Tax Year 1995 |
| 1152 | | | | | IRS Account Transcript of Patrick and Patricia Turner for Tax Year 1999 |
| 1153 | | | | | IRS Account Transcript of Patrick and Patricia Turner for Tax Year 2000 |
| 1154 | | | | | IRS Account Transcript of Patrick and Patricia Turner for Tax Year 2001 |
| 1155 | | | | | IRS Account Transcript of Patrick and Patricia Turner for Tax Year 2002 |
| 1156 | | | | | IRS Account Transcript of Patrick and Patricia Turner for Tax Year 2003 |
| 1157 | | | | | Transcript of Defendant Springer's Testimony in 09-CR-043-SPF |
| 1158 | | | | | Transcript of Defendant Stilley's Testimony in 09-CR-043-SPF |
| 1159 | | 4-21 | | 4-21 | Summary of Gross Income for 1999 - Springer |
| 1160 | | | | | Summary of Gross Income for 2000 - Springer |
| 1161 | | | | | Summary of Gross Income for 2001 - Springer |
| 1162 | | | | | Summary of Gross Income for 2002 - Springer |
| 1163 | | | | | Summary of Gross Income for 2003 - Springer |
| 1164 | | | | | Summary of Gross Income for 2004 - Springer |
| 1165 | | | | | Summary of Gross Income for 2005 - Springer |
| 1166 | | | | | Summary of Gross Income for 2006 - Springer |
| 1167 | | | | | Summary of Gross Income for 2007 - Springer |
| 1168 | | | | | Summary of Gross Income for 2000 - Stilley |
| 1169 | | | | | Summary of Gross Income for 2001 - Stilley |
| 1170 | | | | | Summary of Gross Income for 2002 - Stilley |
| 1171 | | | | | Summary of Gross Income for 2003 - Stilley |
| 1172 | | | | | Summary of Gross Income for 2004 - Stilley |
| 1173 | | | | | Summary of Gross Income for 2005 - Stilley |
| 1174 | | | | | Summary of Gross Income for 2006 - Stilley |
| 1175 | | | | | Summary of Gross Income for 2007 - Stilley |
| 1176 | | | | | Summary of Gross Income for 2008 - Stilley |
| 1177 | | | | | Summary of Third Party Tax Losses |
| 1178 | A | | | | Summary of Tax Loss and Restitution - Springer |
| 1179 | A | | | | Summary of Tax Loss and Restitution - Stilley |

Page 13 of 13 Pages

Case 4:09-cr-00043-SPF   Document 325  Filed in USDC ND/OK on 04/06/2010   Page 1 of 2

%AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

<u>NORTHERN</u>                    DISTRICT OF                    <u>OKALHOMA</u>

*Springer*

UNITED STATES OF AMERICA                    **EXHIBIT AND WITNESS LIST**

V.

Lindsey Kent Springer                    Case Number:  09-CR-043-SPF

| PRESIDING JUDGE STEPHEN P. FRIOT | PLAINTIFF'S ATTORNEY THOMAS SCOTT WOODWARD | DEFENDANT'S ATTORNEY NONE |
|---|---|---|
| TRIAL DATE (S) OCTOBER 26, 2009 | COURT REPORTER | COURTROOM DEPUTY |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| | 300 | | | | Form 1040 1990 |
| | 301 | | | | Form 1040 1991 |
| | 302 | | | | Form 1040 1992 |
| | 303 | | | | Form 1040 1993 |
| | 304 | | | | Form 1040 1994 |
| | 305 | | | | Form 1040 1995 |
| | 306 | | | | Form 1040 1996 |
| | 307 | | | | Form 1040 1997 |
| | 308 | | | | Form 1040 1998 |
| | 309 | | | | Form 1040 1999 |
| | 310 | | | | Form 1040 2000 |
| | 311 | | | | Form 1040 2001 |
| | 312 | | | | Form 1040 2002 |
| | 313 | | | | Form 1040 2003 |
| | 314 | | | | Form 1040 2004 |
| | 315 | | | | Form 1040 2005 |
| | 316 | | | | Form 1040 2006 |
| | 317 | | | | Form 1040 2007 |
| | 318 | | | | certificate of release of lien from Secretary for 1990 - 1995 dated August 23, 2007 |
| | 319 | | | | lien on RV Patrick Turner and agreement |
| | 320 | | | | Patterson Docket in 03-cr-55    4-22-10 |
| | | | | | Witnesses Todd Gollihare, Brian Shern, Brian Miller and Lindsey Springer |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of _1_ Pages

19  4-21    4-21
22  4-22    4-22

FILED IN
OPEN COURT.

APR 2 3 2010

BY: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

                        Plaintiff,

                                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

                        Defendants.

NOTICE OF APPEAL

        Lindsey K. Springer ("Springer")  files his notice of appeal from the final order
and judgement by the United States Western Judicial District Court Judge Stephen P
Friot dated April 2 3, 2010.

                        _____
                        Lindsey K. Springer
                        5147 S. Harvard, # 116
                        Tulsa, Oklahoma 74135
                        918-955-8225

April 2 3, 2010

CERTIFICATE OF SERVICE

        I hereby certify that a true and correct copy of Lindsey Kent   Springer's Notice

1

75

of Appeal was ecf'd on April 23, 2010 as well as hand delivered, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

Signature

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

FILED IN
OPEN COURT

APR 2 3 2010

BY: _____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. _O9-CR-043-SPF_ |
| | ) |
| _Oscar Amos Stilley_, | ) |
| | ) |
| Defendant. | ) |

**NOTICE OF APPEAL**

Notice is hereby given that the above-named defendant does hereby appeal to the

Tenth Circuit Court of Appeals, the Judgment in a Criminal Case entered on ___4-23-10___

Date: ___4-23-10___

_____
Signature of Defendant

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, )
)
              Plaintiff, )
)
v. )   09-CR-43-SPF
)
LINDSEY KENT SPRINGER and )
OSCAR STILLEY, )
)
           Defendants. )

**FILED IN
OPEN COURT**

APR 2 3 2010

BY: _____

## SPRINGER'S MOTION FOR STAY OF EXECUTION OF SENTENCE AND RELEASE PENDING APPEAL

Lindsey Kent Springer ("Springer") files his motion for stay of execution of sentence and release pending appeal pursuant to Title 18, Section 3143(b), 3145(c)(exceptional circumstances) Federal Rules of Appellate Procedure Rule 8(1))(A), and Federal Rules of Criminal Procedure 38(b).

## BACKGROUND

On May 15, 2009, Springer moved to dismiss each count of the indictment on grounds the "U.S. Individual Income Tax Return" Form 1040 for years 2000 through 2007 violated the Paperwork Reduction Act of 1995 in regard to each request for information form failing to display the information mandated by Congress at Title 44, Section 3506(c)(1)(B)(i-v)(1995) as well as each purported from failed to comply with the certification made pursuant to 5 CFR 1320.8 and 1320.9.    See doc. 53 and 54.

On May 29, 2009, the United States opposed Springer's motion claiming simply the claims by Springer are "frivolous."   See doc. 71, pg. Unnumbered page 6.

In Two Bill of Particulars the United States maintained the Form 1040 is not required to comply with the Paperwork Reduction Act because the filing of the "U.S. Individual Income Tax Returns" alleged as Form 1040s by the Grand Jury is an

1

obligation of Springer mandated by section 6012 and not regulation.   See doc. 104, pg. 2[1]

The Court in a minute order denied Springer's Motion without any finding of facts or conclusion of law.   See Doc. 100.

Prior to Trial the Court determined Springer could present his good faith claims regarding Form 1040 under the element of willfulness.

During Trial the Court directed the Jury that the Form 1040 did not violate the Paperwork Reduction Act.

Springer moved for a new trial and judgment of acquittal.   This Court denied both Motions.

--------------------------------------

[1]The United States writes:

"Counts 2, 3, 5 and 6 of the Indictment each include the phrase "required by law" in reference to Defendant Springer's failure to file a federal income tax return. The filing of income tax returns is mandated by statute. *United States v. Collins*, 920 F.2d 619, 630-31 (10th Cir. 1990); *United States v. Dawes*, 951 F.2d 1189, 1193 (10th Cir. 1991); *United States v. Neff*, 954 F.2d 698, 699-700 (11th Cir. 1992); *United States v. Hicks*, 947 F.2d 1356, 1359 (9th Cir. 1991); *United States v. Kerwin*, 945 F.2d 92 (5th Cir. 1991); *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990). The statutes that required Defendant Springer file individual federal income tax returns are as follows:

Title 26, United States Code Section 1 - Tax Imposed;
Title 26, United States Code Section 61 - Gross Income Defined;
Title 26, United States Code Section 63 - Taxable Income Defined;
Title 26, United States Code Section 6011(a) - General Requirement of Return, Statement or List;
Title 26, United States Code Section 6012(a)(1)(A) - Persons Required to Make Returns of Income;
Title 26, United States Code Section 6072(a) - Time for Filing Income Tax Returns;
Title 26, United States Code Section 6091 - Place for Filing Returns or Other Documents; Title 26, United States Code Section 6151 - Time and Place for Paying Tax Shown on Returns; Title 26, United States Code Section 7203 - Willful Failure to File Return, Supply Information or Pay Tax.

In regard to Springer's claims under the Paperwork Reduction Act violations where Springer claims the Court improperly told the fact finder the Form 1040 did not violate the Paperwork Reduction Act, the Court stated:

> Mr. Springer argues that on numerous occasions the court incorrectly advised the jury that IRS Form 1040 did not violate the Paperwork Reduction Act. In this motion, Mr. Springer argues that the PRA was his "complete defense" and that the court improperly advised the jury that Form 1040 complied with the PRA. Assuming that the PRA has any application at all to the offenses charged in this case, the court rejects, as it has done before, Mr. Springer's contention that the Paperwork Reduction Act provides him with a defense in this action. As held in United States v. Dawes, 951 F.2d 1189, 1191-92 (10th Cir. 1991), quoted in Springer v. United States, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006), "the requirement to file a tax return is mandated by statute, not by regulation" and "such explicit statutory requirements are not subject to the PRA." The court's statements to the jury regarding the PRA do not require a new trial.

See doc. 293, pg. 6


1.   Request for Release and Stay Execution of Sentence Pending Appeal.

Under title 18, Section 3143(1)(A) requires the Court to make a finding Springer is not likely to flee or pose a danger to the safety of any other person or the community if released.

Springer is not likely to flee. The evidence to this Court is Springer has traveled all over this Country during the past year in relation to several cases pending in the Northern District.   The evidence is clear and convincing Springer poses no risk of fleeing.

Springer has been on release since the indictment was returned and clearly and unmistakably is not likely to pose a danger to the safety of any other person or the community in which he lives.   As reported by the Probation department in their final

report to this Court, Mr. Gollihare states Mr. Kehoe reported Springer was in compliance with all bond conditions.

Turning to Title 18, Section 3143(1)(B), Springer is required to show his appeal which is automatic is not for the purpose of delay and raises substantial questions of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include imprisonment or a reduced sentence that is less than the time the appellate process will take.

2.    Springer raises issues with the defense provided by Congress under the PRA.

A.    Does the Form 1040 comply with title 44, Section 3506(c)(1)(B) and 3512(1995) for years 2000 through 2007?

B.    Does the PRA apply to criminal charges seeking penalties from Springer inexorably linked to the payment of taxes and the filing of a return under Title 26, Section 6012?

C.    Did the Court erroneously instruct the jury Form 1040 did not violate the PRA during trial?

There is no question but Springer's appeal is not for the purpose of delay. Springer has sought a ruling on the merits of his specific Paperwork Reduction Act violations 5 different times from the district court and Tenth Circuit.

In the Tenth Circuit's Order in 06-5123, that panel held Springer could not raise the public protection on the offense but rather on the defense (complete).  This Court cited in its order of January 28, 2010, to Springer v. United States, 447 F.Supp.2d 1235, 1238 (N.D. Okla. 2006) which the Panel in 06-5123 specifically declined the mandate by statute theory cited therein.

4

The Tenth Circuit held in U.S. v. Chisum 502 F.3d 1237,1244 "the PRA precludes the imposition of any penalty against a person for 'failing to comply with a collection of information' if it does not display a valid OMB control number or fails to alert the person he is not required to respond to the collection of information unless it displays a valid control number."   Quoting Section 3512 of Title 44.

The Panel in Chisum held Tax Forms are covered by the PRA.   The defense can be raised at any time.   "But the PRA protects a person only for failing to file information."   Id.

There is no question the Form 1040 is inexorably linked to the payment of taxes.   See U.S. v. Collins, 920 F. 2d, 619, 630 (fn. 13).   There is equally no question the Form 1040 must specifically comply with Title 44, Section 3506 and 5 CFR 1320.8 and 1320.9 which are the regulations promulgated by the Office of Management and Budget.

The Tenth Circuit on August 31, 2009, while this case was pending, published its decision regarding Springer's PRA claims of defense in 08-9004 vs. Commissioner, for 1990 through 1995, by saying Springer "has managed to advance several arguments in this appeal that raise difficult issues under bot the tax code and the PRA."   The Commissioner in that case attempted to argue the same the United States argued in this case when opposing Springer's defense claims under the PRA by saying the claims Springer raised were "frivolous."   The Tenth Circuit published their decision Springer v. CIR, 580 F. 3d 1142, 1144, by finding the Commissioner's claims in this regard were the claims that were frivolous.   The Tenth Circuit stated that they had not ever held

5

Springer's specific PRA claims were frivolous.

As in that case, 580 F. 3d 1142, (2009), Springer raised his defense to the claim he was required to file Form 1040 U.S. Individual Income Tax Returns for 2000 through 2007, in this case, by asserting and showing that the Forms 1040 did not display the mandated information required by Congress under Title 44, Section 3506(c)(1)(b)(i-v) and nor did any of the forms display compliance with 5 CFR 1320.8 and 1320.9. Springer's claims are also supported by the Government Accountability  Office Report in May 2005 finding forms of the IRS do not comply with the PRA.

The United States has never opposed this position.   They only argued the Form 1040 did not have to comply because the obligation to file was mandated by statute. The Tenth Circuit in U.S. v. Dawes, 951 F.2d 1189, 1193 (1991) specifically rejected the statutory origin theory and specifically held the requirement to file a U.S. Individual Income Tax Return Form 1040 was subject to the public protection of the PRA.

That protection provides:

a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information from a federal agency that is subject to this subchapter if — (

1) the collection of information does not display a valid control number assigned by the Director of the Office of Management and Budget in accordance with this subchapter; or

(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

See Springer, 580 F.3d at 1143.

Springer is likely to prevail on his PRA claims as clearly the Form 1040 does not

6

comply, and the United States does not argue otherwise, with the requirements of Title 44, Section 3512 and 5 CFR 1320.8 and 1320.9.

Springer is also likely to prevail on the fact no district director exists or internal revenue district regarding venue to file a return in the Northern Judicial District.

Springer is also likely to prevail on whether the definition of gift given by the Court to the Jury violated the expost facto clause of the Constitution as it related to Springer's conduct alleged from 2000 through 2005.

CONCLUSION

Lindsey Kent Springer respectfully requests this Court stay execution of its sentence on April 23, 2010, and allow Springer to remain released on bond pending appeal based upon having met each of the factors set forth in Title 18, Section 3143(b).

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

7

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Motion for Stay and Release Pending Appeal was ecf'd on April 23, 2010, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey K. Springer
Signature

8

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

_NORTHERN_   District of   _OKLA_

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL** |
|---|---|
| **V.** | |
| | |
| OSCAR AMOS STILLEY | |

Case Number:        09-CR-043-002-SPF

USM Number:        10579-062

Oscar Amos Stilley, Pro Se
Charles Robert Burton, IV, Standby Counsel
Defendant's Attorney

## THE DEFENDANT:

[] pleaded guilty to count(s) _____

[] pleaded nolo contendere to count(s) _____
which was accepted by the court.

[x] was found guilty on counts   One, Three, and Four of the Indictment
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States | 1/15/09 | 1 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 3 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 4 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[] The defendant has been found not guilty on count(s) _____

[] Count(s) _____ [] is   [] are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

April 23, 2010
Date of Imposition of Judgment

Signature of Judge

The Honorable Stephen P. Friot, U.S. District Judge
Name and Title of Judge

April 28, 2010
Date

AO 245B   (Rev. 09/08) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:          Oscar Amos Stilley
CASE NUMBER:        09-CR-043-002-SPF

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:       180 months.  Sixty months as to each of Counts One, Three, and Four, all such terms to run consecutively to each other.

[x]     The court makes the following recommendations to the Bureau of Prisons:

The Court directs the Bureau of Prisons not to incarcerate the defendant with his co-defendant, Lindsey Kent Springer (USM Number 02580-063).

[x]     The defendant is remanded to the custody of the United States Marshal.

[]      The defendant shall surrender to the United States Marshal for this district:

[]      at _____   []  a.m.   []  p.m.   on   _____ .

[]      as notified by the United States Marshal.

[]      The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

[]      before 12 noon on   _____ .

[]      as notified by the United States Marshal.

[]      as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on   _____   to   _____

at   _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By   _____
DEPUTY UNITED STATES MARSHAL

Case 4:09-cr-00043-SPF   Document 338   Filed 04/28/10   Page 3 of 6

DEFENDANT:       Oscar Amos Stilley
CASE NUMBER:     09-CR-043-002-SPF

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Three years.  Said term consists of three years as to each of Counts One, Three, and Four.  These terms of supervised release shall run concurrently, each with the others.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

[]    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of
      future substance abuse, but authority to administer drug testing for cause is retained. (Check, if applicable.)

[x]   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[x]   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

[]    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as
      directed by the probation officer, the Bureau of Prison, or any state sex offender registration agency in which he or she resides, works,
      or is a student, or was convicted of a qualifying offense. (Check, if applicable.)

[]    The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1.    The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer.
2.    The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3.    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4.    The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living).
5.    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6.    The defendant shall notify the probation officer at least ten days prior to any change of residence or employment.
7.    The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician.
8.    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court.
9.    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10.   The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11.   The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12.   The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13.   As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement  (any objection to such notification shall be decided by the district court).
14.   The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment.
15.   The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

AO 245B (Rev. 09/08) Judgment in a Criminal Case
Sheet 3C — Supervised Release

4:09-cr-00043-SPF   Document 338   Filed 04/28/10   Page 4 of 6
Appellate Case: 11-5313   Document: 010110803111   Date Filed: 01/25/2022   Page: 89

Judgment—Page 4 of 6

DEFENDANT: Oscar Amos Stilley
CASE NUMBER: 09-CR-043-002-SPF

# SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2. The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

   1. The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the probation officer.

   2. The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.

   3. The defendant shall disclose all assets and liabilities to the probation officer. The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.

   4. If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.

   5. The defendant shall, upon request of the probation officer, complete a personal financial affidavit and authorize release of any and all financial information, to include income and tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

3. The defendant shall abide by the "Special Computer Restriction Conditions" previously adopted by the Court, as follows:

   1. The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the probation officer; and shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords.

   2. The probation officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote monitoring software. Unless waived by the probation officer, the cost of remote monitoring software shall be paid by the defendant.

   3. The defendant shall not access any on-line service using an alias, or access any on-line service using the Internet account, name, or designation of another person or entity; and report immediately to the probation officer access to any Internet site containing prohibited material.

   4. The defendant is prohibited from using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of, data and/or images.

   5. The defendant is prohibited from altering or destroying records of computer use, including the use of software or functions designed to alter, clean or "wipe"computer media, block monitoring software, or restore a computer to a previous state.

   6. If instructed, the defendant shall provide all personal and business telephone records and credit card statements to the probation officer

4. While on supervision, the defendant shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

5. The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation. The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

6. The defendant shall not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments. The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction. The defendant shall maintain employment. All employment must be approved in advance by the Probation Officer. The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

7. If instructed by the Probation Officer, the defendant shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

8. The defendant shall report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

9. The defendant shall disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords. Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant. The defendant will be prohibited from accessing any on-line service using an alias or the internet account, name or designation or another person or entity. The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images. The defendant will be prohibited from altering or destroying records of computer use.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties
Case 1:09-cr-00043-SPF   Document 338   Filed 04/28/10   Page 5 of 6
Appellate Case: 11-5113   Document: 010110003444   Date Filed: 04/25/2023   Page: 88

Judgment — Page ___5___ of ___6___

DEFENDANT:         Oscar Amos Stilley
CASE NUMBER:       09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|           | **Assessment** | **Fine** | **Restitution** |
|-----------|------------|------|-------------|
| **TOTALS** | $  300 <br>($100 as to each of Counts One, Three, and Four) | $ N/A | $ 776,280 |

[]    The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[x]    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|------------|---------------------|------------------------|
| IRS-RACS<br>Attention: Mail Stop 6261<br>Restitution<br>333 West Pershing Ave.<br>Kansas City, Missouri 64108 | | $ 684,653 | |
| Arkansas Department<br>of Finance<br>and Administration Income<br>Tax Administration<br>P.O. Box 3628<br>Little Rock, Arkansas 72203 | | $ 91,627 | |
| **TOTALS** | $               0 | $       776,280 | |

[]    Restitution amount ordered pursuant to plea agreement  $ _____

[]    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[]    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    []    the interest requirement is waived for the          []    fine    []    restitution.

    []    the interest requirement for the          []    fine    []    restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:     Oscar Amos Stilley
CASE NUMBER:     09-CR-043-002-SPF

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    []    Lump sum payment of $ _____ due immediately, balance due

       []   not later than _____ , or
       []   in accordance with    []   C,    []   D,    []   E, or    []   F below; or

**B**    []    Payment to begin immediately (may be combined with    []   C,    []   D, or    []   F below); or

**C**    []    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    []    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

**E**    []    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
       imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    [x]    Special instructions regarding the payment of criminal monetary penalties:

       Any criminal monetary penalty is due in full immediately, but payable on a schedule of the greater of $25 quarterly or 50% of income
       pursuant to the Federal Bureau of Prisons' Inmate Financial Responsibility Program while in prison. If a monetary balance remains,
       payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in equal monthly
       payments of $100 or 10% of net income (take home pay), whichever is greater, over the duration of the term of supervised release
       and thereafter as prescribed by law for as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing
       shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this
       Judgment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[]    Joint and Several

       Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
       and corresponding payee, if appropriate.

[]    The defendant shall pay the cost of prosecution.
[]    The defendant shall pay the following court cost(s):
[]    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 1 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 92

1

1              IN THE UNITED STATES DISTRICT COURT

2              FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4    UNITED STATES OF AMERICA,

5              Plaintiff,

6    vs.                          Case No. CR-09-43-SPF

7    LINDSEY KENT SPRINGER and
     OSCAR AMOS STILLEY,
8
               Defendants.
9    _____

10

11

12

13

14

15              TRANSCRIPT OF SENTENCING PROCEEDINGS

16            BEFORE THE HONORABLE STEPHEN P. FRIOT

17               UNITED STATES DISTRICT JUDGE

18                    APRIL 21, 2010

19                   VOLUME I OF III

20

21

22

23

24

25

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

92

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 2 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 93

2

```
 1   APPEARANCES:

 2   FOR THE GOVERNMENT:
                             Mr. Charles Anthony O'Reilly
 3                           U.S. Department of Justice
                             PO Box 972
 4                           Washington, DC 20044

 5                           Mr. Kenneth P. Snoke
                             US Attorney's Office (Tulsa)
 6                           110 W. 7th Street, Ste. 300
                             Tulsa, OK 74119
 7


 8
     FOR DEFENDANT SPRINGER:
 9                           Mr. Lindsey Kent Springer
                             5147 S. Harvard Ave.
10                           Ste. 116
                             Tulsa, OK 74135
11
                             Mr. Robert Scott Williams
12                           Taylor Ryan Schmidt & Van Dalsem
                             1437 S. Boulder Ave., Ste. 850
13                           Tulsa, OK 74119

14   FOR DEFENDANT STILLEY:
                             Mr. Oscar Amos Stilley
15                           7103 Race Track Loop
                             Fort Smith, AR 72901
16
                             Mr. Charles Robert Burton, IV
17                           Burton Law Firm, PC
                             320 S. Boston, Ste. 2400
18                           Tulsa, OK 74103

19
                          EXAMINATION INDEX
20
     BRIAN SHERN
21       DIRECT BY MR. O'REILLY                    13
         CROSS BY MR. SPRINGER                     39
22       CROSS BY MR. STILLEY                      124

23   BRIAN MILLER
         DIRECT BY MR. O'REILLY                   173
24       CROSS BY MR. SPRINGER                    192

25
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

93

```
 1              THE COURT:  Good morning.  We're here in Criminal

 2   09-43, United States of America v. Lindsey Kent Springer and

 3   Oscar Amos Stilley for sentencing.

 4       I note that the defendants and their standby counsel are

 5   present.

 6          Government counsel will please give their appearances.

 7              MR. O'REILLY:  Good morning, Your Honor.  Charles

 8   O'Reilly and Ken Snoke for the United States.  Also with us at

 9   counsel table are Special Agent Brian Shern and Saundra

10   Burgess.

11              THE COURT:  Thank you very much.

12       Let me inquire first of the defendants.  I presume that

13   you have had full opportunity to review the presentence report

14   and the addendum as provided by Rule 32; am I right about

15   that?

16              MR. SPRINGER:  Yes, Your Honor.

17              THE COURT:  Mr. Stilley?

18              MR. STILLEY:  Yes, Your Honor.

19              THE COURT:  Very well.  I'm going to, first of all,

20   assure all concerned that I have read all of the filings that

21   are related to sentencing in this case.  Obviously, they are

22   voluminous, but I'm not in any sense complaining about how

23   voluminous the filings are, I know that this is a very

24   important matter to both the government and to the defendants.

25       I have also, because of some of the issues raised by the
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

94

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 4 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 95

4

1   filings in this case, done a fair amount of reading of the

2   cases cited and relied upon by the defendants.

3        So both the government and the defendants may certainly

4   proceed on the basis that I have read the materials that have

5   been submitted by both sides.

6        There are issues that certainly are in controversy, and

7   I'm fully cognizant of that.  I have sought to inform myself

8   and prepare myself in every way that I could reasonably

9   anticipate to address those issues.  I have done a fair amount

10  of analysis of my own.

11       And before we get to the presentations by the parties, let

12  me, perhaps, give you some orientation as to how we will

13  proceed and how I intend to address the matters that are at

14  issue.

15       The defendants in this case stand convicted by a jury of

16  the felony offense of conspiracy to defraud the United States

17  on Count 1; the felony offense of tax evasion on Count 2 as to

18  Mr. Springer; the felony offense of tax evasion on Counts 3 and

19  4 as to both defendants; and the misdemeanor offense of willful

20  failure to file tax returns as to Mr. Springer on Counts 5 and

21  6.

22       Mr. Springer faces a maximum sentence of 22 years in the

23  custody of the Bureau of Prisons.  Mr. Stilley faces a maximum

24  sentence of 15 years in the custody of the Bureau of Prisons.

25       Now, both sides are well aware of the statutory sentencing

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

95

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 5 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 96

5

1   factors that govern sentencing in this case, but I think it

2   would be appropriate to review those.

3       As we proceed, and certainly in the Court's final

4   evaluation of the matter from the perspective of both sides, I

5   will be mindful of my statutory duty to impose a sentence that

6   is sufficient but not greater than necessary to fulfill the

7   objectives of sentencing under the Sentencing Reform Act.

8       I will certainly take into account the factors mandated by

9   18 United States Code, Section 3553, including the purposes of

10  sentencing set forth in 3553(a)(2), which state the need for

11  the sentence, first, to reflect the seriousness of the offense,

12  to promote respect for the law and to provide just punishment

13  for the offense; secondly, to afford adequate deterrence for

14  criminal conduct; third, to protect the public from further

15  crimes of the defendant; and, fourth, to provide the defendant

16  with needed educational or vocational training, medical care or

17  other correctional treatment in the most effective manner.

18      I will also consider, as set forth in 3553(a), the nature

19  and circumstances of the offense and the history and

20  characteristics of the defendant, the kinds of sentences

21  available, the need to avoid unwarranted sentencing disparities

22  among defendants with similar records who have been found

23  guilty of similar conduct, the advisory sentencing guideline

24  calculation and the relevant guidelines policy statements, and,

25  fifth, the need to provide restitution, all of which I assure

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

96

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 6 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 97

6

1    the parties I will carefully consider.

2        I'm also mindful of the fact that, under 18 United States

3    Code, Section 3661, no limitation shall be placed on the

4    information concerning the background, character and conduct of

5    a person convicted of an offense which a court of the United

6    States may receive and consider for purpose of imposing an

7    appropriate sentence.

8        Now, it will come as no surprise to anyone to either side

9    of this case, based on the sentencing-related filings, that

10   there certainly is a major point of contention with respect to

11   the scope of the activities of the defendants that may be

12   included in the Court's determination of the defendants'

13   relevant conduct for sentencing guidelines purposes.  That does

14   have some impact on the Court's determination of the amount of

15   the tax loss, among other things.

16       I would point out, however, that the practical

17   significance of this disagreement may be less than might

18   appear, because the Court's determinations under the advisory

19   sentencing guidelines are only one of the factors that the

20   Court will take into account in determining fair, just and

21   lawful sentences in this case.

22       Matters that may be outside of the scope of relevant

23   conduct for guidelines purposes may well be appropriate for

24   consideration as the Court evaluates, for instance, the history

25   and characteristics of the defendants, as required by Section

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

97

7

1    3553, which is a factor independent of the application of the

2    advisory guidelines and may well encompass matters outside of

3    the scope of relevant conduct under the guidelines.

4        Now, some matters that are contested by the defendants are

5    foreclosed by the verdicts of the jury in this case, but there

6    are some factual matters that are very much in issue.

7        The determination of the tax loss for sentencing purposes

8    involve some facts and issues that were not involved in the

9    trial, and I assume that the government is prepared to present

10   evidence to support its contentions as to the tax loss and as

11   to restitution.

12       Some matters of relevant conduct that are addressed in the

13   presentence report and are challenged by the defendants were

14   not involved in the trial.  By way of example only, I will note

15   that matters relating to Dale Hedberg, Ernest Swisher, and Kent

16   Hovind received no mention or, at most, very little mention at

17   trial.

18       Another example is that if the government intends to

19   assert that Mr. Stilley encouraged others to violate the

20   Internal Revenue laws within the meaning of 2T1.9(b)(2), I will

21   need to hear evidence on that, because unless my notes fail me,

22   I recall no evidence on that point at trial, with the possible

23   exception of some relatively weak testimony from Mr. Stilley

24   himself in passing in which he said, in substance, that after

25   he read Mr. Schiff's book, he concluded that he did not owe

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

98

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 8 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 99

8

1   income taxes and he tried to persuade other people that he was

2   correct about that.

3        Other matters may be more appropriate for argument than

4   evidence, such as the question of whether Mr. Springer would

5   receive or should receive an adjustment for abuse of a position

6   of public or private trust within the meaning of Guideline

7   Section 3B1.3.

8        So we have issues as to relevant conduct, tax loss,

9   criminal source income, use of sophisticated means,

10  encouragement of others to violate the law, aggravating role in

11  the offense, abuse of a position of trust, obstruction of

12  justice, and restitution, perhaps, among other matters.

13       As I have said, and I would ask people to -- all concerned

14  to bear this in mind, since we did have a three-week trial,

15  some of these matters may be more -- at this stage, more fair

16  game for argument than for evidence.

17       One matter that I think also bears mentioning at this

18  point is the Paperwork Reduction Act defense that was asserted

19  at trial, that was asserted primarily, if not entirely, by

20  Mr. Springer.

21       Mr. Springer, you should bear in mind that I have rejected

22  your Paperwork Reduction Act defense as a matter of law and the

23  jury has rejected it as a factual matter.

24       On the willfulness issue, the jury rejected your

25  contention that you relied in good faith on the Paperwork

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

99

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 9 of 210
Appellate Case: 22-5113    Document: 010110803141    Date Filed: 01/25/2023    Page: 100

9

1   Reduction Act.  Although you can certainly spend your time in

2   these proceedings talking about the Paperwork Reduction Act if

3   you choose to do so, I will assure you that there's nothing

4   that you could say in this sentencing proceeding about the

5   Paperwork Reduction Act that would have an effect on your

6   sentence that you would consider to be beneficial.

7        So with the benefit of these preliminary observations, I

8   will now invite the government to give the Court a concise

9   preview of your intended presentation with respect to both

10  guidelines issues and restitution and any other matters the

11  government may consider relevant under Section 3553.

12          MR. O'REILLY:  Yes, Your Honor.  The United States

13  intends to call both Special Agent Brian Shern and Revenue

14  Agent Brian Miller.  Special Agent Shern will be testifying

15  with respect to additional --

16          THE COURT:  Wait just a minute.  I need to get a

17  writing pad to write on.  I managed to get out here without a

18  pad.

19       You got one handy?

20       Thank you.  You may proceed.

21          MR. O'REILLY:  Special Agent Shern will testify with

22  respect to additional income items, a few with respect to

23  Mr. Springer, because that was the focus of the trial, and then

24  quite a number of income items with respect to Mr. Stilley.

25  Primarily, that will be done in a summary, fairly quick

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

100

1  fashion, because we are proceeding by way of a bank deposits-

2  type analysis, where we will have Mr. Shern's testimony that

3  both these individuals were engaged in income-producing

4  activity, which was actually established at trial, and then

5  that these items have the inherent appearance of income.

6      Special Agent Shern will also testify with respect to some

7  specifics regarding some of the individuals who paid monies to

8  both Mr. Springer and Mr. Stilley.

9      With respect to the types of encouragement that --

10  primarily Mr. Stilley we will be focusing on, because I think

11  Mr. Springer's encouragement was adequately addressed at

12  trial.

13      And then with respect to Mr. Miller, his testimony will

14  primarily be to summarize the net consequences of the

15  additional tax -- of the additional income items and then

16  multiply the result by 20 percent, because under the United

17  States Sentencing Guidelines, where a defendant does not file a

18  return and a better estimate is not readily calculable, that is

19  the basis for a tax harm in this case.

20          THE COURT:  What's the percentage again?

21          MR. O'REILLY:  Twenty percent, sir.  Twenty percent

22  of gross income.

23      And with respect to that, Mr. Miller will also state how

24  he came to the state loss -- state loss calculations and also

25  thereby explain what the restitution should be, should the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

101

11

```
 1    Court award restitution.
 2            THE COURT:  Is that 20 percent figure set forth in
 3    one of the guidelines?
 4            MR. O'REILLY:  Yes, Your Honor, it's 2T1.1 -- I can
 5    give you the exact cite.
 6            THE COURT:  Okay.  2T --
 7            MR. O'REILLY:  1.1, Your Honor.  It's under the Notes
 8    Number 2, "If the offense involved" --
 9            THE COURT:  Okay.  Okay.  You're right.  You're
10    right.  I got confused between that and some other sections.
11            MR. O'REILLY:  The 28 percent, which is a
12    corporation.
13            THE COURT:  There's no need to dwell on that.
14            MR. O'REILLY:  All right.
15            THE COURT:  I got confused, which is not the first
16    time and won't be the last, so I do appreciate that
17    clarification.  Thank you, Mr. O'Reilly.
18         Now, for the defendants, I'm not going to require you to
19    give me a preview of any presentation you may intend to make at
20    this time, because I suspect that probably your intended
21    presentation would be impacted, to some degree, by what
22    transpires as the government proceeds.
23         However, if either defendant has any response at all to
24    the brief preliminary comments that have been made by the
25    government, I'll certainly give you that opportunity.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

102

Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 103

12

```
 1            MR. SPRINGER:  Thank you, Your Honor.  I was not

 2   understanding clearly about what Mr. Miller was going to

 3   summarize.  I know he said he was going to summarize something,

 4   but I wasn't sure whether Mr. Miller was going to be

 5   summarizing -- that we should be prepared for a summary of the

 6   taxes at issue at the trial or if Mr. Miller is going to be

 7   summarizing about from 1990 to 2008.  I don't believe that was

 8   clear.  And that was the only issue I had.

 9            THE COURT:  For sentencing purposes, the Court's

10   scrutiny of your tax violations is not limited to those

11   adjudicated at trial, so I anticipate that the government will

12   proceed on that basis.

13            MR. SPRINGER:  Thank you, Your Honor.

14            THE COURT:  Mr. Stilley.

15            MR. STILLEY:  May it please the Court, Your Honor, I

16   just had one -- actually, I guess, you could call it question.

17   I heard you say that Count 1 was a felony, but it would be my

18   contention that it was a misdemeanor and I guess my question

19   would be, if that is still a matter for consideration, and the

20   reason for that being is that the statute itself says that if

21   the underlying offense is a misdemeanor, then the conspiracy

22   itself is also a misdemeanor.  Is that --

23            THE COURT:  It's a felony, Mr. Stilley.  You may be

24   seated.

25        The government may proceed.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

103

BRIAN SHERN - DIRECT BY MR. O'REILLY                    13

1              MR. O'REILLY:  Your Honor, the United States calls

2    Special Agent Brian Shern.

3                          BRIAN SHERN,

4    (WITNESS SWORN)

5              MR. O'REILLY:  May I approach the witness, Your

6    Honor?

7              THE COURT:  You may.

8              MR. O'REILLY:  May the record reflect that I've put

9    two exhibit binders in front of Special Agent Shern, copies of

10   which were provided both to the defendants and to the Court per

11   the Court's scheduling order.

12             THE COURT:  Very well.

13                       DIRECT EXAMINATION

14   BY MR. O'REILLY:

15   Q.   Special Agent Shern, with respect to the documents that

16   are in front of you right now -- and I'm going to first ask

17   you:  Were you asked to collect all of the items for which we

18   intended to offer evidence that they were income to the

19   defendants?

20   A.   Yes.

21   Q.   As part of that, were subpoenas -- had subpoenas

22   previously been issued?

23   A.   Yes, they had.

24   Q.   Were those issued to various financial institutions?

25   A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

104

BRIAN SHERN - DIRECT BY MR. O'REILLY                                    14

 1   Q.   Also to Checks Cashed?

 2   A.   Yes.

 3   Q.   Was there also -- were there also subpoenas issued to

 4   PayPal?

 5   A.   Yes, there was.

 6   Q.   At trial, was a summary done of the tax comps for purposes

 7   of trial?

 8   A.   Yes, there was.

 9   Q.   Did that -- do those tax comps that were done for that

10   purpose, for that trial, did that include everything that --

11            THE COURT:  Stand by just a moment while I pull this

12   table over.  I need to pull a table over to -- so I can spread

13   out the exhibit notebooks.

14        You may proceed.

15   Q.   (BY MR. O'REILLY)  Special Agent Shern, do the documents

16   in front of you consist of more income items than were used for

17   purposes of that summary at trial?

18   A.   Yes, they do.

19   Q.   Do they include at least one item from a year prior to

20   2000?

21   A.   Yes.

22   Q.   And do they include items for years after 2005?

23   A.   Yes, they do.

24   Q.   Do they also include a large number of items with respect

25   to Mr. Stilley?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

105

BRIAN SHERN - DIRECT BY MR. O'REILLY                    15

1   A.   Yes.

2   Q.   In what is in front of you, government's exhibits that are

3   numbered 3 through 236, were all of those introduced into

4   evidence at trial?

5   A.   Yes.

6   Q.   And just generally speaking, can you describe what

7   Exhibits 3 through 236 are?

8   A.   They are checks written to Mr. Springer or Bondage

9   Breakers Ministries that we obtained pursuant to subpoena to

10  Checks Cashed.

11  Q.   Are there also some items -- some checks that were paid to

12  Mr. Oscar Stilley?

13  A.   Yes.

14  Q.   With respect to all of those items, was there testimony

15  about whether these were, in fact, payments for income?

16  A.   Yes, there was.

17  Q.   For services, I should say.

18  A.   Payment for services, yes.

19  Q.   There's also a set of exhibits, 1001 through 1011.  Do you

20  recall what generally those checks are?

21  A.   Yes.  Those are checks that were not introduced at trial

22  that we obtained.

23  Q.   Were those checks that were made payable either to

24  Mr. Springer or to his -- or for his benefit?

25  A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

106

BRIAN SHERN - DIRECT BY MR. O'REILLY                    16

1   Q.   I'm not going to go through all of those, but with respect

2   to Exhibit 1001, is that a check payable to Dale Hedberg dated

3   August 31st of 1999?

4   A.   Yes, it is.

5   Q.   Is that check endorsed over to Mr. Springer?

6   A.   Yes.  This check was discovered through the subpoena we

7   issued to Checks Cashed and it was signed over -- it's made out

8   to the order of Dale Hedberg, but we found out later that the

9   check was endorsed to Mr. Springer.

10  Q.   How did you find that out?

11  A.   It was included in the records of Mr. Delozier with Checks

12  Cashed provided to us, that -- and he explained that these were

13  checks that Mr. Springer negotiated at his check-cashing

14  business.

15  Q.   Do you know what, if any, relationship there was between

16  Mr. Springer and Mr. Hedberg?

17  A.   Yes.  Mr. Springer assisted Mr. Hedberg with legal

18  services during his trial in Illinois for state tax crimes.

19  Q.   Was Mr. Hedberg represented by counsel?

20  A.   No, he was not.

21  Q.   Did Mr. Springer sit at counsel table with Mr. Hedberg?

22  A.   Yes.

23  Q.   Were there also -- I'm going to ask you about Exhibit

24  1134, which are PayPal records from June 16, 2006, through

25  December 30th of 2009.  And I don't know if you'll have to look

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

107

BRIAN SHERN - DIRECT BY MR. O'REILLY                               17

1   at those or not.  Just generally, what are those?

2   A.   Those are records that we subpoenaed from PayPal that

3   reflect the activity from Mr. Springer's PayPal account,

4   specifically monies that he received from transfers to his

5   PayPal account.

6   Q.   Just generally speaking, what is a PayPal account?

7   A.   It's an Internet payment service where people can send and

8   receive money through an Internet account.  Funds are accessed

9   from checking accounts and credit cards and sent to other

10  parties through PayPal.

11  Q.   I ask you now to draw your attention to -- with respect to

12  each of those items in Exhibits 3 through 236 and 1001 through

13  1011, and including the PayPal items, are there dates

14  associated with each of those items?

15  A.   Yes, there is.

16  Q.   And is that how the -- they were characterized and

17  categorized for purposes of tax computations?

18  A.   Yes.

19  Q.   With respect to the payors or the people that caused the

20  items to be paid to Mr. Springer, have you spoken to all of

21  those people?

22  A.   No.

23  Q.   Have you spoken to a large number of them?

24  A.   Yes.

25  Q.   Are you aware with respect to any of those people you've

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

108

BRIAN SHERN - DIRECT BY MR. O'REILLY                          18

1    spoken to of an instance where Mr. Springer had done nothing to

2    benefit that person?

3    A.   No, I'm not aware of that.

4    Q.   I'd ask you now to take a look at what's been marked as

5    1012 to 1133, and could you generally describe for the Court

6    what those items are?

7    A.   Yes.  These are checks that we subpoenaed from various

8    bank accounts of Oscar Stilley.

9    Q.   Were they all accounts held in Mr. Stilley's name?

10   A.   There were a few items that were subpoenaed from

11   Mr. Stilley's wife's account, but the majority were items

12   subpoenaed from accounts in Mr. Stilley's name.

13   Q.   And was one of those the IOLTA account that we heard a lot

14   of testimony about at trial?

15   A.   Yes.

16   Q.   How did you learn to look at Mrs. Stilley's account?

17   A.   Some of the checks, from the witnesses we talked to, at

18   least one, I think there may be a couple more, we, during the

19   course of the investigation, determined that the check was

20   deposited into his wife's account.

21   Q.   And what was the purpose of that check?

22   A.   It was payment for legal services.

23   Q.   Provided by Mr. Stilley?

24   A.   Yes.

25   Q.   Based upon that, with respect to the Exhibits 1012 through

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

109

BRIAN SHERN - DIRECT BY MR. O'REILLY                                          19

```
 1   1163 -- excuse me -- through 1133, did you determine whether or
 2   not those were payments for Mr. Stilley's legal services?
 3   A.   For every check, we couldn't determine exactly that was
 4   what they were for, but they were payments that were deposited
 5   into accounts.  Some of them might have said "payment for legal
 6   fees" or "retainer."
 7   Q.   Did they have appearances of payments for legal fees?
 8   A.   Yes.
 9   Q.   During the time period in issue -- was this time period
10   2000 through 2008?
11   A.   Yes.
12   Q.   Was Mr. Stilley holding himself out as an attorney?
13   A.   Yes, he was.
14   Q.   And, in fact, for a significant portion of that time, did
15   he, in fact -- was he licensed to practice law?
16   A.   Yes.
17   Q.   With respect to that, are you aware of if at any time
18   Mr. Stilley made any representations to a court that he was
19   authorized to practice law when, in fact, he was not?
20   A.   Yes.
21   Q.   Could you please explain to the Court what you mean by
22   that.
23   A.   I believe in the District of Hawaii and here in the
24   Northern District of Oklahoma, he explained to the court that
25   he was fully authorized to practice law and represent the
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

110

BRIAN SHERN - DIRECT BY MR. O'REILLY                          20

 1  client that was a participant in that matter, and, in fact, he

 2  had been under sanctions and under -- in trouble with the

 3  Arkansas Bar.

 4  Q.   Was he, in fact, suspended pending disbarment or at least

 5  suspended by his bar association in the state of Arkansas?

 6  A.   Yes.

 7  Q.   Yet he was representing to various courts that he was

 8  authorized to practice law?

 9  A.   That's correct.

10  Q.   Does that include for Mr. Bennett in Hawaii?

11  A.   Yes.

12  Q.   Did that also, to your knowledge, happen in the state of

13  Arizona?

14  A.   I don't recall.

15  Q.   With respect to a Dennis Poseley?

16  A.   I don't recall if that was one of the places.

17  Q.   But there was more than one occasion this happened?

18  A.   Yes.

19  Q.   With respect to the United States' contention that

20  Mr. Stilley encouraged others to violate the Internal Revenue

21  laws, are you aware of any time Mr. Stilley encouraged anyone

22  to violate the Internal Revenue laws?

23  A.   Yes.

24  Q.   Can you please identify the instance or instances.

25  A.   I reviewed the grand jury transcripts of people that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

111

BRIAN SHERN - DIRECT BY MR. O'REILLY                    21

```
 1   appeared before the grand jury:  James Lake, Eddy Patterson,

 2   and Philip Roberts.

 3        During their grand jury testimony, Mr. Roberts

 4   specifically said that he had had questions about whether or

 5   not there was a law requiring him to file and pay his taxes and

 6   he sought out the advice of Mr. Stilley.

 7   Q.   Let me stop you right there.  Did Mr. Roberts indicate

 8   when he had gone to see Mr. Stilley?

 9   A.   Yes, it was the early nineties.

10   Q.   And what did -- why did Mr. Roberts go to see Mr. Stilley?

11   A.   Because he was seeking advice from a legal expert as to

12   whether or not he was required to file and pay his taxes.

13   Q.   Did Dr. Roberts -- I apologize earlier, I referred to him

14   as "Mr. Roberts" -- did Dr. Roberts indicate what advice or

15   instruction Mr. Stilley gave him?

16   A.   Yes.

17   Q.   What did Dr. Roberts say?

18   A.   He told Mr. Stilley that he was correct in his belief,

19   that he was -- had no liability to file a return and no

20   liability to pay any tax to the United States.

21   Q.   Did Dr. Roberts follow that advice?

22   A.   Yes, he did.

23   Q.   What were the consequences to Dr. Roberts?

24        THE COURT:  Mr. O'Reilly, the witness said "he told

25   Mr. Stilley that he was correct in his belief that he was."
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

112

BRIAN SHERN - DIRECT BY MR. O'REILLY                    22

1  Q.   (BY MR. O'REILLY)  Is it your testimony that Dr. Roberts

2  told Mr. Stilley that he was correct in his belief?

3  A.   No, Mr. Stilley told Dr. Roberts.

4        MR. O'REILLY:  I apologize, Your Honor.  I'll try to

5  listen more carefully.

6  Q.   (BY MR. O'REILLY)  With respect to that advice he received

7  at that time, was Mr. Stilley an attorney?

8  A.   Yes.

9  Q.   Did Dr. Roberts follow that advice?

10 A.   No, he did not -- or, yes, he did.  He did not file his

11 taxes or pay his taxes.

12 Q.   Was Dr. Roberts prosecuted for willful failure to file?

13 A.   Yes, he was.

14 Q.   Was he convicted?

15 A.   Yes.

16 Q.   Do you recall how much time he served?

17 A.   I believe it was three years, but I don't recall

18 specifically.

19 Q.   Was it 16 months?  Does that refresh your recollection?

20 A.   Yes, that's right.

21 Q.   Was Dr. Roberts --

22        THE COURT:  Can you clarify when these contacts

23 between Mr. Stilley and Dr. Roberts would have occurred, at

24 least, roughly.  You may have asked, but --

25 Q.   (BY MR. O'REILLY)  Was this discussion -- did this take

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

113

BRIAN SHERN - DIRECT BY MR. O'REILLY                                23

```
 1  place in the early 1990s?

 2  A.   Yes.  I believe it was 1990 is what the transcript says

 3  that he said.

 4  Q.   In his grand jury testimony, Dr. Roberts stated he thought

 5  it was 1990?

 6  A.   Yes.

 7  Q.   Were there tax losses associated with respect to

 8  Dr. Roberts' failures to file tax returns following his

 9  discussion with Mr. Stilley that we have included in our

10  exhibits?

11  A.   Yes.

12  Q.   And are those included in Exhibits 1148 through 1151 for

13  the years 1992 through 1995, respectively?

14  A.   Yes, I believe there's a summary schedule listing all the

15  money attributed from Mr. Roberts.

16  Q.   What are Government's Exhibits 1148 through 1151?

17  A.   Those are the IRS transcripts of account for Mr. Springer

18  and Mr. Stilley and -- I'm sorry -- just 1148 through --

19  Q.   1148 through 1151.

20  A.   Those are the transcripts related to Mr. Roberts.

21  Q.   For Dr. Roberts?

22  A.   Dr. Roberts, yes.

23  Q.   And for the years 1992 through 1995, respectively?

24  A.   Yes.

25  Q.   Was Dr. Roberts -- is Dr. Roberts the only person whom you
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

114

BRIAN SHERN - DIRECT BY MR. O'REILLY                    24

1   are aware that Mr. Stilley provided this type of encouragement?

2   A.   No.

3   Q.   Who else?

4   A.   James Lake.

5   Q.   With respect to James Lake, what did -- what encouragement

6   did Mr. Stilley provide to James Lake?

7   A.   Similarly, Mr. Lake had similar views to Mr. Roberts, in

8   that he was seeking the advice of an attorney and legal experts

9   as to whether he was required to file returns, he had questions

10  about that.  And he later hired Mr. Springer and Mr. Stilley

11  and talked to them.  And both Mr. Springer and Mr. Stilley told

12  him that he had no legal requirement to file returns.

13  Q.   When did this discussion occur approximately?

14  A.   Approximately 2000.

15  Q.   With respect to Mr. Lake, is the tax loss attributed to

16  the defendants based upon Mr. Lake's conduct after receiving

17  that advice?

18  A.   Yes.

19  Q.   Did Mr. Stilley and/or Mr. Springer give similar advice to

20  either Eddy or Judith Patterson?

21  A.   Yes, they did.

22  Q.   Please explain what advice was given and -- first of all,

23  when did this occur?

24  A.   The advice to Mr. Patterson?

25  Q.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

115

BRIAN SHERN - DIRECT BY MR. O'REILLY                    25

1   A.   It would have been in 2000 as well.

2   Q.   What was the circumstance upon -- under which

3   Mr. Patterson -- was it Mr. Patterson or Mrs. Patterson that

4   received this advice?

5   A.   Mr. Patterson.

6   Q.   What were the circumstances under which Mr. Patterson

7   received this advice?

8   A.   He had been under criminal investigation for tax crimes

9   and other crimes and he was also seeking advice from legal

10  experts as to what to do because of his criminal

11  investigation.

12  Q.   To whom did he turn?

13  A.   Mr. Springer and Mr. Stilley.

14  Q.   What advice or encouragement did Mr. Stilley give

15  Mr. Patterson?

16  A.   Mr. Patterson asked Mr. Springer and Stilley whether or

17  not they filed tax returns and both of them replied, no, we

18  don't file tax returns.

19  Q.   Was there any other encouragement given?

20  A.   I can't recall.

21  Q.   With respect to the tax loss that has been included in the

22  tax computations, does that include tax losses occurring before

23  Mr. Patterson had this conversation with Mr. Springer and

24  Mr. Stilley?

25  A.   No.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

116

BRIAN SHERN - DIRECT BY MR. O'REILLY                                26

1   Q.   Is it just the year 2000?

2   A.   Yes.

3   Q.   With respect to -- oh, let me step back, what is -- is

4   Exhibit 1147 the IRS record of Mr. Patterson's tax liability

5   for the year 2000?

6   A.   Yes.

7   Q.   And with respect to Mr. Lake, is Exhibit 1143 the account

8   transcript or the IRS record of Mr. Lake's tax liability?

9   A.   Yes, it is.

10  Q.   I'm going to ask you now to turn to a Mr. Patrick Turner.

11  Mr. Turner testified at this trial, correct?

12  A.   Yes, he did.

13  Q.   Actually, I think Mr. Turner explained the circumstances

14  under which he transferred $250,000 to Mr. Springer at trial,

15  correct?

16  A.   Yes.

17  Q.   With respect to some of the income items that have been

18  attributed in the government's calculations, specifically with

19  respect to Mr. Swisher, do you recall any discussions you had

20  with Mr. Swisher?

21  A.   Yes, I do.

22  Q.   Was that in the course of your investigation?

23  A.   Yes.

24  Q.   Also in the course of preparing for trial?

25  A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

117

BRIAN SHERN - DIRECT BY MR. O'REILLY                    27

1   Q.   What, if any, relationship did Mr. Swisher have with

2   either of the defendants?

3   A.   Mr. Swisher told me that he had hired Mr. Stilley to

4   represent him with a tax violation that he had been charged

5   with and he had explained that Mr. Stilley had asked him if he

6   could hire Mr. Springer to help with preparing his case for him

7   and Mr. Swisher gave Stilley money so he could hire

8   Mr. Springer --

9           MR. STILLEY:  Objection, hearsay.

10          THE COURT:  Overruled.  Go ahead.

11          THE WITNESS:  Mr. Stilley -- according to what

12  Mr. Swisher told me, Mr. Stilley asked for an amount of money

13  so he could give it to Mr. Springer so Mr. Springer could help

14  them with the case.

15  Q.   (BY MR. O'REILLY)  Did Mr. Swisher tell you that

16  Mr. Stilley asked for a specific amount of money?

17  A.   He just asked -- Mr. Stilley asked Mr. Swisher, hey, I've

18  got this guy who is a really astute legal expert, do you care

19  if I bring him onboard and pay him, and Mr. Swisher agreed.

20  And Mr. Stilley paid Mr. Springer from the money that

21  Mr. Swisher provided Mr. Stilley.

22  Q.   And is that one of the checks that's included in the

23  exhibits we've already referenced?

24  A.   Yes.

25  Q.   With respect to Mr. Hovind -- actually, it's Kent Joe

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

118

BRIAN SHERN - DIRECT BY MR. O'REILLY                    28

```
 1   Hovind; is that correct?
 2   A.   Yes.
 3   Q.   Who were the Hovinds?
 4   A.   The Hovinds were a couple from Florida that had been
 5   charged with tax violations.
 6   Q.   What, if any, relationship did the defendants have with
 7   the Hovinds?
 8   A.   Mr. Stilley didn't have any relationship with the Hovinds;
 9   however, Mr. Springer helped them throughout their criminal
10   investigation and trial.
11   Q.   And are there payments from the Hovinds to Mr. Springer
12   that are included in the exhibits?
13   A.   Yes.
14   Q.   Are you familiar with -- if there's been any media or
15   other coverage of this trial?
16   A.   Yes.
17   Q.   What type of coverage are you aware of?
18   A.   Just -- there's been some stuff in the papers and there's
19   also -- a gentleman has a blog that discusses the events that
20   happened during trial.
21   Q.   And was that a blog that was maintained and started at or
22   even before the beginning of the trial and continued through
23   the trial?
24   A.   Yes.
25   Q.   Is it still active?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

119

BRIAN SHERN - DIRECT BY MR. O'REILLY                    29

```
 1   A.   Yes.
 2   Q.   Does that blog -- I'm going to ask you to state your
 3   opinion here.  Is there a perceived bias with respect to that
 4   blog?
 5   A.   Yes.
 6   Q.   What is that bias?
 7   A.   That the defendants are innocent and they're just being
 8   wrongly convicted by the government.
 9   Q.   Is there an indication on the blog of how many people have
10   visited that site?
11   A.   Yes.
12   Q.   When did you last check that blog?
13   A.   Yesterday afternoon.
14   Q.   How many visitors had -- did it indicate had visited that
15   blog -- that Web site as of yesterday?
16   A.   It was over 8,100, I believe.
17   Q.   During Mr. Springer's career with respect to not filing
18   tax returns and not paying taxes, has he encouraged others
19   through means other than what was discussed at trial to violate
20   the tax laws?
21   A.   Yes.
22   Q.   How so?
23   A.   Did you say during the years we had under indictment or --
24   Q.   No.
25   A.   Just any -- he assisted Mr. Dingman and Mr. Grady and
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

120

BRIAN SHERN - DIRECT BY MR. O'REILLY                              30

1   another gentleman named Mr. Robertson with preparing abusive

2   trust documentation, and also in the words of Mr. Dingman and

3   Mr. Grady, he had them file frivolous paperwork with the IRS to

4   unvolunteer from the system.

5   Q.   When was this?

6   A.   This was in the early nineties.

7   Q.   Did Mr. Springer also host a Web site?

8   A.   Yes.

9   Q.   What was that Web site?

10  A.   Penaltyprotestor.com.

11  Q.   Dot-com or dot-org?

12  A.   Whether it was com or org, it both arrived at that site.

13  Q.   Okay.  Both?

14  A.   Yes.

15  Q.   Generally describe -- what was the content of that Web

16  site?

17  A.   The Web site had links that took you to both video and

18  audio presentations that Mr. Springer put on, as well as

19  documents from cases that Mr. Springer had been involved with

20  or not involved with, many relating to the Paperwork Reduction

21  Act, and others relating to defenses that had been raised that

22  have been deemed frivolous.

23  Q.   With respect to that Web site, do you have any idea how

24  many people visited it?

25  A.   No.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

121

BRIAN SHERN - DIRECT BY MR. O'REILLY                          31

1   Q.   Did some of the individuals you spoke with in the course

2   of your investigation tell you whether or not they had visited

3   the Web site?

4   A.   Yes.

5   Q.   Roughly how many of the people you talked to had, if you

6   recall?

7   A.   I believe I just remember maybe three.  Mr. Turner was the

8   one that developed the Web site.

9   Q.   He was the technical guy?

10  A.   Yes.

11  Q.   In fact, I believe he testified to that, correct?

12  A.   Yes.

13  Q.   Did Mr. Springer also host telephone conference calls?

14  A.   Yes.

15  Q.   Can you describe briefly what those telephone conference

16  calls were.

17  A.   Yes.  Most of them related to the Innovative Financial

18  Consultants case that was out of Phoenix, Arizona.  Basically,

19  it was a trust scam that advised people to put all their assets

20  into trusts to evade paying their taxes.  And once this

21  organization became under investigation, Mr. Springer hosted

22  these conference calls where people who were involved in that

23  organization would call in and he would give them advice.

24  Q.   Do you know how many people participated in the telephone

25  conference calls?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

122

BRIAN SHERN - DIRECT BY MR. O'REILLY                                32

1   A.   Of our witnesses in our trial, there were at least eight

2   or nine, I believe, and they would always -- what they told us

3   was there was always several people on the calls and the calls

4   occurred at least weekly.

5           MR. O'REILLY:  If I may have a moment, Your Honor.

6           THE COURT:  You may.

7           MR. O'REILLY:  Your Honor, at this time there's

8   nothing more from Special Agent Shern from the government.

9           THE COURT:  Cross-examine --

10          MR. O'REILLY:  Your Honor, I apologize.  I don't know

11  if technically I need to do this, but I would move the exhibits

12  referenced into evidence which would be -- do you need me to do

13  that for purposes of sentencing?

14          THE COURT:  The ones that he has referred to, are

15  they ones that were received at the trial?

16          MR. O'REILLY:  Well, there were both those and some

17  new ones.  And if you want, I will move exhibits -- can you

18  tell me what the exhibit numbers are?  From 1101 -- from 1001

19  through -- up to the start of the summaries -- actually, Your

20  Honor, just for ease of purposes, I would move Government's

21  Exhibits 1001 through 1158 -- well, actually, 1156 into

22  evidence.  1157 and 1158 are transcripts of the defendants'

23  testimony; I don't think we need to move those into evidence.

24          THE COURT:  Very well.  Any objection?

25          MR. SPRINGER:  May I have just a moment, Your Honor?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

123

BRIAN SHERN - DIRECT BY MR. O'REILLY                    33

 1          THE COURT:  You surely may.

 2          MR. O'REILLY:  Your Honor, just for clarification,

 3  the exhibits that were presented at trial we do not need to

 4  admit, correct?

 5          THE COURT:  That's true.  Although, if you want, I

 6  think it is helpful, to some degree, to have a discrete record

 7  for sentencing purposes, so an exhibit that was received at

 8  trial need not be readmitted, but I think it would be a good

 9  idea if you want me to consider it for sentencing purposes to

10  at least refer to it during these proceedings by exhibit

11  number.

12          MR. O'REILLY:  Then, Your Honor, what I will do is

13  simply, for clarification purposes, go through all the exhibits

14  that we are moving in and are referencing for purposes of our

15  summaries.

16          THE COURT:  First of all, we have an offer pending of

17  1001 through 1156.

18          MR. SPRINGER:  I'm sorry, Your Honor, I'm still on

19  that, I'm still at the same spot I was a second ago.

20          THE COURT:  That's fine.  Just stand by for just a

21  moment.

22          MR. SPRINGER:  I would have an objection --

23          THE COURT:  Just a minute.  Now, before I hear from

24  the defendants, Mr. O'Reilly, the ones you were getting ready

25  to read into the record, are they exhibits you've already made

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

124

BRIAN SHERN - DIRECT BY MR. O'REILLY                                34

```
 1   a reference to this morning?

 2            MR. O'REILLY:  Yes, Your Honor.  They would be

 3   Exhibits 3 through 236.  However, that is a -- there are

 4   discrete exhibits that we produced in the exhibit books, not

 5   all of the Exhibits 3 through 236 are put into evidence -- are

 6   being represented at trial because they were not evidence of

 7   income that we were -- that you had asked us to do.  I can go

 8   through and specifically enumerate --

 9            THE COURT:  That's not necessary.  Very well.

10        Now, Mr. Springer, I'll hear you.

11            MR. SPRINGER:  Your Honor, at this time, I do not

12   have an objection to 1001.  I do not have an objection to

13   1134.  I do not have an objection at this time to 1148 through

14   1152.  I do not have an objection to 1143 or 1147.

15        But the remainder of the exhibits that Mr. O'Reilly has

16   now moved into -- or attempting to move into, I don't believe

17   he's laid a foundation for them, they have not been

18   authenticated, they are based upon hearsay of testimony, and

19   they are not relevant, Your Honor, at this point because of

20   those reasons.

21            THE COURT:  Thank you.  Mr. Stilley, any objection?

22            MR. STILLEY:  Your Honor, no further objections, but

23   I join Mr. Springer's.

24            THE COURT:  Very well.

25        Let me digress for just a moment.  I probably should have
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

125

BRIAN SHERN - DIRECT BY MR. O'REILLY                              35

1  mentioned this and covered this point a few minutes ago when we

2  had the hearsay objection.  One of the great ironies of federal

3  criminal law is that the Rules of Evidence -- the Federal Rules

4  of Evidence do not apply at sentencing.  I personally am not

5  totally comfortable with throwing all caution to the winds,

6  even though the Rules of Evidence do not apply -- by their own

7  terms, they do not apply at sentencing.  And I do think that is

8  ironic, because very often sentencing is the most consequential

9  stage of a criminal case.

10      The exhibits that have been offered will be received.

11      I will assure the defendants that, to the extent that

12  they're not relevant or to the extent that I am mystified as to

13  where they came from or as to their authenticity, they are not

14  going to have any significant impact and perhaps no impact on

15  my evaluation of the sentencing-related issues.

16      And the same thing applies, for instance, with respect to

17  hearsay.  Hearsay is -- hearsay that would be inadmissible in a

18  jury trial is admissible in this proceeding.  But even though

19  the Rules of Evidence don't apply, the rules of common sense do

20  apply, so the further we get out on that hearsay limb, the less

21  likely it is to have any impact on my evaluation of the matter,

22  even though it's admissible.

23      So I don't expect that the defendants will take great

24  comfort from that explanation, but I think perhaps it's

25  appropriate to give the defendants some assurance that, even

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

126

BRIAN SHERN - DIRECT BY MR. O'REILLY                              36

 1  though the Rules of Evidence don't apply, to the extent that

 2  the Rules of Evidence are based on common experience and common

 3  sense, they effectively do apply and they will apply to my

 4  evaluation of the issues for sentencing purposes.

 5       But the exhibits that have been offered will be received.

 6       Mr. O'Reilly, you may proceed.

 7  Q.   (BY MR. O'REILLY)  Special Agent Shern, with respect to

 8  Government's Exhibits 1012 through 1133 -- which I believe you

 9  previously testified were all payments made to Mr. Stilley; is

10  that correct?

11  A.   Yes.

12  Q.   Did the vast majority of those -- are these all checks?

13  A.   I think there's a couple money orders in there, but, yes,

14  most of them are checks.

15  Q.   And with respect to -- did you go through and see whether

16  or not these checks appeared to be payments for legal services?

17  A.   Yes.

18  Q.   How did you do that?

19  A.   I took the checks that appeared -- like, if they said

20  "retainer" or if they were from an individual and it said "for

21  legal services," I took all those checks, and then checks that

22  were deposited into his Interest on Lawyers Trust Account,

23  every one of those checks I included in there, and -- as well

24  as if it was a check that wasn't deposited into his IOLTA

25  account, but I knew that it was from a client, that I know he

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

127

BRIAN SHERN - DIRECT BY MR. O'REILLY                    37

1   had provided legal services to in the past, then I included

2   that.

3   Q.   How would you know it was from a client for whom

4   Mr. Stilley had provided legal services?

5   A.   People that testified in trial or before the grand jury or

6   people that he was listed on PACER that he had worked a case

7   with them.

8   Q.   I'm just going to ask you about a couple of names.  I'm

9   going to ask what you know.  Are some of the checks that are

10  attributed to both Mr. Springer and to Mr. Stilley in the

11  1001-plus series, are some of those -- and, in fact, some

12  earlier from the trial, are some of those from an individual by

13  the name of Guthrie?

14  A.   Yes.

15  Q.   Who is Mr. Guthrie?

16  A.   I don't know much about Guthrie.  We never interviewed

17  him.  But Mr. Springer had some of his case postings on his Web

18  site, and as well -- I cannot recall for certain, but I think

19  the case may have been listed on PACER as well.

20  Q.   Okay.  With respect to -- did Mr. Stilley receive payments

21  from Mr. Guthrie?

22  A.   I don't remember.  I'd have to look at the exhibits.

23            THE COURT:  Mr. Shern, you testified that

24  Mr. Springer had case postings from Guthrie's case on his Web

25  site?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

128

BRIAN SHERN - DIRECT BY MR. O'REILLY                    38

1              THE WITNESS:  Yes, Your Honor.

2              THE COURT:  Okay.  Go ahead.

3    Q.   (BY MR. O'REILLY)  Are you familiar with an individual by

4    the name of Palmer?

5    A.   Yes.

6    Q.   Who is Mr. Palmer?

7    A.   Mr. Palmer testified before the grand jury.  We discovered

8    Mr. Palmer because he had written Mr. Springer a few checks,

9    and when he testified -- from what I remember from his grand

10   jury testimony, he's been a supporter of Mr. Springer for a

11   long time and he talked about how Mr. Springer did various

12   legal work for people and helped people out.

13   Q.   I'm going to ask you to look at Government's Exhibit

14   Number 1060.  Is that -- appears to be a small check made

15   payable to Oscar Stilley for 20,000.54 -- should be the top

16   check.

17   A.   Yes, that's a payment, a check written from Todd and

18   Patricia Guthrie.

19   Q.   Does it indicate -- no, the top check -- you're fine,

20   Special Agent Shern.  I apologize.

21   A.   It says "legal fees" in the notation.

22   Q.   Says "legal fees" in the notation?

23   A.   Yes.

24             MR. O'REILLY:  Your Honor, at this time, nothing

25   further with respect to Special Agent Shern.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

129

BRIAN SHERN - CROSS BY MR. SPRINGER                          39

```
 1              THE COURT:  Mr. Springer, cross-examination.

 2                       CROSS-EXAMINATION

 3   BY MR. SPRINGER:

 4   Q.   Good morning, Mr. Shern.

 5   A.   Good morning.

 6   Q.   Mr. O'Reilly referred to you as a special agent, correct?

 7   A.   Yes.

 8   Q.   Special agent for the Secretary of the Treasury; is that

 9   correct?

10   A.   For the Internal Revenue Service.

11   Q.   Internal Revenue Service?

12   A.   Yes.

13   Q.   Not the Secretary of the Treasury?

14   A.   I believe the Internal Revenue Service falls under the

15   Secretary of the Treasury.

16   Q.   Okay.  And you are a delegate of the Secretary of the

17   Treasury; is that correct?

18              MR. O'REILLY:  Objection.  Beyond the scope of direct

19   and relevance.

20              THE COURT:  Overruled.

21              THE WITNESS:  Can you repeat the question, please?

22   Q.   (BY MR. SPRINGER)  Are you a delegate of the Secretary of

23   the Treasury of the United States?

24   A.   Yes.

25   Q.   Okay.  When did you (sic) make you a delegate?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

130

BRIAN SHERN - CROSS BY MR. SPRINGER                                    40

```
 1   A.   I don't know.
 2            MR. O'REILLY:  Objection, Your Honor; relevance.
 3            THE COURT:  Overruled.  We'll -- I'm going to hear
 4   this for a while, we'll see how much, but it will be
 5   overruled.
 6   Q.   (BY MR. SPRINGER)  When you say "special agent," that's
 7   what you're referring to is you're a delegate of the Secretary
 8   of Treasury; is that correct?
 9   A.   Yes.
10   Q.   Okay.  And --
11   A.   I guess to answer your prior question about -- when I said
12   "I don't know," I would assume I became a delegate whenever I
13   became a special agent.
14   Q.   Okay.  Are you familiar -- scratch that.
15        Is there anybody between you and the Secretary of the
16   Treasury that you get your delegation order to be a special
17   agent from that you know of?
18   A.   I'm not sure I know how to answer that.
19   Q.   Thank you.  If you would turn to Exhibit -- Government's
20   Exhibit Number 134, please -- excuse me -- 1134, please.  Do
21   you remember testifying earlier today with regard to Dale
22   Hedberg -- I'm sorry, 1001, I'm sorry, Your Honor.  I'm sorry.
23   I'm sorry.  I'm sorry.  It's 1001.  I'm sorry, Agent Shern.
24   It's 1001, Exhibit Number 1001.
25        Do you remember testifying earlier about a check written
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

131

BRIAN SHERN - CROSS BY MR. SPRINGER                    41

1   to Dale Hedberg for $111,701.50?

2   A.   Yes.

3   Q.   And do you remember testifying earlier that -- you said I

4   helped him during his criminal trial?

5   A.   Yes.

6   Q.   And do you remember about what time of the year and what

7   year that criminal trial was in?

8   A.   I don't remember.

9   Q.   Are you familiar with Mr. Gollihare's presentence report?

10  A.   I've seen it.  I'm somewhat familiar with it.

11  Q.   Would you have -- would 1998 refresh your memory as to

12  when Mr. Hedberg went to trial?

13  A.   Really, without looking at something, I couldn't tell you.

14  Q.   Okay.  Do you remember -- did Mr. Hedberg tell you why he

15  gave a $111,000 check under your testimony to Lindsey

16  Springer?

17  A.   Yes.

18  Q.   What did he say?

19  A.   He said it was -- he actually didn't tell me, we had

20  another agent out of Illinois go interview him.

21  Q.   Okay.

22  A.   And I talked to him on the phone once as well, but he said

23  that it was a donation so that his kids could reap the benefits

24  of your work or something of that nature.

25  Q.   Is it safe to say that this $111,000 check came well after

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

132

BRIAN SHERN - CROSS BY MR. SPRINGER                                42

1   Mr. Hedberg went to trial and even went to prison and came out

2   of prison; isn't that safe to say?

3   A.   If he went to trial in '98, I guess it would have been

4   sometime -- sometime around a year that this check was given

5   later.

6   Q.   Did you investigate who Hedberg Declaration Trust Dawn

7   Jenkins was?

8   A.   Yes.

9   Q.   Who was that?

10  A.   She was the trustee of a -- his father died and he

11  inherited this money and she was the trustee and wrote him this

12  check.

13  Q.   Did his father's death have anything to do with him going

14  to trial or me sitting and helping him in his trial?

15  A.   I don't believe it did.

16  Q.   At the time that he had his trial, did you know his dad

17  was going to die?

18  A.   I don't know.

19  Q.   And did Mr. Hedberg ever tell you or the other agent that

20  at any time he owed me any money for sitting at his trial in

21  1998?

22  A.   I don't recall.

23  Q.   Have you seen any evidence of me asking Mr. Hedberg for

24  any money or him giving me any money during his trial?

25  A.   No.  All we have is this check.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

133

BRIAN SHERN - CROSS BY MR. SPRINGER                    43

1  Q.   And if I'm understanding you correctly, it is your

2  position that this check was to pay me for sitting at his table

3  a year and a half earlier?

4  A.   Yes.

5  Q.   Even though it came from his dad's estate when his --

6  after his dad had died?

7  A.   Yes.

8  Q.   And even though he never told anybody he owed me any money

9  whatsoever?

10 A.   That's correct.

11 Q.   So is it more like it was gratitude?

12 A.   No, I think you probably worked him like you have

13 everybody else.

14 Q.   I asked him for $111,701.50?

15 A.   You probably asked him for something.

16 Q.   I probably did, but you have no evidence that I did; is

17 that correct?

18 A.   Other than this check.

19 Q.   In your tax calculations, did you consider the gross

20 income --

21          MR. O'REILLY:  Objection, Your Honor.  Special Agent

22 Shern did not testify about the tax calculations, he only said

23 that these were used to do them.  Revenue Agent Miller will be

24 testifying about the actual tax calculations.

25          THE COURT:  Mr. Springer, I don't want to narrow

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

134

BRIAN SHERN - CROSS BY MR. SPRINGER                    44

1    your --

2              MR. SPRINGER:  He's right.

3              THE COURT:  Okay.  Go ahead.

4              MR. SPRINGER:  He's right.

5    Q.   (BY MR. SPRINGER)  You had mentioned, summary-wise, about

6    some PayPal exhibits that were contained in these exhibits; do

7    you remember that?

8    A.   Yes.

9    Q.   And I believe they were found at 1148 to 1152.

10             MR. O'REILLY:  Your Honor, that would be, I believe,

11   1133 -- 1134 to 1135 for the record.

12             MR. SPRINGER:  1134, right.  Okay.

13   Q.   (BY MR. SPRINGER)  Did I understand you to say that you

14   didn't contact everybody on these lists, but you had talked to

15   most of them on the list?

16   A.   I don't think I testified about who I contacted with

17   respect to the PayPal stuff.

18   Q.   And that's what I'm trying to clean up here.  When you

19   made testimony earlier that Mr. O'Reilly asked you had you

20   spoke to every one of these people and you said no, who were

21   you referring to when you said that?

22   A.   I think at the time he was talking about the checks that

23   were in the additional exhibits.

24   Q.   Okay.

25   A.   But I can't recall for sure if it was that or --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

135

BRIAN SHERN - CROSS BY MR. SPRINGER                              45

1   Q.   Do you remember using the phrase "some benefit," that you

2   said they at least got "some benefit," but you didn't know for

3   sure?

4   A.   Yes, whenever he asked me do you know anybody that didn't

5   -- that you encountered that we were charging these payments

6   that you had done no work for and I said I didn't encounter

7   anybody.

8   Q.   Right.  So as far as you understand, everybody that you

9   spoke to received some benefit from their relationship with

10  me?

11  A.   Yes.

12  Q.   Okay.  And is that testimony what you rely upon to take

13  every dollar that somebody gives me and makes it gross income?

14          MR. O'REILLY:  Objection, Your Honor.  That's a legal

15  conclusion that was covered by the Court's jury instructions.

16          THE COURT:  Overruled.

17          THE WITNESS:  That's one of the factors, yes.

18  Q.   (BY MR. SPRINGER)  So if, for instance, I prayed with them

19  over the phone, would you consider that a benefit?

20  A.   If they gave you money because you prayed with them?

21  Q.   I'm just asking you:  Did you determine whether, in the

22  instance of some benefit, if somebody gave me money, and the

23  only thing I did was pray with them, is that some benefit that

24  converts the money they gave from a gift to gross income, under

25  your understanding?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

136

BRIAN SHERN - CROSS BY MR. SPRINGER                          46

 1              MR. O'REILLY:  Objection, Your Honor.  Special Agent

 2    Shern's understanding of what's a gift and what's income is not

 3    an issue.

 4              THE COURT:  If your objection had been that he

 5    doesn't have any way of knowing whether the prayers were

 6    answered, that might be another thing.  That will be

 7    overruled.

 8              MR. SPRINGER:  Thank you.

 9              THE WITNESS:  What I testified to was the people that

10    I talked with, I didn't know of any -- with the exception of

11    maybe one that didn't -- you didn't perform some kind of work

12    for, are the ones that you prayed with, I'm not -- without

13    talking to them, I wouldn't know, but -- I wouldn't know.

14    Q.   (BY MR. SPRINGER)  Okay.  You specifically gave testimony

15    about James Lake; do you remember that?

16    A.   Yes.

17    Q.   And you said I counseled him to violate the Internal

18    Revenue laws; do you remember that testimony?

19    A.   Yes.

20    Q.   Do you remember when James Lake was indicted?  Was it

21    2000?

22    A.   I don't remember.

23              MR. SPRINGER:  Your Honor, may I have just a moment,

24    please?

25              THE COURT:  Surely.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

137

BRIAN SHERN - CROSS BY MR. SPRINGER                              47

1   Q.   (BY MR. SPRINGER)  Could you please turn to Government's

2   Exhibit 675, please.

3   A.   Okay.

4   Q.   Do you see the last notation, number -- excuse me --

5   Number 10, 11 and 13 on the gross income of Lindsey Springer

6   chart?

7   A.   Yes.

8   Q.   Okay.  And do you see the dates over there, 11/7/2000, all

9   the way to 12/27/2000?

10  A.   Yes.

11  Q.   And it's your testimony these monies were given to me,

12  that Mr. Lake hired me to help him in his indictment in his

13  case; is that correct?

14  A.   That's correct.

15  Q.   All right.  And so Mr. Lake had already been indicted,

16  then, at the time that he gave this money; isn't that true?

17  A.   Yes, I believe so.

18  Q.   And it was for, like, 1995, 1996, 1997; isn't that true?

19  Somewhere in the mid-nineties, he had failed to file tax

20  returns, correct?

21  A.   I don't remember for sure, but it sounds about right.

22  Q.   He had failed to file tax returns long before he met

23  Lindsey Springer; isn't that true?

24  A.   Yes, that's correct.

25  Q.   And he had sought the advice of many other people other

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

138

BRIAN SHERN - CROSS BY MR. SPRINGER                                    48

1  than Lindsey Springer and Oscar Stilley prior to getting

2  indicted, had he not, if you know?

3  A.   I think he was -- he was caught up in some type of trust

4  scam as well.

5  Q.   And so it's your testimony that Lindsey Springer should be

6  tagged for the tax loss for the year 2000 for James Lake

7  because he didn't file a tax return in the year 2000 -- or for

8  the year 2000?

9  A.   I think by you and Mr. Stilley telling him that he was not

10 required to -- that you didn't pay taxes and he's not required

11 to file or pay over tax, that he probably didn't pay the money

12 that he was owed -- that he owed the government.

13 Q.   Now, I know you testified that Mr. Patterson, in 2000, had

14 said that Mr. Stilley and I had told him we didn't file tax

15 returns, but I don't remember you saying Mr. Lake said that

16 Mr. Stilley and I told him that we didn't file tax returns.

17 A.   That may be correct.  I know that you told him in some

18 manner that he was not required to file tax returns.  I don't

19 remember if you and Mr. Stilley told him that you yourselves

20 didn't file tax returns or not.

21 Q.   Okay.

22 A.   But you advised him that he didn't have to.

23 Q.   That was his testimony?

24 A.   Yes.

25 Q.   And then for the years 2000, you testified, I believe,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

139

BRIAN SHERN - CROSS BY MR. SPRINGER                          49

```
 1    that Mr. Lake was found guilty or was -- pled guilty after he

 2    hung a jury or something in 2001; isn't that correct, early

 3    2001?

 4    A.    Yes, he testified about that.

 5    Q.    And in his plea agreement in early 2001, wouldn't it have

 6    been part of an agreement that he had to file a 2000 tax

 7    return?

 8            MR. O'REILLY:  Objection; calls for speculation.

 9            THE COURT:  Overruled.

10            THE WITNESS:  Typically, that is the case.

11    Q.    (BY MR. SPRINGER)  So there really is no way, is there,

12    Mr. Shern, that Mr. Lake either didn't file a tax return for

13    the year 2000 or acted upon anything that I -- you say I told

14    him with regard to the year 2000 only?

15    A.    I think if he would have hired a reputable attorney, they

16    may have advised him to file and pay his taxes.

17    Q.    As you stand here today, did James Lake not file a tax

18    return for the year 2000 by April 15, 2001?

19    A.    Did he not file?

20    Q.    Did he or did he not?

21    A.    I'm not for certain whether he did or didn't.  I know

22    there was a -- the transcript of his account for 2000 shows a

23    restitution payment of -- and that is what we included in our

24    calculations, I believe.

25    Q.    Restitution payment?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

140

BRIAN SHERN - CROSS BY MR. SPRINGER                                50

1  A.   Yes.

2  Q.   Which would be derived from what?  Where would restitution

3  payment come from in the IRS records, if you know?

4  A.   It would have been from his -- the tax violations that he

5  committed.

6  Q.   Would it be from the tax returns that he filed as a

7  condition of his plea agreement?

8  A.   More than likely, yes.

9  Q.   So he did file a tax return for the year 2001, didn't he?

10 A.   I'm not sure if one was filed for him on -- like, often,

11 the IRS will file substitute for returns, I'm not sure without

12 specifically looking at his transcript or his account history

13 whether he did file or did not file.

14 Q.   Do you know if he was ever revoked for not filing a tax

15 return after he pled guilty?

16 A.   I don't know.

17 Q.   Okay.  Is it possible, then, that the amount of money on

18 his transcript came from a tax return that he filed?

19         MR. O'REILLY:  Objection, Your Honor.  Misstates what

20 the document shows, which is no return was filed.

21         THE COURT:  If that's so, then the witness can so

22 testify.  Overruled.

23         THE WITNESS:  Can I look at the actual transcript?

24         MR. SPRINGER:  Uh-huh.

25         THE COURT:  While he's doing that, let me make one

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

141

BRIAN SHERN - CROSS BY MR. SPRINGER                              51

 1  inquiry.  My reading of Government's Exhibit 675 indicates that

 2  that is intended to summarize income to Mr. Springer and my

 3  reading of the government's tax loss chart in its sentencing

 4  memorandum indicates that, aside from Mr. Springer's own tax

 5  liability and aside from Mr. Stilley's tax liability, the

 6  government seeks to attribute to Mr. Springer tax loss relating

 7  only to Patrick Turner and Eddy Patterson and not Mr. Lake; is

 8  that still the case?

 9          MR. O'REILLY:  May I have a moment, Your Honor?

10          THE COURT:  Surely.

11          MR. SPRINGER:  Your Honor, is that Government's

12  Exhibit 1166 that you're referring to on their new chart?

13          THE COURT:  No, I'm referring to the page 10 of the

14  government's sentencing memorandum.

15          MR. O'REILLY:  Your Honor, the Government's Exhibit

16  675 was what was put into evidence at trial.  The -- what we

17  are attributing to Mr. Springer is summarized on Government's

18  Exhibit 1160, which has a few additional income items.  The --

19  it adds, I believe, 17,000 in income for that year.

20  Specifically, it adds a check that was put into evidence but

21  not discussed at trial from Believers Broadcast Corporation,

22  Ken Geisendorffer, for $5,000.

23          THE COURT:  Okay.  Well, I can tell by looking at

24  1160 that you may not have understood my question.

25          MR. O'REILLY:  Perhaps I did not.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

142

BRIAN SHERN - CROSS BY MR. SPRINGER                              52

1           THE COURT:  Mr. Springer asked some questions of

2    Mr. Shern that -- from which I inferred, perhaps, that

3    Mr. Springer thinks that the government is including a tax loss

4    attributable to Mr. Lake in its tax loss calculations for

5    Mr. Springer, and my reading of your sentencing memorandum

6    indicates that, aside from the defendants themselves, the

7    government seeks to attribute tax losses to Mr. Springer

8    relating only to Patrick Turner and Eddy Patterson.  And my

9    question was --

10          MR. O'REILLY:  Actually, Your Honor, in the

11   government's exhibits, which is 1177, we did include the 1,000

12   -- the 176,000 that Mr. Springer is discussing as attributable

13   to him, because Mr. Lake, our theory, is being encouraged by

14   both Mr. Springer and Mr. Stilley to continue to not file a tax

15   return or pay taxes for the year 2000, so Mr. Springer is

16   correct in his understanding of the government's position.

17          THE COURT:  Okay.  Except that I've heard on cross

18   that maybe he may well have filed for 2000.

19          MR. O'REILLY:  I'll try to rehabilitate the witness.

20          THE COURT:  Okay.  Well, proceed.

21   Q.   (BY MR. SPRINGER)  You are certain that Mr. Lake at some

22   point in time pled guilty to some tax-related charge; is that

23   correct?

24   A.   Yes.

25   Q.   And as far as you know, as you stand here today, is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

143

BRIAN SHERN - CROSS BY MR. SPRINGER                    53

1  Mr. Lake in full compliance with all the tax laws of the United

2  States?

3  A.   I'm not certain about that.

4  Q.   Were you here when he testified at trial?

5  A.   Yes.

6  Q.   Do you remember him saying he was in compliance?

7  A.   He might have said that, yes.

8  Q.   Thank you.

9      Next is Eddy Patterson.  Isn't it true that Mr. Patterson

10 was indicted in 2003 for tax-related charges from 1995, '96,

11 '97, '98, and '99?

12 A.   I know he was indicted in 2003, but I'm not certain of the

13 years he was charged with.

14 Q.   Is it your testimony that myself and/or Mr. Stilley should

15 be held liable under tax loss calculations because

16 Mr. Patterson did not file a 2000 tax return?

17 A.   Yes.

18 Q.   And it is your testimony because he heard -- he testified

19 that he said he heard me and Mr. Stilley say that we don't file

20 tax returns and that that's the basis by which you claim he did

21 not file a tax return for the year 2000?

22 A.   Yes, I think you specifically told him, after I reviewed

23 his grand jury transcript, that you don't file and you're

24 trying to fight the system and something of that nature and

25 that's why you don't file.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

144

BRIAN SHERN - CROSS BY MR. SPRINGER                           54

1    Q.   So he didn't file in '96, he didn't file in '97, he didn't
2    file in '98, he didn't file in '99, he testified he met me in
3    2000, correct?
4    A.   That's correct.
5    Q.   So he didn't file in 2000, and all of a sudden, out of
6    five years of not filing tax returns, you would like to
7    attribute that the year 2000 is the year that he didn't file
8    because of me; is that correct?
9    A.   Yes, because I think that's when he sought the advice of
10   so-called experts and that basically reaffirmed that he was
11   right and that he didn't have to file.  And I think you guys,
12   you and Mr. Stilley, probably reaffirmed that in him, that he
13   didn't have a requirement to file.
14   Q.   Do you remember Mr. Patterson testifying that he did have
15   federal and state income taxes prepared?
16   A.   I don't remember him testifying to that, but I remember --
17   I believe it was Mrs. Hess that did prepare taxes for him.
18   Q.   Do you know who Mrs. Hess is?
19   A.   Yes.
20   Q.   Who is she?
21   A.   She's a CPA.
22   Q.   She also a college professor?
23   A.   Yes.
24   Q.   At TU?
25   A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

145

BRIAN SHERN - CROSS BY MR. SPRINGER                    55

1    Q.    Do you know how Mr. Patterson met Mrs. Hess?

2    A.    Yes.

3    Q.    How?

4    A.    You introduced her to him.

5    Q.    Now, if I was telling Mr. Patterson to not file tax

6    returns, why would I introduce Mr. Patterson to Cynthia Hess,

7    who is a CPA college professor tax preparer?

8          MR. O'REILLY:  Judge, we need a time frame for when

9    this introduction was made.

10         THE COURT:  That would help.

11   Q.    (BY MR. SPRINGER)  How did you come to know the name

12   Cynthia Hess?

13   A.    I think it was upon review of the investigation file for

14   Mr. Patterson.

15   Q.    And do you know whether Mrs. Hess -- do you know what Mrs.

16   Hess did for Mr. and Mrs. Patterson?

17   A.    She filed tax returns -- or not filed, she prepared tax

18   returns for them.

19   Q.    Okay.  And do you know whether that occurred before,

20   during or after Mr. Patterson's conviction?

21   A.    I don't recall.

22   Q.    Okay.  Did you know that Mrs. Hess prepared 2000 tax

23   returns for Eddy Patterson and his wife?

24         MR. O'REILLY:  Your Honor, objection, until we have a

25   time frame for when this happened.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

146

BRIAN SHERN - CROSS BY MR. SPRINGER                              56

```
 1              MR. SPRINGER:  I'm getting there.

 2              THE COURT:  Overruled.

 3              THE WITNESS:  I don't remember if she prepared 2000

 4    or not.  I know from what I remember about Mrs. Hess is that

 5    she prepared tax returns for Mr. Patterson, I don't recall

 6    enough about it really to testify confidently about it.

 7    Q.  (BY MR. SPRINGER)  Are you aware that after Mr. Patterson

 8    was found guilty that he fired Mr. Stilley and hired

 9    Mr. Stephen Knor?

10    A.  Yes.

11    Q.  So isn't it safe to say, then, that Mr. Patterson and Mrs.

12    Patterson learned of Mrs. Hess before they fired Mr. Stilley?

13    A.  Yes.

14    Q.  All right.  So that would be, then, before they were found

15    guilty, now, wouldn't it?

16    A.  Yes.

17    Q.  Okay.  And that -- and they were found guilty on December

18    15, 2003; is that correct?

19    A.  Yes.

20    Q.  Okay.  And are you aware that Lindsey Springer filed a

21    lawsuit against the Richardson law firm over that issue?

22    A.  Yes.

23    Q.  And do you remember in that complaint that there were

24    exhibits attached of tax returns prepared by Cynthia Hess?

25    A.  I don't think I -- I think I may have reviewed the text,
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

147

BRIAN SHERN - CROSS BY MR. SPRINGER                    57

 1   along with the complaint, but I didn't review the exhibits, so

 2   I don't recall.

 3   Q.   Do you remember in the complaint that I alleged that I

 4   introduced them to Cynthia Hess?

 5           MR. O'REILLY:  Your Honor, objection as to relevance;

 6   he's already asked and answered.

 7           THE COURT:  That's been established.  Sustained.

 8           MR. SPRINGER:  All right.

 9   Q.   (BY MR. SPRINGER)  Do you remember Mr. Patterson

10   testifying that the same CPA who prepared his corporate tax

11   returns also prepared he and his wife's individual tax returns

12   for every year?

13   A.   I believe that's correct.  I think he had the returns

14   prepared but never did file them.

15   Q.   He filed the state returns, didn't he, but just not the

16   federal?

17   A.   I believe so, yes.

18   Q.   Okay.  So he had access to a CPA who advised him over

19   corporate tax and individual tax every year, even going back to

20   when he stopped filing in 1995; isn't that true?

21   A.   Yes.

22   Q.   But yet I'm the reason why he didn't file a 2000 tax

23   return, right?

24   A.   Yes.

25   Q.   Have you examined his 2000 tax return?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

148

BRIAN SHERN - CROSS BY MR. SPRINGER                                    58

1   A.   No, I have not.

2   Q.   Where did you get the $34,000 that is being attributed as

3   tax loss to me?  Where did that number come from?

4   A.   From his transcript of account.

5   Q.   And is the information on the transcript -- what is a

6   transcript of an account?

7   A.   It basically shows, for a certain taxpayer, transactions

8   that have happened to his account with the IRS.

9   Q.   So if he files a tax return it shows up on the transcript?

10  A.   Yes.

11  Q.   Okay.  So how do you know that the information on the

12  transcript wasn't from a tax return that Cynthia Hess prepared

13  that Mr. Patterson signed and filed?

14  A.   I wouldn't be able to tell that from the transcript, but I

15  I can look at the transcript right now and see what it says.

16  Q.   Could you?  And please refer to the exhibit that you're

17  looking at.  I believe it's 1144; is that right?

18  A.   1147.

19  Q.   1147.

20  A.   It doesn't specifically say where the tax return came

21  from.

22  Q.   But it does say "tax return filed," doesn't it?

23  A.   Yes.

24  Q.   If you look at Government's Exhibit 1144 --

25            THE COURT:  That was 1144?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

149

BRIAN SHERN - CROSS BY MR. SPRINGER                              59

1                    MR. SPRINGER:  1144, Your Honor.

2                    THE WITNESS:  Okay.

3     Q.   (BY MR. SPRINGER)  Do you see at the bottom of 1144, just

4     above the square where it says "transactions" on it, do you see

5     right above "processing date," it says, "return due date" or

6     "return received date," whichever is later, and it says "March

7     3, 2003"?

8     A.   Is that on the front?

9     Q.   On the very first page of 1144, just above the phrase

10    "transactions," which is in a block with two lines around it.

11    It's the second sentence above that.

12    A.   Yes, I see that.

13    Q.   Do you see where it says "March 3, 2003"?

14    A.   Yes.

15    Q.   And wasn't Mr. Patterson and Mrs. Patterson indicted in

16    April of 2003?

17    A.   I don't recall exactly when in 2003.

18    Q.   You do remember they were convicted in December of 2003,

19    right?

20    A.   Yes, I do remember that.

21    Q.   And do you remember that there was a $112,000 check in

22    July of 2003 that Mr. Patterson gave to Mr. Stilley to put in

23    his IOLTA account?  Do you remember that?

24    A.   Yes.

25    Q.   Wasn't the reason why these monies was allegedly being

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

150

BRIAN SHERN - CROSS BY MR. SPRINGER                                60

1   given and deposited was to help in his criminal defense?

2   A.   Yes.

3   Q.   Okay.  Now, if you would look again to Government's

4   Exhibit Number 1147 and look at the same spot as you just did

5   on 1144, do you see the day the return was filed for the year

6   2000?

7   A.   What exhibit?  I'm sorry.

8   Q.   I'm sorry, 1147, I'm sorry.  It's -- it's just above the

9   "transaction" square.  Let's start at the top of 1147,

10  Government's Exhibit 1147.  Does it say "account transcript"

11  right there --

12  A.   Yes.

13  Q.   -- at the top?

14       And just below it, to the right, does it say "tax period

15  December 31, 2000"?

16  A.   Yes.

17  Q.   All right.  And is that the same year 2000 that you're

18  referring to when you say I caused Mr. Patterson not to file

19  his 2000 tax return because I told him I wasn't required to

20  file a return?

21  A.   Yes.  And I think for clarification here, I'm pretty

22  positive that the IRS filed this return for him, because if you

23  look further on the transcript, like in the second page --

24  Q.   Okay.

25  A.   -- there's certain notations that say "inquiry for not

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

151

BRIAN SHERN - CROSS BY MR. SPRINGER                    61

 1  filing -- for non-filing of tax return, penalty for not

 2  prepaying tax, penalty for filing tax return after the due

 3  date."

 4      So, really, without asking a revenue agent or somebody

 5  that's more familiar with this transcript, I wouldn't be able

 6  to tell you if he filed the return, if somebody else filed the

 7  return or if a return was filed for him by the IRS.

 8  Q.   Could you look on the second page of Exhibit 1147 and look

 9  at the very top notation that's made in the IRS's transcript.

10  And could you please read that.

11  A.   Where at again?  I'm sorry.

12  Q.   At the very top of page 2 of 1147, where it begins with

13  the "460," which is the transaction code number, and then it

14  says, "extension of time to file extended date 8/15/2001" and

15  it's filed on 4/15/2001.

16  A.   Yes.

17  Q.   If Mr. Patterson --

18           THE COURT:  Say again where you are on that.

19           MR. SPRINGER:  I'm on 1147, Your Honor.

20           THE COURT:  Right.

21           MR. SPRINGER:  And page 2 at the very, very top.

22           THE COURT:  Okay.  Okay.  Go ahead.

23  Q.   (BY MR. SPRINGER)  And this document -- this entry says it

24  was entered on 4/15/2001 on the IRS's computer; is that

25  correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

152

BRIAN SHERN - CROSS BY MR. SPRINGER                                62

1  A.   Yes.

2  Q.   Now, if I had told Mr. Patterson he didn't have to file a

3  tax return, then why would there be an extension of time to

4  file a tax return in Mr. Patterson's file?

5          MR. O'REILLY:  Objection.  Calls for speculation,

6  Your Honor.

7          THE COURT:  Overruled.

8          THE WITNESS:  I have no idea.

9  Q.   (BY MR. SPRINGER)  Do you know whether the IRS entered

10  files extensions for taxpayers on the last day to file a return

11  every year?

12  A.   No, I don't believe they do.

13  Q.   Thank you.

14      And isn't the second notation on Government's Exhibit 1147

15  on page 2 the same 460 entry, except this time Mr. Patterson is

16  seen on your transcript to be extending the 8/15/2001 due date

17  for the 2000 year return and now he's extending it from 8/15 to

18  October 15, 2001?  Isn't that true, Mr. Shern?

19  A.   Yes.

20  Q.   So even if I did tell Mr. Patterson that I didn't believe

21  I was required to file a return, he didn't act upon it, did

22  he?  Because he's filing extension after extension with the

23  IRS; isn't that true?

24  A.   Rephrase the question.

25  Q.   Did Mr. Patterson not file a 2000 tax return because, as

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

153

BRIAN SHERN - CROSS BY MR. SPRINGER                          63

1   you said under direct examination, he learned -- out of my

2   lips, I guess -- that I did not file tax returns?

3   A.   I believe that he didn't file -- I believe that the advice

4   you gave him confirmed to him that he didn't have to file a tax

5   return for 2000.

6   Q.   But your testimony in this regard, both as to adding tax

7   loss to Lindsey's -- my numbers also is that I counseled others

8   to violate the Internal Revenue law; isn't that what your

9   testimony was under direct examination?

10  A.   Yes.

11  Q.   And didn't you specifically mention Mr. Patterson?

12  A.   Yes.

13  Q.   Now, you're not saying I told him not to file a 2002 or

14  2003 or 2004 return, are you?

15  A.   No.

16  Q.   Just the 2000 year; isn't that true?

17  A.   Yes.

18  Q.   Okay.  And doesn't this transcript show that he did file

19  extensions with the IRS?

20          MR. O'REILLY:  Objection.  Asked and answered

21  repeatedly.

22          THE COURT:  Sustained.

23          MR. SPRINGER:  Thank you, Your Honor.

24  Q.   (BY MR. SPRINGER)  Now, with regard to Dr. Roberts, you

25  specifically aren't trying to tag Lindsey Springer with tax

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

154

BRIAN SHERN - CROSS BY MR. SPRINGER                                    64

1  loss stemming from Dr. Roberts not filing tax returns; is that

2  correct?

3  A.    Correct.

4  Q.    You are trying to tag Mr. Stilley for it because of his

5  early-on relationship with Mr. Roberts, correct?

6  A.    Yes.

7  Q.    Okay.  But you still claim that I counseled Dr. Roberts to

8  violate the Internal Revenue laws, correct?

9  A.    Yes.

10 Q.    And, specifically, you're saying that I counseled

11 Dr. Roberts into what?  What law did I tell Dr. Roberts he

12 needed to violate?

13 A.    You told him that he had no liability to file a tax return

14 or pay taxes.

15 Q.    Okay.  Now, with Dr. Roberts, do you remember the phrase

16 "Ortho/Neuro Medical"?

17 A.    Yes.

18 Q.    Do you remember what that was?

19 A.    Yes; that was his chiropractic practice.

20 Q.    Was it his tax shelter?

21 A.    I don't know.  I know he had a checking account that said

22 "Ortho/Neuro Medical" or whatever it is on his checks.

23 Q.    The money that he gave to me was from Ortho/Neuro Medical;

24 isn't that true?

25 A.    The money he paid you.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

155

BRIAN SHERN - CROSS BY MR. SPRINGER                          65

1   Q.   Right.  The money -- yeah, the money that is in the

2   evidence in this case came from Ortho/Neuro Medical?

3   A.   Most of it.  I think some -- there was a cashier's check,

4   I think, involved too.

5   Q.   Was that out of the Ortho/Neuro Medical account, if you

6   know?

7   A.   I don't recall.

8   Q.   But I had nothing to do with him setting up Ortho/Neuro

9   Medical, did I?

10  A.   I don't know.

11  Q.   Did you ever find any evidence that I did?

12  A.   No.

13  Q.   So as far as Dr. Roberts is concerned, is it only the year

14  2000 that you claim I told him to violate the Internal Revenue

15  laws by not filing a 2000 tax return or was it 1999's tax

16  return or which one was it?

17  A.   I don't remember which particular year.  I think he just

18  said that, when he talked to you and Mr. Stilley, you guys both

19  told him that he didn't have any liability to file a tax return

20  or pay taxes.

21  Q.   Okay.  Now, Dr. Roberts was indicted in 2000, correct?

22  A.   Yes, I believe so.

23  Q.   And the indictment was for years in the mid-nineties,

24  correct?

25  A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

156

BRIAN SHERN - CROSS BY MR. SPRINGER                              66

1   Q.   And it's a fact, is it not, that I -- excuse me, strike

2   that.

3        Do you have any evidence of me knowing Dr. Roberts before

4   December of 1999?

5   A.   I believe that he testified before the grand jury about

6   coming to some of your seminars that you had at a hotel in

7   Tulsa.

8   Q.   Now, are you saying that, when he came to seminars in

9   Tulsa, I told him to violate the Internal Revenue laws or are

10  you saying that when he hired me I told him to violate the

11  Internal Revenue laws?

12  A.   I'm saying that what he said in his grand jury testimony

13  is that I believe after he hired you, you told him that, but

14  I'm not sure what you told him at the seminars.

15  Q.   All right.  So if he met me -- he introduced -- strike

16  that.

17       Isn't it true that he testified he introduced Oscar

18  Stilley and me, that he had a relationship with Oscar and he

19  introduced me to Oscar Stilley?

20  A.   Yes.

21  Q.   And wasn't that in late 1999, around December of 1999, if

22  you remember?

23  A.   Yes.

24  Q.   And isn't it true that in April of 2000 he was indicted

25  for not filing tax returns, misdemeanors, back in the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

157

BRIAN SHERN - CROSS BY MR. SPRINGER                    67

```
 1   mid-nineties?

 2   A.   I'm not sure of the exact date in 2000, but I know it was

 3   2000, and, yes, it was for the mid-nineties.

 4   Q.   All right.  So -- and then isn't it true that, in June of

 5   2000, he went to trial -- June or July of 2000, he went to

 6   trial and was found guilty?

 7   A.   That sounds right, yes.

 8   Q.   Okay.

 9           THE COURT:  Stand by for just a moment,

10   Mr. Springer.

11       I don't plan to recess for lunch until about 12:15 unless

12   anyone at either table needs a break, then we'll take a break,

13   but, otherwise, I don't plan to recess until about 12:15.

14       You may proceed.

15           MR. SPRINGER:  Thank you, Your Honor.

16   Q.   (BY MR. SPRINGER)  So you're not saying that I'm

17   responsible for why Mr. Roberts didn't file a tax return in the

18   year 2000, correct?

19   A.   No.  I think you're probably a contributing factor, but I

20   can't say that you're responsible for him not filing a tax

21   return.

22   Q.   Is it possible that if he got indicted in April of 2000

23   and he had a lawyer that he had known since 1990 named Oscar

24   Stilley, is it possible that he determined that it would be in

25   his best interest, being indicted, to say nothing to the IRS?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

158

BRIAN SHERN - CROSS BY MR. SPRINGER                    68

1              MR. O'REILLY:  Objection.  Calls for speculation,

2    plus intrudes on attorney-client privilege.

3              THE COURT:  Overruled.

4              THE WITNESS:  Can you repeat that question?

5    Q.  (BY MR. SPRINGER)  Did you ever ask Dr. Roberts why he

6    didn't file a tax return on April 15, 2000?

7    A.   No.

8              MR. SPRINGER:  Your Honor, may I have one second?

9              THE COURT:  You may.

10   Q.  (BY MR. SPRINGER)  Did you ever have an interview with

11   Brenda Gray?

12   A.   Yes.

13   Q.   Do you remember who she was?

14   A.   Yes.

15   Q.   What was her relationship with Dr. Roberts?

16   A.   She was his girlfriend.

17   Q.   Okay.  Do you remember her testimony about being in

18   college at Arkansas University and having discussions in class

19   about the tax laws and how complicated they were?

20   A.   I don't specifically recall that exact comment.

21   Q.   Do you remember who introduced Oscar Stilley to

22   Dr. Roberts?

23   A.   No.

24   Q.   You don't know if it was Brenda Gray or not?

25   A.   No.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

159

BRIAN SHERN - CROSS BY MR. SPRINGER                          69

1  Q.   Okay.  You do know that Oscar Stilley was -- got his

2  college degree and his law degree at the University of

3  Arkansas, right?

4  A.   Yes.

5  Q.   Okay.  Same place Brenda Gray went to college?

6  A.   I don't remember.

7  Q.   That's fine.

8       As far as James Lake goes, do you know how many hours I

9  provided services to Mr. Lake?

10  A.   No.

11  Q.   Do you know how many hours I provided services to Eddy and

12  Judy Patterson?

13  A.   No.

14  Q.   Do you know how many hours I provided service to

15  Dr. Philip Roberts?

16  A.   No.

17  Q.   Do you know how many hours I provided services to

18  Ortho/Neuro Medical?

19  A.   No.

20  Q.   Do you know how many hours I provided services in -- to

21  Dale Hedberg?

22  A.   No.

23  Q.   After the trial, did you ever look into whether or not

24  Mr. Lake was -- hung a jury the first time with a different

25  lawyer and then went back and pled guilty after he hung the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

160

BRIAN SHERN - CROSS BY MR. SPRINGER                    70

1   jury?

2   A.   Yes.

3   Q.   Is that true?

4   A.   That's what happened, yes.

5   Q.   It's what happened.  So he did not go to trial with Oscar

6   Stilley?

7   A.   I think he fired him right before the trial started.

8   Q.   Thank you.

9        And he hired another -- or a reputable lawyer, did he not?

10  A.   Yes.

11  Q.   Still went to trial --

12  A.   Yes.

13  Q.   -- right?

14       Hung the jury?

15  A.   That's correct.

16  Q.   And then went and pled guilty?

17  A.   Yes.

18  Q.   Do you remember why he went and pled guilty?  Did he say

19  why?

20  A.   I can't remember for sure why.

21  Q.   Was he threatened with an obstruction of justice charge

22  for lying at the first jury trial?

23  A.   That may have been one of the factors he was looking at.

24  Q.   Which he had another reputable lawyer having him do,

25  correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

161

BRIAN SHERN - CROSS BY MR. SPRINGER                    71

 1   A.    Excuse me?

 2   Q.    Strike that.  I'm sorry.  Emotion.

 3         Earlier today, you testified about Eddy and Judith

 4   Patterson and you mentioned the phrase "2012," but I don't

 5   really think you meant to say that.  Do you remember what you

 6   were referencing in 2012?

 7   A.    No.  I don't remember saying 2012.

 8   Q.    Okay.  You also discussed Ernie Swisher.

 9   A.    Yes.

10   Q.    And that a week before his trial he was hired by -- or he

11   hired Oscar Stilley to represent him a week before trial?

12   A.    I know he hired Mr. Stilley and that sound -- yes, a week

13   before trial.

14   Q.    And he was indicted not only for tax charges, but didn't

15   he also have a bank fraud charge?

16   A.    Yes.

17   Q.    And the judge acquitted him of that charge after the

18   government closed or rested its case, didn't they -- or didn't

19   he?

20   A.    Yes.

21   Q.    So Mr. Swisher was found not guilty of the felony and

22   guilty of the three misdemeanors; is that right?

23   A.    Yes, that's correct.

24   Q.    And Oscar Stilley is the one that represented him in that

25   trial, correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

162

BRIAN SHERN - CROSS BY MR. SPRINGER                                72

1    A.    Yes.

2    Q.    Then you said that Mr. Stilley came to Mr. Swisher and

3    said he, Mr. Stilley, wanted to hire Lindsey Springer to help

4    Mr. Stilley during the trial?

5    A.    That's what Mr. Swisher told me, yes.

6    Q.    Okay.  Do you know whether I was ever told that I was

7    being hired by Mr. Swisher or Mr. Stilley?

8    A.    I don't recall him saying whether or not he told you.  I

9    remember him saying that he worked with you.

10   Q.    Right.  And he gave me money, indirectly, through

11   Mr. Stilley?  He gave me money, right?

12   A.    Yes.

13   Q.    The evidence is clear on that?

14   A.    Yes.

15   Q.    Okay.  Is it your testimony that I counseled Mr. Swisher

16   to violate the Internal Revenue laws?

17   A.    No.

18   Q.    Okay.  And am I responsible for any tax liability

19   associated with Mr. Swisher?

20          MR. O'REILLY:  Objection.  Calls for speculation.

21          THE COURT:  Well, I don't see from anything that I

22   have that the government so asserts.  Is that correct,

23   Mr. O'Reilly?

24          MR. O'REILLY:  Correct.  There's nothing.

25          MR. SPRINGER:  Okay.  Good enough.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

163

BRIAN SHERN - CROSS BY MR. SPRINGER                                73

```
 1              THE COURT:  Quit while you're ahead.  Go ahead.
 2    Q.  (BY MR. SPRINGER)  As far as Mr. and Mrs. Hovind, you
 3    testified that they made payments to me; do you remember that?
 4    A.   Yes.
 5    Q.   Okay.  And do you remember what year that was?
 6    A.   I believe it was 2006 -- 2005 to 2007, but I think most of
 7    them were 2006.
 8    Q.   And the actual money and the transactions that came to
 9    Lindsey Springer were from a ministry, weren't they?
10    A.   Yes.
11    Q.   They weren't specifically from Mr. and Mrs. Hovind, but
12    the underlying theme is that it was for them, correct?
13    A.   It was from them, yes.
14    Q.   Well, it was from a ministry corporation, right?
15    A.   It was from I think the -- what was on the checks was
16    Creations Science Evange --
17    Q.   Evangelism, Inc, right?
18    A.   Yes.
19    Q.   Inc.
20        So a corporation, actually, is the one that gave -- and I
21    think you testified it was $30,000; is that right?  Did you say
22    that?
23    A.   I don't think I --
24    Q.   Said an exact amount?  It's on the list you provided,
25    though, right?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

164

BRIAN SHERN - CROSS BY MR. SPRINGER                              74

1   A.   Yes.

2   Q.   All right.  And as far as Mr. Swisher goes, do you know

3   how many hours I worked for Mr. Swisher?

4   A.   No.

5   Q.   And as far as the Hovinds, do you know how many hours I

6   worked for them?

7   A.   No.

8   Q.   Do you remember, when you testified at trial, you told the

9   jury why I was not charged with willful failure to file or tax

10  evasion for the year 2001?

11  A.   Yes.

12  Q.   And what was that reason?

13  A.   Because in the schedules we prepared for trial, the tax

14  loss was minimal for the purposes of trial and so we didn't

15  charge that year.

16  Q.   Isn't it because willful failure to file was beyond the

17  six years and tax evasion required a deficiency -- a

18  substantial tax deficiency and isn't it for that reason that

19  you could not substantiate a substantial tax deficiency that

20  led you not to pursue 2001?

21  A.   Yes.

22  Q.   Okay.

23  A.   For the trial purposes.

24  Q.   And now you're taking the entire gross amount from 2001

25  and you're saying for tax loss purposes we should take 20

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

165

BRIAN SHERN - CROSS BY MR. SPRINGER                                    75

1    percent of that number; isn't that true?

2             MR. O'REILLY:  Objection.  It's what the sentencing

3    guidelines dictate, not what Special Agent Shern says.

4             THE COURT:  Well, I think he's -- Mr. Springer is

5    seeking to ascertain whether that is, in fact, the government's

6    theory under the guidelines, and for that reason, it's

7    overruled.  You may answer.

8             MR. SPRINGER:  And if I may, Your Honor, the actual

9    guideline goes on to say unless a better number is available

10   and --

11            THE COURT:  Well, I'm not here to hear argument.  I

12   overruled the objection.

13            MR. SPRINGER:  I'm sorry.  Okay.  Got you.

14            THE WITNESS:  Yes, that's correct.

15   Q.  (BY MR. SPRINGER)  And then for 2002, the reason why it

16   was not a tax evasion charge was because there wasn't a tax

17   liability, a deficiency balance, that you could show for that

18   year and that's why it was only a willful failure to file; is

19   that correct?

20   A.   Yes.

21   Q.   And isn't that same true for 2004's charge, which I

22   believe was Count 6?

23   A.   Yes, I believe so.

24   Q.   So there was no charge in 2001 because the tax loss was

25   minimal, and then for 2002 and 2004, which is Count 5 and 6,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

166

BRIAN SHERN - CROSS BY MR. SPRINGER                76

1   there was no tax loss and that's why those were not tax evasion

2   charges?

3   A.   That's correct.

4   Q.   But now your testimony is that there should be tax loss

5   for those years; is that correct?

6   A.   Yes.

7   Q.   So -- and is that because -- excuse me.  Strike that.

8        For 2001, you had available information that you seized

9   from the home that I lived in; is that correct?

10  A.   Yes.

11  Q.   You had records, didn't you?

12  A.   Yes.

13  Q.   As a matter of fact, there's quite a large volume of set

14  of records out of my house; isn't that correct?

15  A.   Yes.

16  Q.   And for 2001, you calculated and used those receipts that

17  you found in my home to offset the gross income that you had

18  determined to conclude that there was not enough tax deficiency

19  to warrant a charge of tax evasion, correct?

20        MR. O'REILLY:  Objection.  Asked and answered and

21  relevance.

22        THE COURT:  I think that's been covered,

23  Mr. Springer.

24        MR. SPRINGER:  I was trying to get it a different

25  way, but I'll -- okay.  Very good.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

167

BRIAN SHERN - CROSS BY MR. SPRINGER                                77

1   Q.   (BY MR. SPRINGER)   The same holds true for the year 2002,

2   2004, that how you calculated there was no tax liability is by

3   the receipts and the records that you found during the raid of

4   the home that I live in, correct?

5   A.   There were some other things besides that, but, yes.

6   Q.   For the most part, it came to -- I remember that now,

7   that's right.  You did have some outside source that you gave

8   me credit off of the gross income number, but for the most

9   part, it came from the house, correct?

10  A.   Yes.

11  Q.   Now, for the computations of tax loss for 2001, 2002, and

12  2004, you're just setting all those expenses aside, aren't

13  you?

14  A.   You mean for the purposes of sentencing?

15  Q.   Tax loss at sentencing, yes.

16  A.   Yeah, typically, at trial, you use the most conservative

17  approach, and all we had to document your expenses were the

18  expenditures that we found in the search warrant.  And I

19  believe we gave you numerous expenses that -- like a typical

20  revenue agent would never give a defendant -- or a taxpayer,

21  such as personal expenditures that we could clearly see

22  probably weren't personal, but we weren't comfortable bringing

23  that conclusion forth at trial, so for the purposes of

24  sentencing, we -- because we have such minimal records, you

25  yourself told me that you don't keep records of your ministry

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

168

BRIAN SHERN - CROSS BY MR. SPRINGER                          78

1   and your business dealings, and so we don't have a truly

2   accurate source of expense records to apply to your situation,

3   so we just use the sentencing guidelines and did a straight 20

4   percent of gross income.

5   Q.   Did you find copies of cashier's checks, money orders, and

6   the like when you raided my home?

7   A.   Yes.

8   Q.   Are those considered records by you?

9   A.   Yes.

10  Q.   Okay.  So I must have been keeping records, then, correct?

11  A.   You were keeping the actual expenditure records, but you

12  kept no ledgers or journals or anything like that to classify

13  what was business, what was personal.  And many of the money

14  order receipts we found just had straight numbers on them, they

15  didn't have documentation, what the purpose of the expenditure

16  was, and things like that.

17  Q.   So what had not been quantified, but the record itself,

18  the thing to quantify, it was in my house, wasn't it, for the

19  most part?

20  A.   To quantify a number, whether you can make that number out

21  to be a business expense or personal expense and make some type

22  of judgment on what it was, that record was useless for that

23  purpose.

24  Q.   But it was a record of an expense or a record of a

25  transaction that I participated in, correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

169

BRIAN SHERN - CROSS BY MR. SPRINGER                           79

```
 1              MR. O'REILLY:  Objection.  Relevance and asked and

 2     answered.

 3              THE COURT:  Sustained.

 4     Q.  (BY MR. SPRINGER)  We met on January 15, correct, 2009?

 5     A.  Yes.

 6     Q.  And did we spend hours going through each one of those

 7     records?

 8     A.  Yes.

 9     Q.  You mentioned a blog?

10     A.  Yes.

11     Q.  You also mentioned a Web site, PenaltyProtestor.org and

12     com, I believe; is that correct?

13     A.  Yes.

14     Q.  And did you say Mr. Turner was -- you admitted Mr. Turner

15     was the host of that Web site, right?

16     A.  Yes, I think he testified about that.

17     Q.  Okay.  Now, you mentioned a video was on the Web site?

18     A.  Yes.

19     Q.  And what did that -- what was that video of?

20     A.  It was of you speaking somewhere.

21     Q.  Did he ever tell anybody in that video don't go file tax

22     returns or pay taxes?

23     A.  It's been so long since I reviewed it, I don't think you

24     did, but --

25     Q.  Thank you.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

170

BRIAN SHERN - CROSS BY MR. SPRINGER                          80

1        Was there actually tax return forms available on

2   PenaltyProtestor.org?

3   A.    Yes, I believe that you referenced the Paperwork Reduction

4   Act and you had those forms on there to support your argument

5   about the Paperwork Reduction Act defense.

6   Q.    What my defense was, correct?

7   A.    Yes.

8   Q.    Okay.  Did you ever find any evidence where I had told

9   somebody not to file tax returns because the forms don't comply

10  with the Paperwork Reduction Act?  And I mean "any" evidence.

11  A.    I don't recall.  I know that Turner brought some of that

12  -- I think he did in his testimony.  He may have -- him or

13  Michael Burt may have brought something up in their testimony

14  about the Paperwork Reduction Act and I just assume that he

15  probably learned it from you, but I don't know.

16  Q.    Isn't it -- is it true -- excuse me.  Strike that.

17       You're trying to hold me liable for taxes for Mr. Turner

18  that he would have owed for 1999, 2000, 2001, and 2002, and

19  2003; is that correct?

20  A.    Yes.

21  Q.    Do you remember when Mr. Turner testified he met Lindsey

22  Springer?

23  A.    I don't remember, but it was after that, after those

24  years.

25  Q.    After that, thank you.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

171

BRIAN SHERN - CROSS BY MR. SPRINGER                    81

 1         Do you remember him testifying about the IFC conference

 2   calls that you talked about earlier today?

 3   A.    Yes.

 4   Q.    Okay.  So how is it, then, that you attribute Mr. Turner

 5   not filing a tax return or paying tax in '99, 2000, 2001, 2002

 6   or 2003 if he didn't even know me?

 7   A.    I don't attribute him not filing a tax return to you, just

 8   the money that he hid in Mr. Stilley's Interest on Lawyers

 9   Trust Account was -- you assisted him in evading the payment of

10   those taxes that he already owed.

11   Q.    Okay.  Isn't it true Mr. Turner went and made a loan at a

12   bank for that money?

13   A.    Yes, he mortgaged both his houses to get the money.

14   Q.    And didn't he say that the reason why he borrowed that

15   money was so if he got indicted he would have money to hire a

16   lawyer and defend himself?

17         MR. O'REILLY:  Your Honor, I'm only objecting because

18   we didn't go into this.  This is beyond the scope of direct

19   because this was fully explored during the trial.

20         THE COURT:  I understand your point.  Frankly, it

21   refreshes my recollection just a little bit.  I do have notes

22   on this from trial, but I'll hear this at least for now.  Go

23   ahead.

24         MR. SPRINGER:  Thank you, Your Honor.

25         THE WITNESS:  I think he did -- he did say that, yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

172

BRIAN SHERN - CROSS BY MR. SPRINGER                      82

1   Q.   (BY MR. SPRINGER)  And isn't the theory behind why that

2   was gross income to me was because he was hiring me for

3   services?

4   A.   Yes.

5   Q.   Okay.  And now you're saying that he actually was evading

6   the payment of his taxes by borrowing the money on the house

7   and then sending it for services?

8   A.   I think he was under the impression that he was going to

9   send that money through Stilley's IOLTA account or put it into

10  Stilley's IOLTA account so it would make the appearance that it

11  looked like an attorney retainer and the IRS couldn't seize

12  that money that was owed to them, and then you spent the

13  money.  So on one hand, he was hiding the money, but then you

14  took it and spent it, and so it's -- you assisted him in hiding

15  his income, as well as it's income to you because I think it

16  pretty much was set out in trial and the jury concluded that

17  that was income to you and I don't think anybody ever --

18  anybody ever thought you would pay it back.

19  Q.   Was the loan proceeds to Mr. Turner income to him?

20  A.   Loan proceeds?

21  Q.   Didn't you say he borrowed that 250,000?

22  A.   Yes.

23  Q.   So it's loan proceeds, right?

24  A.   Yeah, that's not income to him.

25  Q.   To him, all right.  You just said it was and I'm just

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

173

BRIAN SHERN - CROSS BY MR. SPRINGER                    83

 1  asking --

 2  A.   No, it wasn't.  It was --

 3  Q.   He wasn't hiding his income, was he?

 4  A.   No, he was evading the payment of his taxes.

 5         MR. O'REILLY:  Objection.  Argumentative, asked and

 6  answered.  The testimony at trial was complete, but this is

 7  argument covered with this witness --

 8         THE COURT:  Mr. Springer, the government's theory as

 9  to Mr. Turner, as I understand it, is not that the deposit into

10  the IOLTA account was evasion of taxes, per se, but that it was

11  -- had the effect of impairing the government's collection

12  ability, so on that basis the objection will be overruled -- I

13  mean, sustained.  We'll go on to the next question.

14     As a matter of fact, how much more do you have on cross?

15         MR. SPRINGER:  Twenty more minutes, probably, 15.

16         THE COURT:  We'll take our lunch break at this time.

17  That clock on the wall is a little fast, but I have 13 minutes

18  after twelve.  We'll resume in one hour.

19     Court will be in recess.

20     (A RECESS WAS HAD.)

21         THE COURT:  Mr. Springer, you may continue.

22  Q.   (BY MR. SPRINGER)  Mr. Shern, what was the reason why you

23  mentioned the exhibits involving the PayPal?  Why did you

24  mention that?

25  A.   Why did I -- I don't remember what the question was asked

BRIAN SHERN - CROSS BY MR. SPRINGER                                     84

1   referencing the PayPal.

2   Q.   Are you suggesting that money that was given to me through

3   PayPal is gross income?

4   A.   Yes.

5   Q.   And is that based upon whether or not -- is it based upon

6   whether I did something for the person who gave me that money?

7   A.   I think -- the way I did the PayPal documents was if I

8   could see that you sold something on eBay and got money for

9   that, that stuff was all excluded.  It was just people that I

10  think referenced "thanks for your help" or things that appeared

11  that you had performed some kind of service.

12  Q.   You don't know whether I performed any service for any of

13  the people who gave money to me through PayPal, correct?

14  A.   I'd have to look at the list to see, but there may have

15  been a couple on there that we knew about, but the majority, we

16  didn't know who they were.

17  Q.   Are you including those in your tax loss calculations?

18  A.   I believe so, yes.

19        MR. SPRINGER:  Would you please pull those up.

20        THE COURT:  Mr. Springer, let me give you some

21  guidance.

22        MR. SPRINGER:  Okay.

23        THE COURT:  As a general proposition, the question of

24  whether the funds you received were for services rendered has

25  been resolved against you by the verdicts of the jury and

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

175

BRIAN SHERN - CROSS BY MR. SPRINGER                                85

1  you're bound by that.  I'm bound by that.

2     If you want to address specific items as it relates to tax

3  loss determination, then we'll take that one step at a time.

4  But the overarching question of whether the funds that you

5  received over the years that were involved in this case were

6  received by you for services rendered has been conclusively

7  resolved against you by the jury verdict.

8           MR. SPRINGER:  May I ask one point of clarification?

9  The PayPal money was not included within the jury trial, those

10 were not part of the trial, they were never alleged, and they

11 are part of the tax loss calculation as an addition to.

12          THE COURT:  Well, then you need to be specific rather

13 than general in your questions.

14          MR. SPRINGER:  Got you.  Okay.  Just one moment, Your

15 Honor.

16 Q.  (BY MR. SPRINGER)  Mr. Shern, do you remember what exhibit

17 the PayPal receipts were on?

18          MR. O'REILLY:  Your Honor, it's 1134 and 1135.

19 Q.  (BY MR. SPRINGER)  Mr. Shern, if you could look at Exhibit

20 1134.

21 A.  Okay.

22 Q.  Is it your testimony on page 1 of 1134 you considered

23 every one of these transactions through PayPal that were not a

24 part of the grand jury indictment as gross income?

25 A.  Do you care if I refresh my memory with another exhibit?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

176

BRIAN SHERN - CROSS BY MR. SPRINGER                                86

1   Q.   Please.  Which exhibit is it you're going to be looking

2   at?

3   A.   It's the one that the total of all the items we charged

4   you with.

5   Q.   1177, 1178, the last two I got from Mr. O'Reilly.

6   A.   You know what?  I don't believe he charged you with any of

7   the PayPal stuff, I think just Mr. Stilley.

8   Q.   Thank you.  Thank you.

9        Before lunch, you testified about the $250,000 loan that

10  Mr. Turner caused -- obtained and then -- isn't it true that

11  Count 5 alleges that was gross income and then the jury found

12  guilty based upon an allegation that that was gross income to

13  Lindsey Springer?

14       MR. O'REILLY:  Objection.  Compound and confusing.

15  The loan is -- I assume he's referring to the mortgage loan,

16  which would not be what was attributed to anyone's income.

17       THE COURT:  Well, Count -- isn't Count 5 the willful

18  failure to file Count?

19       MR. SPRINGER:  No, it was a tax evasion count.  It's

20  Count 4, Your Honor.

21       MR. O'REILLY:  The year 2005.

22       THE COURT:  Well, the pending question refers to

23  Count 5, which is willful failure to file.

24       MR. SPRINGER:  I'm sorry.  It's Count 4, you're

25  right.  Count 4.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

177

BRIAN SHERN - CROSS BY MR. SPRINGER                                    87

1              THE COURT:  Then reask it.

2    Q.   (BY MR. SPRINGER)  Prior to lunch today, you testified

3    that Mr. Turner obtained a loan for $250,000, correct?

4    A.   Yes.

5    Q.   And that it is your position that that $250,000 should be

6    added to a tax loss calculation for Mr. Turner not paying his

7    taxes with that $250,000; is that correct?

8    A.    It's the $250,000 -- on one hand, it's -- we charge it as

9    income to you based on the fact that the jury concluded that

10   you took that money and never had any intention of repaying it

11   or else that tax count wouldn't have come back guilty, so on

12   one hand, it was charged to you for the tax loss associated

13   with that $250,000 -- was charged as income to you during

14   trial.

15        And on the other hand, we're adding the fact that you

16   assisted Mr. Turner in evading his taxes that he owed by

17   helping him transfer that money into the Interest on Lawyers

18   Trust Account, we're charging that to you at sentencing, as

19   well, because you assisted him in the evasion of payment of the

20   taxes that he owed.

21   Q.   And the $250,000 was a loan.  He didn't owe any money on

22   the loan, correct?

23   A.   He owed money on the loan, yes.

24   Q.   Mr. Turner owed money on the loan that he made for

25   $250,000?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

178

BRIAN SHERN - CROSS BY MR. SPRINGER                                    88

1              MR. O'REILLY:  Objection.  We covered this before

2    lunch and it's simply confusing as to what loan he's talking

3    about, which I think is the source of Special Agent Shern's

4    confusion.

5              THE COURT:  Mr. Springer, you're referring to the

6    mortgage loan made by Mr. Turner to generate the funds that

7    were transferred to the IOLTA account?

8              MR. SPRINGER:  Yes, Your Honor.

9              THE COURT:  It's established that a loan was made,

10   and if a loan is made, then money is owed.  We'll go on to the

11   next question.

12   Q.  (BY MR. SPRINGER)  And so in the tax loss calculation,

13   you're double-dipping on that 250,000; isn't that true?

14   A.  No.  We're charging you with the tax loss associated with

15   the income and we're also charging you with helping Mr. Turner

16   evade the payment of the taxes that he owed.

17       He could have used the money from the loan proceeds to pay

18   his taxes that he owed, but rather than doing that, he

19   transferred the money to Mr. Stilley to make it appear to be a

20   loan retainer so that he would have funds available to use him

21   as counsel if necessary, but instead of the money being used

22   for that purpose, you took it and bought a motor home and a

23   Lexus with it and spent it.

24   Q.  Isn't that -- what you just said -- the reason why Count 4

25   even began as a charge was because the theory you advanced

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

179

BRIAN SHERN - CROSS BY MR. SPRINGER                    89

1  before the grand jury and at trial was that that money was

2  gross income to me?

3  A.   Yes, that was the largest part of the income charged to

4  you for that year was that amount.

5  Q.   You said that the jury could not have found me guilty of

6  Count 4 without finding those proceeds were not a loan to me

7  just now; do you remember saying that?

8  A.   Yes.

9  Q.   How did you come to that conclusion?

10 A.   Because they charged --

11        MR. O'REILLY:  Objection, Your Honor, as to

12 relevance.

13        THE COURT:  Sustained.  Mr. Springer, I want you to

14 rest assured I'm well-aware that the funds attributable to that

15 transaction are not the -- is not the only tax liability

16 involved in Count 4.

17        MR. SPRINGER:  Thank you, Your Honor.

18 Q.   (BY MR. SPRINGER)  So Mr. Turner's transaction of $250,000

19 that he borrowed ends up being $500,000 worth of tax loss

20 proposed on -- as far as you're concerned at this sentencing

21 hearing; is that true?

22        MR. O'REILLY:  Objection.  Misstates the testimony

23 and the evidence.

24        THE COURT:  I think it does, but you piqued my

25 curiosity.  We're going to hear it.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

180

BRIAN SHERN - CROSS BY MR. SPRINGER                              90

1              THE WITNESS:  No, the tax loss wasn't $500,000.  The

2    tax loss based on $250,000 income to you was charged during

3    trial.  And then Mr. Turner owed close to $250,000 -- it wasn't

4    exactly $250,000 -- in taxes that were assessed to him that he

5    did not pay.  He had the ability to pay it when he took out the

6    mortgage on his homes, but he -- rather than paying the taxes

7    associated with that, he took the money and transferred it into

8    Mr. Stilley's Interest on Lawyers Trust Account to make it

9    appear to be a retainer to Mr. Stilley.

10   Q.   (BY MR. SPRINGER)  To make it appear to be a retainer to

11   Mr. Stilley?  What was it really?

12   A.   Really, it was money you convinced him to give you that

13   you took from him.

14   Q.   Okay.  Are you aware of Mr. Turner repossessing the RV?

15   A.   No, I wasn't aware of that.

16   Q.   Do you remember the testimony at trial there was a lien

17   against the property?

18   A.   Yes.

19   Q.   You mentioned on the blog that there were over 8,000 hits

20   on the blog you mentioned earlier?

21   A.   Yes.

22   Q.   You don't know what percentage of those were page visits

23   or site visits or unique visits, do you?

24   A.   I have no idea.

25   Q.   Could be a very few number of people constantly going

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

181

BRIAN SHERN - CROSS BY MR. SPRINGER                    91

1   there, couldn't it?

2   A.    Could be, yes.

3   Q.    Thank you.

4         Mr. Dingman and Mr. Grady and Mr. Robertson -- do you

5   remember mentioning those three names?

6   A.    Yes.

7   Q.    Why did you mention them?  What relevance do they have to

8   this proceeding of sentencing?

9   A.    I believe that you encouraged them to violate the law.

10  Q.    And do you remember -- what specifically was it that I

11  encouraged them to do that violated the law?

12  A.    You assisted them in setting up trusts in order to evade

13  the payment of taxes, and you also helped them send -- excuse

14  me -- helped them send frivolous documentation to the Internal

15  Revenue Service to try to unvolunteer from the tax system.

16  Q.    Okay.  Do you know -- strike that.

17        To evade taxes, that's a year specific crime, correct?

18  A.    Yeah.

19        MR. O'REILLY:  Objection, Your Honor.  It calls for a

20  legal conclusion.

21        THE COURT:  Overruled.

22  Q.    (BY MR. SPRINGER)  Do you know what year I counseled

23  Mr. Dingman or Mr. Grady to commit tax evasion?

24  A.    It was sometime during the early nineties.

25  Q.    Now, Mr. Robertson, what relevance does he have to your

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

182

BRIAN SHERN - CROSS BY MR. SPRINGER                                    92

1   testimony about the early 1990s?

2   A.   He was just a name that Mr. -- either Mr. Dingman or

3   Mr. Grady mentioned to me that you had set up similar trusts

4   for him than you did for them.

5   Q.   Do you remember Mr. Dingman testifying about his

6   conviction in Springfield, Missouri?

7   A.   Yes.

8   Q.   Do you remember he worked a special deal out with the IRS

9   where he could go around and talk to people about what had

10  happened to him; do you remember that?

11  A.   Yes.

12  Q.   Do you remember an article that came out that caused me to

13  rise up against the newspaper about?

14  A.   Yes.

15  Q.   Okay.  And wasn't Mr. Robertson one of the deacons in that

16  article?

17  A.   I believe so, yes.

18  Q.   So Mr. Robertson is actually the one who Mr. Grady claimed

19  set him up with those trusts because that's what the article

20  said, isn't it?

21  A.   Mr. Grady told me that you were the one that assisted

22  him.  I don't remember what the article says, but they told me

23  that you were the one that came and you used to travel around

24  the midwest and promote these trusts and you helped them set

25  them up.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

183

BRIAN SHERN - CROSS BY MR. SPRINGER                                93

1  Q.   In your mind, is there a difference between promoting a

2  trust and setting a trust up?

3  A.   Depends on if the trust is legitimate.  I mean, trusts are

4  set up all the time that are perfectly legitimate, but it's

5  different if your motive is to evade taxes.

6  Q.   Did you ever see any of the trusts that Mr. Robertson set

7  up for Mr. Dingman and Mr. Grady?

8  A.   No.

9  Q.   So you don't know whether they were set up correctly or

10  not; is that correct?

11  A.   No, I'm just going from what they told me.

12  Q.   Okay.  Did they tell you they weren't set up correctly?

13  A.   They just told me that it was -- that you set them up for

14  them and they paid you -- paid Bondage Breakers Ministries a

15  monthly fee to help maintain the trusts.

16  Q.   Did you ever ask to see a copy of those trusts to see what

17  I allegedly set up?

18  A.   I think at one time I did ask, and the records may have

19  been involved in their own trial, and I don't think I ever

20  specifically looked at them.

21  Q.   You mentioned PenaltyProtestor.com and .org.  Did you ever

22  find any documents on PenaltyProtestor.com or .org that were

23  not already public documents in other places, such as court web

24  sites or government web sites in general?

25  A.   I don't believe so.  Almost all the documents there were

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

184

BRIAN SHERN - CROSS BY MR. SPRINGER                              94

 1  either tax forms or documents of trial proceedings or court

 2  orders or motions.

 3  Q.   So you don't find anything wrong with putting publicly

 4  displayed documents on a Web site, do you?

 5  A.   No.

 6  Q.   Okay.  Do you remember the testimony of Mr. Burt,

 7  Mr. Turner, and Mr. Stumpo?

 8  A.   Yes.

 9  Q.   Relevant to the conference calls with IFC?

10  A.   Yes.

11  Q.   Do you remember what each one of them told the jury I told

12  everybody on that conference call to do?

13  A.   I think some of them testified that you told them to file

14  their tax returns.

15  Q.   And that IFC had misled them; do you remember that

16  testimony?

17  A.   Yes.

18  Q.   Did you ever interview anybody who attended the IFC

19  conference calls where I advocated to them stay their course,

20  violate the Internal Revenue laws, and continue to use the

21  trust that IFC had set up for them?

22  A.   No.

23  Q.   Thank you.

24       I believe you mentioned a Mr. Todd Guthrie; do you

25  remember that name?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

185

BRIAN SHERN - CROSS BY MR. SPRINGER                                    95

```
 1   A.   Yes.
 2   Q.   And there are checks that you've listed that -- where he
 3   gave either me or Bondage Breakers Ministry name money; is that
 4   correct?
 5   A.   I believe so, yes.
 6   Q.   Do you know how many hours I worked for him?
 7   A.   No.
 8   Q.   Just to clarify on Dr. Roberts, for the purposes of the
 9   two-point increase for counseling somebody to violate the
10   Internal Revenue laws, do you remember what year Dr. Roberts
11   was required to file a tax return and he didn't file a tax
12   return as a result of what you claim I told him?
13   A.   No, I don't.  He just said that you told him.
14   Q.   And isn't it true, after June of 2000, after he was
15   convicted, eventually he went to jail, right?
16   A.   Yes.
17   Q.   Right.  And the 2000 return wouldn't have been due until
18   at least, under most people's understanding, April 15th of
19   2001; isn't that right?
20   A.   That's correct.
21   Q.   And if Dr. Roberts was in prison, wouldn't that make it a
22   little more difficult for him to file a tax return while he's
23   in jail?
24   A.   Possibly so.
25   Q.   Complicated tax return, not an EZ form, right?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

186

BRIAN SHERN - CROSS BY MR. SPRINGER                            96

```
 1   A.   Yes.
 2   Q.   And do you know, after he got out of jail, who worked with
 3   Dr. Roberts to get all his tax returns prepared and caught up
 4   and current?
 5   A.   No, I don't.
 6   Q.   You don't know whether it's Brian Miller or not?
 7   A.   I know Mr. Miller had some subsequent contact with
 8   Mr. Roberts, but I'm not sure if he's the one that counseled
 9   him on how to file his tax returns and pay over what he owed.
10           MR. SPRINGER:  Your Honor, may I have just one
11   moment?
12           THE COURT:  You may.
13   Q.   (BY MR. SPRINGER)  Would you please turn to Government's
14   Exhibit 1160, please.
15   A.   Okay.
16   Q.   My understanding of 1160 is the little asterisks by the
17   exhibit column means that the income item was included in
18   Lindsey Springer's tax loss computations presented at trial; is
19   that true?
20   A.   Yes.
21   Q.   Does that mean that the very first check at the top,
22   Number 3, was not listed for $5,000 from Believers Broadcast
23   Corporation?
24   A.   Yes, that amount was not charged as income to you during
25   trial.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

187

BRIAN SHERN - CROSS BY MR. SPRINGER                    97

1   Q.   And why not?

2   A.   I think, towards the end of trial prep, we decided just

3   not to include him as one of our witnesses.

4   Q.   Okay.  And if you would look at the last entry on 1160, it

5   says -- turn to 1157, of course, but it says "cash N/A Various

6   Lindsey Springer, 12,000"?

7   A.   Yes.

8   Q.   Do you remember why that appears on this chart?

9   A.   Yes.  When Mr. Miller was finishing his computations up

10  based on the testimony that he heard at trial, I believe that's

11  the amount that you testified that you received in cash in the

12  mail each particular year and so he charged that amount to

13  you.

14  Q.   Is there any evidence that I did anything for any of those

15  people who gave that $12,000 whatsoever?

16  A.   I think if you take your conduct as a whole throughout the

17  course of this trial, an assumption could be made.  There's no

18  physical evidence linking any of this $12,000 to something that

19  you did, but I think an inference can be made it's probably

20  something you did for somebody, some legal service or advice

21  that you gave to somebody.

22  Q.   Isn't that totally based upon my testimony on the witness

23  stand, that $12,000?

24  A.   Yes.

25  Q.   Did I ever say that I did anything for any of the people

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

188

BRIAN SHERN - CROSS BY MR. SPRINGER                    98

1    who that amount of money I was just guessing about came from?

2    A.    No.

3    Q.    Will you turn to Government's Exhibit Number 1161,

4    please.

5    A.    Okay.

6    Q.    And the asterisks here also says, at the bottom or in the

7    middle of the page, "income item was included in Lindsey

8    Springer tax loss computations presented at trial," but you

9    didn't present any charges for 2001 at trial, did you?

10          MR. O'REILLY:  Objection.  Relevance to argumentative

11   question.  It simply -- this shows what was presented at trial

12   versus what was not presented as evidence at trial.

13          THE COURT:  Well, as I understand the pending

14   question, he is -- he is challenging that assumption, so I'm

15   going to overrule -- the relevance is marginal, but I'm going

16   to overrule the objection.

17          THE WITNESS:  What was the question again,

18   Mr. Springer?

19   Q.    (BY MR. SPRINGER)  Even though Exhibit 1161 says "income

20   item was included in Lindsey Springer's tax loss computations

21   presented at trial," there was no tax computations for the year

22   2001 presented at trial because there was no charge for 2001;

23   isn't that true?

24   A.    No, that's not entirely true, because Mr. Miller did

25   present the income that we charged you -- or not charged you,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

189

BRIAN SHERN - CROSS BY MR. SPRINGER                              99

1   but presented at trial for 2001, and I believe he explained why

2   we were not charging that year, but the amounts with the

3   asterisk on them were amounts that were presented at trial, but

4   that doesn't necessarily mean we charge you with any crime for

5   2001.

6   Q.   Right.  The actual asterisk here says "Lindsey Springer's

7   tax loss computations at trial"?

8   A.   Yes.

9   Q.   And you didn't present any tax loss computations at trial

10  for 2001, did you?

11       MR. O'REILLY:  Your Honor, objection.  Government's

12  Exhibit 676 was presented at trial, it is from the year 2001,

13  and it has those items.

14       THE COURT:  Let me take a look at it.  Hold on.  Do I

15  have that in these notebooks?  It doesn't look like it.

16       MR. O'REILLY:  You should, Your Honor.

17       THE COURT:  Never mind, I've got it.

18  Sustained.  Next question.

19  Q.   (BY MR. SPRINGER)  If you would turn to 1162, please.  On

20  the first entry, 1003, Midsummer to Sam Palmer for $10,000 --

21  do you see that entry on 1162?

22  A.   Yes.

23  Q.   Do you know what I did for Sam Palmer?

24  A.   Whenever I talked to Mr. Palmer, he indicated that he just

25  gave you money.  He didn't say you did anything for him.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

190

BRIAN SHERN - CROSS BY MR. SPRINGER                              100

1   Q.   And if you would go back to 1161, is that the same

2   testimony that he gave with reference to the second to the last

3   item, Number 1002 from Mr. Palmer, again on 1161, it's the

4   second to the last item, from Okemah National Bank, 10,000?

5   A.   Yes.

6   Q.   The fourth item on 1162 from Windhill Management Company

7   Trust for $400, do you know of anything that I did for Windhill

8   Management Company Trust?

9   A.   No.

10  Q.   And then, again, the last entry on 1162, which is number

11  1157, the cash for 12,000, that's the same testimony you gave

12  on the last exhibit about the 12,000.  In fact, wouldn't that

13  be the same for every year, the 12,000 is the exact same

14  source, me, on that witness stand?

15  A.   Yes.

16  Q.   All right.  If you'll turn to 1163, please.  And it's

17  listed -- Exhibit Number 29.  It's in the middle of the page

18  and it's to Guy Francis, if you draw a line across, if that

19  helps, and it send ends up being $3,750.  Do you know anything

20  I did for Guy Francis?

21  A.   Yes.

22  Q.   What did I do?

23  A.   He said that you assisted him with -- I remember from

24  talking to him, he said that you assisted him with matters

25  related to his -- I think it was involvement with IFC.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

191

BRIAN SHERN - CROSS BY MR. SPRINGER                    101

1  Q.   Did he tell you that I convinced him to go back and file

2  his tax returns?

3  A.   No, he didn't.

4  Q.   But you say it had something to do with IFC?

5  A.   I think so, without looking specifically at --

6  Q.   You just don't know?

7  A.   My memorandum of interview, I don't -- yes, I don't know.

8  Q.   The next entry just below that, which is Exhibit Number

9  30, and it's CR Foundation, Larry Simmons, for $7,500?

10 A.   Yes.

11 Q.   Do you know anything that I did for that money?

12 A.   Yes.  He testified in the grand jury.  I think he

13 testified that he gave you a donation, but we know that he was

14 under criminal investigation as well and he was also involved

15 with IFC, so we don't know specifically what you did for him,

16 but we know that he paid you and that he was involved in IFC.

17 Q.   Have you subsequently found out that he's filed all of his

18 back tax returns?

19 A.   No.

20 Q.   Did you look to see whether Mr. Frances had filed all of

21 his back tax returns?

22 A.   I believe we looked during the trial, but I can't remember

23 whether he had filed or not.

24 Q.   But you do remember I was telling people that -- three

25 people at least at this trial, back in November, testified that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

192

BRIAN SHERN - CROSS BY MR. SPRINGER                                    102

1   on those conference calls I was telling everybody to go file

2   their tax returns?

3   A.   Yes, that's correct.

4   Q.   So whether they gave me any money or not, if they went

5   back and filed their tax returns because I told them to do that

6   on the phone, that doesn't change whether they gave me a

7   donation or not, does it?

8   A.   I think the issue here is not whether or not you advised

9   these people, particularly, to file a tax return or not file

10  their tax return, the issue is whether they paid you money and

11  whether it was money for services or money for promoting your

12  cause, but the reason we added these people into these

13  calculations is because they had either problems with the IRS

14  as far as criminal investigations or they've been caught up in

15  IFC and you had some kind of interaction with them and helped

16  and they paid you for it.

17  Q.   They testified before the grand jury, did they not?

18  A.   Mr. Frances -- or, I mean, Mr. Simmons did.

19  Q.   And if I had performed anything in the same level that you

20  presented at trial, wouldn't you know that?

21  A.   Not if they withheld that information from me or from the

22  grand jury.  But based on the fact that they didn't meet you

23  until their troubles with IFC came and all the sudden they're

24  paying you for something.

25  Q.   Couldn't be they just wanted to support me?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

193

BRIAN SHERN - CROSS BY MR. SPRINGER                          103

1  A.    I mean, if it was like a United Way or something, they'd

2  just send the money and they wouldn't have any contact.

3  Q.    What about the judge's instruction about disinterested?

4  Didn't have any expectation?

5            MR. O'REILLY:  Your Honor, objection.  This is

6  argument and it would be appropriate at that time.

7            THE COURT:  Sustained.

8  Q.    (BY MR. SPRINGER)  Third to the last item with a number is

9  1004 -- Exhibit 1004, on Exhibit Number 1163, foreign currency

10 draft from Fabulous Limited and it says "Brian DeMercuiro

11 $3,632"?

12 A.    Yes.

13 Q.    Do you know anything that I did for Brian DeMercuiro?

14 A.    Yes.

15 Q.    What did I do?

16 A.    He participated numerous times on your conference calls

17 and you actually had one-on-one conversations with him about

18 the situation with IFC and what he was supposed to do.  And you

19 actually helped him -- he had that $3,600 tied up in some

20 foreign business unit, I think, overseas -- was tied up in an

21 overseas corporation and he said that you actually helped him

22 retrieve that money and then he paid it to you, basically.

23 Q.    So I helped him get this money and then he gave it to me

24 for helping him get it?

25 A.    I think he gave it to you for helping him get the money,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

194

BRIAN SHERN - CROSS BY MR. SPRINGER                                      104

 1  but more -- I think more so you helped him with his situation

 2  that he was facing with IFC, because a lot of the people that

 3  were involved with IFC had issues, tax problems, that they were

 4  trying to overcome, and I think you used that as an opportunity

 5  to switch your -- I guess what I'm trying to say is people like

 6  Barbara Hodsden and Brian DeMercuiro that were good people that

 7  were caught up in this scam were looking for a person that

 8  would help set them straight, which they got that out of you.

 9       People like Mr. Patterson, Mr. Robertson, and Mr. Lake,

10  they were looking for somebody to tell them what they believed

11  and they -- so what those people, you told them, yeah, you're

12  right in your belief that you don't have to file a tax return,

13  but then you changed your tune when you were helping these

14  other people.  Basically, what I believe is that you told the

15  people what they wanted to hear to get the money from them.

16  Q.   Is it possible that I just didn't want to tell them what

17  they should believe, that that wasn't my call?

18  A.   I think your motive was solely financial.

19  Q.   Is the negative 30,000 at the bottom the Tulsa Sales and

20  Rental check that was given back to Eddy Patterson; is that

21  what that is?

22  A.   Yes.

23  Q.   Okay.  What about the 5,000 in cash that he received,

24  where is it indicated?

25  A.   I'm not sure -- the 5,000 in cash.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

195

BRIAN SHERN - CROSS BY MR. SPRINGER                                    105

1   Q.   Remember that came from a $35,000 check?

2   A.   Mr. Patterson told the IRS in an interview that he just

3   paid 30,000 back to you.  I know there was a check to you for

4   35,000, but I don't know about the 5,000 cash.

5   Q.   Isn't the 30,000 actually from the bank to Mr. Patterson's

6   Tulsa Sales and Rental, not back to me?

7   A.   We deducted the $30,000 because he told us in an interview

8   that Mr. Stilley wrote you a check for 35,000, and 30,000 of

9   that was to go back to him.

10  Q.   Which was the cashier's check to Tulsa Sales and Rental,

11  correct, that I provided to you on January 15, 2009, or

12  thereabouts?

13  A.   Yes, I think so.

14  Q.   And then wasn't it my testimony -- unrebutted testimony

15  that -- and Mr. Patterson's too, that I also gave him cash that

16  day, that same day?

17  A.   I don't remember if Mr. Patterson testified to that or

18  not.

19  Q.   You have no evidence to doubt it, though, do you?

20  A.   No.

21  Q.   If you would turn to 1164, please.  The third entry,

22  Exhibit Number 39, is another check from Larry Simmons for

23  $10,000.  Do you see that?

24  A.   Yes.

25  Q.   Okay.  Is it your same testimony that whatever I did with

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

196

BRIAN SHERN - CROSS BY MR. SPRINGER                    106

1   him for the first check, I did the same thing for him with the

2   second check?

3   A.   Yes.

4   Q.   So if I did nothing for him on the first check, I did

5   nothing for him on the second check, right?

6   A.   I don't think -- that's not my belief.

7        MR. SPRINGER:  That's all right.  Strike that, Your

8   Honor, I'm sorry.

9   Q.   (BY MR. SPRINGER)  The second to the last is Number 45.

10  Do you see that exhibit?

11  A.   Yes.

12  Q.   From Charles Looney for $10,500?

13  A.   Yes.

14  Q.   Okay.  And that was not part of your -- the trial, but

15  it's part of this tax loss computation now.  What is it that I

16  did for Charles Looney for $10,500?

17  A.   Mr. Looney's words to me were that you were the sole

18  reason that he only got charged with a misdemeanor versus a

19  felony in his criminal case.

20  Q.   But did I do anything for Mr. Looney?

21  A.   Yes, he said you helped provide his attorneys with

22  assistance.

23  Q.   Who were his attorneys?  Do you know?

24  A.   I don't remember, offhand.

25  Q.   Isn't it true that Mr. Looney was convicted of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

197

BRIAN SHERN - CROSS BY MR. SPRINGER                    107

 1  misdemeanors in his case?

 2  A.   Yes.

 3  Q.   And isn't it true --

 4          MR. O'REILLY:  Objection, Your Honor.  Just for

 5  clarification, Mr. Looney was not part of this case.

 6          THE COURT:  In his case, right.

 7          MR. SPRINGER:  I'm sorry.  I'm sorry.  I'm sorry.

 8  Q.   (BY MR. SPRINGER)  Isn't it true that the check Mr. Looney

 9  wrote to me is after his trial and his conviction?

10  A.   I don't know.

11  Q.   Would that be relevant to determine whether or not I did

12  anything for $10,500?

13  A.   In some cases, the timing of the payments would be

14  relevant so it would be one factor to look at, yes.

15  Q.   So if he had already gone through trial and then he met

16  me, how could I be the sole reason why he was found not

17  guilty?

18          MR. O'REILLY:  Objection.  Assumes facts not in

19  evidence.

20          THE COURT:  Sustained.

21  Q.   (BY MR. SPRINGER)  If you would turn to 1165, please.  Is

22  it your testimony that whatever I did for Mr. Looney's

23  Friendship Enterprises on 11/14/2004 is the same thing that I

24  did for the second entry on 1165, which is Exhibit 47 for

25  $13,000?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

198

BRIAN SHERN - CROSS BY MR. SPRINGER                                108

1          MR. O'REILLY:  Objection, Your Honor, merely for

2    clarification.  It was from Miracles Unlimited, not Friendship

3    Enterprises.

4          MR. SPRINGER:  I'm sorry.  Miracles Unlimited.

5          THE WITNESS:  Just to kind of add some factors to the

6    situation about the timing of payments --

7    Q.  (BY MR. SPRINGER)  Yeah.

8    A.    -- oftentimes, Mr. Roberts and Mr. Ouwenga, specifically

9    talked about how after their conviction you would tell them how

10   the court was wrong and you would continue filing things and

11   helping them post-conviction and you often got money from

12   people afterwards, so really -- I mean, the conviction date is

13   not as relevant as something you could -- you could have been

14   helping them afterwards.  I don't know specifically how you

15   helped them.

16   Q.  You don't know how many hours I worked for Mr. Looney,

17   right?

18   A.    No.

19   Q.  And then the fifth entry down is check number -- excuse

20   me -- Exhibit Number 1005 from AC&R Group?

21   A.    Yes.

22   Q.  Do you know who that is?

23   A.    No.  This was the check that I talked about that I wasn't

24   for certain who it was.  It just went through your -- it was

25   cashed at Checks Cashed.  I can't remember if it's the Phillips

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

199

BRIAN SHERN - CROSS BY MR. SPRINGER                              109

```
 1  or not.  I'm not sure.
 2  Q.   Okay.  So you don't know if I did anything for AC&R
 3  Group?
 4  A.   No.
 5  Q.   And, again, your same answers on the last entry, on 1165,
 6  under $12,000?
 7  A.   Yeah, about the -- your testimony.
 8  Q.   If you would turn to 1166, please.  There's nothing on
 9  1166 that was ever presented at trial, correct?
10  A.   There were things that we talked about during the trial, I
11  think, for certain witnesses, but none of this was presented as
12  income because we didn't charge 2006.
13  Q.   So just on the first line there -- we're just going to go
14  down quickly -- do you know anything I did for Patrick and
15  Patricia Turner for $1,000 on December 30, 2005, or
16  thereabouts?
17  A.   I know you helped Patrick Turner with his criminal
18  investigation.
19  Q.   But that was back in 2003, right?
20  A.   I don't know that you --
21       MR. O'REILLY:  Objection, Your Honor.  Actually
22  misstates the evidence at trial.  Mr. Turner testified he was
23  still concerned into 2005, which is in part why he transferred
24  $250,000 to hide from the IRS into that --
25       MR. SPRINGER:  If I can object, he just misstated the
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

200

BRIAN SHERN - CROSS BY MR. SPRINGER                          110

 1  evidence, but on this particular instance, I'm only talking

 2  about $1,000 on Exhibit Number 1166.

 3          THE COURT:  And your question is what?

 4          MR. SPRINGER:  What evidence does he have that I did

 5  anything for that $1,000 check from Mr. Turner on December 30,

 6  2005, which was after he was told he was no longer under

 7  criminal investigation.

 8          THE COURT:  Go ahead.

 9          THE WITNESS:  I believe Mr. Turner thinks that you're

10  the sole reason why he didn't get indicted, so I think this

11  money probably was money that he gave to you because he thinks

12  that you got him off, per se.

13  Q.  (BY MR. SPRINGER)  So in your testimony, then, he's paying

14  me just endlessly because he thinks I got him off of a criminal

15  charge?

16  A.  That's a possibility or I know that your alleged loan that

17  you had with him, you were having to pay him thousand-dollar

18  payments so this -- I mean, it could be an attempt that you're

19  paying him money trying to disguise it as loan payments and

20  then him paying you back $1,000.  I'm not sure.

21      I wouldn't say, to answer your question, that there's no

22  evidence that you did anything for him, because I think you

23  were actively involved in getting money out of him from the

24  time that you met him.

25  Q.  Wasn't the payments $1,400 a month?

BRIAN SHERN - CROSS BY MR. SPRINGER                          111

1   A.   I think some of them were 14 -- yeah, I think that's

2   right.

3   Q.   Yeah, 1,400, yeah.

4   A.   Never mind.

5   Q.   The next check, Herbert and Charlene Mott for $10,000.

6   Can you tell me what I did for Herbert and Charlene Mott for

7   10,000?  And then I'll ask the next question.

8   A.   Herbert and Charlene Mott were clients of Mr. Patridge.

9   Mr. Patridge was an insurance agent.  And he faced criminal

10  charges and you -- he said he constantly talked to you and

11  bounced ideas off of you about his criminal case and you did a

12  lot of research for him.

13       Well, he -- instead of paying you directly, he told some

14  of his clients, his insurance clients, to pay you and write

15  "gift" on the check for $10,000, to pay you basically for the

16  help that you were providing to him.

17  Q.   Did Mr. Patridge also testify I never asked him for any

18  money?

19  A.   Yes, I believe he did testify to that.

20  Q.   So then if that was true, then this $10,000 was strictly

21  Mr. Patridge's doing, wasn't it?

22  A.   If that were true, yes.

23  Q.   You believe he lied?

24  A.   Yes.

25       MR. O'REILLY:  Your Honor, objection.  Mr. Patridge

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

202

BRIAN SHERN - CROSS BY MR. SPRINGER                              112

 1   did not cash a check.

 2          THE COURT:  I don't remember what that evidence was.

 3   Q.  (BY MR. SPRINGER)  Exhibit Number 50, the third line down

 4   for 5,000 from Mr. Patridge a month and a half later.  Do you

 5   know how many hours I worked for Mr. Patridge?

 6   A.   No.

 7   Q.   The fourth line down, Beach Fire Corporation, Larry

 8   Logsdon.  Do you see that one?

 9   A.   Yes.

10   Q.   For 20,000?

11   A.   Yes.

12   Q.   Do you know how many hours I worked for Mr. Logsdon?

13   A.   No.

14   Q.   Mr. Logsdon testified before the grand jury, didn't he?

15   A.   Yes.

16   Q.   And he testified at trial, didn't he?

17   A.   Yes.

18   Q.   And what did he tell you that I did for him in exchange

19   for this $20,000?

20   A.   I believe he said you were -- you helped him with his

21   matters before the IRS.  I know he had some civil issues with

22   the IRS.  If I remember right, he said that you -- he utilized

23   you as a researcher.  I can't be for certain.

24   Q.   You don't know what I did for Mr. Logsdon, do you?

25   A.   I don't know exactly what you did, no.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

203

BRIAN SHERN - CROSS BY MR. SPRINGER                                    113

1   Q.   Okay.  And the next check for 20,000 from Believers

2   Broadcast Corporation, Ken Geisendorffer, do you know what I

3   did for that $20,000?

4   A.   Mr. Geisendorffer, when we talked to him --

5   Q.   Mr. Geisendorffer -- I'm sorry, is that Ken Geisendorffer?

6   A.   Yes.  Ken Geisendorffer, his father, according to

7   Mr. Geisendorffer, what he told us, was his father was actively

8   involved in going to some of your seminars and he had an issue

9   where he owned a hotel where he employed transient workers,

10  basically, and he got into an issue with employment taxes with

11  the IRS, and he used to pay you for your assistance in this IRS

12  matter.

13       And when he talked to Mr. Ken Geisendorffer, he told us

14  that you do good work and that's why he paid you.  And then he

15  also said that he was just now settling the issue that he had

16  with the IRS that you were helping him with.

17  Q.   So the statement you made before you said what Ken told

18  you, who told you that?  The one right before you said "and

19  what Mr. Ken Geisendorffer told me."

20  A.   We never talked to Ken's father, the elder Geisendorffer,

21  we just talked to Ken Geisendorffer.

22  Q.   Okay.  So you wouldn't know anything that I would have

23  done for his father because he had a stroke, right?

24  A.   Other than what Ken Geisendorffer told us that you did.

25  Q.   Right.  And did Ken say that he knew in 2006 why his

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

204

BRIAN SHERN - CROSS BY MR. SPRINGER                              114

```
 1  father would give me money like that?
 2  A.   I don't think this was from his father; this was from Ken
 3  Geisendorffer.
 4  Q.   Did he make you aware that they owned a television
 5  station?
 6  A.   Yes.
 7  Q.   And that they put me on their television station quite
 8  frequently?
 9  A.   I think I reviewed it -- a VHS tape of one of the
10  presentations that you made on his television station.
11  Q.   And also they put me on the radio, didn't they?
12  A.   I'm not sure.  Probably.
13  Q.   Okay.  Do you know who Le Roy Peaslee is for $250?
14  A.   We never talked to Mr. Peaslee.
15  Q.   Okay.  And then, of course, I presume everything you say
16  about Mr. Patridge is just an ongoing -- you don't know how
17  many hours I worked for him, you don't know what I did, but I
18  did something for him; is that a basic summary?
19  A.   We know a little bit of what you did.  Like I said, he
20  said that you -- he utilized your services as a legal
21  researcher and talked about his case a lot, but other than
22  that, no, we don't know what you did for him.
23  Q.   And the next $5,000 entry from Larry Logsdon, Beach Fire
24  Corporation, same testimony there, don't know what I did for
25  Larry Logsdon other than what he said at trial?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

205

BRIAN SHERN - CROSS BY MR. SPRINGER 115

1 A. Yes.

2 Q. Okay. And then Check Number 1 -- Exhibit Number 135 from

3 Hamlet Bennett for $25,000, do you know of anything I did for

4 Hamlet Bennett for $25,000?

5 A. When we talked to Mr. Bennett, the first time we talked to

6 him was right before trial, right before he was to testify at

7 trial, and he said that he paid you and Mr. Stilley for legal

8 services.

9 Q. Now, he came into this courtroom and he went under oath,

10 didn't he?

11 A. Yes.

12 Q. He didn't say that when he was here under oath, did he?

13 A. I think my recollection is that he did say that, but I'm

14 not positive.

15 Q. He actually said he gave that as a gift, if you remember

16 correctly?

17 A. I think he may have testified that you told him to say it

18 was a gift.

19 Q. Oh, right. Have you reviewed his transcript before you

20 testified here today?

21 A. No, I haven't.

22 Q. And as far as you know, did he ever present to you

23 anything that I did for him?

24 A. Like I said, when we talked to him, he said that you

25 helped him with his trial, because I think there was --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

206

BRIAN SHERN - CROSS BY MR. SPRINGER                116

1   Q.   I helped him with his trial; is that what you just said?

2   A.   Yeah, I think you -- when he talked with us, he said that

3   he initially hired Mr. Stilley.  I believe he talked to you and

4   you helped him get in touch with Mr. Stilley.  And then

5   Mr. Stilley wasn't able to represent him in Hawaii because of

6   his troubles in the Bar in Arkansas, and so you then introduced

7   him to Mr. Richey.

8        And Mr. Stilley, even though he didn't represent him, kept

9   some of the money, like $75,000 or $50,000, that Mr. Bennett

10  paid Mr. Stilley, and then transferred some more money to you

11  and Mr. Richey.  And I think Mr. Richey ended up representing

12  him in trial.

13  Q.   So if the -- if Mr. Gollihare in his report said that

14  Mr. Bennett contacted Mr. Stilley first and then I wasn't the

15  one who introduced him, then would you be agreeing or

16  disagreeing with that?

17  A.   Without refreshing my memory with the transcript, I

18  couldn't say for sure whether he contacted Mr. Stilley first or

19  contacted you first.

20  Q.   So you don't know?

21  A.   No.

22  Q.   Do you trust Mr. Gollihare, if he did know?

23           MR. O'REILLY:  Objection, whether or not --

24           THE COURT:  Sustained.  We're not going to have any

25  debate back and forth about the reasoning processes -- by way

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

207

BRIAN SHERN - CROSS BY MR. SPRINGER                    117

1    of testimony, at least, about the reasoning processes of the

2    probation office.

3             MR. SPRINGER:  Okay.

4    Q.  (BY MR. SPRINGER)  The next entry, Hamlet Bennett, 45,000,

5    do you remember where that came from?

6    A.  Yes, it came from Mr. Bennett.

7    Q.  Directly?

8    A.  It came from Mr. Bennett's American Savings Bank account.

9    I think it was a cashier's check or an official check.

10   "Cashier's check" is what it says.

11   Q.  And the same testimony is he gave me 45,000, said I helped

12   him, but don't know what I did?

13   A.  Yes, you helped him with his case.

14   Q.  Helped him with his case.

15        The next one, from Sam Palmer for $500, Mr. Palmer -- did

16   he tell you that was a gift?

17   A.  I think he said all the money that he gave you was gift or

18   donations.

19   Q.  Same thing with Mr. Guthrie at $500?

20   A.  We never talked to Mr. Guthrie.

21   Q.  Okay.  The next entries are Creation Science Evangelism

22   Ministries, Inc.

23             MR. O'REILLY:  It does not say "Inc." on the check.

24   I think that's a misrepresentation.

25             THE COURT:  Rephrase it, please.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

208

BRIAN SHERN - CROSS BY MR. SPRINGER                    118

1    Q.   (BY MR. SPRINGER)   Creation Science Evangelism Ministries,

2    Kent Hovind, for $10,000.  Have you talked to Mr. Hovind?

3    A.   No, I haven't talked to Mr. Hovind, but we did obtain jail

4    tapes from conversations that you and Mr. Hovind and

5    Mr. Hovind's wife had.

6    Q.   And did those tapes reflect that he was paying me for a

7    service?

8    A.   No.

9    Q.   The next one is $5,000 from American Savings Bank, Hamlet

10   Bennett, same testimony as the other two checks, just I helped

11   him, that was it, no hours, no nothing else?

12   A.   Correct.

13   Q.   Okay.  Regents Bank is the next entry from Kent Hovind,

14   10,000, the same testimony that you just gave a minute ago,

15   about listening to the tapes and --

16   A.   Yes.

17   Q.   And then Todd Guthrie, same person, didn't talk to, as you

18   said just a moment ago, on the other 500; is that right?

19   A.   Correct.

20   Q.   Okay.  And then Patrick and Patricia Turner, $900, which

21   is the third to the last entry on 1166, did you ask Mr. Turner

22   what that was for?

23   A.   Specifically the $900, no, I don't believe I did.

24   Q.   And just to be clear about this, you never asked him what

25   the thousand dollars was for on the top of 1166 either, right?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

209

Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 210

BRIAN SHERN - CROSS BY MR. SPRINGER                           119

 1  A.   I think it may have came up in his grand jury testimony

 2  and he said it was just -- he said that he donated to a lot of

 3  charities and things and this was just another one of his

 4  donations.

 5  Q.   Is that true?  Does he donate to a lot of charities?

 6  A.   Yes.

 7  Q.   And then Dale and Cheryl Phillips, $7,500.  Did you talk

 8  to them?

 9  A.   No.  I believe we added them in because we -- they may

10  have been one of the cases that you had on your Web site, but

11  I'm not 100 percent sure.

12  Q.   Yeah.  As far as you know, you don't know anything I did

13  for the Phillips, no hours, no nothing?

14  A.   No.

15  Q.   Okay.  And then the various answer again is the same on

16  the last of each entry, the $12,000 came directly from my

17  testimony, correct?

18  A.   Yes.

19  Q.   All right.  If you'll turn to 1167, please, and we'll just

20  clean this up and be done.  Two more.  None of these entries

21  were presented as evidence at trial, correct?

22  A.   No, because 2007 -- that wasn't one of the years we

23  charged.

24  Q.   Now, the --

25          MR. O'REILLY:  Objection, Your Honor.  Just

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

210

BRIAN SHERN - CROSS BY MR. SPRINGER                                      120

```
 1  clarification, Exhibit 58 was referenced during the trial, it
 2  was not included as part of the tax computations at trial.
 3           THE COURT:  So 58 was -- was 58 received at trial?
 4           MR. O'REILLY:  I believe it was part of a different
 5  exhibit at that point, Exhibit 61, which was a whole collection
 6  of checks.  As the Court may recall, I was asking Mr. Turner
 7  about being repaid and I went through a series of checks.  This
 8  is the last one I referenced.
 9           THE COURT:  Proceed.
10           MR. SPRINGER:  Thank you, Your Honor.
11  Q.   (BY MR. SPRINGER)  Exhibit Number 58, which is from
12  Believers Broadcast Corporation for $100,000, did you ask
13  Mr. Geisendorffer why he gave me that check?
14  A.   Yes.
15  Q.   What did he say?
16  A.   He said because you do good work.
17  Q.   I do good work.  Did he tell you what I did for it?
18  A.   No.  Other than the fact that he said he had an IRS matter
19  that you helped him with.
20  Q.   Are you sure it wasn't his dad's IRS matter?
21  A.   From talking to him, I was under the impression that it
22  was related to that hotel, but I'm not sure.
23  Q.   And it was a state issue with not charging sales tax,
24  correct?  That refresh your memory?
25  A.   I thought it was something with employment taxes, but I
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

211

BRIAN SHERN - CROSS BY MR. SPRINGER                                        121

 1  could be wrong.

 2  Q.   Yeah, sales tax.  But did he ever say he gave the 100,000

 3  to me because of something that I did for him?

 4  A.   He just said he gave it to you because you do good work.

 5  Q.   Okay.  Could be construed as helping a lot of people,

 6  right, "good work"?

 7  A.   It could -- yes, it could be.

 8  Q.   Patrick Turner, the $400, second entry on Exhibit 1167 for

 9  $400, did you ever ask Mr. Turner what that was for?

10  A.   Not that specific amount, no.

11  Q.   Then Exhibit Number 59 and 60, which are two checks from

12  Town & Country Bank to Lindsey Springer for $20,000, do you

13  know what those were for?

14  A.   It would be -- my testimony would be the same as with the

15  hundred-thousand above that.

16  Q.   It was the same as the hundred-thousand, okay?

17  A.   Yes.

18  Q.   Got you.

19       And then, again, the Patrick Turner, 400, 100, and 500,

20  same testimony on those?

21  A.   Yes.

22  Q.   Mr. Turner would say it was a gift.  And you didn't ask

23  him if I did anything to receive these 400, 100, and $500.

24       And then the same testimony would be the same on the

25  12,000?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

212

1   A.    Yes.

2   Q.    Okay.  Am I missing 2008?  You didn't go to 2008.

3         MR. SPRINGER:  Your Honor, may I ask the government a

4   question?

5       (DISCUSSION OFF RECORD)

6         MR. SPRINGER:  No further questions of this witness,

7   Your Honor.

8         THE COURT:  Very well.

9       Before Mr. Stilley cross-examines, I'd like to get --

10  touch one matter by way of clarification.  I'm going to refer

11  to the tax loss chart that was included in the government's

12  trial brief -- or not your trial brief, but government's

13  sentencing memorandum -- showing a federal income tax loss with

14  respect to Mr. Springer -- this is on page 10 -- a little over

15  $413,000.

16      Now, let me -- I'll assure the government that you're not

17  necessarily bound by the revenues that you encompassed by the

18  numbers in your sentencing memorandum, and if you've got

19  exhibits that pick up additional or different items, why,

20  that's permissible.  But, anyway, working from that $413,000

21  number, does that number include any of these $12,000 annual

22  items by way of these small payments that are plugged in on

23  these individual sheets?

24        MR. O'REILLY:  Yes, Your Honor.

25        THE COURT:  The reason I ask is, without deciding

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

213

Case 4:09-cr-00043-SPF   Document 399   Filed 07/12/10   Page 123 of 210
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 214

123

1    anything one way or the other, I'm a little -- and I realized
2    as to some years, those $12,000 numbers were also included at
3    trial in the evidence at trial.  I'm -- again, without deciding
4    anything, I'm a little troubled by that in the sense that
5    Mr. Springer did have followers, he did solicit donations
6    and -- for individuals like Mr. Springer in this part of the
7    country, loosely speaking, we're in the land of the small
8    donation, it just comes in when somebody persuades somebody to
9    make a donation.  And so I'm a little concerned about assuming
10   that every dime of those $12,000 that are plugged in each year
11   would be reportable income.  Obviously, not all the evidence is
12   in, and both parties are certainly entitled to have a full say
13   on that score, but I just wanted some clarification as to
14   whether that -- those $12,000 items were also already included
15   in the 400,000 that is -- that shows up on page 10 of your
16   sentencing memorandum.
17            MR. O'REILLY:  Yes, Your Honor.  Just for
18   clarification, our theory is that Mr. Springer ran a business
19   and all the payments to that, that were not actually used for
20   ministerial purposes, basically he kept in his pocket.  First
21   of all, it's gross income, and then how he uses it would be
22   potentially deductible.  That is our theory based on the
23   Court's jury instructions at trial, also our understanding of
24   the law.  He was not a 501(c)(3) corporation.  I can cover this
25   in argument, probably, far better than now.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

214

BRIAN SHERN - CROSS BY MR. STILLEY                                    124

```
 1            THE COURT:  Well, yeah, and there's no need to get
 2   any further into it at this point.  That is -- so far as I'm
 3   concerned, that is a live issue.  And not to say that there are
 4   no other live issues, but that is a live issue.  I just wanted
 5   to get that clarification.
 6        Mr. Stilley.
 7                      CROSS-EXAMINATION
 8   BY MR. STILLEY:
 9   Q.   Mr. Shern, you realize that the government has the burden
10   of proof in this proceeding to the preponderance of the
11   evidence, correct?
12   A.   Yes.
13   Q.   And that means that you have to have some credible
14   evidence to prove all your propositions, correct?
15   A.   Yes.
16   Q.   You realize that at some points in time during
17   Mr. Springer's cross-examination, you speculated about what
18   might possibly happen for which you had no proof, correct?
19   A.   I would say that some things I said were just speculation,
20   yes.
21   Q.   During this cross-examination, I'd like to ask you about
22   facts that you have either personal knowledge or knowledge on
23   the basis of some fact that would cause it to be a usable fact
24   in this proceeding; is that fair enough?
25   A.   Yes.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

215

BRIAN SHERN - CROSS BY MR. STILLEY                                    125

1  Q.   Now, you realize that, under the tax guidelines, when the

2  sentencing guideline manual -- that if there is a more accurate

3  way to determine a tax loss, you use the more accurate method

4  of determining tax loss; is that correct?

5           MR. O'REILLY:  Objection, Your Honor.  This is

6  argument and certainly not suitable for a witness merely

7  providing factual summaries of specific discrete items of

8  income.  He has not provided a tax calculation.

9           THE COURT:  Sustained.

10  Q.   (BY MR. STILLEY)  Can you tell the Court specifically what

11  you did in order to get facts that might allow a calculation

12  more accurate than simply using a 20 percent figure?

13  A.   As I explained to Mr. Springer, the only records of

14  expenditures and expenses that we utilized were those from the

15  search warrant, and in your case, some of the credit card

16  companies that we subpoenaed.

17       We really didn't have any books or ledgers or any kind of

18  financial statements that either one of you guys prepared to

19  determine what your business expenses or anything like that

20  were.

21       So in my opinion, there wasn't adequate information to

22  make an accurate determination of what your expenses were, so

23  the 20 percent method was appropriate in this case.

24  Q.   Sounds to me like you're saying you didn't attempt to get

25  any more accurate information; is that true?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

216

BRIAN SHERN - CROSS BY MR. STILLEY                                      126

1   A.   No, that's not true.

2   Q.   Okay.  Tell us the truth about what you did to try to get

3   more accurate information.

4   A.   In relation to Mr. Springer's, he flat-out told us that he

5   didn't maintain any records, and so that was kind of a dead-end

6   with respect to his business expenses.

7        And then as far as yours, we didn't have any books or

8   records from you.  We never did a search warrant.  All we had

9   were records that we subpoenaed.

10  Q.   But, now, the question is:  What efforts did you make to

11  get more accurate information?  And if the answer to that is

12  no, just say no.

13          MR. O'REILLY:  Your Honor, objection.  That's an

14  argumentative question.

15          THE COURT:  Sustained.

16  Q.   (BY MR. STILLEY)  Well, can you then tell us what efforts

17  that you made to try to get the most accurate information

18  possible?

19  A.   Yes.

20  Q.   What was that?

21  A.   Issued subpoenas to all your bank accounts, all your

22  credit cards, talked to witnesses, put people before the grand

23  jury.  Basically, our whole investigation was a process of

24  obtaining information.

25  Q.   Now, there is different methods of getting information to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

217

BRIAN SHERN - CROSS BY MR. STILLEY                               127

1   determine tax loss, correct?

2   A.   Yes.

3   Q.   There is -- there's a method that's called the -- and it's

4   sometimes used in tax prosecutions -- it's called the "net

5   worth method," correct?

6   A.   Correct.

7   Q.   Now, if you use different methods of determining what tax

8   loss actually occurred, are all the methods reasonably accurate

9   as a general rule?

10  A.   Basically, for the purposes of trial, the only burden of

11  proof is to show that there is a tax loss, and so I would say

12  that all those methods have been used in court before, so

13  they're all acceptable methods of proof.

14  Q.   But if they're reasonably accurate, we shouldn't get

15  wildly differing amounts using different methods, correct?

16       MR. O'REILLY:  Objection.  He's, again, attacking a

17  factual witness who is merely presenting discrete items of

18  income.  He has not testified about the tax loss computations,

19  nor do we anticipate having Special Agent Shern testify about

20  that.  But Agent Miller will be testifying about the tax loss

21  computations.

22       THE COURT:  Sustained.  Mr. Stilley, if you've got

23  specific items to address, this is the time to do that, but

24  general debates about the direct versus indirect method and

25  things like that are not helpful.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

218

BRIAN SHERN - CROSS BY MR. STILLEY                    128

1              MR. STILLEY:  Sure.

2              THE COURT:  We'll have the next question.

3              MR. STILLEY:  Thank you, Judge.

4    Q.   (BY MR. STILLEY)  Now, you did come out to Oscar Stilley's

5    house, correct?

6    A.   Yes.

7    Q.   And it's a fairly inexpensive house, correct?

8    A.   Correct.

9    Q.   Did you see the automobiles nearby?

10   A.   Yes.

11   Q.   They were pretty plain automobiles?

12   A.   Yeah, I think one was an older-model Lexus and then I

13   don't recall what the other ones were.

14   Q.   There was a 1982 Chevrolet pickup, correct?

15   A.   I don't remember.

16   Q.   The automobiles that belonged to Oscar Stilley were very

17   old, correct?

18   A.   I think I do recall seeing some old cars out there, yes.

19   Q.   You didn't see any evidence of a flashy or extravagant

20   lifestyle on the part of Oscar Stilley, did you?

21   A.   When I went out to your house, no.

22   Q.   And you looked at other times as well to see if you could

23   get evidence of that, correct?

24   A.   Get evidence of what?

25   Q.   Living a high lifestyle, because that's part of a criminal

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

219

BRIAN SHERN - CROSS BY MR. STILLEY                                    129

1   investigation relating to tax, as a general rule, correct?

2   A.    Probably, like, disposition of proceeds and things like

3   that, yes, we do typically in our investigations look at how

4   people spend their money, yes.

5   Q.    And you looked at that in this case, correct?

6   A.    Yes.

7   Q.    So you got a pretty good handle on where Oscar Stilley's

8   money went, correct?

9   A.    Yes, I would say so.

10  Q.    So -- and that included a fairly basic lifestyle,

11  correct?

12  A.    From what I could tell, just from talking with you and

13  seeing what you spent, yeah, there wasn't a lot of flashy cars,

14  you didn't live in a big house, you didn't wear fancy clothes.

15  I mean, that's correct.

16  Q.    Would it be fair to say that the most extravagant

17  expenditure you saw in the records would have been the

18  expenditures for the adoption of kids from Russia?

19  A.    Yes, that would be accurate.

20  Q.    Now, you testified that Oscar Stilley had made a

21  misrepresentation to the Northern District of Oklahoma about

22  his right to practice in the Northern District, correct?

23  A.    Yes.

24  Q.    Are you aware that there was a serious dispute about

25  whether or not Oscar Stilley was entitled to practice when he

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

220

BRIAN SHERN - CROSS BY MR. STILLEY                              130

 1  tried to enter his appearance -- were you aware of that?

 2  A.   I just remember you tried to enter your appearance and the

 3  judge found out that you had had Bar troubles in Arkansas and

 4  you weren't allowed to -- you had said that you were able to

 5  practice law in that district and you were not, and the judge

 6  didn't allow you to represent the client there.

 7  Q.   Well, now, you say that Oscar Stilley was not entitled to

 8  practice, but you're having to actually speculate on that,

 9  correct?

10  A.   I just know --

11          MR. O'REILLY:  Objection.  The record is quite

12  clear:  He was suspended pending disbarment.  He was suspended

13  at that time.

14          THE COURT:  At what point in time are you referring,

15  Mr. Stilley?

16          MR. STILLEY:  I'm referring to the -- the point in

17  time, I believe, would have been -- oh, I think it's about

18  '07.  Don't hold me to that, but it's somewhere just a little

19  ways back like that.  It was on the Green case.

20          THE COURT:  Well, if you can't pin it down any better

21  than that, then it's not persuasive to me.  We'll go on to the

22  next question.

23  Q.   (BY MR. STILLEY)  Are you aware, then, that Oscar Stilley

24  has, at the current time, an appeal to the Tenth Circuit Court

25  of Appeals asking that his license be reinstated because --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

221

BRIAN SHERN - CROSS BY MR. STILLEY                                    131

1  legal reasons, whereby that Oscar Stilley says that he

2  continues to this day to have the legal right to practice in

3  this district?

4  A.   No, I wasn't aware of that.

5  Q.   Would that change your mind about the conclusion that

6  Oscar Stilley had tried to mislead a court?

7  A.   No.

8  Q.   You don't have any direct evidence that Oscar Stilley

9  tried to mislead a court, do you?

10 A.   All I know is what I heard about whenever you tried to

11 make an appearance and you had Bar troubles in Arkansas and you

12 weren't supposed to be practicing law outside because your

13 license was suspended.  That's basically the extent of my

14 knowledge about the whole situation.

15 Q.   Okay.  And isn't it true that one side argued one way and

16 one side argued another?

17         THE COURT:  Excuse me.  Mr. Stilley, there's nothing

18 in this line of questioning that's going to have any impact one

19 way or the other on sentencing.

20         MR. STILLEY:  Can I ask, Your Honor, for the record

21 on why there's a different reason that I'm saying that this

22 Court should not take that into account, but if the Court is

23 not going to take these matters into account, I don't want to

24 ask any questions.

25         THE COURT:  It's time to move on to the next

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

222

BRIAN SHERN - CROSS BY MR. STILLEY                                    132

1   subject.

2              MR. STILLEY:  So Hawaii is not in it either?

3              THE COURT:  I'm not concerned about those particular

4   matters for sentencing purposes.

5              MR. STILLEY:  Thank you, Judge.

6   Q.   (BY MR. STILLEY)  You previously gave testimony to certain

7   persons suggesting that perhaps Oscar Stilley had encouraged

8   others to violate the law; is that true?

9   A.   Yes.

10  Q.   What specific laws were you talking about?  And I'd like

11  to get a citation, if you can cite the law that you think is

12  involved.

13  A.   Well, in the case of Mr. Roberts, where you told him he

14  didn't have any liability to file or pay taxes, it would be --

15  26 7203, failure to file, and that would be the law.

16  Q.   Well, isn't it true that really that begs the question,

17  because 7203 simply provides the punishment if a person fails

18  to file a return that is required?

19             MR. O'REILLY:  Objection, Your Honor.  This is simply

20  argumentative and was well-covered at trial.  Mr. Stilley's

21  specious theories have been rejected appropriately by this

22  Court.

23             THE COURT:  Sustained.

24  Q.   (BY MR. STILLEY)  Now, you suggested that there was --

25  that Oscar Stilley said something to Dr. Roberts suggesting

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

223

BRIAN SHERN - CROSS BY MR. STILLEY                                    133

1   that he didn't have to pay tax?

2   A.   Yes.

3   Q.   I don't think that's true.  Can you show where you've got

4   that in your transcript?

5   A.   It's the grand jury transcript of Philip Roberts.  If you

6   have a copy of that, I can show you where he says that.

7   Q.   Okay.  Could we maybe take a look at that at a break

8   rather than take a lot of time to look right now?

9   A.   Yeah.

10  Q.   Isn't it true that Oscar Stilley didn't actually advise

11  Dr. Roberts not to file the tax return?

12          MR. O'REILLY:  Your Honor, objection to the number of

13  "nots" that were in that question.  I'm not sure exactly what

14  was asked.

15          THE COURT:  Please rephrase it.

16  Q.   (BY MR. STILLEY)  Isn't it true that the statement that

17  was allegedly made by Oscar Stilley was that he couldn't find a

18  law requiring the making of a return?

19  A.   What I remember from reading the grand jury transcript is

20  Mr. Roberts sought out your advice and you told him he was

21  correct in his assumption, that he has no liability to file a

22  tax return and no liability to pay the tax associated with it.

23  Q.   And the time frame we're talking about there is

24  approximately 1990, correct?

25  A.   Correct.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

224

BRIAN SHERN - CROSS BY MR. STILLEY                                          134

1   Q.   And you realize Oscar Stilley graduated law school in

2   1990, correct?

3   A.   I don't know when you graduated law school.

4   Q.   Did you not get educational records?

5   A.   I don't believe I did get your college transcripts.  I may

6   have -- I don't think I did get those records.

7   Q.   Isn't it true or aren't you aware that Dr. Roberts also

8   filed certain litigation in federal court trying to get answers

9   to his questions?

10  A.   I believe so, yes, I think he testified about that.

11  Q.   Wouldn't it be fair to say, then, that Dr. Roberts wasn't

12  simply relying on what Oscar Stilley said, but was also trying

13  to get an official answer?

14  A.   What he said in the transcript was that he sought out the

15  advice from you because he knew you to be an expert in legal

16  matters and he asked you that question.

17       I know that he had questions about whether or not he

18  should file and pay taxes before he approached you, but I

19  think, from what his testimony says, he asked you because you

20  were an expert in that area.

21  Q.   But do you know the dates or approximate dates when the

22  litigation was filed by Dr. Roberts trying to get answers to

23  his questions in a federal court?

24  A.   No.

25  Q.   It was after he spoke to Oscar Stilley, was it not?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

225

BRIAN SHERN - CROSS BY MR. STILLEY                                135

```
1   A.    I don't know.

2   Q.    Do you know anything about that litigation?

3   A.    Other than the fact that I think he testified that he

4   filed some litigation, that's all I know.

5   Q.    Now, you talked a little bit on Springer's cross-

6   examination about Mr. Swisher, correct?

7   A.    Yes.

8   Q.    Mr. Swisher was not part of the allegations of this

9   indictment; isn't that correct?

10          MR. O'REILLY:  Objection, Your Honor.  He would be

11  part of the conspiracy to defraud in Count 1.  He was not

12  specified in any count.

13          THE COURT:  Well, I'm -- I have very recently reread

14  the indictment, so I know what the indictment says and does not

15  say, so that will be sustained.

16  Q.    (BY MR. STILLEY)  Did you do any research or make any

17  efforts to find out the scope of the specific agreement that

18  Oscar Stilley allegedly joined?

19  A.    You mean the conspiracy agreement?

20  Q.    Yes, Count 1.

21  A.    Yes.

22  Q.    And what was that?

23  A.    What efforts did I make to determine the agreement?

24  Q.    Yes.

25  A.    Talked to witnesses, looked at records, the whole -- our
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

226

BRIAN SHERN - CROSS BY MR. STILLEY                                      136

 1   whole investigation.

 2   Q.   Did you get enough information to make a conclusion?

 3   A.   A conclusion about what?

 4   Q.   About what the specific -- the scope of the specific

 5   agreement was that Oscar Stilley allegedly joined?

 6   A.   We got enough evidence to prove that there was an

 7   agreement, but I don't think there was any specific contract or

 8   anything between you and Mr. Springer that you were going to

 9   defraud the United States, but I think we proved our evidence

10   in trial to prove that there was an agreement between you and

11   Mr. Springer.

12   Q.   Okay.  So you got enough to say that there was an

13   agreement, but not to say what that specific agreement was,

14   correct?

15         MR. O'REILLY:  Your Honor, objection as to the

16   relevance of his line of questioning.

17         THE COURT:  Sustained.  I think it was either you or

18   Mr. Springer that brought out at trial whether or not it was

19   day one of a conspiracy.  Day one, at least for some purposes,

20   was that day at the Pizza Hut and time is counted from then.

21   And so I've heard all of that at trial.

22         MR. STILLEY:  Your Honor, for the record, can I say

23   what my reasoning is for this?

24         THE COURT:  Surely.

25         MR. STILLEY:  Thank you, Judge.  It's a case called

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

227

BRIAN SHERN - CROSS BY MR. STILLEY                                      137

1   United States v. Dazey, and I cited it at Docket Entry Number

2   330 on page 2 of 6 on Document 330, in which the Tenth Circuit

3   said that it was important to make particularized findings

4   about the scope of the specific agreement the individual

5   defendant joined.  And my reasoning for asking these questions

6   was to see what facts were there for the Court.

7            THE COURT:  Well, I understand that.  And neither --

8   by the way, I will assure both sides that, for sentencing

9   purposes, the conspiracy period in the indictment is not

10  necessarily the end of the story under Guideline 1B1.3.  There

11  is the matter -- the question of jointly undertaken criminal

12  activity that could begin before the conspiracy period alleged

13  in Count 1, it could continue after the conspiracy period set

14  forth in Count 1.  So to some degree, this is fair game and I'm

15  not going to foreclose you from continuing down this line of

16  questioning within reason.  But it would be helpful to the

17  Court if your questioning would get more specific and address

18  things that -- on which you may at least hope this witness can

19  shed some light.

20       So we'll have the next question.

21            MR. STILLEY:  Thank you, Judge.

22  Q.  (BY MR. STILLEY)  Do you know if there was more than one

23  unlawful conspiracy involved?  Did you see evidence of more

24  than one unlawful conspiracy?

25  A.  I think the conspiracy was just to defraud the United

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

228

BRIAN SHERN - CROSS BY MR. STILLEY                                    138

 1  States.  I think there's just one.

 2  Q.   Okay.  So you think there's just one, correct?

 3          MR. O'REILLY:  Your Honor, objection as to how many

 4  conspiracies Special Agent Shern thinks there are.  Facts

 5  coming from this witness are great and they will be helpful to

 6  the Court to determine the scope of the conspiracy.  His

 7  opinion as to what he believes is not a fact.

 8          THE COURT:  Well, does -- let me ask this:  Does the

 9  government agree with -- in general, at least, with my comment

10  that I just made a minute ago about Guideline 1B1.1 and the

11  need for sentencing purposes to determine the scope of the

12  jointly-conducted criminal activity to the extent that we are

13  going to hold one defendant accountable for matters that

14  directly relate to the other defendant?

15          MR. O'REILLY:  Absolutely, Your Honor.

16          THE COURT:  Okay.  Well, if that's the case, then why

17  is it not fair game for Mr. Stilley to cross-examine Mr. Shern,

18  the principal factual investigator, as to matters that may bear

19  directly on the Court's determination of the scope of jointly-

20  conducted criminal activity?

21          MR. O'REILLY:  The government has no objection to the

22  questions that delve into the factual basis of that; however,

23  Special Agent Shern's speculations, if you will, as to how many

24  conspiracies there may or may not have been don't get to the

25  factual questions that the Court needs answered to determine

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

229

BRIAN SHERN - CROSS BY MR. STILLEY                                    139

```
 1   that.  And that's the government's position on that.

 2            THE COURT:  Well, I understand.  That question may,

 3   in fact, be a predicate for more specific questioning, and for

 4   that reason, I'm going to overrule the objection.

 5        You may proceed.

 6            MR. STILLEY:  Thank you, Judge.

 7   Q.   (BY MR. STILLEY)  So you said that there was one

 8   conspiracy, correct?

 9   A.   Yes.

10   Q.   Do you know when that conspiracy was made based on your

11   facts that you found?

12   A.   I don't know exactly the date that it was found, but I

13   think it was when you and Mr. Springer got together and decided

14   to represent these various people and have them pay you money

15   for legal representation and take them to trial with their

16   frivolous beliefs.

17   Q.   Okay.  Was that 2003, then?

18            MR. O'REILLY:  Objection, Your Honor.  I think the

19   evidence was they met in '99 and --

20            THE COURT:  Well, the witness has lived this case, so

21   I think he's fully capable of responding.  That's overruled.

22            THE WITNESS:  Mr. Roberts introduced you to

23   Mr. Springer in the first joint case that you guys began to

24   work on, was in 2000, and that would have either been

25   Mr. Roberts or Mr. Lake.  Both of those occurred in 2000.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

230

BRIAN SHERN - CROSS BY MR. STILLEY                                      140

1  Q.   (BY MR. STILLEY)  So is it your testimony, then, that you

2  believe the conspiracy started in 2000?

3  A.   Yes.

4  Q.   Okay.  But, now, if you look at the indictment, there's no

5  overt acts between 2000 and 2003; isn't that correct?

6  A.   I don't think there is in the indictment.

7            MR. O'REILLY:  Objection.  Relevance.  This was

8  actually covered at trial.  The question of overt acts

9  triggering the statute of limitations was already covered when

10 an overt act was first alleged was not --

11           THE COURT:  Overruled.

12           THE WITNESS:  The question was there any --

13 Q.   (BY MR. STILLEY)  Isn't it true that there weren't any

14 overt acts between 2000 and 2003?

15 A.   Mentioned in the indictment?

16 Q.   Yes.

17 A.   I believe that's correct.

18 Q.   So wouldn't that be a rather odd conspiracy, for somebody

19 to make an agreement to do something unlawful and then take no

20 steps to put it into practice for three years?

21 A.   I think -- just because we didn't specify the overt acts

22 in the indictment doesn't mean that there were none committed

23 before that date.

24 Q.   Do you think that other overt acts were committed before

25 that date?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

231

BRIAN SHERN - CROSS BY MR. STILLEY                                      141

```
 1    A.    Yes.

 2    Q.    Based on your investigation, can you give us a list of

 3    those?

 4    A.    I think convincing Mr. Lake and Mr. Roberts in 2000 that

 5    their frivolous defenses were valid and going to trial and

 6    getting money from them constitutes one overt act to defraud

 7    the government -- or multiple.  I guess one in Mr. Lake's case

 8    and one in Mr. Roberts' case.

 9    Q.    And so this would be in 2000, correct?

10    A.    Yes.

11    Q.    Okay.  Let's go to the next one.

12    A.    That's all I've got for those.

13    Q.    Okay.  That would still leave us with a gap between 2000

14    and 2003 in which no overt acts were performed, correct?

15    A.    Can I look at the exhibits for the payments in 15 to

16    refresh my memory?

17    Q.    Sure.  Please.

18    A.    I believe you also received money from Mr. Lake and

19    Mr. Roberts in 2001 as well.  And in 2002, the Hawkins.

20    Q.    Anything else?

21    A.    No, for the time period 2000 to 2003.

22    Q.    Now, the 2001 -- what are you saying was the overt act in

23    2001?

24    A.    The fact that you continued to assist Roberts with his

25    obtaining money -- you and Mr. Springer participating together
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

232

BRIAN SHERN - CROSS BY MR. STILLEY                                142

1  to help obtain money for services from Mr. Roberts.

2  Q.   Are you saying that he simply still owed a bill and

3  because -- that he paid additional on an outstanding debt, that

4  that's an overt act?

5  A.   I think, yes, when you look at the circumstances of how

6  you obtained the money from Mr. Roberts.

7  Q.   Was that a bad way to obtain money from Mr. Roberts -- or

8  Dr. Roberts?

9  A.   I think the legal representation that you gave Mr. Roberts

10 was -- you knew was completely false and it wasn't going to be

11 effective, but yet you still put forward those defenses.

12 Q.   Okay.  So what you're saying, then, is that Oscar

13 Stilley's defense of Dr. Roberts was part of the conspiracy

14 too, correct?

15 A.   Yes.

16 Q.   Well, some of those defenses are classic and well-

17 accepted as being legally proper, correct?

18          MR. O'REILLY:  Objection.  Argumentative and not sure

19 of the relevance at this point.

20          THE COURT:  Why don't you get more specific.

21     That will be sustained.

22 Q.   (BY MR. STILLEY)  Dr. Roberts was entitled to present his

23 good-faith defense; is that correct?

24 A.   Yes.

25 Q.   Do you have any evidence that he presented anything other

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

233

BRIAN SHERN - CROSS BY MR. STILLEY                                     143

1   than his good-faith defense?

2   A.   If I remember right, one of his defenses was there was no

3   requirement to file a tax return.

4   Q.   Isn't it true he said he couldn't find it and honestly

5   didn't believe it?  Isn't that what really took place?

6   A.   Yes, I believe that's correct.

7   Q.   And that's perfectly legitimate, correct?

8   A.   It's -- the good-faith defense, I believe, is a legitimate

9   defense, but before he went to trial, I think you affirmed his

10  belief in something wrong.

11  Q.   Oh, are you talking about the commentary in 1990, ten

12  years previously?

13  A.   Yes.

14  Q.   So -- but surely you don't think commentary ten years

15  previously would be part of the conspiracy, the single

16  conspiracy, do you?

17  A.   I think if you -- if you knew -- offered him advice in

18  1990 and you -- he relied on your advice and then he went to

19  trial in 2000 and you represented that same defense to him

20  through the help of Mr. Springer, yes.

21  Q.   So you think that words uttered by Oscar Stilley ten

22  years -- or approximately ten years before he met Lindsey

23  Springer are, nevertheless, part of a conspiracy with Lindsey

24  Springer?

25  A.   Not with Lindsey Springer, but -- I don't know.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

234

BRIAN SHERN - CROSS BY MR. STILLEY                                    144

1    Q.    How many people were in this single conspiracy?

2    A.    There were several.

3    Q.    Can you give me names?

4    A.    All the people that Mr. Springer asked to put "donations"

5    on checks when they full well know they weren't for donations,

6    people that transferred money into your IOLTA account to try to

7    disguise the payments to Mr. Springer.

8    Q.    Anybody else?

9    A.    Maybe Mr. Delozier for cashing checks that were made

10   payable to a ministry that didn't really exist.  I mean, it

11   existed, but it had no purpose other than disguising payments

12   from clients.

13   Q.    So you think this was a really large conspiracy, correct?

14   A.    Yes.

15   Q.    But none of these people did anything back in 1990,

16   correct?

17   A.    Not that I know of, other than Mr. Roberts.

18   Q.    So an act in 1990 couldn't possibly have been an overt act

19   in support of the conspiracy, correct?

20   A.    Correct.

21   Q.    So we can strike out -- actually, we can strike out

22   Roberts because he presented a legitimate defense, to your

23   knowledge, correct?

24         MR. O'REILLY:  Objection, Your Honor.  That's for the

25   Court to decide.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

235

BRIAN SHERN - CROSS BY MR. STILLEY                                145

1           THE COURT:  Sustained.

2    Q.   (BY MR. STILLEY)  Now, you said that Hawkins, in 2002,

3    represented another overt act; is that correct?

4    A.   Yes.

5    Q.   And can you tell us -- well, now, were the Hawkins part of

6    the conspiracy too?

7    A.   Yes.

8    Q.   Now -- and how did they become part of the conspiracy?

9    A.   I believe they made checks out to Bondage Breakers

10   Ministry.

11   Q.   And as soon as they made that check out to Bondage

12   Breakers, they became co-conspirators, correct?

13   A.   Yes, I believe so, because they knew the money wasn't a

14   donation of any kind or a gift to any kind of charitable

15   organization.  The purpose of writing that check to Bondage

16   Breakers Ministries was to hide the fact that it was legal

17   services.

18   Q.   Now that we've discussed the acts that you say were overt

19   acts, can you tell us now what you found based on your

20   investigation that the scope of the specific agreement was?

21        And let me make that more clear.

22           MR. O'REILLY:  Objection.  He has asked and answered

23   that question several times and Special Agent Shern has

24   answered that several times.

25           THE COURT:  Are you asking about the scope of it in

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

236

BRIAN SHERN - CROSS BY MR. STILLEY                                    146

```
 1   terms of time or subject matter?

 2          MR. STILLEY:  Judge, I did a bad job on that

 3   question.  Can I make that clear what I'm specifically asking

 4   about?

 5          THE COURT:  Proceed.

 6          MR. STILLEY:  I'll back up because I didn't do a good

 7   foundation.

 8   Q.  (BY MR. STILLEY)  Mr. Shern, isn't it true that many

 9   people -- before Oscar Stilley met Lindsey Springer many people

10   had given Bondage Breakers Ministries money?

11   A.  Yes.

12   Q.  So the conspiracy was already going at that time,

13   correct?

14   A.  I don't know that Mr. Springer, with the exception of

15   maybe Ms. Wiggins and Mr. Hedberg, had been able to get money

16   for legal services like he did before he teamed up with you.

17   Q.  Okay.  But, nonetheless, you've already told us that

18   everybody that put all the donors -- everybody that put money

19   in the IOLTA and Delozier were all conspirators and both the

20   donors and Delozier, by your own terms, go far before Oscar

21   Stilley and Lindsey Springer met, correct?

22   A.  Yes.

23   Q.  So it would have had to be an existing conspiracy that

24   Oscar Stilley joined, correct?

25   A.  Yes.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

237

BRIAN SHERN - CROSS BY MR. STILLEY                    147

1  Q.   Okay.  Now, based on your research, what did you determine
2  would be the scope of the specific agreement that Oscar Stilley
3  joined?
4  A.   What do you mean by when you say "scope"?
5  Q.   What did Oscar Stilley agree to do that was wrong, that
6  was illegal?
7  A.   To come in and help Lindsey Springer bilk money from all
8  these clients and to hide it.
9  Q.   Anything else?
10 A.   No.
11 Q.   Now, you check PACER; isn't that true?  You check PACER to
12 check up on Oscar Stilley, right?
13 A.   Yes.
14 Q.   Did you discover that Oscar had been involved in a number
15 of cases representing children who had been abused in boarding
16 facilities?
17 A.   I believe I remember that you were involved in some cases
18 of that nature, yes.
19 Q.   Did you get enough information to realize that Oscar
20 Stilley had invested large amounts of time and money in those
21 cases?
22 A.   I didn't look at the hours or the time that you spent on
23 those cases.
24 Q.   You certainly wouldn't know the precise amount, but could
25 you tell that they were extensive dockets, big dockets, with

Tracy Washbourne, RDR, CRR
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

238

BRIAN SHERN - CROSS BY MR. STILLEY                                    148

```
 1  lots of papers, trials, and things like that?
 2  A.    Really, my concern with looking at PACER wasn't to find
 3  every legal case that you were involved in, like the scope of
 4  the cases and how much you did in those cases.  It was mainly
 5  to find cases where you had represented people or Mr. Springer
 6  had represented people in these tax -- the witnesses involved
 7  in this case.
 8  Q.    But as a general rule, an individual would -- or an
 9  attorney would be entitled to deduct the investment in cases
10  like that, where that they had lost the money, correct?
11  A.    That's correct.
12  Q.    Now, Mr. Springer asked you if you were a delegate of the
13  Secretary of the Treasury, correct?
14  A.    Yes.
15  Q.    Sounded to me that you just speculated that you were,
16  correct?
17            MR. O'REILLY:  Objection to the relevance on this
18  ground.
19            THE COURT:  Do you have any new ground on this point
20  you're going to cover?
21            MR. STILLEY:  No, but it will be real short.  I'm
22  just trying to get him to admit --
23            THE COURT:  Well, even if it's real short, if it's
24  not new ground, we're not going to go there.
25        Next question.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

239

BRIAN SHERN - CROSS BY MR. STILLEY                    149

1   Q.   (BY MR. STILLEY)  Didn't you suggest in Springer's cross-

2   examination that Oscar Stilley is not a reputable attorney?

3   A.   Yes.

4   Q.   Isn't it true that a lot of people think that Oscar

5   Stilley is a reputable attorney?

6   A.   Yes, that's true.

7   Q.   Now, you spoke with a gentleman by the name of Ralph

8   Lewis, correct?

9   A.   Yes, I did.

10  Q.   He's a CPA, correct?

11  A.   Correct.

12  Q.   With many years' experience, right?

13  A.   I believe so, yes.

14  Q.   He did a lot of work for Oscar Stilley, correct?

15  A.   I think on a few cases he worked on tax returns for

16  clients that you represented, if I remember right.

17  Q.   And Oscar Stilley would pay him directly for that, did you

18  notice that?

19  A.   Yes.

20  Q.   Did you take that out of the amounts that you're claiming

21  as tax losses -- or as gross income?  Did you take those

22  amounts out?

23          MR. O'REILLY:  Your Honor, object -- objection.  This

24  witness can only testify as to discrete items of income.

25  Mr. Miller will be testifying in regard to tax computations.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

240

BRIAN SHERN - CROSS BY MR. STILLEY                                150

```
 1            MR. STILLEY:  The only thing I want to establish is
 2   that he made no efforts to take out monies that were extended
 3   directly to a professional on the benefit of the client.  I
 4   just want him to acknowledge that he didn't make any attempt to
 5   do that.
 6            THE COURT:  And this would be things that had you
 7   reported the income would have been deductible?
 8            MR. STILLEY:  Certainly -- well, it would have never
 9   come in my return because the money in the IOLTA was not my
10   property.  It would not have and did not ever hit my personal
11   account.
12            THE COURT:  That's a pretty dubious proposition.  I'm
13   going to overrule the objection and he may answer the question,
14   but this is not persuasive.
15            THE WITNESS:  No, I didn't give you the amounts that
16   you paid or that you paid to have Mr. Lewis do work for you,
17   because, yes, we could have identified various expenditures
18   that you had made that we -- that appeared to be business
19   expenses, but it still wouldn't have got us at an accurate
20   number, and so we used the 20 percent method, because a more
21   accurate way of determining it was -- wasn't available.
22   Q.   (BY MR. STILLEY)  But it wasn't available, really, because
23   you didn't try, correct?
24   A.   No, I don't believe that is true.  I think that we had
25   enough -- we had your bank accounts and your credit card
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

241

BRIAN SHERN - CROSS BY MR. STILLEY                               151

1  statements and records of your expenditures, but, really,

2  without you confirming whether or not they're business expenses

3  or personal expenses, I don't believe that we could have

4  arrived at an accurate number.

5  Q.   You never asked Oscar Stilley to confirm what were

6  business expenses, did you?

7  A.   No.

8  Q.   And that's common practice.  You do that routinely -- or

9  special agents routinely do that in tax cases, don't they?

10 A.   I wouldn't say "routinely."  We always try to ask, but a

11 lot of times the defendants in our cases won't meet with us and

12 won't provide that information.  We usually do ask, yes.

13 Q.   But you didn't ask Oscar?

14 A.   No.

15 Q.   Now, you also were aware that Oscar Stilley from time to

16 time would write a check to the IRS out of his IOLTA and that

17 check would be negotiated by the IRS in satisfaction of taxes

18 shown on tax returns for specific years, correct?

19 A.   Correct.

20 Q.   You didn't make any allowance for that, did you?

21 A.   No.

22      Can I go back to the previous question about -- we did ask

23 you to provide records to the grand jury.  They weren't

24 all-inclusive records of all your business dealings, but they

25 were records from money that you received from Mr. Springer or

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

242

BRIAN SHERN - CROSS BY MR. STILLEY                    152

 1  money that you had paid on Springer's behalf.  And we found

 2  that you didn't provide all the records during that grand jury

 3  appearance and so we had no reason to believe that you would

 4  provide truthful business records after the fact to compute

 5  your tax loss for this hearing.

 6  Q.   You told Oscar Stilley that he was not under criminal

 7  investigation, isn't that true, when you asked for those

 8  records?

 9  A.   Yes.

10  Q.   And you later -- isn't it true that Oscar Stilley first

11  went to the grand jury and gave certain documents?

12  A.   You brought documents when you first appeared before the

13  grand jury here, yes.

14  Q.   Another subpoena was issued, correct?

15  A.   Yes.

16  Q.   And that subpoena -- the purposes of that subpoena was to

17  clarify specifically what the government wanted, correct?

18  A.   Yes.

19  Q.   That subpoena was withdrawn, correct?

20  A.   Yes.

21  Q.   Oscar Stilley cannot be condemned for failing to comply

22  with a subpoena that was withdrawn, can he?

23          MR. O'REILLY:  Your Honor, objection, calls for a

24  legal conclusion.  This was covered at trial.  Mr. Stilley

25  didn't comply with the first subpoena.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

243

BRIAN SHERN - CROSS BY MR. STILLEY                    153

1           THE COURT:  Sustained.

2       Mr. Stilley, if it's of any help to you, I sustained that

3   objection, as much as anything else, because the question was

4   argumentative.  Meandering, argumentative questions at a very

5   high level of generality are not helpful.  If you want to

6   attack specific items, that's how you can move the ball.

7           MR. STILLEY:  Thank you, Judge.  That gives me an

8   idea.

9   Q.  (BY MR. STILLEY)  The government concluded that Oscar

10  Stilley took too hypertechnical an interpretation of the

11  language of the first subpoena, correct?

12  A.  Yes, I would say that's the case.

13  Q.  The purpose of the second subpoena was to remedy that and

14  make it very clear what the government wanted, correct?

15  A.  Yes.

16  Q.  But before the subpoena was withdrawn, Oscar Stilley never

17  indicated any intent to not comply with that new subpoena,

18  correct?

19  A.  Correct.

20          THE COURT:  Mr. Stilley, let me know when you get to

21  a convenient stopping point, we'll take our mid-afternoon

22  break.

23          MR. STILLEY:  This is a good one right here.

24          THE COURT:  Very well.  We'll take a 15-minute

25  break.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

244

BRIAN SHERN - CROSS BY MR. STILLEY                                    154

1          Court will be in recess.

2          (A RECESS WAS HAD.)

3              THE COURT:  Mr. Stilley, you may continue.

4    Q.  (BY MR. STILLEY)  Mr. Shern, Government Exhibits 1168 to

5    1176 are the government's listings of the -- well, they're

6    entitled "Gross Income of Oscar Stilley," correct?

7    A.   Correct.

8    Q.   And they go by year 2000 to 2008, correct?

9    A.   Yes.

10   Q.   How long have you had this list available to you?

11   A.   The actual list or the checks that correspond to this

12   list?

13   Q.   The list.  In other words, a summary of what the

14   government is going to claim.

15   A.   I would say maybe three months.

16   Q.   And Oscar Stilley has not been provided a copy of this --

17   these summaries until the deadline for turning over exhibit

18   lists, correct?

19   A.   That's correct.

20   Q.   Was there a particular reason for not telling Oscar

21   Stilley earlier, since it was definitely available?

22   A.   You had all the -- I mean, you had all the records from

23   your IOLTA account and everything handed over in discovery.

24   Q.   Were you aware that Oscar Stilley was complaining about

25   lack of clarity concerning the government's theory?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

245

BRIAN SHERN - CROSS BY MR. STILLEY                                    155

1          MR. O'REILLY:  Objection to this line of questioning

2   of this witness.

3          THE COURT:  Sustained.

4   Q.  (BY MR. STILLEY)  Based on Springer's -- your responses to

5   Springer's cross-examination, you seem to think a trust is

6   either valid or invalid based on the subjective intent of the

7   creator's intent; is that true?

8   A.   Lost you there.

9   Q.   It sounds like you're saying that if someone creates a

10  trust for legitimate purposes, then it's a legitimate trust,

11  but if they create the same trust for purposes that you deem

12  improper, that it's an illegal trust or a wrongful trust; is

13  that true?

14  A.   I think you have to look at the circumstances surrounding

15  the whole transaction.  Like, if somebody creates a trust for

16  the purpose of evading their taxes and they do, in fact, evade

17  their taxes, then I think it's a wrongful trust.  But trusts in

18  themselves aren't bad, they're useful, but -- does that answer

19  your question?

20  Q.   Pretty close.  But it sounds to me like you're saying

21  whether a trust is legal or illegal depends upon the subjective

22  intent of the trust creator or grantor?

23          MR. O'REILLY:  Objection as to relevance to this line

24  of questioning.

25          THE COURT:  Mr. Stilley, what's your point?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

246

BRIAN SHERN - CROSS BY MR. STILLEY                                    156

 1              MR. STILLEY:  My point is he is trying to attribute

 2   monies -- losses to the defendants on the grounds of the

 3   subjective thoughts of a third person's mind.  And as soon as I

 4   get that information, I want to know if he has any information

 5   that -- whereby that Oscar Stilley should have known subjective

 6   information within such a person's mind.

 7              THE COURT:  Are you going to be getting down to some

 8   specific instances to address?

 9              MR. STILLEY:  Well, I want -- I think I can get him

10   to admit that he doesn't have any such evidence.

11              THE COURT:  Sustained.

12   Q.  (BY MR. STILLEY)  Now, if we could get Government Exhibit

13   1177.  Do you see that exhibit?

14   A.   Yes.

15   Q.   You're saying that -- wait a minute.  I'm sorry.

16              MR. SPRINGER:  It's "tax loss of third parties

17   relevant to Oscar Stilley."  Is that what we have on the

18   screen?

19              MR. O'REILLY:  Page 2.

20              MR. STILLEY:  Page 2.

21              MR. O'REILLY:  Your Honor, if I may, just for

22   clarification.  We had not previously moved these exhibits in,

23   because I was going to have Revenue Agent Miller deal with

24   them, but since both defendants have addressed them quite a

25   bit, the government would move Government's Exhibits 1159

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

247

BRIAN SHERN - CROSS BY MR. STILLEY                                157

```
 1  through 1177 into evidence at this time.

 2          THE COURT:  Any objection?

 3          MR. SPRINGER:  May I have one moment, Your Honor?  No

 4  objection, Your Honor.

 5          THE COURT:  Mr. Stilley?

 6          MR. STILLEY:  No objection.

 7          THE COURT:  They'll be received.  That's 1159 through

 8  1176?

 9          MR. O'REILLY:  1177.

10          THE COURT:  1177.  Very well.  They are received.

11  Q.  (BY MR. STILLEY)  Now, the first one, you're saying that

12  Oscar Stilley is responsible for the tax loss of Eddy

13  Patterson, correct?

14  A.  Yes.

15  Q.  Okay.  And, now, that would have to be under relevant

16  conduct, correct?

17  A.  Yes.

18  Q.  Do you know what count that that would have to come from?

19  Would that come from Count 1?

20  A.  I don't believe it relates to any particular count.

21  Q.  Do you have any personal knowledge how this was determined

22  to be potentially relevant conduct?

23  A.  I guess it would relate to the conspiracy count, as far as

24  you and Mr. Springer telling Mr. Patterson that you didn't file

25  returns, and Mr. Springer saying that he didn't file returns,
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

248

BRIAN SHERN - CROSS BY MR. STILLEY                                  158

1   and because he's fighting the system and doesn't believe in

2   it.  I can't remember the exact testimony of Patterson.

3   Q.   Well, now, I mean, as a matter of general knowledge, most

4   of us realize there's a right to free speech, correct?

5   A.   Yes.

6   Q.   You're not saying that the words uttered to Mr. Patterson

7   were such as to incite any immediate lawless conduct, are you?

8   A.   Not immediate lawless conduct, but I think this is a

9   person that relied on advice from people that are experienced

10  in providing legal and tax advice, and based upon what he

11  learned from what you guys did, he followed that conduct and

12  thought it was okay.

13  Q.   And he had not been filing tax returns for a number of

14  years at that time, correct?

15  A.   Yes, that's correct.

16  Q.   It's not rational to believe that he changed his conduct

17  because of a comment by Oscar Stilley, is it?

18  A.   I guess if you -- if you're doing something wrong for many

19  years and then you decide to hire somebody or talk to somebody

20  that you understand is supposed to be an expert in this issue,

21  to confirm or deny your beliefs in this person that you trust

22  to have knowledge about this advice, tells you that, no, you're

23  right, you don't have to file returns, I believe that can just

24  reaffirm his thoughts that he didn't have to file and I know I

25  don't have to file now because Oscar Stilley and Lindsey

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

249

BRIAN SHERN - CROSS BY MR. STILLEY                                    159

1    Springer don't file and they're experts in this stuff.

2    Q.   Let's make sure we have the facts straight here.  Isn't it

3    true what you said was that Eddy Patterson claimed Oscar

4    Stilley told Eddy Patterson that Stilley didn't file?

5    A.   Yes.

6    Q.   That's all, correct?

7    A.   That's all you told him?

8    Q.   Correct.  In other words, Oscar Stilley didn't say, Eddy

9    Patterson, don't file tax returns; he didn't say that, did he?

10   A.   I don't think he said that in his grand jury testimony,

11   no.

12   Q.   You have no evidence that Oscar counseled -- Oscar Stilley

13   counseled Eddy Patterson to not file a tax return, do you?

14   A.   Other than just telling him that you didn't file and the

15   evidence that you told Lake and Roberts similar things, but we

16   don't have any direct evidence that you told Mr. Patterson not

17   to file his tax returns, no.

18   Q.   And we also don't have any evidence that Patterson changed

19   his actual conduct in any way because of what Oscar Stilley

20   did?

21   A.   No.

22   Q.   Let's go on to James Lake.  James Lake had already been

23   charged before he even contacted Oscar Stilley, correct?

24   A.   Yes.

25   Q.   Oscar Stilley agreed to represent James Lake for a fee,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

250

BRIAN SHERN - CROSS BY MR. STILLEY                                   160

```
 1   correct?

 2   A.   Yes.

 3   Q.   Oscar Stilley did certain work prior to trial on Lake's

 4   case, right?

 5   A.   Yes.

 6   Q.   Oscar Stilley did not try the case, did he?

 7   A.   No.

 8   Q.   You have no evidence that anything that Oscar Stilley did

 9   in his filings pretrial or any of his conduct of the defense

10   that Oscar Stilley did anything to cheat Mr. Lake out of his

11   money, correct?

12   A.   I would feel like I got cheated out of my money if I paid

13   you for legal representation on any matter you represented me

14   on.

15   Q.   Well, now, when we started this cross-examination, I asked

16   that if we can just keep it to the --

17           MR. O'REILLY:  Objection.  He asked a question, he

18   got an answer.

19           THE COURT:  We'll wait for the next question.  Go

20   ahead.

21           MR. STILLEY:  Your Honor, I move to strike.  That's

22   not a responsive answer to the question.  He is speculating

23   about what he might want to do and that's not what the question

24   was.

25           THE COURT:  Overruled.  Next question.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

251

BRIAN SHERN - CROSS BY MR. STILLEY                                    161

1    Q.   (BY MR. STILLEY)  You don't have any evidence that Oscar

2    Stilley committed any ethical violation or wrongful acts during

3    representation of James Lake either, do you?

4    A.   I believe Mr. Lake testified that you didn't communicate

5    that he could plead to his charges.  You withheld the fact that

6    he could plead guilty rather than stand trial for his charges.

7    Q.   So you think that Jim Lake said that?

8    A.   Yes.

9    Q.   Jim Lake got another attorney before trial, correct?

10   A.   After he fired you, he got a new attorney, yes.

11   Q.   Did the new attorney withhold the same information from

12   Mr. Lake?

13   A.   No.  The new attorney told him that I can't believe that

14   Mr. Stilley and Mr. Springer didn't actually look at your tax

15   returns at all during your case to determine whether -- what

16   the tax loss was going to be.  They did a horrible job.  They

17   didn't represent the fact that you could have just pled guilty

18   and got probation.  And they were going to take you all the way

19   up to the point of going to trial.  And he ended up doing jail

20   time where he said, if he probably didn't hire you, he could

21   have pled guilty and been done with the matter.

22   Q.   Do you have any personal knowledge that James Lake could

23   have pled guilty earlier in the case and received only

24   probation?

25   A.   The only knowledge I have is what Mr. Lake testified to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

252

BRIAN SHERN - CROSS BY MR. STILLEY                                      162

1   before the grand jury and in his interviews with me and during

2   trial.

3   Q.   And the government lawyer on that case was perfectly

4   available to you, was she not?

5   A.   I could have called her.  I don't remember if I did or

6   not.

7   Q.   Vaughn Dunnigan was her name?

8   A.   No, I didn't talk with her.

9   Q.   Okay.  So you don't have any personal knowledge about

10  whether this story is true or not, do you?

11  A.   I'm just relying on what Mr. Lake told me.

12  Q.   That's in -- a little bit on the unreliable side too,

13  correct?

14  A.   It's consistent with the other witnesses that we've talked

15  to during the case.

16  Q.   Multiple links of hearsay, isn't it?

17  A.   It's just from him to me.

18          MR. O'REILLY:  I don't understand the question, Your

19  Honor.

20          THE COURT:  Sustained.

21  Q.   (BY MR. STILLEY)  Isn't it true that the information that

22  you're talking to the Court about right now came from Mr. Lake

23  by hearsay in the multiple links of hearsay?

24          MR. O'REILLY:  Your Honor, objection.  Relevance to

25  the question.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

253

BRIAN SHERN - CROSS BY MR. STILLEY                                    163

1             THE COURT:  It's clear to me that there's at least

2    one or two layers of hearsay there and that -- that's all I

3    need to know.

4             MR. STILLEY:  Thank you, Judge.

5    Q.   (BY MR. STILLEY)  Now, the next one is Patrick Turner.

6    And you're saying that Oscar Stilley is responsible for tax

7    loss related to Patrick Turner 1999, 2000, 2002, and 2003,

8    correct?

9    A.   Yes.

10   Q.   Those sums of money could have been paid out of the

11   $250,000 if Mr. Turner had made that particular choice,

12   correct?

13   A.   Yes.

14   Q.   You don't have any reason to believe that Oscar Stilley

15   would not have done what Mr. Turner told him to do, do you?

16   A.   Reask that question, please.

17   Q.   You don't have any reason to believe that Oscar would have

18   disregarded an instruction from Mr. Turner to pay the IRS with

19   money that Oscar Stilley held?

20   A.   No.

21   Q.   The rational reason for putting $250,000 in the account

22   would be to have enough money to prepare returns, get

23   everything paid and get everything all cleaned up, correct?

24   A.   Are you asking me if that's why he transferred the

25   $250,000 to you?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

254

BRIAN SHERN - CROSS BY MR. STILLEY                          164

1   Q.   No, I'm asking you if that's the rational basis for

2   putting a substantial amount of money in Oscar Stilley's IOLTA

3   account.

4           MR. O'REILLY:  Calls for speculation; objection.

5           THE COURT:  Sustained.

6   Q.   (BY MR. STILLEY)  Do you know why Mr. Turner put the money

7   in Oscar Stilley's IOLTA account?

8   A.   Factually, no, but I think it's because Springer told him

9   to.

10  Q.   Are you aware that an attorney has to pay out money from

11  an IOLTA account to the person to whom it is -- who is entitled

12  to the money promptly?

13  A.   Yes.

14  Q.   So Oscar Stilley had no choice but to pay the money

15  according to the directive of Mr. Turner, correct?

16          MR. O'REILLY:  Objection.  Calls for speculation.

17          THE COURT:  Sustained.

18  Q.   (BY MR. STILLEY)  You have no evidence that Oscar Stilley

19  even knew Pat Turner in 2003, do you?

20  A.   I don't believe so, no.

21  Q.   You have no evidence that Oscar Stilley knew Pat Turner in

22  2004, do you?

23  A.   No.

24  Q.   Can you tell this Court what Oscar Stilley should have

25  done differently so that he would not be charged with this

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

255

BRIAN SHERN - CROSS BY MR. STILLEY                                    165

1  substantial sum of money as being relevant conduct?

2  A.   Not helped Mr. Springer hide Mr. Turner's $250,000 by

3  going through your account.  Just walk away from the

4  transaction.

5  Q.   Well, no, that $250,000 is accounted for somewhere else,

6  is it not?

7  A.   What do you mean?

8  Q.   Aren't you double-counting if you treat this as the

9  $250,000?

10  A.   As I explained to Mr. Springer during cross, I don't

11  believe it's double-counting because the $250,000 that Springer

12  took from Mr. Turner was considered income to Mr. Springer,

13  which the tax loss resulting from that income was charged to

14  Mr. Springer.

15       The assistance of you and Mr. Springer helping Mr. Turner

16  to evade the payment of his -- Mr. Turner's taxes, in the

17  amount of whatever these numbers added up are, from Exhibit

18  1152, 1153, 1155, and 1156, which is close to -- and the

19  penalties, which is close to $250,000, we're attributing this

20  amount of money to you and Mr. Springer for helping Mr. Turner

21  evade the payment of his personal taxes.

22       So there's two separate crimes being committed here:  One

23  is tax evasion on the $250,000 that Mr. Springer received as

24  income; and, two, is assisting Mr. Turner in evading the

25  payment of his taxes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

256

BRIAN SHERN - CROSS BY MR. STILLEY                                   166

1   Q.   Okay.  Now, I need -- let's break this down just a little

2   bit here.  When Mr. Turner sent the $250,000 to Oscar Stilley's

3   IOLTA account, did that become relevant conduct then?

4   A.   Yes.

5   Q.   And isn't it true that any person who is able to get a

6   copy of your check and see the bank account number and the

7   routing number can actually put money in the account?

8            MR. O'REILLY:  Objection as to relevance of that

9   particular piece of information.

10           THE COURT:  What's your point, Mr. Stilley?

11           MR. STILLEY:  I'm trying to break down when the

12   government's -- in the government's theory that this became

13   relevant conduct.  And what I'm trying to get him to admit is

14   that anybody that gets another person's bank account and bank

15   routing number, which is on the check, can put money in it

16   right away and without the permission of the person who has --

17   who has the bank account.  And then I want to follow up with

18   further questions about when this allegedly became relevant

19   conduct.

20           THE COURT:  Well, are you -- is it your contention

21   that you didn't know that Mr. Turner's money was going into

22   your IOLTA account?

23           MR. STILLEY:  No, I'm not making that contention.  I

24   am making the contention that -- of the same facts that were

25   brought in at trial, that Mr. Turner was interested in my

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

257

BRIAN SHERN - CROSS BY MR. STILLEY                                    167

1    services, inquired and got the information, put the money in

2    the account.  And what I'm trying to show is that -- well,

3    besides what I just said there, that it couldn't possibly have

4    been a relevant conduct at that point in time, and then I want

5    to go time by time to see exactly when that took place.

6              THE COURT:  Well, I don't know that the pending

7    question goes to that, so the objection will be sustained.

8        Next question.

9    Q.  (BY MR. STILLEY)  So you're saying that the -- just

10   because that the money was wired to Oscar Stilley's account,

11   that became relevant conduct?

12   A.  Yes, because it was yours and Mr. Springer's and

13   Mr. Turner's actions to evade the payment of Mr. Turner's taxes

14   by sending that money to your IOLTA account to make it look

15   like a retainer.

16   Q.  You realize that Mr. Turner intended to utilize Oscar

17   Stilley's services at the time that the deposit was made,

18   correct?

19             MR. O'REILLY:  Objection, Your Honor.  There's

20   actually no evidence of that in this trial.

21             THE COURT:  Why don't you ask him -- if you've got

22   another question, then ask him to assume that.  I don't recall

23   that there is evidence of that.

24   Q.  (BY MR. STILLEY)  Okay.  Let me ask a little more open-

25   ended question.  Do you know why that Mr. Turner sent money --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

258

BRIAN SHERN - CROSS BY MR. STILLEY                                    168

1   sent $250,000 to Oscar Stilley's IOLTA account?

2   A.   Do you want me to tell you what I think Mr. Turner thought

3   he was doing or what I think the money was?

4   Q.   No, I want you to say what -- that you can testify about

5   based on either your personal knowledge or a basis of

6   information that is credible and reliable that you can

7   explain.

8   A.   Well, considering the fact that as soon as the money went

9   into the account and it was spent, I think Mr. Turner just --

10  he may have thought he was transferring that money over, which

11  I think he testified to as a loan in case a criminal

12  investigation started investigating him and pursuing a criminal

13  prosecution of him, that he was going to hire you to perform

14  services for him.  At the other end, I don't think Mr. Springer

15  had any intention of doing anything but spending that money on

16  himself.

17  Q.   Do you know when the money actually went into the IOLTA

18  account, the 250,000?

19  A.   I could find out by looking at the exhibits.

20  Q.   What exhibit do you need?

21  A.   It would be the -- I believe 2005 gross income of

22  Mr. Springer, Exhibit 1165.  It was the two wire transfers, one

23  for $192,000 and one for $58,000 on -- one was on August 11th

24  of 2005 and the other was August 18th of 2005.

25  Q.   Okay.  Now, where do we go to find out when the money went

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

259

BRIAN SHERN - CROSS BY MR. STILLEY                                      169

1   to Oscar Stilley's IOLTA account? Can you give us a cite for

2   that?

3   A.    Those are the dates.

4   Q.    Now, that's when the money went out.

5   A.    No, that's when the money came in.

6   Q.    Which date, 8/11 or 8/18?

7          MR. O'REILLY: Objection. This is simply

8   argumentative. The documents are actually Exhibits 114, which

9   will indicate exactly what date that it was wired to

10  Mr. Stilley's IOLTA account. I actually believe that is a copy

11  of -- 114 is a copy of the IOLTA account itself, the statement.

12         THE COURT: Mr. Stilley, if you can make your point

13  by referring to the transaction documents, that may be helpful.

14         MR. STILLEY: Your Honor, could I have a moment with

15  Mr. Springer to refresh my recollection?

16         THE COURT: Surely.

17         MR. STILLEY: Thank you.

18  Q.    (BY MR. STILLEY) Do you have any information to suggest

19  that Oscar Stilley would -- should not have believed that the

20  money was a bona fide loan?

21  A.    I think the actions that happened afterwards, where you

22  transferred the money immediately out to purchase a motor home,

23  suggest that you didn't think it was a loan.

24  Q.    Okay. Do you have evidence that Oscar Stilley -- when did

25  you become aware that there was a security interest that was on

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

260

BRIAN SHERN - CROSS BY MR. STILLEY                                170

1    file -- that was filed on the motor home?  When did you become

2    aware of that?

3    A.   I don't remember, but I think it might have been whenever

4    we first talked to Mr. Springer.

5    Q.   So that -- you've known about that for a long time,

6    correct?

7    A.   I think so, yes.

8    Q.   Is there any reason or fact that you can show this Court

9    that the Court should think that Oscar Stilley would look at

10   the security interest and think that it was not bona fide?

11   A.   I think the whole circumstances surrounding this case

12   would suggest that you didn't think it was a loan or that --

13   that security interest.

14   Q.   But you can't point to any specific fact, can you?

15   A.   Not specifically, no.

16   Q.   And you haven't made any inquiry, recent inquiry, of

17   Mr. Turner about what has gone on subsequently with respect to

18   the security interest, have you?

19   A.   No.

20   Q.   How long has it been since you've talked to Mr. Turner?

21   Have you talked to him since the trial?

22   A.   No.

23            THE COURT:  Is that a UCC filing?

24            MR. STILLEY:  Yes, it is.

25            THE COURT:  Was it introduced in evidence at the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

261

BRIAN SHERN - CROSS BY MR. STILLEY                              171

```
 1   trial?

 2           MR. O'REILLY:  Yes, Your Honor.

 3           THE COURT:  Okay.  I probably need to refresh my

 4   recollection by looking at that.  I don't want to interrupt

 5   now, but if somebody could come up with either an exhibit

 6   citation or an exhibit number citation, or better yet, a copy

 7   of it, that would be helpful, but I don't want to interrupt

 8   your cross-examination.

 9       You may proceed.

10           MR. STILLEY:  Thank you, Judge.

11   Q.  (BY MR. STILLEY)  Let's move on to Dr. Roberts.  Was --

12   and your -- and the government's contention, Mr. Delozier was

13   part of the conspiracy, correct?

14           MR. O'REILLY:  Your Honor, objection.  It misstates

15   his testimony.  It was Special Agent Shern's contention, not

16   the government's.

17           MR. STILLEY:  Beg your pardon.  Let me rephrase

18   that.

19   Q.  (BY MR. STILLEY)  Mr. Shern, in your contention,

20   Mr. Delozier was part of the conspiracy, correct?

21   A.  Yes.

22   Q.  Do you know when he joined the conspiracy?

23   A.  I guess whenever he first started cashing checks in the

24   name of Bondage Breakers Ministry.

25   Q.  And do you know when that took place?
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

262

BRIAN SHERN - CROSS BY MR. STILLEY                                172

1   A.   I don't know.  It would have been early, but I don't know

2   a specific date.

3   Q.   Okay.  Do you know for a fact that it came before April

4   15, 1996?

5   A.   I don't know.  I think Mr. Hedberg's check is the earliest

6   record we have from Checks Cashed, so I don't know.  He may

7   have cashed -- I think part of his testimony is he's been

8   cashing checks there for years, but I don't know the exact

9   date.

10  Q.   So it sounds to me like, then, that all of these years on

11  Dr. Roberts were before the conspiracy started in your theory,

12  correct?

13  A.   Yes.

14         MR. STILLEY:  Your Honor, could I have a moment?

15         THE COURT:  Surely.

16         MR. STILLEY:  Thank you.

17      Pass the witness.

18         THE COURT:  Redirect?

19         MR. O'REILLY:  No questions, Your Honor.

20         THE COURT:  You may step down.

21      We'll have the government's next witness.

22         MR. O'REILLY:  Your Honor, the United States calls

23  Revenue Agent Brian Miller.

24         THE COURT:  Very well.

25                      BRIAN MILLER,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

263

BRIAN MILLER - DIRECT BY MR. O'REILLY                                173

```
 1  (WITNESS SWORN)

 2                       DIRECT EXAMINATION

 3  BY MR. O'REILLY:

 4  Q.   Good afternoon, Mr. Miller.  How are you today?

 5  A.   Doing well, thank you.

 6  Q.   I'm going to ask you:  Is part of the evidence that has

 7  been introduced for the sentencing, are there a series of IRS

 8  account transcripts?

 9  A.   Yes, there are.

10  Q.   Could you briefly describe for the Court what those are.

11  A.   They're a record of all the transactions relative to a

12  particular taxpayer's account and activities with the IRS

13  during a particular period.

14          MR. SPRINGER:  Could we have an exhibit on that, Your

15  Honor?

16          THE COURT:  He wasn't referring to any one in

17  particular.

18  Q.   (BY MR. O'REILLY)  I'll just ask you briefly to take a

19  look at Government's Exhibit 1136, which I believe was

20  previously entered into evidence.  Could you describe what that

21  is.  It should have come up on your screen.

22  A.   It's an account transcript from the IRS on the account of

23  Lindsey Springer for the period -- looks like --

24  Q.   The year 1990?

25  A.   1990, yeah.  It's hard to read on my screen.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

264

BRIAN MILLER - DIRECT BY MR. O'REILLY                    174

1   Q.   And this reflects all activity on this account as of the

2   date that this was done, which it looks like March 23rd of

3   2010?

4   A.   Correct.

5   Q.   Similarly drawing your attention to exhibit --

6   Government's Exhibit 1137, is that a transcript of account for

7   Mr. Lindsey Springer for the year 1991?

8   A.   Yes, it is.

9   Q.   And, similarly, 11 -- Government's Exhibit 1138 is the

10  transcript account from the IRS for Mr. Lindsey Springer for

11  the year 1992?

12  A.   That's correct.

13  Q.   Government's Exhibit 1139 would be the IRS transcript of

14  account for Mr. Lindsey Springer for the year 1993; is that

15  correct?

16  A.   Yes.

17  Q.   Government's Exhibit 1140, 4-0, is that the IRS transcript

18  of account for Lindsey K. Springer for the year 1994?

19  A.   Yes, it is.

20  Q.   And Government's Exhibit 1141, is that the IRS transcript

21  of account for Mr. Lindsey Springer for the year 1995?

22  A.   Yes.

23  Q.   Did you utilize these exhibits in preparing summaries with

24  respect to the tax computations in this case?

25  A.   Yes, I did.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

265

BRIAN MILLER - DIRECT BY MR. O'REILLY                    175

1   Q.   What was it that you used from these particular exhibits

2   to make the tax loss calculations?

3   A.   Well, I was asked to calculate the amount of tax loss for

4   Mr. Springer and to do that for the years 1990 through 1995.

5   And looking at the first page of this transcript, the account

6   balance amount, for example, in 1995 shows an amount of

7   $20,155.73.

8           THE COURT:  Now, which exhibit are you looking at?

9           THE WITNESS:  1141.

10          THE COURT:  Go ahead.

11          THE WITNESS:  So that reflects the amount of money

12  that is due to the government for that year from Mr. Springer.

13  Q.   (BY MR. O'REILLY)  And does that include interest and

14  penalties?

15  A.   No, the interest and penalties are separate amounts listed

16  immediately below that.

17  Q.   So the account balance is the loss?

18  A.   Yes.

19  Q.   And, similarly, for the other exhibits we looked at, you

20  took simply the tax loss that had been previously assessed

21  against Mr. Springer and added that to your tax loss

22  calculation?

23  A.   That's correct.

24  Q.   Do you know how the IRS reached these calculations?

25  A.   Not specifically, no.  I'm sure they had some basis for

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

266

BRIAN MILLER - DIRECT BY MR. O'REILLY                                    176

1  calculating income and then computing a tax based on that

2  income.

3  Q.   Do you know if this was, in fact, an assessment that had

4  been made?

5  A.   It is an assessment, yes.

6  Q.   With respect to Government's Exhibit 1142, is that the IRS

7  transcript account for the year 2002 for Mr. Oscar Stilley?

8  A.   Yes, it is.

9  Q.   And does it show an account balance and accrued interest

10 and other items?

11 A.   It does.

12 Q.   With respect to this, do we have independent evidence of

13 income for Mr. Stilley for the year 2002?

14 A.   Yes, we did.

15 Q.   Did we, in fact, use that information in creating the tax

16 loss calculation and not this transcript information?

17 A.   Right.  For purposes of this calculation, we did not rely

18 on the transcript because we thought we might be doubling up or

19 double-dipping, so we used the same formula that we used on all

20 the other years.

21 Q.   Why is it -- do you have a reason to believe that this is

22 a complete and accurate assessment of all of Mr. Stilley's tax

23 obligations for the year 2002?

24 A.   I do not believe that it was, no.

25 Q.   Why not?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

267

BRIAN MILLER - DIRECT BY MR. O'REILLY                    177

1   A.    Because the record we looked at suggested there was a

2   substantial amount of income, substantially more than what was

3   reflected here in this transcript.

4   Q.    Does this transcript reflect adjusted gross income for the

5   year 2002 of $40,373.50?

6   A.    Yes, it does.

7   Q.    And if I can draw your attention to Government's Exhibit

8   1170, I believe.  Is that a compilation of the gross income,

9   based on your calculations, attributable to Mr. Stilley for

10  that same year?

11  A.    Yes, it is.

12  Q.    And is that gross income figure $117,653?

13  A.    Correct.

14  Q.    Are you familiar with the term "bank deposits method of

15  proof"?

16  A.    Yes, I am.

17  Q.    Could you please explain what is the "bank deposits method

18  of proof"?

19  A.    Very simply put, it's a calculation done, taking all the

20  deposits into a bank account, subtracting any transfers or

21  known non-taxable amounts, and treating the net amount of

22  deposits as income to the taxpayer.

23  Q.    Is that, in effect, the methodology you used in

24  calculating the gross income with respect to both defendants in

25  this case?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

268

BRIAN MILLER - DIRECT BY MR. O'REILLY                    178

1   A.   Yes, it is.

2   Q.   And when you use the bank deposits method of proof, is

3   that termed an "indirect method of proof"?

4   A.   It is.

5   Q.   And is that because it's literally not a specific item,

6   you don't go and check each individual item to determine

7   whether or not -- why it was paid?

8   A.   That's correct.

9   Q.   What do you do instead?

10  A.   You just rely on the fact that it was deposited into the

11  bank account, which would demonstrate that it was a receipt of

12  funds by the taxpayer, and then you try to verify any

13  non-taxable amount, and then the amount you're left with would

14  be considered income.

15  Q.   Do you also determine whether or not the defendant had a

16  likely source of income?

17  A.   Yes.

18  Q.   And in this case, was that done?

19  A.   Sure.

20  Q.   In fact, we heard quite a bit of evidence at trial about

21  that?

22  A.   That's right.

23  Q.   And so just with respect to Government's Exhibits 1159

24  through 1167, are those your compilations of -- effectively of

25  bank deposits method of proof with respect to Mr. Springer?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

269

BRIAN MILLER - DIRECT BY MR. O'REILLY                    179

```
 1   A.   Yes.

 2   Q.   Does it also include the cash that Mr. Springer testified

 3   he received each year to -- going from 2000 forward?

 4   A.   Yes, it does.

 5   Q.   You were present throughout the trial, correct?

 6   A.   Yes, I was.

 7   Q.   And you heard testimony -- all the testimony that was

 8   presented?

 9   A.   That's correct.

10   Q.   Do you remember testimony being asked about what types of

11   records were found in the search warrant executed at

12   Mr. Springer's home?

13   A.   Yes.

14   Q.   Were any types of ledgers, compilation of income, anything

15   from which anyone could have determined Mr. Springer's likely

16   income, was anything like that found at his home?

17   A.   No, there was not.

18   Q.   Any listing of donations he had received or gifts he had

19   received?

20   A.   Nothing like that at all.

21   Q.   Was there any ledger found itemizing business expenses?

22   A.   No.

23   Q.   With respect to the evidence, have you had a chance to go

24   through all of the evidence that was presented in this case?

25   A.   Yes, I have.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

270

BRIAN MILLER - DIRECT BY MR. O'REILLY                         180

1    Q.   Have you also seen some of the discovery that was obtained

2    during this case?

3    A.   Yes.

4    Q.   Were -- based upon what you've reviewed, is there a way to

5    accurately determine Mr. Springer's income tax -- you know, the

6    income and the expenses and deductions so that an accurate tax

7    return could be prepared from what you've seen?

8    A.   It would be impossible.

9    Q.   Why is that?

10   A.   There's simply no way to know accurately the amounts that

11   Mr. Stilley and Mr. Springer spent in pursuit of their

12   ministry, in the case of Mr. Springer, and the legal practice

13   on the part of Mr. Stilley.

14        You know, in addition, there's no way to know unrelated

15   income, you know, from capital gains from the sale of

16   property.  There's no way to know the -- their itemized

17   deductions, like their contributions and things like that.

18        It would be impossible to come up with an accurate figure

19   for their -- to do an accurate tax return based on the records

20   that we have.

21   Q.   Who would have access to that information, if anyone?

22   A.   Mr. Springer and Mr. Stilley might if they kept those

23   records.

24   Q.   I'm now going to ask you to look at what's in evidence as

25   Government's Exhibits 1168 through 1176.  And are those your

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

271

BRIAN MILLER - DIRECT BY MR. O'REILLY                           181

1   bank deposits calculations with respect to the gross income of

2   Mr. Oscar Stilley?

3   A.   Yes, they are.

4   Q.   Is that from the years 2000 through 2008, inclusive?

5   A.   Yes.

6   Q.   And, again, with a number of these items, there was

7   actually testimony at trial; is that correct?

8   A.   That's right.

9   Q.   But, again, not every item was introduced at trial or --

10  and there's not direct specific item income evidence with

11  respect to each of these, correct?

12  A.   Right.  With regard to Mr. Stilley, many of them were not

13  introduced at trial, as a matter of fact.

14  Q.   Under the bank deposits methods of proof, are you

15  comfortable with this calculation of gross income with respect

16  to Mr. Stilley?

17  A.   I'm comfortable it's very close to a gross income figure,

18  yes.

19  Q.   Will you explain why it is you're comfortable with that?

20  A.   Mr. Stilley is obviously a practicing attorney, obviously

21  has income coming in.  Every check or income -- or item

22  deposited that we looked at appeared to be the type of receipt

23  that would be normal for a practicing attorney.

24  Q.   So they had the inherent appearance of income?

25  A.   They did.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

272

BRIAN MILLER - DIRECT BY MR. O'REILLY                                        182

1   Q.   Did you also help prepare a schedule that has been

2   exhibited as Government's Exhibit 1177, which reflects the tax

3   loss of third parties that are relevant to each defendant?

4   A.   Yes, I did.

5   Q.   With respect to Mr. -- well, what is -- with respect to

6   Mr. Springer, does it include Dr. Roberts' tax losses for the

7   years 1992 through 1995?

8   A.   No, Dr. Roberts is not included in Mr. Springer's.

9   Q.   Why not?

10  A.   Based on the testimony of Mr. Shern, Mr. Springer was not

11  really involved at that time with Dr. Roberts.

12  Q.   And is that also consistent with the testimony of

13  Dr. Roberts at trial?

14  A.   Yes.

15  Q.   Let's focus on Dr. Roberts for a second.  With respect to

16  these numbers, these -- the tax loss calculations and the

17  penalties and interest column, are those drawn from the earlier

18  exhibits we referenced, the transcripts of account?

19  A.   That's correct.

20  Q.   And is that true with respect to each of the identified

21  taxpayers, Mr. Eddy Patterson, James Lake, and Patrick Turner?

22  A.   Yes.

23  Q.   And, in fact, those exhibits are referenced in the left-

24  hand column, correct?

25  A.   That's right.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

273

BRIAN MILLER - DIRECT BY MR. O'REILLY                    183

1  Q.   So with respect to each of these items, these amounts are

2  drawn from the IRS assessments and records with respect to each

3  taxpayer?

4  A.   According to the IRS records, these individuals currently

5  owe the government these amounts that are listed on these

6  pages.

7  Q.   And yet the tax loss only refers to the tax loss that's

8  due with respect to a specific year?

9  A.   That's correct.

10 Q.   Penalties and interest are what have -- or what may have

11 accrued since then?

12 A.   Right; and continue to accrue.

13         MR. O'REILLY:  If I may have a moment, Your Honor?

14         THE COURT:  You may.

15 Q.   (BY MR. O'REILLY)  Do you have the actual exhibit in front

16 of you, the 1177?

17 A.   Yes.

18 Q.   Okay.  Is there a second page that refers to Mr. Stilley?

19 A.   There is.

20 Q.   Were you asked with respect to each defendant to prepare a

21 summary of tax loss and restitution, as I said, with respect to

22 each defendant?

23 A.   Yes, I was.

24 Q.   And are those what are exhibited and marked for

25 identification as Government's Exhibits 1178-A for Mr. Springer

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

274

BRIAN MILLER - DIRECT BY MR. O'REILLY                    184

1   and 1179-A for Mr. Stilley?

2   A.   That's correct.

3          MR. O'REILLY:  Your Honor, be --

4   Q.   (BY MR. O'REILLY)  And are these summaries based upon the

5   evidence that was introduced at trial or was introduced

6   previously today through Special Agent Shern?

7   A.   Yes.

8          MR. O'REILLY:  Your Honor, the government would move

9   Exhibits 1178-A and 1179-A into evidence.

10         THE COURT:  Any objection?

11         MR. SPRINGER:  Not at this time, Your Honor.

12         MR. STILLEY:  No objection.

13         THE COURT:  They'll be received.

14  Q.   (BY MR. O'REILLY)  With respect to the 1178-A, first,

15  please.  With respect to the first set of numbers, are those

16  simply a compilation as to each year for the gross income

17  figures you've attributed to Mr. Springer?

18  A.   Yes.  These are taken straight from the charts that were

19  discussed earlier that listed each specific item of income for

20  the bank deposits.

21  Q.   And so for the years 1999 through 2007, that added up to a

22  total gross income figure of $1,614,309?

23  A.   Yes.

24  Q.   Did that consist primarily, not exclusively, but primarily

25  of checks that were cashed at Checks Cashed?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

275

BRIAN MILLER - DIRECT BY MR. O'REILLY                    185

```
1   A.   Yes.

2   Q.   And the 20 percent figure that you used for the tax loss

3   calculation, was that derived from the United States Sentencing

4   Guidelines?

5   A.   Yes.

6   Q.   With respect to what's been entitled "Prior Year Tax Loss

7   for the Years 1990 through 1995," does that come from the IRS

8   assessments against Mr. Springer?

9   A.   Yes, those are taken from the transcripts.

10  Q.   The transcripts?

11  A.   Yes.

12  Q.   And those transcripts reflect what were assessed?

13  A.   Yes.

14          MR. SPRINGER:  Transcripts of what?

15          MR. O'REILLY:  The transcripts reflect what was

16  assessed.

17          THE WITNESS:  The transcripts reflect what was

18  assessed by the IRS for those years.

19  Q.   (BY MR. O'REILLY)  And also the penalties and interest?

20  A.   Yes.

21  Q.   And, again, with respect to each of these, there's an

22  exhibit number in the far left column that allows reference to

23  where these figures came from, correct?

24  A.   Correct.

25  Q.   I'm going to actually ask you to jump down a second and
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

276

BRIAN MILLER - DIRECT BY MR. O'REILLY                    186

1   look at the estimated state income tax loss, '99 through 2007.

2   A.   Yes.

3   Q.   Could you explain to the Court how you calculated the

4   state income tax loss.

5   A.   We had to back into it, basically.  We took the federal

6   tax loss figure that we computed, reversed that back to a

7   federal taxable income that would have been correspondent to

8   that federal tax, then we used that federal taxable income

9   figure and applied the state income tax rate to that, as would

10  be consistent with the State of Oklahoma income tax law.

11  Q.   Similarly, did you do the same thing with the State of

12  Arkansas for Mr. Stilley?

13  A.   Yes, we did.

14  Q.   So with respect to both of these, it's an estimate of what

15  their state tax loss would be based upon the tax loss computed

16  for the federal tax loss?

17  A.   That's right.

18  Q.   We've already spoken about the third-party tax loss, which

19  was Exhibit 1177, so with respect to the total tax loss of

20  $1,325,522, is that an estimate of just tax loss?

21  A.   That is tax only.

22  Q.   That does not include penalties or interest?

23  A.   That's correct.

24         THE COURT:  Let me ask, Mr. O'Reilly, so that I

25  understand where the government is going with this exhibit, is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

277

BRIAN MILLER - DIRECT BY MR. O'REILLY                    187

1   the $1.325 million number the one that the government would

2   have the Court apply on the -- to the tax table in Guideline

3   2T4.1?

4          MR. O'REILLY:  Yes, Your Honor.

5          THE COURT:  So you're not asking the Court to apply

6   the $1.7 million number to the tax table; is that correct?

7          MR. O'REILLY:  Correct, Your Honor.

8          THE COURT:  Okay.  Go ahead -- the 1.79 is relevant

9   to restitution?

10         MR. O'REILLY:  Restitution, Your Honor.  Also for

11  where within the guideline range the Court would sentence the

12  defendants.

13         THE COURT:  Well, to the extent that we're talking

14  about tax loss, as for guidelines purposes, what would be your

15  authority for me doing anything other than finding the tax loss

16  and then going to 2T4.1?

17         MR. O'REILLY:  I was unclear, Your Honor.  The total

18  tax loss is what drives the base offense level, exclusive of

19  penalties and interest is our position.  However, there is a

20  range of what the Court will reach once it gets to a -- you

21  know, it comes to its determination of what the adjusted

22  offense level is.  Where within that range we think the

23  penalties and interests may bear on the Court's decision on

24  that or whether or not the Court were considering departing,

25  whether or not to do that.  This is really for informational

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

278

BRIAN MILLER - DIRECT BY MR. O'REILLY                    188

1   purposes and, again, for restitution purposes.

2            THE COURT:  Okay.  Because you're -- you're shy of --

3   the next level is 2-and-a-half million, and I --

4            MR. O'REILLY:  We're not trying to get there, Your

5   Honor.  We have no interest in that.

6            THE COURT:  Okay.  Go ahead.

7   Q.   (BY MR. O'REILLY)  Similar to Government's Exhibit 1178-A,

8   did you prepare 1179-A with respect to Mr. Springer?

9   A.   With respect to Mr. Stilley --

10  Q.   Excuse me, yes, Mr. Stilley.  It's been a long day.  I

11  apologize.

12  A.   Yes, I did.

13  Q.   With respect to Mr. Stilley, we have no tax computations

14  predating the year 2000; is that correct?

15  A.   That's correct.

16  Q.   Do you know why?

17  A.   To my knowledge, there was never any tax assessed for

18  Mr. Stilley in those prior years.

19  Q.   Do you recall, with respect to both defendants, when the

20  evidence indicated they last filed tax returns?

21  A.   I assume maybe early '80s, something like that.  I don't

22  remember for sure.

23  Q.   Sometime in the 1980s?

24  A.   Yes.

25  Q.   To your knowledge, was Mr. Stilley a practicing attorney

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

279

BRIAN MILLER - DIRECT BY MR. O'REILLY                    189

1  throughout the 1990s?

2  A.   Yes.

3  Q.   But we don't know what that tax loss was, do we?

4  A.   We do not.

5  Q.   But with respect to the gross income figures that are here

6  in Government's Exhibit 1179-A, those are derived from the

7  exhibits that are summarized in 1168 through 1176; is that

8  correct?

9  A.   That's correct.

10 Q.   And, again, the 20 percent calculation from the guidelines

11 was used to reach a tax loss calculation?

12 A.   Yes.

13 Q.   Did you have any basis upon which to reach a more accurate

14 calculation of Mr. Stilley's taxes?

15 A.   No, I didn't.

16 Q.   Did Mr. Stilley provide you or the Court with any exhibits

17 supporting any expenses or non-income items?

18 A.   No, he did not.

19 Q.   And then with respect to the other lines on here, they're

20 either pulled from Mr. Springer's 1178-A -- and I do note, just

21 for the record, that it indicates 1178, it should say 1178-A.

22      And, similarly, I believe, on Mr. Springer's, where it

23 says "1179" -- actually, that one actually just has it wrong

24 completely -- I'm sorry, I'm looking at the wrong exhibit.

25 Where it says "1178," it should say -- where it says "1179," it

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

280

BRIAN MILLER - DIRECT BY MR. O'REILLY                    190

1    should say 1179-A.

2            THE COURT:  What are you --

3            MR. O'REILLY:  I'll draw the Court's attention.  On

4    the seventh line up from the bottom, under the line

5    "co-defendants' federal tax loss," there's an exhibit number

6    1178, which was the original exhibit number.  We had to adjust

7    that to add an "A" to make a correction.

8            THE COURT:  That's understood.

9  Q.   (BY MR. O'REILLY)  And right now, we're referencing 1179-

10   A.  A similar correction needs to be made to 1178-A.

11        What was the nature of the correction that was made with

12   respect to -- that caused us to have to redo these exhibits,

13   Mr. Miller?

14  A.   Mr. Stilley had been assessed some additional tax by the

15   IRS for the year 2002, I believe.  When we reflected further on

16   that, we realized that we may be reporting or asked -- we may

17   be "double-dipping," I guess is the common way to put it, by

18   assessing or calculating the gross income here for 2002 and

19   then us using that prior year tax for 2002 also, so we backed

20   out the previously assessed tax for '02, requiring us to adjust

21   the exhibit a little bit.

22  Q.   So with respect to the information you had that was

23   available to you, are you confident in the calculations that

24   are reflected in Government's Exhibits 1178-A and 1179-A?

25  A.   Yes, I am.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

281

BRIAN MILLER - DIRECT BY MR. O'REILLY                    191

1            MR. O'REILLY:  If I may have a moment, Your Honor.

2            THE COURT:  You may.

3            MR. O'REILLY:  Nothing further from the government,

4    Your Honor.

5            THE COURT:  I have a couple of questions before we

6    have cross-examination.

7        Mr. Miller, this -- we can probably determine this pretty

8    easily by looking at the previous exhibits, but for which of

9    these years is there a -- what I referred to a little while ago

10   as a plug-in number of $12,000 a year with respect to

11   Mr. Springer on Exhibit 1178-A representing miscellaneous

12   donations?

13           MR. O'REILLY:  Your Honor, I can actually address

14   that very quickly.  That would be each of the years 2000

15   through 2007.

16           THE COURT:  So --

17           THE WITNESS:  So the gross income figure on Exhibit

18   1178-A for the years 2000 through '07, for each of those years,

19   it includes $12,000.

20           THE COURT:  Okay.  So that's 96,000 total?

21           THE WITNESS:  Yes.

22           THE COURT:  And if we were to back out 96,000 from

23   that total --

24           THE WITNESS:  1,518,000.

25           THE COURT:  -- that would bring you down to -- equals

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

282

BRIAN MILLER - CROSS BY MR. SPRINGER                    192

1    1,518,000?

2            THE WITNESS:  Correct.

3            THE COURT:  Okay.  Now, push that through down to the

4    bottom line on tax loss.  You got a calculator?

5            MR. O'REILLY:  It would be 18,000 less, Your Honor?

6            THE WITNESS:  How much?

7            MR. O'REILLY:  About 18,000.

8            THE WITNESS:  Twenty percent of 96,000.

9            THE COURT:  Twenty percent --

10           THE WITNESS:  Of the 96,000, right.

11           THE COURT:  Very well.

12       Cross-examination.

13                        CROSS-EXAMINATION

14   BY MR. SPRINGER:

15   Q.   Good afternoon, Mr. Miller.

16   A.   Good afternoon.

17   Q.   If you could turn to 1136, please.  Mr. Miller, have you

18   ever seen an account transcript that looked like Government's

19   Exhibit Number 1136 before this case?

20   A.   I think I've seen them before.

21   Q.   You think you have?

22   A.   I don't remember specifically.  I've looked at a lot of

23   transcripts and been involved in several trials, but --

24   Q.   Usually is it 4340s that show up in a summary record of

25   assessment-type issue?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

283

BRIAN MILLER - CROSS BY MR. SPRINGER                                    193

1  A.   I don't know the number.

2  Q.   You testified that I believe that 1136 through 1141 --

3  they were all accurate records of the IRS's assessment for 1990

4  through 1995; do you remember that testimony?

5  A.   Yes.

6  Q.   Okay.  They aren't actually assessments, are they?

7  A.   Pardon me?

8  Q.   1136 through 1141 are not assessments, are they?

9  A.   They're a record of the assessment.

10 Q.   Which means there's another record somewhere that is an

11 assessment; is that correct?

12 A.   I guess you could say that, yes.

13 Q.   All right.  And in order for a lien to arise as a matter

14 of law, doesn't the taxpayer have to be given notice and demand

15 for payment for a certain assessed year?

16 A.   I'm not familiar with the collection side of the IRS's

17 operation.

18 Q.   So you're not familiar -- is the account transcript a

19 collection side?

20 A.   The transcript is simply a reflection of the taxpayer's

21 account.  You asked about liens being filed and I don't file

22 liens.  That's our collection division's function.

23 Q.   So if you would turn to page 3 of Exhibit 1136.  Do you

24 see the fourth entry down from the top?

25 A.   Yes.  It says "lien released."

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

284

BRIAN MILLER - CROSS BY MR. SPRINGER                                    194

1   Q.   And what's the date on that, 8/31/2007?

2   A.   That's what it says.

3   Q.   And under an account transcript, if it says "lien

4   release," what does that mean?

5   A.   I have no idea.

6   Q.   So as you stand here today, are you telling this Court

7   that, for the year 1990, there is an outstanding tax liability

8   owed by Lindsey Springer to the United States as reflected in

9   Government's Exhibit Number 1136?

10  A.   That's exactly what I'm saying, yes.

11  Q.   And you don't know what a lien release is?

12  A.   Well, a lien, I assume, would be some sort of contractual

13  hold or claim to a particular asset, possibly, and we may have

14  released a lien.  The release of a lien, in my limited

15  understanding, does not erase a taxpayer's obligation that he

16  owes to the IRS.

17          MR. SPRINGER:  Your Honor, may I ask standby counsel

18  a question?

19          THE COURT:  Sure.  You might start by asking whether

20  he thinks releasing a tax lien releases the underlying tax

21  debt.

22      (DISCUSSION OFF RECORD)

23          MR. SPRINGER:  Your Honor, may I approach the

24  witness?

25          THE COURT:  You may.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

285

BRIAN MILLER - CROSS BY MR. SPRINGER                              195

 1          MR. SPRINGER:  For the record, Your Honor, I have

 2   presented the witness with Exhibit Number -- Defendants'

 3   Exhibit Number 19 -- excuse me -- 18, and it is the fourth page

 4   in on Exhibit Number -- Exhibit Number 19, the fourth page in

 5   Exhibit Number 19, which is entitled "Certificate of Release

 6   Federal Tax Lien."

 7          MR. O'REILLY:  We do have an objection.  We did not

 8   receive these documents until this morning.  They were due to

 9   our office no later than the 14th.

10          THE COURT:  First of all, let me make sure I

11   understand what we're dealing with here.

12          MR. SPRINGER:  The fourth page in, Your Honor.

13          THE COURT:  This is a docket from the Patterson

14   case?

15          MR. SPRINGER:  No, no, come back one exhibit before

16   that.  I have my tab at the end of the exhibit instead of the

17   beginning.  And I'm sorry, Your Honor.  That would be the --

18          THE COURT:  This is a notice of deficiency.

19          MR. SPRINGER:  Okay.  Then go into the fourth page of

20   that.

21          THE COURT:  Okay.  Refresh my recollection,

22   Mr. Springer:  When were your exhibits due under the scheduling

23   order?

24          MR. SPRINGER:  They were due on the 14th, Your

25   Honor.  None of these exhibits the government has not seen.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

286

BRIAN MILLER - CROSS BY MR. SPRINGER                          196

1   And I did the best I could without having to ask for a

2   continuance, because I was ordered by Judge Kearns to move, and

3   I did all those things as best I could.  I did give the

4   government an exhibit list timely and there's no surprise nor

5   harm done by this statement that they've made.

6              THE COURT:  So you're offering Exhibit 18 at this

7   point?

8              MR. SPRINGER:  I haven't offered it yet.  I'm getting

9   ready to.

10             THE COURT:  Go ahead.

11  Q.   (BY MR. SPRINGER)  Mr. Miller, on exhibit -- it's actually

12  Exhibit Number 19 and it's page 4 --

13             THE COURT:  Now, wait a minute.  You're going to 19

14  now?

15             MR. SPRINGER:  Actually, Your Honor, what I've done

16  is my exhibit tab is at the end of my exhibit instead of at the

17  beginning.  It's actually -- 19 is the exhibit.  And it was

18  listed that way on my exhibit list.

19  Q.   (BY MR. SPRINGER)  Mr. Miller, page 4 of Exhibit 19, I'm

20  going to read this and then ask you a question from it.  It

21  says, "Certificate of Release of Federal Tax Lien.  I certify

22  that the following named taxpayer under requirements of Section

23  6225 of the Internal Revenue Code has satisfied the taxes

24  listed below and all statutory additions."

25         Do you see that?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

287

BRIAN MILLER - CROSS BY MR. SPRINGER                    197

1   A.    I see that.

2   Q.    Okay.  And do you see the date by which it is issued from

3   the bottom?

4   A.    Yes.

5   Q.    And does that reflect similarly to Government's Exhibit

6   1136 on the third page, the fourth line, where it says "lien

7   release 8/31/2007"?

8   A.    Say that one more time.  Too many numbers for me to keep

9   up with.

10  Q.    I'm sorry.  Do you remember Government's Exhibit 1136 on

11  page 3, where it says "lien release," and then it has a date

12  entry on your transcript code, 8/31/2007?

13  A.    Yes.

14  Q.    And this date on Defendants' Exhibit Number 19, page 4, is

15  dated August 23, 2007, correct, at the bottom?

16  A.    Yes.

17  Q.    Okay.  And it does say that all taxes have been satisfied,

18  does it not?

19  A.    It says that, yes.

20  Q.    Okay.  And just for reference, in the block just below

21  that, where it says "court recording information," does it --

22  on the tax period, Column B there, do you see that -- there's

23  that kind of tax and then there's "tax period."  Do you see

24  that?

25  A.    Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

288

BRIAN MILLER - CROSS BY MR. SPRINGER                                    198

 1   Q.   And is it --

 2              THE COURT:  As was the case at trial, before you get

 3   into the substance of an exhibit, it needs to be offered and

 4   received.

 5              MR. SPRINGER:  I'm sorry.  May I have a moment on

 6   that one, Your Honor?

 7              THE COURT:  Surely.

 8              MR. SPRINGER:  Your Honor, I move to admit

 9   defendants' -- page 4 of Defendants' Exhibit 19.

10              MR. O'REILLY:  Objection, Your Honor.  Misrepresents

11   the facts.

12              THE COURT:  Okay.  It's -- it's untimely; that's

13   established.  Page 4 of Exhibit -- of your Exhibit 19 is this

14   one that has a copy of an Exhibit 10 sticker on it?

15              MR. SPRINGER:  Yes, that's from Judge Kearns' court

16   docket.

17              THE COURT:  Okay.  As far as whether it misrepresents

18   the facts or not, I don't know.  I'm not going to off-the-cuff

19   keep it out on that basis.  It's untimely, and I have one

20   question:  Is the government prejudiced, Mr. O'Reilly, in terms

21   of your ability to respond to whatever import this exhibit may

22   have?

23              MR. O'REILLY:  Well, I would be -- the defendant

24   should be required to introduce his entire exhibit if he wants

25   to do that.  First, we need to find out if this witness can

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

289

BRIAN MILLER - CROSS BY MR. SPRINGER                    199

```
 1   even authenticate it.

 2           THE COURT:  Well, assuming that I receive, then, the

 3   entire exhibit, is the government prejudiced by virtue of its

 4   untimeliness in terms of your ability to respond to whatever

 5   import Mr. Springer may assert these documents have?

 6           MR. O'REILLY:  No, Your Honor.

 7           THE COURT:  It will be received.

 8           MR. SPRINGER:  Thank you, Your Honor.

 9           THE COURT:  And that's the entire exhibit, beginning

10   with the one that says "TPC, 23 pages," and then it goes on --

11           MR. SPRINGER:  It says "certificates of release" --

12           THE COURT:  It goes on five pages?

13           MR. SPRINGER:  Yes, five pages.

14           THE COURT:  It will be received.  We'll call that

15   Springer Exhibit 19.  It is received.

16           MR. SPRINGER:  Thank you, Your Honor.

17   Q.  (BY MR. SPRINGER)  Mr. Miller, Government's Exhibit Number

18   1136 says that it is for the tax year -- up at the top, "tax

19   period, December 31, 1990."  Do you see that?

20   A.  Yes.

21   Q.  Okay.  And do you see on Defense Exhibit Number 19, page

22   4, that one of the tax periods where it says it's taking --

23   it's satisfied is the same year, 12/31/1990?

24   A.  Yes.

25   Q.  And do you know why it says "1040-A" on the account
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

290

BRIAN MILLER - CROSS BY MR. SPRINGER                              200

1   transcript up there in the top left corner?  Do you see that?

2   A.   I do not know why it says that, no.

3   Q.   And let's see -- and then for Exhibit 1137, that's tax

4   period ending December 31, 1991, correct?

5   A.   Yes.

6   Q.   And do you see December 31, 1991, on that certificate of

7   release, as well, for the year 1991?

8   A.   Yes.

9   Q.   Okay.  And then on 1138, does the same hold true for the

10  December 31, 1992, year, does that same year appear in this

11  release as well?

12  A.   Yes, the same as '93, '94 and '95.  Save a little time.

13  Q.   Thank you.

14       You've worked at the IRS for how many years now?

15  A.   Twenty-three.

16  Q.   And prior to 2000 -- strike that.

17       You are a revenue agent specialist, correct?

18  A.   I was until just a few months ago.  I recently changed

19  jobs.

20  Q.   What are you now?

21  A.   Fraud technical advisor.

22  Q.   So prior to that new job, as a revenue agent -- you've

23  been a revenue agent even before the year 2000, correct?

24  A.   Yes.

25  Q.   And at that -- before 2000, when you worked as a revenue

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

291

BRIAN MILLER - CROSS BY MR. SPRINGER                    201

1   agent, you worked under a district director structure; is that

2   correct?

3           MR. O'REILLY:  Your Honor, objection.  Relevance and

4   beyond the scope.

5           THE COURT:  Overruled at this point.

6           THE WITNESS:  I forget exactly when that change in

7   hierarchy and structure was made.

8   Q.   (BY MR. SPRINGER)  But you did at one time work under a

9   district director, correct?

10  A.   Yes, I did.

11  Q.   And at some point in time, you no longer worked under a

12  district director; is that correct?

13  A.   Yes.

14  Q.   And when that ended, who did you then begin to work under

15  as an agent?

16  A.   During both times, I worked for an individual called a

17  group manager.

18  Q.   Group manager, okay.

19  A.   That part didn't change.

20  Q.   And as far as assessments go, you're familiar with the

21  regulations dealing with assessments, correct?

22  A.   Yes, I am.

23  Q.   And isn't it true that, to this day, the regulations from

24  the Secretary of the Treasury require that a district director

25  issue all assessments?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

292

BRIAN MILLER - CROSS BY MR. SPRINGER                                202

 1              MR. O'REILLY:  Objection.  Calls for a conclusion of

 2    law.

 3              THE COURT:  If you know.

 4              THE WITNESS:  I'm not familiar with that.

 5    Q.   (BY MR. SPRINGER)  Okay.  Have you ever been familiar with

 6    that?

 7    A.   No.

 8    Q.   So as far as delegation of authority right now, to be the

 9    fraud person that you -- the title that you have, you get that

10    from the Secretary of the Treasury?

11    A.   I don't deal with -- nobody ever asks me what my

12    delegation is, to be honest.

13    Q.   So you've never had to answer that?

14    A.   I know I've -- I have delegation order number 2.  So if

15    you would like to look at number 2, feel free.

16    Q.   Number 2, that's what I was looking for.  Thank you.

17         Do you know when that order was issued?

18    A.   I do not.

19    Q.   Have you had an opportunity to read Mr. Gollihare's

20    report?

21    A.   No.  I think I have seen bits and pieces of it, but I have

22    not read it.

23    Q.   If you could turn to 1177, please.  And you are the person

24    who prepared this exhibit; is that correct?

25    A.   Yes.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

293

BRIAN MILLER - CROSS BY MR. SPRINGER                                203

1  Q.    Provided the information on it, anyway?

2  A.    Basically, I transferred the information from the

3  transcript to this summary.

4  Q.    Okay.  Now, you listed down here, for 2000, Eddy

5  Patterson, right?

6  A.    Yes.

7  Q.    And the rationale behind that was -- is that because

8  Mr. Patterson had not filed a tax return in 2000; is that the

9  reason why you did that?

10  A.    I'm not as familiar with the intricacies of this case, as

11  Mr. Shern was.  I relied on his testimony and the testimony of

12  Mr. Patterson during the trial.  And it's my recollection that

13  you were involved during the year 2000, that's why we put that

14  year on there, as opposed to other years.

15  Q.    Did you see the evidence when Mr. Shern was on the stand

16  about Mr. Patterson's transcript showing he filed for an

17  extension of time on April 15, 2001?

18  A.    I saw that, but it really had no significance.

19  Q.    He did file something, didn't he?

20  A.    Lots of taxpayers file a request for extension without

21  ever having any intent to file a tax return.

22  Q.    You don't know if that's what Mr. Patterson was doing,

23  right?

24  A.    You asked me if I know something, I'm telling you that it

25  had no significance to me based on my rationale.

BRIAN MILLER - CROSS BY MR. SPRINGER                          204

1   Q.   Okay.  So do you know when this $34,247 was calculated on

2   behalf of Mr. Patterson?

3   A.   It's in the transcript; I don't know off the top of my

4   head.

5   Q.   So basically this information is just something that the

6   government provided you, you've got no firsthand knowledge of

7   the information on Mr. Patterson?

8   A.   Someone with knowledge assessed that amount of tax on

9   Mr. Patterson.

10  Q.   Was that Mr. Shern?

11  A.   No.  Special agents typically, to my knowledge, never

12  assess a tax.  That's the job of a revenue agent or a tax

13  compliance officer.

14  Q.   So neither you nor Mr. Shern, the only two people

15  testifying for the government at this sentencing hearing, don't

16  know a thing about how this $34,000 was calculated?

17  A.   Correct.  Not specifically, no.  That job is assigned to

18  someone else after their case is concluded.

19  Q.   Would you turn to 1147, please, Government's Exhibit 1147.

20          THE COURT:  11 what?

21          MR. SPRINGER:  1147, Your Honor.  I'm sorry.  I was

22  away from the mic there.

23  Q.   (BY MR. SPRINGER)  Now, just a moment ago, you were

24  talking about the account transcripts on Lindsey Springer and

25  1147, apparently, is the same type of document but on Mr. and

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

295

BRIAN MILLER - CROSS BY MR. SPRINGER                              205

1  Mrs. Patterson.  And do you see at the bottom where it says

2  that Mr. Patterson filed his 2000 return on March 3, 2003?

3  A.   Yes.

4  Q.   Okay.  So is it the only reason why you put 34,247 plus

5  interest and penalty on Pattersons on my third -- you called it

6  third-party tax loss is because he knew me in 2000?

7  A.   Because that's the amount of tax that was on that tax

8  return that he filed after he became aware of you and when he

9  filed.  I guess during the course of this investigation he

10 probably -- I assume he became aware that he was being

11 investigated and he probably tried to maybe help himself out by

12 preparing a tax return.

13 Q.   Did you hear Mr. Shern testify that I'm the one that found

14 Cynthia Hess, the CPA who prepared those returns?

15 A.   Right.  But I'm not sure of the exact timing of that.

16 Q.   So do you dispute the transcript of March 3, 2003?

17 A.   No, I'm saying -- I'm saying that the tax return could

18 have been filed after Mr. Patterson was aware that he was being

19 criminally investigated.

20 Q.   So you don't know when Mr. Patterson was being criminally

21 investigated?

22 A.   I don't know when the investigation began.  I don't know

23 specifically when he became aware of it.  But I believe he was

24 indicted shortly after this date, which would lead me to

25 believe that he probably knew he was being investigated.  He

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

296

BRIAN MILLER - CROSS BY MR. SPRINGER                                    206

 1   might have been trying to help himself out and do himself a

 2   favor by preparing a tax return.

 3   Q.    Okay.  Could you turn to Exhibit 1160, please.  Did you

 4   prepare 1160?

 5   A.    Yes, I did.

 6   Q.    Do you see Eddy and Judith Patterson in the payor column

 7   three times for the year 2000?

 8   A.    Yes, I do.

 9   Q.    Two in the middle and one almost at the end?

10   A.    Correct.

11   Q.    The first one says "10,000," the second one says "10,000,"

12   and then the third from the bottom one says "10,000."  Do you

13   see that?

14   A.    Yes.

15   Q.    Do you remember that coming up at trial?

16   A.    Yes.

17   Q.    Mr. Patterson sent a letter that said, "Please accept my

18   donation"?

19   A.    Yes.

20   Q.    And do you remember you testifying that you thought it was

21   for services rendered?

22   A.    Yes.

23   Q.    And do you remember what the services were that you said I

24   provided Mr. Patterson?

25   A.    I don't believe you specifically asked me if I was -- if I

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

297

BRIAN MILLER - CROSS BY MR. SPRINGER                    207

1  thought it was for services rendered.

2  Q.   You just determined that it was.  I mean --

3  A.   It was either for services rendered or it was in pursuit

4  of your ministry.  And, to me, you know, it doesn't matter;

5  it's income either way.

6  Q.   Right.  I forgot about that with you.

7      If I was the person who convinced Mr. Patterson to file a

8  tax return, where, otherwise, he wouldn't, would that change

9  your mind on that $34,000 on Mr. Patterson in your chart -- I

10 think it was 1147 -- excuse me, I'm sorry, I'm wrong -- on the

11 third-party summary for Lindsey Springer you have listed

12 $34,000, I think it was 1177?

13 A.   Right.

14 Q.   Would that change your mind on that 34,000 if I'm the one

15 that caused Mr. Patterson to file a tax return?

16 A.   I don't think I have enough information.

17         MR. O'REILLY:  Objection, Your Honor.  Calls for

18 speculation.

19         MR. SPRINGER:  It's evidence in the record, Your

20 Honor.

21         THE COURT:  Overruled.

22         THE WITNESS:  Not necessarily.  If you had a

23 conversation with Mr. Patterson right before those tax returns

24 were filed and you said, Eddy, we're busted, you know, we might

25 be able to get off or we might -- they might drop some of the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

298

BRIAN MILLER - CROSS BY MR. SPRINGER                                    208

 1   counts if you go ahead and file, so why don't you go ahead and
 2   file those returns, maybe they'll go easy on us, under that
 3   scenario, no, I would not change my opinion.
 4   Q.   (BY MR. SPRINGER)  But you don't have any evidence that's
 5   the scenario, do you?
 6   A.   I don't have any evidence either way.
 7   Q.   Okay.
 8           THE COURT:  How much more do you have on cross?
 9           MR. SPRINGER:  Probably 30 or 40 minutes.
10           THE COURT:  Very well.  We'll take our overnight
11   break at this time.
12        You may step down.
13        We'll resume at nine o'clock tomorrow morning.  We are
14   recessing, at least by my watch, just about exactly five
15   o'clock, because some people may have assumed that's what we
16   would do.  If we're still going at five o'clock tomorrow, don't
17   assume that we will stop at five o'clock, because we won't.  So
18   everyone involved should be conscious of that, but we will
19   resume at nine o'clock tomorrow morning.
20        Let me inquire as to what additional witnesses, if any,
21   the government has after Mr. Miller steps down.
22           MR. O'REILLY:  None, Your Honor.
23           THE COURT:  Very well.
24        I want both sides -- when all the evidence is in, I want
25   both sides to be ready to -- now that we have had the benefit

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

299

BRIAN MILLER - CROSS BY MR. SPRINGER                    209

1   of some testimony, in addition to the filings, in addition to

2   my recollection of the testimony at trial -- and there's good

3   news and bad news there.  The good news is I took 42 pages of

4   notes at the trial, the bad news is that those 42 pages of

5   notes come in a distant second to what's probably going to be a

6   couple thousand pages of transcript.  So I do have some

7   recollection, aided, to some degree, by my notes, what we heard

8   at trial, obviously, I have the benefit of testimony presented

9   by both the government and the defendants here.  After it's all

10  in, I'm going to want -- I will expect the parties to summarize

11  and pull together for me their -- especially their evidence as

12  to the assertions with respect to attribution of third-party

13  tax losses.

14      I have a thorough understanding, I think, of the

15  government's approach with respect to Mr. Turner.  I do want to

16  hear a clear articulation of the parties' positions one way or

17  the other with respect to Messrs Patterson and Lake.

18      And that is -- and that is not -- because those issues --

19  and by mentioning those issues as being very much live issues,

20  I don't mean to exclude other issues, obviously, as very much

21  live issues, but those issues are very much live issues.

22      And I want to -- first of all, by the time it's over, I

23  certainly hope and expect that I will have heard both sides'

24  best case for including or excluding the tax losses

25  attributable to those individuals.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

300

BRIAN MILLER - CROSS BY MR. SPRINGER                              210

1        Other areas that are certainly fair game for articulate

2    summaries from the parties, if you will, are the parties' final

3    analysis and the parties' final advocacy as to the

4    applicability of Guideline 2T1.1(b)(2) with respect to

5    sophisticated means, and at least as it relates to

6    Mr. Springer, the applicability of Guideline 3B1.3 with respect

7    to abuse of trust -- abuse of a position of trust.

8        So that's a word to the wise.  I want to hear more on

9    that.  I want to hear, first of all, the best evidence and then

10   the best articulated summary of that evidence before I reach my

11   conclusions.

12       But we will resume nine o'clock tomorrow morning and no

13   one -- let me repeat:  If we're still going at this hour

14   tomorrow, we will not stop.

15       Court will be in recess.

16       (COURT ADJOURNED FOR THE EVENING RECESS.  FOR FURTHER

17   SENTENCING PROCEEDINGS, SEE VOLUME II.)

18

19

20

21

22

23

24

25

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

301

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 1 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 302

211

1                 IN THE UNITED STATES DISTRICT COURT

2               FOR THE NORTHERN DISTRICT OF OKLAHOMA

3

4    UNITED STATES OF AMERICA,

5             Plaintiff,

6    vs.                             Case No. CR-09-43-SPF

7    LINDSEY KENT SPRINGER and
     OSCAR AMOS STILLEY,
8
              Defendants.
9    _____

10

11

12

13

14

15               TRANSCRIPT OF SENTENCING PROCEEDINGS

16             BEFORE THE HONORABLE STEPHEN P. FRIOT

17                 UNITED STATES DISTRICT JUDGE

18                      APRIL 22, 2010

19                     VOLUME II OF III

20

21

22

23

24

25

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

302

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 2 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 303

212

```
 1    APPEARANCES:

 2    FOR THE GOVERNMENT:
                              Mr. Charles Anthony O'Reilly
 3                            U.S. Department of Justice
                              PO Box 972
 4                            Washington, DC 20044

 5                            Mr. Kenneth P. Snoke
                              U.S. Attorney's Office (Tulsa)
 6                            110 W. 7th Street, Ste. 300
                              Tulsa, OK 74119
 7

 8
      FOR DEFENDANT SPRINGER:
 9                            Mr. Lindsey Kent Springer
                              5147 S. Harvard Ave.
10                            Ste. 116
                              Tulsa, OK 74135
11
                              Mr. Robert Scott Williams
12                            Taylor Ryan Schmidt & Van Dalsem
                              1437 S. Boulder Ave., Ste. 850
13                            Tulsa, OK 74119

14    FOR DEFENDANT STILLEY:
                              Mr. Oscar Amos Stilley
15                            7103 Race Track Loop
                              Fort Smith, AR 72901
16
                              Mr. Charles Robert Burton, IV
17                            Burton Law Firm, PC
                              320 S. Boston, Ste. 2400
18                            Tulsa, OK 74103

19
                            EXAMINATION INDEX
20
      BRIAN MILLER
21        CONTINUED CROSS BY MR. SPRINGER          213
          CROSS BY MR. STILLEY                     231
22
      LINDSEY SPRINGER
23        DIRECT BY MR. STILLEY                    245
          CROSS BY MR. STILLEY                     289
24        CROSS BY MR. O'REILLY                    290

25
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

303

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                213

```
 1              THE COURT:  Good morning.  Mr. Stilley, I believe we
 2   were in your cross-examination -- cross-examination of
 3   Mr. Miller.
 4              MR. SPRINGER:  I think it was me, Your Honor, cross-
 5   examination of Mr. Miller.
 6              THE COURT:  Lori, which were we?
 7              THE CLERK:  It was Lindsey Springer.
 8              THE COURT:  Okay.  Mr. Springer, you may proceed.
 9                      BRIAN MILLER,
10   (PREVIOUSLY SWORN)
11                   CONTINUED CROSS-EXAMINATION
12   BY MR. SPRINGER:
13   Q.   Good morning, Mr. Miller.
14   A.   Good morning.
15   Q.   In this case before the Court, during trial, you were a
16   summary witness on the requirement to file a tax return and tax
17   liability, correct?
18   A.   I think I was an expert witness on the requirement to file
19   and the form and a summary witness of all the testimony that
20   had been provided earlier.
21   Q.   Did you make -- you were involved in the Swisher case,
22   right?
23   A.   Yes, I was.
24              MR. O'REILLY:  Your Honor, objection.  Irrelevance of
25   the Swisher case.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

304

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                          214

1              THE COURT:  Well, I need to hear a little more before

2    I know that.  Overruled.

3    Q.   (BY MR. SPRINGER)  Were you aware -- I'll strike Swisher

4    for the moment.

5         You were the summary agent -- the case agent for the

6    Roberts case over in Arkansas; is that correct?

7    A.   I was an assisting summary witness, like I was in this

8    case, yes.

9    Q.   Okay.  And after Dr. Roberts got out of prison, you had

10   further contact specifically with him; isn't that true?

11   A.   Yes, it is.

12   Q.   Were you assigned to specifically obtain all of the tax

13   returns that Dr. Roberts had not filed while he was in prison?

14   A.   Generally, that is correct, yes.

15   Q.   Okay.  And as far as the -- do you remember Dr. Roberts

16   went to trial in June of 2000?

17   A.   That sounds about right.

18   Q.   And if he was required to file a 2000 tax return, it would

19   have been due somewhere around April 15th of 2001, correct?

20   A.   Sure.

21   Q.   And do you remember that Dr. Roberts was in prison after

22   his conviction for a period of about a year?

23   A.   That sounds correct, yes.

24   Q.   So is it safe to say that when he was required to file the

25   1040 form for the year 2000, it's more than likely that he was

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

305

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    215

1   in prison at that time?

2   A.    I do not know, but it's certainly possible.

3   Q.    And he had complicated tax returns that he had to do;

4   isn't that true?

5   A.    There were some significant issues involved, yes.

6   Q.    And one of those was Ortho/Neuro Medical and how you

7   treated Ortho/Neuro Medical; isn't that true?

8   A.    That was part of it.

9   Q.    Right.  So if Dr. Roberts was separated from all those

10  records, then it seems logical that he wouldn't be able to file

11  a tax return for the year 2000 until after he got out of jail;

12  isn't that true?

13          MR. O'REILLY:  Objection.  Calls for speculation and

14  is suitable for argument.

15          THE COURT:  Overruled.

16          THE WITNESS:  No, I wouldn't necessarily agree with

17  that.  It's not uncommon for a person in prison to be able to

18  file a tax return.  They have ways of -- they can have others

19  get those records, get those records to an accountant, they can

20  have correspondence with an accountant, so it would not be

21  difficult for Dr. Roberts to file his tax return while he was

22  in prison.

23  Q.    (BY MR. SPRINGER)  While he was in prison.  And

24  Dr. Roberts was charged for not filing tax returns in the

25  mid-nineties, correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

306

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    216

1   A.    I believe that's correct.

2   Q.    And did you ever ask him why he didn't file his 2000 tax

3   return?

4   A.    I don't remember specifically asking him about that year.

5   Q.    Okay.  Did he ever tell you that it was because I told him

6   I didn't file a tax return?

7   A.    I don't remember.

8   Q.    Thank you.

9            THE COURT:  Mr. Springer, let me get some

10  clarification.  I'm sure you are well-aware that, first of all,

11  that the situation with Dr. Roberts is relevant in this case

12  overall for two purposes:  Number one is tax loss, but the tax

13  loss relating to Dr. Roberts is attributed under the

14  government's theory only to Mr. Stilley and not to you.

15           MR. SPRINGER:  Got that.

16           THE COURT:  Okay.  So I'm assuming that you are

17  focusing yourself on the situation with Dr. Roberts only as it

18  may relate to the potential application of the Guideline 2T1.9

19  relating to encouraging others to violate the tax law.

20           MR. SPRINGER:  Yes.

21           THE COURT:  Okay.  Now, is it your position -- and,

22  in fairness, this is against the backdrop not only of the

23  testimony we heard yesterday from Agent Shern about what was --

24  what the grand jury testimony was, but we had the testimony at

25  trial of Brenda Frederiksen -- do you recall that?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

307

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                217

```
 1            MR. SPRINGER:  Yes.

 2            THE COURT:  She quoted you, as I recall, as having

 3    said, I think in the context of the Roberts trial, whether it

 4    was before, during or after, but it was 2000 or 2001, in the

 5    general context of the Roberts trial, she quoted you as saying

 6    the tax system was basically voluntary.  Then there's other

 7    testimony that was given yesterday by Agent Shern.

 8       Is it your position that for the application of Guideline

 9    2T1.9 to be appropriate, that the encouragement to violate the

10    tax law must have been successful?

11            MR. SPRINGER:  No.  The actual statements are that

12    Dr. Roberts chose not to file a tax return on his own and that

13    it wasn't based upon me telling him it was voluntary.

14            THE COURT:  Well, is it your position for this

15    guideline to apply that you must have, in fact, caused someone

16    to violate the tax law?

17            MR. SPRINGER:  No, sir.  My understanding of that is

18    that if I encouraged them to violate the tax law -- I think

19    there is some division right now was found in Mr. Gollihare's

20    report, between what is acceptable and not acceptable speech in

21    that regard, and all I'm trying to make -- or lay the

22    foundation of for a preponderance of the evidence is that I did

23    not for the year 2000 or any other year after that -- now,

24    obviously, before that, the money is on Oscar Stilley's side,

25    not mine, but at no time did Dr. Roberts -- was he told or was
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

308

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                218

 1   there any evidence that he was specifically encouraged by me

 2   not to file a tax return.

 3            THE COURT:  Then to that extent, you urge me not to

 4   believe the testimony of Ms. Frederiksen.

 5            MR. SPRINGER:  Well, I believe what Ms. Frederiksen

 6   said was what she heard.  I don't believe she said what was

 7   told to Dr. Roberts.  I believe if we look at the transcript on

 8   that, she was specifically talking about conversations she had

 9   had.  And her tax requirements aren't at issue between myself

10   and the government with related to relevant conduct.

11            THE COURT:  Let's assume, then, that Ms. Frederiksen

12   was referring to something that you said to her.

13            MR. SPRINGER:  Okay.

14            THE COURT:  Are you urging me not to believe what she

15   said about what you said to her?

16            MR. SPRINGER:  I'd have to review her testimony to

17   say for sure.

18            THE COURT:  I don't want to break up your -- go

19   ahead.  Go ahead.

20            MR. SPRINGER:  I got you on that.

21       May I just have a second?  I'm trying to finish that

22   thought.

23            THE COURT:  Sure.  I'm sorry, I --

24            MR. SPRINGER:  No, no, no, it helps me, I'm just

25   trying to put that in perspective with what I want to do next

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

309

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                219

```
 1   with Mr. Miller.

 2   Q.   (BY MR. SPRINGER)  Mr. Miller, you were also involved in

 3   the James Lake trial, were you not?

 4   A.   Yes, I was.

 5   Q.   In the tax loss calculations, there's $176,000 for the

 6   year 2000 that the government has claimed that I should have

 7   impugned to my tax loss calculation for the purpose of

 8   sentencing because of something that I did with Mr. Lake; do

 9   you remember that?

10   A.   Yes.

11   Q.   Now, Mr. Lake -- you were here during his testimony,

12   correct?

13   A.   Yes.

14   Q.   Okay.

15           MR. SPRINGER:  Your Honor, may I have a moment?  I

16   need to read something.

17           THE COURT:  Certainly.

18           MR. SPRINGER:  Your Honor, I believe to conclude what

19   I was saying a moment ago is that it is my understanding the

20   government is promoting Count 1 as the lead count, the one

21   that's going to have the highest possible guideline sentence,

22   and as a result of that, we get into what's referred to as

23   relevant conduct within the scope of the conspiracy, and so

24   whether I am asking questions related to Dr. Roberts or

25   Mr. Lake, I did not -- there's no evidence that I entered into
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

310

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                220

1    an agreement with them to further some illegal conduct which

2    was the object of the conspiracy, as alleged, and so the reason

3    why I'm asking those questions is based upon how it applies to

4    Count 1's relevant conduct and the unlawful agreement, and I

5    believe --

6              THE COURT:  Well, let me -- I don't want to interrupt

7    you, but under Guideline 1B1.3, relevant conduct for which

8    you're accountable is clearly not limited to matters occurring

9    within the conspiracy period charged in the indictment.

10         And there's another thing that you should bear in mind,

11   and I don't mean to lecture and it's certainly not my job to be

12   your advisor in any sense, but it's important, I think, for all

13   concerned not to lose sight of the fact that, even though we

14   talk a good deal about the defendants' accountability -- each

15   defendants' accountability for the other's conduct, to the

16   extent that it can be within the framework of jointly-conducted

17   criminal activity, which is Guideline 1B1.3(a)(1)(B), you are

18   still accountable for your own activity, in some sense, no

19   matter how far back it goes, regardless of whether it was

20   jointly-conducted activity.  That is Guideline 1B1.3(a)(1)(A).

21         And it's easy for all of us to kind of slide off in the

22   direction of thinking in terms of, well, what is within the

23   scope of the jointly-conducted activity?  And that's far from

24   the whole framework for the Court's analysis of relevant

25   conduct, because under Subsection (a)(1)(A), you are

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

311

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                221

 1  accountable for your activity, your personal activity,

 2  regardless of whether it was jointly-conducted.

 3      So bear that in mind, that in a temporal sense, the

 4  conspiracy period in the indictment, although perhaps of

 5  interest, is immaterial ultimately for the purpose of the

 6  Court's evaluation of your relevant conduct.

 7          MR. SPRINGER:  Is the relevant -- the question I'm on

 8  is:  Is the relevant conduct such as what Mrs. Gray said, does

 9  that reach over to an amount of money that the government

10  proposes would have been on or was on a return that was filed

11  by that person?  And I think that's where I got stuck.

12          THE COURT:  You're getting a little specific in your

13  questions to the Court.  You'll need to rely on your own

14  analysis and the assistance that your standby counsel may give.

15          MR. SPRINGER:  I'm good on that.  Okay.

16  Q.   (BY MR. SPRINGER)  Mr. Miller, are you suggesting that,

17  even if Mr. Lake had filed a tax return for the year 2000 on

18  time, that I would still be liable for tax loss that he -- that

19  his return shows if he filed?

20          MR. O'REILLY:  Objection, Your Honor.  Relevance

21  to -- the Court is the one that will be determining what he is

22  liable for and what he is not.

23          THE COURT:  Mr. O'Reilly, I'm going to ask you to

24  speak up a little, please.

25          MR. O'REILLY:  Your Honor, I object.  The question is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

312

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                          222

1   not relevant as to what Revenue Agent Miller's view is on

2   whether he would be -- Mr. Springer should be held liable;

3   that's the Court's decision.  We're straying into argument

4   here, as opposed to questions of fact.

5              MR. SPRINGER:  He did propose the chart.  He did

6   testify that he's the one that proposed the chart with

7   Mr. Lake's money on that.

8              THE COURT:  I'm going to hear it.  Obviously, the

9   testimony of a witness, like Mr. Miller, can be in a gray area

10  in terms of whether it involves facts or legal conclusions, and

11  I'm also mindful, though, of the limitations on the purposes

12  for which Mr. Miller was presented on direct, but that said,

13  for now, I'm going to overrule that objection.  He may want you

14  to repeat the question.

15             THE WITNESS:  Certainly.  Please.

16  Q.   (BY MR. SPRINGER)  Testimony would be, for Mr. Lake, I

17  told him I didn't file tax returns?

18  A.   Right.

19  Q.   Mr. Lake still files a tax return, the very next time a

20  tax return is due to be filed by him on time, because I told

21  him I didn't file a tax return, is it your position that I

22  would be liable under tax loss for the $176,000 if he had filed

23  a tax return?

24  A.   To me, what he did has no bearing on what you advised him

25  to do, I guess.  I mean, his choice -- whether or not he relied

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

313

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    223

1   on your advice, to me, doesn't change your behavior, I guess,

2   if that's what you're asking.

3   Q.   In other words, even if he had filed a tax return with the

4   176,000 on there, you would still be saying the 176,000 should

5   be a tax loss attributable to me?

6   A.   Off the top of my head, yes.

7   Q.   I'm trying to understand how you said that.  You heard

8   Mr. Shern yesterday talk about some people I told to file tax

9   returns and other people I told I didn't file tax returns;

10  remember that?

11  A.   Yes.

12  Q.   If I told somebody to file a tax return and they filed a

13  tax return, should I be held liable for the amount of money

14  that they owe on that tax return?

15  A.   Off the top of my head, I wouldn't think so.

16  Q.   Okay.  So the distinctive difference is whether or not I

17  told them I file a tax return or I don't, that's the difference

18  between whether the person I said anything to, their tax

19  liability becomes my tax loss; is that the best way we can

20  understand it?

21  A.   Uh-huh.  If you encourage someone to violate the law, then

22  it becomes your tax loss is my understanding.  If you

23  encouraged someone to comply with the law and they fail to

24  comply with the law, I would assume that that would be their

25  responsibility.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

314

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                224

1   Q.   And if I tell somebody what I personally don't do, is that

2   encouraging them the way you've got it on the calculations?

3   A.   Yes, since you are in a position of being a tax expert and

4   people know that you have studied extensively the tax law and

5   people trust your opinion.

6   Q.   Isn't it true, though, that prior to this trial, the basis

7   of my claim was is that because I only received gifts?

8   A.   I don't know if that's what you told to everyone or not.

9   Q.   Do you have any evidence that I ever told anybody that I

10  received gross income and that I don't file tax returns?

11  A.   I have no evidence that the only people you told you

12  didn't file were the people who had a ministry.  It's my

13  understanding you told lots of people you didn't file, not that

14  you said I don't file because I have a ministry.

15  Q.   Well, okay.  Or because I only accept gifts, right?  That

16  was the key phrase in the trial that we were dealing with?

17  A.   Yes.

18  Q.   Okay.  So if I said -- if somebody testified I told them I

19  did not file tax return, that by no means limits what all I

20  said, that's just a phrase that has been taken out of a much

21  longer relationship, correct?

22  A.   Possibly so.

23  Q.   Right.  And wouldn't it also indicate that when people

24  would write "donation" or "gift," that there was probably some

25  conversation between them and I about that subject?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

315

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    225

 1   A.    I would assume so, yes.

 2   Q.    So if I'm -- if we're having a discussion about whether

 3   this is a gift and I'm telling them I don't file a tax return,

 4   if those two were together, that the reason why I don't file

 5   tax returns is because I will only accept unconditional --

 6   condition of gift, at that time, not based upon beating a dead

 7   horse, would you still feel the same way about attributing the

 8   $176,000 or other tax liabilities of people that I told this

 9   to?

10         MR. O'REILLY:  Objection to the form of the

11   question.  I'm not -- I'm personally quite confused.

12         THE COURT:  Mr. Springer, there's two or three

13   problems:  Number one, you and the witness are hopping back and

14   forth between issues under Guideline 2T1.9(b)(2) and tax loss

15   under 2T1.1, and I'm not sure the witness is professing to be

16   an expert under -- at least under 2T1.9(b)(2).

17       Number two, what you're saying is pretty far afield from

18   anything for which he was presented as of yesterday.

19         MR. SPRINGER:  I'm sorry.

20         THE COURT:  Number three, I'm going to listen to what

21   you have to say by way of argument.

22         MR. SPRINGER:  Got you.

23         THE COURT:  Especially as -- for instance, I'll go so

24   far as to say I'm not -- I'm a little concerned about the

25   quality of the evidence as to whether you should be accountable

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

316

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                226

1   for the tax loss relating to Mr. Lake, and I'm looking forward

2   to hearing what the government has to say and what you have to

3   say.

4        Before we started yesterday, I had studied the record

5   pretty closely as to the individuals who were covered in the

6   government's sentencing memorandum, which does not include

7   Mr. Lake, and I'm going to listen very carefully to what both

8   you and the government have to say on that score.

9        But your question -- the pending question really addresses

10  matters that are more appropriate for argument rather than

11  debate with this witness.

12            MR. SPRINGER:  I apologize, Your Honor.

13  Q.   (BY MR. SPRINGER)  In addition to me telling Mr. Lake I

14  don't file a tax return, do you know of any other conduct, any

15  other action I took with regard to Mr. Lake regarding his tax

16  liabilities or his problems?

17  A.   I personally do not.

18  Q.   And would that be the same for Dr. Roberts?

19  A.   The best of my recollection, yes.

20  Q.   Okay.  Could you turn to 1177, please.

21  A.   Okay.

22  Q.   And do you see the entry for Exhibit 1152 where it says

23  "Patrick Turner"?

24  A.   Yes.

25  Q.   And you heard Mr. Shern testify yesterday with regard to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

317

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    227

1   why he believed Patrick Turner's money that he owed for '99,

2   2000, 2002, and 2003, should be within a third-party relevant

3   tax loss on Lindsey Springer; do you remember that?

4   A.   Yes.

5   Q.   Had you had discussions with him about that before he

6   testified?

7   A.   Maybe briefly.

8   Q.   Did you agree with his testimony?

9   A.   Yes.

10  Q.   Okay.  Now, did you know that the reason why Mr. Turner

11  filed these tax returns for '99, 2000, 2002, and 2003 was

12  because Lindsey Springer -- do you remember that testimony?

13  A.   I believe so.

14  Q.   So here we have a person who actually files the tax return

15  because Lindsey Springer tells him to do it and you still found

16  a way to put it under third-party relevant tax loss.  And just

17  a minute ago, didn't you just say if I told a person to file a

18  tax return, that that money would not be tax loss to Lindsey

19  Springer?

20         MR. O'REILLY:  Objection.  Argumentative, compound

21  question.

22         MR. SPRINGER:  I can rephrase, Your Honor.

23         THE COURT:  Let me inquire.  As I understand the

24  government's theory with respect to Mr. Turner -- well, first

25  of all -- and forgive me again, Mr. Springer, but I want to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

318

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    228

1  make sure I understand very clearly what both sides have to

2  say.

3      The tax loss, as opposed -- as distinguished from

4  penalties and interest, attributable to Mr. Turner, which the

5  government, in turn, seeks to hold Mr. Springer accountable for

6  in Government's Exhibit 1177, comes out to $145,713, which to

7  the penny is the amount shown in the chart set forth on page 10

8  of the government's sentencing memorandum.

9      Now, the penalties and interest are another matter and are

10  apparently there for other purposes, so we'll disregard that.

11          MR. SPRINGER:  Okay.

12          THE COURT:  So that's for '99, 2000, '02 and '03.

13      My understanding is -- and this -- I'm just going to ask

14  Mr. O'Reilly to either very briefly say I'm right or wrong.  My

15  understanding is that the theory by which the government seeks

16  to attribute a loss relating to Mr. Turner to both defendants

17  is not so much as a result of any failure to file as it is a

18  result of what I will call the deposit of the money in the

19  IOLTA account with the effect that that had on the government's

20  ability to collect what was owed; is that correct?

21          MR. O'REILLY:  Yes, Your Honor.

22          THE COURT:  Okay.  With that understanding,

23  Mr. Springer, whatever the merits of Mr. O'Reilly's objection

24  may be, he didn't say "relevance," but I've got a relevance

25  problem, because I don't think the government seeks to hold you

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

319

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                229

1   accountable for a tax loss relating to Mr. Turner as a result

2   of any failure on his part to file, as opposed to the fact that

3   his quarter-of-a-million dollars that he raised by mortgaging

4   his house was put beyond the reach of the government at your

5   instance and with the cooperation of Mr. Stilley, so the

6   objection is sustained but for a completely different reason

7   than what the government had to say about it.

8         Go ahead.

9             MR. SPRINGER:  Thank you, Your Honor.

10        May I have just one second?

11  Q.   (BY MR. SPRINGER)  The testimony you gave about Mr. Lake

12  and Mr. Roberts, other than I told them words with respect to

13  whether I file tax return or not, do you know of any action or

14  conduct that I took with Mr. Patterson or is the answer the

15  same as it was with the other two?

16  A.   To my knowledge, the answer would be the same.

17  Q.   Thank you.

18        Okay.  You're also aware of the claim that I should be

19  held liable for Oscar Stilley's tax loss?

20  A.   Yes, as part of the conspiracy.

21  Q.   Right.

22            MR. SPRINGER:  1179, could you pull that up,

23  Government's Exhibit 1179.

24            MR. O'REILLY:  Just for the record, I think it's

25  1179-A.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

320

BRIAN MILLER - CONTINUED CROSS BY MR. SPRINGER                    230

1              MR. SPRINGER:  A, I'm sorry, you're right.

2   Q.   (BY MR. SPRINGER)  What is it about Oscar Stilley's tax

3   liability that is connected to Lindsey Springer by way of the

4   conspiracy?  In other words, why did you decide to put his tax

5   liability on me for tax loss purposes?

6   A.   Because, as I think was very clearly presented during the

7   trial, you both worked together and you both benefited from the

8   actions of each other and you both made money as a result of

9   your business dealings and your representation of various tax

10  things.

11  Q.   So just because we had business dealings, we're

12  responsible for each other's tax liabilities under the

13  conspiracy count; is that what you --

14  A.   You worked together to accomplish the object of the

15  conspiracy.

16  Q.   But the object of the conspiracy wasn't to represent

17  somebody, right?  That wasn't the object.  It was to defraud

18  the IRS's lawful functions, right?

19  A.   I guess so, to defraud the IRS and to make a lot of

20  money.

21  Q.   Is making a lot of money defrauding the IRS?

22  A.   If you make a lot of money by defrauding the IRS, I guess

23  it could be looked at that way.

24  Q.   Okay.  And is it -- is it your contention, then, that

25  because Oscar Stilley was a lawyer and he represented somebody

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

321

BRIAN MILLER - CROSS BY MR. STILLEY                              231

1   in a criminal tax case that that's what makes that part of the

2   criminal conduct in Count 1?

3          MR. O'REILLY:  Objection, Your Honor.  Relevance.

4   This, again, is argument for the Court.

5      Mr. Miller testified with respect to how the figures were

6   arrived at, how the computations were achieved in terms of what

7   is attributed to each defendant.  That's really something for

8   argument and for the Court to rule on, not for Mr. Miller to be

9   opining on.

10          THE COURT:  And aside from that, these are matters

11  that were fairly thoroughly explored at the trial, so that will

12  be sustained.

13          MR. SPRINGER:  Can I have a moment, Your Honor?  My

14  40 minutes is up, Your Honor.  Thank you.

15          THE COURT:  Mr. Stilley.

16                    CROSS-EXAMINATION

17  BY MR. STILLEY:

18  Q.   Much of your efforts were focused on a determination of

19  the -- what we would call the tax loss of Oscar Stilley,

20  correct?

21  A.   Yes.

22  Q.   Now, was the purpose of those efforts to get as close as

23  possible to the truth of what the tax loss would have been?

24  A.   There were two choices:  Option A or Option B.

25          Option A was compute the gross income and take 20 percent

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

322

BRIAN MILLER - CROSS BY MR. STILLEY                          232

1  of that.

2      Option B was to do our best, which would have been very

3  inadequate, at best, and then apply a 30 to 40 percent rate on

4  your net income.

5      I did not feel like we would get anywhere close to

6  accurate under Option B computing an accurate reflection of

7  your business income, so we went with Option A, which was to

8  just calculate your gross income, then apply 20 percent to it.

9  Q.   Okay.  But the question on the table here was the efforts

10 in furtherance of an attempt to get to the truth, was that the

11 paramount goal?  Was the paramount goal the truth?

12         MR. O'REILLY:  Objection.  It's an unclear question.

13 The truth about what?  Mr. Stilley provided no tax returns,

14 provided no business records, what is the -- the truth about

15 what is the objection.

16         THE COURT:  I'm assuming he means the truth about the

17 calculation of Mr. Stilley's tax liability as proposed by the

18 government.  On that assumption, the objection will be

19 overruled.

20         THE WITNESS:  The object is always the truth.  I did

21 not believe I could get to the truth by trying -- by computing

22 an actual tax liability for you based on the information that I

23 had and was able to get.

24 Q.   (BY MR. STILLEY)  There are multiple ways to ascertain tax

25 loss, correct?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

323

BRIAN MILLER - CROSS BY MR. STILLEY                        233

1   A.   Yes.

2   Q.   If all of those are means to attain the truth, they should

3   tend toward a single point, correct?

4   A.   Yes.

5   Q.   For the simple fact that the tax liability or tax loss,

6   with small variances, should be a discrete figure, correct?

7   A.   Yes.

8   Q.   So it would help us, then, to determine whether we

9   actually attained the truth by looking at other ways of

10  calculating tax loss or tax liability, correct?

11  A.   Yes.

12  Q.   There's another way called the "net worth method,"

13  correct?

14  A.   Yes.

15  Q.   Were you aware that the probation department has

16  determined that Oscar Stilley has a negative net worth of

17  50,000?

18  A.   No.

19  Q.   Okay.  I want you to assume that for the questions that

20  we've got involved here -- and I want to ask you some questions

21  about that.  Assuming a negative net worth of $50,000 on the

22  part of Oscar Stilley at this point in time, is it not fair to

23  assume that the tax losses -- well, scratch that.

24       What other pieces of information do you need to apply the

25  net worth method of determining tax loss?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

324

BRIAN MILLER - CROSS BY MR. STILLEY                                234

1   A.   I would have to know all of your income and expenses,

2   which is something I don't know.  And your point isn't really

3   valid, because there are lots of people that "make a ton of

4   money," to put it in common vernacular, a lot of people that

5   make a lot of money that have a negative net worth that have to

6   file bankruptcy, so if you're suggesting that the fact that you

7   have negative net worth implies that you didn't have income,

8   that's certainly not a reasonable assumption.  You could have

9   made a ton of money and spent a ton and a little bit and had a

10  negative net worth.  So I think -- I'm not sure the

11  appropriateness of the question and if -- whether you had a

12  negative net worth --

13          THE COURT:  Let's have the next question.

14          THE WITNESS:  It doesn't matter to me whether you

15  have negative net worth, that's not a conclusive factor in

16  deciding whether or not you had income.

17  Q.   (BY MR. STILLEY)  You have used the net worth method on

18  various taxpayers, correct?

19  A.   I have a few times, yes.

20  Q.   So you do consider that a valid means of considering tax

21  liability or tax loss, correct?

22  A.   Certainly.

23  Q.   What I previously asked you is what other items of

24  information do you need to ascertain tax loss on the net worth

25  method of valuation?  Surely you would -- let's start with you

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

325

BRIAN MILLER - CROSS BY MR. STILLEY                                    235

```
 1   would need to know something about the lifestyle or the

 2   expenditures -- personal expenditures of that individual,

 3   correct?

 4           MR. O'REILLY:  Objection.  Relevance and asked and

 5   answered.

 6           THE COURT:  Sustained.

 7   Q.  (BY MR. STILLEY)  Okay.  Let me ask this just -- a little

 8   different question.  You have to make a check list of things

 9   that you need to determine in order to come up with the net

10   worth method of valuation, correct?

11   A.  Yes.

12           THE COURT:  Mr. Stilley, let me establish one thing,

13   and I suppose I'll be happy to hear you if you think I'm headed

14   in the wrong direction on this, but I certainly don't hold

15   myself out as an expert on methods of proof in tax evasion

16   cases, but it's -- I think it's fair to say, at least in

17   general terms, that the net worth method, which was not used in

18   this case, is to some degree, at least, a last-resort method

19   that the IRS can, in some appropriate cases, use, in essence,

20   to back in to what -- back in to evidence of a substantial

21   failure to report income.

22       It wasn't used in this case.  It is an undeniable fact

23   that a person can have tremendous gross income and have a

24   negative net worth.  The fact that you, so far as the probation

25   office is aware, may have a negative net worth is of no
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

326

BRIAN MILLER - CROSS BY MR. STILLEY                                236

1   persuasive value at all in my evaluation of the tax loss

2   attributable to you.

3       So, now, if -- and so unless you can give me some very

4   good reason for further examination on the question of negative

5   net worth, we're not going to continue down this line.

6           MR. STILLEY:  Could I explain to you my reasoning and

7   thinking on that?

8           THE COURT:  Very concisely.

9           MR. SPRINGER:  Certainly, Judge.  He's already said

10  that the various methods should all tend toward the truth, and

11  I'd like to make a record to show that the net worth method

12  will indicate a zero tax liability, and I can also show that

13  there's a judge in the Lake case who said that it was not gross

14  income but adjusted gross income that was the determinative

15  number as to determine whether or not a tax return was

16  required.  It's a little bit different, but it works into this

17  net worth.

18          THE COURT:  It's time to move on to another subject.

19          MR. STILLEY:  Will I be allowed to make a record on

20  this?

21          THE COURT:  It's time to move on to another subject.

22          MR. STILLEY:  Your Honor, could I have just a

23  moment?

24          THE COURT:  Surely.

25  Q.   (BY MR. STILLEY)  In your report, you -- when you were

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

327

BRIAN MILLER - CROSS BY MR. STILLEY                                    237

1  adding up the deposits, you added up the deposits that went

2  into the IOLTA account, correct?

3  A.   That was included in the computation, yes, not restricted

4  to that account.

5  Q.   Not restricted?

6  A.   Right.

7  Q.   So you used what went into that account and also what went

8  into Oscar Stilley's personal account, correct?

9  A.   Yes.

10  Q.   Did you take efforts to make sure that you didn't double

11  count?

12  A.   Yes.

13  Q.   Were you aware when you did this that the IOLTA account is

14  actually not the property of Oscar Stilley?

15  A.   I understand theoretically that the IOLTA account is not

16  the property of the attorney, but I also understand in this

17  particular case your personal funds and your personal income

18  was deposited into that account, so it's not restricted to

19  funds of your clients.

20  Q.   You're saying that personal funds were deposited into the

21  IOLTA account?

22  A.   It was clear, based on the fact that funds going into the

23  IOLTA account were transferred to your personal account.  If

24  they -- if it wasn't your money, then I guess you stole from

25  somebody, because it very clearly went from the IOLTA account

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

328

BRIAN MILLER - CROSS BY MR. STILLEY                     238

1   to your personal account for your personal benefit.

2   Q.   Some of the money did, some of the money did not,

3   correct?

4   A.   Yes.

5   Q.   And the fact the money went into -- at the time the money

6   went into the IOLTA account, there is no presumption that it

7   belongs to Oscar Stilley at that time, correct?

8   A.   It depends on the nature of the payment.

9   Q.   And you didn't make any efforts to determine which was

10  which, did you?

11  A.   We did make an effort, yes, we did.  In fact, there are

12  some items that went into the IOLTA account that were not

13  included in our list of income for you.

14  Q.   Did you see occasions where Oscar Stilley wrote checks to

15  the IRS on behalf of his clients?

16  A.   Yes.

17  Q.   Did you exclude those?

18  A.   Yes.

19  Q.   There was nothing in the report -- in the exhibits for

20  this case that indicate when this was done; why not?

21  A.   We did not list the items of income that we did not

22  include.  We went through and used our best judgment and tried

23  to follow the money the best we could to see where it went.

24  And if we saw money that clearly was being used on behalf of a

25  client as an IOLTA account is supposed to be used, we did not

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

329

BRIAN MILLER - CROSS BY MR. STILLEY                         239

1    include that in the accounting.

2    Q.   You heard Mr. Shern testify that the documents that were

3    exhibits in this case were prepared about three months ago,

4    right?

5    A.   I heard him say that.

6    Q.   When did you become aware of their existence?

7    A.   Of the documents?

8    Q.   Yes.

9    A.   I don't know.

10          MR. O'REILLY:  Objection.  Just for clarification,

11   are we talking about the underlying documents or these

12   summaries?

13          MR. STILLEY:  The summaries.

14          THE WITNESS:  I assisted in the preparation of those

15   summaries a few months ago.

16   Q.   (BY MR. STILLEY)  So you knew about all those things

17   several months ago, correct?

18   A.   I wouldn't say several.  A couple of months ago.

19   Q.   Were you aware that Oscar Stilley was not given those

20   documents until a week and a day ago?

21   A.   I was not.

22   Q.   So did you have anything to do with keeping Oscar Stilley

23   from being informed of that when the government's sentencing

24   brief was filed?

25   A.   I made no attempt to withhold any information from you.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

330

BRIAN MILLER - CROSS BY MR. STILLEY                              240

1   Q.   You remember the Lake case, don't you?

2   A.   Vaguely.

3   Q.   And you remember the prosecutor, Vaughn Dunnigan, correct?

4   A.   Yes.

5   Q.   Do you remember the judge?

6   A.   It was a gentleman, but I don't remember his name.

7   Q.   Okay.  You testified in that trial, correct?

8   A.   Yes.

9   Q.   And you saw Oscar Stilley and Lindsey Springer in the back

10  of the courtroom, correct?

11  A.   I did.

12  Q.   You remember that the judge determined that the number

13  that -- the income number that would determine whether a person

14  was required to file a tax return or not was adjusted gross

15  income, correct?

16          MR. O'REILLY:  Objection as to relevance in the line

17  of questioning.

18          THE COURT:  Sustained.

19          MR. STILLEY:  Can I make a record for my reasoning on

20  this?

21          THE COURT:  When this witness steps down, I'm going

22  to give you an opportunity to make a concise offer of proof

23  both on this and on the matter we discussed a few minutes ago.

24     Next question.

25          MR. STILLEY:  Your Honor, may I inquire as to how you

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

331

```
 1   want that proffer done?

 2           THE COURT:  We'll cover that when the witness steps

 3   down.

 4           MR. STILLEY:  Sure.  Could I have a moment, Your

 5   Honor?

 6           THE COURT:  Surely.

 7           MR. STILLEY:  Thank you.  Pass the witness.

 8       Your Honor, beg your pardon, my understanding was I was

 9   supposed to do the offer of proof at a separate time.  Should I

10   do it now?

11           THE COURT:  When the witness steps down, I'll hear

12   your concise offer of proof on the two points that we've

13   covered.

14           MR. STILLEY:  Okay.  Just as an offer, then, from me,

15   correct?

16           THE COURT:  That's true.

17       Any redirect?

18           MR. O'REILLY:  No, Your Honor.

19           THE COURT:  You may step down.

20       Mr. Stilley, I'll hear your offer of proof first as to

21   what the application of the net worth method would have

22   established in this case with respect to your tax liability.

23           MR. STILLEY:  Thank you, Judge.  I think you already

24   see that I asked certain questions to establish that various

25   methods should arrive at a similar point if they're all valid
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

332

1   methods of arriving at the truth.

2       The net worth method would arrive at zero for Oscar

3   Stilley.  The reason I asked questions about Oscar Stilley's

4   style of living or living expenses was to establish certain

5   facts that Mr. Miller would need to ascertain the net worth

6   method.

7       And my position is that if I had been allowed to elicit

8   this testimony from Mr. Miller, he would have had to agree with

9   a low standard of living, the money not going to any place that

10  is -- would result in -- the expenditure of taxable monies

11  out.  He would have to conclude that the negative net worth

12  ensures that there was not any significant tax loss.

13          THE COURT:  Mr. Stilley, I'll hear your offer of

14  proof as to whether or not the judge in the Lake case

15  determined that the filing requirement depends on adjusted

16  gross income.

17          MR. STILLEY:  Thank you, Judge.  The -- as you heard

18  from the witness, all three, Oscar Stilley, Lindsey Springer,

19  and Mr. Miller, were all at the trial of Mr. Lake.

20      In that case, the judge determined that adjusted gross

21  income was the proper number to determine whether or not that a

22  tax return would be required to be filed.

23      There is the claim in this case that there is a failure to

24  file tax returns and that that has certain consequences.  Once

25  again, when you look at the negative net worth over a period of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

333

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 33 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 334

243

```
 1  time, no other things, such as high lifestyle or gambling or
 2  anything like that, to indicate that the money has gone
 3  somewhere else that would tend to show that by anybody's theory
 4  that there was no tax return due under this Court's theory.
 5          THE COURT:  Thank you, Mr. Stilley.
 6      The Court determines that the matters encompassed by the
 7  offers of proof on both points are of no consequence for
 8  sentencing purposes.
 9      We'll have the government's next witness.
10          MR. O'REILLY:  The government has no more witnesses,
11  Your Honor.
12          THE COURT:  Very well.  That certainly brings us to
13  one significant milestone, if you will, in the sentencing
14  proceeding.  I want the defendants to understand that when I
15  call upon them now to present their evidence, I will hear --
16  what I expect to hear is their evidence, both in response to
17  the adjustments and -- the tax loss issue and the adjustments
18  urged by the government, and as to any other matters that the
19  defendants would want the Court to consider for sentencing
20  purposes, short of their allocution, which the Court will hear
21  at a later stage.
22      So now I'm speaking in terms of evidence, not argument,
23  but I am most assuredly speaking in terms of evidence relating
24  to any matter under Section 3553 or the application of the
25  guidelines.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

334

244

1      And, again, let me emphasize I will hear the defendants'

2   final arguments or final comments, if you will, by way of

3   allocution on their own behalf at a later stage.

4      Mr. Springer, you may proceed.

5         MR. SPRINGER:  May I have just a moment, Your Honor?

6         THE COURT:  Surely.

7         MR. SPRINGER:  Your Honor, could I have a brief

8   moment with my standby outside of the courtroom for a second?

9         THE COURT:  Surely.  As a matter of fact, we'll take

10  a ten-minute recess at this time.

11      (A RECESS WAS HAD.)

12         THE COURT:  Mr. Springer, you may proceed.

13         MR. SPRINGER:  Your Honor, I'm going to call myself.

14         THE COURT:  Very well.

15                    LINDSEY SPRINGER,

16  (WITNESS SWORN)

17         MR. SPRINGER:  Should I stand here or should I go

18  over there?

19         THE COURT:  As long as you don't lapse by virtue of

20  standing at the lectern, as long as you don't lapse into

21  argument, as opposed to factual matters, as long as you don't

22  also lapse into matters that are more appropriate for you to

23  cover in your allocution, then at least for the time being,

24  I'll be happy to hear you from the lectern if that is your

25  preference.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

335

LINDSEY SPRINGER - DIRECT EXAMINATION                    245

 1              MR. SPRINGER:  Thank you, Your Honor.

 2              THE COURT:  Although for cross-examination, I may

 3    well require you to sit at the witness stand.

 4                        DIRECT EXAMINATION

 5              MR. SPRINGER:  Okay.  The first things I'd like to do

 6    is enter Defendants' Exhibit Number 22, which I believe I

 7    presented this morning to the Court.  Did I give that?

 8         May I approach, Your Honor?

 9              THE COURT:  You may.

10              MR. SPRINGER:  Defendants' Exhibit Number 22 on the

11    first page --

12              THE COURT:  Have you given this to the government?

13              MR. O'REILLY:  Your Honor, we received a copy this

14    morning.

15              MR. SPRINGER:  Yes, I have, Your Honor.  And just for

16    the record, Your Honor, you asked yesterday for the UCC filing

17    on the Turner RV, I asked Mr. Turner yesterday evening to send

18    me that and this is what I received in response from

19    Mr. Turner, which is -- the front page is the e-mail where he

20    expresses how he repossessed the RV, and then underneath it is

21    the documents -- each of the documents that Mr. Turner received

22    in the mail from the Oklahoma Tax Commission from the tag

23    office that I actually registered the RV at, and that's

24    reflected on the last page of this five-page document.

25         I would note that there is a page 6 of 9, 7 of 9, 8 of 9,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

336

LINDSEY SPRINGER - DIRECT EXAMINATION                    246

1  and 9 of 9, but this is how I got it from Mr. Turner.  It would

2  only be speculation as to what the other documents are, but

3  they're not related to the Oklahoma Tax Commission and the UCC

4  lien filing.  There may be other documents that he had before

5  that, such as the loan agreement or whatever.

6        But what Defendants' Exhibit Number 22 is, again, is --

7  the front page is Mr. Turner expressing that he has exercised a

8  voluntary repossession of the 2001 Freightliner Columbia, and

9  he put the VIN number on there, the certificate of title

10  number, and he also voluntarily repossessed a 2005 cargo

11  trailer, which was purchased with the money that came out of

12  those proceeds from Mr. Turner.

13        And the second page is the first page he received in an

14  envelope from the Oklahoma Tax Commission that was sent to him

15  after I went to the Garnett tag office in Tulsa and registered

16  the vehicle and executed the lien onto the RV at the same

17  moment it was first registered in my name.

18        The third document is the actual instruction and

19  registration form and a lien entry form that Mr. Turner

20  received in the mail in the envelope with the second page

21  attached to Defense Exhibit Number 22.  And this is dated

22  12/23/05, which is exactly the same time in which I registered

23  the vehicle for the first time in my name.

24        The third page -- fourth page, excuse me, is the

25  registration document that in Oklahoma, I believe, you're

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

337

LINDSEY SPRINGER - DIRECT EXAMINATION                    247

1    required to put in our records -- and in this particular

2    instance, this is the copy for the lienholder to issue what's

3    called a lien release in the event that he is satisfied -- he

4    is authorized to then sign this document and give it to the

5    next owner of the vehicle, which is standard -- in my

6    experience dealing with vehicles in the past, that's a standard

7    three-part form that the tag office uses.  There are three

8    different colors.  And the one that Mr. Turner would have

9    received would have been the light-blue one and the green one.

10         And then the last page of this exhibit is the envelope

11   from the Garnett tag office, not from Lindsey Springer, but

12   from the Garnett tag office to Mr. Turner in Michigan.  And I

13   believe the date actually appears December 27th on the

14   envelope.  It's just very difficult with the copier that we had

15   this morning to bring that out.

16         And those are all within the time periods that were -- was

17   evidence at trial.  And I would move to enter Defendants'

18   Exhibit Number 22 at this time.

19              MR. O'REILLY:  Objection as to relevance, Your Honor.

20              THE COURT:  I want to hear more about it before I

21   conclude that it's probative of anything one way or the other.

22   So the objection is overruled.  Mr. Springer's Exhibit Number

23   22 is received.  It remains to be seen, obviously, what

24   significance it has, and to that extent, what relevance it has,

25   but it is received.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

338

LINDSEY SPRINGER - DIRECT EXAMINATION                          248

1           MR. SPRINGER:  The reason why I've entered Exhibit

2    Number 22 is because the government has suggested, although not

3    to a finding of the jury --

4           THE COURT:  Now you're lapsing into argument.

5           MR. SPRINGER:  Oh, I thought you were asking for

6    that.

7           THE COURT:  I'm hearing your testimony.  You may

8    resume your testimony.

9           MR. SPRINGER:  Okay.  It is my testimony that I did

10   not steal $250,000 from Mr. Patrick Turner, nor did I ever have

11   any intention to steal $250,000 from Mr. Turner.

12       And it is my testimony that the lien interest that he

13   acquired in the RV and now the trailer demonstrates the

14   security by which I planned the transaction, that at all times

15   I intended to protect, at that time, a short term -- ended up

16   being a much longer term, but a short-term interest in the RV

17   for Mr. Turner and his wife.

18       And the name in which the lien was placed and the address

19   in which was used was information that Mr. Turner gave me,

20   which does indicate at that time or that -- scratch that, I

21   just went to argument.

22       And Mr. Turner has now possession of the RV, possession of

23   the trailer, and is marketing and trying to sell the RV to

24   recover as much of the $250,000 as the economy currently will

25   allow him to recover.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

339

LINDSEY SPRINGER - DIRECT EXAMINATION                    249

1      At no time did I ever tell anybody that they should

2  violate the Internal Revenue laws, nor did I take action in

3  furtherance of telling anybody to violate the Internal Revenue

4  laws outside the scope of what has been resolved as the jury's

5  verdict, so I don't -- I'm not giving that testimony rehashing

6  jury trial, I'm specifically speaking about in relevant conduct

7  and in directing others to violate the Internal Revenue laws,

8  that -- that there's -- there's no act that I know of where

9  anyone has said I took steps with them outside the conduct of

10 the indictment to further act in violating any Internal Revenue

11 laws.

12      I was never, to my understanding and knowledge, ever

13 required to file any -- any type of report involving the Turner

14 money.

15      At the time the wire of Mr. Turner's money was sent to

16 Mr. Stilley's account, IOLTA account, there was an agreement to

17 allow me to use the money but there was no agreement paying me

18 the money, as reflected in Mr. Gollihare's report section by

19 section of the agreement.

20      Your Honor told me yesterday that you did not need to hear

21 the Paperwork Reduction Act argument again, however --

22          THE COURT:  I didn't foreclose you from arguing.  I

23 said then, and I'll repeat, that there's nothing you can say

24 today about the Paperwork Reduction Act that will improve your

25 position with respect to sentencing.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

340

LINDSEY SPRINGER - DIRECT EXAMINATION                    250

1           MR. SPRINGER:  Thank you.  However, having said that,

2    I -- at this point, I'm going to enter evidence on the years --

3    the other years that are not covered within the indictment so

4    that I can make a record for the Tenth Circuit that I am

5    claiming the protection of the Paperwork Reduction Act on those

6    years as they relate to penalties -- in tax loss calculations

7    which results in a penalty that the Court eventually hands

8    down.

9        And Mr. Gollihare and the government both allege or state

10   that from 1990 through 1999, and then also 2006, 2007, and I'm

11   still a little lost on whether 2008 is part of this or not, but

12   I'm going to include it out of an abundance of caution, that

13   the Form 1040 for 1990, 1991, 1992, 1993, 1994, 1995, 1996,

14   1997, 1998, 1999, 2001, 2005 -- excuse me -- 2006, 2007, and

15   2008, each do not comply with the Paperwork Reduction Act.

16   They neither list any of the requirements at 5 CFR

17   1320.8(b)(3).  They are not on the face of the form, nor does

18   the form itself tell the public, which includes me, that I

19   am --

20           MR. O'REILLY:  Your Honor, objection as to relevance

21   to this line of testimony.

22           THE COURT:  I told Mr. Springer yesterday that if he

23   wants to talk about the Paperwork Reduction Act, that he will

24   be permitted to do so, and I said that again today.

25       Mr. Springer, you may not have understood me when I said

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

341

LINDSEY SPRINGER - DIRECT EXAMINATION                    251

 1  there is nothing you can tell me about the Paperwork Reduction

 2  Act that will improve your position with respect to

 3  sentencing.  In fact -- well, I'll leave it at that.

 4      And bear in mind, you've already briefed it to a fare-

 5  thee-well.  You argued it at trial, well beyond the time limits

 6  that I initially imposed, so whatever record you need for the

 7  Tenth Circuit, I just can't imagine what record you might need

 8  that is not there.

 9          MR. SPRINGER:  The only thing -- and I'm not

10  testifying now, I'm representing myself over here in making

11  that response, the only thing I'm doing is I'm making certain,

12  since it's in each year claimed that for each year that I am

13  being asked to be penalized in addition to the penalties, that

14  I have made those claims, and I draw my reasoning from the

15  Chisholm decision in 2007 --

16          THE COURT:  Mr. Springer, now you're lapsing into

17  argument.  As a matter of fact, go ahead and take the stand.

18  Standing there at the lectern is just too tempting for you to

19  lapse into argument.  So you'll complete your testimony on the

20  witness stand, please.

21      (DEFENDANT SPRINGER COMPLIES.)

22          MR. SPRINGER:  In conclusion, the -- I claim the

23  protection of Title 44, Section 3512, 1995 -- for the years

24  after -- '95 and after, and 1980s code provision from 1990 to

25  1994, and my assertion of that defense is the form does not

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

342

LINDSEY SPRINGER - DIRECT EXAMINATION                    252

1   comply.  And I'll leave it at that.  Thank you, your Honor.

2       On Government's Exhibit Number 1160, there are two items

3   in addition to the items listed on government's original

4   Exhibit 675 at the jury trial.  And one is the very first

5   listing, a $5,000 check from Believers Broadcasting

6   Corporation.  And the last notation on the same Exhibit 1160 is

7   the $12,000 that I testified about at trial.

8       At no time did I ever say that in receipt of that $12,000

9   that I was estimating annually did I ever say that I did

10  anything for anybody or that anybody expected anything in

11  exchange for that $12,000.  And for the purpose of sentencing,

12  Your Honor, I'm going by the Court's instruction on "gift" for

13  that.

14      As far as the $5,000 entry for Ken Guisendorfer, I

15  absolutely think that that is in error, that that should say

16  Carl Guisendorfer on it, because Carl Guisendorfer had not had

17  his stroke at that time.  And that's Government's Exhibit

18  Number 3 they listed out there.

19          MR. O'REILLY:  Your Honor, objection.  This is not

20  testimony, it's argument.

21          THE COURT:  Say that again, please, sir,

22  Mr. O'Reilly.

23          MR. O'REILLY:  Apologize, Your Honor.  At this point,

24  this is argument, not testimony.

25          THE COURT:  Overruled.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

343

LINDSEY SPRINGER - DIRECT EXAMINATION                                253

1              MR. SPRINGER:  Thank you.

2         And for that $5,000 from Carl Guisendorfer, I know of

3    nothing that I was expected to do or asked to do or did do for

4    that $5,000, whatsoever.  In fact, that just came in the mail

5    to me one day.  And it just is the way it happened.

6         For Government's Exhibit 1161, there are three items on

7    that exhibit that were not originally listed in government's

8    original Exhibit 676 and -- excuse me, I'm sorry, there were

9    four items.  I'm sorry.

10        I take no issue, for tax loss purposes, of the first two

11   entries of James Lake on the top two.  For the purposes of

12   getting to appeal, I concede those two numbers.

13        However, the last two from Sam Palmer for $10,000 and

14   again the various for $12,000, and I believe -- I know what I

15   heard yesterday from Mr. Shern, which is that Mr. Palmer said

16   he neither expected me to do anything for him for that money

17   nor did I do anything for Mr. Palmer for that specific money.

18        Turning to Government's 1162, there are three items that

19   are not on government's original Number 677 that was at trial,

20   and that is the first entry from Sam Palmer for 10,000 and then

21   the Windhill Management Company Trust for 400, and then the

22   12,000 not -- under various, which is the same as it was for

23   the last two exhibits, although they -- the second entry was --

24   the second entry was not on the original Government's 677, for

25   the purposes of appeal sentencing, I concede to the Arkansas

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

344

LINDSEY SPRINGER - DIRECT EXAMINATION                    254

1    IOLTA foundation of Ernest Swisher, $9,436.

2         So I take exception with the first entry of 10,000 of

3    which there is no evidence that I did anything or promised

4    anything or there was an expectation of anything in 2002 by

5    Mr. Sam Palmer or Midsummer Farms for $10,000.

6         And then the same holds true with Windhill Management

7    Company Trust for $400.  I know of nothing that they either

8    ever asked me to do or that I did for $400 or for any amount of

9    that $400.

10        And then, again, the 12,000, there's absolutely no

11   evidence, nor do I know of any evidence, for the $12,000 that I

12   estimated that people were expecting me to do anything in that

13   estimation.

14        I couldn't even begin to say what increments that thousand

15   dollars a month could come in, whether it be $50 or $25 or $75,

16   every once in a while, it would be 4 or 500, and in a very rare

17   occasion it could be up at 5,000, as Mr. Guisendorfer's check

18   once was.

19        For Government's Exhibit Number 1163, which is for the

20   gross income for 2003, there are four entries with an

21   accidental asterisks by the various listing, which I don't

22   believe was intended, although it is trial testimony.

23        I do concede to Guy Frances under the theory of the

24   government's case, because I did meet Guy Frances on an IFC

25   conference call.  So even though that wasn't a part of the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

345

LINDSEY SPRINGER - DIRECT EXAMINATION                    255

1   government's theory for tax loss calculations under the jury's

2   verdict, I concede that amount.

3        However, on Larry Simmons, which is CR Foundation, I do

4   not concede the $7,500 that was not part of Count 3.  And the

5   difference between Guy Frances and Larry Simmons is that I did

6   convince Guy Frances in conversation to file his tax returns,

7   and under the government's theory, that means I gave him advice

8   and that's what makes that, under the government's theory, a

9   taxable event.

10       With Larry Simmons, at this time, in August of 2003, I was

11  having no conversations with Mr. Simmons, other than he would

12  be on a conference call, but there was no him talking to me and

13  asking me questions about what he should do.

14       In fact, the only interest I ever remember Mr. Simmons

15  having in anything I was doing whatsoever was related to the

16  IFC case out in Phoenix, Arizona, and I remember him saying

17  that that money was for my ministry or my mission, but he never

18  said -- or there was never any conversation with me telling him

19  what you need to do and him doing it or him contacting me back

20  at that time.

21       And that's what I can remember and that's what I know.

22  Even though -- and then, again, the various for $12,000 is the

23  same testimony from the other.

24       For Government's Exhibit 1164, there is a difference

25  between original Number 679 and 1164, and out of those

LINDSEY SPRINGER - DIRECT EXAMINATION                    256

1   differences, I concede to Guy Frances' $4,000, and I concede to

2   Charles Looney's $10,500, but there's absolutely no evidence

3   that I did anything or was expected to do anything for Windhill

4   Management Company Trust for $500, which was Exhibit Number 43,

5   nor at the time of May 28, 2004, with Larry Simmons was I

6   expected to do anything in receipt of the $10,000, which is

7   Government's Exhibit Number 39.

8        So out of 130,000 on that 1164, besides the 12,000 on the

9   bottom, the 10,000 to Simmons -- or from Simmons and the 500

10  from Windhill Management Company Trust, everything else for the

11  purpose of the tax loss for sentencing is conceded at this

12  point.

13       So that would remove -- off of the 130,050, that would

14  remove $22,500 off of that number, which would leave that at

15  107,550.

16       And on Government's Exhibit 1165, I concede the Charles

17  Looney check under the same theory that I was prosecuted

18  under.  However, I do not concede --

19            THE COURT:  I'm sorry.  I didn't stay up with you.

20            THE WITNESS:  I'm sorry, 1165, Your Honor.

21            THE COURT:  Right.

22            THE WITNESS:  It's the second entry.  It says --

23  which was not on original Government 680, the Charles --

24  original Government's 680, the Charles Looney check for 13,000

25  was not on that chart and was not part of the 2005 theory they

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

347

LINDSEY SPRINGER - DIRECT EXAMINATION                    257

1   presented, but I do concede to that amount of money for the

2   purposes of sentencing based upon what I know I did do, which

3   was something in relation to Charles Looney's lawyer under the

4   theory that I was prosecuted under.

5        But the AC&R Group, which is Exhibit Number 1005, for

6   $6,000, I'm at a loss as to even who that is.  And whether that

7   hurts me or helps me in that regard, I know of nothing that I

8   ever did for AC&R Group that I can recollect or remember, nor

9   do I remember promising to do anything or exchanging anything

10  for that $6,000 on August 3, 2005.

11       Now, the original 680 had 252,000, and Government's

12  Exhibit 1165 has 296,500, and I just reduced that number by the

13  6,000.  And for the purposes of getting to sentence, 290,500 is

14  conceded on that.

15       Government's Exhibit Number 1166, for the purpose of

16  uncharged conduct only, I concede to the first entry of Patrick

17  Turner under a theory that I did convince Mr. Turner to file

18  tax returns and only for that reason, and that -- I'm not

19  saying that in conceding for the point that the 250,000 of the

20  transactions from Turner was gross income, I'm specifically

21  referring only to this $1,000 check and based upon the

22  government's theory.  I did concede on 1165 to the 192,000 and

23  the 58,000 from Mr. Turner and I'm not conceding that that was

24  part of the jury's verdict.

25            THE COURT:  Excuse me.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

348

LINDSEY SPRINGER - DIRECT EXAMINATION                     258

1          THE WITNESS:  That's on 1165.  I'm sorry about that,

2     Your Honor.  I needed to be clear on that.

3          THE COURT:  Okay.  Now --

4          THE WITNESS:  On Patrick Turner, on Exhibit 1165, the

5     government has listed the -- basically the $250,000 transaction

6     as gross income to me, and for the purposes of arriving at a

7     tax loss calculation, I'm only willing to concede that 250,000

8     for the purposes of getting to a sentence, but I'm not

9     conceding that that was gross income to me for purposes of the

10    jury's verdict, nor was it ever gross income.

11         And under intention -- I understand the jury's verdict can

12    be construed, as Mr. Shern testified, to include the 250,000,

13    although I think it could be construed otherwise.  And on

14    appeal I'm going to test that vehemently.

15         I do, however, take exception with double-dipping on that

16    250,000.  I don't think it should be -- both put on as gross

17    income for Lindsey for 2005 and then also income that

18    Mr. Turner could have paid his taxes with on top of that.  So

19    I'm making myself clear there, I do not concede the 250,000

20    gross income per the jury's verdict.

21         MR. O'REILLY:  Objection.  Repeatedly answered, if

22    not asked.

23         THE COURT:  Overruled.

24         MR. SPRINGER:  I'm just making the record clear, for

25    purposes of the jury verdict, I do not agree they found the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

349

LINDSEY SPRINGER - DIRECT EXAMINATION                              259

1    $250,000 was gross income to me, as Mr. Shern testified.

2        But for the purpose of sentencing, I do agree that the

3    250,000 could be used one time, either Mr. Turner could have

4    paid his taxes or attributing it to me, but I do not concede to

5    both for the purpose of sentencing only.

6        And now I'm back to 1166, and I'm sorry for that, that I

7    missed that spot.

8            THE COURT:  Okay.  I'm making some notes,

9    Mr. Springer, so if you would, just pause for just a moment.

10           MR. SPRINGER:  Sure.

11           THE COURT:  Thank you.  You may proceed.

12           MR. SPRINGER:  Back on Government's Exhibit Number

13   1166.  I concede I did something on the Patrick Turner for

14   $1,000 based upon the government's theory and the Court's

15   definition of "gift," and that holds true with everything I've

16   said here so far and everything I'm getting ready to say.

17       On the second entry, Herbert and Charlene Mott, $10,000, I

18   concede that I did do something for Denny Patridge under the

19   government's theory, so I concede that 10,000 for purposes of

20   appeal and sentencing.

21       I concede the 5,000 on the third entry from Denny

22   Patridge.  I concede the fourth entry from Beach Fire

23   Corporation, Lawrence Logsdon, based upon the government's

24   theory and for the purposes of sentencing and appeal.

25       I do not concede Believers Broadcasting Corporation's

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

350

LINDSEY SPRINGER - DIRECT EXAMINATION                    260

1  20,000.  I know of nothing that I did for Ken Guisendorfer, and

2  at this time, I'm certain Carl Guisendorfer had his stroke.

3       It is true that Carl Guisendorfer, in 2004, he did run

4  into difficulties with the Sales Tax Commission of the State of

5  Illinois because he had a hotel where he rented rooms for

6  whatever anybody wanted to give, and as a result of that, he

7  did not charge sales tax, and, therefore, the State of Illinois

8  was taking him to court, but he had a stroke and I am not aware

9  of any of the outcome specifically in that regard.  And that

10 time period, which was right before he had his stroke, I had

11 not received any money from Carl Guisendorfer and there are

12 none listed during that time period.

13      Le Roy Peaslee, I know nothing I did for Le Roy Peaslee.

14 I don't even remember that name.  For $250; I do not concede

15 that.

16      I concede the seventh entry, Denny Patridge, of 5,000, for

17 purposes of sentencing and appeal only.

18      I do not concede Hamlet Bennett, and I'm sure Mr. Shern

19 just misspoke on how Hamlet Bennett was introduced to Oscar

20 Stilley, but it was not through Lindsey Springer.  What I

21 learned later was that Hamlet Bennett was represented in a

22 criminal indicted case by Robert Bernhoft out of Chicago,

23 Illinois -- or excuse me, Wisconsin.  He just practices in

24 Chicago, which is where he was -- had an office, I think.

25      And what happened was Oscar Stilley was representing a guy

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

351

LINDSEY SPRINGER - DIRECT EXAMINATION                  261

1   named Bob Lawrence who was indicted in 2006, and a couple of

2   days before trial for Bob Lawrence, the United States filed a

3   motion to withdraw the indictment with prejudice, and the only

4   defense that Mr. Lawrence was raising was the Paperwork

5   Reduction Act as a defense.

6        And a day after the dismissal, Mr. Stilley told me that he

7   got a phone call from the U.S. Assistant Attorney, who offered

8   to pay all of Mr. Stilley's fees in relation to the prosecution

9   of Mr. Lawrence.  And that news traveled fast.

10       And what Mr. Bennett told me was, when he heard about

11  that, he immediately jumped ship from Mr. Bernhoft and hired

12  Mr. Stilley.

13       At the time that I received that $25,000, I was not told I

14  was expected to do anything, say anything, write anything

15  whatsoever.  And at no time have I ever had a conversation with

16  Mr. Bennett where he asked me to do something.

17       I heard his testimony at trial.  I can understand the

18  confusion about that money.  If I had not received money at

19  that size before, I probably would have questioned it, but as

20  we soon see, Mr. Bennett sends me some more money independent

21  of Mr. Stilley.

22       And, again, there's nothing that I know of that

23  Mr. Bennett asked me to do.  I do know, from talking to

24  Mr. Bennett, that he did have expectations of Oscar Stilley,

25  but Oscar Stilley only was representing him for a short period

LINDSEY SPRINGER - DIRECT EXAMINATION                    262

1   of time, because he couldn't get in as his lawyer in Hawaii,

2   and so it was Mr. Stilley who referred Mr. Bennett to Alan

3   Richey and not Lindsey Springer.

4       And so I gave that testimony for clarification on what

5   Mr. Shern had said when he thought I was the one that

6   introduced him to Mr. Stilley; that was not true.  But I don't

7   believe Mr. Shern did that intentionally.

8               THE COURT:  Now, you're saying you're thinking that

9   Mr. Shern was mistaken when he said that he thought you

10  introduced --

11              MR. SPRINGER:  Yes, Mr. Bennett to Mr. Stilley.

12              THE COURT:  Well, Mr. Bennett himself testified that

13  -- well, actually, what Mr. Bennett testified to was that

14  Stilley put him in touch with you, is that --

15              MR. SPRINGER:  The first thing I got was a check for

16  $25,000 and I had never even spoken to Mr. Bennett whatsoever.

17  And then, from there, Mr. Bennett did call me and asked me

18  about the Lawrence case and asked me about what I was doing

19  with PenaltyProtestor and Paperwork Reduction Act, and I

20  expressed to him what I was doing -- no one really understood

21  why the government dismissed the case with prejudice.

22              THE COURT:  Well --

23              MR. SPRINGER:  And so that's all I ever had a

24  conversation with him about.

25              THE COURT:  My recollection, aided certainly by my

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

353

LINDSEY SPRINGER - DIRECT EXAMINATION                    263

1    notes, is that Mr. Bennett testified that at least initially,

2    if not throughout, he only spoke with you on the telephone.

3    Mr. Stilley is the one who put Mr. Bennett in touch with you.

4              MR. SPRINGER:  That's true.

5              THE COURT:  And then he proceeded to testify about

6    his retainer, about the $25,000 purported donation, evidenced

7    by Plaintiff's Exhibit 135, and then he also testified about

8    some of the IOLTA money going to Mr. Richey, and then

9    ultimately, at least in part, back to him; is that consistent

10   with your recollection?

11             MR. SPRINGER:  Yes, it is, Your Honor.

12             THE COURT:  Okay.  Proceed.

13             MR. SPRINGER:  The same holds true about the next

14   entry on Hamlet Bennett for 45,000 that I just testified to

15   about the first one.

16       The $500 from Sam Palmer I do not concede to.

17       Todd Guthrie's I do concede to for $500.

18       I do concede the Kent Hovind, Kent Hovind and Region (sic)

19   Bank Kent Hovind, $10,000 transaction in 2006.

20       I do not concede the $5,000 from Hamlet Bennett, which is

21   Exhibit Number 57.

22       I concede the Todd Guthrie.

23       I concede the Turner at 900.

24       I do concede the Dale and Cheryl Phillips, 7,500, and I do

25   not concede this 12,000 under various.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

354

LINDSEY SPRINGER - DIRECT EXAMINATION                    264

1      So there were one, two, three, four, five items there that
2  I do not concede to for purposes of sentencing if we get to
3  appeal.
4      And then 1167, Government's Exhibit 1167, which is 2007.
5      I do concede the $100,000 on Ken Guisendorfer for 2007.
6      I concede the $400.
7      I do not concede the $20,000 from Ken Guisendorfer, which
8  is Item Number 3 and 4.
9      I concede all three Turners, but I do not concede the
10  various for 12,000.
11      So I did not concede to two Guisendorfers and one various
12  on that page.
13      Your Honor, may I have a moment to go to my table to get
14  something that I was going to testify about?
15          THE COURT:  Surely.
16          MR. SPRINGER:  I did not begin Bondage Breakers
17  Ministries and its mission until 1992.
18      I was not an ardent tax protestor in the late 1980s, nor
19  had I at any time in the late 1980s implemented a scheme
20  designed to conceal income and evade the payment of personal
21  federal income taxes.
22      As I testified at trial, had I been aware of the
23  definition of "gift" that the Court gave the jury, had I been
24  able to read that in the Tax Code, I would have structured my
25  affairs through Bondage Breakers Ministries completely

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

355

LINDSEY SPRINGER - DIRECT EXAMINATION                    265

1   different than I did.

2        It is true that my mission is to get rid of the Internal

3   Revenue Service.  I believe getting rid of district directors

4   accomplished that on its own.  However, by 2005, I had stopped

5   with that mission, had decided that I could do -- all I could

6   do, I had done.

7        I did keep records.  I did not keep ledgers.  And the

8   evidence in this case showed how many records I kept.

9        And my definition of "record" is a receipt or evidence of

10  a transaction.

11       When I cashed checks, I used one place.  I had the option

12  of using 50 different places.  I had no option of opening up a

13  bank account under my social security number, because, at that

14  time, the IRS, if they had a lien against you, then the banks

15  were not interested in opening up an account with you.  In

16  fact, I had had two accounts closed because the banks were made

17  aware that the IRS had placed a lien notice against me.

18       At all times, I knew Mr. Delozier kept accurate records of

19  every transaction that I participated in, every one of them.

20  Even when I knew he was being audited by the IRS in 1997, I

21  continued to use Mr. Delozier all the way up until he closed

22  his business.

23       At no time -- and he told me they were summoning records

24  about me, and for 10 more years or 11 more years I continued to

25  use the place the government knew I did my banking.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

356

LINDSEY SPRINGER - DIRECT EXAMINATION                    266

1              THE COURT:  Hold on for just a minute.  Proceed.

2              MR. SPRINGER:  At no time was the phrase "donation"

3    or "gift" designed to mislead the IRS in any way.  And in most

4    instances, a large number of the transactions did not have that

5    notation on them, and I always had the option of handwriting it

6    in in the memo and I chose not to do it, because it's not

7    something that by putting it on the check changed anything

8    about the transaction.

9         At the time, in 1995 and 1996, when I began to learn the

10   difference between "donation" and "gift," I had been involved

11   in a lawsuit with the United States and several plaintiffs, and

12   the United States had appointed Robert D. Metcalf to speak to

13   me on behalf of the government.  Judge Holmes was the judge.

14        And I developed a relationship of being able to call

15   Mr. Metcalf on the phone and ask him questions not only related

16   to me, but in other people's lives, to try to help get them and

17   their situation straightened out.  I took his advice seriously

18   and I passed it along every time.

19        Truth be known, Mr. Metcalf probably helped save the

20   government literally tens of millions of dollars in taxes by

21   what he told me to tell people to do.  Whether they were late

22   or not did not matter, it was how could we get this person back

23   to a place where -- that they could go on with their life.

24        And Mr. Shern testified about why sometimes I would say

25   one thing to one person and sometimes something to somebody

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

357

LINDSEY SPRINGER - DIRECT EXAMINATION                    267

 1  else, it was because I wasn't to form -- and I guarded against

 2  forming their beliefs.  Whether it be what I believed, if they

 3  asked me, I would tell them.  But I was not a promoter of my

 4  beliefs to be their beliefs.

 5       And I would always tell people that if you had gross

 6  income, as Mr. Stilley stated, "adjusted gross income" is the

 7  phrase that appears on the 1040 form, and Judge Pannell was the

 8  judge in the case in Atlanta, who pointed out to Mr. Miller

 9  that it was not gross income, but adjusted gross income, which

10  a person will determine whether they're required to file.  I

11  believe that with all my heart that that's an accurate

12  statement by Judge Pannell.

13       I was never ever assessed by the IRS or the United States

14  for tax years 1990, 1991, 1992, 1993, 1994 or 1995.  In

15  discovery, I sought to get it, and the answers that I received

16  from Mr. Metcalf and Mr. Strong is they are still looking for

17  it.

18       To me, an assessment is what the law says an assessment

19  is, not what I think it is.  An assessment is a summary record

20  recorded in the Office of the Secretary under 26 CFR 301.6301,

21  '02, and '03.  It's most commonly referred to as a RAC 006, as

22  mentioned in the Tenth Circuit Court of Appeals cases on the

23  subject.

24       In order for a lien to arise as a matter of law, there is

25  supposed to be an assessment recorded in the Office of the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

358

LINDSEY SPRINGER - DIRECT EXAMINATION                    268

1   Secretary.

2          MR. O'REILLY:  Your Honor, objection.  This appears

3   to be argument and I'm not clear how it's relevant at this

4   point.

5          THE COURT:  Sustained on relevance.

6          MR. SPRINGER:  Okay.  I never received any notice and

7   demand for payment for 1990 through 1995 at my last known

8   address, which was 5147 South Harvard, Number 116, Tulsa,

9   Oklahoma 74135.

10     Defendants' Exhibit Number 19, page 1, shows the address

11  that the IRS used to mail me a notice of deficiency for 1990

12  through 1995, but that is not the address they used after

13  that.  That is why I received a release of lien certified by

14  the Secretary of Treasury when I asked for it.

15     I do concede that the word "volunteer" early on in my

16  ministry in 1992 and '93 was a word that I did use when I spoke

17  publicly, but I derived that word from the Commissioner's words

18  in the instruction booklet for '92 and '3.  It wasn't my word.

19  I stopped using that word when the Commissioner stopped using

20  that word in 1994.  The word still appears at 26 CFR 601.107,

21  but because it's not publicly stated, I don't use that phrase.

22         THE COURT:  Let me interrupt there with a question.

23  You've testified that you used the word "volunteer" because you

24  picked it up -- I don't know if it's from that cover letter

25  that comes from the 1040 or what, back in '92 or '93, but in

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

LINDSEY SPRINGER - DIRECT EXAMINATION                    269

1   any event, you picked it up because it was the Commissioner's

2   word.

3           MR. SPRINGER:  Right.

4           THE COURT:  On that basis, did you suggest to other

5   people that compliance with the tax laws was voluntary?

6           MR. SPRINGER:  No, sir, I did not.  But what we did

7   do, a large group of us -- and I, in the initial phase, was not

8   the leader of this group, but there was 71 of us and we took

9   that issue into federal court to former District Court Judge

10  Michael Burrage.  We brought it to his attention what it said

11  and many of us wanted to know what that meant.

12      And once we got our -- the first time we asked, we had to

13  go back and do something administrative, and so he dismissed

14  without prejudice, and so then we did what he told us we didn't

15  do.  We went back and asked again, he gave us a ruling, and we

16  all abided by that ruling.

17          THE COURT:  When you say back in '92 and '93 you used

18  the word "volunteer," then tell me how you used it.

19          MR. SPRINGER:  In a complaint in federal court on

20  April 8, 1994, 71 of us signed a complaint using the word

21  "voluntary" from the Commissioner's words and asking the Court

22  was that correct.

23          THE COURT:  Proceed.

24          MR. SPRINGER:  I have not placed any assets in

25  anybody else's name but my own.  There is a house that I lived

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

360

LINDSEY SPRINGER - DIRECT EXAMINATION                    270

1   in for 14 years, but I never placed that from my name into a

2   trust.

3       That property was purchased by a trust from the beginning

4   with money that was given specifically for that purpose.  There

5   were two women who gave us the money to put down for that piece

6   of property, and the objective was -- is that no matter what

7   happened to me, my family would always have a place to live.

8       The money that I received that was the subject of this

9   trial, whether it be purchasing cars or the RV, every one of

10  those vehicles was put in my name.  The government could have

11  seized that property at any time.  There was nothing stopping

12  it.

13      Mr. Rice filled out a complete report on the subject

14  matter and said that there was over $250,000 worth of assets

15  that he could seize at any time that he wanted to.  Why he

16  didn't has nothing to do with me.  He had the green light from

17  the word go.

18      I do understand now under the Court's definition of "gift"

19  why the government treats the income that I received as gross

20  income.  I don't really think -- well, I know I didn't fully

21  understand it, even at the time that I met with Mr. Shern and

22  Mr. O'Reilly on January 15, 2009.  And it didn't take the trial

23  to change my opinion, it took the Court's instruction that

24  changed my opinion.  And from 2006 forward, how I've answered

25  the questions as to tax loss on those charts is based upon the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

361

LINDSEY SPRINGER - DIRECT EXAMINATION                    271

1   Court's definition.

2       Mr. Hedberg was indicted in, I believe, 1997.  He had

3   absolutely no money and did not know what to do.  And he was

4   truly the first case that I ever witnessed from a criminal

5   context.

6       I was sitting in the pews and Mr. Hedberg was shuffling

7   papers around and he didn't know what to do and he turned to

8   me -- and I'm just watching.  He turned to me and he asked the

9   judge, could he come up and help me shuffle papers.  And the

10  judge said yes.  And that was my first experience with sitting

11  at a counsel's table, and I shuffled papers for two days for

12  Mr. Hedberg.

13      At no time during that trial did I ever ask to be paid any

14  money or was there any suggestion I was going to be paid money

15  at some future event.

16      I did not know when Mr. Hedberg got out of jail and I did

17  not know when his father died.  But when he called me and told

18  me that he and his father were not -- they did not get along

19  and he had this 111,000 check and he asked me if I would use it

20  for purposes that I was using money for already, why would I

21  say, no, I won't?  I had to say, yes, I would.  I would be a

22  fool not to receive that money in the very rare occurrences

23  that it comes in like that.

24      Two or three years ago, which this is 1997 when he's

25  charged; 1998 when he goes to trial; and late 1999 when his dad

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

362

LINDSEY SPRINGER - DIRECT EXAMINATION                    272

1   dies, he gets out of jail and gives me this check for

2   $111,702.  It wasn't until six or seven years later that

3   Mr. Hedberg did call me and start asking me questions, because

4   the State of Illinois was after him for not filing tax

5   returns.  And he did not like the answer that I gave him, which

6   was he needs to go file his tax returns.  But at no time did I

7   tell him to go file tax returns as an exchange for the $111,000

8   check that he gave.

9        I did find out for the first time in March of 2000, when I

10  introduced Oscar Stilley to Eddy Patterson, I did find out that

11  day that Oscar Stilley did not file tax returns.  But as

12  Mr. Gollihare reports, how Mr. Stilley and I got where we were

13  was two different paths.

14       We were -- he came from the Irwin Schiff position, which I

15  totally rejected, and I came from the position where I was only

16  going to accept money as long as I could accept it under the

17  form of a gift.

18       Mr. Patterson did ask both of us if we filed tax returns.

19  I responded that the way I get money I'm not required to

20  because I treat it as a gift.  I never told Mr. Patterson that

21  I received gross income and that I don't file tax returns.

22       I don't remember everything Mr. Stilley said in response

23  to Mr. Patterson's question, but I do remember Mr. Patterson

24  making the statement later on during his trial where he said,

25  Well, if Oscar Stilley doesn't have to file, then why do I?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

363

LINDSEY SPRINGER - DIRECT EXAMINATION                      273

1   And that is the only conversation I ever remember about filing

2   tax returns with Mr. Patterson.

3        I am the person who convinced him to file his tax

4   returns.  I had to get him past abortion first, because that's

5   why he didn't want to file his federal tax return.  And that's

6   not an easy task when I, myself, am against abortion.

7        And the reason why he filed an extension request was

8   because I asked him to at least file something until he figures

9   out what he's going to do so he doesn't have any more problems

10  with filing.

11       I had nothing to do with him actually filing an extension

12  request.  I believe his CPA did that.  And there was a

13  coordinated effort between myself and the CPA to convince him

14  to file his returns.

15       The reason why they weren't filed until 2003 is because

16  unfortunately or fortunately, the person that I went and found

17  to -- which I referred many people to, was Cynthia Hess from

18  TU.  She had health problems and I didn't know that.  And so

19  she would work for a week and then she would be bedridden for a

20  month.  And she had some illness.  I don't know what it was.

21       But Barbara Hodsden, who also was referred by me to

22  Cynthia Hess, also testified that that was the one problem she

23  had with Cynthia Hess was getting her tax returns completed

24  faster because of her health problems.

25       So Mr. Patterson not filing his returns until 2003 for the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

364

LINDSEY SPRINGER - DIRECT EXAMINATION                    274

1   year 2000, which should have been filed at least by October of

2   2001, had nothing to do with any act or conduct of Lindsey

3   Springer.  In fact, the opposite is true.  I was pushing him to

4   actually do it.  If you wanted to say I provided any service to

5   Mr. Patterson in 2000 and 2001 and 2002, that's it.

6       I was not privy to any of the representations of Oscar

7   Stilley.  With Mr. Patterson, they were all sealed grand jury

8   stuff going on.  I was not given documents.  I was not told

9   about things.  In fact, I didn't know Mr. Patterson was getting

10  indicted until after he got indicted.

11      The statement that Mr. Patterson hired me in 2003 when he

12  was indicted is erroneous.  And that I -- the statement that I

13  introduced him to Mr. Stilley in 2003 is also erroneous for the

14  criminal case.

15      Mr. Stilley had been billing Mr. Patterson for three years

16  prior to that indictment.  Mr. Patterson had three years of

17  knowing whether he wanted Oscar Stilley to represent him in his

18  criminal matters.  Mr. Patterson is the one who hired

19  Mr. Stilley to represent him in his criminal case, not Lindsey

20  Springer.

21      Mr. Patterson never hired me when he was indicted.  And

22  the records show and the evidence shows that it wasn't until

23  late July, when Mr. Patterson had a transaction of $112,000 in

24  money that he had received from cashing in some royalties, I

25  think the testimony showed, I did receive $15,000 from that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

365

LINDSEY SPRINGER - DIRECT EXAMINATION                    275

1   money initially.  But I was never told it was because I was

2   being hired.

3        It is true in October of 2000 -- September and October of

4   2003, when Judge Eagan was assigned when Judge Cook stepped

5   down, that I did take a very active role in Mr. Patterson and

6   Mrs. Patterson's case, and that's because I felt sorry for

7   them.

8        At the time I did that, I had no idea that their errors

9   and omissions insurance policy was going to be bought for

10  500-and-some-thousand dollars a month later.  I had no clue.

11       And this is my trial testimony, but Dick Clark and I

12  together were out trying to raise money to pay for the

13  Pattersons' lawyers because they didn't have any.

14       When you go through a three-year investigation and the

15  bank shuts you down on everything by the IRS, you have no place

16  to turn to get money, which is usually customarily what I ran

17  into in every case that I either watched, witnessed, or in the

18  government's theory, provided a service in.

19       I did provide service to James Lake under the government's

20  theory, but James Lake is a liar.  Mr. Shern testified

21  yesterday that Mr. Lake did go to trial, did hang a jury, and

22  did go back a few days later and plead guilty.  Mr. Lake

23  testified that that did not happen at his trial.

24            THE COURT:  Now, say that again that you're

25  attributing to Mr. Lake's testimony.

LINDSEY SPRINGER - DIRECT EXAMINATION                    276

1          MR. SPRINGER:  Mr. Lake testified that he pled guilty

2    to charges caused because of Oscar Stilley's representations

3    and my representations to the jury, and Mr. Lake actually fired

4    Oscar Stilley -- since he, in my understanding, never had hired

5    me, there's no evidence of him firing me -- but we sat in the

6    back of the room and watched the first trial and watched

7    Mr. Lake lie through his teeth over and over again about

8    evidence.

9        I have a videotape that I prepared to play at the jury

10   trial of Mr. Lake of which I decided not to, which is -- has me

11   on it cross-examining Mr. Lake on why he doesn't file tax

12   returns, and I was trying to show --

13          THE COURT:  Let me interrupt there for the sake of

14   clarification.

15          MR. SPRINGER:  Sure.

16          THE COURT:  When you characterize Mr. Lake as a liar,

17   then, and suggest that he gave false testimony under oath,

18   you're referring to his trial, then, as opposed --

19          THE WITNESS:  No, no, no.  He sat in this chair and

20   said he pled guilty -- he looked at that jury square in the eye

21   and said he pled guilty solely because of the

22   misrepresentations of Oscar Stilley and Lindsey Springer and

23   that is not what happened.  Oscar and I were sitting in the

24   elevator, the Department of Justice lawyer in the case was with

25   us and told us that he was coming back on Monday after he hung

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

367

LINDSEY SPRINGER - DIRECT EXAMINATION                277

1   the jury and he was going to charge him with obstruction of

2   justice for lying in that jury trial.

3            THE COURT:  On the subject of Mr. Lake, then, let me

4   inquire as to one matter that he did testify to last fall in

5   this case.  He said that, among -- obviously, among other

6   things, that you prepared documents on his behalf and

7   Mr. Stilley filed them and that he paid about $38,000 to you

8   and $65 or $70,000 to Mr. Stilley.  Do you take issue with

9   Mr. Lake's testimony on those points?

10           MR. SPRINGER:  Yes, but only to a certain degree.  I

11   did prepare three documents in their very basic stage and I did

12   forward those to Mr. Stilley.  I do believe one of them with

13   Mr. Stilley's amendments did get filed with the court.  The

14   other two, I don't know what happened.  But after that, there

15   was nothing that got filed that was accepted or received by the

16   court.  My understanding was Mr. Stilley was having a very

17   difficult time getting in that case.

18           THE COURT:  Very well.  You may proceed.

19           MR. SPRINGER:  And I would add one thing to that.

20   When I first met Mr. Lake, he sent me a boxful of documents

21   that he had filed in his criminal case, and I forward those on

22   to Oscar Stilley, and they were not drafted by me.

23       I did sit at counsel's table in the Swisher trial and I

24   did, during breaks, as I customarily had done in every case I

25   had been in, gave my opinion about anything that I saw to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

368

LINDSEY SPRINGER - DIRECT EXAMINATION                       278

1   whoever would listen.

2       I did help in the initial phases with Art Hawkins.

3   Mr. Hawkins did lie about two things:  One, that I represented

4   him at his sentencing hearing, which was clearly and

5   erroneously stated, as his wife clarified; and, two, that I

6   told him I was a lawyer.

7       And there are two memos that Mr. Shern -- or the

8   government turned over to us interviewing Mr. Hawkins.  In the

9   first one, he admitted that he thought I was in a ministry on a

10  mission and the second one he said I told him I was a lawyer.

11      The influence of the government in that situation, it begs

12  the question of what motivated him to do that.  But I've never

13  told anybody I was an attorney, licensed or otherwise.  In

14  fact, I always get scolded because I tell people I'm twelfth-

15  grade educated.  Why do you tell people that, they would say.

16  And I would say that's because that's the truth.

17              THE COURT:  Mr. Hawkins testified that in this case

18  that he received a typewritten memorandum that was in evidence

19  as Government's Exhibit 204 and that this was, in his words, a

20  joint letter from Oscar Stilley and Lindsey Springer.  Do you

21  recall that letter or that memorandum?

22              MR. SPRINGER:  Yes, I do.  Yes, I do.

23              THE COURT:  And was his -- did he accurately describe

24  it as a joint letter from Oscar Stilley and Lindsey Springer?

25              MR. SPRINGER:  No.  But, Your Honor, Oscar did that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

369

LINDSEY SPRINGER - DIRECT EXAMINATION                    279

1   because he didn't know the Hawkins.  I'm the one that

2   introduced him to the Hawkins.  And that's why he put it on

3   there.

4        For a short period of time, when Oscar was representing

5   Mr. Hawkins, Mr. Stilley would call me and ask me questions.

6   In fact, it became so routine, if you look on his billing

7   statements, he constantly was calling me.  And Mr. Stilley just

8   recognized that I will answer any question asked upon me.  I

9   took his calls just like I took anybody else's.

10             THE COURT:  Were you aware of the contents of that

11   letter at or at any time near the time it was given to

12   Mr. Hawkins?

13             MR. SPRINGER:  No.  But I was made aware of it

14   several months later, and at that point, there was nothing that

15   I could say or do about it.  And I really didn't even consider

16   it to be an issue because of where I was and what I thought at

17   that time, but I had nothing to do with my name being on that

18   letter -- that document.

19             THE COURT:  Thank you.  Proceed.

20        While we have a pause, I'll say, Mr. Stilley, if you elect

21   to testify during this sentencing proceeding, I will -- I would

22   be curious as to whether you concur with Mr. Springer's denial

23   of contemporaneous knowledge of this letter.

24        You may proceed.

25             MR. SPRINGER:  There are times when I would receive

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

370

LINDSEY SPRINGER - DIRECT EXAMINATION                    280

1  e-mails from Oscar asking me to read something, and nine out of

2  ten times I would read it and then I would either e-mail him

3  back and say what I thought or I would call him on the phone.

4      And what I didn't know was every time I did that he was

5  billing his client.  I understand why he did because that's

6  what lawyers do, but had I known that, I would have acted quite

7  differently on the subject.

8      I thought he was taking advantage of the resource of

9  whatever he thought was in my head or my ability or my thoughts

10 and not that that was translating to he was on the clock for

11 his clients.

12     When I learned that, obviously, as you can see in the

13 notation in his records, things changed, because the numbers of

14 Oscar-talked-to-Lindsey went from almost four or five or ten

15 times a day, possibly, to once a week.

16     I do agree I possess a special skill.  I don't know how I

17 got it, I don't know why I got it, but I can read through that

18 tax code and those regulations and remember them like there's

19 nobody's business.  And it happened after I read the Bible.

20 It's just something that happened.  I can't explain it.  It's

21 definitely not in my schooling or my chart, and the poison is,

22 once I read it, I can't forget it.

23     At no time did I ever use that special skill, though, to

24 cause anyone or persuade anyone to violate the Internal Revenue

25 laws.  Nine times out of ten, I found them -- they were just

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

371

LINDSEY SPRINGER - DIRECT EXAMINATION                    281

1   confused with no one to talk to about it.

2        When I testified at trial, I did not commit perjury on the

3   witness stand.  The word "income" and the word "gross income"

4   and the words "adjusted gross income" all have specific meaning

5   to me.

6        Most of the public uses the word "income" and "gross

7   income" and "taxable income" and "adjustable income" as all

8   meaning the same thing, but each one of them means something

9   totally different in the law.

10       And so when I read the term "gift" in 1996 or '7 for the

11  first time, before that, I was using the phrase "donation

12  only," I went to Section 102, after being made aware of it by

13  Robert D. Metcalf, and it said that all gifts bequeathed in

14  inheritance are not included within the calculation of gross

15  income.

16       So although I considered gifts and donations to be income,

17  I did not consider them to be gross income under my definition,

18  which was what I was left to, because Congress didn't define it

19  and the Secretary of the Treasury has not defined it by

20  regulation.  And that is how I found the Duberstein decision to

21  help guide me.

22       So when I told the jury that I did not treat the money

23  people gave me as gross income, that was not the same as what

24  is being said I said in written form, which is I said I had no

25  income, all I received was gifts and donations, because all

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

372

LINDSEY SPRINGER - DIRECT EXAMINATION                    282

1  gifts and donations are income, they're just excluded from the

2  calculation of gross income, under my understanding prior to

3  this trial.

4      During the trial, Mr. Patterson testified about three

5  checks that he gave me for $10,000 apiece and that he said I'm

6  the one that told him to put "donation" on the check.  And, in

7  fact, in the conversation I asked him to make certain that any

8  money he gave me was a donation.  But what I did not do is ask

9  him to write the letter that accompanied the check.  He did

10  that on his own.  And that letter specifically stated, "Please

11  accept this donation for your suffering of" -- whatever.  I

12  forget the exact words.  But I had nothing to do with

13  Mr. Patterson's insistence on the letter of donation.

14      Every time anybody ever asked me any questions, whether it

15  be Donna Meadors, whether it be Brian Shern, even

16  Mr. O'Reilly, I answered their questions to the best of my

17  ability at that time.

18      I never denied any of the transactions of money that was

19  given to me.  Never.  In fact, just like the $12,000 and the

20  word "various" on the government's charts, it's me -- what I'm

21  saying is what's being used.

22      I always thought that after I learned in September '05 the

23  government's position on the criminal side, at least what I saw

24  them -- Mr. Shern saying to me when he was interviewing me, I

25  always thought that that was a legal point of contention

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

373

1  whether or not something was or wasn't a gift.  I did not know

2  it wasn't a gift until proven otherwise.

3       And I also always thought after that day, as I did

4  research, because it was so compelling and shocking of what I

5  went through that day, that there was no quid pro quo, there

6  was no this-for-that.  Whether they had given me money or not,

7  I would always help anybody if they called and asked me with

8  anything that I could help them with.  Sometimes they just

9  didn't like what I had to say.

10      I did not ever enter into an agreement with Oscar Stilley

11 in 2000 to do anything, except I agreed to help Dr. Roberts in

12 any questions that Oscar Stilley had.

13      And although Oscar is one of the attorneys, in a week's

14 time I could get a call from ten different lawyers in the

15 country.  And they weren't all the same.  I still get calls to

16 this day, I just have to reject them because of my bond

17 conditions.

18      I'll be quite honest with you, the Sentencing Guidelines,

19 especially the difference between the report that Mr. Gollihare

20 wrote and the government's objections, have confused me to the

21 point of just complete chaos.

22      If I'm disputing what the government has to say, then I

23 still have to deal with what Mr. Gollihare had to say because

24 they don't agree.

25      And although I'm not dissatisfied that they don't agree,

Tracy Washbourne, RDR, CRR
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

374

LINDSEY SPRINGER - DIRECT EXAMINATION                284

1    I'm glad that Mr. Gollihare is not a rubber stamp for the

2    Department of Justice.  I think that's a great thing that the

3    country needs to know.

4         But whether something is inside or outside relevant

5    conduct, Your Honor, especially on the conspiracy charge, it

6    just -- I've read Mr. Gollihare's report, I read

7    Mr. O'Reilly's objections to his report, and I guess I walked

8    out thinking I could do better.

9         I never abused a position of public or private trust.  To

10   the degree that we have any definition for those phrases, I

11   would never intentionally do that.  Understanding what the

12   guidelines explain that to be, I don't fit within those

13   guidelines.

14        I'm not aware of a single penny that I ever gave to Oscar

15   Stilley that had already been classified as gross income to

16   Lindsey Springer under the government's theory for the purpose

17   of Oscar Stilley holding that money so the government could not

18   get it, seize it, find it.

19        And in every instance, except one for -- I think there

20   were six money orders for $350 that Mr. O'Reilly asked me about

21   at trial -- any of the money that came from Mr. Stilley's IOLTA

22   account was never considered to be even gross income to me

23   until that check was written to me, whether it be the money

24   that Mr. Patterson, as Mr. Gollihare puts in his report,

25   directed Mr. Stilley to give me -- and that statement that I

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

375

LINDSEY SPRINGER - DIRECT EXAMINATION                    285

1   just made is notwithstanding the loan agreement of Mr. Turner

2   and the way that has been characterized.  I obviously don't

3   agree that was gross income or income.

4       It never became -- as Mr. Gollihare puts in his report,

5   there were parts of that agreement that never took place, like

6   the -- there's a gift part of the loan gift agreement, and

7   because Mr. Turner was never indicted, I never received any of

8   that money as something I could keep.  This is why he claimed

9   and took the RV back.  And that was the gift side of the

10  agreement, which, by the way, that agreement was written by

11  both Mr. Turner and myself.  That was not just written by me.

12          THE COURT:  Let me make sure I understand a point you

13  made with respect to Mr. Turner earlier today.  When was the RV

14  actually repossessed?

15          MR. SPRINGER:  April 6th is when he and his son came

16  down and picked it up and drove it back to Michigan.

17          THE COURT:  So a little over two weeks ago?

18          MR. SPRINGER:  Yes, sir.  As I explained to him, it

19  was such a hot button for me, I could say or do nothing about

20  it.  And he called me one day and asked me would I stand in his

21  way and I said absolutely not.

22          THE COURT:  Bear with me just a minute.

23          MR. SPRINGER:  Sure.

24          THE COURT:  You may proceed.

25          MR. SPRINGER:  Thank you.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

376

LINDSEY SPRINGER - DIRECT EXAMINATION                    286

 1          MR. O'REILLY:  Your Honor, has Mr. Springer finished
 2  his --
 3          MR. SPRINGER:  I'm sorry, just one more second.  I'm
 4  just about done.
 5          THE COURT:  Very well.
 6          MR. SPRINGER:  I know that it is not something the
 7  Court said it would consider as relevant conduct, but I -- for
 8  whatever weight it has, if it has any, in Washington, D.C., in
 9  the Department of Justice, there are at least one and possibly
10  two or more people that know I have helped collect literally
11  millions of dollars for the United States that they would not
12  have had an easy task at collecting otherwise.  I know it's not
13  to the relevant side, but it is something that I would like the
14  Court to -- in Mrs. Hodsden's testimony, for example, she paid
15  her taxes solely because of me.  Mr. Sal Pizzino, solely, it
16  was completely at the other end of the spectrum, he paid his
17  taxes, interest and penalty on both, because of me.
18      Those are just a couple of examples that made their way
19  into the court case because those were people who actually gave
20  me large sums of money in comparison to others who did the same
21  thing but gave me no money.
22      But there are, literally, an uncountable number of people
23  over the last ten years that have at some times got angry with
24  me over it, but still went ahead and did it anyway.  And I just
25  thought that was worth making a factual presentation on.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

377

LINDSEY SPRINGER - DIRECT EXAMINATION                    287

```
 1        Your Honor, may I have just a moment with standby

 2   counsel?

 3             THE COURT:  Surely.

 4             MR. SPRINGER:  No further questions of myself, Your

 5   Honor.

 6             THE COURT:  There's one matter I'm going to inquire

 7   about before we have cross-examination, then we're going to

 8   recess for lunch.

 9        I'm going to hand the clerk a copy of Government's Exhibit

10   204 and I'll ask the clerk to hand it to the witness.

11        And I'll ask you, Mr. Springer, to review that exhibit and

12   tell me concisely -- this really doesn't call for argument or

13   any great deal of elaboration -- of whether there's anything in

14   this exhibit that you attribute to Mr. Stilley.

15             MR. SPRINGER:  No.

16             THE COURT:  Now, you say no --

17             MR. SPRINGER:  I'm actually the author of this

18   letter.

19             THE COURT:  Okay.  Okay.  Of 204?

20             MR. SPRINGER:  Yes, sir.  Yes, sir.

21             THE COURT:  Okay.  Very well.

22             MR. SPRINGER:  If you were referring to this letter

23   before, I was unclear on that.

24             THE COURT:  Okay.  So this was written by you?

25             MR. SPRINGER:  Yes, sir.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

378

LINDSEY SPRINGER - DIRECT EXAMINATION                     288

 1          THE COURT:  Now, tell me -- that is helpful

 2   clarification.  Now tell me, then, to what extent did

 3   Mr. Stilley have knowledge of this letter or its contents?  It

 4   shows a fax header of December 16, 2002.  To what extent did

 5   Mr. Stilley have knowledge of this letter or its contents at

 6   the time that it was provided to Mr. Hawkins?

 7          MR. SPRINGER:  I would have sent a definitely

 8   watered-down version in answering Mr. Hawkins' questions, which

 9   he asked reasons why he could go to Tom McQueen with

10   substitution-of-counsel request, and I'm not aware of what the

11   initial language was, but I remember having one paragraph.

12          THE COURT:  Perhaps you didn't understand my

13   question.  My question was very simple:  To what extent did

14   Mr. Stilley have knowledge of this letter or its contents at

15   the time that it was provided to Mr. Hawkins?

16          MR. SPRINGER:  Fully aware of it.

17          THE COURT:  We'll take our midday recess at this

18   time.  We'll recess for one hour.

19      Again, my watch doesn't quite agree -- well, actually,

20   it's -- I think maybe the clock on the wall has been adjusted a

21   little bit.  My watch is pretty close to the clock on the wall,

22   so be guided by the clock on the wall.

23      We'll resume at a quarter after the hour.

24      Yes, Mr. O'Reilly?

25          MR. O'REILLY:  Just for sequence, will Mr. Stilley be

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

379

LINDSEY SPRINGER - CROSS BY MR. STILLEY                    289

 1  crossing before the government?

 2          THE COURT:  I think perhaps it would help move things

 3  along in an orderly way for Mr. Stilley's cross-examination to

 4  be next, if you have any cross-examination at all for

 5  Mr. Springer.

 6      Court will be in recess for one hour.

 7          MR. SPRINGER:  Judge, may I show this to

 8  Mr. Stilley?

 9          THE COURT:  Surely.

10      (RECESS HAD)

11          THE COURT:  Good afternoon.  Mr. Stilley, do you have

12  any cross-examination for Mr. Springer?

13          MR. STILLEY:  Briefly, Your Honor.

14          THE COURT:  Very well.  Mr. Springer, you'll please

15  come back to the stand.

16          MR. SPRINGER:  Yes, sir.

17                    CROSS-EXAMINATION

18  BY MR. STILLEY:

19  Q.   How did you meet Art Hawkins?

20  A.   Paul Stumpo and Michael Burt were in his prayer group and

21  they all three contacted me after Art Hawkins received a PSR in

22  his case that said they were going to be getting 10 to, I

23  think, 15 years in prison.  And so after his lawyer told him

24  that's what he was going to get, the three of them called me,

25  and then I referred them to you.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

380

LINDSEY SPRINGER - CROSS BY MR. O'REILLY                    290

1    Q.   And how did you introduce Oscar Stilley to Art Hawkins?

2    A.    Initially, it was with a phone call, and then

3    Mr. Hawkins -- after the phone call, there were things that

4    were memorialized in writing by the phone call at his request

5    and that ended up being the letter that we spoke about, Exhibit

6    Number 204.

7    Q.   And why was Oscar Stilley's name on that letter?

8    A.    It was -- Mr. Hawkins had requested that in his initial --

9    basically explained to him what you're going to do for him when

10   you take a lead role with Tom McQueen in his case.

11   Q.   Now, Mr. Hawkins did put some money in IOLTA for Oscar

12   Stilley, correct?

13   A.   I believe the evidence in this case showed that.

14   Q.   Did any of that money from Hawkins flow out of IOLTA to

15   you?

16   A.   I never received a dime out of any IOLTA account regarding

17   Art Hawkins.

18           MR. STILLEY:  Your Honor, could I have a moment?

19           THE COURT:  You may.

20           MR. STILLEY:  Pass the witness.

21           THE COURT:  Mr. O'Reilly.

22           MR. O'REILLY:  Thank you, Your Honor.

23                     CROSS-EXAMINATION

24   BY MR. O'REILLY:

25   Q.  Mr. Springer, you've testified that you were never

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

381

LINDSEY SPRINGER - CROSS BY MR. O'REILLY                    291

1   assessed by the IRS for the years '90 through '95?

2   A.    That is true, I never received an assessment from the IRS

3   from 1990 through 1995.

4   Q.    Haven't you, in fact, lost your civil court case with

5   respect to that contention and, in fact, you have been found to

6   owe that money?

7   A.    There were incomplete 4340s and that's the point on appeal

8   that Judge Kearns did not address.

9   Q.    The question was:  Did you lose that in the civil case?

10  Were you found to owe the money to the IRS?

11  A.    Judge Kearns ordered that they could seize the house that

12  I live in.  That was what that case was about.

13  Q.    When was that final action taken?

14  A.    March 3rd -- no, March 16, 2010.

15  Q.    So just over a month ago?

16  A.    That's true.

17  Q.    With respect to the reclaiming of the RV -- or the

18  claiming of the RV by Mr. Turner, first of all, you purchased

19  that in August of 2005, correct?

20  A.    August 15 or 16, 2005, that is correct.

21  Q.    You did not create the lien interest with respect to

22  Mr. Turner until December of that year; is that correct?

23  A.    Until I could register it, that's correct.

24  Q.    And that was after you were aware that the IRS was looking

25  at you criminally?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

382

LINDSEY SPRINGER - CROSS BY MR. O'REILLY                       292

1  A.   Three months after, actually.  Yeah, I was aware on

2  September 16, 2005, when they raided my home.

3  Q.   Mr. Turner never sought to collect or to make a claim on

4  that lien in all the time until two weeks ago?

5  A.   No, actually, at least a couple of years ago, and I could

6  not make the payments anymore, he actually asked me to try to

7  sell it.  I testified at trial to that.  We just did not get

8  enough money offered.  And then in 2008, the economy really

9  went downhill quick and so we just paused on it.

10 Q.   I'm just wondering why would you -- why would he and you

11 wait until April of 2010 for him to finally come and pick up

12 this RV?

13 A.   Well, I would say it has something to do with this

14 criminal case and he also knew I had to vacate the house.

15 Q.   With respect to his criminal case?  Does he have --

16 A.   No, this criminal case we're in.

17 Q.   On your criminal case.

18 A.   And then I was ordered to leave a 20-acre piece of

19 property and there was just nothing else -- I couldn't just

20 park it anymore, what else can I do with it?  So I told him, I

21 said, look, I'm either going to have to put it in an RV park or

22 something like that and he said he would just come down and get

23 it.

24 Q.   Now, you went through and identified all of the checks

25 with respect to -- they're attributing to you as income in the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

383

LINDSEY SPRINGER - CROSS BY MR. O'REILLY                                    293

1   government's exhibits --

2   A.   As gross income.

3   Q.   As gross income.  That were not put into evidence at

4   trial.  And you've identified those -- for purposes of

5   sentencing, I think you concede are gross income?

6   A.   The ones I did concede to, I did concede based upon the

7   government's, you know, theory at trial.  I would agree that

8   they are gross income.

9   Q.   Why the caveat about the "government's theory at trial"?

10  A.   Well, for purposes of appeal, I'm maintaining that it

11  should have been at least a quid pro quo proof or -- there's a

12  case at the Tenth Circuit that says that somebody could give

13  you a certain amount of money, you could do something for it

14  but not earn the whole amount of money, and then the rest of

15  the money could be considered to be a gift.  And it was the

16  Church of Scientology case from the Tenth Circuit.

17  Q.   So you're taking issue with the jury instruction that was

18  given in this case?

19  A.   I am.  I'm not saying I didn't do anything, but I'm just

20  saying if it's all or nothing, for the purposes of right now,

21  which is what the judge said we're doing is all or nothing,

22  then it has to be all.

23  Q.   Wasn't the point of the jury instruction that you were

24  running a business that -- and these were receipts of the

25  business that you were putting to your personal use?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

384

294

1  A.   Yes.  And I think his gift instruction did get into that

2  on page 2 quite heavily.

3           MR. O'REILLY:  If I may have a moment, Your Honor?

4           THE COURT:  You may.

5           MR. O'REILLY:  Nothing further, Your Honor.

6           THE COURT:  You may step down.

7      Mr. Springer, do you have any further witnesses?

8           MR. SPRINGER:  No, I do not, Your Honor.

9           THE COURT:  Very well.  Mr. Stilley.

10          MR. STILLEY:  No witnesses.

11          THE COURT:  No witnesses at all?

12          MR. STILLEY:  Correct.

13          THE COURT:  Very well.  And does the government have

14  any further evidence?

15          MR. O'REILLY:  No, Your Honor.

16          THE COURT:  Very well.  Let me review where we are.

17  Frankly, I had -- and I'm not complaining, but I had thought

18  that perhaps the -- we might be a little later in the day

19  before we got to this stage, so let me explain to you where we

20  are.

21      As I have said more than once, there are some issues --

22  and I don't mean to foreclose argument on any issue at all, but

23  there are some issues on which I may be and certainly am

24  especially curious and especially receptive to getting the

25  benefit of argument from both sides.

295

1       We have -- and let me just review where we stand, and this

2   is simply as a means of setting the stage, if you will, for

3   arguments.  I want to hear arguments on these guidelines

4   issues.  Because I'm going to have to -- obviously am going to

5   have to rule on these guidelines issues.

6       That is not the same as allocution.  That's not the same

7   as either the government's or the defendants' final comments

8   before sentencing is imposed.  As a matter of fact, I need to

9   hear arguments and rule on those guideline issues before we

10  even get to the stage that I hear the government's and then the

11  defendants' final comments before sentence is imposed.

12      And then I need to -- with the benefit of those arguments,

13  I'm going to have to do some fairly careful consideration of

14  some of these issues.  And they are important enough to both

15  sides that I do not want to rule on the fly or anything close

16  to ruling on the fly.

17      So my -- and I hate to unnecessarily delay the completion

18  of this proceeding, but after I outline the matters on which I

19  see the need for the Court to rule, with the benefit of the

20  evidence that's been received, with the benefit of the

21  sentencing memoranda, certainly with the benefit of the

22  presentence report, and with the benefit of the arguments that

23  I will receive, that I will hear, I think I will probably need

24  to recess either -- and I doubt that it would be prudent to say

25  that we will resume and finish up today.  At the latest, we

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

386

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 86 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 387

296

 1  will finish up at nine o'clock tomorrow morning.  Let me assure

 2  everyone of that.

 3       But there are some issues that do deserve a very careful

 4  look.  I want to hear arguments and then I want to retreat, if

 5  you will, to chambers and very carefully consider some of these

 6  issues.

 7       And for that reason, even with the pleasant surprise of

 8  being finished with the evidence here before 1:30, I seriously

 9  doubt that I will feel comfortable in making my final rulings

10  on the guidelines issues today and pushing the matter through

11  to a conclusion this afternoon.  We'll see, but that seems

12  doubtful to me.

13       We do have issues as to tax loss.  That certainly does

14  embrace a whole "cluster," I guess would be one word for it, of

15  issues as to tax loss both with respect to the defendants'

16  personal liabilities and with respect to the extent to which

17  they can be charged with tax liabilities of other individuals

18  for guidelines purposes.

19       I've named a few names.  For the guidance of the parties,

20  I have not reached a final determination -- and that's putting

21  it mildly.  I have not reached a final determination as to the

22  extent to which the defendants are accountable for the tax loss

23  relating to Mr. Turner or Mr. Patterson or Dr. Roberts, but I

24  will say I'm farther down the road in my evaluation of the

25  issues as to those three individuals and the extent to which

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

387

 1  their tax situation can be attributed to these defendants than

 2  I am with the new names that I have -- obviously had not

 3  thought about in that context before we had the government's

 4  presentation.

 5       Well, the new names are Mr. Lake -- those are obviously

 6  not new names to this case, but they are new names from a

 7  third-party tax loss standpoint.  That would be Mr. Lake, and I

 8  guess he's the only new name, so I certainly want to hear more

 9  about that.

10       We've got the issue as to the omission of a criminal

11  source income adjustment.  I want to hear from the parties on

12  that.

13       We have the issue as to the possibility of a four-level

14  adjustment for Mr. Springer based on his aggravating role.  I

15  want to hear about that.

16       Off the top of my head, I think the government objected to

17  the admission of an adjustment for use of a special skill as to

18  Mr. Springer.  That's not even available if he gets a four-

19  level adjustment for an aggravating role.  So I would

20  appreciate some clarification on that from the government.

21       The government has objected also to the omission of an

22  adjustment for use of a special skill as to Mr. Stilley.  I'll

23  certainly be receptive to argument on that, although I think

24  perhaps argument from Mr. Stilley on that score would be more

25  important at this point, because I'm inclined to at this point

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

388

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 88 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 389

298

1   to agree with the government's position on that.

2       And then the defendants have objected to the use of the

3   2009 Guidelines Manual and obviously they're -- to some degree,

4   their positions are mirror images of the government's positions

5   with respect to tax loss issues, but not entirely.

6       The defendants have objected to the sophisticated means

7   adjustment.  I certainly will welcome argument on that.

8       The defendants have both objected with respect to the

9   obstruction adjustment.

10      And that's not an exhaustive list of the matters that are

11  in issue.  For instance, Mr. Springer has objected with respect

12  to the denial of a downward adjustment for acceptance of

13  responsibility.  I'm not particularly inclined to dwell on that

14  for a long time.  I'll hear whatever anybody has to say on it,

15  but I'm not inclined to dwell on that for a long time.

16      So, anyway, that's just a brief summary of some of the

17  more prominent issues, and even within them some issues are

18  more prominent than others.

19      And, again, I'm especially interested in hearing what the

20  parties have to say about the third-party -- the attribution of

21  third-party tax liability for tax loss purposes.

22      So with that, is the government prepared to argue the

23  matter?

24          MR. O'REILLY:  Yes, Your Honor.

25          THE COURT:  Very well.  You may proceed.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

389

 1              MR. O'REILLY:  Your Honor, before we begin, I would

 2    like to ask the Court excuse Revenue Agent Brian Miller, if

 3    that's permissible.  He may have already stepped out.

 4              THE COURT:  He stepped out, reconsidered, stepped

 5    back in.  You are excused.

 6              MR. O'REILLY:  Thank you, Your Honor.

 7          May it please the Court, the United States presented

 8    during -- in its sentencing memorandum and its objections that

 9    were filed in this case our explanation of how the defendants'

10    tax loss was determined for purposes of sentencing.

11          The defendants had the opportunity to present evidence

12    that would support a more accurate way of determining the --

13    what income should be attributed as income, what expenses they

14    were entitled to; they have chosen not to do that.

15          So we are left with what we have, which are checks that

16    have the inherent appearance of income, a number of which have

17    either through testimony or through the defendants' admissions

18    been shown to be income.

19          And under the bank deposits method of proof, this is --

20    when a better method is not available is, you know, a very

21    adequate, ample way of calculating the gross income of the

22    defendants from which 20 percent under the United States

23    Sentencing Guidelines is how you reach the estimated tax loss.

24          With respect to Mr. Springer, there were assessments made

25    despite his, you know, denials of the fact.  I mean, it's been

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

390

1  resolved in a civil case for the '90 through '95 years and

2  those are in evidence presented to this Court, and that is from

3  where the calculation -- the numbers come from for those

4  years.

5      If I could have 1178-A on the screen.

6      Mr. Springer, during his direct examination, went through

7  and identified specific and discrete checks to which he took

8  exception that were included in those calculations.

9      And the Court obviously has not had a chance, but I did

10 ask Revenue Agent Miller to go through and take those out and

11 recalculate the tax loss, assuming, just taking Mr. Springer at

12 his word, that those should not have been included, and that is

13 not something we concede, even were the Court to take all of

14 the items out that Mr. Springer identified as shouldn't have

15 been attributed as income to him, and even if the Court were to

16 exclude 12,000 a month -- excuse me, 12,000 a year of cash

17 income, and even if the Court were to exclude third-party tax

18 losses of Mr. Patterson and Mr. Lake, Mr. Springer's tax loss

19 would still exceed a million dollars.

20     And I'll now, you know, explain why we think third-party

21 tax losses are attributable with respect to each of the

22 individuals.

23     I'll start with Dr. Roberts.  And, again, as the Court

24 noted, Dr. Roberts is only attributed to Mr. Stilley.  In the

25 early 1990s -- I believe the testimony at trial was, in 1990,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

391

1  Dr. Roberts was one of a number of people who questioned the

2  validity of the tax laws.  And he went to who he understood to

3  be an expert on the tax laws, a lawyer by the name of Mr. Oscar

4  Stilley, and asked him if he was correct.  Hey, I don't want to

5  file a tax return.

6      And Mr. Stilley, instead of setting him straight,

7  Mr. Stilley told him, no, you don't -- you don't have to file.

8  He gave counsel that was followed by Dr. Roberts that led to

9  Dr. Roberts willfully failing to file tax returns for a series

10  of years.

11      And that is, under the guidelines, relevant conduct

12  because it is counsel that led to a tax loss.  And it wasn't

13  like Dr. Roberts went to his neighbor, the plumber, or his

14  neighbor, the mailman, he went to whom he understood to be a

15  professional, a lawyer, and, in fact, somebody who had a

16  proclaimed expertise in tax.

17      Unfortunately, Dr. Roberts went to Mr. Stilley.  But that

18  is why the government's position is that Dr. Roberts' tax loss

19  is absolutely attributable to Mr. Stilley under relevant

20  conduct rules under Sentencing Guidelines.

21          THE COURT:  Well, when -- when was this advice or

22  counsel given by Mr. Stilley to Dr. Roberts, vis-a-vis, the

23  years that the tax liability would have arisen?

24          MR. O'REILLY:  Before, Your Honor.  It was in 1990 or

25  1991, based on Dr. Roberts' testimony at trial.  The tax years

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

392

302

1   that we're talking about for Dr. Roberts are --

2       If I could have Government's Exhibit 1177, page 2.

3       The tax years with respect to Dr. Roberts are 1992, 1993,

4   1994, and 1995; all tax losses occurring after receiving the

5   advice and counsel of Mr. Stilley.

6       With respect to Mr. Patterson.  Together, Mr. Stilley and

7   Mr. Springer met with and spoke with Mr. Patterson, who was

8   already a non-filer.  He had not filed since the mid to -- the

9   mid-1990s.  That conduct is not attributable to the defendants;

10  they hadn't met him yet.

11      But in 2000, in the year 2000, they did meet with

12  Mr. Patterson.  I believe the cause of that meeting was

13  because, as Mr. Patterson said, he learned he was under

14  criminal investigation and he sought counsel.

15      Again, as Mr. Stilley had with Dr. Roberts and with

16  Mr. Springer at his side, these two gave criminal advice.

17  They, together, encouraged Mr. Patterson to continue not filing

18  tax returns.  And, unfortunately, Mr. Patterson followed that

19  advice.

20      He did file a request for extensions but the tax return

21  that was filed for Mr. Patterson did not get filed until the

22  year 2003, well after the statutory due date.

23          THE COURT:  Now, was that -- and this will show you

24  my -- the fact that there's always a potential for not keeping

25  these straight.  Mr. Patterson did request extensions, is that

303

1   the one where we had the transcript that shows two extensions

2   and then a return filed, and there's some question as to

3   whether that was a return prepared for him by the IRS or is

4   that somebody else?

5           MR. O'REILLY:  I don't think that there's any issue

6   about who prepared the return.

7           THE COURT:  Who prepared the Patterson returns?

8           MR. O'REILLY:  I believe the testimony in evidence

9   was it was Cynthia Hess.

10          THE COURT:  Okay, Hess.  That's somebody else, then,

11  where we had that.

12      So your argument, then, is based on the evidence

13  presumably that the defendants met with Mr. Patterson in 2000,

14  encouraged him to continue to not file; is that right?

15          MR. O'REILLY:  Yes, Your Honor.

16          THE COURT:  But he ultimately did file with the help

17  of Ms. Hess?

18          MR. O'REILLY:  He did, Your Honor, but, again, not

19  until 2003, and the crime of willful failure to file and the

20  tax loss would have occurred as of the expiration of the last

21  extension, which was in October of 2001.

22          THE COURT:  So -- and that raises a point that's

23  crossed my mind in one or two contexts, and that is, is there a

24  date as of which the Court should determine that a tax loss

25  occurred, even if for that tax year the taxpayer ultimately

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

394

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 94 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 395

304

1    made things right?

2          MR. O'REILLY:  Yes, Your Honor.  And that would be

3    the due date of the return, whether it's by extension or by,

4    you know, not filing of any return at all, which would be April

5    -- usually April 15th.

6       I do believe that under the law, technically, if you file

7    an extension, you're supposed to file your estimated payment at

8    that time, as well, but it's not the government's position that

9    if a return hadn't been prepared whether or not that could have

10   been done.

11      If Mr. Patterson had filed his return and paid his taxes

12   by October 15th of 2001, this would not be an issue.  It would

13   still be an issue with respect to counseling someone to violate

14   the law under a different section of the Sentencing Guidelines,

15   but it would not be tax loss attributable to either of the

16   defendants if, in fact, the taxes -- the tax return had been

17   filed and the taxes paid timely.

18          THE COURT:  So the government's position is that once

19   a tax liability becomes delinquent by virtue of the advice of a

20   defendant, once a third-party's tax liability becomes

21   delinquent, that perfects the tax loss, even though that tax

22   liability is ultimately satisfied?

23          MR. O'REILLY:  If it becomes willfully delinquent,

24   Your Honor.  For example, if Mr. Patterson had, you know, filed

25   an extension request in a letter saying, I have no money, I

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

395

 1   will pay you as soon as I can, there was no evidence of willful

 2   failure to file, that would be a different question.

 3        But the evidence in this case was that Mr. Patterson

 4   wasn't filing tax returns, and the only thing that got him

 5   around to filing a tax return was the fact that he was being

 6   criminally prosecuted, and that didn't happen until 2003.

 7        If instead the situation -- if there was no evidence that

 8   Mr. Patterson had willfully not filed his return and willfully

 9   not paid, again, that would not be a tax loss, even if there

10   was a tax, because it -- it would be a criminal question.  Just

11   the mere existence of a tax liability is not -- it's not the

12   government's position that the mere existence of a tax

13   liability by itself --

14        THE COURT:  So if the defendants induced him to

15   willfully fail to file as of April 15 of any given year and --

16   or at least encouraged him to failure to file, and, in fact, he

17   did for whatever reason willfully fail to file, and for this

18   purpose we'll assume that that failure was at least in part due

19   to the counsel or advice from the defendants, then as long --

20   do I understand you to be arguing that as long as that

21   violation that we'll say occurred as of April 15th of the year

22   when the return was due -- as long as you have that willful

23   violation with a resultant tax loss as of that day, then it

24   makes no difference for the tax loss determination under the

25   tax loss guidelines that the tax liability was later satisfied

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

396

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 96 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 397

306

1  for that year; is that right?

2          MR. O'REILLY:  Absolutely, Your Honor.  In fact,

3  under the guidelines, it speaks to that, that you cannot cure a

4  tax deficiency by a subsequent payment.

5          THE COURT:  Okay.  I need you to educate me on that,

6  because I'll have to admit that I haven't really focused hard

7  on that.

8          MR. O'REILLY:  I apologize, Your Honor.  I should

9  know this off the top of my head.  Your Honor, it is --

10         THE COURT:  2T1.1?

11         MR. O'REILLY:  Yes, under the Notes Number 5:  "The

12  tax loss is not reduced by any payment of the tax subsequent to

13  the commission of the offense."

14         THE COURT:  Okay.  I'm looking at application --

15         MR. O'REILLY:  It's before the commentary.  The last

16  item before the commentary under 2T1.1, Your Honor.

17      If it please the Court, if I get the ELMO, I can actually

18  put this on the screen.

19         THE COURT:  Okay.  That's -- hold on.  That's

20  actually guideline language, not an application note.

21         MR. O'REILLY:  I apologize, Your Honor.

22         THE COURT:  And that would be, "The tax loss is not

23  reduced by any payment of the tax subsequent to the commission

24  of the offense."

25         MR. O'REILLY:  Yes, Your Honor.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

397

1           THE COURT:  So your contention is, as long as you

2   have that as of April 15th or whatever the due date might have

3   been, then the tax loss is perfected and is not cured by later

4   payment?

5           MR. O'REILLY:  Correct, Your Honor.

6           THE COURT:  Okay.  I understand your point.  Go

7   ahead.

8           MR. O'REILLY:  Thank you, Your Honor.

9       I'll now move on to Mr. Lake.  And similarly to

10  Mr. Patterson, Mr. Lake testified, both before the grand jury

11  and in the trial, and he stated that the defendants together --

12  and, again, this was the person -- Mr. Stilley, who Mr. Lake

13  had hired to be his attorney, and a person who Mr. Lake

14  understood to be an expert in tax matters and other legal

15  matters in the person of Mr. Springer, and that, together, they

16  advised him that he had no legal obligation to file a tax

17  return.

18      Similarly, to Mr. Patterson --

19          THE COURT:  Okay.  Now, let's pay attention to timing

20  on that.  And let's start with Mr. Lake's testimony.  Okay.

21  Here is my beginning point, and if my beginning point is

22  apparently not correct, then you can set me straight on that.

23  But my beginning point is Mr. Lake's testimony that he called

24  Mr. Springer in October of 2000, he was charged with willful

25  failure to file for '94 through '96, and this is very spotty.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

398

308

1   I mean, he gave pages and pages of testimony and my notes are

2   very spotty.

3       But Mr. Springer said he would hire either Mr. Stilley or

4   Mr. Barringer.  Mr. Springer said his fee would be $30,000 and

5   the attorney fee would be charged separately.

6       Then there was a conference call between Messrs. Springer,

7   Stilley and Lake.  $10,000 was sent to Mr. Springer in

8   November.  Maybe another $10,000 check.  Ultimately, about

9   38,000 was sent to Mr. Springer and 65 to 70,000 was sent to

10  Mr. Stilley.

11      So, anyway, the time frame is they didn't know each other

12  until the fall of 2000 and Mr. Lake was charged with the

13  willful failure to file in '94 through '96.

14      Now, if I'm wrong about that, then you need to correct me

15  on that, and then give me what else you might have to say on

16  that score.

17          MR. O'REILLY:  Your Honor, the tax loss with which we

18  have attributed Mr. Springer and Mr. Stilley as relates to

19  Mr. Lake is only for the year 2000, not his prior willful

20  failure to files.

21      Similarly, Mr. Patterson -- Mr. Lake was a chronic

22  non-filer.  He went to two individuals who he understood to be

23  professionals, experts in the tax law.  Unfortunately, Mr. Lake

24  received similar advice to Mr. Patterson, which is, you're

25  right, there's no legal obligation to file a tax return.

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 99 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 400

309

1    And at least, in part, on that advice, he willfully failed

2  to file a tax return for the year 2000.  That is the only tax

3  loss that is exhibited in the government's exhibits, and that's

4  under 1143, which is the assessment with respect to that year,

5  the accounted transcript for that year for the IRS.

6         THE COURT:  Speaking of transcripts, has Mr. Lake's

7  trial testimony been transcribed?

8         MR. O'REILLY:  No, Your Honor.

9         THE COURT:  Go ahead.

10        MR. O'REILLY:  With respect to that, that occurred --

11 due date for that return upon which this tax loss would have

12 been due and payable was April 15th of 2001 or thereabouts.  I

13 don't know if it fell on a Saturday or what.  But that due date

14 was after his consultation and encouragement by the

15 defendants.

16    And that is why the government's position is that that tax

17 loss can be attributed for sentencing purposes to the

18 defendants under both the related conduct as a specific matter

19 to the defendants, but also as part of the conspiracy to

20 defraud the IRS, because together jointly they were encouraging

21 this type of criminal behavior.

22    Mr. Turner is a very different situation.  As was pointed

23 out in the direct exam of I think both the government's

24 witnesses, these are for early years, '99 through 2003, for

25 which there's no evidence that either defendant knew Mr. Turner

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

400

310

1   at that time.  Possibly in 2003, but I don't know that it was

2   that early.

3       But that's not why these are attributed to Mr. Turner.  I

4   mean, Mr. Turner --

5           THE COURT:  Tax liability -- I think this is

6   summarized in your exhibits, but just for the sake of

7   discussion, the tax liability that adds up to and comprises the

8   dollar amount involved here with respect to Mr. Turner is for

9   '99 through '03; is that right?

10          MR. O'REILLY:  Yes, Your Honor.  And the total amount

11  of that is $145,713.

12          THE COURT:  All right.

13          MR. O'REILLY:  But as was brought out both at trial

14  and here in the sentencing hearing, Mr. Turner sought to hide

15  that money and prevent the IRS from collecting on those taxes.

16  To that end, he borrowed -- he took mortgages against two

17  properties that he owed so that there would be no interest --

18  no equity interest for the IRS to be able to attach, and he

19  then took that money and put it where he thought -- he hid by

20  making it look like a payment to Mr. Stilley for legal

21  representation, and this was done at the encouragement and

22  urging of Mr. Springer.

23      It's just textbook evasion of payment.  There was a tax

24  due and owing, and in an attempt to evade the payment of that

25  tax, Mr. Turner hid the money by borrowing against two houses

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

401

311

1  and then taking that money and sending it to an attorney so it

2  looked like a legal payment.

3      And we think that's a clear-cut case of evasion of payment

4  and that's why these tax losses are attributable to both

5  defendants.

6          THE COURT:  Okay.  And those IOLTA transfers occurred

7  approximately when?

8          MR. O'REILLY:  Transfers into the IOLTA account for

9  Mr. Turner occurred in August of 2005, the first one I want to

10  say around August 11th and then the other one was about a week

11  later.

12      And as Mr. Turner testified, his understanding was that

13  they were going to keep it safe for him, that Mr. Springer was

14  going to keep this money safe, so that if he needed a lawyer --

15  because he was fearing that the IRS will come grab it -- that

16  it would be available for him.

17      Unbeknownst to Mr. Turner, Mr. Springer already had his

18  eye on a very expensive motor home which he purchased before

19  even receiving the second payment.  He also bought a Lexus upon

20  which Mr. Turner received no lien interest at any time.

21      With respect to the third-party tax loss, if the Court has

22  any further inquiry, I'm happy to address it, but that is the

23  government's theory on why those third-party's tax losses can

24  be attributed to the defendants.

25          THE COURT:  Now, Mr. Turner's testimony was, as of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

402

1    last fall, when he testified that none of the quarter-

2    of-a-million dollars had been paid back by Mr. Springer, is

3    your recollection of his testimony any different?

4              MR. O'REILLY:  No, Your Honor.  Mr. Turner was quite

5    clear that none of the principal balance of the 250,000 had

6    been repaid.

7              THE COURT:  Okay.  Well, now, Mr. Springer says that

8    whatever might have been argued about the bona fides of that

9    transaction, based on the facts as they were, until earlier

10   this month, the bona fides are proved up by the repossession of

11   it, which shows that it was a bona fide lien and that it was

12   not a criminal source transaction at all, because the

13   repossession of it shows that it was intended to be just

14   exactly what Mr. Springer asserts that it was.  What do you say

15   to that?

16             MR. O'REILLY:  Your Honor, I think actually this is

17   the most recent act of the conspiracy.  The IRS is attempting

18   to collect on the debt of the tax liabilities for '90 through

19   '95; to that extent, they have actually foreclosed on his house

20   and likely would have been seeking to seize the RV.

21        This -- the fact that this occurred did not -- no transfer

22   occurred until April of this year, two weeks ago, immediately

23   before the IRS is attempting to seize property to satisfy

24   Mr. Springer's tax liabilities.  I think that's extremely

25   telling.  If this had been a bona fide loan or a bona fide

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

403

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 103 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 404

313

1   lien, Mr. Turner would have gotten that RV years ago.

2        The only reason --

3            THE COURT:  Now, this is apropos of nothing, but does

4   Mr. Turner still have some tax liability?

5            MR. O'REILLY:  Yes, he does, Your Honor.  In fact, he

6   recently, as I believe was noted in the government's sentencing

7   memorandum, he recently lost in tax court, and who knows, he

8   may use this to help pay that.

9            THE COURT:  That RV is kind of hard to miss, it's --

10           MR. O'REILLY:  I agree, Your Honor.

11           THE COURT:  It's not your average Winnebago.

12           MR. O'REILLY:  Certainly hope the IRS does their job

13  and does seize it; however, that would not change the fact that

14  as of 2005, when the monies were transferred, this was

15  attempting evasion of payment.  Any subsequent collection of

16  payment, either voluntary or involuntary, doesn't change that

17  fact.  And I think Mr. Springer would rather have Mr. Turner

18  have the RV than the IRS.

19           THE COURT:  I doubt that even Mr. Springer would

20  contest that.

21       Go ahead.

22           MR. O'REILLY:  And Your Honor is, I think, fully

23  conversant with the government's position on criminal source

24  income.  If you have any questions on that, I'm happy to

25  address them, but --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

404

```
 1              THE COURT:  Well, you're hanging your hat on Section
 2   1343?
 3              MR. O'REILLY:  Yes.
 4              THE COURT:  Okay.  Very well.
 5              MR. O'REILLY:  Your Honor, with respect to role in
 6   the offense, I think the evidence at trial and as brought forth
 7   in the sentencing hearing has shown that this was an extensive
 8   scheme.
 9              THE COURT:  So you're not going to give up the four
10   points and take the two that might be available as to
11   Mr. Springer on special skill?
12              MR. O'REILLY:  Your Honor, actually, our position
13   with respect to Mr. Springer is it's abuse of position of
14   trust.
15              THE COURT:  Okay.
16              MR. O'REILLY:  More than a special skill.  Not that,
17   as he readily admitted, he has special skills, but we think
18   that the four points are appropriate.
19        We also think that, under the guidelines, an abuse-of-
20   position-of-trust enhancement is appropriate, and I'll get to
21   that in a moment.
22        But with respect to role in the offense, as the case law
23   is clear, and, again, we've detailed this in our sentencing
24   memorandum, even if there weren't five or more participants in
25   the conspiracy, I think the Court could find that there were.
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

405

 1          THE COURT:  Well, I'm not with you on that.  So

 2  there's those last three words, "or otherwise extensive."

 3          MR. O'REILLY:  That's where I will go, Your Honor.

 4  When you are telling people that you are a ministry and

 5  encouraging -- and getting them to write checks to that effect

 6  and to get them to pay you monies to denote "gift" or

 7  "donation," when you are, in fact, performing services for

 8  them, you are engaging people, albeit, quite likely,

 9  unwittingly, in your scheme, and he had a lot of people that

10  were doing this.

11      As indicated at trial, there were people participating on

12  the telephone conference calls, there were people going to his

13  Web site.

14      And as indicated by the blog that has been following this

15  case, there is a great deal of interest in this matter, because

16  there are a lot of people who are -- who listen to

17  Mr. Springer.

18      And to the extent that Mr. Springer has told them to file

19  tax returns, great.  I am glad that he has, because he's helped

20  some people avoid either civil liabilities or criminal

21  prosecution.

22      But that's not what this case is about.  This is about

23  where he was willfully not paying his taxes, evading his taxes,

24  conspiring with Mr. Stilley.

25      As the jury has found -- and this isn't even -- it's not

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

406

 1   up for dispute, the jury has determined this:  It was income,

 2   gross income, or whatever you want to call it.  He had a tax

 3   liability, and as the government has indicated, for sentencing

 4   purposes, it appears it is well over a million dollars, with

 5   everything included.

 6        But this is not somebody who just did their -- you know,

 7   this is not Mr. Stilley and Mr. Springer acting on their own,

 8   it wasn't just a two-party conspiracy and nobody else

 9   involved.

10        Mr. Delozier was effectively roped in by allowing

11   Mr. Springer to cash checks that were not made payable to

12   Mr. Springer but to this entity, Bondage Breakers Ministry, and

13   he did that because he trusted Mr. Springer.

14        And as Mr. Delozier testified, these checks -- you know,

15   he had a very low bounce rate on these checks.  They tended to

16   be good.  So Mr. Springer was a very good customer for him.

17        But we do believe that the four-level increase is

18   warranted given the number of people that were either wittingly

19   or unwittingly brought into the scheme through the actions of

20   the defendant, Mr. Springer.

21        We don't think that the role in the offense with respect

22   to this case is appropriate with respect to Mr. Stilley, as

23   indicated in our sentencing memorandum.

24             THE COURT:  Now, you and the probation officer don't

25   see eye to eye as to the scope of the activity that is fair

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

407

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 107 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 408

317

1   game for treatment as relevant conduct under -- what is it --

2   3B1.1?

3          MR. O'REILLY:  Correct, Your Honor, Mr. Gollihare and

4   I, we disagree.

5          THE COURT:  And so on one hand, there is an approach

6   that would suggest that at the end of the day we have to bear

7   in mind that these are tax offenses and that the indictment

8   charges tax offenses relating to these individuals' own taxes,

9   and to some degree, obviously, as between the two of them, but

10  that the heart of the case certainly was not the tax liability

11  of third parties, and that for that reason, either under the --

12  an analysis of the defendants' own conduct, or for that matter,

13  the jointly-conducted criminal activity, we don't encompass, if

14  you will, the activities of these defendants in generating

15  income, however blame-worthy they might be for not paying tax

16  on it, we don't rope them in for -- with respect to what they

17  did to generate the income.  That was not part of the

18  conspiracy.  It's not part of any jointly-undertaken criminal

19  activity.

20      And for that reason, that -- the government's theory is

21  unsustainable insofar as it seeks to hold these defendants

22  accountable for the third party's tax liabilities, because,

23  after all, that was just income-generating activity.  They

24  should have paid taxes on it, but it was just income-generating

25  activity.  Or for that matter, with respect to the Court's

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

408

318

 1   assessment of the aggravating role, was it otherwise extensive,

 2   that we also cannot get outside the realm of what was truly

 3   their relevant conduct for determining whether the activity

 4   that Mr. Springer orchestrated was "otherwise extensive."

 5        I'd like you to address that.

 6            MR. O'REILLY:  Your Honor, actually, we do believe

 7   this is a conspiracy to defraud the Internal Revenue Service.

 8   At trial, the primary focus was directed at the tax liabilities

 9   with respect to Mr. Springer.

10        In part, Mr. Stilley's tax liabilities received only

11   cursory mention because he's from Arkansas, there was no venue

12   here with respect to Mr. Stilley's tax obligations.  He was not

13   charged in this district with his own tax evasion.

14        That does not change the fact that he and Mr. Springer

15   together, you know, were well-aware not only that they were

16   earning income, but that they were both not filing tax returns,

17   and their jury returned a verdict that this was a conspiracy to

18   defraud the IRS.

19        Part of how each of these defendants and the people they

20   coached or counseled, encouraged, one of the ways that they

21   defrauded the IRS and impeded and impaired the ability of the

22   IRS to assess and collect taxes was by not filing tax returns.

23        This does not mean that, you know, anybody that walked

24   into Mr. Stilley's door would thereby be attributable -- that

25   their conduct is not necessarily attributable to Mr. Stilley,

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 109 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 410

319

1  nor even if Mr. Springer was sitting in the office with him

2  would it be necessarily attributable to Mr. Springer.

3     However, the object of the conspiracy was to impede and

4  impair the IRS in its ability to assess, collect taxes.  Where

5  either of them were -- and especially were together, they were

6  counseling others to not file tax returns and to not pay taxes,

7  that absolutely indicates that it's within the scope of the

8  object of the conspiracy and any tax loss resulting from that

9  is reasonably foreseeable to each of them.

10     Where they are counseling individuals independently,

11  without knowledge of the others, then it would only be

12  relevant -- and I think it's 1(a) of the relevant conduct, as

13  opposed to 1(b), and that is how we treated Dr. Roberts, in

14  addition to the fact that it was well before this conspiracy

15  began.  As it was indicted, it was begun in or about 2000.

16     But it is the government's position -- and, again, this is

17  a broader reading than what the presentence investigation

18  reports assert.  We think this was a broader conspiracy to

19  impede and impair the ability of the IRS to assess and collect

20  taxes.

21     What the government chose to focus on in terms of

22  presenting this at trial does not change the fact that,

23  together, Mr. Springer and Mr. Stilley encouraged Patrick

24  Turner in his attempt to evade payment of taxes, and that is

25  certainly an act furthering a conspiracy to impede and impair

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

410

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 110 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 411

320

1   the ability of the IRS to collect taxes.

2           THE COURT:  Okay.  So if your -- if the indictment

3   with respect to the manner and means is silent as to causing

4   third parties to violate the law, then your contention would be

5   that, be that as it may, within the concept of -- the broader

6   concept of relevant conduct that the Court should take that

7   into account?

8           MR. O'REILLY:  Yes, Your Honor.

9           THE COURT:  Okay.

10          MR. O'REILLY:  With respect to the special skill

11  enhancement, and I'll focus on Mr. Stilley.  He was a lawyer.

12  He used his knowledge of how the IRS investigates cases, how

13  cases are developed and prosecuted and used that to his

14  advantage in furthering this scheme to defraud.

15      And the use of a special skill, being a lawyer, the legal

16  skills are specifically enumerated under the Sentencing

17  Guidelines.

18      With respect to -- and if you have any more questions on

19  that -- but with respect to the abuse of position of trust, I

20  will be candid with the Court, I'm having to go to a

21  resentencing in the Ninth District -- the Ninth Circuit because

22  we actually succeeded in getting an abuse of position of trust

23  for a trust promote, because under the Sentencing Guideline

24  language, his position enabled him to further the scheme.  The

25  Ninth Circuit, however, has stated it is quite clear in the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

411

1   Ninth Circuit that you must hold a position of trust with

2   respect to the victim, and the victim in this case is the

3   United States Government and the Internal Revenue Service.  And

4   if that is the law of this circuit and it seems --

5               THE COURT:  There's a lot of Ninth Circuit law that's

6   not the law of this circuit.

7               MR. O'REILLY:  Yes, Your Honor.  The reason I

8   mentioned that is Mr. Gollihare had noted in the PSR one case

9   that did seem to suggest that, but that is the government's

10  sentencing memorandum in the case.  The Tenth Circuit does not

11  seem to take that narrow of a read of this enhancement.

12              THE COURT:  What Tenth Circuit case would you want me

13  to look at?

14              MR. O'REILLY:  Your Honor, that would be United

15  States v. Koehn, K-O-E-H-N, 74 F.3d 199.  It's a Tenth Circuit

16  case from 1996.  That was on page 17 of the United States'

17  sentencing memorandum.

18         There was also more recently a district court case out of

19  Utah where a member of my office got taken to task because they

20  did not include this particular enhancement, abuse of position

21  of trust, in a plea agreement, even though the defendant had no

22  position of trust, vis-a-vis, the IRS.  It was a trust

23  promoter, I believe, and that court was disappointed that we

24  had not included it.

25              THE COURT:  That you had not what?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

412

Case 4:09-cr-00043-SPF  Document 400  Filed 07/12/10  Page 112 of 180
Appellate Case: 22-5113  Document: 010110803141  Date Filed: 01/25/2023  Page: 413

322

 1          MR. O'REILLY:  We did not include it in that plea

 2    agreement.  It was not my case, Your Honor, but I remember a

 3    certain very young attorney complaining about being the

 4    whipping boy when it wasn't even his case to begin with.  And

 5    that case is United States v. Mercer, 472 F.Supp.2d, 1319.

 6          THE COURT:  Is that a Kansas case?

 7          MR. O'REILLY:  That's a Utah case, Your Honor.

 8          THE COURT:  Utah.  Okay.  So you want me to read the

 9    Koehn case and the Mercer case?

10          MR. O'REILLY:  Yes, Your Honor.

11          THE COURT:  Okay.

12          MR. O'REILLY:  And our position is, is that with

13    respect to the individuals that were paying him money that were

14    writing checks payable to Bondage Breakers Ministry, that were

15    writing "gifts" or "donation," they trusted Mr. Springer, and

16    that position of trust he had with respect to them facilitated

17    his ability to commit this crime.

18          THE COURT:  Okay.  Well, I see Judge Cassell's

19    opinion in Mercer is mercifully short, so, yes, I will read

20    that one.  Thank you.

21       You may proceed.

22          MR. O'REILLY:  And, Your Honor, with respect to

23    sophisticated means and the obstruction enhancement that the

24    presentence investigation reports found, we've articulated our

25    positions in the sentencing memorandum; however, I am willing

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

413

1   to address any questions the Court may have.

2          THE COURT:  I need to hear from you on restitution.

3          MR. O'REILLY:  Your Honor, with respect to

4   restitution, we agree with the presentence report that under

5   the -- excuse me one second.

6     Under 18 USC Section 3663(a), the crime of conspiring to

7   defraud the United States is subject to mandatory restitution,

8   and restitution, when it's mandatory, is made without regard to

9   a defendants' ability to pay, unlike the -- where restitution

10   is something that's subject to the Court's discretion as to

11   whether or not to award restitution.

12         THE COURT:  I agree with you on that, and now the

13   defendants have an opportunity to persuade me that restitution

14   is not mandatory, but assuming it's mandatory, I still have to

15   arrive at an appropriate dollar amount.

16         MR. O'REILLY:  Yes, Your Honor.  And our position is,

17   is that given the lack of any other available information that

18   the calculations made by Revenue Agent Miller are reasonably

19   accurate assessments of the tax against them and they're just

20   -- the records that Mr. Springer spoke of were solely of some

21   expenses, and as Mr. Miller indicated in his cross-examination,

22   I think he spoke specifically with respect to Mr. Stilley, but

23   I think it would apply to both, if we had all the information,

24   the net taxes would actually likely be higher.  But this is

25   simply taking 20 percent of the gross income figure, which is

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

414

324

 1   under the Sentencing Guidelines is where we need to be for

 2   sentencing purposes, it's the best figure we've got.  And

 3   restitution is mandatory.

 4       The defendants had an opportunity to present evidence

 5   supporting a tax loss figure that was different from what the

 6   government has presented.

 7           THE COURT:  The government's proposed restitution

 8   number would include the penalties and interest?

 9           MR. O'REILLY:  Yes, Your Honor, it should.

10           THE COURT:  So on 1177, then, which covers both

11   defendants, I would -- the government would urge that I adopt

12   the -- those third-party tax losses, plus the defendants' own

13   tax losses, including penalties and interest?

14           MR. O'REILLY:  I believe the presentence

15   investigation report only referenced the defendants' own tax

16   losses.  I think the Court could, but we are actually satisfied

17   with the presentence investigation report's recommendations,

18   Your Honor.  We did not object to them, and -- which is

19   significant.  That does not include the third-parties' tax

20   losses'.

21           THE COURT:  Okay.  Now, how about -- if you get that

22   sort of a number for restitution, then what I'm about to

23   mention is probably academic, but I have received no evidence

24   as to cost of prosecution.  The PSR number for cost of

25   prosecution is shockingly low.  I mean, I think whatever it

 1  is -- what is it?  29,000?

 2          MR. O'REILLY:  It's about $28,000, Your Honor.

 3          THE COURT:  I think you got that invested in air

 4  fare.

 5          MR. O'REILLY:  Unfortunately, Your Honor, my costs

 6  don't get included in that, which is possibly why the Court was

 7  expecting a bigger figure.  We did supply the documentation, I

 8  understood, but perhaps that was not supplied to the -- for the

 9  presentence report in addition to just the raw figure.  We

10  certainly can supply the --

11          THE COURT:  Well, I'll hear from the defendants as to

12  whether they take issue with what looks to me to be an

13  incredibly low cost to prosecution number.  We'll look at it

14  one step at a time from there.

15          MR. O'REILLY:  Your Honor, we do try to be

16  efficient.  If there's no further questions --

17          THE COURT:  I may have more questions before we're

18  through here in court this afternoon, but none at this time.

19  Thank you.

20          MR. O'REILLY:  Thank you, Your Honor.

21          THE COURT:  Mr. Springer.

22      And I would urge you to bear in mind, Mr. Springer, that

23  you will have another opportunity to address the Court by way

24  of your final comments before sentence is imposed.  So the main

25  reason that -- or the main benefit to the Court from hearing

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

416

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 116 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 417

326

1   arguments at this point is to give the Court some clarity as to

2   the specific matters that have been at issue today and

3   yesterday.

4           MR. SPRINGER:  Thank you, Your Honor.  I'll try to

5   follow along the same line that the government did, so, first,

6   we can keep those parallel.

7        The evidence that the government tendered on Mr. Patterson

8   showed that he did file two extensions and they entered

9   absolutely no evidence of the $34,000 being owed on April 15,

10  2001, nor did they show with an extension that he owed that

11  money on August 15, 2001.

12       And with the second extension, they did not show that he

13  owed that money on October 15, 2001.

14       And the only evidence that they tendered was that he filed

15  his return on March 4, 2003, for the year 2000.  There is no

16  evidence before the Court that the reason why Mr. Patterson

17  filed two extensions, and then on March 4, 2003, filed a 2000

18  return, as the government's exhibit identifies, that that

19  reason was having to do anything with anything either I said to

20  Mr. Patterson or Mr. Stilley said to Mr. Patterson.

21       And, in fact, the evidence actually shows that what I told

22  Mr. Patterson to do, he was at least considering doing, which

23  was file returns.

24       The evidence that was presented to the Court today by my

25  unrebutted testimony was that the reason why Mr. Patterson's

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

417

Case 4:09-cr-00043-SPF  Document 400  Filed 07/12/10  Page 117 of 180
Appellate Case: 22-5113  Document: 010110803141  Date Filed: 01/25/2023  Page: 418

327

1  2000 tax return did not get filed until 2003 was because

2  Cynthia Hess got sick.

3      And the experience in dealing with people who haven't

4  filed a series of tax returns is why I would recommend a person

5  like Cynthia Hess to help get those figured out, because

6  there's some hindsight to the advantage of filing five years in

7  a row, when you have losses, as in Mr. Patterson's case, that

8  he could carry over.

9      But the only evidence before the Court is that I told

10 Mr. Patterson to file the return, and because he could not do

11 it on his own, and because he went seeking help to get from --

12 I believe it was 1996, '97, '98, '99 and 2000 filed by Mrs.

13 Hess, that she was unwilling to do all the returns until all of

14 them were done.

15     And that is why, as I testified earlier, when she got

16 sick, there was nothing else anybody could do after the second

17 extension on Mr. Patterson.  There wasn't a third extension.

18     And also there's nothing reflected in the evidence of the

19 government's exhibit that shows that Mr. Patterson, when he

20 filed the extension, that he did not say here is an estimated

21 payment of tax.  We have no evidence of that.

22     I don't remember myself personally what actually happened,

23 because I believe he had a CPA who was helping him do that.

24 Obviously, if he owed $34,000 in March of 2003, from back in

25 April 15th of 2001, then the government would extensively be

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

418

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 118 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 419

328

1   asking for late penalties for late payment.  And there was

2   nothing reflected in the government's transcript that he had

3   been charged for late payment in regard to that filing as

4   well.

5       So to that -- for that score, I believe that

6   Mr. Patterson's $34,000 should not be considered as tax loss to

7   Lindsey Springer.

8           THE COURT:  Well, what -- if you agree with

9   Mr. Patterson's testimony that you and Mr. Stilley, in effect,

10  boasted to him that you and Mr. Stilley did not file returns,

11  then what was the context in which you said that to him?

12          MR. SPRINGER:  Well, it had to do with gifts.  As far

13  as I was concerned, that was Mr. Patterson, the only thing I

14  can receive is a gift or donation and those aren't taxable and

15  that's why I would not be required to file a return.

16      On Mr. Stilley's side, I don't know what he boasted in

17  that regard, other than what I heard him say the first meeting

18  when Mr. Patterson asked that question, and I just heard

19  Mr. Stilley say he doesn't file returns.  That's all that

20  anybody heard him say.  There was no other elaboration.

21      I did not even know at that point anything about

22  Mr. Stilley's business in that regard until Mr. Patterson

23  actually told me.

24      It was something that was quite unique when I sat down in

25  1999 with Mr. Roberts and Mr. Stilley.  We never had a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

419

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 119 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 420

329

1    conversation about whether Mr. Stilley files tax returns.  And

2    I never heard Mr. Stilley tell Mr. Roberts he didn't have to

3    file tax returns.  Never one time.  If I had heard that, I

4    would have given the same response I've given every time, which

5    was they need to file those returns if they're earning gross

6    income.  And it was almost like I made them angry every time I

7    said it.  It wasn't something they wanted to hear.

8         And interestingly enough, with Mr. Patterson, as

9    Mr. Gollihare's report demonstrates, he -- he had not only not

10   filed '96, '97, '98, and '99, but he also had asked for refunds

11   for '95 and '97, which is what he was charged with.

12        And Mr. O'Reilly referred to Mr. Patterson's willful

13   failure to file the 2000 tax return.  And Mr. Patterson or Mrs.

14   Patterson were never charged for the year 2000.  There's never

15   been a finding they willfully failed to file a tax return for

16   the year 2000.  In fact, the extension filing would show

17   otherwise in that regard.

18        And keeping in mind, even though Mr. Patterson did not

19   file except the extension on April 15th, 2001, he was indicted,

20   the evidence shows, in April of 2003, and there was no 2000

21   charge in that indictment.  So even --

22             THE COURT:  Well, he blew right past April 15th of

23   '01, right?

24             MR. SPRINGER:  He filed an extension, and then he

25   filed another extension.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

420

```
 1            THE COURT:  He blew right past October 15th.

 2            MR. SPRINGER:  He did.

 3            THE COURT:  And he felt the hot breath of the

 4    government on his neck and he ultimately filed in what?  '03?

 5            MR. SPRINGER:  Cynthia Hess was -- filed in '01 to do

 6    those returns.  It just took her a long time.  She had --

 7            MR. O'REILLY:  Objection.  There's no evidence of

 8    when Ms. Hess was hired.

 9            MR. SPRINGER:  I did testify that I'm the one that

10    went and found her, Your Honor, and it was unrebutted.

11        But the government had plenty of opportunity by April 15th

12    of 2003 to know whether Mr. Patterson had willfully failed to

13    file a 2000 tax return, and they did not charge him with that

14    willful failure to file that year.  They did, however, charge

15    him with '96, '97, '98, and '99, years that were beyond my

16    knowing and communicating with Mr. Patterson.

17        So under that score, I don't believe Mr. -- there's any

18    evidence Mr. Patterson willfully -- there's been a finding he

19    willfully failed to file a 2000 tax return having to do

20    anything with any statements made by me as to how my ministry

21    at that time operated, and I never heard him say he didn't file

22    the 2000 return because Mr. Stilley told him he didn't have to

23    file tax returns either.  I never heard Mr. Patterson say

24    that.  I may be mistaken, but I don't remember hearing him say

25    that.  I just remember him saying what he heard either of us
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

421

```
 1   said, which was I said I don't have to file a tax return
 2   because of gifts.
 3        Now, on Mr. Lake, that's another interesting timeline.
 4   Mr. Lake was indicted before he had even met myself or Oscar
 5   Stilley for a series of failures to file, very similar in
 6   connection like Mr. Patterson, only Mr. Patterson hadn't been
 7   indicted at the time that he met Mr. Stilley or myself.
 8        And Mr. Lake, as I testified today, and that Mr. Shern
 9   confirmed yesterday, Mr. Lake actually, prior to his trial,
10   fired Mr. Stilley, hired another lawyer, went to trial, hung
11   the jury, and then pled guilty the following week, and still,
12   under the government's testimony, did not file a tax return for
13   the year 2000.
14        And the evidence shows that I never even knew the name
15   James Lake until December of 2000, and it -- as Mr. Gollihare
16   points out, I did not advocate -- well, strike that.
17        I did not tell Mr. Lake and there's no evidence that I
18   told Mr. Lake that he was not required to file a tax return for
19   the year 2000.
20        What there is evidence of is that Mr. Lake had already
21   stopped filing tax returns, and what he didn't like me telling
22   him is what caused him to go get other counsel.  There's a
23   reason why he fired Oscar Stilley, and he said it was because
24   he didn't like Oscar's advice.
25        And, of course, he went to trial and then eventually pled
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

422

1    and still did not file a tax return.  He was an airline pilot.

2              THE COURT:  Yeah, he was a Delta pilot.

3              MR. SPRINGER:  A Delta pilot.

4              THE COURT:  According to Mr. Shern, the grand jury

5    testimony was to the effect that both you and Mr. Stilley told

6    Mr. Lake that he had no legal obligation to file returns.

7              MR. SPRINGER:  I don't remember those exact words,

8    Your Honor.

9              THE COURT:  From Shern or from yourself?

10             MR. SPRINGER:  From Mr. Lake.  I don't remember

11   Mr. Lake saying those exact words.  I heard what Mr. Shern said

12   yesterday, and obviously I take exception to those exact

13   words.

14        The consistency of what Mr. Lake was saying had to do, in

15   my opinion, with what -- how I treated money that people gave

16   me, and this is where I got kind of crossways with him on the

17   witness stand, and this is the videotape that I chose not to

18   play, but I did testify about the videotape today and the

19   government did not cross-examine me on it whatsoever, and on it

20   I am -- I testified under oath that I am -- I'm showing

21   Mr. Lake why he's required to file a tax return, and it is --

22   it is this single event that caused him to fire Oscar Stilley,

23   and that was the point of me saying that the video showed --

24             THE COURT:  Well, was Mr. Stilley telling him to

25   hurry up and file?

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

423

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 123 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 424

333

 1          MR. SPRINGER:  Actually, Your Honor, I left that

 2  day.  I had -- probably had only two meetings with both

 3  Mr. Lake and Mr. Stilley, I never heard them ever talk about

 4  whether or not Mr. Lake was required to file a tax return.

 5      In fact, the one conversation would have been when the

 6  videotape was made and another one was out in California, where

 7  Mr. Stilley was trying to get into the case and telling

 8  Mr. Lake that his beliefs were not appropriate.

 9      But other than that, I am not privy to other conversations

10  between Mr. Lake and Mr. Stilley.

11          THE COURT:  Proceed.

12      Bear with me just a minute.

13          MR. SPRINGER:  Interestingly, as far as Dr. Roberts

14  goes, Mr. Gollihare, on his final report, points out that Oscar

15  Stilley became an attorney on April 15, 1991, and Mr. O'Reilly

16  suggests to the Court that the -- Dr. Roberts, who at that

17  point had been a doctor, goes to a person who is not even out

18  of law school yet and becomes convinced that Dr. Roberts'

19  theories are correct because of what Oscar Stilley tells him

20  what he learned in the Irwin Schiff book, and Mr. O'Reilly

21  turns that testimony into he went to an expert on the tax law,

22  and that's why --

23          MR. O'REILLY:  Objection.  Just for clarification,

24  someone he believed to be an expert on the tax law.

25          MR. SPRINGER:  And yet Oscar Stilley didn't even know

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

424

334

1    anything about taxes at the time he was coming out of law

2    school.  Most lawyers that I've met that have come out of law

3    school are very green on the subject matter.

4        And so it's disingenuous to even accept that Dr. Roberts,

5    who, by the way, was Mrs. Gray at the time, was going to the

6    same college that Oscar Stilley was going to, that somehow

7    Dr. Roberts would have had a warm fuzzy feeling about something

8    that a third-year law student at the University of Arkansas

9    was, you know, saying to him.

10       So it's impossible to accept that Dr. Roberts, in 1990,

11   went to Oscar Stilley as an attorney because he wasn't one

12   yet.  And that's on page 17 --

13           MR. O'REILLY:  Your Honor, objection, simply as to

14   relevance with respect to Mr. Springer.  Dr. Roberts' tax loss

15   is not attributed to him, so this argument does not seem

16   appropriate for Mr. Springer to be making.

17           THE COURT:  Seems odd that you're -- your pro se

18   status means that you are here for yourself.

19           MR. SPRINGER:  Sure.

20           THE COURT:  I'm having a hard time squaring this with

21   anything that might logically be argued by you on your own

22   behalf.

23           MR. SPRINGER:  Mr. O'Reilly referred in a

24   conversation with Your Honor to the phrase "relevant conduct."

25   I wrote it down and put quotes around it, when he was

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

425

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 125 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 426

335

1   discussing with you Dr. Roberts and his reliance on

2   Mr. Stilley.

3           THE COURT:  Well, you're not going to be held

4   accountable for anything Mr. Stilley said to Dr. Roberts way

5   back in the 1990s.

6           MR. SPRINGER:  Thank you.  I was just making sure I

7   was on that point.

8       Okay.  With Mr. Turner -- and I've made notations of the

9   separation between the proposed tax liability that the

10  government has on the chart for 1999, 2000, 2002, and 2003.  I

11  think Mr. O'Reilly misspoke, unintentional, when you asked him

12  was it for 1999 through 2003, and the answer should have been

13  no, there's no 2001, it's only for four years, that is on the

14  chart.  And in that regard --

15          THE COURT:  Now, wait, wait, wait, wait.  Let's get

16  this cleared up.  My notes from Mr. O'Reilly's argument

17  indicate that his assertion by way of argument was that the

18  Turner tax liability that existed at the time of the IOLTA

19  transaction in August of '05 was Mr. Turner's tax liability for

20  '99 through '03, and you're saying that's -- that that must be

21  an oversight on Mr. O'Reilly's part?

22          MR. SPRINGER:  Well, yes, because the charts from

23  Mr. Miller on the third party for myself only have '99, 2000,

24  2002, and 2003.

25          THE COURT:  Do you take issue with the $145,713

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

426

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 126 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 427

336

1   amount that the government says was due from Mr. Turner as of

2   August of '05?

3            MR. SPRINGER:  Yes.  Absolutely.  In fact, they

4   testified just shortly ago that -- Mr. O'Reilly stated that

5   Mr. Turner just now lost in tax court over those years.

6            THE COURT:  So you're saying it should have been

7   higher?

8            MR. SPRINGER:  No.  I'm suggesting that these numbers

9   or amounts were in litigation by Mr. Turner at the time -- at

10  least up until whenever Mr. O'Reilly said -- I don't know

11  exactly the particulars about it, but he said that he lost in

12  tax court not too long ago, was the statement that

13  Mr. O'Reilly made.

14           THE COURT:  Proceed.

15           MR. SPRINGER:  I also do take exception with the

16  $145,713 as it relates to the wire transaction or the loan to

17  me.  That was certainly not any information that I was privy to

18  in 2005 with regard to Mr. Turner borrowing the money.  And

19  instead of paying $145,000 in taxes with a $250,000 loan, that,

20  instead, he wired it to me.  And there's been no evidence that

21  anybody ever said I was aware that Mr. Turner owed $145,000.

22  The only evidence is that I convinced Mr. Turner to go hire a

23  CPA and get his tax returns prepared.

24           THE COURT:  Well, you knew he -- as of the summer of

25  '05, you were well aware Mr. Turner was in hot water with the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

427

1    IRS -- fair to say?

2           MR. SPRINGER:  Yes, fair game in that, yes, sir.

3    Yes, sir.  But did not know these amounts or these years, was

4    unaware of the specifics.

5        I met one time -- and I believe I testified about this, I

6    met one time with the Department of Justice in Michigan, and

7    Mr. Turner and I went in there together, and I was coming off

8    of the IFC conference calls and trying to convince them that I

9    believed I could convince thousands of people to file their tax

10   returns if they would just allow me a little opportunity to do

11   so.

12       And, ultimately, they did agree, although they didn't

13   express it at that time, and allowed me to continue on those

14   conference calls to convince people to file their returns.

15       I also was unaware that -- the evidence shows that I was

16   unaware that when Mr. Turner borrowed that money that he was

17   doing anything that related to the taxes itself.

18       My understanding was that he was -- from Paul Stumpo's

19   testimony, after they had witnessed a trial together, that

20   Mr. Stumpo told Mr. Turner to make sure he has enough money to

21   hire enough counsel to take on the Department of Justice if

22   he's not going to file his returns.

23       And I even believe Mr. Burt testified he was at the same

24   trial as Mr. Stumpo was and Mr. Turner was that then caused or

25   resulted in causing Mr. Turner to, I guess, go borrow that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

428

1    money initially.

2         The government made a statement about Mr. Turner not

3    having a lien on the Lexus that was purchased with money that

4    came out of Mr. Stilley's IOLTA account from that $250,000 to

5    transaction, but what was also testified to about by me

6    directly during trial is that I spent $60 or $65,000 on that

7    RV, repairing it, bringing it up to the status it is now, and

8    including the purchase of a 22-foot trailer that I pulled

9    behind it.

10        And if you add the numbers up of all the money that was

11   spent on purchasing it, going and getting it, and all the

12   corrections -- or the repairs that I did, not including the

13   time I spent on it, which was just countless amounts of hours

14   from September until December of 2005, on my back, most days,

15   that those numbers are greater than $250,000.

16        It was just the way in which the money was positioned is

17   how it got used to buy the Lexus -- a portion of the Lexus.

18   There was a trade-in on top of that.

19        So because there was no lien on the Lexus does not mean

20   that Mr. Turner's interest wasn't secured by the money being

21   spent on the RV.

22        The government also suggests that I -- by not standing in

23   Mr. Turner's way in coming and picking up the RV that he has a

24   lien against that I've committed another act of tax evasion.

25        Now, presuming, from that angle, then that they suggest

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

429

1    that that money belonged to me and not to Mr. Turner, while at

2    the same time, Mr. Miller testifies that what I did is stole

3    the money, which none of that is true.  And you can't have a

4    lien on something that you have no control over if you stole

5    it.

6         And so here I was in this position and didn't do

7    anything.  I just sat frozen.  But if I kept it, then I stole

8    it.  If I let Mr. Turner come get it without my standing in his

9    way, committed an act of tax evasion, so says Mr. O'Reilly.

10        And the whole point was trying to get Mr. Turner back his

11   money.  And, in fact, my understanding is he is going to pay

12   the taxes that the tax court ordered he now owes when he sells

13   the RV, and that's what he told me.

14        But that had nothing to do with why I didn't stand in his

15   way to repossess it.  I hadn't been able to make a payment on

16   that RV in over two years.  And the market is coming up, the

17   economy is looking a little bit better, so he was ready to take

18   a chance with it, and that's why he came and got it.  And it is

19   hard to miss; it's quite a big monster.

20        Mr. O'Reilly mentioned the word "scheme" in reference to

21   these people who would write me checks and give -- with the

22   word "donation" on them, and the word "scheme" that he's

23   mentioning there is not the scheme in the theory of the

24   indictment, and it's not the scheme Mr. Gollihare refers to in

25   his report.  It's a different scheme.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

430

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 130 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 431

340

1     And the scheme is that by merely somebody writing

2   "donation" or not on a check, that somehow that that single act

3   defrauds the IRS.

4     And that is just not true.  As Mr. O'Reilly then said, the

5   defrauding is by not filing the tax returns, which, of course,

6   willful failure to file tax return, we all know by this case,

7   is a misdemeanor.

8           THE COURT:  Now you're getting -- I've heard you and

9   I'm not going to cut you off, but -- let me assure you of that,

10  but I've heard you on the various specific adjustments and on

11  the loss issues, especially the third-party tax loss issues,

12  which are very legitimate issues, but now you've moved into

13  matters that were thoroughly aired at trial and resolved

14  against you, so I'm not sure how much you're going to be able

15  to gain by arguing -- re-arguing matters that were definitively

16  resolved against you by the verdict of the jury.

17          MR. SPRINGER:  I was only emphasizing the word

18  "scheme" outside of the charge in Count 1, which was coming

19  under I think -- I believe Mr. O'Reilly was coming under

20  relevant conduct with a scheme whereby which the scheme was to

21  have people write "donation" on a check prior to the 2000 year

22  in Count 1.  I believe that's what Mr. O'Reilly was referring

23  to, and I was just --

24          THE COURT:  Are you saying that I should look at that

25  differently if it's outside of the conspiracy period versus

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

431

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 131 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 432

341

1   inside the conspiracy period?

2           MR. SPRINGER:  I don't believe that the writing of a

3   check to Lindsey Springer in and of itself is an act of

4   defrauding the IRS.  I don't believe that that lone act of

5   somebody just writing a check to me and me receiving it is an

6   attempt by anybody to defraud the IRS.  What I don't do or do

7   with it obviously has become an issue in this case.

8           THE COURT:  Okay.  Go ahead.

9           MR. SPRINGER:  But Mr. O'Reilly said it was the act

10  of them writing that check, and that's why I was standing in

11  opposition to.

12      As far as restitution goes, that is one of the places

13  where I got hung up on Count 1 versus Count 2, 3, 4, 5, and 6,

14  and what I expressed when I was on the witness stand about the

15  confusion that Count 1 and relevant conduct has then caused --

16  for instance, I'm not certain about restitution being over and

17  above the amount of money that I would have said to have been

18  owing.

19      Mr. Gollihare, in his report, he suggests that because the

20  object of the conspiracy was to evade the payment of taxes,

21  that that then allows for interest and penalty to be included,

22  whereas Mr. O'Reilly -- he argues interest and penalty.  He's

23  not pushing for it in his objections.  And specifically stated

24  that Mr. Stilley and I were not charged with either willful

25  failure to pay taxes or committing the act of attempt to evade

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

432

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 132 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 433

342

1   the payment of taxes in the tax evasion charges.

2       And so, again, that's where I got -- I'm still confused on

3   the difference between what Mr. Gollihare is saying, because,

4   in his view, the object of the conspiracy is evading the

5   payment of taxes, but in the government's briefs that they

6   filed, they said the object of the conspiracy was a broader

7   defraud-the-IRS theory, and -- whereas evasion of payment comes

8   into a more narrow focus and would be actually a conspiracy to

9   commit an offense against the laws of the United States, a

10  separate charge than a conspiracy to defraud the United

11  States.

12      In either way, I don't believe that interest and penalty

13  are appropriate, because Mr. Stilley and I were not found

14  guilty of evading the payment of taxes specifically or willful

15  failure to pay taxes under 7203.

16      There are many crimes there and we were charged -- I was

17  charged with willful failure to file a U.S. Individual Income

18  Tax Return form for each of the years, with affirmative acts

19  for three of the years, and Mr. O'Reilly has admitted on more

20  than one occasion the assessment -- it was the evasion of

21  assessment, not the evasion of payment, that was the theory

22  behind the government's charging.

23      So I don't -- under anybody's analysis, I believe interest

24  and penalty should not be included per the Sentencing

25  Commission's report that they should not be included.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

433

1          THE COURT:  Tell me specifically what you refer to by

2   way of the Sentencing Commission's report.

3          MR. SPRINGER:  May I have just a moment?

4          MR. O'REILLY:  Your Honor, I may be able to clarify

5   this.  I believe Mr. Springer is confusing the tax loss

6   computation, which does include it under 2T1.1, with

7   restitution, where penalties and interest are includable.

8          THE COURT:  Well, that -- that's what prompted me to

9   make my inquiry to Mr. Springer.  If the Sentencing Commission

10  has published anything that tells me that I should ignore the

11  interest and penalties for restitution purposes, now is the

12  time to tell me about that.

13         MR. SPRINGER:  In agreeing with Mr. O'Reilly, the

14  Sentencing Commission said it shouldn't be included in tax

15  loss, so if -- if restitution is a different amount than tax

16  loss, then that's the spot that I'm confused about, because my

17  understanding of restitution was to make the victim whole.  So

18  if penalties and interest can't be included in the tax loss

19  calculation, which is the -- making the victim whole, then it

20  would seem logical that restitution would also not include

21  interest and penalty, because they have the mechanisms the IRS

22  has within their own ability to know how to calculate interest

23  and penalty in those senses.

24      Now, the Commission did say if it was evasion of payment

25  or failure to pay taxes, then interest and penalty would apply,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

434

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 134 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 435

344

1   but they gave that exclusion in the guideline.

2        Mr. O'Reilly mentioned I referred on the witness stand as

3   to a special skill, and I believe my testimony was my special

4   skill was something I obtained after reading the Bible, which

5   somehow allows me to remember everything that I read in the tax

6   code.  That was the extent of my admission to special skill.

7        And I also said on the witness stand that I have no idea

8   how to explain how I got that.  There was no training.  There's

9   no evidence of any schooling.

10       And that special skill is not an issue that has ever been

11  raised in this trial by anybody.  Nobody said, because of his

12  special skill of being able to remember what he reads, this is

13  what happened to me.

14       Your Honor, may I inquire, is there still need for

15  commentary -- or statements from me regarding public or private

16  trust?

17            THE COURT:  Certainly an issue.

18            MR. SPRINGER:  Okay.  If I might just have one more

19  moment, Your Honor.

20            THE COURT:  Surely.

21            MR. SPRINGER:  First, I'd like to address the

22  otherwise extensive argument that the government has made.

23  When I was referring to what they had stated about me having

24  people write a check to me and some noting on it "donation" or

25  "gift," but, obviously, through the evidence at trial, the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

435

345

1  majority of them did not say anything on them, that there is no

2  evidence that I was an organizer or leader of criminal activity

3  that either involved five or more participants or was otherwise

4  extensive.

5      The -- and my understanding is we're referring only to

6  Count 1 as the lead count of the grouping, because it is the

7  one the government seeks to get to the highest level of the

8  Sentencing Guidelines.

9      And in Count 1, the criminal activity in Count 1 is an

10  agreement between Mr. Stilley and I to defraud the IRS, and

11  then there's a listing in the indictment of five manner and

12  means.

13          THE COURT:  First of all, do you understand that the

14  application of that aggravating role guideline is -- will be

15  determined on the basis of your relevant conduct and not on the

16  basis of the conduct underlying any one count of conviction?

17  That's the law.  So you would do well to put your argument in

18  the framework of the law.

19          MR. SPRINGER:  United States v. Griffin, the Tenth

20  Circuit, in 2009, found that for the district court to consider

21  relevant conduct, the government must prove by a preponderance

22  of the evidence that the defendant engaged in conduct related

23  to the offense of conviction pursuant to 1B1.3 and the conduct

24  constituted an offense under either federal or state law.  And

25  that's 584 F.3d 1004, Tenth Circuit, 2009.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 136 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 437

346

1       An attempt to conceal gross income or failure to file a

2   tax return could be relied upon by the Court for the meaning of

3   the phrase "criminal activity."

4       But in my opinion, that is as far as that should be

5   allowed to go.  And the government has not established any

6   other offenses, other than the ones that are in the indictment,

7   without the -- in addition to that, there is, for 2001, 2006,

8   and 2007, evidence that I received gross income for those

9   years.

10      But as they went backwards past 2000, they did not point

11  to any offense that I committed outside of the years of the

12  indictment.

13      And as far as "otherwise extensive" goes, as the probation

14  office report reports, the factor was the "extent to which

15  other people are used even if they are not criminally

16  responsible for the conduct."

17      In the instant case, the majority of the people associated

18  with the defendant, fellow tax protestors, Mr. Gollihare wrote,

19  were not criminally responsible for defendants' crimes, but

20  received a service, whether it be information, advice, legal

21  research, and writing referrals or legal counsel for which they

22  compensated the defendant resulting in gross income.

23      And Mr. Gollihare cites to 3B1.1, Comment 1, and United

24  States v. Linney, 174 Fed. Appx. 142 at 144, West Virginia.

25  And I guess that's where I'm confused, when you said just a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

437

1  moment ago, it's all of the charges together, and I agree with

2  Mr. Gollihare's report on page 12, which said -- which says,

3  and finds, that the Count 1 offense only involved two

4  participants:  me and Mr. Stilley.

5      And for that basis, there is no evidence that the conduct

6  was otherwise extensive or deserving of a four- or three-level

7  increase.

8      Under 3B1.3, Comment Note 1, for the adjustment under

9  3B1.3 to apply, the position of public or private trust must

10  have contributed in some significant way to facilitate the

11  commission or concealment of the offense.

12      And, again, my reading of the word "offense" is all of

13  them that are related or grouped together and the lead offense

14  we billed as the one that gets the most points, and that

15  Mr. Gollihare found -- and I don't think the government objects

16  to -- is Count 1, and that's why the phrase "offense" is there,

17  under my understanding of the reading.

18      In the event that -- scratch that.

19      In United States v. Spear, Tenth Circuit, 2007, 491 F.3d

20  1150 at page 1153, the Tenth Circuit found:  "In order to apply

21  the enhancement for abuse of a position of trust, the

22  government must satisfy two elements establishing, one, that

23  the person occupied a position of trust, and, two, the position

24  of trust was used to facilitate significantly the commission

25  and concealment of the crime."

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

438

1        As to the first element, a quote in this circuit, the

2    Tenth Circuit, the question of whether an individual occupied a

3    position of trust is evaluated from the victim's perspective,

4    citing United States v. Chee, C-H-E-E, 514 F.3d 1106 at page

5    1118, Tenth Circuit, 2008.  See also United States v. Slaton

6    (ph), 2008 Westlaw District of Kansas at Number 3819836.

7        As Mr. Gollihare finds, the conduct in this case is viewed

8    in two parts:  The earning of income, a lawful undertaking; and

9    the conduct of concealing this income and failing to file tax

10   returns conduct, that is not lawful.

11       The defendant, in providing information, encouraged,

12   advised and represented to fellow tax protestors, may have

13   entered into a private-trust-type relationship; however, these

14   individuals are not victims.  They sought a service and

15   received what they paid for.

16       The victim is the United States, said Mr. Gollihare,

17   through its bureau, the Internal Revenue Service.  The

18   government acknowledges that neither Defendant Springer nor

19   Defendant Stilley had a position of trust with the United

20   States, end of quote, and that's from their sentencing

21   memorandum at page 17.

22       As to the second element --

23            THE COURT:  Mr. Springer, I have read and will reread

24   the presentence report.  Do you have any more argument?

25            MR. SPRINGER:  I did not occupy a fiduciary position

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

439

1   relative to the United States of public or private trust.  And

2   there has been no evidence otherwise.

3       As far as special skills go -- scratch that.  I'll leave

4   that one alone.

5       May I have one moment, Your Honor?

6            THE COURT:  Surely.

7            MR. SPRINGER:  Is there any questions you would have

8   of me at this time, Your Honor?

9            THE COURT:  I do not.

10           MR. SPRINGER:  Okay.  Thank you.

11           THE COURT:  We'll take a mid-afternoon recess before

12   we have any argument Mr. Stilley may care to present.  And so

13   we'll take a 15-minute break.

14       Court will be in recess.

15       (RECESS HAD)

16           THE COURT:  Mr. Stilley.

17       Bear with me just a minute.  I left my pen in the office.

18       Thank you.  You may proceed.

19           MR. STILLEY:  May it please the Court, I'd like to

20   start off by saying that I intend to try to keep things as

21   concise as possible.  I know the Court has ruled on a lot of

22   things, and I will presume that unless the Court indicates

23   otherwise the Court remembers those things, and if the Court

24   hears anything that causes it to think that those need to be

25   changed, that the Court will do that.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

440

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 140 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 441

350

1    I'd like to start with tax loss.  That's the first thing

2  that the Court had directed our attention to.  But I want to

3  attack that from, perhaps, a slightly different angle.

4    I will start with the second PSR.  Actually, perhaps, I

5  think, on tax loss, it would be better to look at the

6  addendum.  That's where that the objections were considered.

7    But, really, before I even start in on that, I think we

8  need to consider what is properly before the Court upon which

9  the Court can base its decision, and that is evidence.  We have

10  to have evidence.  It has to be proven to the preponderance of

11  the evidence.

12    At this point in time, we've got one theory from the

13  probation department and one theory from the government.  Oscar

14  Stilley disagrees.  And now we have another theory from the

15  witness stand, from Mr. Shern.

16    Mr. Shern was asked about the scope of the conspiracy, and

17  there was a reason for that.  The United States v. Dazey case

18  out of the Tenth Circuit says that certain information has to

19  be obtained so that the Court can make particularized

20  findings.

21    In order to assist the Court in doing that, I asked

22  questions of the witness to find out what the witness would say

23  what the scope of the conspiracy was.

24    Mr. Shern said that the conspiracy was a conspiracy to

25  basically cheat certain persons in need of legal services out

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

441

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 141 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 442

351

1   of their money.

2        And the context and the way that this was stated indicates

3   that it really didn't have anything to do with taxes.  He said

4   that Mr. Hawkins was a victim, despite the fact that

5   Mr. Hawkins' case didn't have anything to do with taxes.

6        Now, he also said that basically all the people that put

7   money in were also conspirators.  That doesn't make a lot of

8   sense.  It doesn't make a lot of sense that the conspirators

9   were -- are alleged to be victims at the same time.

10       Nevertheless, we have testimony from the witness

11  concerning what the overall conspiracy was.  And just to nail

12  things down, I said -- I asked:  How many conspiracies?  One

13  conspiracy.  What was the conspiracy for?  He testified, as I

14  just told you.  And then I asked:  Anything else?  Mr. Shern

15  said no.

16       So that brings us to what the probation department --

17  actually, the probation department at page 5 of the PSR

18  addendum did cite United States v. Dazey and explained how that

19  that analysis was necessary, and how that that had to be

20  applied.

21       It says because a defendants' accountability only extends

22  to the criminal activity he agreed to undertake.  So,

23  therefore, it's necessary to determine the scope of the

24  conspiracy, because the Court couldn't go outside that scope of

25  the conspiracy.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

442

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 142 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 443

352

1     And then it's necessary -- you can see as you read further

2   in the commentary of the probation department -- it's

3   necessary, then, to see the specific criminal activity the

4   particular defendant agreed to jointly undertake, i.e., the

5   scope of the specific conduct and objectives embraced by the

6   defendants' agreement.  And that's on -- at the top of page 6.

7          THE COURT:  Well, are you suggesting to me that the

8   scope of jointly-conducted criminal activity, within the

9   meaning of Guideline 1B1.3, I believe it is, is limited by the

10  scope of the conspiracy in a count of conviction?

11         MR. STILLEY:  Yes, Your Honor.  And the reason for

12  that, I very stringently objected to any proposed sentences or

13  the PSR unless it was made specific as to what -- where the

14  basis was at.

15     And the best basis that we've got to determine where the

16  government and the probation department started is at Count 1,

17  so I'm presuming that Count 1 is where that we start before we

18  go to 1B1.3 and either (1)(a) or (1)(b).

19     And the reason that I'm saying that that is essential is

20  because although that there may have been other testimony about

21  certain facts in the case, no other person has testified and

22  given evidence in the trial or in the sentencing phase from

23  which the Court can make the particularized findings required

24  by that case.

25     And I've got that -- there's -- in one of my filings,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

443

353

1   actually, in Document 330 at page 2 in Dazey, the Court said:

2   "This means proper attribution at sentencing requires

3   particularized findings about the scope of the specific

4   agreement the individual defendant joined" --

5        Now, I understand that it doesn't really make sense that

6   Mr. Shern's testimony about the scope of the agreement is

7   totally inconsistent with what the charges were.  For the

8   purposes of this sentencing agreement, we have to have evidence

9   and it has to rise to the level of preponderance of the

10  evidence.

11       Mr. Shern's testimony is all that we have.  We don't have

12  anything else from which these particularized findings about

13  the scope of the specific agreement the individual joined could

14  be determined.

15       Now, one might think, well, doesn't that mean that we

16  would simply go to a little different route and try to

17  determine what the losses were of the people who were allegedly

18  harmed by the conduct of the defendants in allegedly having

19  cheated these individuals?

20       Due process would not allow the Court to take a theory

21  that was raised for the first time at a sentencing hearing and

22  expand that and flesh that out in order to make findings of

23  losses with which to enhance or to drive a sentence on that

24  defendant.

25       The defendant is entitled to have notice of this in a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

444

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 144 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 445

354

1   reasonable time.  And as you've -- I'm sure you've noticed

2   there have been certain questions of the witnesses, in addition

3   to the pleadings that I have set forth, complaining about the

4   lack of information being given to Oscar Stilley.

5       On the 11th of March, I filed my objections to the

6   presentence report, provided all the necessary parties,

7   including the government, stated that I wanted copies of the

8   documents that were relied upon in the creation of this

9   report.  And I also asked for that in a separate e-mail,

10  despite having full knowledge of this and despite the fact, by

11  the witness's own testimony, that these documents had been

12  available for about at least two or three months.  These

13  documents were not provided.

14          MR. O'REILLY:  Your Honor, objection, confusing and

15  misleading.  If the Defendant Stilley is speaking of the

16  summaries, those were not provided until the Court directed

17  sometime in the last couple of weeks.  If he's talking about

18  the underlying documents, he has had those for quite some time.

19          THE COURT:  That's understood.

20      Proceed.

21          MR. STILLEY:  And the reason that I wanted those

22  specific summaries was for the purpose of being able to

23  understand the legal theories and the factual theories of both

24  the government and the probation department, because it's

25  important to have that information in order to effectively

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

445

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 145 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 446

355

1    defend yourself in this proceeding, as a sentencing proceeding,

2    and as this Court has said many times, the sentencing

3    proceeding is one of the most important of the entire case.

4        This being the case, I would simply respectfully urge the

5    Court to determine that the particularized findings cannot be

6    made in -- according to the law, in any manner that would allow

7    the attribution of any losses, tax losses or other losses to

8    the Defendant Oscar Stilley with respect to Count 1 of the

9    indictment.

10       And with respect to Counts 3 and 4, I would respectfully

11   request that the Court simply declare that because neither the

12   government nor the probation department indicated that they

13   would rely on those counts as the count from which to go to the

14   guideline, that they are -- this Court would not properly use

15   either of those counts to find either tax loss or a loss on the

16   basis of the theory by Mr. Shern.

17       Now, I want to start now on Turner, Patterson, Roberts,

18   and Lake, but before I do that, I think it would be instructive

19   to look and see what is -- what we are talking about as far as

20   1B1.3 relevant conduct.

21       It says that -- and I'll start at paragraph small Roman

22   iv -- "Adjustments in chapter 3 shall be determined on the

23   basis of the following:"  If you start with A, all acts and

24   omissions committed, aided, abetted, counseled, commanded,

25   induced, procured or willfully caused by the defendant and

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

446

1    then -- if you skip B -- it says, that occurred during the

2    commission of the offense of conviction in preparation for that

3    offense or in the course of attempting to avoid detection or

4    responsibility for that offense.

5        Now, this provision, especially the subpart B here, that

6    would be applicable to Count 1, the conspiracy count.  However,

7    now we're looking, I presume, at least, that we are looking at

8    the government claiming that Oscar Stilley personally committed

9    acts during the commission of the offense of conviction or in

10   preparation or in an attempt to avoid, with respect to these

11   four individuals.  That is my assumption and that's where I

12   start.

13       When you look -- well, actually, even if you look at Count

14   1 or 3 or 4, none of those counts give a time frame that allows

15   us to make any sense at all of Sentencing Guideline 1B1.3.  It

16   simply doesn't make sense.

17       When you look at Roberts, the alleged statement to Roberts

18   was made in 1990 or perhaps 1991.  The presentence report --

19   and, of course, on these matters, the government certainly did

20   not object -- it says that Oscar Stilley graduated law school

21   in December of 1990 and was admitted April 15th of 1991.

22       So the allegation that Oscar was an expert at that point

23   in time and, therefore, some comment that he made is of great

24   significance now doesn't make any sense.

25       It was not said during the commission of the offense or in

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

447

357

1   the course of attempting to avoid detection or attempting to

2   avoid detection or responsibility in -- of that offense.  Those

3   -- trying to go back that far simply stretches the guideline

4   provision far beyond anything that its plain language could

5   possibly tolerate.

6        Your Honor, could I have a moment to get the exhibits?

7             THE COURT:  Surely.

8             MR. STILLEY:  Your Honor, as to Eddy Patterson for

9   the year 2000, there's one thing I think needs to be brought

10  out, and that is the government continually tries to take words

11  by Oscar Stilley or Lindsey Springer and just keep embellishing

12  them and making them get bigger and bigger.

13       The words that are generally first cited are that Oscar

14  Stilley said that he didn't file tax returns.  They take those

15  words, and then in their arguments, they begin to embellish and

16  say Oscar told him not to file, Oscar counseled him to do that,

17  Oscar counseled him to do something else, but it's not there.

18       Furthermore, as the probation department notes, there is a

19  First Amendment, and the First Amendment guarantees a freedom

20  of speech, it guarantees rights to speech, and certainly Oscar

21  Stilley was not put on notice that simply making a comment that

22  he believed in -- to be in confidence with his client, making a

23  comment about what he did, without further, could constitute an

24  act that could either be criminal or could be used to enhance

25  some other alleged offense.  It doesn't make any sense at all.

1      And there is no -- as far as I can tell, there is no

2   suggestion that there was any conduct to go with the words

3   suggesting that there was anything more than the basic comment

4   that was made either to Patterson or to Lake or to Roberts.

5      Furthermore -- and the evidence is not heavy on this, but

6   I think it's clear from trial testimony, as well as some of the

7   sentencing testimony, that the practice of Oscar Stilley was to

8   assist people and to do the things that they asked him to do,

9   and many times it's admitted that many times Oscar assisted --

10  Oscar Stilley assisted people in preparing and filing returns.

11     And the suggestion that -- for example, on Patterson, the

12  timing of a certain event could impute liability to Oscar

13  Stilley based on an offhand comment, it's not permitted for a

14  number of reasons, for the First Amendment and for general

15  principles of criminal liability.

16     Now, on the -- on Mr. Turner, there's obviously two sides

17  of that:  There's the $250,000, and I think that the Court is

18  -- is fairly well-briefed on that, that the $250,000 does not

19  represent materially a depletion of the assets of Mr. Turner.

20  It's still available for the IRS.  I think that that has been

21  adequately addressed.

22     Let's stop and think about the means of attribution of any

23  liability on Patrick Turner to Oscar Stilley.  The facts that

24  are shown in the evidence -- to the preponderance of the

25  evidence or more include the fact that money was sent to Oscar

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

449

1   Stilley's IOLTA account.  There's nothing wrong with that.

2        The fact that it was a large sum suggests that some --

3   there was at least some contemplation of using some of that

4   money to pay taxes.  There was apparently a decision on the

5   part of the client to litigate -- I think the testimony or

6   argument at least suggests that there was a tax court case, and

7   Mr. Turner transferred that money to someone else.

8        Your Honor, I don't really understand what the government

9   or the probation department relies on.  I presume that they are

10  relying on Count 1, and I've already demonstrated the reasons

11  that Count 1 doesn't work for this.

12       I don't see how that any other count could work for this,

13  partly to attribute liability to Oscar Stilley, partly because

14  of the reasons that I have already briefed this Court, I think

15  it was December 9 of 2009, in my post-trial motion for judgment

16  as a matter of law and for new trial.

17       The law in Arkansas, it's undisputable that a lawyer who

18  is directed by his client to disburse money to another person

19  has to disburse the money.  It's not an option.  It is an

20  ethical violation.  It is a tort of conversion.  It is probably

21  a crime for a lawyer to refuse to give money to the person who

22  is entitled to the money promptly.

23       And, Your Honor, I would respectfully contend that trying

24  to hold a lawyer liable because they did something that the law

25  and ethical rules require, would be a very bad idea.  It would

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

450

360

1  set a new precedent.  It would chill the activities of

2  attorneys.  It would put attorneys in the place of deciding

3  which rule or which law do I break.

4      I've not heard any testimony from anyone to the effect

5  that Oscar Stilley had some other reasonable option and could

6  have followed that reasonable option but he did not.

7      And for that reason, I would respectfully submit that

8  Patrick Turner's taxes, which are still -- apparently still

9  being litigated or perhaps that litigation is closed, but there

10  was a good-faith effort on the part of the client to do what he

11  thought he had a legal right to do.  There was no evidence that

12  Oscar Stilley, in his mind, had any evil knowledge or the basis

13  for doing anything differently or any basis for reporting the

14  client's conduct to any of the authorities.

15      We know, it's a well-established matter, that there's

16  attorney-client confidentiality.  It would have to be a really

17  egregious thing that would even authorize an attorney to breach

18  his own client's confidentiality and go to some other authority

19  and tell that authority that the information gained in

20  confidence from that client.

21      Allowing the government to pile on with this and use this

22  as tax loss would be in conflict and inconsistent with very

23  important legal principles in our society.

24      Mr. Lake presents a slightly different set of facts.

25          THE COURT:  Mr. Stilley, excuse me, before you get

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

451

361

 1   into that.  I think analytically Dr. Roberts may be in a little

 2   bit different category, but is -- do you understand the

 3   government to be arguing with respect to the attribution of the

 4   third-party tax loss as it relates to Mr. Patterson and

 5   Mr. Lake, that the government is urging that that -- what we

 6   call third-party tax loss be attributed on the basis of conduct

 7   that, in fact, occurred after the beginning of the conspiracy

 8   period as alleged in Count 1?

 9         MR. STILLEY:  Well, that depends on whose story you

10   take.  If you take Mr. Shern's testimony of 1999, I think he

11   said was the start, then the timeline would fall in the --

12   within the time of the alleged conspiracy, yes.

13         THE COURT:  Proceed.

14         MR. STILLEY:  Okay.  And that brings up the idea in

15   my mind that I respectfully contend to this Court, it's

16   fundamentally unfair to Oscar Stilley that he has to defend on

17   these two gentlemen that you just mentioned without having it

18   told to him specifically we are relying on this count, for

19   example, Count 1, and then it's either A or B, it's your

20   individual acts or it is the agreement that you made, so that I

21   know which is which, going down that road, and then setting

22   forth in their argument the particularized facts or at least

23   their position of the particularized facts whereby that they

24   can link these things together.  I contend, respectfully, that

25   it's unfair to ask Oscar Stilley to defend at a sentencing

1    proceeding without this fundamental information.

2        Okay.  On Mr. Lake, we have an individual who is already

3    criminally charged before he meets Oscar Stilley.  Mr. Lake

4    says that he was told this little snippet.  There's no

5    suggestion that he changed his conduct in any way on the basis

6    of this snippet.  There's no suggestion that there was any act

7    performed by Oscar Stilley to go with the speech whereby that

8    it might be taken out of the category of free speech and put

9    into some other category.

10       We have actual evidence that Mr. Lake fired Oscar Stilley

11   and replaced Oscar Stilley with a new legal team and then he

12   did the trial, and shortly thereafter, pleaded guilty.

13       There's -- it just doesn't make sense to try to attribute

14   all the tax losses of James Lake to Oscar Stilley on the basis

15   of an alleged offhand remark made to James Lake.

16       Taken to its logical conclusion, suppose that an

17   individual, just a person, speaks at a conference and tell --

18   or let's say they just say to ten people I don't file tax

19   returns and those other people happen not to file tax returns,

20   based on the government's theory, that person can be held

21   liable for all ten of those persons' taxes if they didn't file

22   and pay.  Anybody they made this offhand comment to could be

23   held liable, even without any encouragement, any suggestion

24   that someone had said that not filing returns was advisable,

25   and without any evidence of anything that would suggest an

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

453

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 153 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 454

363

1   intent to cause imminent lawless activity.  It just doesn't

2   make sense.

3        It attacks one of the most foundational elements of our

4   constitutional republic:  The right to free speech, the right

5   to criticize the government.  And in this case, it's not even

6   criticizing the government, it's simply making a comment.

7        And I think you can see that the government is not

8   satisfied that such offhand comments or such statements -- even

9   if you just take it as a solemn statement, that such statements

10  are enough, because they continually try to say that it's a

11  little bit more, it's something else, when you -- if you look

12  back at the written record, you don't see any such things.

13       So the government seems to at least tacitly admit that

14  this is not enough evidence to charge the conduct to Oscar

15  Stilley.

16       And, once again, I can't tell you -- based on either the

17  presentence report or the government's sentencing memorandum, I

18  can't tell you where do they start, what particular count, and

19  then at 1B1.3, which particular provision that they went to and

20  then the facts that they've got.

21       I am forced to roam and try to figure out what they did.

22  And if I go down one path, then the government can get up here

23  afterwards and say, oh, he picked the wrong path, it's this

24  other path, and that is why Oscar Stilley should be held liable

25  or tagged with these amounts and that these should be claimed

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

454

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 154 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 455

364

1  as tax losses.

2      Your Honor, if I could set this aside and get back to my

3  paperwork.

4          THE COURT:  Surely.

5          MR. STILLEY:  Your Honor, the criminal -- the

6  criminal source question to me is rather confusing with various

7  different theories about how that might be.

8      The addendum at page 8 -- PSR addendum at page 8 addresses

9  this and says there is no evidence that the defendant defrauded

10  anyone but the IRS.

11     On the basis of my central argument, Mr. Shern has already

12  testified that the conspiracy was not to defraud the IRS, it

13  was to defraud the people who put money in, the people who gave

14  money to Lindsey Springer or Oscar Stilley.  That is who that

15  was.  And the -- and that's the evidence that we have to go

16  on.

17     The probation department is saying that this was an effort

18  to hide Turner's liquid assets from the IRS, and, secondly, to

19  fund Turner's defense.  The transaction was clearly a scam, but

20  its object was to defeat the IRS, not rip off Turner.

21     And I would respectfully contend -- well, I've already

22  stated the reasons that the lawyer should not be punished for

23  doing something he didn't have any other opportunity to -- he

24  didn't have an opportunity to change or do differently, and it

25  -- there's no evidence in the record that I can see from which

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

455

Case 4:09-cr-00043-SPF  Document 400  Filed 07/12/10  Page 155 of 180
Appellate Case: 22-5113    Document: 010110803141    Date Filed: 01/25/2023    Page: 456

365

 1   a finding could be made that Oscar Stilley would have had any

 2   knowledge about such a plan even if it did exist.  And there

 3   has to be some evidence.

 4       As to the obstruction of justice, that seems to be a

 5   contention that Oscar Stilley did not satisfactorily comply

 6   with the subpoena from the government.  Now, actually, that's

 7   not all of it.  There's two parts:  One, there is the

 8   contention that Oscar Stilley testified that the money was not

 9   gross income, that it was simply gifts or donations.  With

10   respect to that information, I would respectfully contend that

11   there's no basis for saying that that is perjury, because an

12   attorney could make that argument and might win.  I think this

13   Court would recognize that based on the evidence that we have

14   before us, that an attorney could argue this matter in tax

15   court, in the district court, at a circuit court or otherwise,

16   and have a possibility of winning.  And there's no evidence

17   that I can recall from anybody suggesting that Oscar Stilley

18   did not actually believe these facts and have at least a

19   reasonable basis for these facts.

20       For example, the words of Mr. Patterson, his conduct at

21   the time -- I'm not saying necessarily that there was evidence

22   that Oscar Stilley saw his letter saying that it was a

23   donation, but, nonetheless, the -- all the people who had

24   spoken to Oscar Stilley had said this is -- to say to give

25   money, had said this is a donation, and Oscar Stilley could

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

456

Case 4:09-cr-00043-SPF Document 400 Filed 07/12/10 Page 156 of 180
Appellate Case: 22-5113 Document: 010110803141 Date Filed: 01/25/2023 Page: 457

366

1   reasonably rely on the representations of his own clients to

2   say this money was actually a donation.  The people that told

3   me to give it said that it was a donation.

4       There would have to be some evidence to show that Oscar

5   Stilley could not reasonably rely upon the representations of

6   his own clients to tell the grand jury what he perceived and

7   what he believed.

8           THE COURT:  In responding to the grand jury subpoena,

9   is it your contention that, in so doing, you were acting as

10  attorney for Lindsey Springer?

11          MR. STILLEY:  Certainly not.  Certainly not.  I was

12  -- I was subpoenaed as a witness.

13          THE COURT:  Proceed.

14          MR. STILLEY:  Now, the second part of this, and once

15  again, I take great umbrage at this -- well, actually on this

16  one, I do understand what they're saying.  They're saying that

17  there's two ways that Oscar Stilley obstructed justice.  The

18  other way is to say that Oscar Stilley didn't give all the

19  documents that were responsive to the subpoena.

20      What they're really saying is that Oscar took too narrow

21  of the reading of the literal words of what they said and

22  literally complied with what they said.

23      However, there was another subpoena that was issued, there

24  was a date set, and between the time of the setting of that

25  date and the date -- and the date for performance, there was a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

457

1   proceeding in the Northern District of Oklahoma in which

2   Mr. Snoke jumped up and said, Oscar Stilley is under criminal

3   investigation.

4        Well, now they have spilled the beans and told Oscar

5   Stilley that he is, in fact, under criminal investigation, when

6   Mr. Shern had previously said that wasn't the truth.

7        Subsequently, the government withdrew that subpoena.

8        It just doesn't make sense to tag Oscar Stilley with

9   obstruction of justice for not responding to a subpoena that

10  was withdrawn.

11       Now, they may say, well, it was for not responding to the

12  previous subpoena --

13            THE COURT:  Let me shorten this up a little bit.  I

14  have no inclination, unless you persuade me otherwise, to find

15  obstruction on the basis of any deficiency in document

16  production.

17            MR. STILLEY:  Okay.  Thank you, Judge.  That's all I

18  need to know.

19       Your Honor, could I have just a moment?

20            THE COURT:  Surely.

21            MR. STILLEY:  Thank you.

22       Your Honor, to the extent that there's any discussion of

23  sophisticated means, I am not speaking on any person's behalf

24  other than my own.  Of course, as a pro se person, that is the

25  general rule, but as to Oscar Stilley, this couldn't possibly

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

458

1  constitute sophisticated means.

2      I don't want to reiterate what I've already said before

3  about Count 1, but I think that's true here, but as to the

4  question of sophisticated means, we do have a situation where

5  Oscar Stilley had a legal duty to do what he did and simply did

6  the job that he was required to do, and nobody stated any other

7  way that Oscar could have handled his affairs so that he would

8  escape this conduct or this enhancement.

9      The Court did make a comment about the cost of prosecution

10 as that being shockingly low; however, I believe general legal

11 principles require the government to put on some proof.  And in

12 this case, Oscar Stilley objected to the costs of prosecution

13 partly for legal, as well as for factual reasons.

14     The government chose not to be specific about where that

15 they were going.  They chose not to say the -- I think it was

16 7206 or 7406.  I think it's 7206 -- which provision that they

17 were relying upon to get to the costs of prosecution.

18     They didn't put any evidence of it on.  And I'm not going

19 to speculate it was negligence as opposed to a conscious

20 decision.  It may well have been a conscious decision for the

21 simple fact, if they had put it on, then Oscar Stilley is going

22 to cross-examine on the basis of the facts as they might apply

23 to the law that the witness relied upon to say that costs of

24 prosecution were appropriate.

25     Now, when we go to the restitution, I think we have a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

459

369

 1  similar circumstance there, that the government is not being

 2  sufficiently clear about the specific reasons that they should

 3  be entitled to the restitution.

 4      They -- if they chose to or if the probation department

 5  chose to, they could go and specifically state here is the

 6  restitution provision, here is the specific part of this law

 7  that we're relying on, and here is the count that we're relying

 8  upon to tag in to get the restitution, then we would have a

 9  sort of chain of command so that I would have a means of

10  effectively rebutting that claim of restitution.  We didn't

11  have that.

12      I do appreciate the probation department setting forth the

13  fact that it would not be mandatory restitution, but I still

14  take the position that restitution is not proper in this case.

15      Now, there's a suggestion that Oscar Stilley should be

16  liable for Lindsey Springer's state tax and federal tax and

17  Oscar Stilley -- or Lindsey Springer, the converse.

18      Of course, I'm arguing on my own behalf, but I think it's

19  helpful for the Court in determining these general issues.

20  Let's stop and think about this.

21      If the government wanted to get this enhancement, or if

22  anybody wanted to promote this, surely they would say

23  specifically what state they're talking about.  And in my

24  initial presentence report, it didn't say what specific state

25  they were talking about, didn't give specificity about the

370

 1  amounts, which, once again, left me, a week before the

 2  sentencing hearing, before I had information, the summaries,

 3  that would give me information from which that I could even

 4  divine how they were going about this.

 5       Now, as to these tax, and especially but not limited to

 6  the state tax, we have to, once again, consider we have the

 7  rule, we have the guideline, and the government or the

 8  probation department had the power to say exactly how they were

 9  doing this.

10       We are starting with, for example, Count 1.  That's where

11  we start.  And we also say that it was your individual conduct,

12  so we go to subpart A.  We're going to go there.  And here is

13  the facts that cause you to have a state tax liability.

14       None of those things were done.  There was -- nothing has

15  been done through the evidence or through the theory to hook up

16  a legal basis for holding Oscar Stilley liable for Lindsey

17  Springer's state taxes with Oscar Stilley's range of

18  punishment.  And I respectfully contend that that deprives due

19  process not to be given that information.

20       And, furthermore, even as to, for example, Oscar Stilley's

21  alleged liability, we have the same impediment, we have the --

22  nobody seems to want to say, okay, Mr. Stilley -- scratch

23  that.

24       We heard the government say there's no venue for Oscar

25  Stilley's personal taxes in this district.  There's no venue.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

461

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 161 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 462

371

1  Now, we all understand that's not the end of the question.

2  That's really kind of the start of the question when you're at

3  the sentencing phase.  But it's not the end of the question.

4      And here is what has to be done.  Once again, the

5  government would have to say, okay -- for example, Count 1 --

6  and I'm presuming that if they had done their job, they would

7  have gone to Count 1, they would go to Count 1, and then they

8  would go to subpart B in the case of jointly undertaking

9  activity and show how that Oscar Stilley's alleged tax

10 liabilities can be brought into this sentencing phase -- how

11 that can be brought into this sentencing phase on the basis of

12 the facts.

13     And when we look at the facts, what we have to look at is

14 that this occurred during the commission of the offense of

15 conviction in preparation of that offense or in the course of

16 attempting to avoid detection or responsibility for that

17 offense.

18     We simply don't have that.  We cannot get there no matter

19 which choice is taken.  There is an insurmountable hurdle for

20 the government no matter what road they go down.

21     I would respectfully contend that the reason the

22 government was not specific in their legal theories and their

23 factual basis is because they didn't want to pin themselves

24 down.  They wanted to leave themselves open so that they could

25 put their witness on the stand and have him give a theory that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

462

1   was totally inconsistent with matters stated previously.

2      Your Honor, could I have just a moment again?

3           THE COURT:  Surely.

4           MR. STILLEY:  Unless the Court has questions, I have

5   nothing further.

6           THE COURT:  Let me -- stand by just a moment,

7   Mr. Stilley.  Let me -- I may have a question.

8      I don't see in the addendum to the presentence report,

9   either with respect to you or with respect to Mr. Springer,

10  that there was any objection to the cost of -- with respect to

11  cost of prosecution.  Maybe -- let me make sure that was

12  covered in the first instance in the presentence report.

13          MR. STILLEY:  I think I can help you, Judge.  I think

14  that was paragraph 55 and just about at the last page.

15          THE COURT:  Paragraph 55 in the presentence report

16  with respect to you?

17          MR. STILLEY:  Yes.

18          THE COURT:  Okay.  Now -- and, again, I just went

19  back through the addendum, both with respect to you and with

20  respect to Mr. Springer, and I certainly could have missed it,

21  but is there any place in the addendum in your instance that

22  there is a statement to the effect that you did object to the

23  paragraph with respect to cost of prosecution?

24          MR. STILLEY:  Your Honor, I really don't think there

25  is, and I complained just a little bit.  I tried not to be too

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

463

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 163 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 464

373

1    strident or anything, but I complained that I didn't feel like

2    my objections were sufficiently addressed in certain cases.

3            THE COURT:  Well, did you, in fact, object with

4    respect to paragraph 55?

5            MR. STILLEY:  I, in fact, did and I can tell you

6    exactly where I did that too.  That would be in my objections

7    at page 14, and it says, "Stilley objects to paragraph 55 in

8    its entirety.  26 USC 7206 has nothing to do with this case."

9    Wait a minute.  No, wait a minute.  I think -- is it 56 --

10   okay.  Both of those -- you can see what I said there.

11           THE COURT:  This is what -- which pleading is it that

12   you're reading from now?

13           MR. STILLEY:  I am -- pardon me.  It is the

14   objections of Oscar Stilley, and, unfortunately, they don't

15   have a number on them.  I think -- well, I can tell you when it

16   was filed.  It was filed the 11th of March.  And I apologize.

17   I see the government has a good practice of putting the sealed

18   document notice of electronic filing on theirs.  I didn't do

19   that.  So I'm not sure what number that is.  I'm suspecting

20   314.

21           MR. O'REILLY:  Your Honor, I don't recall what the

22   number was, but Mr. Stilley had no objection to the factual

23   predicate of paragraph -- of the cost of prosecution.  It had

24   something to do with 26 USC Section 7206(2), having nothing to

25   do with the case --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

464

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 164 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 465

374

 1          THE COURT:  Let's not -- from either Mr. O'Reilly or

 2   Mr. Stilley, let me see what the objection --

 3          MR. O'REILLY:  May I approach, Your Honor?

 4          THE COURT:  You may.

 5          MR. O'REILLY:  Towards the back, Your Honor.

 6          THE COURT:  Okay.  I don't construe this as -- I

 7   mean, you say you object to paragraph 55 in its entirety, but

 8   then you say that simply that 26 USC Section 7206 has nothing

 9   to do with this case.  I'm hard-pressed to conclude that that

10   put the dollar amount in issue.  Nothing was -- to the extent

11   you chose to get specific, you got specific about a legal issue

12   under Section 7206.

13      Go ahead.

14          MR. STILLEY:  I think I can help you out on that,

15   because I did also incorporate Mr. Springer's objections, and

16   at page 14 of his objections, he was more specific and said --

17   he said that for purposes -- would you like me to take this and

18   let you read the document?

19          THE COURT:  If you would, give that to the clerk and

20   let me take a look at it.

21          MR. STILLEY:  Sure.

22          THE COURT:  Well, Mr. Springer's objections did take

23   issue with respect to the amount.  I'll give this back to the

24   clerk.

25          MR. O'REILLY:  Your Honor, if I may, what paragraph

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

465

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 165 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 466

375

1   are we addressing?  Because I am not finding that.

2           THE COURT:  Mr. Stilley, if you would let

3   Mr. O'Reilly take a look.  He said he would want -- I don't

4   know if he said for purposes of sentencing or appeal, but he

5   said he would want a complete accounting of it.  I think,

6   fairly construed, that means he is taking issue with the

7   amount.

8           MR. O'REILLY:  Thank you.

9           THE COURT:  Thank you, Mr. Stilley.

10          MR. STILLEY:  Thank you, Judge.

11          THE COURT:  I do have one question for

12  Mr. O'Reilly.  And I'm not inviting rebuttal argument, mind

13  you, but I do have one question.  I'm going to ask this

14  question and then I'll give the defendants an opportunity to

15  address it, if they so choose.

16      I'm concerned with the tax loss attribution among others,

17  with respect to Mr. Roberts.  That obviously applies only to

18  Mr. Stilley.

19      The tax loss is apparently attributed to the tax years '92

20  through '95 and the comments that the government relies on by

21  Mr. Stilley were apparently said back in 1990 or 1991.

22      That perhaps has some of its own factual issues, but then

23  I come to Application Note 2 under Guideline 2T1.1, and the way

24  I read Application Note 2 as it relates to individual conduct

25  as opposed to jointly-conducted activity, I have to find, in

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

466

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 166 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 467

376

1  order to attribute a tax loss to Mr. Stilley relating to

2  Mr. Roberts' tax liability from -- based on comments made by

3  Mr. Stilley to Mr. Roberts back in the early nineties, I have

4  to find that is part of the same course of conduct, unless the

5  -- that that includes -- well, let me put it this way:

6  Application Note 2 says, and I quote, "In determining the total

7  tax loss attributable to the offense," and then it cites

8  Guideline -- the relevant part of Guideline 1B1.1 -- "all

9  conduct violating the tax laws should be considered as part of

10 the same course of conduct or common scheme or plan unless the

11 evidence demonstrates that the conduct is clearly unrelated."

12        Now, the people who wrote the guidelines, whatever else

13 might be said of them, they used words sometimes -- when they

14 intended to be vague, they were vague.

15        One of the best illustrations of that, not involved in

16 this case, is the guideline that provides for an enhancement if

17 a firearm was possessed, with no further guidance than that.  I

18 think that's intentionally vague.

19        Well, I think the language of Application Note Number 2 is

20 intentionally specific.  "Should be considered as part of the

21 same course of conduct or common scheme or plan unless the

22 evidence demonstrates that the conduct is clearly unrelated."

23        Well, that, I take it, as a rather pointed effort from a

24 drafting standpoint to cast the burden on the defendant to show

25 that any particular activity was unrelated, because it says,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

467

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 167 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 468

377

1   "unless the evidence demonstrates that the conduct is clearly

2   unrelated."

3        Even with that rather pointed thrust, if you will, I'm

4   having some difficulty taking Mr. Stilley's statements to

5   Dr. Roberts in the early nineties and relating that in any way

6   to the matters of which these defendants stand convicted so as

7   to tack it on, if you will, from a relevant conduct

8   standpoint.

9        I need you to help me on that.

10             MR. O'REILLY:  Your Honor, I believe the Court would

11  have absolutely no problem -- in fact, I know -- I believe the

12  presentence investigation report concluded correctly that

13  Mr. Springer's failure to file in earlier years --

14             THE COURT:  You mean Mr. Stilley?

15             MR. O'REILLY:  No, Mr. Springer, his failure to files

16  are relevant conduct for the tax loss for Mr. Springer from

17  1990 to 1995.

18        Similarly, Mr. Stilley did not file returns, despite

19  earning income, throughout the 1990s.  If we were talking about

20  his income, I think the Court would be similarly easily

21  persuaded that that is part of the same course of conduct.

22  It's his willful violation of tax laws.  We don't have that

23  information, but we do have --

24             THE COURT:  We don't have what information?

25             MR. O'REILLY:  What Mr. Stilley was earning for the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

468

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 168 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 469

378

1   1990s.  We just don't know.  If we had that information, if we

2   had a calculable tax loss with respect to Mr. Stilley's

3   failures to file through the nineties, that would be readily

4   and easily seen as part of the same course of conduct.

5        In the same vein, it's important, the United States

6   believes, that if he is counseling people to not file and

7   continues to conduct that same course of conduct up to and into

8   the conspiracy he joined with Mr. Springer in 2000, that

9   misconduct or -- is relevant conduct as to him.

10       And that's the government's theory upon which under 1B1.3

11  (a)(1)(A), all acts and omissions committed, aided, abetted,

12  counseled -- and it goes on -- or willfully caused by the

13  defendant are includable as relevant conduct.

14       If the evidence showed --

15       THE COURT:  Well, wait a second.  Well, (a)(1)(A) is

16  qualified also by the language "that occurred during the

17  commission of the offense of conviction in preparation for that

18  offense or in the course of attempting to avoid detection or

19  responsibility for that offense."

20       Now, it should also be pointed out that Subsection A goes

21  on, in (a)(2), to say, "solely with respect to offenses that

22  require grouping," which this -- which under 2T1.1 does --

23  "that were part of the same course of conduct or common scheme

24  or plan as the offense of conviction."

25       Okay.  Then that concept is transplanted over to Guideline

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

469

379

```
 1   2T1.1, when 2T1.1 talks about should be considered as "part of
 2   the same course of conduct or common scheme or plan unless the
 3   evidence demonstrates that the conduct is clearly unrelated."
 4        So for one thing, I think -- unless I'm missing something,
 5   I think you may actually have a little more wiggle room under
 6   2T1.1, Application Note 2, than under 1B1.1, but --
 7             MR. O'REILLY:  Your Honor, that is correct.  That is
 8   actually what I should have directed the attention of the Court
 9   to.  And it is our position that this was Mr. Stilley's common
10   scheme or plan throughout the 1990s and this century.
11             THE COURT:  There's no question but what he was a
12   non-filer throughout that time; I think the evidence
13   establishes that.
14             MR. O'REILLY:  Yes, Your Honor.  And based upon
15   Dr. Roberts' testimony, it appears that he was also counseling
16   others.  The fact that we only have Dr. Roberts as the one that
17   we have identified does not change the fact that it was part of
18   a common -- Mr. Stilley's common scheme.  The fact that he
19   didn't join forces and conspire with Mr. Springer until 2000
20   does not change that fact.
21             THE COURT:  Has Roberts' testimony been transcribed?
22             MR. O'REILLY:  No, Your Honor.
23             THE COURT:  Okay.  I appreciate your answer to that
24   question.
25        Mr. Stilley, do you have anything to say by way of
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 170 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 471

380

1  response on that?

2         MR. STILLEY:  Yes, sir.

3         THE COURT:  I'm just giving you an opportunity to

4  respond to the government's answer to my question.

5         MR. STILLEY:  Okay.  My position would be that,

6  before you can really address what the common scheme

7  encompasses, you would have to know what the scheme was, and

8  that takes us back to what Mr. Shern said, that the scheme

9  under Count 1, which I have to presume that's where we're at,

10 the scheme under Count 1 was to take money away from people who

11 needed legal services, regardless of whether it was tax or

12 otherwise.

13        THE COURT:  I think what Mr. O'Reilly is relying on

14 is the "same course of conduct" language from the Application

15 Note under 2T1.1, as opposed to a common scheme.  You were not

16 hooked up with Mr. Springer back in the early nineties.  So if

17 he -- if he's got anything to go on, it would be the same

18 "course of conduct" language from that Application Note.

19        MR. STILLEY:  Okay.

20        THE COURT:  You don't need to worry -- in other

21 words, you do not need to worry about -- for this purpose, the

22 application of the common scheme concept.

23        MR. STILLEY:  Okay.  As far as course of conduct, the

24 government concedes that they have no evidence of any

25 requirement to file, so -- and, really, that brings up another

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

471

Case 4:09-cr-00043-SPF  Document 400  Filed 07/12/10  Page 171 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 472

381

1  point:  The fact that Oscar Stilley says -- he tells

2  Dr. Roberts -- if he says he doesn't file, that's irrelevant.

3  If he says that he can't find a basis for being required to

4  file, that is a little bit different situation.

5      But when you look at what was going on at that point in

6  time, the government is simply saying, well, he made a comment,

7  he didn't file returns.

8      They don't know how much money Oscar Stilley made.  I

9  don't see how that they could possibly get where they're going

10  under that different approach.

11          THE COURT:  Do you take issue with Dr. Roberts'

12  testimony in this courtroom that you told him that he had no

13  obligation to pay income taxes or file returns?

14          MR. STILLEY:  Your Honor, honestly, I would really

15  like to hear exactly what he said.  Is that a possibility?

16          THE COURT:  No.  What I just told you is pretty

17  close.

18          MR. STILLEY:  Well, Your Honor, I won't dispute what

19  he testified to from the stand.  I didn't think that it was

20  simply fair, and that's why I was really hoping I could get a

21  copy of the transcript at this point in time, but --

22          THE COURT:  We're past that.  Both sides have had

23  ample opportunity to order a transcript.

24      Do you take issue with Dr. Roberts' testimony in which he

25  characterized you as quite gifted in legal and constitutional

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

472

1  issues?

2         MR. STILLEY:  No, I don't contest that.  I don't

3  recall if he said what his time frame was.  As for today, I

4  would agree with him.

5         THE COURT:  Very well.  Thank you, sir.

6         MR. STILLEY:  Certainly.

7         THE COURT:  Just a couple more things I'd like to

8  cover before we recess.

9      First of all, Mr. Stilley asserted that his conviction on

10  Count 1 is not a felony.  I disagree with that and I have so

11  stated, and I don't really care to hear argument on that point,

12  but let me inquire first with respect to Mr. Springer:

13  Mr. Springer, you objected to a good many factual paragraphs of

14  the presentence report, and I hope you have sensed that I --

15  that even though you objected to most, if not all, of the

16  factual paragraphs, the Court has not in any sense and does not

17  in any sense have or express any sense of irritation at all.

18  This matter is very important to all concerned and I do hope

19  that you have sensed that I have been here and am here to hear

20  everything that either side has to present.

21      But lest there be any ambiguity, it's my understanding

22  from paragraph 43 that those counts would be -- would carry a

23  maximum of five years each and that paragraph -- that Counts 1

24  through 4 would carry a maximum of five years each, and Counts

25  5 and 6 a maximum of one year each.  Is that your

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

473

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 173 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 474

383

 1  understanding?

 2          MR. SPRINGER:  Yes, Your Honor.  The reason I

 3  hesitate is one of my issues on appeal is about the meaning of

 4  "defraud," and that would be the only hesitation I had in

 5  answering that question.

 6      But as it stands now, and as I stand convicted on the

 7  Court's instructions, I believe that it is five years for Count

 8  1 and five years for 2, 3, and 4, and then one year for 5 and

 9  6.

10          THE COURT:  The misdemeanor counts one year?

11          MR. SPRINGER:  Yes.

12          THE COURT:  Okay.  Mr. Stilley, I have the same

13  question only with respect to paragraph 41, which is the

14  corresponding paragraph in your presentence report.  Consistent

15  with what I just said, and for that matter, what Mr. Springer

16  said just a moment ago, it is my understanding that the maximum

17  term as it relates to you on Counts 1, 3, and 4 would be five

18  years per count; is that correct?

19          MR. STILLEY:  Well, Your Honor, I would

20  respectfully -- most respectfully continue to urge that Count 1

21  is a misdemeanor on the grounds that the underlying offense was

22  also a misdemeanor, and I understand the complexities and I

23  respect this Court's decision.  That's why that I said, when I

24  started my argument, that I would not replow ground unless the

25  Court asked.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

474

384

1           THE COURT:  Okay.  Very well.  That's understood.

2    Thank you.

3        I'm going to inquire -- does -- and this is a matter that,

4    again, relates to my desire to see to it that all parties are

5    heard and understand that they have been heard on all matters

6    they wish to assert.  I'll inquire first of the government and

7    then of the defendants.

8        Does the government or the defendants have any procedural

9    objection to the manner in which the sentencing proceeding has

10   been conducted to this point?

11          MR. O'REILLY:  Not from the United States, Your

12   Honor.

13          THE COURT:  Mr. Springer?

14          MR. SPRINGER:  Your Honor, does that question begin

15   yesterday morning through today and nothing before that?

16          THE COURT:  That's true.  And if you would like to

17   consult with your standby counsel, feel free.

18          MR. SPRINGER:  Thank you, Your Honor.

19       (DISCUSSION OFF RECORD)

20          MR. SPRINGER:  I'm still thinking about what they

21   just told me, Your Honor.  Sorry.

22       Without -- just prefacing, Your Honor, all my objections

23   up to the sentencing hearing, I maintain those objections

24   through the sentencing hearing, but as to any particular

25   objections, starting from yesterday, not including my previous

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

475

1  objections, I do not have any new objections.

2          THE COURT:  Thank you.

3      Mr. Stilley.

4          MR. STILLEY:  With respect to the past two days, I

5  don't have objections with the following provisos:  Just as

6  Mr. Springer, I continue to urge all objections during this

7  proceeding and to maintain all arguments made in pleadings

8  prior to this proceeding, and specifically, but without

9  limitation, I continue to urge the lack of adequate notice to

10  prepare for the charges that I would have to meet -- or the

11  issues that I would have to meet today on the basis of what was

12  given to me by the probation department and the government,

13  and, number three, I would continue to urge -- or to argue that

14  my ability to order a complete record in this case for these

15  proceedings is not meaningful because of lack of funds.

16      Other than that, I have no objection to the procedure of

17  these proceedings.

18          THE COURT:  Very well.  On that last point, I urge

19  you to waste no time after we're through tomorrow with getting

20  the -- preparing the necessary paperwork, perhaps with the aid

21  of your standby counsel, to obtain a transcript at public

22  expense.

23          MR. STILLEY:  Thank you, Judge.

24          THE COURT:  Mr. Springer, I have one more question

25  for you, and then I'll be putting the same question to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

476

Case 4:09-cr-00043-SPF  Document 400  Filed 07/12/10  Page 176 of 180
Appellate Case: 22-5113  Document: 010110803141  Date Filed: 01/25/2023  Page: 477

386

1    Mr. Stilley.

2        Bearing in mind it's a quarter till five and this has --

3    we've explored seemingly dozens of issues, but there's one

4    matter that I don't want to determine and address without

5    giving you an opportunity to concisely respond, and that is

6    I'll be happy to hear concisely any comments or objections you

7    may have with respect to the proposed special conditions of

8    supervision set forth beginning in paragraph 49 of your

9    presentence report.

10            MR. SPRINGER:  May I review that again for just a

11   moment?

12            THE COURT:  You surely may.

13            MR. SPRINGER:  No, I do not, Your Honor.  That

14   appears to be the exact same language as the bond conditions

15   that I'm on right now.  I believe that's where they came from.

16            THE COURT:  Mr. Stilley?

17            MR. STILLEY:  Your Honor, most respectfully, I would

18   ask that subparagraph A be removed.  I feel that's

19   unnecessary.  I feel that I have comported myself properly with

20   respect to any work that I might do without something of this

21   nature and it seems to me to be overbroad.

22        Obviously, there are laws against unauthorized practice of

23   law, so -- that I would not want to violate any of the laws,

24   obviously.

25        And as to other things, I just don't see any evidence that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

477

1  any acts that I might perform would be either harmful to the

2  public or otherwise such that I should not be permitted to do

3  that.

4      I don't have any objection to the last two sentences of

5  that paragraph.

6      As to paragraph B, the -- it appears to me that the

7  efforts necessary to prepare a proper appeal would consume most

8  of my time, and I would respectfully request that I be allowed

9  to do simply the work that I'm capable of finding, and that I

10 be allowed to do any lawful work that I can find and not be

11 required to do a specific amount.

12     Really, I don't think that the electronic monitoring or

13 the curfew requirements or the travel restrictions are

14 necessary or that they should be so restrictive.  I would

15 prefer that that be removed.  I would think that it could be

16 without any threat of harm.

17     And based in part on the fact that the PSR has been

18 completed, I would respectfully submit that I think C, D, and E

19 could be removed.

20         THE COURT:  Okay.  Thank you, sir.

21     We have now completed all evidence and all argument, short

22 of the government's final comments and the defendants' final

23 comments by way of allocution, which the Court will hear before

24 it imposes the sentence.

25     At nine in the morning, I will make my Rule 32(i)(3)

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

478

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 178 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 479

388

1  findings as to the disputed portions of the presentence

2  report.  Those will be reduced to writing by way of the

3  transcript of that portion of this hearing in which I do make

4  those findings and that partial transcript will be appended to

5  the non-public statement of reasons portion of the judgment and

6  sentence, which will be distributed to all agencies which will

7  receive copies of the presentence report.

8      So the first order of business tomorrow morning at nine

9  will be my findings pursuant to Rule 32(i)(3) as to the

10  disputed portions of the presentence report.

11     In so doing, obviously, I will rule on all of the

12  objections to the presentence report, and -- which includes the

13  tax loss issue, as well as the various adjustment issues.

14     I will then state my conclusion as to the total offense

15  level and criminal history category under the advisory

16  guidelines.  In each instance, without any contest at all, the

17  criminal history category is 1.

18     And at that point, I will also make appropriate findings

19  with respect to restitution and conditions of supervised

20  release.

21     And I will then hear the final comments of the government

22  and of the defendants by way of allocution and will impose the

23  sentence.

24     So with that, unless either side, government or the

25  defendants, have anything further this afternoon, we will

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

479

389

1   recess, to resume at nine o'clock tomorrow morning, for those

2   purposes and only for those purposes.

3       What says the government?

4           MR. O'REILLY:  Nothing further from the government,

5   Your Honor.

6           THE COURT:  Mr. Springer?

7           MR. SPRINGER:  Yes, I have one request, Your Honor.

8   Is it the Court's intention to allow us to report once we're

9   sentenced?  And if so or if not, would we be able to have an

10  appeal bond hearing tomorrow for the purposes of appeal?

11      I have, like, four cases that I just had to move all those

12  boxes, all the electronic media in all these cases, and I just

13  need to understand how I need to prepare all of that, and I

14  would need a little time to do that if the Court was not going

15  to allow an appeal bond.

16          THE COURT:  I will hear you at the allocution stage

17  or even, if need be, thereafter on that score.

18          MR. SPRINGER:  Thank you.

19          THE COURT:  It is, again, subject to whatever you --

20  what you may have to say and what Mr. Stilley may have to say

21  and, for that matter, what the government may have to say.  It

22  is likely that you will be remanded to custody tomorrow.

23          MR. SPRINGER:  Okay.

24          THE COURT:  Anything further from Mr. Stilley?

25          MR. STILLEY:  No, Your Honor.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

480

Case 4:09-cr-00043-SPF   Document 400   Filed 07/12/10   Page 180 of 180
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 481

390

```
1              THE COURT:  Court will be in recess.

2         (COURT ADJOURNED FOR THE EVENING RECESS.  FOR FURTHER

3    SENTENCING PROCEEDINGS, SEE VOLUME III.)
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

481

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 1 of 79
Appellate Case: 22-5113    Document: 010110803141    Date Filed: 01/25/2023    Page: 482

391

```
 1                  IN THE UNITED STATES DISTRICT COURT

 2               FOR THE NORTHERN DISTRICT OF OKLAHOMA

 3

 4   UNITED STATES OF AMERICA,

 5           Plaintiff,

 6   vs.                            Case No. CR-09-043-SPF

 7   LINDSEY KENT SPRINGER and
     OSCAR AMOS STILLEY,
 8
             Defendants.
 9
     ----------------------------
10

11

12                   SENTENCING PROCEEDINGS

13           BEFORE THE HONORABLE STEPHEN P. FRIOT

14                 UNITED STATES DISTRICT JUDGE

15                      APRIL 23, 2010

16                     VOLUME III OF III

17

18

19

20

21

22

23

24

25
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

482

```
 1   APPEARANCES:
     FOR THE GOVERNMENT:
 2                              Mr. Charles Anthony O'Reilly
                                U.S. Dept. Of Justice (Box 972)
 3                              P.O. Box 972
                                Washington, DC 20044
 4
                                Mr. Kenneth P. Snoke
 5                              U.S. Attorney's Office (Tulsa)
                                110 W. 7th Street, Ste. 300
 6                              Tulsa, OK 74119

 7

 8   FOR DEFENDANT SPRINGER:
                                Mr. Lindsey Kent Springer
 9                              5147 S. Harvard Ave.
                                Ste. 116
10                              Tulsa, OK 74135

11                              Mr. Robert Scott Williams
                                Standby Counsel
12                              Taylor Ryan Schmidt
                                436 S. Boulder Ave., Ste.850
13                              Tulsa, OK 74119

14   FOR DEFENDANT STILLEY:
                                Mr. Oscar Amos Stilley
15                              7103 Race Track Loop
                                fort Smith, AR 73901
16
                                Mr. Robert Burton, IV
17                              Standby Counsel
                                Burton Law Firm, PC
18                              320 S. Boston, Ste. 2400
                                Tulsa, OK 74103
19

20

21

22

23

24

25
```

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

483

1          THE COURT:  I note the presence of all parties and

2    counsel as before.  I will now make my Rule 32(i)(3) findings

3    as to the disputed portions of the presentence report.  These

4    findings will be reduced to writing by way of the transcript of

5    this portion of the sentencing proceedings in which I make

6    findings pursuant to Rule 32(i)(3).  As I mentioned yesterday,

7    this partial transcript will be appended to the non-public

8    statement of reasons portion of the judgment and sentence which

9    will be distributed to all agencies which will receive copies

10   of the presentence report.

11          The first issue that I'll address is the issue of tax

12   loss.  In many ways, this is the most complex of the

13   guidelines-related issues as a review of the proceedings the

14   last two days will indicate.

15          In addressing tax loss, I refer first to Guideline 2T1.1,

16   in particular Application Note 2.  And, by the way, Lori,

17   there's one other set of materials that I need you to bring in.

18          Application Note 2 provides valuable guidance, as one

19   might expect, with the application of Guideline 2T1.1.

20   Application Note 2 states, and I quote, "In determining the

21   total tax loss attributable to the offense," and then it refers

22   to Guideline 1B1.3(a)(2), continuing the quote, "All conduct

23   violating the tax laws should be considered as part of the same

24   course of conduct or common scheme or plan unless the evidence

25   demonstrates that the conduct is clearly unrelated.  The

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

484

1  following examples are illustrative of conduct that is part of

2  the same course of conduct or common scheme or plan:  (a),

3  there is a continuing pattern of violations of the tax laws by

4  the defendant; (b,) the defendant uses a consistent method to

5  evade or camouflage income, e.g., backdating documents or using

6  offshore accounts; (c), the violations involve the same or a

7  related series of transactions; (d), the violation in each

8  instance involves a false or inflated claim of a similar

9  deduction or credit; and, (e), the violation in each instance

10  involves a failure to report or an understatement of a specific

11  source of income, e.g., interest from savings accounts or

12  income from a particular business activity.  These examples are

13  not intended to be exhaustive."

14       On this point, I do derive, also, substantial guidance

15  from the decision of the Court of Appeals in United States v.

16  Meek, 998 F.2d 776.  In that case, beginning on page 781, Judge

17  Ebel, writing for the court, said, and I quote, "In determining

18  the tax loss, a court is required to engage in a two-step

19  analysis.  First, the court must decide which tax deficiencies

20  to aggregate together.  Second, it must determine how to

21  calculate the amount of aggravated deficiencies."

22       Then on page -- continuing on page 781, a little farther

23  down the page, the court stated, and I quote, "For offenses

24  like tax evasion for which Section 3D1.2(d) would require

25  grouping of multiple convictions, Section 1B1.3(a)(2) defines

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

485

1   relevant conduct to include 'all acts or omissions that were

2   part of the same course of conduct or common scheme or plan as

3   the offense of conviction.'"  Citing Section 1B1.3(a)(2).  Now,

4   continuing in the quote, "The commentary makes clear that the

5   defendant need not have been charged or convicted of these

6   related acts or omissions in order for them to qualify as

7   relevant conduct."

8        And, obviously, that concept is central to

9   the guidelines and central to sentencing in this case because

10  the defendants' activities, in violation of the tax law, have

11  been shown to far exceed the matters -- both temporally and

12  otherwise to far exceed the matters alleged in the indictment.

13       Finally, in the Meek case, over on page 782, the court

14  reached its conclusions in that case.  And I quote, "In light

15  of Section 1B1.3(a)(2), it is clear that the district court had

16  authority to consider the defendant's failure to file tax

17  returns for the years 1984 through 1986 and 1989 through 1991,

18  even though not charged in the indictment as long as the

19  failure to file was part of the same course of conduct for

20  which the defendant was convicted.  We have no trouble

21  concluding that it was.  The commentary to Section 2T1.1 states

22  that, quote, and this is an internal quote, 'all conduct

23  violating the tax laws should be considered as part of the same

24  course of conduct or common scheme or plan unless the evidence

25  demonstrates that the conduct is clearly unrelated.'  The

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

486

1   commentary goes on to say that, 'a continuing pattern of

2   violations of the tax laws by the defendant is an example of

3   conduct that is to be considered related conduct.'

4        After citing Section 1B1.3, as I have indicated in

5   Guideline 2T1.1, the court in the Meek case then went on to

6   give its commentary as to how those ought to be applied in the

7   case then before it.  The court stated, and I quote, "This

8   commentary indicates that the government may prove that the

9   defendant's non-charged conduct was part of the same course of

10  conduct as the offense of conviction either directly by

11  establishing that this conduct was part of a continuing pattern

12  of tax violations or indirectly by establishing simply that all

13  the conduct to be aggregated constituted violations of the tax

14  code.  In the latter situation, the government is entitled only

15  to a rebuttable presumption that the defendant's non-charged

16  conduct was part of the same course of conduct as the offense

17  of conviction and the defendant may defeat this presumption by

18  coming forward with evidence that his non-charged conduct was

19  clearly unrelated to his conviction."

20       Obviously, as one might conclude from those passages from

21  the Meek case, the Court of Appeals certainly has provided

22  valuable guidance with respect to the application for Guideline

23  2T1.1.

24       The course of conduct for both of these defendants, as

25  relevant for purposes of Guideline 2T1.1, is, under the Meek

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

487

1   case and under the terms of the guideline itself, not

2   necessarily co-extensive with the conspiracy period alleged in

3   the indictment or, for that matter, with the period of

4   individual or joint tax evasion activity actually shown by the

5   evidence at trial.  Under Guideline 2T1.1, I look to all

6   conduct violating the tax laws unless the evidence demonstrates

7   that the conduct is clearly unrelated.  The consistent pattern

8   of non-compliance with the tax laws goes back before 1990 for

9   each of these two defendants.  By their own admission, they met

10  and made common cause when they met at the Pizza Hut with

11  Phillip Roberts in 1999.

12       For the years before that, each defendant is accountable,

13  under the guidelines, for tax losses attributable to his own

14  acts and omissions if there was a continuing course of criminal

15  conduct to the period of time encompassed by the indictment.

16  After that, each defendant is at least potentially accountable

17  under the guidelines for tax losses attributable to the acts of

18  the other defendant to the extent that those losses are rooted

19  in their jointly-undertaken criminal activity.

20       I will now make my findings as to tax losses with respect

21  to both defendants as to all matters other than Mr. Turner and

22  then I will make my findings with respect to Mr. Turner.

23       As to Mr. Springer, for 1990 through 1995, I find his tax

24  losses to have been established by credible evidence with

25  respect to the assessments against him and those assessment

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

488

Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 489

1    amounts will be adopted for sentencing purposes.  For 1999

2    through 2007, the matter is a bit more complicated.  I have

3    eliminated the $12,000 per year in miscellaneous small

4    payments.  Now, I have no doubt that some of those payments

5    were income to Mr. Springer and under the law as articulated in

6    the jury instruction with the heading "gift minister" an

7    instruction, which I am persuaded does accurately state the

8    law, perhaps all or virtually all of those receipts did, in

9    fact, constitute income to Mr. Springer.

10       However, for the purpose of specific tax loss findings,

11   which the jury was not required to make, I do not have evidence

12   of a quality which would enable me to evaluate those relatively

13   small payments that probably amounted to thousands of

14   individual remittances.

15       As to the other receipts for the years 1999 through 2007,

16   I have relied on the evidence admitted at trial and in this

17   sentencing proceeding and have eliminated those payments as to

18   which I am not persuaded that the requisite showing has been

19   made.  Both defendants received numerous checks that in

20   Mr. O'Reilly's words had the inherent appearance of income.

21       When I make my specific year-by-year findings, which I

22   will do shortly, the amounts that I will state for each year

23   will reflect the payments which I am persuaded amounted to

24   gross income to Mr. Springer and the same will certainly apply

25   to Mr. Stilley, although the factual situation as to the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

489

 1   payments received by Mr. Stilley is somewhat less complicated

 2   than it is with respect to Mr. Springer.

 3        This brings me to Dr. Roberts and Messrs Lake, Turner, and

 4   Patterson.  I find that Mr. Springer is accountable for the

 5   loss attributable to Mr. Turner but not for the loss

 6   attributable to Mr. Patterson or Mr. Lake.  As I have said, I

 7   will address Mr. Turner momentarily.

 8        With respect to Mr. Lake, I have reviewed the trial

 9   testimony as taken by the reporter.  The testimony of Mr. Lake

10   as it relates to Mr. Stilley is strong and convincing.  The

11   testimony of Mr. Lake vis-a-vis Mr. Springer is noticeably

12   weaker.  At trial, Mr. Lake quoted Mr. Stilley as telling him,

13   in substance, I'm an attorney, I haven't paid taxes in ten

14   years, you don't understand, you don't have to file taxes.  And

15   Mr. Stilley used those assurances in order to convince Mr. Lake

16   that Mr. Stilley could handle his problem and that he was in

17   good hands.

18        After Mr. Lake gave that testimony, he was asked

19   approximately when did that conversation happen, and Mr. Lake

20   said, it was numerous times, it was reinforced numerous times.

21   But the testimony of Mr. Lake with respect to Mr. Springer, as

22   I have said, is noticeably weaker.  Mr. Lake would only go so

23   far as to say, in substance, that Mr. Springer had referred to

24   a case that they were handling for a dentist and that

25   Mr. Springer told Mr. Lake that we have won cases in Illinois.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

490

400

 1        Now, Mr. Lake did quote Mr. Springer as saying, in

 2   substance, you don't have to pay taxes and that's the law.  But

 3   in the overall context of Mr. Lake's testimony, and bearing in

 4   mind that causation must be found for a tax loss conclusion as

 5   distinguished from the issue as to whether the defendants

 6   encouraged others to violate the tax law, I am unable to find

 7   that the testimony with respect to Mr. Springer's comments to

 8   Mr. Lake is sufficiently specific, especially as compared to

 9   the testimony about what Mr. Stilley said to Mr. Lake to enable

10   me to find that the tax loss attributable to Mr. Lake should be

11   likewise attributed to Mr. Springer.

12        As I have said, bearing in mind that for tax loss

13   purposes, causation is required, even though causation is not

14   required with respect to the adjustment for encouragement to

15   violate the law, I simply do not find a casual connection

16   between Mr. Springer's statements to Mr. Lake and his failure

17   to comply with the tax law.

18        With respect to Mr. Stilley, it is much easier.  He was

19   quoted, and I believe this was essentially unrebutted and if it

20   was attempted to be rebutted, it would not have been credible,

21   from Mr. Stilley, that Mr. Stilley repeatedly assured Mr. Lake

22   not only that he had not paid taxes in ten years, but you

23   simply do not have to file taxes.  And, as Mr. Lake said, this

24   was reinforced numerous times.

25        Now, as to Dr. Roberts, there is quite properly no

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

491

401

1   contention that Mr. Springer should be held accountable for the

2   tax loss attributed to Dr. Roberts.  I conclude that

3   Mr. Stilley is accountable for the tax loss attributable to

4   Dr. Roberts, even though those losses occurred in the early and

5   mid-1990s.  Under Guideline 2T1.1, Mr. Stilley is accountable

6   for all conduct violating the tax laws as part of the same

7   course of criminal conduct regardless of whether it took place

8   in the context of jointly-conducted criminal activity unless

9   the evidence demonstrates that the conduct is clearly

10  unrelated.

11      Criminal tax violations were Mr. Stilley's way of life,

12  starting before the earliest year of the tax losses relating to

13  Dr. Roberts.  Criminal tax violations are Mr. Stilley's way of

14  life to this day.  Early in his career as an unrepentant tax

15  cheat, Mr. Stilley began espousing the view, which he espoused

16  to Dr. Roberts, that Dr. Roberts had no obligation to pay

17  incomes taxes or to file a tax return.

18      Dr. Roberts' testimony at trial persuades me that he found

19  Mr. Stilley to be a convincing source of tax counsel.  Advice

20  to an individual earning significant income that he is not

21  obligated to comply with the tax laws is certainly

22  counterintuitive to any reasonably intelligent person, but that

23  sort of advice can nevertheless be attractive to a person who,

24  although intelligent, is at the same time fool enough to let

25  his beliefs be dictated by financial convenience rather than

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

492

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 12 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 493

402

1    logic.  This is especially so when the advice is coming from an

2    individual who expresses himself with the vehemence that

3    characterizes Mr. Stilley's expression of his professed beliefs

4    about the law.

5         I am convinced that Mr. Stilley was persuasive enough and

6    Dr. Roberts was gullible enough that Mr. Stilley's professed

7    views carried the day with Dr. Roberts leading directly to a

8    substantial loss of revenue to the taxing authorities.  The

9    profession of these views, together with the persistent willful

10   failure to file returns, amounts to an unbroken course of

11   conduct for Mr. Stilley from those days in the early 1990s to

12   and through the periods directly involved in the counts of

13   conviction in this case.  Mr. Stilley is accountable for the

14   tax loss, penalties, and interest attributed to Dr. Roberts.

15        In contrast, Mr. Eddy Patterson's testimony is weak as to

16   both defendants.  He ventured only that both defendants told

17   him that they did not file returns.  He said that he hoped that

18   this demonstrated that they were sincere in their

19   representation of him, which is about as logical as a crack

20   dealer wanting to make sure that his lawyer is also a crack

21   dealer.

22        In any event, I do not find the persuasive evidence of

23   inducement or causation as between the defendants and

24   Mr. Patterson that I would need to have in order to hold either

25   of the defendants accountable for the tax loss relating to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

493

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 13 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 494

403

1   Mr. Patterson that I am urged to attribute to the defendants.

2       This brings me to Patrick Turner.  The transaction between

3   the defendants and Mr. Patrick Turner is, as we all know,

4   relevant both on the issue of tax loss and on the question of

5   whether there should be an enhancement under Guideline

6   2T1.1(b)(1) for failure to report income exceeding $10,000

7   derived from criminal activity.

8       Mr. Springer teamed up with Mr. Turner and Mr. Stilley to

9   defraud the United States, or at least to impede and impair the

10  collection of taxes, by parking Mr. Turner's money in

11  Mr. Stilley's IOLTA account.  And then Mr. Springer and

12  Mr. Stilley wasted no time teaming up to defraud Mr. Turner.

13  Because I am convinced that from the minute that Mr. Turner was

14  induced to mortgage his two houses, I say mortgage his two

15  houses, and to wire that money to Mr. Stilley's IOLTA account,

16  it was fully the intent of Mr. Springer that Mr. Turner would

17  never again see a penny of that money.  And it was fully the

18  intent of Mr. Stilley to cooperate in every way with

19  Mr. Springer to bring about that result if that was

20  Mr. Springer's desire.

21      At the time Messrs Springer and Stilley took Mr. Turner's

22  $250,000, their recollection of their merciless fleecing of

23  Mr. Art Hawkins of $256,000 was still relatively fresh in their

24  minds, and they knew a vulnerable target when they saw one.  So

25  Mr. Springer's $250,000 transaction with Mr. Turner was

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

494

1  fraudulent in its inception.

2      From Mr. Springer's perspective, it was fraudulent in two

3  ways.  It was fraudulent in that by parking this money in

4  Mr. Stilley's IOLTA account, Mr. Springer's and Mr. Stilley's

5  intent was to obstruct the enforcement of the tax laws of the

6  United States as to Mr. Turner.  This transaction was also

7  fraudulent in that the evidence convincingly demonstrated that

8  one way or the other, and contrary to Mr. Turner's intent,

9  Mr. Springer's intent was that Mr. Turner would never see that

10 $250,000 ever again.

11     Mr. Springer wasted no time turning that money into a

12 motor home and a Lexus.  Mr. Turner thought he was parking his

13 money, but, as I have said, as far as Mr. Springer is

14 concerned, it was gone forever the day that it hit

15 Mr. Stilley's IOLTA account.

16     The evidence as to the Uniform Commercial Code security

17 interest and the recent and very convenient repossession of the

18 motor home is entirely unpersuasive.  The motor home was

19 repossessed virtually on the eve of this sentencing and very

20 shortly after Mr. Springer saw the government's sentencing

21 memorandum.  After Mr. Springer read page 14 of the

22 government's sentencing memorandum and considered those

23 contentions in combination with the fact that the government

24 was in the process of seizing all of his property that it could

25 find, it made perfect sense for Mr. Springer to seek to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

495

405

1   legitimize an intrinsically fraudulent transaction by getting

2   the motor home repossessed.

3       I should add that I am certainly mindful that it is not

4   enough for the government to show that Messrs Springer and

5   Stilley defrauded or impeded the IRS by taking Mr. Turner's

6   money and putting it in the IOLTA account and it is not enough

7   to show that this had the effect, which it certainly did have,

8   of impairing the ability of the IRS to collect what Mr. Turner

9   owed for 1999 through 2003 by helping him to evade payment and

10  collection.

11      The tax loss with respect to Mr. Turner's taxes cannot be

12  aggregated with the other tax losses for guidelines purposes if

13  the conduct leading to the tax loss on Mr. Turner was, in the

14  words of the Application Note to Guideline 2T1.1, "clearly

15  unrelated" to the defendants' common scheme or plan for

16  impeding and obstructing the IRS in the ascertainment,

17  assessment, and collection of revenue.

18      The episodes in these defendants' common scheme do not

19  have to be directly related to each other as long as they are

20  related to these defendants' common scheme or plan for impeding

21  and obstructing the IRS in the ascertainment, assessment, and

22  collection of revenue.  The transaction with Mr. Turner does

23  not have to be interrelated with the other episodes by which

24  this scheme played out, but it has to be related in some way to

25  the overall scheme.  I find that it was.

1       By August of 2005, Mr. Stilley's IOLTA account was well-

2   established as an invaluable tax evasion tool available for use

3   by Messrs Stilley and Springer in any way that it might be

4   needed for that purpose.  In the words of Application Note 9 to

5   Guideline 1B1.3, the use of the IOLTA account establishes a,

6   "similarity of modus operandi" between the Turner transaction

7   and the other instances in which defendants used the IOLTA

8   account to facilitate their common scheme.

9       It is not necessary to take an expansive view of the scope

10  of the common scheme of these defendants to conclude, as I

11  quite easily do, that the transaction with Mr. Turner by which

12  Mr. Turner's money was parked in the IOLTA account for what

13  Mr. Turner thought was safekeeping for the purpose of

14  frustrating the IRS in the performance of its legitimate

15  statutory functions was simply another episode in what

16  Application Note 2 to Guideline 2T1.1 refers to as "a

17  continuing pattern of violations of the tax laws" by these

18  defendants.

19      My findings, per year, as to the tax losses are derived

20  both from the evidence received at trial and from the evidence

21  received in this sentencing proceeding.  As I have said, the

22  situation with respect to Mr. Springer is somewhat more

23  complicated than it is with respect to Mr. Stilley.

24  Mr. Stilley's situation is just about the purest and most

25  consistent example of non-reporting of substantial income that

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

497

1   could be imagined.  And by saying that about Mr. Stilley, I

2   don't mean to put Mr. Springer in a favorable light, but,

3   nevertheless, the situation with respect to Mr. Springer is a

4   bit more complicated.

5       I will first cover the tax loss which I conclude for

6   guidelines purposes is attributable Mr. Springer.  For 1990

7   through 1995, the assessed amount of tax was $91,196.

8       Now, I'm going to read the gross income from my notes with

9   respect to '99 through 2007, it's a simple mathematical

10  proposition to take 20 percent of this, but I won't read the 20

11  percent calculation into the record other than when I get to

12  the total.

13      The gross income that I attribute to Mr. Springer for 1999

14  is $111,702; for 2000, it is $160,000; for 2001, it is $63,000;

15  for 2002, it is $48,986; for 2003, it is $391,171; for 2004, it

16  is $117,550; for 2005, it is $278,500; for 2006, it is

17  $185,650; for 2007, it is $141,400; for a total gross income of

18  $1,497,959.  At 20 percent, the tax loss attributable to that

19  is $390,787.  I also attribute to Mr. Springer the state tax

20  loss --

21          MR. O'REILLY:  Your Honor, I apologize for

22  interjecting, but you say the tax loss was 390,000?

23          THE COURT:  That's --

24          MR. O'REILLY:  That's 20 percent?  Because I believe

25  that would be an overstatement of the tax loss for --

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

498

Case 4:09-cr-00043-SPF  Document 401  Filed 07/12/10  Page 18 of 79
Appellate Case: 22-5113  Document: 010110803141  Date Filed: 01/25/2023  Page: 499

408

1              THE COURT:  Well, that adds the 91,000 --

2              MR. O'REILLY:  I apologize, Your Honor.

3              THE COURT:  That adds the 91,196 from 1990 through

4     1995.

5              MR. O'REILLY:  I apologize.

6              THE COURT:  I have proportionately reduced

7     Mr. Springer's state tax loss based on the proportion by which

8     I have reduced the federal tax loss.  The state tax loss

9     accordingly is $80,186, to which I add the federal tax loss

10    attributable to Mr. Stilley, which I will cover in a minute,

11    but which amounts to $377,161, and Mr. Stilley's state tax

12    loss, which is $91,627.  So the total for Mr. Springer,

13    including his state tax loss and Mr. Stilley's state and

14    federal tax loss is $548,974.  Adding Mr. Springer's federal

15    tax loss, but ignoring for the moment the tax loss attributable

16    to Mr. Turner, Mr. Springer's state and federal tax loss,

17    including his own and Mr. Stilley's, is $939,761.80, to which I

18    add $145,713 attributable to Mr. Turner for a total tax loss

19    under Guideline 2T1.1 attributable to Mr. Springer in the

20    amount of $1,085,474.80.  The penalties and interest

21    attributable to that amount to $431,801.

22         With respect to Mr. Stilley, his gross income for 2000 was

23    $131,533; for 2001, it was $73,598; for 2002, it was $117,653;

24    for 2003, it was $466,774; for 2004, it was $96,600; for 2005,

25    it was $106,984; for 2006, it was $433,368; for 2007, it was

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

499

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 19 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 500

409

1  $354,093; for 2008, it was $105,202; for a total of $1,885,805,

2  for which the tax loss at 20 percent is $377,161.

3       His state tax loss -- when I say "his," I'm referring now

4  to Mr. Stilley -- is $91,627.  I also include the federal tax

5  loss attributable to Mr. Springer but only for returns due in

6  or after 2000 in the amount of $299,591 and Mr. Springer's

7  state tax loss in the amount of $80,186, for a total for

8  Mr. Stilley in terms of his state tax loss and Mr. Springer's

9  state and federal tax loss in the amount of $471,404.  That's

10  $471,404.  Adding in Mr. Stilley's federal tax loss, the total,

11  not including the third-party tax loss attribution with respect

12  to Mr. Stilley is $848,565.  Adding in the tax loss with

13  respect to Mr. Lake, that is an additional $145,713 -- I'm

14  sorry, with respect to Mr. Turner, I should say, that is an

15  additional $145,713.  With respect to James Lake, we have an

16  additional tax loss of $176,000.  And with respect to

17  Dr. Phillip Roberts, we have an additional tax loss in the

18  amount of $129,818, for a total tax loss under Guideline 2T1.1

19  with respect to Mr. Stilley in the amount of $1,303,096.

20       Now, as we have discussed more than once over the last two

21  days and as is discussed time and again in the briefs, we have

22  numerous issues that hinge, one way or the other, on this

23  concept of jointly-conducted criminal activity.  That's

24  relevant both for tax loss purposes and for purposes of

25  application of several other guidelines.  And there has been a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

500

410

1    good deal of controversy in the case, especially for sentencing

2    purposes, as to just what should be included in the Court's

3    approach to determining the scope of the defendants' jointly-

4    conducted criminal activity.

5         Under the guidelines, of course, the government is not

6    confined for sentencing purposes to the criminal activity

7    charged in the indictment, either in terms of specific acts or

8    in a temporal sense, but, obviously, the matters charged in the

9    indictment are relevant.  And, in that regard, the indictment

10   clearly does not confine its allegations as to the objectives

11   of the conspiracy to simply a purpose of avoiding these

12   defendants' personal tax liabilities.

13        The indictment charged the defendants with a conspiracy

14   that began in 2000 and ended in January 2009 to defraud the

15   United States with respect to income taxes.  That obviously

16   includes the statutory language "collection, ascertainment,

17   assessment," and so forth, but the point is that the indictment

18   charged these defendants with a conspiracy, and that conspiracy

19   was proven by overwhelming evidence, to defraud the United

20   States with respect to income taxes.  And that statement of the

21   object of the conspiracy in paragraph 9 of the indictment was

22   most assuredly not confined to these defendants' own individual

23   income taxes.

24        With respect to the defendants' personal criminal

25   liability, the evidence understandably did focus on their

411

 1   personal income and their resulting personal tax obligations,

 2   but in a truly exceptional way, the jointly-conducted criminal

 3   activity that is relevant in this case includes the defendants'

 4   criminally fraudulent course of dealings with their clients.

 5        The defendants' conducts with their clients was fraudulent

 6   both vis-a-vis the clients and with respect to the United

 7   States.  At the same time, it should be noted that some of the

 8   conduct shown by the evidence is not relevant conduct for

 9   guidelines purposes but is clearly relevant for other reasons

10   under Section 3553.

11        And the parties may wonder why I singled out Government

12   Exhibit 204 for some questions from the Court yesterday.  The

13   reason very simply is that although the Hawkins' case was not a

14   tax case and so far as I recall, the defendants did not give

15   Mr. Hawkins or Mrs. Hawkins tax advice, and for that reason

16   they're certainly not chargeable with encouraging Art Hawkins

17   or Mrs. Hawkins to violate the tax law, I am also required

18   under Section 3553 to consider the history and characteristics

19   of the defendants.  I hesitate to make harsh findings without

20   very satisfactory evidence.  And Government Exhibit Number 204

21   is very satisfactory evidence of the fraudulent and predatory

22   ways of the Defendant Lindsey Springer.  And I don't -- I'm

23   tempted to read it into the record, but it is a document that

24   is just devastating and it speaks for itself.

25        It should be noted that the Hawkins' case did generate

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

502

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 22 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 503

412

1   substantial unreported income and, for that reason, the

2   Hawkins' case, for tax purposes, is certainly relevant because

3   the $256,000 that these defendants obtained from Mr. and

4   Mrs. Hawkins was unreported and is part of the tax loss.  But I

5   do not consider the Hawkins' case for other guidelines purposes

6   because there is no evidence in this case, at least that I

7   recall, that these defendants offered any tax advice or

8   encouragement to violate the tax laws to Mr. and Mrs. Hawkins.

9       The letter that I have referred to, Government Exhibit

10  Number 204, shows beyond any imaginable doubt, however, the

11  audacity of Mr. Springer's fraudulent conduct.

12      This brings me to the issue of the application of the

13  guideline for criminal source income, Guideline 2T1.1(b)(1).

14  Guideline 2T1.1(b)(1) states that there is a two-level

15  enhancement, "if the defendant failed to report or correctly

16  identify the source of income exceeding $10,000 in any year

17  from criminal activity."

18      Now, as to Turner, I won't repeat my previous findings.

19  The activities of these defendants with respect to Mr. Turner

20  certainly was wire fraud under 18 United States Code, Section

21  1343.  The wiring of those funds was an integral piece of the

22  fraudulent course of conduct by which Mr. Turner was defrauded

23  of his quarter of a million dollars.

24      The findings with Mr. Turner did generate criminal source

25  -- I'm sorry, the transactions with Mr. Turner did generate

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

503

1  criminal source income.  The transactions and dealings with Art

2  Hawkins and Mrs. Hawkins also generated criminal source

3  income.  The defendants' joint representation of Arthur Hawkins

4  was, from its inception, an exercise in fraud and obtaining

5  money under false pretenses.  The defendants enriched

6  themselves at the expense of Mr. and Mrs. Hawkins in the amount

7  of approximately $250,000, and, as I recall, it was $256,000,

8  with false promises that they knew how to and would quickly

9  gain the release of Mr. Hawkins.

10      They went so far as to say, for purposes of getting money

11  from Mr. and Mrs. Hawkins, that they would get the charges

12  dismissed.  This was after he was convicted.  At each stage

13  when the court ruled against Mr. Hawkins, the defendants would

14  come up with another fraudulent but convincing assurance that

15  he would soon be a free man.  They made those assurances and

16  they got more money.

17      When Mr. Hawkins was in jail as an important family event

18  approached and for the purpose of getting still more money from

19  Mr. and Mrs. Hawkins, Messrs Springer and Stilley told

20  Mrs. Hawkins to make sure that Mr. Hawkins' tuxedo was ready to

21  go because he would soon need it.

22      Although the Hawkins' case was, as I have said and as we

23  all know, not a tax case and therefore is not an instance of

24  tax fraud or evasion, other than with respect to the

25  defendants' failure to report a quarter of a million dollars of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

504

414

 1   income from that case, the Hawkins' case is perhaps the most

 2   poignant instance of the defendants' predation and their

 3   willingness to perpetrate a peculiarly cruel variety of

 4   financial fraud.  The income that the defendants derived from

 5   their representation of Mr. Hawkins was criminally-derived

 6   income.  This adjustment will be applied to both defendants.

 7        This brings me to Guideline 2T1.1(b)(2), relating to the

 8   use of sophisticated means.  In relevant part, Guideline

 9   2T1.1(b)(2) states, "If the offense involved sophisticated

10   means, increase by two levels."

11        Application Note 4 under that guideline states, and I

12   quote, "Sophisticated means enhancement.  For purposes of

13   Section (b)(2), "sophisticated means" means especially complex

14   or especially intricate offense conduct pertaining to the

15   execution or concealment of an offense.  Conduct such as hiding

16   assets or transactions or both through the use of fictitious

17   entities, corporate shells or offshore financial accounts

18   ordinarily indicates sophisticated means."

19        The sophisticated means adjustment fits the facts of this

20   case as to both defendants quite well.  The most obvious

21   example of that, but certainly not the only example of that, is

22   the using of Mr. Stilley's IOLTA account.  Lawyers use their

23   trust accounts for the purpose of serving their clients.  Those

24   trust accounts are treated as custodial accounts and in, I

25   venture to say, in every state, there are very detailed rules

415

 1  that apply to the maintenance of lawyers' trust accounts, such

 2  as Mr. Stilley's IOLTA account.

 3       In this case, though, Mr. Stilley's IOLTA account was an

 4  instrument of fraud pure and simple, and it was an instrument

 5  of fraud pure and simple for the use and benefit both of

 6  Mr. Stilley and of Mr. Springer.  It was very effectively used

 7  and it was used in a way that makes a mockery of the purposes

 8  for which lawyers are authorized to maintain trust accounts.

 9       We also have Mr. Springer's use of this non-existent

10  ministry called Bondage Breakers Ministry.  It existed in name

11  only.  It was not a corporate entity or any other sort of a

12  legal entity.  It was not a 501(c)(3) organization; although, I

13  would think probably a good many people thought that it was.

14  Bondage Breakers Ministry was just a convenient name for

15  Mr. Springer to use in order to solicit money under the guise

16  that he might present to the taxing authorities that these

17  remittances were donations.

18       Hand in hand with that, of course, was Mr. Springer's use

19  of the check cashing service.  That was integral to his, not

20  only to his financial way of life, but apparently to his entire

21  way of life.  He dealt only in cash.  He wanted to avoid any

22  reachable assets being held in his name.  And he made extensive

23  use of that check cashing service which went, of course, hand

24  in hand with his fraudulent use of both the IOLTA account

25  remittances and Bondage Breakers Ministry.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

506

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 26 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 507

416

 1       Hand in hand with all of that, of course, was these

 2   defendants' consistent course of dispensing fraudulent advice

 3   to vulnerable individuals, as I have already described.  Taking

 4   all of these features of these defendants' joint criminal

 5   activities together, it is quite clear that they did use

 6   sophisticated means within the meaning of Guideline

 7   2T1.1(b)(2).  The source of the funds that these defendants had

 8   the benefit of was effectively concealed, especially as to

 9   Mr. Springer.  The intent with which those funds were received

10   by Mr. Springer was effectively obfuscated by Mr. Springer

11   through the use of Bondage Breakers Ministry.  The ability to

12   trace any of those funds for any lawful purpose, including

13   administration of the tax laws was frustrated by the use of a

14   check cashing service, and all of this resulted, in substantial

15   part, from the defendants' receipt of very substantial proceeds

16   over a goodly number of years as a result of dispensing

17   fraudulent advice, mostly tax-related fraudulent advice to very

18   vulnerable individuals.  This adjustment clearly applies,

19   2T1.1(b)(2), to both defendants.

20       This brings me to Guideline 2T1.9, the proposed adjustment

21   for encouraging others to violate the tax law.  Under Guideline

22   2T1.9(b)(2), "If the conduct was intended to encourage persons

23   other than or in addition to co-conspirators to violate the

24   Internal Revenue laws or impede, impair, obstruct, or defeat

25   the ascertainment, computation, assessment, or collection of

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

507

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 27 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 508

417

1  revenue," there is a two-level increase.

2      It's important to note with respect to Guideline 2T1.9

3  with respect to encouraging others to violate the tax law that

4  an actual tax loss resulting from the encouragement need not be

5  shown.  Now, this is a specific offense characteristic under

6  the guidelines, so the conduct involved must be relevant

7  conduct within the meaning of Guideline 1B1.3.  But any

8  particular instance of encouragement to violate the tax law

9  does not have to be shown to have been an activity that was

10  jointly conducted by the defendants, their individual acts are

11  sufficient.

12      I also hasten to add that evidence that a defendant

13  encouraged some individuals to violate the law is not vitiated

14  by evidence that the defendant advised others to comply with

15  the law any more than a drug dealer would get credit for

16  telling his sister to stay away from drugs.

17      I credit the trial testimony of Brenda Frederiksen, who

18  testified that at a meeting in Tulsa in 2001 in the context of

19  Dr. Roberts' trial, Mr. Springer stated that the tax system is

20  basically voluntary.  As to Dr. Roberts, we also have grand

21  jury testimony.  Agent Shern testified on direct that according

22  to the grand jury testimony, Mr. Stilley told Dr. Roberts that

23  he was not required to file a return.  On cross-examination by

24  Mr. Springer, Mr. Springer elicited that this advice was given

25  by Mr. Springer as well as by Mr. Stilley.  And on cross-

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

508

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 28 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 509

418

1   examination by Mr. Stilley, it was brought out that these

2   statements also included the statement that there is no

3   liability to pay taxes, which is a slightly different assertion

4   than the assertion that the law does not require the filing of

5   returns.

6       I also credit the testimony of Martin Dingman, who

7   testified that he met Mr. Springer in mid to late 1996.  His

8   contact with Mr. Springer at that point was at one or more

9   seminars relating to the tax laws.  He quoted Mr. Springer as

10  saying according to the Constitution, we are not required to

11  file personal tax returns.

12      As for Mr. Dingman and Mr. Grady, I also find that

13  Mr. Springer assisted both of these defendants in the

14  preparation of abusive trust documents and encouraged them to

15  unvolunteer from the system.

16      In 2000, both Mr. Springer and Mr. Stilley told James Lake

17  that he had no legal obligation to file tax returns.  The

18  evidence on that point is strong enough to persuade me that the

19  defendants' -- and I refer to both of them now -- the

20  defendants' conduct amounted to encouragement, even though I

21  have found that Mr. Springer's comments, at least insofar as

22  they are substantiated by the evidence, were not sufficient to

23  have caused Mr. Lake's tax violations.

24      As to Mr. and Mrs. Patterson, the testimony is that

25  Mr. Springer and Mr. Stilley told them that they, Messrs

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

509

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 29 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 510

419

1  Springer and Stilley, do not file tax returns.  That is

2  certainly of interest.  But in my view, at least without a more

3  compelling showing of the context for that statement, that

4  falls short of encouragement to violate the tax law.  I am

5  also, at least on this issue, unimpressed with the testimony

6  about the penaltyprotestor.com Web site and the Innovative

7  Financial Services conference calls.  The testimony falls short

8  of supporting a finding that these two modes of communication

9  were, in fact, used to encourage the violation of the tax

10  laws.  And at least as to the penaltyprotestor Web site, the

11  main thrust of the evidence is that this was more of a forum

12  for advocacy of change in the law and the system, which would

13  be constitutionally protected speech, than it was a forum for

14  advocacy of violation of the tax laws.

15      Also, at least arguably protected, and in any event not

16  persuasive under Guideline 2T1.9(b)(2), is Mr. Stilley's trial

17  testimony that after he read Mr. Schiff's book he formed and

18  expressed the belief that the claims of the IRS that the law

19  required the filing of tax return was not good enough for him.

20      Now, the fact that some of the evidence offered to support

21  an adjustment under Guideline 2T1.9(b)(2) falls short does not

22  detract one whit from the fact that some of the evidence is

23  quite persuasive.  In the context of this case, at least, it is

24  sufficient to say, and I quite easily find, that both

25  defendants have engaged in conduct during the course of their

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

510

 1    jointly-conducted criminal activity that was intended to

 2    encourage persons other than or in addition to co-conspirators

 3    to violate the Internal Revenue laws or impede, impair,

 4    obstruct, or defeat the ascertainment, computation, assessment,

 5    or collection of revenue.  The two-level adjustment under

 6    Guideline 2T1.9 will be applied to both defendants.

 7         We'll take a 15-minute recess.

 8         (RECESS HAD)

 9              THE COURT:  I will now address the proposed

10    adjustment under Guideline 3B1.1(a) applicable to organizers or

11    leaders of criminal activity.  The guideline states quite

12    simply that, and I quote, "If the defendant was an organizer or

13    leader of a criminal activity that involved five or more

14    participants or was otherwise extensive," then there is a four-

15    level upward adjustment.  I derive substantial guidance with

16    respect to the application of this guideline from the Tenth

17    Circuit's decision in United States v. Yarnell, 129 F.3d 1127,

18    a decision from our Court of Appeals in 1997.  I reviewed other

19    authorities, including other quite helpful Tenth Circuit cases,

20    but I believe that Yarnell is the most instructive case from

21    our circuit with respect to the criteria for meeting the

22    "otherwise extensive" language in Guideline 3B1.1(a).

23         Yarnell surveyed cases from other circuits and adopted a

24    test articulated by the First Circuit, which is a totality of

25    the circumstances test and which holds that the extensiveness

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

511

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 31 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 512

421

1   of the criminal activity is not necessarily a function of the

2   precise number of persons involved whether they be culpable or

3   not, but that the court must look at not only the number of

4   participants but also the "width, breadth, scope, complexity,

5   and duration of the scheme."  That is from page 1139 of the

6   Yarnell decision.  Cases from other jurisdictions are cited in

7   Yarnell which involved these same criteria.

8        In these cases, the courts affirmed the application of

9   sentence enhancements under Section 3B1.1(a) for extensive

10  conduct involving less than five criminally culpable

11  participants.  And that is also discussed on page 1139.

12       I find and conclude that the Defendant Lindsey Springer

13  was the organizer or leader of a criminal activity, that it was

14  otherwise extensive within the meaning of Guideline 3B1.1(a).

15  It was extensive in its scope, it was extensive in its duration

16  and it was extensive in its complexity.  Numerous individuals

17  were involved, some of them wittingly and some of them

18  unwittingly.  One of the ones who is interesting in terms of

19  whether his involvement was witting or unwitting was

20  Mr. Delozier, but suffice it to say for present purposes that

21  numerous individuals were involved both wittingly and

22  unwittingly.

23       The activity indeed was extensive.  It was Mr. Lindsey

24  Springer's way of life for a goodly number of years.  It

25  involved, as I have said, his use of this fictitious entity,

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

512

1   the Bondage Breakers Ministry.  It involved individuals who

2   were both victims as well as knowing participants and

3   participants who might not have been knowing participants.  And

4   it called upon Mr. Springer to organize these activities in

5   such a way that he could delay for as long as possible being

6   called to account for his personal tax crimes.

7       I find that this case, especially as it relates to the

8   Defendant Lindsey Springer squarely falls within the scope of

9   Guideline 3B1.1(a) relating to otherwise extensive criminal

10  activity.  And I should say that perhaps one of the most cogent

11  factors to consider is the period of time.

12      Now, I'm not holding Mr. Springer for this purpose

13  accountable for the fact that, as he was proud to proclaim, he

14  hadn't filed tax returns since the 1980s, but one doesn't

15  really need to go back behind the 1990s or even the mid to late

16  1990s in order to get some concept of the extensiveness of

17  Mr. Lindsey Springer's criminal activity.

18      I now turn to the application of Guideline 3B1.3, abuse of

19  position of trust or special skill.  This guideline states as

20  relevant here, "If the defendant abused a position of public or

21  private trust or used a special skill in a manner that

22  significantly facilitated the commission or concealment of the

23  offense, increase by two levels.  This adjustment may not be

24  employed if an abuse of trust or skill is included in the base

25  offense level or specific offense characteristic."

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

513

423

1    That latter exception is not applicable here because the

2    base offense level and the specific offense characteristics do

3    not already incorporate the concept of abuse of trust or a

4    special skill.  The guideline goes on to say, "If this

5    adjustment is based on an abuse of a position of trust, it may

6    be employed in addition to an adjustment under Guideline 3B1.1,

7    aggravating role.  If this adjustment is based solely on the

8    use of a special skill, it may not be employed in addition to

9    an adjustment under Section 3B1.1 aggravating role."

10    I'm also guided, of course, by Application Note 1 where

11    the guideline provides further guidance as to the concept of

12    public or private trust.  It says, "Public or private trust

13    refers to a position of public or private trust characterized

14    by professional or managerial discretion, i.e., substantial

15    discretionary judgment that is ordinarily given considerable

16    deference.  Persons holding such positions ordinarily are

17    subject to significantly less supervision than employees whose

18    responsibilities are primarily non-discretionary in nature.

19    For this adjustment to apply, the position of public or private

20    trust must have contributed in some significant way to

21    facilitating the commission or concealment of the offense,

22    e.g., by making the detection of the offense or the defendant's

23    responsibility for the offense more difficult.  This

24    adjustment, for example, applies in the case of an embezzlement

25    of a client's funds by an attorney serving as a guardian, a

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 34 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 515

424

1   bank executive's fraudulent loan scheme, or the criminal sexual

2   abuse of a patient by a physician under the guise of an

3   examination.  This adjustment does not apply in the case of an

4   embezzlement or theft by an ordinary bank teller or hotel clerk

5   because such positions are not characterized by the above

6   described factors."

7       The guideline also goes on in Application Note 4 to

8   provide guidance as to the concept of a special skill.  It

9   states, and I quote, "Special skill refers to a skill not

10  possessed by members of the general public and usually

11  requiring substantial education, training, or licensing.

12  Examples would include pilots, lawyers, doctors, accountants,

13  chemists, and demolition experts."

14      Now, it's true that Mr. Stilley's status as a lawyer was

15  not, strictly speaking, indispensable to his commission of the

16  crimes of which he stands convicted, but his status as a lawyer

17  and his use of the prerogatives of a lawyer were, in fact,

18  central to his role in the conspiracy and more broadly in the

19  relevant conduct as it relates to the jointly-undertaken

20  criminal activities of the defendants.

21      By way of example, it was because Mr. Stilley was a lawyer

22  that he had an IOLTA account.  His status as a lawyer

23  facilitated his function which he performed without fail as a

24  financial conduit to Mr. Springer.  It is fair to say, although

25  admittedly a bit harsh to say, that without his license to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

515

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 35 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 516

425

1   practice law Mr. Stilley was worthless to Mr. Springer in
2   Mr. Springer's role as the charismatic and intellectual force
3   behind the joint criminal endeavors of these two defendants.
4       Mr. Stilley's status as a lawyer and his ability to hold
5   himself out at a criminal tax defense attorney furthered these
6   defendants' joint objective of committing tax fraud directly
7   and in counseling and advising their clients and significantly
8   facilitated the commission and concealment of these defendants'
9   offenses.  This adjustment will be applied to Mr. Stilley.
10      As to Mr. Springer, I have carefully considered the case
11  law, including the Tenth Circuit case law, and I do conclude in
12  light of the prevailing case law with respect to the
13  application of Guideline 3B1.3 that the adjustment for abuse of
14  a position of trust is not applicable to Mr. Springer in this
15  case.  Because the aggravating role adjustment will be applied
16  to Mr. Springer, the question of the use of a special skill is
17  moot as to Mr. Springer under the express terms of Guideline
18  3B1.3.
19      This brings me to consideration of the proposed
20  application of Guideline 3C1.1 relating to obstruction of
21  justice.  I listened very carefully to these defendants'
22  testimony at the trial, and I took careful notes.  Mr. Stilley
23  testified under oath that no statute says that anyone is liable
24  for income tax.  He testified under oath that no statute
25  defines income.  Now, it might be tempting to think of these as

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

516

426

1   just ludicrous statements made for some theatrical effect, but

2   bear in mind that he was looking at a jury when he made those

3   statements under oath, and both defendants had placed their

4   intent and their willfulness squarely in issue.  So it is not

5   -- I'm not inclined at all to dismiss those statements as

6   reckless hyperbole or otherwise to relieve Mr. Stilley of the

7   natural effect which flows from making false statements like

8   those under oath.

9        He also said that the law -- under oath, looking at the

10  jury, that the law does not command anyone to file a tax

11  return.  He also said, under oath, that Mr. Lindsey Springer

12  did not charge for or receive compensation for services

13  rendered.  He also said, under oath, that he never allowed

14  Mr. Springer to use his, Mr. Stilley's, IOLTA account as a

15  parking place for money.  He also said, under oath, that he and

16  Mr. Springer have never discussed attempting to defraud the

17  United States of income taxes.  All of those statements were

18  material, they were made under oath, and they were

19  categorically false.  They amounted to perjury.  They certainly

20  did amount to obstruction of justice on Mr. Stilley's part.

21       As for Mr. Springer, at trial, he looked at the jury and

22  testified under oath that he never had an agreement with

23  Mr. Stilley or anyone else to defraud the United States.  He

24  testified that he did not willfully fail to file Form 1040 for

25  the years 2000 through 2005.  He stated that he did not

427

 1   willfully fail to report substantial tax liability.  And he

 2   stated that he believed that he did not receive gross income.

 3   He also said under oath that receiving money with no

 4   expectation for anything from anybody "was a guideline that I

 5   had before I would have ever received any money."  And he has

 6   testified that there never was any quid pro quo for the money

 7   that the Hawkins paid to him.  These statements are

 8   categorically false.  They were made under oath.  They were

 9   made for the purpose of deceiving the jury, and they amounted

10   to obstruction of justice, Mr. Springer.

11       In addition, in March of 2006, Mr. Stilley told the grand

12   jury in writing that "Lindsey Springer does not charge for his

13   services."  A statement that Mr. Stilley well knew was

14   absolutely false and highly material to the grand jury's

15   investigation.  The defendants' testimony on these points was

16   unequivocal, it was false, it related to material matters that

17   were in issue in the trial of this case or before the grand

18   jury and the false testimony was willfully and intentionally

19   given as false testimony rather than as a result of confusion,

20   mistake, or faulty memory.

21       Accordingly, I rule on the government's objections to the

22   presentence report as follows:  To the extent that I have found

23   a tax loss that exceeds that found in the presentence report,

24   the government's objection to the scope of the relevant conduct

25   conclusions in the presentence reports and with respect to the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

518

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 38 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 519

428

1 tax loss found in the presentence report is sustained as to

2 both defendants.

3          The government's objection to the omission of a criminal

4 source income adjustment from the presentence report is

5 sustained as to both defendants.

6          The government's objection to the omission of a four-level

7 adjustment for Mr. Springer for his aggravating role in the

8 offense is sustained.

9          The government's objection to the omission of an

10 adjustment for use of a special skill or abuse of a position of

11 trust as to Mr. Springer is overruled.

12          The government's objection to the omission of an

13 adjustment for use of a special skill as to Mr. Stilley is

14 sustained.

15          Now, with respect to the defendants' objections, the

16 defendants' objections to the use of the 2009 Guidelines Manual

17 are overruled.

18          The defendants' objections with respect to the scope and

19 accuracy of the relevant conducts of the presentence report are

20 overruled.  This is paragraphs 5 through 16 in both of the

21 presentence reports.

22          The defendants' objections with respect to the amount of

23 the tax loss are sustained in part and overruled in part, all

24 as was stated in my specific findings as to the amounts of the

25 tax losses.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

519

1       Mr. Springer's objection with respect to paragraph 22

2  relating to grouping is overruled.

3       The defendants' objections with respect to paragraph 16

4  relating to the use of sophisticated means are overruled.

5       Mr. Springer's objection with respect to paragraph 6

6  relating to encouraging others to violate the law is overruled.

7       Mr. Stilley's objection with respect to paragraph 7

8  relating to encouraging others to violate the law is overruled.

9       Mr. Springer's objection with respect to his aggravating

10  role in the offense is overruled.

11      The defendants' objections with respect to the obstruction

12  of justice adjustment in paragraph 19 of both reports are

13  overruled.

14      Mr. Springer's objection with respect to denial of a

15  downward adjustment for acceptance of responsibility is

16  overruled.

17      And it is not necessary for the Court to address

18  Mr. Springer's objection to the reference to his previous

19  federal conviction for odometer fraud because that objection

20  has no impact on the guidelines calculation and paragraph 32

21  will be disregarded for all sentencing-related purposes.

22      Mr. Stilley's objection to the characterization of his

23  Count 1 conviction as a felony is overruled.

24      That concludes my Rule 32(i)(3) findings on the disputed

25  portions of the presentence report.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

520

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 40 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 521

430

1        The criminal history category for both defendants is I.   I

2   conclude that Mr. Springer's total offense level under the

3   advisory guidelines is 34 determined as follows:   I begin with

4   a base offense level based on tax loss of 22.   There is a

5   two-level adjustment for criminal source income under Guideline

6   2T1.1(b)(1).   There is a two-level adjustment for sophisticated

7   concealment under Guideline 2T1.1(b)(2).   There is a two-level

8   adjustment for encouraging others to violate the Internal

9   Revenue laws under Guideline 2T1.9(b)(2).   There's a four-level

10  adjustment for his aggravating role under Guideline 3B1.1(a).

11  There is a two-level adjustment for obstruction of justice

12  under Guideline 3C1.1 resulting in both an adjusted offense

13  level and a total offense level of 34 resulting in a guideline

14  range of incarceration of 151 to 188 months.

15       With respect to Mr. Stilley, I arrive at a base offense

16  level of 22 based on tax loss, with a -- because the tax loss

17  exceeded a million dollars as to both defendants, a two-level

18  adjustment for criminal source income, a two-level adjustment

19  for sophisticated concealment, a two-level adjustment for

20  encouraging others to violate the Internal Revenue laws, a

21  two-level adjustment for abuse of a position of trust or use of

22  a special skill -- in this case, use of a special skill -- and

23  a two-level adjustment for obstruction of justice resulting in

24  an adjusted and a total offense level for Mr. Stilley of 32,

25  which results in a guideline range of incarceration under the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

521

431

1    advisory guidelines of 121 to 151 months.

2        I will now address restitution.  I must admit that I was a

3    bit limited, I guess is one way to say it, in my ability to

4    thoroughly evaluate restitution because there were some

5    adjustments to the tax loss amounts and then there is obviously

6    penalty and interest applicable to some items and not to others

7    and the parties, perhaps understandably, from both standpoints

8    did not devote a great deal of attention in their briefs to the

9    issue of what items are fair game for restitution, what the

10   legal basis for the restitution might be, whether there's any

11   difference among the various counts with respect to restitution

12   and even whether and to what extent there should be joint and

13   several liability for restitution.

14       I'm not critical of either side for not focusing any

15   harder than they did on that from the government's standpoint.

16   These defendants are likely to be buried in restitution

17   obligations for the rest of their lives.  And under any

18   reasonable assessment of restitution, it is likely that these

19   defendants will never see the end of their restitution

20   obligation.  These tax liabilities continue to bear interest.

21   The interest payments alone, which I do not waive and will not

22   waive, will be substantial.

23       So from that standpoint, it's probably understandable that

24   the government did not spend a great deal of time on the issue

25   of restitution.  From the defendant's standpoint, the issue of

1    restitution is certainly, by any measure, quite secondary to

2    considerations relating to their incarceration and those

3    guidelines and other sentencing-related matters that have a

4    more direct bearing on whether and how long they would be

5    incarcerated.

6         So I'm not critical either of the defendants for not

7    spending a great deal of time on restitution.  But the net

8    effect of all of that was that I was just a little bit at sea,

9    if you will, in my ability to determine what the outcome should

10   be with respect to restitution.

11        I have gone back through the numbers.  I have adjusted the

12   numbers and selected the ones that it appears to me are

13   appropriate for restitution.  To some degree, especially in the

14   case of Mr. Springer, I adjusted the numbers to reflect my

15   revision of the conclusions and findings with respect to tax

16   loss, although I have not modified the numbers as to the

17   assessed amounts.

18        And I'm also cognizant that Mr. Springer's and

19   Mr. Stilley's restitution obligation is an independent

20   freestanding obligation under the judgment and sentence of this

21   Court.  And there may well be and I suspect are other

22   independent legal means of proceeding against these defendants

23   for any amounts that are not embraced by my restitution order.

24        That said, my conclusion is that Mr. Springer's federal

25   restitution obligation is $691,343 and that his state

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

523

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 43 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 524

433

1    restitution obligation is $80,186.  I conclude that

2    Mr. Stilley's federal restitution obligation is $684,653 and

3    that his state restitution obligation is $91,627.

4        Does either defendant have any procedural objection to the

5    sentencing proceedings to this point?  Mr. Springer?

6            MR. SPRINGER:  May I have just a moment, Your Honor?

7    None other than the same objections I made yesterday with

8    reference to prior to the sentencing hearing objections I had,

9    Your Honor.

10           THE COURT:  Thank you, Mr. Springer.  Mr. Stilley?

11           MR. STILLEY:  I would likewise continue to maintain

12   all the objections that I have previously made and state that I

13   do not see that my due process complaints have been remedied by

14   anything that has taken place up to now.

15           THE COURT:  Thank you, Mr. Stilley.  I will now give

16   you -- for all concerned, I'll give you some understanding of

17   how we will proceed from here.

18       The defendants have a right, and it goes back hundreds of

19   years, to have what is called "allocution."  That is their

20   statements to the Court of anything, and I truly mean anything,

21   that they would want the Court to consider by way of mitigation

22   or with respect to any other matter relating to sentencing.

23   That's a very valuable right and I certainly intend to afford

24   the defendants a full opportunity to exercise their rights of

25   allocution.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

524

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 44 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 525

434

 1      Under Rule 32, the Court also must permit the government
 2  to make its comments with respect to sentencing before sentence
 3  is imposed, and I intend to do that.  In my view, in fairness,
 4  given the nature of the proceeding and the possible
 5  consequences to the defendants, it is fair that the defendants
 6  have the last word.  For that reason, I will now invite the
 7  government to offer any comments it may choose to make with
 8  respect to sentencing.  Mr. O'Reilly.
 9          MR. O'REILLY:  Your Honor, before I begin, just a
10  brief procedural matter.  Special Agent Shern may need to be
11  leaving here shortly.  I would ask the Court's indulgence in
12  allowing him to do so.
13          THE COURT:  Very well.
14          MR. O'REILLY:  And, Your Honor, we have said
15  everything we need to say in our sentencing memorandum.  We do
16  ask the Court to sentence high into the guidelines, as stated
17  in the sentencing memorandum, the guideline range you have
18  found based upon each defendant's absolute, long standing, and
19  continued disregard for the laws and their predatory practices
20  obtaining the income upon which they failed -- willfully failed
21  to pay and evaded their taxes.  And that's all the government
22  has, Your Honor.
23          THE COURT:  Thank you, Mr. O'Reilly.  Mr. Springer, I
24  will now hear anything you have to say relating to any aspect
25  of sentencing or in mitigation.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

525

1        MR. SPRINGER:  Mr. O'Reilly, Mr. Shern, Mr. Snoke,

2  Mr. Burton, Mr. Williams, Mr. Stilley.  The reason, Your Honor,

3  that I defended myself in this case instead of accepting a plea

4  of guilty from Mr. O'Reilly was because -- solely because of

5  the Paperwork Reduction Act defense that I had raised four

6  times in the Tenth Circuit Court of Appeals.  Four times they

7  had found a way to avoid the merits of my claims.  The most

8  recent one was August 31, 2009, where I got a lot closer, where

9  they said I raised difficult issues.  But because the only

10  issues before the Court in that case was failure to pay

11  penalties and interest as a penalty and not failure to file

12  penalties, they decided not to get into the merits of my

13  claims.

14      The commissioner of the IRS's lawyer, Nathan Hochman, he

15  asked for sanctions against me for being frivolous in raising

16  those claims.  And he actually even told the Tenth Circuit,

17  quoting that they had found my claims were frivolous in Judge

18  Anderson's order of May 1, 2007.  And the Tenth Circuit on

19  August 31, 2009, they told the commissioner that they were

20  frivolous for making that argument because they had never ruled

21  in the two cases I had had before your Court or in the one I

22  had before Judge Eagan where I had raised the protection of the

23  Paperwork Reduction Act.

24      I had claimed on the offense in front of Judge Eagan and

25  they said I can only claim it as a defense, I claimed it as a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

526

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 46 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 527

436

1   defense in the case that was on August 31, 2009, before the

2   Tenth Circuit.  But because, again, it wasn't failure to file

3   penalties, they wouldn't reach the merits.  And as Your Honor

4   noted earlier today, my Web site has been fully dedicated to

5   the Paperwork Reduction Act and the penalties, not the taxes.

6       Had I been -- had a ruling on the merits, even to the

7   point that I had been told I was frivolous by the Tenth

8   Circuit, I would have stopped with my claims and I would have

9   accepted a deal from Mr. O'Reilly.  But because they had not

10  ruled on the merits and because Mr. Hochman and others from the

11  Department of Justice were mischaracterizing what the Tenth

12  Circuit had said by saying they were saying on their Web site,

13  public Web site, the Department of Justice was saying I was

14  found to be frivolous with my Paperwork Reduction Act claims.

15  And that was not true, as the Tenth Circuit found on August 31,

16  2009.

17      I did, in 2005, if you take away the Turner transaction,

18  you do not see any more cases referred to Mr. Stilley that came

19  along or crossed my path.  I didn't quite see it the way the

20  Court saw it today, but I understand how the Court arrived at

21  its conclusions with the Turner transaction.  As I said

22  yesterday, I concede to one or the other based upon the way the

23  transaction was handled.

24      I did not contact Mr. Turner because I knew the sentencing

25  hearing was coming up or that I knew that Judge Kearn had

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

527

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 47 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 528

437

1   ordered me to vacate the home that the RV was parked on.

2   Mr. Turner actually called me first.  And after hearing

3   Mr. Miller's testimony about it appears as though I had stole

4   the money, I did not want to stand in Mr. Turner's way, no

5   matter what, anymore.

6        I understand that other than that transaction, I believe

7   the last transaction or last transactions were in 2004 with

8   Mr. Stilley.  And, in actuality, I had stopped.  This is why I

9   didn't oppose the Court's supervised release conditions because

10  I am not and have not been going towards any type of defense

11  for anybody in tax-related cases that are brought to the

12  Court.  I actually was trying to go down a different road

13  entirely.

14       And I do apologize to the public in general and to

15  Mr. Hawkins.  I wish he was here and I could do it.  I even

16  would apologize to Mr. Patterson, even though the Court's

17  ruling did not find tax loss associated with me and

18  Mr. Patterson or his wife.  I would also apologize to

19  Mr. Dingman and Mrs. Dingman and Mr. Grady and Mrs. Grady.  And

20  it's not just limited to what the Court said with the Dingmans

21  in 1996 that it found, but what happened to the Dingmans after

22  that, which I did have a role in trying to stop, but at the

23  time in 1996, I didn't recognize how difficult it is to stop

24  once those things start.  And this is how I went from where I

25  was in 1996 or '95 before Judge Holmes' order, which I accepted

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

528

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 48 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 529

438

 1   in full --

 2           THE COURT:  On the subject of apologies, and this is

 3   for both defendants, I hope on your own time in your own way

 4   you will apologize to your families.

 5           MR. SPRINGER:  I will.

 6           THE COURT:  They deserve better than this.

 7           MR. SPRINGER:  I understand.

 8           THE COURT:  And I don't call upon you to do so here,

 9   but I hope and trust that in your own time in your own way you

10   will apologize to your families.

11           MR. SPRINGER:  In the last two days I have done that

12   to my mother.

13           THE COURT:  They deserve better.

14           MR. SPRINGER:  I agree.

15           THE COURT:  Proceed.

16           MR. SPRINGER:  And my father and my children.

17   Sometimes I rationalize that taking the experience I learned

18   from 1996, '97, '98, that when those circumstances came around

19   again and I saw them I would not go down that same road, and

20   that is why people were told to file tax returns and people

21   were told to pay their taxes by me.  And I would use the

22   examples of those things I learned in '96 and '97 to persuade

23   them to listen to what I had to say.

24       I believe this time in this case and on this appeal that

25   comes from this case that I am going to get a ruling on the

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

529

1   merits of my claims.

2       The problem that I noted yesterday on the witness stand

3   that I have is that I see words with specific meaning and I --

4   it's just something I've been working on to stop, to try to get

5   a more ambiguous view.  And when I -- when I learned to write

6   an ambiguous language, to not be so focused on August 31, 2009,

7   the Tenth Circuit told me I was too ambiguous in my writing.

8   And so I'm trying to find a balance in what I have -- how I

9   speak or what I say or how I say it so that I can not cause the

10  extremes on both sides.  I do believe I've gotten better.  I

11  don't believe it's easy.  If it was, I think we'd all be able

12  to do it.

13      And as I did after the jury's verdict, I apologized to

14  Mr. Shern for having to follow the trail that was left by me.

15  Every time the government did ask me for information,

16  personally, I did to the best of my knowledge and ability.

17  Other than those exceptions that were placed at issue in this

18  trial, I always presented what they asked to whatever degree

19  they asked and I did not require them to force me to give it to

20  them.  I even agreed to go under oath for my perspective in

21  January of 2009.

22      And Mr. Miller, I've witnessed several cases with, and

23  he's a fine man.  And if he were here, I would also, as I did

24  yesterday, apologize to him for having to spend the time he had

25  to take as well.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

530

440

1    Had I, again, received any ruling on the merits in 2007 or

2  2009 on my claims under the Paperwork Reduction Act, I tell

3  you, I would not be here before you today.  This would have

4  happened a long time ago in a plea agreement.  But there was no

5  other way to claim a defense but as a defense.  I tried to do

6  it as a plaintiff and they said I couldn't do it.  So it is by

7  that mode that I find myself here.

8    I do accept full responsibility for all the transactions

9  that took place.  And although I do agree with the Court that

10  the restitution order will basically be a life sentence

11  economically against me, it can be a lesson to others not to

12  ever follow down that road that I have stopped on but not soon

13  enough.

14    When my case with Mr. Dingman was dismissed by the Eighth

15  Circuit in a one-paragraph ruling, I did not appeal that

16  decision.  I tell you now, that was one of the most difficult

17  decisions that I've had to make, and I did it, which proved to

18  me that I can do it.  I don't always have to go all the way to

19  the top to satisfy the question of whether or not I waived my

20  right to something by not appealing it.  Which is something

21  that in the mid-'90s that's all the Department of Justice when

22  they would oppose anything I was doing, that's what they would

23  use against me.

24    In the August 31st order in the Tenth Circuit, they would

25  not address the question of assessment.  They said I did not

1    include it in my opening brief.  They haven't ruled on the

2    merits yet, they wouldn't address it at that time.

3         Now, I have another case back before the Tenth Circuit on

4    assessment that came out of Judge Kearn's courtroom on March

5    16th.  So I should be able to conclude that there and then I

6    should be able to conclude my Paperwork Reduction Act claims in

7    this case.  And then that should conclude anything that I have

8    to do in respect to what I believe in protecting my rights.

9         May I have just a moment, Your Honor?

10             THE COURT:  Surely.

11             MR. SPRINGER:  I'd also apologize to the United

12   States Government.  That's a difficult one for me.  And

13   although we are trying to change as people in accepting some of

14   the things we have to change, one of the things that I got from

15   not only this case, as many objections as I have, is that I

16   live in the greatest country ever seen on the planet.  Thank

17   you.

18             THE COURT:  Thank you, Mr. Springer.  Mr. Stilley.

19             MR. STILLEY:  May it please the Court, counsel,

20   parties.  I'd like to inquire about a procedural matter first

21   and that has to do with if incarceration results.  I'd like to

22   find out if I am to be allowed access to my computer files and

23   hard files for the purposes of a -- of doing my appeal.

24             THE COURT:  That's not a matter that I'm going to

25   address today.  That will be, first of all, a matter between

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

532

442

 1   you and the marshal and between you and the Bureau of Prisons.

 2   If there are any difficulties that you wish to place before the

 3   Court relating to your access to any materials, then you will

 4   certainly have the opportunity to file a motion.  If you can't

 5   get access to a computer for the purpose of filing a motion,

 6   then, as you're probably well aware, pro se litigants are

 7   entitled to file pleadings in handwriting.  In any event, that

 8   aspect of your probable incarceration and your activities after

 9   you are remanded is not a matter that I'm going to address

10   today.

11           MR. STILLEY:  Your Honor, as you well know from the

12   proceedings, this is not the first time that I've been in a

13   court.  This is the first time that I've been in a court of

14   this nature on a proceeding in which Oscar Stilley was a party

15   defendant as opposed to counsel.  So there's a little bit of a

16   difference between Oscar Stilley and the typical person who

17   comes before you.  I understand what the proceedings mean.  I

18   understand what your rulings mean that you've made.  I

19   understand the import of those.  My primary consideration, and

20   I think that it will be satisfied based on what you've just

21   told me, but my primary consideration would be my ability to be

22   heard in a reasonable time and a reasonable manner with respect

23   to the process that I am due.

24       I don't wish to rehash anything because I don't think

25   that's appropriate or necessary.  I don't think it's necessary

 1  to waste any time on that.  You have mentioned something about

 2  families.  Truly, I do love my family.  I care for them.  You

 3  can see from the presentence report that my wife and I have two

 4  biological children, small children, and we have two that we

 5  adopted from Russia, we care very much about those.  I

 6  certainly care about those children and I intend to do the very

 7  best by them that I can.  The principal thing that I want to

 8  make sure that I do for them right now is the absolute best

 9  work that I can possibly do in defending my interests.

10      Your Honor, that's all the comments that I have to say.

11  Thank you, Judge.

12          THE COURT:  Thank you, Mr. Stilley.

13          MR. SPRINGER:  Your Honor, may I on one point on --

14          THE COURT:  Surely.  Come forward, please.

15          MR. SPRINGER:  Yesterday, I asked about the

16  possibility of an appeal bond or a short amount of time and you

17  made mention, I believe, that I could raise something in my

18  allocution, and I didn't say anything in my allocution about

19  that.  Do I need to say that?  Or the other option you said was

20  after you pronounced sentence that you would consider --

21          THE COURT:  We will address that before we recess,

22  but not at this point.

23          MR. SPRINGER:  Thank you, Your Honor.

24          THE COURT:  Very well.  The Court expresses, first of

25  all, and this should have been said before, should have been

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

534

 1   said before more than once but will emphatically be said now,

 2   the Court expresses its sincere appreciation to the defendants'

 3   standby counsel.

 4       Mr. Burton and Mr. Williams, your assignment has been one

 5   of the most thankless tasks that a court could ever ask a

 6   member of the Bar to perform and you have persevered beyond any

 7   reasonable expectation.  It seems inadequate to say simply, but

 8   I say, quite simply, that your work is sincerely appreciated.

 9       I hope that the defendants have some understanding on some

10   level of how well they have been served by their standby

11   counsel.  The defendants have been served exceedingly well by

12   their standby counsel under very difficult circumstances.

13       In the Court's view, it is unlikely that the defendants

14   will ever fully understand or fully appreciate how beneficial

15   the services of their standby counsel have been, but I have no

16   doubt that to the extent that the defendants have followed the

17   advice of their standby counsel, the standby counsel have been

18   instrumental in shortening the list of things that the

19   defendants would want the Court to disregard for sentencing

20   purposes.

21       I also express my sincere appreciation to the probation

22   officer, Todd Gollihare.  I must say, Mr. Gollihare, it has

23   been a long time, if ever, since I have seen a pair of

24   presentence reports that required the extent of very, very

25   careful review and analysis that the presentence reports and

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

535

445

 1   the addenda required in this case.  As far as I'm concerned,

 2   your services have been above and beyond any reasonable

 3   expectation and any reasonable call of duty.  I, obviously,

 4   have not in all respects concurred with the conclusions that

 5   you have suggested in your presentence reports and the addenda,

 6   but I fully respect the quality and intensity and care of the

 7   work that you put into those presentence reports and the

 8   addenda and it is sincerely appreciated.

 9       The Court has made its sentencing determinations with due

10   regard for the advisory sentencing guidelines.  The advisory

11   sentencing guidelines have aided and indeed channeled the

12   Court's evaluation of this case for sentencing purposes in many

13   important respects.

14       As valuable as the sentencing guidelines have been, it is

15   also true that the sentences that I am about to impose would be

16   the same even with the higher total offense levels advocated by

17   the government or with the lower total offense levels advocated

18   by the defendants.  This is true because to a truly exceptional

19   degree in this case, matters that are at least arguably outside

20   the scope of the matters that may be considered in the

21   application of the advisory guidelines are, nevertheless,

22   highly relevant to the Court's evaluation of other factors

23   under Section 3553.

24       In imposing the sentence in this case, I am mindful of my

25   statutory duty to impose a sentence that is sufficient but not

446

 1   greater than necessary to fulfill the objectives of sentencing

 2   under the Sentencing Reform Act and I will take into account

 3   the factors mandated by 18 United States Code, Section 3553.

 4   Now, in any particular case, obviously, some of those factors

 5   assume more importance, more relevance, more impact than

 6   others, and that is certainly true in this case.

 7       In this case, the factors that are most relevant to the

 8   Court's determination of the sentences to impose are the need

 9   for the sentences to reflect the seriousness of the offense.

10   The offenses of these defendants are by any measure

11   extraordinarily serious and they have been committed in ways

12   that probably by any reasonable measure are atypical even of

13   the manner and means by which individuals violate these

14   statutory provisions.

15       I also consider the need to promote respect for the law

16   and to provide just punishment as being especially relevant in

17   this case.  Certainly, the first among equals, if not the

18   predominant consideration in sentencing, is the need to afford

19   adequate deterrence to criminal conduct.

20       After these proceedings are concluded, it is the Court's

21   open desire, and this is by statute an explicitly-recognized

22   sentencing consideration, it is the Court's hope and desire

23   that others who would be tempted to walk the path and life that

24   these defendants have walked, the consistently criminal,

25   predatory, fraudulent path in life that these defendants have

447

1    walked, will think of what happened to Lindsey Springer and

2    Oscar Stilley and reconsider.  That is what deterrence is all

3    about.  That is an important consideration for sentencing.

4        I also consider the need to protect the public from

5    further crimes of these defendants.  I will acknowledge, quite

6    readily, that the need to provide the defendants with needed

7    educational or vocational training or medical care or other

8    matters relating to rehabilitation are not significant,

9    although they are obviously statutory sentencing

10   considerations, they are not significant for sentencing

11   purposes in this case.

12       I don't think that there is any real possibility that

13   either one of these defendants will change their ways as a

14   result of incarceration.  Incarceration and possibly supervised

15   release will essentially be an interruption, albeit a lengthy

16   interruption, in your criminal way of life.

17       I have also been substantially influenced by the nature

18   and circumstances of the offenses and the history and

19   characteristics of the defendants, the kinds of sentences

20   available, and the need to avoid unwarranted sentencing

21   disparities among defendants with similar records who have been

22   found guilty of similar conduct.  And I'll comment further on

23   that momentarily.

24       I have also been influenced by the advisory sentencing

25   guideline calculation and the relevant guidelines policy

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 58 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 539

448

1  statements as well as the need to provide restitution.  All of

2  which I have carefully considered in this case.

3      As for the nature and circumstances of the offenses and

4  the history and characteristics of the defendants, I have tried

5  to find even a thin strand of truth or integrity to your

6  conduct or your way of life.  It is not there.  Not even a

7  speck.  There is not even a plausible basis upon which you

8  might have deluded yourself into thinking that you are anything

9  but complete frauds and predators.

10      Your scams have cheated the United States.  And that is a

11  serious matter in and of itself.  But the United States can

12  print money.  If anyone ever had any lingering doubt as to

13  whether you are frauds and predators, that doubt would be

14  removed by the fact that the two of you have also merciless

15  fleeced some very vulnerable people.  You are predators, pure

16  and simple.

17      In evaluating your culpability, one thing I should

18  consider in fairness to you is the possibility that you have

19  convinced yourselves to believe, in good faith, in the truth of

20  some things that would not be believable to a reasonable man.

21  That would not be fraud as we commonly understand fraud.  So if

22  you are among those who are exceptionally likely to believe

23  whatever you are told, especially if it is you who are doing

24  the telling, that might tend to diminish your culpability.  I

25  have carefully considered that possibility and I have rejected

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

539

1   it.

2       As for Mr. Stilley, my sentencing decision is

3   significantly influenced by two matters.  The first is the need

4   to avoid unwarranted sentencing disparities among defendants

5   with similar records who have been found guilty of similar

6   conduct, as you have been in this case.  The facts that

7   contribute to my evaluation of your culpability are a bit

8   different for you than for Mr. Springer.  But in terms of your

9   overall culpability, Mr. Stilley, there is no daylight between

10  you and Mr. Springer, even though his advisory guideline range

11  is higher than yours is.

12      For that reason, taking into account all of the statutory

13  sentencing factors, including the advisory sentencing

14  guidelines, the sentence in your case will include an upward

15  variance from the guideline range.  If I failed to do that in

16  your case, Mr. Stilley, your sentence would reflect a

17  completely unjustifiable and unwarranted sentencing disparity

18  as between you and Mr. Springer.

19      I must say, Mr. Stilley, that my evaluation of your

20  history and characteristics is also influenced by the fact that

21  you have, to a truly astonishing extent, used your license to

22  practice law as an instrument of fraud and a license to steal.

23  Your victims have included both the United States and the

24  individuals who have been persuaded to their everlasting sorrow

25  that you had the competence and integrity to make legitimate

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

540

450

1     arguments on their behalf.  This is an aspect of your history

2     and characteristics that I cannot ignore and that I conclude is

3     not addressed in anything close to a meaningful way by the

4     adjustment under Guideline 3B1.3 for use of a special skill.

5         It is painful to think that you went as long as you did

6     before you were called to account by the disciplinary

7     proceedings in Arkansas.  Mr. Stilley, you are not a lawyer in

8     any normal sense of that word.  You are a thief with a law

9     degree.

10         One other matter should be mentioned before sentence is

11     imposed.  Both of you are going to have some time, considerable

12     time to perfect your self-image as tax protestors who have been

13     persecuted and victimized by the Internal Revenue Service.

14     Before you get too far down that road, let me remind you that

15     you were indicted by a grand jury consisting of your fellow

16     citizens and not by the IRS.  You were convicted by a trial

17     jury sitting in this courtroom consisting of your fellow

18     citizens and not by the IRS.

19         The criminal statutes under which you have been convicted

20     were enacted by our elected representatives and not by the

21     IRS.  You are being sentenced by the Court and not by the IRS.

22     Most importantly, the facts that will result in your

23     considerable terms of imprisonment were created by you and not

24     by the IRS.

25         The defendants will please come to the lectern, both of

451

1  them.

2      One matter that I'm going to address before I impose

3  sentence, because I will consider this in the imposition of

4  sentence, does the Defendant Springer have any request as to

5  place of designation by the Bureau of Prisons?

6          MR. SPRINGER:  Yes, Your Honor.  Because of the cases

7  that I have pending and because of my family and my children, I

8  would like to be as close to Tulsa, Oklahoma, as I could be.

9  Also readily accessible to the Court for those other cases that

10 are pending.

11         THE COURT:  Mr. Stilley.

12         MR. STILLEY:  Your Honor, I think it would be

13 satisfactory to allow the Bureau of Prisons to make an

14 appropriate designation.

15         THE COURT:  Very well.  The judgment and sentence in

16 this case will also state that the Court strongly recommends

17 that the Defendants Springer and Stilley not, in any event, be

18 designated to or incarcerated in the same institution.

19     Do either of you have any reason that the sentences ought

20 not to be imposed at this time?  Mr. Springer?

21         MR. SPRINGER:  No, Your Honor.

22         THE COURT:  Mr. Stilley?

23         MR. STILLEY:  I'd reserve all the complaints and

24 objections in the entire record.  Otherwise, no.

25         THE COURT:  It is the order and judgment of the Court

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

542

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 62 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 543

452

1  that the Defendant Lindsey Kent Springer is hereby committed to

2  the custody of the Bureau of Prisons to be imprisoned for a

3  term of 180 months consisting of:  60 months on Count 1, 60

4  months on Count 2, and 60 months on Count 3, each such term to

5  run consecutively.  And 60 months on Count 4, 12 months on

6  Count 5, and 12 months on Count 6; the sentences on Counts 4,

7  5, and 6 to run concurrently with each other and with the

8  sentence on Count 1; for a total sentence as to all counts of

9  180 months.  And you deserve every day of it.

10      Based on the defendant's financial profile as outlined in

11  the presentence report, the Court finds that the Defendant

12  Springer does not have the ability to pay both restitution and

13  a fine; therefore, no fine is imposed.  The defendant shall

14  make restitution in the amount of $691,343 to the Internal

15  Revenue Service and in the amount of $80,186 to the Oklahoma

16  Tax Commission at the addresses which shall be set forth in the

17  judgment and sentence.

18      The cost of prosecution has not been substantiated by

19  evidence and consequently will not be addressed.  Any monetary

20  penalty is due in full immediately but payable on a schedule of

21  the greater of $25 quarterly or 50 percent of income pursuant

22  to the Federal Bureau of Prisons Inmate Financial

23  Responsibility Program while in prison.

24      If a monetary balance remains, payment is to commence not

25  later than 60 days following release from imprisonment to a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

543

453

1    term of supervised release in equal monthly payments of at

2    least $100 or 10 percent of net income, whichever is greater,

3    over the duration of the term of supervised release and

4    thereafter as prescribed by law for as long as any debt

5    remains.

6        Notwithstanding the establishment of a payment schedule,

7    nothing shall prohibit the United States from executing or

8    levying upon property of the defendant discovered before or

9    after the date of this judgment.

10       Upon release from imprisonment, the defendant shall be

11   placed on a term of supervised release for a period of three

12   years as to Counts 1, 2, 3, and 4 and one year as to Counts 5

13   and 6, all such terms to run concurrently with each other.

14       Immediately upon release from custody but not later than

15   72 hours, the defendant shall report in person to the probation

16   office in the district to which he is released.  While on

17   supervised release the defendant shall not commit another

18   federal, state, or local crime.  He is prohibited during the

19   period of supervised release or afterward from possessing a

20   firearm, ammunition, destructive device, or other dangerous

21   weapon.

22       The defendant shall, at the direction of the probation

23   officer, cooperate in the collection of DNA as provided by law

24   and shall not illegally possess a controlled substance.

25       The defendant shall comply with the standard conditions of

1  supervision that have been adopted by this Court and the

2  following special conditions as set forth in the relevant

3  paragraphs of the presentence report.  The defendant shall

4  abide by the special search and seizure condition as referenced

5  in the presentence report and as found at the Court's Web

6  site.  Likewise, the defendant shall abide by the special

7  financial conditions and he shall abide by the special computer

8  restriction and monitoring conditions.

9      While on supervision, the defendant shall cooperate with

10  the Internal Revenue Service in preparing and filing a true and

11  correct income tax return for any tax years since 1987 for

12  which he has not filed a return.  You shall cooperate with the

13  IRS in civil proceedings to determine accurately your tax

14  liability for the same years, establish a payment schedule with

15  the Internal Revenue Service, and pay all taxes, interest, and

16  penalties owed in connection with your tax debt according to

17  the payment schedule set by the IRS.

18      You shall not engage in any activity that would constitute

19  the unauthorized or unlicensed practice of law or provide

20  representation or services of any kind, advice, suggestions, or

21  recommendations, whether paid or not, to any person or entity,

22  public or private, other than immediate family members with

23  respect to any matter relating to federal or state taxation.

24      The defendant will maintain no Web site that refers to any

25  matter relating to federal or state taxation.  The defendant

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

545

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 65 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 546

455

1    will post no material of any kind on any Web site that refers

2    to any matter relating to federal or state taxation.

3          The defendant will not file without the express written

4    permission of the probation office any civil action relating to

5    federal income tax.  Further, the defendant is prohibited from

6    engaging in any activities in or under the name of Bondage

7    Breakers Ministry.

8          The defendant will not work directly or indirectly in any

9    business, profession, or self-employment engaged in the offer,

10   sale, purchase, trade, brokering, solicitation, or similar

11   transactions with respect to any real property, securities, or

12   negotiable instruments.  You will not engage in telemarketing

13   activities, to include telephone sales and other such business,

14   campaign, venture, or transaction.

15         You shall maintain employment.  All employment must be

16   approved in advance by the probation officer.

17         You shall abide by electronic monitoring, curfew

18   requirements, and travel restrictions as and to the extent as

19   may be determined by the probation officer.

20         If instructed by the probation officer, you shall provide

21   originals or copies of all personal and business telephone

22   records and all credit card checking account and PayPal

23   statements to the U.S. probation officer.  The defendant will

24   report to the probation officer the particulars as specified by

25   the probation officer of all transactions consummated with a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

546

1    check cashing service.  These reports shall be made within ten

2    days after the completion of any such transaction.  You shall

3    refrain from transacting business with any check cashing

4    service if so directed by the probation officer.

5         You shall disclose all e-mail accounts, PayPal accounts,

6    Internet connections, and communication devices, to include all

7    screen names and passwords.  Your use of e-mail, Internet

8    connections, or an Internet connection service will be

9    restricted and/or monitored by monitoring software and

10   otherwise with the costs of remote computer monitoring to be

11   paid by the defendant.

12        You will be prohibited from accessing any on-line service

13   using an alias or the Internet account name or designation of

14   another person or entity.  You will be prohibited from altering

15   or using any form of encryption or other methods that limit

16   access to or change the appearance of data or images.  You will

17   be prohibited from altering or destroying records of computer

18   use.

19        It is further ordered that a $600 special monetary

20   assessment, $100 per count of conviction, be paid immediately

21   to the U.S. Court Clerk for the Northern District of Oklahoma.

22        Let's see, is that correct as to the misdemeanors?  Is

23   that still 100?

24             MR. O'REILLY:  No, Your Honor.

25             PROBATION OFFICER:  No, Your Honor.  It would be

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

547

1    $50 --

2            THE COURT:  Fifty dollars, okay.  Very well.  That

3    will be adjusted accordingly.

4        The judgment and sentence will state that the Court

5    recommends that the defendant be designated to the federal

6    penal facility closest to Tulsa, Oklahoma, for which his

7    security designation qualifies him -- or his security

8    classification qualifies him.

9        Mr. Springer, you are advised that you do have a right of

10   appeal the sentence that is imposed and the judgment of the

11   Court.  Any such appeal must be filed within 14 days of the

12   date the judgment is entered.  If you wish to appeal and cannot

13   afford an appeal, there are forms available for your use to

14   request an appeal without payment of cost.

15       As I mentioned yesterday, I urge you to move without delay

16   in preparing the necessary paperwork to get a transcript at

17   public expense.  And it's my assumption -- you can work with

18   the clerk on this.  It is my assumption that you do desire to

19   appeal and to notify the Court of that intent without delay.

20   We'll address matters relating to remand momentarily.

21       Oscar Amos Stilley.  It is the order and judgment of the

22   Court that the Defendant Oscar Amos Stilley is hereby committed

23   to the custody of the Bureau of Prisons to be imprisoned for a

24   term of 180 months consisting of:  60 months on Count 1, 60

25   months on Count 3, and 60 months on Count 4, all such terms to

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

548

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 68 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 549

458

1   run consecutively, for a total sentence as to all counts of 180
2   months.  And you deserve every day of it.
3       Based on your financial profile as outlined in the
4   presentence report, the Court finds that you do not have the
5   ability to pay both restitution and a fine; therefore, no fine
6   is imposed.
7       You shall make restitution in the amount of $684,653 to
8   the Internal Revenue Service and the amount of $91,627 to the
9   Arkansas Department of Finance and Administration at the
10  addresses that shall be set forth in the judgment and sentence.
11      The cost of prosecution has not been substantiated by
12  evidence and, consequently, will not be assessed.
13      Any monetary penalty is due in full immediately but
14  payable on a schedule of the greater of $25 quarterly or 50
15  percent of income pursuant to the Bureau of Prisons Inmate
16  Financial Responsibility Program.  This provision in your
17  judgment and sentence will be identical to the corresponding
18  provision in Mr. Springer's judgment and sentence.
19      By the way, if -- I should also -- however, this is the
20  release from -- the supervised release, obviously, is a bit
21  different because of the different counts of conviction.  Upon
22  release from imprisonment, you shall be placed on a term of
23  supervised release for a period of three years as to Counts 1,
24  3, and 4.  All terms of supervised release shall run
25  concurrently with each other.  Should the terms of supervised

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

549

459

1  release be revoked, an additional term of imprisonment may be

2  imposed.  Which is true with respect to both defendants.

3        Your judgment and sentence provisions with respect to

4  reporting after release from custody, with respect to DNA, with

5  respect to possession of a controlled substance, with respect

6  to the standard conditions, with respect to the special

7  conditions will be identical to those that were imposed with

8  respect to Mr. Springer.

9        While on supervision, you shall cooperate with the

10 Internal Revenue Service in preparing and filing a true and

11 correct income tax return for any tax years since 1987 for

12 which you have not filed a return.  That will be identical for

13 you as with respect to Mr. Springer.  And the same, of course,

14 is true of the special search and seizure condition, the

15 special financial conditions, and the special computer

16 restriction and monitoring conditions.

17       Likewise, the unauthorized practice of law restriction,

18 the Web site restriction, the posting of material relating to

19 federal or state taxation, and the civil action restriction

20 will be the same for you as with respect to Mr. Springer.

21       You will not work directly or indirectly in any business,

22 profession, or self-employment engaged in the offer, sale,

23 purchase, trade, brokering, solicitation, or similar

24 transactions with respect to any real property, securities, or

25 negotiable instruments.  And the remainder of that provision

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

460

1   will be identical with respect to Mr. Springer.

2        You shall provide, if instructed by the probation officer,

3   with originals or copies of all personal and business telephone

4   records and all credit card checking account and PayPal

5   statements to the U.S. probation officer.

6        Your condition of supervised release with respect to

7   transactions with check cashing services will be identical as

8   with respect to Mr. Springer.  And the provision with respect

9   to disclosure of e-mail accounts, screen names, passwords, and

10  remote monitoring and prohibition on access of on-line services

11  in false names or aliases and the prohibition of any use of any

12  method of encryption and the prohibition of altering or

13  destroying records of computer use will be identical as with

14  the conditions applicable to Mr. Springer.

15       It is further ordered that you are assessed a $300 special

16  monetary assessment, $100 per count of conviction, to be paid

17  immediately to the U.S. Court Clerk for the Northern District

18  of Oklahoma.

19       You do have a right of appeal of this judgment and

20  sentence.  Any such appeal must be filed within 14 days of the

21  date judgment is entered.  If you wish to appeal and cannot

22  afford an appeal, there are forms available for your use and

23  the clerk is ready to work with you on perfecting your appeal.

24  As is the case with Mr. Springer, I urge you to move without

25  delay to secure a transcript of the record at public expense.

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

551

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 71 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 552

461

1     Mr. Springer and Mr. Stilley, you may be seated for the

2   moment.

3         MR. SPRINGER:  May I ask one question about

4   restitution?

5         THE COURT:  Surely.

6         MR. SPRINGER:  When I cooperate with the IRS to file

7   the back tax returns, is it the Court's order that the

8   restitution amount would be credited towards the amount that

9   would be shown on those returns?

10        THE COURT:  That's an accounting matter that's

11  probably more complicated than we need to get into.

12        MR. SPRINGER:  Thank you, Your Honor.

13        THE COURT:  You bet.  I now inquire as to the

14  government's position with respect to remand.

15        MR. O'REILLY:  Each defendant should be remanded,

16  Your Honor, under 3143.

17        THE COURT:  Mr. Springer, I'll be happy to hear

18  anything you have to say to the Court on the subject of remand

19  to custody.

20        MR. SPRINGER:  First of all, Your Honor, under 3143,

21  I don't think anybody is saying I'm a flight risk.  I've been

22  released on bond for over a year now.  I've been under some

23  very strict bond conditions and I have kept them, as the

24  probation report states.

25      The only real question under 3143 is whether I raise

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

552

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 72 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 553

462

1   issues that, if decided in my favor, would result in either a

2   reversal, a reduction, or exoneration of the charges.  In that

3   regard, the issues that I spelled out a moment ago with regard

4   to my claims that the Tenth Circuit said on August 31, 2009,

5   that I raised difficult issues that they weren't going to

6   address in that decision because of the failure to pay penalty

7   and interest penalty instead of failure to file penalty, and --

8   if I may, Your Honor.

9       In relation to whether I raised difficult issues, I would

10  direct the Court's attention to -- which is, I believe, under

11  3143(b)(2), it's about law or facts, 3143(b)(1)(B) and (A) and

12  (B).  And under the decision that the Tenth Circuit published

13  in 2007, they stated in Mr. Chisum's case, because he was not

14  charged, they said, "The PRA precludes the imposition of any

15  penalty against a person for 'failing to comply with a

16  collection of information' if either it 'does not display a

17  valid control number' or the agency fails to alert the person

18  that he or she 'is not required to respond to the collection of

19  information unless it displays a valid control number.'  A

20  3512(a) defense may be raised at any time.  Tax forms are

21  covered by the PRA.  See Dole v. United Steelworkers, 108

22  L.Ed.2d 23 (1990), Supreme Court.  Mr. Chisum contends that

23  'since there was no proof that Form 1040 was a lawful form

24  under the PRA, the trial court erred in failing to grant his

25  request to dismiss the indictment.'  But the PRA protects a

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

553

1  person only 'for failing to file information.  It does not

2  protect one who files information which is false.'"

3       And the Tenth Circuit also said in the U.S. v. Collins

4  decision in 1990, which was written by Justice Baldock, and I

5  specifically refer to footnote 13 where it says, "In United

6  States v. Weiss, the Second Circuit held that the Paperwork

7  Reduction Act did not preclude prosecution for filing false

8  Medicare and Medicaid claims, despite the fact that the forms

9  in question did not contain OMB control numbers."  Which is not

10 my issue.  "Distinguishing Smith, where defendants were

11 prosecuted for failure to file a Plan of Operations with the

12 Forest Service, the Second Circuit reasoned that the Act 'only

13 protects a person from penalties for failing to file

14 information.  It does not protect one who files information

15 which is false.'"

16      They went on to say, "We recognize that because defendant

17 was charged with tax evasion and not failure to file tax

18 returns, he technically was not being prosecuted for failure to

19 provide information.  Had defendant's tax evasion been

20 effectuated through the filing of falsified tax returns, Weiss

21 would dictate that no Paperwork Reduction Act defense would be

22 available to him.  But because the provision of information in

23 1040 forms is inexorably linked to the statutory requirement to

24 pay taxes, and defendant failed to file such forms, the

25 Paperwork Reduction Act was applicable to such conduct."

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

554

464

 1      In United States v. Dawes, which the Court cited on a

 2 January 2010 order, which is laying out -- I'm laying out in

 3 the record the basis by which I believe I have an excellent

 4 chance of having the Tenth Circuit rule on the merits of my

 5 claims and rule in my favor is pointing to page 1193 where the

 6 Tenth Circuit said, "We would be inclined to follow the general

 7 analysis" --

 8          THE COURT:  Excuse me, Mr. Springer.  We covered all

 9 of this at trial.  I am emphatically not persuaded by your

10 arguments under the Paperwork Reduction Act.  That will

11 certainly not inform my judgment as to whether you should be

12 remanded under the criteria set forth in Section 3143(b)(1)(A)

13 and (B).

14          MR. SPRINGER:  Okay, Your Honor.  I also believe that

15 the Tenth Circuit will overturn the Court's direction to the

16 jury during my testimony about the Paperwork Reduction Act

17 because of the good faith defense position that I presented.

18 Today, the Supreme Court is meeting on my writ of mandamus

19 that's presented at the Supreme Court on its second conference,

20 which I anticipate at some point in time the Tenth Circuit is

21 going to render a decision on that case, even though it's in

22 the Supreme Court, regardless of what the Supreme Court does.

23 Because on December 4th, the Tenth Circuit said they would

24 address the issues on that when I got to the Tenth Circuit on

25 appeal.  I also have --

465

1        THE COURT:  Excuse me just a moment.  Mr. O'Reilly.

2        MR. O'REILLY:  With the Court's indulgence, may I

3   take a short break?

4        THE COURT:  We'll take a ten-minute recess.

5        MR. SPRINGER:  Thank you, Your Honor.

6      (RECESS HAD)

7        THE COURT:  Mr. Springer, I'll hear any concluding

8   remarks you have on the subject of remand.

9        MR. SPRINGER:  Your Honor, if I can simply just have

10   a few days to get all of my affairs in order, to get the

11   documents filed that you suggested earlier about the

12   transcripts done, spend a couple of days with my family, say my

13   goodbyes, and then I will report to wherever you tell me, as

14   I've done every time you've ordered me to do something.

15        THE COURT:  Thank you, Mr. Springer.

16        MR. SPRINGER:  Thank you.

17        THE COURT:  Mr. Stilley.

18        MR. STILLEY:  Your Honor, I would certainly adopt but

19   not repeat -- waste time repeating what Mr. Springer has said.

20   There is a matter that I feel that I should state in fairness

21   to the Court and that is that I do take objection to an upward

22   departure without previous notice the reasons and the

23   possibility of that upward departure.

24      And I would also say that my principal concern, I think

25   reflected in the pleadings, is that I be heard in a reasonable

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

556

466

```
 1  time and in a reasonable manner, which is the fundamental

 2  essence of due process.  I'm not persuaded that I can do that

 3  reasonably in jail and certainly not to the level that I could

 4  at home with all the computer, printers, and other things, the

 5  Internet, that I would have access to.

 6      And I would most respectfully request that I be allowed,

 7  first, release pending appeal.  If that's not done, that I be

 8  given time to surrender that would extend past the preparation

 9  and filing of the reply.  And if that's not allowed, then

10  whatever the Court would grant as far as giving time to self-

11  surrender.

12          THE COURT:  Thank you.

13          MR. STILLEY:  Certainly.

14          THE COURT:  On the matter initially raised by

15  Mr. Stilley, the above guideline sentence is as a result of a

16  variance and not a departure.  The United States Supreme Court

17  has made it clear and in so doing effectively overruled the

18  Tenth Circuit's Atencio decision and has made clear that the

19  Court's application of the Section 3553 factors, even though it

20  may result in an above-guideline sentence, is a variance as to

21  which notice is not required, as distinguished from the notice

22  requirements that do apply to a guidelines departure.  So that

23  objection is overruled.

24      On the issue of remand, let me first say, gentlemen, that

25  I am fully cognizant of the seriousness of this question,
```

467

 1   especially as it applies in your situation having invoked your

 2   right, as you have, and it's an important right, to represent

 3   yourselves.  And I am fully cognizant of the fact that

 4   incarceration may well have some impact on your ability to

 5   proceed representing yourselves.  To the extent that the Court

 6   can within the bounds of the law and common sense ameliorate

 7   that, then I will be happy to consider anything that the Court

 8   might properly address in that regard.

 9        My remand decision, however, is controlled by the relevant

10   subsections of 18 United States Code, Section 3143.  And it is

11   my conclusion that there is no basis, statutory or otherwise,

12   upon which to continue the defendants on bond.  And that

13   finding, I must say, is made both with respect to Section

14   3143(b)(1)(A) and Section 3143(b)(1)(B).

15        My decision not to remand the defendants after trial was

16   not an easy one.  And as might be suggested by the conditions

17   that I imposed at that time, it took a little work, I guess is

18   perhaps one way to say it, it took a little work for me to

19   arrive at the conclusion that the defendants should not be

20   remanded immediately after the verdict was in last fall.  But I

21   was able to craft conditions that gave me the satisfaction,

22   albeit perhaps barely, that the statutory criteria for

23   continuing the defendants on bond with the matter in that

24   posture could be satisfied and were satisfied.

25        That is not the case today.  I am no longer satisfied,

Case 4:09-cr-00043-SPF   Document 401   Filed 07/12/10   Page 78 of 79
Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 559

468

 1   much less by clear and convincing evidence, that the defendants
 2   are not flight risks.  We are now at a day on which the reality
 3   of the defendants' situations has become more -- certainly more
 4   unmistakably apparent and more unavoidable than it has been at
 5   any stage of these proceedings.
 6       I had to work hard, as I have said, to avoid remand at the
 7   conclusion of the trial.  I no longer have the comfort level,
 8   as I have said, much less by clear and convincing evidence,
 9   that the defendants are not flight risks at this point.
10       In this regard, I must say that I'm also influenced by my
11   evaluation of your entire criminal history and your entire long
12   history of lawless conduct.  You managed to keep yourself, in
13   the vernacular, between the fences during the pendency of these
14   proceedings.  And I think you did so because your balancing of
15   the benefits and disadvantages of doing that convinced you that
16   it was likely to your benefit to continue to comply with the
17   Court's requirements to the extent necessary to remain free.
18   I'm no longer satisfied that you would calculate the matter in
19   the same way.  And I do not find, much less by clear and
20   convincing evidence, that you are not flight risks.
21       With respect to Section 3143(b)(1)(B), I do not find that
22   there is any substantial question of law or fact likely to
23   result in reversal or any of the other relief referred to in
24   Section (b)(1)(B).  And bear in mind, gentlemen, that those are
25   conjunctive requirements.  (b)(1)(A) and (b)(1)(B) are

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

559

1   conjunctive, not alternative.

2        The defendants are both remanded to the custody of the

3   marshal to begin serving their sentences immediately.

4        Court will be in recess.  And I will direct that the

5   exhibits be withdrawn.  Court will be in recess.

6        (COURT ADJOURNED)

7                      REPORTER'S CERTIFICATE

8

9        I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND

10  CORRECT TRANSCRIPT OF PROCEEDINGS:

11

12                      S/Tracy Washbourne
                        Tracy Washbourne, RDR, CRR
13                      United States Court Reporter
                        Western District of Oklahoma
14

15

16

17

18

19

20

21

22

23

24

25

*Tracy Washbourne, RDR, CRR*
United States Court Reporter
U.S. Courthouse, 200 N.W. 4th St.
Oklahoma City, OK 73102 * 405.609.5505

560

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,    )
                              )
    Plaintiff-respondent,    )
                              )
-vs-                           )    Case No. 09-cr-0043-2-SPF
                              )
OSCAR AMOS STILLEY,     )
                              )
    Defendant-movant.     )

## ORDER
### (ruling on motions at doc. nos. 701, 702, 705, 707)

Defendant Oscar Stilley moves the court to vacate his sentence pursuant to 28 U.S.C. § 2255. Doc. no. 701. In response, the government moves to dismiss Stilley's motion. Doc. no. 705. Stilley filed a response to the government's motion to dismiss. Doc. no. 713. The government did not file a reply brief.

Stilley's second motion seeks a stay of these proceedings pending disclosure of his co-defendant's (Lindsey Springer's) contact information, which Stilley asks the government to provide. Doc. no. 702. This motion asks for an order allowing Stilley and Springer to collaborate. It also asks the court to specify by what legal authority it continues to preside over this case. This motion seeks other relief as well. In response, the government moves to dismiss Stilley's second motion. Doc. no. 707. Stilley filed a response to the government's motion to dismiss. Doc. no. 714. The government did not file a reply brief.

<u>Doc. nos. 701, 705</u>

Stilley and co-defendant Springer appealed their convictions and sentences. Their convictions and sentences were affirmed in <u>United States v. Springer et al.</u>, 444 Fed. Appx. 256 (10th Cir. 2011). As to Stilley, mandate issued on December 20, 2011. Doc. no. 463. Stilley did not petition for a writ of certiorari. Accordingly, Stilley's judgment of conviction became final on December 20, 2011. Stilley's motion to vacate his sentence was not filed until September 1, 2021.

Section 2255 includes a one-year statute of limitations. 28 U.S.C. § 2255(f). Stilley devotes ten pages of his motion (doc. no. 701, pp. 70-80) to arguments intended to show the one-year limitations period should not bar his request for relief under § 2255.[1]

Stilley argues the Department of Justice has participated in a years' long scorched earth campaign against him, ruining his ability to defend the criminal charges against him. He argues the court kept him from filing an appeal by delaying the production of trial transcripts. He argues the clerk of the court of appeals never called anything he filed an opening appellate brief, and that he was required to adopt his co-defendant's appellate brief to avoid waiver. In support of arguments that he has been denied "the keys to the courthouse" all these years, Stilley relies on matters pertinent to <u>Stilley v. Garland, et al.</u>, Case No. 21-60022, pending in the Fifth Circuit Court of Appeals. These and other arguments appear to be aimed at showing that Stilley has not yet had an adequate opportunity to file a proper appeal and that the conduct of the government, as well as the court, entitles him to a tolling of the

---

[1] All of Stilley's arguments related to timeliness have been considered, including those not addressed in this order.

limitations period.  In addition, Stilley asserts actual innocence.  He argues the government never believed he was guilty of the crimes of conviction and that he is innocent of all counts of conviction.  Stilley also argues that § 2255's one-year limitations period is a scam intended to cheat innocent people out of due process and that he should not be bound by it.

Stilley's arguments are rejected.  Stilley pursued a direct appeal and lost, and his conviction and sentence became final almost ten years ago.  (December 20, 2011, when conviction became final, to September 1, 2021, when motion to vacate filed = almost ten years.)  A petitioner must diligently pursue his federal habeas claims; furthermore, a claim of insufficient access to relevant law or legal materials (such as the transcripts Stilley argues were delayed) is not enough to support equitable tolling of the limitations period.  *See* Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (one-year period is subject to equitable tolling only in rare and exceptional circumstances; claim of insufficient access to the law is not enough to support tolling); Porter v. Allbaugh, 672 Fed. Appx. 851, 857 (10th Cir. 2016) (difficulty in obtaining trial transcripts is insufficient to constitute extraordinary circumstances, describing holding in United States v. Williams, 219 Fed. Appx. 778, 779 (10th Cir. 2007).[2]  Stilley has not shown extraordinary circumstances as a basis for tolling.  As for Stilley's claim of actual innocence, this type of claim is only a basis for tolling if founded on new evidence.  Foust v. Jones, 261 Fed. Appx. 131, 133 (10th Cir. 2008),[3] citing Sellers v. Ward, 135 F.3d 1333, 1338-39 (10th Cir. 1998).  Stilley identifies no new evidence to support an actual innocence claim.  Accordingly, this

---

[2] Porter and Williams are unpublished.  These and other unpublished decisions are cited for their persuasive value only.

[3] Foust is unpublished.

argument is rejected.  The court also rejects Stilley's argument that § 2255's one-year limitations period is a scam and should not apply to him.

Stilley's conviction and sentence became final on December 20, 2011, when the mandate issued on the court of appeals' decision affirming Stilley's conviction and sentence.  That triggered the one-year limitations period, which expired on December 20, 2012.  Stilley's § 2255 motion was not filed until September 1, 2021, almost nine years late.  (December 20, 2012, when one-year limitations period expired, to September 1, 2021, when motion to vacate filed = almost nine years.)  No basis for tolling the limitations period has been shown.  Accordingly, the court will grant the government's motion to dismiss Stilley's § 2255 motion as untimely.

<u>Doc. Nos. 702, 707</u>

Stilley's second motion seeks a stay in order to obtain Springer's contact information, so that the two of them may collaborate regarding the prosecution of Stilley's § 2255 motion.  The court has now determined that Stilley's § 2255 motion is untimely and should be dismissed.  Consequently, § 2255 cannot provide even an arguable premise for obtaining Springer's contact information or for staying this matter to permit these co-defendants to collaborate.  Other than this motion's connection to Stilley's § 2255 motion, no statutory basis for this post-judgment motion has been identified.  The court concludes it has no jurisdiction over Stilley's second motion and that the government's motion to dismiss it should be granted.  *See generally*, <u>United States v. Patterson</u>, 253 Fed. Appx. 748, 750 (10th Cir. 2007) (district court does not have inherent authority to modify a previously imposed sentence and may do so only pursuant to statutory authorization; where motion was

4

not a motion to vacate under § 2255, district court lacked jurisdiction to hear the motion).[4]

Conclusion

After careful consideration, the government's motions to dismiss are **GRANTED** (doc. nos. 705, 707), and Stilley's motions are **DISMISSED** (doc. nos. 701, 702).  A certificate of appealability is **DENIED**.

IT IS SO ORDERED this 4th day of November, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p170 (Stilley).docx

---

[4] Patterson is unpublished.

F I L E D

Nov 04 2021

Mark C. McCartt, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-respondent, | ) | |
| | ) | |
| -vs- | ) | Case No. 09-cr-0043-2-SPF |
| | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendant-movant. | ) | |

## **JUDGMENT**

Judgment is entered in accordance with the court's order of today's date dismissing as untimely defendant Oscar Amos Stilley's motion seeking to vacate his sentence pursuant to 28 U.S.C. § 2255.

Dated this 4th day of November, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p171 (Stilley).docx

FILED
United States Court of Appeals
Tenth Circuit

June 6, 2022

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

OSCAR AMOS STILLEY,

     Defendant - Appellant.

No. 22-5000
(D.C. Nos. 4:09-CR-00043-SPF-2 &
4:21-CV-00361-SPF-CDL)
(N.D. Okla.)

_____

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

     Oscar Stilley was convicted by a jury in the Northern District of Oklahoma of one

count of conspiracy to defraud the United States and two counts of aiding and abetting

tax evasion. He appealed his conviction and we affirmed in an order consolidating related

cases. *See United States v. Springer*, 444 F. App'x 256 (10th Cir. 2011). His conviction

became final on December 20, 2011, when the deadline to file a writ of certiorari had

passed.

     Almost ten years later, on September 1, 2021, Stilley filed a petition in the district

court under 28 U.S.C. § 2255. His petition raised thirteen claims for relief. The district

_____

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court dismissed the § 2255 petition as untimely, rejecting his proposed excuses based on equitable tolling, actual innocence, and the inapplicability of § 2255's one-year limitations period. The district court also denied Stilley's request for a certificate of appealability ("COA"), a prerequisite to appealing the merits of a § 2255 petition. Stilley appealed the dismissal of his petition and now seeks a COA from our court.

A COA may be issued only if the appellant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, the appellant must establish "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted).

The district court noted that Stilley was nearly nine years too late in filing his § 2255 petition. The district court applied our circuit's case law and held that Stilley's § 2255 petition fell outside the one-year limitations period under § 2255(f), and that Stilley hadn't offered a persuasive reason to toll the limitations period.

At bottom, Stilley must have diligently pursued his federal habeas claim but didn't. His brief points to no errors in the district court's statute-of-limitations or tolling analyses. Even if we were to accept Stilley's representations about, for example, the government's conduct with respect to his previous direct appeal, Stilley's brief still fails to explain why he waited almost nine years after the limitations period expired to file his petition. Thus, having reviewed the record before us, we find that reasonable jurists

2

wouldn't disagree with the district court's thorough order. We therefore deny a COA and dismiss the appeal.[1]

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[1] On May 23, 2022, Stilley filed a document styled as a "Motion to Recall the Mandate in 10-5057." As we understand the filing, Stilley is requesting that we withdraw the mandate from his previously affirmed criminal conviction. We decline to consider this motion as it is unrelated to the COA issue in this case.

3

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

June 06, 2022

Oscar A. Stilley
10600 North Highway 59
Cedarville, AR 72932

**RE:** **22-5000, United States v. Stilley**
Dist/Ag docket: 4:09-CR-00043-SPF-2, 4:21-CV-00361-SPF-CDL

Dear Appellant:

Enclosed is a copy the court's final order issued today in this matter.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     Katie Bagley
        Gregory Victor Davis

CMW/mlb

**Lynn Tiefenthaler**

| | |
|---|---|
| **From:** | ca10_cmecf_notify@ca10.uscourts.gov |
| **Sent:** | Monday, June 6, 2022 9:14 AM |
| **To:** | CM-ECF Intake OKND |
| **Subject:** | 22-5000 United States v. Stilley "Case termination for COA" (4:09-CR-00043-SPF-2, Lead: 4:21-CV-00361-SPF-CDL) |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

**Tenth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was entered on 06/06/2022 at 8:04:27 AM Mountain Daylight Time and filed on 06/06/2022

| | |
|---|---|
| **Case Name:** | United States v. Stilley |
| **Case Number:** | 22-5000 |
| **Document(s):** | Document(s) |

**Docket Text:**
[10917850] COA Denial; Terminated on the merits after submissions without oral hearing; Written, signed, unpublished. Judges Phillips (authoring), Murphy and Eid. [22-5000]

**Notice will be electronically mailed to:**

Ms. Katie Bagley: katie.s.bagley@usdoj.gov, cateps.taxcriminal@usdoj.gov
Mr. Gregory Victor Davis: Gregory.V.Davis@usdoj.gov, cateps.taxcriminal@usdoj.gov, joseph.b.syverson@usdoj.gov
Oscar A. Stilley: oscarstilley@gmail.com

The following document(s) are associated with this transaction:
**Document Description:** COA Denial
**Original Filename:** 22-5000.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=06/06/2022] [FileNumber=10917850-0]
[e1f6db07834fb595106d8f7703c61b1a12a9f171a96566e839788dde1821482ed892747b9f4fff708f971de500899f0568c6
8627aa15bffc5c422f1e877fec81]]

**Document Description:** COA Order Cover Letter
**Original Filename:** /opt/ACECF/live/forms/MichaelBarajas_225000_10917850_135.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1104938855 [Date=06/06/2022] [FileNumber=10917850-1]
[d0894d5106c734694d5e721b5570b69749fec97554c37a60a134baed4ae4e746734b1e72f2094cff31562dbab2d0413345

1

3046d22a2e9401f489dc1d83aebade]]

**Recipients:**

- Ms. Katie Bagley
- Mr. Gregory Victor Davis
- Oscar A. Stilley



# FILED

AUG 2 4 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| Prob 22 (12/2018) | | DOCKET NUMBER (Tran Court) |
|---|---|---|
| **TRANSFER OF JURISDICTION** | | CR-043-002-SPF |
| | | **DOCKET NUMBER (Rec Court)** |
| | | CR-22-357-001-F |

| NAME AND ADDRESS OF PROBATIONER RELEASEE: | DISTRICT<br>Northern District of Oklahoma | DIVISION<br>United States Probation Office |
|---|---|---|
| OSCAR AMOS STILLEY | NAME OF SENTENCING JUDGE<br><br>The Honorable Stephen P. Friot | |

| | DATES OF:<br>☐  PROBATION<br>☒  SUPERVISED RELEASE | From Date<br>8/10/2022 | To Date<br>8/9/2025 |
|---|---|---|---|

**OFFENSE**

| 18 U.S.C. § 371 | Conspiracy to Defraud the United States |
|---|---|
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting |

**PART 1 - ORDER TRANSFERRING JURISDICTION**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

   IT IS HEREBY ORDERED that pursuant to 18 U.S.C. § 3605 the jurisdiction of the probationer releasee named above be transferred with the records of the Court to the United States District Court for the WESTERN DISTRICT OF OKLAHOMA upon that Court's order of acceptance of jurisdiction.  This Court hereby expressly consents that the period of probation release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

| ___August 24, 2022___ | _Stephen P. Friot_ |
|---|---|
| Date | Stephen P. Friot, United States District Judge |

\* This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

   IT IS HEREBY ORDERED that jurisdiction over the above-named probationer releasee be accepted and assumed by this Court from and after the entry of this order.

| ___August 24, 2022___ | _____ |
|---|---|
| Effective Date | United States District Judge |

GARN,LC−1,RELEASED,TRANSF,VJASSIGN

# U.S. District Court
## U.S. District Court for the Northern District of Oklahoma (Tulsa)
## CRIMINAL DOCKET FOR CASE #: <u>4:09−cr−00043−SPF−2</u>

Case title: USA v. Springer et al

Related Case:  4:21−cv−00361−SPF−CDL

Date Filed: 03/10/2009

Date Terminated: 04/28/2010

Assigned to: Judge Stephen P Friot

Appeals court case numbers: '10−5057 (#348)' '10th Circuit', 22−5000 (#725) 10th Circuit

**<u>Defendant (2)</u>**

| | | |
|---|---|---|
| **Oscar Amos Stilley**<br>*TERMINATED: 04/28/2010* | represented by | **Oscar Amos Stilley**<br>#10579−062<br>Oscar A. Stilley<br>Arkansas<br>10600 N Highway 59<br>Cedarville, AR 72932<br>479−384−2303<br>Email: <u>oscarstilley@gmail.com</u><br>PRO SE |
| | | **Charles Robert Burton , IV**<br>Burton Law Firm PC<br>15 E 5TH ST STE 4022<br>TULSA, OK 74103−4347<br>918−607−4891<br>Email: <u>RobtBurton@aol.com</u><br>*TERMINATED: 04/27/2010*<br>*LEAD ATTORNEY*<br>*Designation: Public Defender or Community Defender Appointment* |
| | | **Terry Lee Weber**<br>Weber & Assoc PC<br>320 S BOSTON STE 825<br>TULSA, OK 74103<br>918−582−1910<br>Fax: 918−582−2015<br>Email: <u>Terry.Weber@morelaw.com</u><br>*TERMINATED: 04/03/2009*<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA or Other Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18 USC 371: Conspiracy to Defraud the United States (1) | BOP 60 months; SR 3 years; Restitution $776,280; SMA $100 |
| 26 USC 7201: Tax Evasion and 18 USC 2 (3–4) | BOP 60 months consecutive to Ct 1 and each other; SR 3 years; SMA $100 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| **USA** | represented by | **Charles Anthony O'Reilly** |
|---|---|---|

DOJ–Tax
150 M Street N.E.
Room 2–404
Washington, DC 20002
202–616–0115
Fax: 202–514–9623
Email: charles.a.o'reilly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney (local,state,federal)*

**Jeffrey Andrew Gallant**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119–1013
918–382–2715
Fax: 918–560–7938
Email: Jeff.Gallant@usdoj.gov
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*
*(local,state,federal)*

**Kenneth P Snoke**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA, OK 74119−1013
918−382−2700
Fax: 918−560−7946
Email: ken.snoke@usdoj.gov
*TERMINATED: 06/08/2010*
*LEAD ATTORNEY*
*Designation: Government Attorney*
*(local,state,federal)*

**Vani Singhal**
U.S. Attorney's Office
110 W. 7th Street
Suite 300
Tulsa, OK 74119
918−382−2700
Email: vani.singhal@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*
*(local,state,federal)*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/10/2009 | 1 | | DEFENDANT INFORMATION SHEET(S) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 2 | | INDICTMENT by USA as to Lindsey Kent Springer (1) count(s) 1, 2, 3−4, 5−6, Oscar Amos Stilley (2) count(s) 1, 3−4 (pll, Dpty Clk) (Entered: 03/10/2009) |
| 03/10/2009 | 4 | | SUMMONS Issued by Court Clerk as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 665 | | SEALED UNREDACTED VERSION of Dkt # 2 per Local Rule 5.3(b) (pll, Dpty Clk) (Entered: 01/11/2019) Contains One or More Restricted PDFs |
| 03/18/2009 | 5 | | MOTION for Electronic Access by Lindsey Kent Springer as to Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 9 | | MINUTE ORDER *by Judge Payne, due to Court conflict,* recusing Judge James H Payne, *this case is hereby returned to the Court Clerk for further reassignment,* Court Clerk reassigned to case as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 14 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Initial Appearance held on 3/18/2009, Arraignment held on 3/18/2009, |

| | | |
|---|---|---|
| | | appointing CJA attorney Terry Lee Weber for Oscar Amos Stilley, setting/resetting bond as to Oscar Amos Stilley (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 15 | ORDER by Magistrate Judge Paul J Cleary *(for purposes of initial appearance only)*, appointing CJA attorney as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 16 | ORDER by Magistrate Judge Paul J Cleary, setting conditions of release as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 17 | BOND approved by Magistrate Judge Paul J Cleary as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/19/2009 | 18 | ORDER by Magistrate Judge Paul J Cleary *directing defendants regarding representation*, setting/resetting deadline(s)/hearing(s): *(copy of Order mailed to both defendants on 3/19/09)* ( Miscellaneous Deadline set for 3/30/2009) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/19/2009) |
| 03/23/2009 | 19 | RESPONSE (Re: 8 MOTION for Bill of Particulars, 5 MOTION for Electronic Access, 7 Brief in Support of Motion, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 03/23/2009) |
| 03/24/2009 | 20 | MOTION to Withdraw Attorney(s) *R. Scott Williams* by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/24/2009 | 21 | MOTION for Hearing (Re: 20 MOTION to Withdraw Attorney(s) ) by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to remove reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/25/2009 | | NOTICE of Docket Entry Modification; Error: During e–filing the attorney was prompted to select a case, all defendants were selected; Correction: Edited docket text to remove Oscar Stilley as these pleadings did not name him (Re: 20 MOTION to Withdraw Attorney(s), 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 03/25/2009) |
| 03/25/2009 | 22 | MINUTE ORDER by Magistrate Judge Paul J Cleary, setting/resetting deadline(s)/hearing(s): ( Miscellaneous Hearing set for 3/30/2009 at 02:30 PM before Magistrate Judge Paul J Cleary) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/25/2009) |
| 03/30/2009 | 23 | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Miscellaneous Hearing held on 3/30/2009 *re Representation; Defendants Waive Counsel*, ruling on motion(s)/document(s): #5 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 5 MOTION for Electronic Access ) (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/31/2009) |
| 03/31/2009 | 24 | MINUTE ORDER *by Court Clerk at the direction of Chief Judge Claire V. Eagan*, reassigning case to Judge Stephen P Friot. Court Clerk no longer assigned to case, changing case number to 09–CR–43–SPF as to Lindsey Kent |

| | | | |
|---|---|---|---|
| | | | Springer, Oscar Amos Stilley (a–hc, Dpty Clk) (Entered: 03/31/2009) |
| 04/01/2009 | 25 | | MOTION for Protective Order by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/01/2009) |
| 04/02/2009 | 26 | | ORDER by Judge Stephen P Friot *(Protective Order)*, ruling on motion(s)/document(s): #25 Granted (Re: 25 MOTION for Protective Order ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/02/2009) |
| 04/03/2009 | 27 | | ORDER by Magistrate Judge Paul J Cleary *Appointing Standby Counsel*, adding attorney Robert Scott Williams for Lindsey Kent Springer, Charles Robert Burton, IV for Oscar Amos Stilley, ruling on motion(s)/document(s): #20 and #21 moot (Re: 20 MOTION to Withdraw Attorney(s) *R. Scott Williams*, 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 04/03/2009) |
| 04/06/2009 | 28 | | MOTION to Permit Oscar Stilley to File by CM/ECF by Oscar Amos Stilley (s–srb, Dpty Clk) (Entered: 04/07/2009) |
| 04/07/2009 | 29 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot, Scheduling Conference set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot) (Re: 8 MOTION for Bill of Particulars, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/07/2009) |
| 04/08/2009 | 31 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #28 Granted (Re: 28 MOTION to Permit Oscar Stilley to File by CM/ECF ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/08/2009) |
| 04/10/2009 | 33 | | MOTION for Bill of Particulars by Oscar Amos Stilley as to Lindsey Kent Springer, Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/10/2009) |
| 04/10/2009 | 34 | | ORDER by Judge Stephen P Friot *: setting Motion for hearing on 4/22/09* (Re: 33 MOTION for Bill of Particulars, 29 Order,,,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/10/2009) |
| 04/15/2009 | 39 | | MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 04/15/2009) |
| 04/15/2009 | 40 | | NOTICE NOTICE RE GOVERNMENT MOTION FOR LIMITED UNSEALING OF SEARCH WARRANT AFFIDAVIT AND MATERIALS FROM CASE 03–CR–043–CVE (Re: 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/15/2009) |
| 04/16/2009 | 41 | | ORDER by Judge Stephen P Friot *setting Motion for Hearing on 4/22/09* (Re: 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03–CR–055–CVE ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/16/2009) |

| | | | |
|---|---|---|---|
| 04/16/2009 | 42 | | RESPONSE in Opposition to Motion *Consolidated* (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/16/2009) |
| 04/22/2009 | 43 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 4/22/2009, Scheduling Conference held on 4/22/2009, ruling on motion(s)/document(s): #30 Granted, #6, 8, 33 Denied, #36, 37, 39 Granted in Part, Denied in part, taking motion(s) under advisement, setting/resetting deadline(s)/hearing(s): ( Motions due by 6/1/2009, Responses due by 6/15/2009, Motion Hearing set for 7/9/2009 at 09:00 AM before Judge Stephen P Friot, Jury Instructions, Voir Dire & Trial Briefs due by 8/3/2009, Pretrial Conference set for 10/21/2009 at 10:00 AM before Judge Stephen P Friot, Jury Trial set for 10/26/2009 at 09:30 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 04/22/2009) |
| 04/29/2009 | 46 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Responses due by 5/11/2009) (Re: 44 Reply to Response to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 5/1/2009 to seal PDF, as ENTERED IN ERROR; duplicate entry see Doc # 45 for correct entry (tjc, Dpty Clk). (Entered: 04/30/2009) Contains One or More Restricted PDFs |
| 05/01/2009 | | | NOTICE of Docket Entry Modification; Error: Duplicate entry, ENTERED IN ERROR; Correction: Sealed PDF as this was a duplicate entry; see Doc # 45 for correct entry (Re: 46 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 05/01/2009) |
| 05/08/2009 | 49 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *July 9, 2009, Hearing on Motion for Franks Issue and/or Suppress* (Re: 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), |

| | | | |
|---|---|---|---|
| | | | Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 05/08/2009) |
| 05/12/2009 | 50 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #49 Granted in Part, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 49 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 05/12/2009) |
| 05/15/2009 | 67 | | MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment* (Re: 2 Indictment ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove defendant Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 68 | | BRIEF in Support of Motion *to dismiss for fraud and violation of the 5th Amendment* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 69 | | JOINDER *of motions filed by Lindsey Springer* (in [51−66] Generally dispositive filed on May 15, 2009) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/18/2009 | | | NOTICE of Docket Entry Modification; Error: These documents were filed as to both defendants in error; Correction: Edited docket text and removed Lindsey Kent Springer from text (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), 68 Brief in Support of Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 05/18/2009) |
| 05/26/2009 | 70 | | ORDER by Judge Stephen P Friot *vacating the stay entered by the court on 4/22/2009 & directing government to turn over materials to defendant Stilley*, ruling on motion(s)/document(s): #35 denied (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 42 Response in Opposition to Motion,, 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting |

| | | | |
|---|---|---|---|
| | | | Deadline(s)/Hearing(s), 44 Reply to Response to Motion, 48 Surreply to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 05/26/2009) |
| 05/29/2009 | 71 | | RESPONSE in Opposition to Motion *Fifty–one through Sixty–seven* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 69 JOINDER (in [51–66] Generally dispositive filed on May 15, 2009), 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/29/2009) |
| 06/01/2009 | 72 | | MOTION to Suppress *Grand Jury testimony and evidence* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/01/2009 | 73 | | BRIEF in Support of Motion (Re: 72 MOTION to Suppress *Grand Jury testimony and evidence* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/02/2009 | 78 | | SEALED MOTION (O'Reilly, Charles) (Entered: 06/02/2009) Contains One or More Restricted PDFs |
| 06/15/2009 | 80 | | RESPONSE in Opposition to Motion *Consolidated* (Re: 77 MOTION for Hearing *(submitted as part of Doc # 74 )*, 72 MOTION to Suppress *Grand Jury testimony and evidence*, 74 MOTION to Suppress ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/15/2009) |
| 06/15/2009 | 83 | | MOTION to Accelerate/Extend/Reset Hearings/Deadlines for filing of motion for bill of particulars by Oscar Amos Stilley (Stilley, Oscar) Modified on 6/16/2009; this is a two–event document and combined documents are not allowed with CM/ECF; also changed text to reflect correct motion event (sac, Dpty Clk). (Entered: 06/15/2009) |
| 06/16/2009 | 84 | | MINUTE ORDER by Court Clerk, Having reviewed the docket entry and/or PDF for Dkt # 83, the Court has determined that *this document contains two events and combined documents are not allowed with CM/ECF*. Attorney *Oscar Stilley* is hereby directed to re–file *his Adoption, using that event*. (Re: 83 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/16/2009) |
| 06/17/2009 | 85 | | MINUTE ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot), ruling on motion(s)/document(s): #83 Denied (Re: 82 |

| | | | |
|---|---|---|---|
| | | | MOTION for Bill of Particulars, 83 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/17/2009) |
| 06/18/2009 | 87 | | ORDER by Judge Stephen P Friot , *directing Sur–Reply*, ruling on motion(s)/document(s): #86 Denied (Re: 86 MOTION to Strike Document(s), 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 69 JOINDER *of motions filed by Lindsey Springer* (in [51–66] Generally dispositive filed on May 15, 2009), 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/18/2009) |
| 06/23/2009 | 91 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #90 Granted (Re: 90 MOTION for Leave to Exceed Page Limitation, 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/23/2009) |
| 06/23/2009 | 92 | | JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/23/2009) |
| 06/25/2009 | 93 | | SURREPLY (Re: 51 First MOTION to Dismiss, 53 Second MOTION to Dismiss, 55 Third MOTION to Dismiss, 57 Fourth MOTION to Dismiss, 59 Fifth MOTION to Dismiss, 61 Sixth MOTION to Dismiss, 63 Seventh MOTION to Dismiss, 65 Eighth MOTION to Dismiss) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 6/29/2009 to change text to reflect correct event and to change links to reflect base motions (sac, Dpty Clk). (Entered: 06/25/2009) |

| 06/29/2009 | | | NOTICE of Docket Entry Modification; Error: wrong event selected (Reply); wrong links made; Correction: changed text to reflect correct event (Surreply); created links to base motions (Re: 93 Reply, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/29/2009) |
| --- | --- | --- | --- |
| 06/30/2009 | 94 | | MOTION to Quash *Subpoenas* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/30/2009) |
| 07/01/2009 | 97 | | RESPONSE in Opposition to Motion (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/01/2009) |
| 07/01/2009 | 98 | | Clarification of (Re: 94 MOTION to Quash ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 7/2/2009 to correct title of event (pll, Dpty Clk). Modified on 7/2/2009 (pll, Dpty Clk). (Entered: 07/01/2009) |
| 07/01/2009 | 99 | | MOTION to Quash *subpoena* by Eddy Lynn Patterson as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 7/6/2009 to correct file date (lml, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | 100 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 7/2/2009, ruling on motion(s)/document(s): #51,53,55,57,59,61,63,65,67,69,72,74,77,92 Denied, #82 Granted in Part, Denied in part, #94 Moot, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 77 MOTION for Hearing *(submitted as part of Doc # 74 )*, 92 JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009), 69 JOINDER (in [51–66] Generally dispositive filed on May 15, 2009), 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 94 MOTION to Quash, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 72 MOTION to Suppress *Grand Jury testimony and evidence*, 82 MOTION for Bill of Particulars, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four, 74 MOTION to Suppress ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) Modified on 7/8/2009 to indicate attached PDF has incorrect hearing date. Date hearing held was 7/2/2009 (pll, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | 101 | | MINUTE ORDER by Judge Stephen P Friot *: Following the hearing held this date, the Motion to Quash filed by Eddy Lynn Patterson is hereby moot*, ruling on motion(s)/document(s): #99 Moot (Re: 99 MOTION to Quash *subpoena* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/02/2009) |

| 07/02/2009 | 103 | SEALED EXHIBIT(S) to Order/Minutes (Re: 100 Minutes of Motion Hearing,,,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 07/14/2009) Contains One or More Restricted PDFs |
|---|---|---|
| 07/08/2009 | 102 | ORDER by Judge Stephen P Friot *re: jury instructions* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/08/2009) |
| 07/14/2009 | 104 | BILL OF PARTICULARS (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/14/2009) |
| 08/03/2009 | 107 | PROPOSED JURY INSTRUCTIONS by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/03/2009) |
| 08/03/2009 | 108 | First PROPOSED JURY INSTRUCTIONS as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 109 | First MOTION to Dismiss Count(s) 1 *Conspiracy charge* (Re: 2 Indictment ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 110 | BRIEF in Support of Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/04/2009 | 111 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #106 Denied (Re: 106 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 08/04/2009) |
| 08/05/2009 | 112 | RESPONSE in Opposition to Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 8/6/2009 to delete "as to" defendant Springer (sac, Dpty Clk). (Entered: 08/05/2009) |
| 08/06/2009 | 114 | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 43 Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 11/5/2009 to |

| | | | |
|---|---|---|---|
| | | | remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | <u>115</u> | | TRANSCRIPT of Proceedings (Unredacted) of Motions Hearing held on 7/2/09 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: <u>100</u> Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 11/5/2009 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | <u>116</u> | | RESPONSE in Opposition to Motion (Re: 105 Second MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) Modified on 8/7/2009 to delete "as to Oscar Amos Stilley" as this document states it is as to defendant Springer only (sac, Dpty Clk). (Entered: 08/06/2009) |
| 08/12/2009 | <u>120</u> | | OBJECTION to Proposed Jury Instructions (Re: <u>108</u> Proposed Jury Instructions ) by USA as to Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 08/12/2009) |
| 08/13/2009 | <u>126</u> | | NOTICE of Intent to Use Expert Witness Testimony by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/13/2009) |
| 08/17/2009 | <u>129</u> | | OBJECTION to Proposed Jury Instructions *Of the government* (Re: <u>108</u> Proposed Jury Instructions ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/17/2009) |
| 08/19/2009 | <u>131</u> | | REPLY to Response to Motion (Re: <u>109</u> First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 08/19/2009) |
| 08/19/2009 | 132 | | JOINDER (SUBMITTED AS DOC # <u>131</u> )(in 123 Eighth Motion to Dismiss Count(s) filed on 8/12/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/19/2009 | 133 | | ADOPTION *(SUBMITTED AS DOC # <u>131</u> )* (of [124, 130] Eighth Brief in Support of Motion, Reply to Response to Motion filed on 8/12/09, 8/19/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/20/2009 | | | NOTICE of Docket Entry Modification; Error: Document No. 131 is a multi–event document and only one event was e–filed; Correction: Filed the remaining events (Joinder in Motion) and (Adoption) as Document Nos. 132 & 133 (Re: <u>131</u> Reply to Response to Motion ) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 09/10/2009 | <u>134</u> | | NOTICE Pursuant to Federal Rule of Evidence 404(b) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/10/2009) |
| 09/16/2009 | <u>135</u> | | ORDER by Judge Stephen P Friot *re: Pretrial Conference* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/16/2009) |

| | | |
|---|---|---|
| 09/18/2009 | 136 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #105 denied; 109 denied; #123 denied (Re: 105 Second MOTION for Bill of Particulars, 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge*, 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 09/18/2009) |
| 09/21/2009 | 137 | MOTION in Limine by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/21/2009) |
| 09/21/2009 | 138 | TRIAL BRIEF by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 09/21/2009) |
| 09/21/2009 | 139 | NOTICE of Government's Proposed Summary of Indictment by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 140 | NOTICE of Summary of Indictment by Oscar Amos Stilley (Stilley, Oscar) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 149 | MOTION in Limine *regarding hearsay and confrontation issues* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 152 | MOTION for Subpoena(s) *pursuant to Rule 17(b)* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 153 | BRIEF in Support of Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 155 | JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09 as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/22/2009) |
| 09/22/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event *(Notice)* (Re: 139 MOTION Government's Proposed Summary of Indictment ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event (Notice) (Re: 140 MOTION Summary of Indictment ) as to Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | 156 | ORDER by Judge Stephen P Friot *: setting ex parte hearing*, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/9/2009 at 01:30 PM before Judge Stephen P Friot) (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | 157 | ORDER by Judge Stephen P Friot *re: 10/9/09 ex parte hearing* (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 156 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: |

| | | | 09/22/2009) |
|---|---|---|---|
| 09/23/2009 | 158 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/21/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 137 MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 148 Fifth MOTION in Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/23/2009) |
| 09/25/2009 | 160 | | SEALED MOTION (O'Reilly, Charles) Modified on 10/9/2009; this document is STRICKEN per 183 (sac, Dpty Clk). (Entered: 09/25/2009) Contains One or More Restricted PDFs |
| 09/25/2009 | 162 | | MOTION TAKE RULE 15 DEPOSITION by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 09/25/2009) |
| 09/30/2009 | 165 | | MINUTE ORDER by Judge Stephen P Friot *: Until further notice, all hearings in this case will be held at the Boulder Courthouse, 224 S Boulder, 3rd Floor Courtroom, Tulsa, OK* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/30/2009) |
| 10/01/2009 | 170 | | SEALED DOCUMENT (O'Reilly, Charles) Modified on 10/2/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/01/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 173 | | RESPONSE in Opposition to Motion (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 148 Fifth MOTION in Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 174 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/05/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 175 | | RESPONSE in Opposition to Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 141 MOTION for Subpoena(s) *under Rule 17* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 176 | | RESPONSE in Opposition to Motion (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/05/2009) |
| 10/06/2009 | 178 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #162 Granted (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/06/2009) |
| 10/07/2009 | 181 | | SEALED MOTION (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |

| 10/07/2009 | 182 | SEALED DOCUMENT (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |
| --- | --- | --- |
| 10/08/2009 | 183 | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re: 160 SEALED MOTION ) (Documents Terminated: 160 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/08/2009) |
| 10/08/2009 | 186 | SEALED ORDER (s−srb, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/08/2009) |
| 10/09/2009 | 189 | NOTICE with Respect to Court's Order (Dkt#178) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 10/09/2009) |
| 10/09/2009 | 190 | ERRATA/CORRECTION (Re: 189 Notice (Other) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 10/13/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/09/2009) |
| 10/09/2009 | 191 | SEALED MINUTES (pll, Dpty Clk) (Entered: 10/13/2009) Contains One or More Restricted PDFs |
| 10/13/2009 | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Notice−Other); Correction: Edited docket text to reflect correct event (Errata/Correction to Document) (Re: 190 Notice (Other) ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 195 | ***Remark: *arrest warrant issued for material witness* as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 10/14/2009 to unseal docket entry (sjm, Dpty Clk). (Entered: 10/14/2009) Contains One or More Restricted PDFs |
| 10/14/2009 | 198 | RESPONSE in Opposition to Motion (Re: 179 MOTION Compel Clerk of Court to Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) by USA as to Lindsey Kent Springer (Snoke, Kenneth) Modified on 10/15/2009 to delete "as to" Oscar Stilley since this document is only as to Lindsey Kent Springer (sac, Dpty Clk). (Entered: 10/14/2009) |
| 10/14/2009 | 199 | RESPONSE (Re: 134 NOTICE ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 10/15/2009 to change text to reflect correct event and change link (sac, Dpty Clk). (Entered: 10/14/2009) |
| 10/15/2009 | | NOTICE of Docket Entry Modification; Error: all defendants were selected as to, but document only pertains to Lindsey Springer; Correction: deleted as to defendant Oscar Stilley (Re: 198 Response in Opposition to Motion, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/15/2009 | | NOTICE of Docket Entry Modification; Error: wrong event selected (Response in Opposition to Motion); wrong link made; Correction: changed text to reflect correct event (Response); changed link (Re: 199 Response in Opposition to Motion ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/16/2009 | 200 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #179 granted with specific limitations (Re: 179 MOTION Compel Clerk of Court to |

| | | | |
|---|---|---|---|
| | | | Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) as to Lindsey Kent Springer(djh, Dpty Clk) (Entered: 10/16/2009) |
| 10/20/2009 | 202 | | SEALED MOTION (Snoke, Kenneth) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 203 | | SEALED ORDER (pll, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 204 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 205 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 206 | | MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2009) |
| 10/21/2009 | 207 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 10/21/2009, Pretrial Conference held on 10/21/2009, ruling on motion(s)/document(s): #137,155 grant in part, deny in part; 144,146,147,150,151,159 denied; 148, 204, 205, 206 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 204 SEALED MOTION, 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 137 MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 148 Fifth MOTION in Limine, 159 MOTION Emergency Motion Regarding Denny Patridge, 144 First MOTION in Limine, 205 SEALED MOTION, 206 MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/21/2009 | 208 | | ***Remark: *Deposition Transcript of Vikki Lynn Wiggins received by court* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/24/2009 | 209 | | PROPOSED VOIR DIRE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/24/2009) |
| 10/24/2009 | 210 | | MOTION to Quash *Testimony of Vikki Wiggins* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/24/2009 | 211 | | BRIEF in Support of Motion (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/26/2009 | 212 | | RESPONSE in Opposition to Motion (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 10/27/2009 to remove Lindsey Kent Springer name from text, as his name should not have been selected, as this pleading does not pertain to him (tjc, Dpty Clk). (Entered: 10/26/2009) |

| 10/26/2009 | 213 | | NOTICE Regarding Defendants' Discovery by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/26/2009) |
| 10/26/2009 | 214 | | SEALED DOCUMENT (s–srb, Dpty Clk) (Entered: 10/26/2009) Contains One or More Restricted PDFs |
| 10/26/2009 | 215 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection began as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 216 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection held on 10/26/2009 as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 217 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial began as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 218 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held , *continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 10/27/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/27/2009 | 220 | | ORDER by Judge Stephen P Friot *ruling on Government's Oral Motion re: witness Philip Roberts* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 10/27/2009 to correct title(pll, Dpty Clk). (Entered: 10/27/2009) |
| 10/27/2009 | 221 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #210 and 219 denied as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins*, 219 JOINDER (in 210 Motion to Quash filed on 10/24/09) ) (cds, Dpty Clk) (Entered: 10/27/2009) |
| 10/28/2009 | 222 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting deadline(s)/hearing(s): ( Jury Trial set for 10/29/2009 at 09:00 AM before Judge Stephen P Friot, Motion Hearing set for 11/3/2009 at 05:30 PM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 10/28/2009) |
| 10/29/2009 | 223 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #145 and 149 Denied, setting/resetting scheduling order date(s): ( Jury Trial set for 10/30/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 145 Second MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues* ) (cds, Dpty Clk) (Entered: 10/30/2009) |
| 10/30/2009 | 229 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): ( Jury Trial set for 11/2/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 11/03/2009) |
| 11/02/2009 | 230 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/3/2009 at 09:00 AM before Judge Stephen P Friot) as to |

| | | | Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 11/03/2009) |
|---|---|---|---|
| 11/03/2009 | 228 | | NOTICE re: Proposed Jury Instructions by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 11/4/2009 to correct event (tjc, Dpty Clk). (Entered: 11/03/2009) |
| 11/03/2009 | 231 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/4/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/03/2009) |
| 11/03/2009 | 232 | | JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/03/2009) |
| 11/04/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Proposed Jury Instructions); Correction: Edited docket text to reflect the correct event (Notice) (Re: 228 Proposed Jury Instructions ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 11/04/2009) |
| 11/04/2009 | 233 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *(continued to following day)* ( Jury Trial set for 11/5/2009 at 08:15 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/04/2009) |
| 11/05/2009 | 234 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *continued to following Monday*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/9/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/05/2009) |
| 11/05/2009 | 235 | | ORDER by Judge Stephen P Friot *re: USM and witnesses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/06/2009) |
| 11/08/2009 | 237 | | PROPOSED JURY INSTRUCTIONS *as to Venue* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 11/08/2009) |
| 11/08/2009 | 238 | | ADOPTION *of Springer's requested jury instructions* (of 236 ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/08/2009) |
| 11/09/2009 | 239 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *, continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/10/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/09/2009) |
| 11/10/2009 | 240 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to Thursday* ( Jury Trial set for 11/12/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/10/2009) |
| 11/12/2009 | 241 | | |

| | | | |
|---|---|---|---|
| | | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/13/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/12/2009) |
| 11/13/2009 | 242 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following Monday* ( Jury Trial set for 11/16/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/13/2009) |
| 11/16/2009 | 243 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial completed, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 244 | | JURY INSTRUCTIONS by Judge Stephen P Friot as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 245 | | JURY VERDICT as to Lindsey Kent Springer (1) Guilty on Count 1,2,3–4,5–6 and Oscar Amos Stilley (2) Guilty on Count 1,3–4 (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 246 | | SEALED EXHIBIT(S) to Order/Minutes (Re: 243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 11/17/2009) Contains One or More Restricted PDFs |
| 11/17/2009 | 247 | | ORDER by Judge Stephen P Friot *setting supplemental conditions following trial,* ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/20/2009 | 251 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2009) |
| 11/20/2009 | 252 | | RESPONSE in Opposition to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ), 224 MOTION to Reconsider ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 11/20/2009) |
| 11/23/2009 | 253 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #251 Granted (Re: 251 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/23/2009) |
| 12/01/2009 | 254 | | MOTION To provide transcript at public expense by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/01/2009 | 255 | | BRIEF in Support of Motion (Re: 254 MOTION To provide transcript at public expense ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/07/2009 | 258 | | REPLY to Response to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ) ) by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More |

| | | | Restricted PDFs |
|---|---|---|---|
| 12/08/2009 | 259 | | MOTION to Strike Document(s) (Re: 257 Reply to Response to Motion, 258 Reply to Response to Motion ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/08/2009) |
| 12/08/2009 | 261 | | MOTION for Judgment of Acquittal *and*, MOTION for New Trial by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/08/2009 | 263 | | BRIEF in Support of Motion (Re: 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial ) by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/09/2009 | 264 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #259 Granted, striking/withdrawing document(s) (Re: 259 MOTION to Strike Document(s), 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial, 257 Reply to Response to Motion, 258 Reply to Response to Motion, 260 MOTION for Judgment of Acquittal, 262 MOTION for New Trial ) (Documents Terminated: 257 Reply to Response to Motion, 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial, 258 Reply to Response to Motion, 260 MOTION for Judgment of Acquittal ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 12/09/2009) |
| 12/14/2009 | 267 | | MOTION to Reconsider (Re: 264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/14/2009 | 268 | | BRIEF in Support of Motion (Re: 267 MOTION to Reconsider ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/15/2009 | 269 | | RESPONSE in Opposition to Motion (Re: 267 MOTION to Reconsider ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/15/2009) |
| 01/12/2010 | 278 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #254 Denied (Re: 254 MOTION To provide transcript at public expense ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/12/2010) |
| 01/22/2010 | 290 | | SCHEDULING ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/19/2010 at 10:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/22/2010) |
| 01/25/2010 | 291 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/21/2010 at 10:00 AM before Judge Stephen P Friot) (Re: 290 Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/25/2010) |
| 01/28/2010 | 293 | | OPINION AND ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #224,232,262,265,267,271,273,285 Denied (Re: 265 MOTION to Vacate/Set Aside *Order dated December 9, 2009* MOTION |

| | | | |
|---|---|---|---|
| | | | Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1 MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein, 267 MOTION to Reconsider, 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ), 262 MOTION for New Trial, 224 MOTION to Reconsider, 273 MOTION to Strike Document(s), 271 MOTION Disqualify, Recuse, Removal and for Random Reassignment, 285 MOTION to Strike Document(s) *276 and 277* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/28/2010) |
| 02/01/2010 | 294 | | JOINDER (in [262, 265, 271, 272, 273, 274, 280, 281, 282, 283, 284, 285, 286, and 288] Multiple motions filed on 12/28/09 mostly) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | 296 | | MOTION to Modify Conditions of Pretrial Release by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | 297 | | First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* (Re: 278 Order, Ruling on Motion(s)/Document(s), 290 Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s), 291 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, 293 Opinion and Order,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), 24 Order,, Reassigning Case,, Changing Case Number, 264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, 247 Order, Ruling Re: Modification of Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/02/2010 | 298 | | BRIEF in Support of Motion (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*, 296 MOTION to Modify Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/02/2010) |
| 02/03/2010 | 299 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #296 denied (Re: 296 MOTION to Modify Conditions of Pretrial Release ) as to Oscar Amos Stilley (sjm, Dpty Clk) Modified on 2/4/2010 to remove Lindsey Kent Springer from text (lml, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 300 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #297 denied (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* #294 granted) as to Oscar Amos Stilley; (sjm, Dpty Clk) Modified on 2/3/2010 to correct entry ruling on #294 also(sjm, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 301 | | |

| | | | NOTICE of Docket Entry Modification; Error: omitted ruling on docket #294; Correction: corrected entry to include ruling on docket #294 (Re: Ruling on Joinder in Motion ) as to Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 02/03/2010) |
|---|---|---|---|
| 02/11/2010 | 309 | | JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/11/2010) |
| 02/12/2010 | 310 | | RESPONSE in Opposition to Motion (Re: 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 02/12/2010) |
| 02/22/2010 | 312 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #280, 282, 284, 306 Denied, #309 Granted (Re: 282 MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 280 MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10), 284 MOTION to Dismiss Indictment/Information/Complaint *for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in MOTION to Dismiss Indictment/Information/Complaint for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/22/2010) |
| 02/23/2010 | 313 | | ORDER by Judge Stephen P Friot *re: consideration of non−standard conditions of supervised release* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/23/2010) |
| 02/25/2010 | 314 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #295 Denied (Re: 295 MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six *regarding regulations not in compliance with APA* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/25/2010) |
| 03/16/2010 | 315 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 03/16/2010) Contains One or More Restricted PDFs |
| 03/25/2010 | 316 | | ORDER by Judge Stephen P Friot, ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 3/25/2010 to add PDF (pll, Dpty Clk). (Entered: 03/25/2010) |
| 03/25/2010 | 317 | | NOTICE of Docket Entry Modification; Error: Document not attached; Correction: Attached document and included here (Re: 316 Order, Ruling Re: Modification of Conditions of Pretrial Release ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/25/2010) |
| 03/30/2010 | 318 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE *Regarding Defendants'* Reference to Variance in Objections to PSIR by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 319 | | EXHIBIT LIST *and Witness List for Sentencing* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 320 | | SEALED DOCUMENT (Stilley, Oscar) (Entered: 03/30/2010) Contains One or More Restricted PDFs |
| 04/06/2010 | 326 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/06/2010) |
| 04/07/2010 | 328 | | RESPONSE in Opposition to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/07/2010) |
| 04/07/2010 | 329 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): *(Government's response deadline to Stilley's Motion to Continue Sentencing [Dkt. #326])* ( Miscellaneous Deadline set for 4/13/2010) as to Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/07/2010) |
| 04/08/2010 | 330 | | REPLY to Response to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/08/2010) |
| 04/09/2010 | 331 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #326 Denied (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) as to Oscar Amos Stilley Modified on 4/23/2010 to show Oscar Amos Stilley as single filer(cds, Dpty Clk). (Entered: 04/09/2010) |
| 04/16/2010 | 333 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 04/16/2010) Contains One or More Restricted PDFs |
| 04/23/2010 | 336 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Sentencing held on 4/23/2010, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/23/2010 | 348 | | NOTICE OF APPEAL to Circuit Court (Re: 338 Judgment and Commitment, Entering Judgment ) as to Oscar Amos Stilley (s–srl, Dpty Clk) Modified on 4/30/2010 to correct file date (s–srl, Dpty Clk). (Entered: 04/30/2010) |
| 04/27/2010 | 334 | | ORDER by Judge Stephen P Friot *entered without prejudice to the right of standby counsel to apply for compensation for their services,* terminating attorney Charles Robert Burton, IV and Robert Scott Williams as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/27/2010) |
| 04/27/2010 | 335 | | ***Remark: *Order [Dkt. #334] mailed to each defendant c/o David L. Moss Correctional Center, 300 N. Denver Ave., Tulsa, OK 74103* (Re: 334 Order,, Adding/Terminating Attorney(s), Adding/Terminating Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: |

| | | | |
|---|---|---|---|
| | | | 04/27/2010) |
| 04/28/2010 | 338 | | JUDGMENT AND COMMITMENT by Judge Stephen P Friot, entering judgment as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/30/2010 | 346 | | ORDER by Judge Stephen P Friot *re: mailing addresses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 349 | | PRELIMINARY RECORD Sent to Circuit Court (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (With attachments) (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | | | NOTICE of Docket Entry Modification; Error: incorrect file date; Correction: corrected file date (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 353 | | Amended PRELIMINARY RECORD Sent to Circuit Court (Re: 348 Notice of Appeal to Circuit Court, 349 Preliminary Record Sent ) as to Oscar Amos Stilley (With attachments) (s−srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 355 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 10−5057 (#348) (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/03/2010) |
| 05/06/2010 | 362 | | ORDER from Circuit Court *partially consolidating appeals* (Re: 348 Notice of Appeal to Circuit Court, 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/06/2010) |
| 05/28/2010 | 366 | | MOTION to Unseal Document(s) (Re: 203 Sealed Order, 186 Sealed Order, 181 SEALED MOTION, 182 Sealed Document, 202 SEALED MOTION ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/28/2010) |
| 06/03/2010 | 370 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #366 Granted, unsealing document(s) (Re: 366 MOTION to Unseal Document(s), 182 Sealed Document, 186 Sealed Order, 203 Sealed Order, 181 SEALED MOTION, 202 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/03/2010) |
| 06/08/2010 | 373 | | MOTION to Withdraw Attorney(s) *Kenneth P. Snoke* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/08/2010) |
| 06/08/2010 | 374 | | ORDER by Judge Stephen P Friot, terminating attorney Kenneth P Snoke, ruling on motion(s)/document(s): #373 Granted (Re: 373 MOTION to Withdraw Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/08/2010) |
| 06/10/2010 | 379 | | MINUTE ORDER by Court Clerk, directing Jerold W. Barringer to file by July 1, 2010 a Motion for Admission Pro Hac Vice per Local Civil Rule 83.2. Additionally, if you intend to practice in this district in the future and want to become a member of this district, please submit an application for attorney admission. as to Lindsey Kent Springer, Oscar Amos Stilley (lal, Dpty Clk) (Entered: 06/10/2010) |
| 06/11/2010 | | | MAIL to Oscar Amos Stilley Returned – marked return to sender – not in custody. Remailed on 6/14/10 to FCI Forrest Low, P O BOX 9000, FORREST |

| | | | |
|---|---|---|---|
| | | | CITY, AR 72336 – new address obtained from BOP website. (Re: <u>370</u> Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Unsealing Document(s), Unsealing Document(s) ) as to Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 06/14/2010) |
| 06/16/2010 | <u>380</u> | | Supplemental CERTIFICATE of Service *Due to Returned Mail* (Re: 375 Response in Opposition to Motion, <u>373</u> MOTION to Withdraw Attorney(s), <u>366</u> MOTION to Unseal Document(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/16/2010) |
| 06/16/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justice Center, 300 N Denver, Tulsa, OK 74103 Returned – marked Return to Sender – not in custody. Remailed on 06/17/10 to FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336 – New address obtained from BOP Website. (Re: 376 Order, Ruling on Motion(s)/Document(s), 377 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), <u>374</u> Order, Adding/Terminating Attorney(s), Ruling on Motion(s)/Document(s) ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 6/18/2010 to remove additional Defendant (sdc, Dpty Clk). (Entered: 06/17/2010) |
| 07/12/2010 | <u>382</u> | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 340 Notice of Appeal <u>43</u> Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk). Modified on 7/13/2010 to create link to 340 (sac, Dpty Clk). Modified on 10/14/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | <u>383</u> | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 07/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 340 Notice of Appeal to Circuit Court, <u>100</u> Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | <u>384</u> | | TRANSCRIPT of Proceedings (Unredacted) of Pretrial Hearing held on 10/21/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 139). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must</span> |

| | | | |
|---|---|---|---|
| | | | file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 207 Minutes of Motion Hearing, Minutes of Pretrial Conference, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 385 | | TRANSCRIPT of Proceedings (Unredacted) of Voir Dire and Jury Trial held on 10/26/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne)(Pages: 1 to 242)(Re: 217 Minutes of Jury Trial Begun, 340 Notice of Appeal to Circuit Court, 218 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 216 Minutes of Voir Dire/Jury Selection Held) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk)(See Court Clerk to view this transcript) Modified on 7/13/2010 to include that Voir Dire is included in this transcript (sac, Dpty Clk). (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 386 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/27/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 243 to 515). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 221 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 387 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/28/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 516 to 640). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 222 Minutes of Jury Trial Held, Setting/Resetting Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 388 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/29/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 641 to 880). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically |

| | | |
|---|---|---|
| | | available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 223 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s), Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 389 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/30/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 881 to 1130). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 229 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s) 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 390 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1131 to 1327). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 230 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 391 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/03/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1328 to 1608). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 231 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 392 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/04/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1609 to 1934). NOTICE RE REDACTION OF TRANSCRIPTS: A party must |

| | | file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 233 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
|---|---|---|
| 07/12/2010 | 393 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/05/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1935 to 2202). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 234 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 394 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/09/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2203 to 2454). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 239 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 395 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/10/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2455 to 2669). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 240 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |

| 07/12/2010 | 396 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/12/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2670 to 2949). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 241 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
|---|---|---|
| 07/12/2010 | 397 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/13/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2950 to 3056). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 242 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 398 | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/16/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 3057 to 3090). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 399 | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/21/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1 to 210). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 |

| | | | |
|---|---|---|---|
| | | | to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 400 | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/22/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 211 to 390). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/12/2010 | 401 | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/23/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 391 to 469). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 10/15/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 07/12/2010) |
| 07/15/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justic Center, 300 N Denver, Tulsa OK 74103 Returned – marked return to sender – not in custody. Remailed on 7/15/10 – FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336. (Re: 379 Order, Directing Attorney to File PHV Motion,, ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 7/16/2010 ro remove reference to Lindsey Springer (sdc, Dpty Clk). (Entered: 07/15/2010) |
| 07/26/2010 | 412 | | RECORD on Appeal Sent to Circuit Court (Record includes: 4 volumes) (Re: 348 Notice of Appeal to Circuit Court, 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (s–srt, Dpty Clk) (Entered: 07/26/2010) |
| 08/17/2010 | 418 | | ORDER by Judge Stephen P Friot *titled: Memorandum of approval, with modification, of claim for professional services* as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 08/17/2010) |
| 09/09/2010 | 421 | | ATTORNEY APPEARANCE by Jeffrey Andrew Gallant on behalf of USA (Gallant, Jeffrey) (Entered: 09/09/2010) |
| 09/13/2010 | 422 | | TRANSCRIPT of Proceedings (Unredacted) of Miscellaneous Hearing held on 03/30/2009 before Magistrate Judge Paul J Cleary (Court Reporter: Tracy Washbourne) (Pages: 1–36). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for |

| | | | |
|---|---|---|---|
| | | | redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 23 Minutes of Miscellaneous Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 12/20/2010 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 09/13/2010) |
| 02/24/2011 | 443 | | MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances by Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 02/24/2011) |
| 03/14/2011 | 444 | | RESPONSE in Opposition to Motion (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 03/14/2011) |
| 03/29/2011 | 450 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response* (Re: 444 Response in Opposition to Motion, 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 03/29/2011) |
| 03/30/2011 | 451 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #450 Granted (Re: 450 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response* MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extension of Time to Reply to Response*, 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/30/2011) |
| 04/15/2011 | 453 | | ***Remark: *received copy of Docket 443 that was mailed to 10th Circuit and forwarded to USDC WD/OK* as to Oscar Amos Stilley (sdc, Dpty Clk). (Entered: 04/18/2011) |
| 04/18/2011 | 454 | | REPLY to Response to Motion (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) by Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 04/18/2011) |
| 04/20/2011 | 455 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #443 Denied (Re: 443 MOTION for Order Prohibiting Government from Interference with Stilley's Receipt and Use of Computers, Peripherals, Internet Access, Tax Addresses, Forms and Other Items Useful for Peacefully Petitioning for the Redress of Grievances ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/20/2011) |
| 10/26/2011 | 460 | | DECISION from Circuit Court affirming the Decision of the District Court (awaiting mandate) (Re: 348 Notice of Appeal to Circuit Court, 428 Notice of Appeal to Circuit Court, 447 Notice of Appeal to Circuit Court, 340 Notice of |

| | | | Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 10/26/2011) |
|---|---|---|---|
| 12/20/2011 | 463 | | MANDATE from Circuit Court (Re: 348 Notice of Appeal to Circuit Court, 460 Decision from Circuit Court, ) as to Oscar Amos Stilley (sdc, Dpty Clk) (Entered: 12/20/2011) |
| 05/22/2012 | 465 | | MOTION for Release of Oscar Amos Stilley by Martha Durossette as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 5/25/2012 **– STRICKEN per 466** (tjc, Dpty Clk). (Entered: 05/23/2012) |
| 05/24/2012 | 466 | | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re: 465 MOTION for Release of Oscar Amos Stilley ) (Documents Terminated: 465 MOTION for Release of Oscar Amos Stilley ) as to Oscar Amos Stilley (cds, Dpty Clk) (Entered: 05/24/2012) |
| 05/29/2012 | 467 | | MAIL to Martha Durossette Returned – address was changed to address unknown. (Re: 466 Order, Striking/Withdrawing Document(s) ) as to Oscar Amos Stilley (s–srt, Dpty Clk) (Entered: 05/31/2012) |
| 06/01/2012 | | | MAIL Resent to Martha Durossette at 506 S Caddo, Muldrow, OK 74948 (Re: 466 Order, Striking/Withdrawing Document(s) ) as to Oscar Amos Stilley (s–srt, Dpty Clk) (Entered: 06/01/2012) |
| 05/03/2016 | 617 | | MOTION regarding visitation rights of Oscar Stilley by Martha Durossette as to Oscar Amos Stilley (jln, Dpty Clk) Modified on 5/6/2016 **– STRICKEN per 618** (sac, Dpty Clk). (Entered: 05/04/2016) |
| 05/05/2016 | 618 | | ORDER by Judge Stephen P Friot , striking/withdrawing document(s) (Re: 617 MOTION regarding visitation rights of Oscar Stilley ) (Documents Terminated: 617 MOTION regarding visitation rights of Oscar Stilley ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 05/05/2016) |
| 05/06/2016 | | | ***Remark: *Copy of Order #618 mailed to Oscar Amos Stilley* (Re: 618 Order,, Striking/Withdrawing Document(s), ) as to Oscar Amos Stilley (jln, Dpty Clk) (Entered: 05/06/2016) |
| 05/16/2016 | 619 | | MAIL to Oscar Amos Stilley Returned – remailed on 5/17/16 to FCI Oakdale I, PO BOX 5000, OAKDALE, LA 71463 – new address obtained from BOP website. (Re: 618 Order, Striking/Withdrawing Document(s),, ) as to Oscar Amos Stilley (jln, Dpty Clk) (Entered: 05/17/2016) |
| 12/11/2017 | 624 | | MAIL to Oscar Amos Stilley Returned – remailed on 12/11/17 to FCI Beaumont Low, PO BOX 26020, BEAUMONT, TX 77720 – new address obtained from BOP website. (Re: #622 and #623) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 12/11/2017) |
| 01/29/2018 | 631 | | MOTION for Hearing by Martha Durossette as to Oscar Amos Stilley (2) (sc, Dpty Clk) Modified on 2/1/2018 **– STRICKEN per 633** (srt, Dpty Clk). (Entered: 01/29/2018) |
| 01/31/2018 | 633 | | ORDER by Judge Stephen P Friot , striking/withdrawing document(s) (Re: 631 MOTION for Hearing ) (Documents Terminated: 631 MOTION for Hearing ) as to Oscar Amos Stilley (2) (kjp, Dpty Clk) (Entered: 01/31/2018) |
| 07/12/2018 | 651 | | |

| | | | |
|---|---|---|---|
| | | | MAIL to Oscar Amos Stilley Returned – remailed on 1/16/18 – FCI Yazoo City Low, PO BOX 5000, YAZOO CITY, MS 39194 – new address obtained from BOP website. (Re: #645 and #646) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 07/16/2018) |
| 07/23/2018 | 652 | | MAIL to Oscar Amos Stilley Returned – remailed on 7/23/2018 to FCI Yazoo City Low, PO BOX 5000, YAZOO CITY, MS 39194 – new address obtained form previous entry. (Re: #648) as to Oscar Amos Stilley (2) (jln, Dpty Clk) (Entered: 07/23/2018) |
| 05/11/2021 | 693 | | NOTICE of Change of Address as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 05/11/2021) |
| 05/12/2021 | 694 | | MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 05/12/2021) |
| 05/12/2021 | 695 | | BRIEF in Support of Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 05/12/2021) |
| 05/12/2021 | 696 | | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 7/16/2021) (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 05/12/2021) |
| 07/07/2021 | 698 | | RESPONSE in Opposition to Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/07/2021) |
| 07/21/2021 | 699 | | REPLY to Response to Motion (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 07/21/2021) |
| 07/26/2021 | 700 | | ORDER by Judge Stephen P Friot *denying defendants Motion for Reduction of Sentence (Doc. 694)*, ruling on motion(s)/document(s): #694 denied (Re: 694 MOTION for Reduction of Sentence *Pursuant to 18 USC 3582(c)* ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 07/26/2021) |
| 09/01/2021 | 701 | | MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 by Oscar Amos Stilley (Stilley, Oscar) Civil case 4:21–cv–00361 opened. (Entered: 09/01/2021) |
| 09/02/2021 | 702 | | MOTION Disclose co–defendant's address, show authority for Friot to preside, 30 day stay of proceedings by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/02/2021) |
| 09/02/2021 | 703 | | MINUTE ORDER by Judge Stephen P Friot (Re: 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 09/02/2021) |
| 09/02/2021 | 704 | | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 9/30/2021) (Re: 702 MOTION Disclose co–defendant's address, show authority for Friot to preside, 30 day stay of proceedings , 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 09/02/2021) |

| 09/07/2021 | 705 | MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules (Re: 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 9/8/2021 to create link to doc 701 (sc, Dpty Clk). (Entered: 09/07/2021) |
|---|---|---|
| 09/07/2021 | 706 | ORDER by Judge Stephen P Friot , setting/resetting deadline(s)/hearing(s): ( Responses due by 10/5/2021) (Re: 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 09/07/2021) |
| 09/08/2021 | 707 | MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case (Re: 702 MOTION Disclose co–defendant's address, show authority for Friot to preside, 30 day stay of proceedings ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/08/2021) |
| 09/14/2021 | 708 | MOTION to Clarify *Whether or Not Response to Motion is Required Absent Scheduling Order*, MOTION for Extension of Time to Respond to Motion (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/14/2021) |
| 09/16/2021 | 709 | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): Motion #708 Granted, setting/resetting deadline(s)/hearing(s): ( Responses due by 10/14/2021) (Re: 708 MOTION to Clarify *Whether or Not Response to Motion is Required Absent Scheduling Order* MOTION for Extension of Time to Respond to Motion , 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 09/16/2021) |
| 10/04/2021 | 710 | MOTION for Extension of Time to Respond to Motion *up through and including 11–30–2021* (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case , 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/04/2021) |
| 10/05/2021 | 711 | RESPONSE in Opposition to Motion (Re: 710 MOTION for Extension of Time to Respond to Motion *up through and including 11–30–2021* ) by USA as to Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 10/05/2021) |
| 10/05/2021 | 712 | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): #710 granted in part and denied in part, setting/resetting deadline(s)/hearing(s): ( Responses due by 10/20/2021) (Re: 710 MOTION for Extension of Time to Respond to Motion *up through and including 11–30–2021*, 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 10/05/2021) |
| 10/20/2021 | 713 | RESPONSE in Opposition to Motion (Re: 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in |

| | | | |
|---|---|---|---|
| | | | Violation of Local Rules ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2021) |
| 10/20/2021 | 714 | | RESPONSE in Opposition to Motion (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2021) |
| 10/25/2021 | 715 | | MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. by USA as to Oscar Amos Stilley [Note: Attorney Vani Singhal added to party USA(pty:pla).] (Singhal, Vani) (Entered: 10/25/2021) |
| 10/25/2021 | | | ***Motion(s) Referred to Magistrate Judge Christine D Little (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 10/26/2021) |
| 10/26/2021 | 716 | | MINUTE ORDER by Magistrate Judge Christine D Little , ruling on motion(s)/document(s): #715 granted (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. ) as to Oscar Amos Stilley  (This entry is the Official Order of the Court. No document is attached.) (tjc, Dpty Clk) (Entered: 10/26/2021) |
| 10/26/2021 | 717 | | WRIT of Garnishment Issued by Magistrate Judge Christine D Little as to Cornerstone Structural Engineering, Inc. as to Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 10/26/2021) |
| 11/04/2021 | 718 | | GARNISHEE'S ANSWER by Cornerstone Structural Engineering, Inc. as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 11/04/2021) |
| 11/04/2021 | 719 | | ORDER by Judge Stephen P Friot , ruling on motion(s)/document(s): #701 dismissed, #702 dismissed, #705 granted, #707 granted, denying certificate of appealability (Re: 707 MOTION to Dismiss Defendant Oscar Stilley's Motion to Stay Proceedings and for Determination of Who is the Lawfully Authorized Judge on this Case , 705 MOTION to Dismiss Defendants Verified Motion under 28 U.S.C. § 2255 as Untimely and in Violation of Local Rules , 701 MOTION to Vacate/Set Aside/Correct Sentence under 28 U.S.C. 2255 , 702 MOTION Disclose co−defendant's address, show authority for Friot to preside, 30 day stay of proceedings ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 11/04/2021) |
| 11/04/2021 | 720 | | JUDGMENT by Judge Stephen P Friot *dismissing defendant Oscar Amos Stilley's Motion to Vacate Sentence*, entering judgment as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 11/04/2021) |
| 11/14/2021 | 721 | | MOTION Transfer garnishment to district of residence by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/14/2021) |
| 11/24/2021 | 722 | | MOTION to Quash *Garnishment* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/24/2021) |
| 11/24/2021 | 723 | | BRIEF in Support of Motion (Re: 722 MOTION to Quash *Garnishment* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/24/2021) |
| 11/24/2021 | | | ***Motion(s) Referred to Magistrate Judge Christine D Little (Re: 722 MOTION to Quash *Garnishment* ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 12/01/2021) |

| 12/08/2021 | 724 | | ORDER by Judge Stephen P Friot *granting defendant's Motion for Transfer of Garnishment Proceedings (Doc. 721). The Clerk of the Court is directed to effect the transfer of garnishment proceedings to the Western District of Arkansas*, ruling on motion(s)/document(s): #721 granted, directing court clerk to take action (Re: 721 MOTION Transfer garnishment to district of residence ) as to Oscar Amos Stilley (alg, Dpty Clk) (Entered: 12/08/2021) |
| 12/09/2021 | | | ***Remark: *garnishment proceedings transferred to USDC WD/AR and opened as case #2:21−mc−00107−PKH* (Re: 724 Order, Ruling on Motion(s)/Document(s), Directing Court Clerk to Take Action,,, ) as to Oscar Amos Stilley (srt, Dpty Clk) (Entered: 12/09/2021) |
| 01/01/2022 | 725 | | NOTICE OF APPEAL to Circuit Court (Re: 720 Judgment, Entering Judgment, 719 Order, Ruling on Motion(s)/Document(s), Denying Certificate of Appealability as to Oscar Amos Stilley (Stilley, Oscar) Modified on 1/3/2022 to remove links to doc #'s 278, 136, 43, 455, 111, 100, 293, 338, 24, 264, 207 and 331 (sc, Dpty Clk). (Entered: 01/01/2022) |
| 01/03/2022 | | | NOTICE of Docket Entry Modification; Error: Linked to the incorrect documents; Correction: Removed link to Doc #'s 278, 136, 43, 455, 111, 100, 293, 338, 24, 264, 207 and 331 (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 01/03/2022) |
| 01/03/2022 | 726 | | PRELIMINARY RECORD Sent to Circuit Court (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (With attachments) (sc, Dpty Clk) (Entered: 01/03/2022) |
| 01/03/2022 | 727 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 22−5000 (#725) (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (sc, Dpty Clk) (Entered: 01/04/2022) |
| 01/05/2022 | 728 | | APPEAL FEES Paid in Full (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 01/05/2022) |
| 01/05/2022 | | | ***Remark: *copy of receipt emailed to 10th Circuit* (Re: 728 Appeal Fee Paid in Full ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 01/06/2022) |
| 01/21/2022 | 729 | | CERTIFICATE of Service (Re: 715 MOTION for Writ of Garnishment as to Cornerstone Structural Engineering, Inc. , 717 Writ of Garnishment Issued ) by USA as to Oscar Amos Stilley (Singhal, Vani) (Entered: 01/21/2022) |
| 02/02/2022 | 730 | | MOTION for Disbursement by USA as to Oscar Amos Stilley (Singhal, Vani) (Entered: 02/02/2022) |
| 02/10/2022 | 731 | | ORDER by Magistrate Judge Susan E Huntsman , ruling on motion(s)/document(s): #730 granted (Re: 730 MOTION for Disbursement ) as to Oscar Amos Stilley (dlg, Dpty Clk) (Entered: 02/10/2022) |
| 06/06/2022 | 732 | | DECISION from Circuit Court dismissing the Appeal (Re: 725 Notice of Appeal to Circuit Court, ) as to Oscar Amos Stilley (lmt, Dpty Clk) (Entered: 06/06/2022) |
| 08/24/2022 | 733 | | TRANSFER by Judge Stephen P Friot of Jurisdiction of Probationer or Supervised Releasee to District of OKWD as to Oscar Amos Stilley (blc, Dpty Clk) Modified on 8/24/2022 to edit docket text to remove additional Order event language (blc, Dpty Clk). (Entered: 08/24/2022) |

*FILED*

MAR 1 0 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Case No. **09 CR 043 JHP**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | **[18 U.S.C. § 371, Conspiracy to** |
| v. | ) | **Defraud the United States;** |
| | ) | **26 U.S.C. § 7201, Tax Evasion;** |
| LINDSEY KENT SPRINGER, | ) | **26 U.S.C. § 7203, Failure to File** |
| OSCAR AMOS STILLEY, | ) | **Tax Return]** |
| | ) | |
| Defendants. | ) | |

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. **LINDSEY KENT SPRINGER** ("Defendant **SPRINGER**") was a resident of the City of Kellyville, in the Northern District of Oklahoma.

2. Defendant **SPRINGER** used the name Bondage Breakers Ministry to solicit and receive money. Defendant **SPRINGER**'s stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

3. **OSCAR AMOS STILLEY** ("Defendant **STILLEY**") was an attorney residing in Fort Smith, Arkansas.

1

4.      Defendant **STILLEY** maintained an Arkansas IOLTA Foundation Trust Account ("IOLTA account") at Arvest Bank; an IOLTA account is an interest-bearing account used to hold client funds.

5.      Defendants **SPRINGER** and **STILLEY** each earned income in various ways, including assisting individuals being investigated and prosecuted for federal tax violations. Defendant **SPRINGER** referred individuals to Defendant **STILLEY**, and provided assistance on many of these cases.

6.      Defendant **SPRINGER** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

7.      Defendant **STILLEY** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

## COUNT ONE
### [18 U.S.C. § 371]

8.      General Allegations paragraphs 1 through 7  are incorporated as if fully set forth herein.

### OBJECT OF THE CONSPIRACY

9.      Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants **SPRINGER** and **STILLEY**, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions

2

of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

## MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, and was accomplished, through the following manner and means:

10.     Defendants **SPRINGER** and **STILLEY** would and did use Defendant **STILLEY**'s IOLTA account to conceal Defendant **SPRINGER**'s income, assets, and personal expenses;

11.     Defendant **SPRINGER** would and did use Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses;

12.     Defendants **SPRINGER** and **STILLEY** would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal Defendant **SPRINGER**'s income;

13.     Defendants **SPRINGER** and **STILLEY** would and did knowingly misrepresent the source and nature of Defendant **SPRINGER**'s income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

14.     Defendants **SPRINGER** and **STILLEY** would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the object thereof, Defendants **SPRINGER** and **STILLEY**, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

15.     On or about September 16, 2005, Defendant **SPRINGER** told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

16.     On or about January 20, 2006, Defendant **STILLEY** stated to Internal Revenue Service employees that people give money to Defendant **SPRINGER** for his ministry, and expect no services in return.

17.     On or about March 9, 2006, Defendant **STILLEY** provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to LINDSEY SPRINGER for any purpose."

18.     On or about June 24, 2003, Defendant **STILLEY** caused to be deposited a check for $112,500 into his IOLTA account.

19.     On or about June 30, 2003, Defendant **STILLEY** caused to be written a check for $14,359 from his IOLTA account to Defendant **SPRINGER**.

20.     On or about July 21, 2003, Defendant **STILLEY** caused to be written a check for $35,000 from his IOLTA account to Defendant **SPRINGER**.

4

21. On or about July 31, 2003, Defendant **STILLEY**, using funds from his IOLTA account, purchased a $37,000 cashier's check for Defendant **SPRINGER**.

22. On or about July 31, 2003, Defendant **SPRINGER** used the $37,000 cashier's check to purchase a Chevrolet Corvette.

23. On or about November 6, 2003, Defendant **STILLEY** caused $375,059.90 to be transmitted to his IOLTA account.

24. On or about November 7, 2003, Defendant **STILLEY** caused three cashier's checks payable to Defendant **SPRINGER** in the amount of $20,000 each to be issued from his IOLTA account.

25. On or about November 7, 2003, Defendant **STILLEY** purchased $18,000 in money orders for Defendant **SPRINGER** using funds from his IOLTA account.

26. On or about August 8, 2005, Defendant **SPRINGER** sent an email to a third person containing the account number, routing number, and name of Defendant **STILLEY**'s IOLTA account.

27. On or about August 11, 2005, Defendants **SPRINGER** and **STILLEY** caused $192,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

28. On or about August 15, 2005, Defendant **STILLEY** caused $166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of Defendant **SPRINGER** and his wife.

5

29.    On or about August 18, 2005, Defendants **SPRINGER** and **STILLEY** caused $58,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

30.    On or about August 26, 2005, Defendant **STILLEY** caused $5,560 to be transmitted from his IOLTA account to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of Defendant **SPRINGER**.

31.    On or about September 1, 2005, Defendant **STILLEY** caused $25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of Defendant **SPRINGER** and his wife.

32.    On or about September 19, 2005, Defendant **STILLEY** purchased two $10,000 cashier's checks payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

33.    On or about November 9, 2005, Defendant **STILLEY** purchased a $10,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

34.    On or about November 29, 2005, Defendant **STILLEY** purchased a $9,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

35.     On or about December 9, 2005, Defendant **SPRINGER** caused $50,000 he earned from the sale of a motor home to be transmitted to Defendant **STILLEY**'s IOLTA account.

36.     On or about May 2, 2006, Defendant **STILLEY** caused to be written a $1,993.56 check from his IOLTA account to Defendant **SPRINGER**.

37.     On or about July 25, 2006, Defendant **STILLEY** caused to be deposited a $175,000 check in his IOLTA account.

38.     On or about August 3, 2006, Defendant **STILLEY** caused to be written a $25,000 check from his IOLTA account to Bondage Breakers Ministry.

39.     On or about January 15, 2009, Defendant **SPRINGER** represented that he earned no income and that the  money he received was given "without any expectation for anything from anybody."

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO
## [26 U.S.C. § 7201]

40. General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

41. From on or about January 1, 2000, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing. Well knowing and believing the foregoing facts, Defendant **SPRINGER** did willfully attempt to evade and defeat the individual income taxes due and owing by him to the United States of America for the calendar year 2000, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion, including: receiving income in a fictitious name; directing individuals to write "donation" or "gift" on checks that were payment for services; directing individuals to pay for services by cashier's check; using a check-cashing business to cash checks; using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income; making false statements to agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

All in violation of Title 26, United States Code, Section 7201.

8

## COUNT THREE
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

42.     General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

43.     From on or about January 1, 2003, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.   Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2003, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion.   Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; using a check-cashing business to cash checks; and accepting collectible coins as payment for services.  Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion: using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and,

9

otherwise concealing and attempting to conceal from all proper officers of the United States

of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United

States Code Section 2.

10

## COUNT FOUR
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

44.     General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

45.     From on or about January 1, 2005, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.   Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2005, by failing to file a United States Individual Income Tax Return despite earning income of sufficient amount to require the filing of an individual income tax return, and by committing various affirmative acts of evasion.  Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; and using a check-cashing business to cash checks.  Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion:  using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means of payment to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue

11

Service; and, otherwise concealing and attempting to conceal from all proper officers of the

United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201, and Title 18, United

States Code Section 2.

## COUNT FIVE
### [26 U.S.C. § 7203]

46.     General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

47.     During the calendar year 2002, Defendant **SPRINGER** had and received gross income in excess of $7,700.  By reason of such gross income, he was required by law, following the close of the calendar year 2002 and on or before April 15, 2003 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2003, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

13

## COUNT SIX
## [26 U.S.C. § 7203]

48.    General Allegations paragraphs 1, 2, 5 and 6 are incorporated as if fully set forth herein.

49.    During the calendar year 2004, Defendant **SPRINGER** had and received gross income totaling in excess of $15,900.  By reason of that gross income, he was required by law, following the close of the calendar year 2004 and on or before April 15, 2005 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2005, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

DAVID E. O'MEILIA
UNITED STATES ATTORNEY

CHARLES A. O'REILLY
Trial Attorney, Tax Division
United States Department of Justice

KENNETH P. SNOKE
Assistant United States Attorney

A TRUE BILL

*/s/ Grand Jury Foreperson*
Grand Jury Foreperson

14

AO 245B   (Rev. 09/08) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| NORTHERN | District of | OKLA... |

**UNITED STATES OF AMERICA**

**V.**

OSCAR AMOS STILLEY

**JUDGMENT IN A CRIMINAL**

| Case Number: | 09-CR-043-002-SPF |
| USM Number: | 10579-062 |

Oscar Amos Stilley, Pro Se
Charles Robert Burton, IV, Standby Counsel
Defendant's Attorney

## THE DEFENDANT:

[] pleaded guilty to count(s) _____

[] pleaded nolo contendere to count(s) _____
which was accepted by the court.

[x] was found guilty on counts   One, Three, and Four of the Indictment
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 371 | Conspiracy to Defraud the United States | 1/15/09 | 1 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 3 |
| 26 U.S.C. § 7201 and 18 U.S.C. § 2 | Tax Evasion and Aiding and Abetting | 1/15/09 | 4 |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[] The defendant has been found not guilty on count(s) _____

[] Count(s) _____ [] is   [] are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States Attorney of material changes in economic circumstances.

April 23, 2010
Date of Imposition of Judgment

Signature of Judge

The Honorable Stephen P. Friot, U.S. District Judge
Name and Title of Judge

April 28, 2010
Date

AO 245B   (Rev. 09/08) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___6___

DEFENDANT:        Oscar Amos Stilley
CASE NUMBER:      09-CR-043-002-SPF

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:      180 months.  Sixty months as to each of Counts One, Three, and Four, all such terms to run consecutively to each other.

[x]   The court makes the following recommendations to the Bureau of Prisons:

The Court directs the Bureau of Prisons not to incarcerate the defendant with his co-defendant, Lindsey Kent Springer (USM
Number 02580-063).

[x]   The defendant is remanded to the custody of the United States Marshal.

[]   The defendant shall surrender to the United States Marshal for this district:

    []   at _____   []  a.m.   []  p.m.  on _____ .

    []   as notified by the United States Marshal.

[]   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    []   before 12 noon on _____ .

    []   as notified by the United States Marshal.

    []   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Case 4:09-cr-00043-SPF Document 738 Filed 09/22/20 Page 53 of 67
Appellate Case: 12-5113    Document: 01019809141    Date Filed: 01/25/2023    Page: 626

DEFENDANT:        Oscar Amos Stilley
CASE NUMBER:    09-CR-043-002-SPF

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : Three years.  Said term consists of three years as to each of Counts One, Three, and Four.  These terms of supervised release shall run concurrently, each with the others.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

[]    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse, but authority to administer drug testing for cause is retained. (Check, if applicable.)

[x]    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

[x]    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

[]    The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prison, or any state sex offender registration agency in which he or she resides, works, or is a student, or was convicted of a qualifying offense. (Check, if applicable.)

[]    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1.    The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer.
2.    The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month.
3.    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4.    The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living).
5.    The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6.    The defendant shall notify the probation officer at least ten days prior to any change of residence or employment.
7.    The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician.
8.    The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court.
9.    The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10.    The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11.    The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.
12.    The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.
13.    As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement (any objection to such notification shall be decided by the district court).
14.    The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment.
15.    The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

Case 4:09-cr-00043-SPF   Document 738   Filed 08/28/20   Page 54 of 67
Appellate Case: 22-5072   Document: 010110803144   Date Filed: 04/05/2023   Page: 627

Judgment—Page  4  of  6

| | |
|---|---|
| DEFENDANT: | Oscar Amos Stilley |
| CASE NUMBER: | 09-CR-043-002-SPF |

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2.  The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

    1.  The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses. All other bank accounts must be disclosed to the probation officer.

    2.  The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.

    3.  The defendant shall disclose all assets and liabilities to the probation officer. The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.

    4.  If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.

    5.  The defendant shall, upon request of the probation officer, complete a personal financial affidavit and authorize release of any and all financial information, to include income and tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

3.  The defendant shall abide by the "Special Computer Restriction Conditions" previously adopted by the Court, as follows:

    1.  The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the probation officer; and shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords.

    2.  The probation officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote monitoring software. Unless waived by the probation officer, the cost of remote monitoring software shall be paid by the defendant.

    3.  The defendant shall not access any on-line service using an alias, or access any on-line service using the Internet account, name, or designation of another person or entity; and report immediately to the probation officer access to any Internet site containing prohibited material.

    4.  The defendant is prohibited from using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of, data and/or images.

    5.  The defendant is prohibited from altering or destroying records of computer use, including the use of software or functions designed to alter, clean or "wipe" computer media, block monitoring software, or restore a computer to a previous state.

    6.  If instructed, the defendant shall provide all personal and business telephone records and credit card statements to the probation officer

4.  While on supervision, the defendant shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

5.  The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation. The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

6.  The defendant shall not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments. The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction. The defendant shall maintain employment. All employment must be approved in advance by the Probation Officer. The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

7.  If instructed by the Probation Officer, the defendant shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

8.  The defendant shall report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

9.  The defendant shall disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords. Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant. The defendant will be prohibited from accessing any on-line service using an alias on the internet account, name or designation or another person or entity. The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images. The defendant will be prohibited from altering or destroying records of computer use.

AO 245B    (Rev. 09/08) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Case 4:09-cr-00043-SPF  Document 738  Filed 08/28/20  Page 55 of 67
Appellate Case: 11-5113    Document: 01019003141    Date Filed: 01/25/2023    Page: 628

Judgment — Page ___5___ of ___6___

DEFENDANT:        Oscar Amos Stilley
CASE NUMBER:      09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 300<br>($100 as to each of Counts<br>One, Three, and Four) | $ N/A | $ 776,280 |

[]    The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

[x]    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| IRS-RACS<br>Attention: Mail Stop 6261<br>Restitution<br>333 West Pershing Ave.<br>Kansas City, Missouri 64108 |  | $ 684,653 |  |
| Arkansas Department<br>of Finance<br>and Administration Income<br>Tax Administration<br>P.O. Box 3628<br>Little Rock, Arkansas 72203 |  | $ 91,627 |  |

| TOTALS | $ _____0 | $ ____776,280 |
|---|---|---|

[]    Restitution amount ordered pursuant to plea agreement    $ _____

[]    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

[]    The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    []    the interest requirement is waived for the        []    fine    []    restitution.

    []    the interest requirement for the        []    fine    []    restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:     Oscar Amos Stilley
CASE NUMBER:    09-CR-043-002-SPF

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**    []   Lump sum payment of $ _____ due immediately, balance due

      []   not later than _____ , or
      []   in accordance with    []   C,    []   D,    []   E, or    []   F below; or

**B**    []   Payment to begin immediately (may be combined with    []   C,    []   D, or    []   F below); or

**C**    []   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**    []   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
      _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
      term of supervision; or

**E**    []   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**    [x]   Special instructions regarding the payment of criminal monetary penalties:

      Any criminal monetary penalty is due in full immediately, but payable on a schedule of the greater of $25 quarterly or 50% of income
      pursuant to the Federal Bureau of Prisons' Inmate Financial Responsibility Program while in prison. If a monetary balance remains,
      payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in equal monthly
      payments of $100 or 10% of net income (take home pay), whichever is greater, over the duration of the term of supervised release
      and thereafter as prescribed by law for as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing
      shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this
      Judgment.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial
Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

[]    Joint and Several

      Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount,
      and corresponding payee, if appropriate.

[]    The defendant shall pay the cost of prosecution.
[]    The defendant shall pay the following court cost(s):
[]    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.



# FILED

AUG 2 4 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| Prob 22 (12/2018) | | DOCKET NUMBER (Tran Court) |
|---|---|---|
| **TRANSFER OF JURISDICTION** | | CR-043-002-SPF |
| | | DOCKET NUMBER (Rec Court) |
| | | CR-22-357-001-F |

| NAME AND ADDRESS OF PROBATIONER RELEASEE: | DISTRICT Northern District of Oklahoma | DIVISION United States Probation Office |
|---|---|---|
| OSCAR AMOS STILLEY | NAME OF SENTENCING JUDGE | |
| | The Honorable Stephen P. Friot, | |

| | DATES OF: | From Date 8/10/2022 | To Date 8/9/2025 |
|---|---|---|---|
| | ☐ PROBATION | | |
| | ☒ SUPERVISED RELEASE | | |

**OFFENSE**

18 U.S.C. § 371          Conspiracy to Defraud the United States
26 U.S.C. § 7201 and 18 U.S.C. § 2    Tax Evasion and Aiding and Abetting
26 U.S.C. § 7201 and 18 U.S.C. § 2    Tax Evasion and Aiding and Abetting

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

    IT IS HEREBY ORDERED that pursuant to 18 U.S.C. § 3605 the jurisdiction of the probationer releasee named above be transferred with the records of the Court to the United States District Court for the WESTERN DISTRICT OF OKLAHOMA upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

| _____August 24, 2022_____ | _Stephen P. Friot, United States District Judge_ |
|---|---|
| Date | Stephen P. Friot, United States District Judge |

\* This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

    IT IS HEREBY ORDERED that jurisdiction over the above-named probationer releasee be accepted and assumed by this Court from and after the entry of this order.

| _____August 24, 2022_____ | _____ |
|---|---|
| Effective Date | United States District Judge |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                          DEFENDANT

DEFENDANT OSCAR STILLEY'S MOTION FOR DISCLOSURE OF LEGAL
AUTHORITY FOR STEPHEN P. FRIOT TO PRESIDE IN THIS CASE

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      Stephen P. Friot is a duly authorized district court judge for the Western

District of Oklahoma.

2.      Judge Friot is not a duly authorized district court judge for the Northern

District of Oklahoma.  He has never been nominated by the president, or confirmed

by the senate, for any judicial office in the Northern District of Oklahoma.

3.      Judge Friot apparently was assigned to this case on the authority of an order

called "Misc. #23."

4.      Misc. #23 by its terms expired on the last day of 2009.

5.      The District Court, in the person of Stephen P. Friot, was divested of

jurisdiction by the appeals of the defendants.

6.      On information and belief, neither "Misc. #23," nor any subsequent similar

version of same, has been in effect since this District Court was divested of

jurisdiction by the notices of appeal of Defendants.

7.      Stilley respectfully inquired of this court's jurisdiction in Docket 702.  Judge

Friot acknowledged this request in the order disposing of this motion.  Dkt. 719, pg.

1.

8.      Judge Friot at page 4 of Docket 719 said he didn't have jurisdiction, and

"dismissed" Docket 702.

9.      However, Judge Friot never answered the question about whether or not he

had any lawful authorization to preside, whether statutory or otherwise.

10.     Nobody has ever explained how Stephen P. Friot could be re-vested with

jurisdiction, after the conclusion of the appeal and the return of mandates, without

a current and valid authorization similar to that set forth in Misc. #23.

11.     On information and belief, Stephen P. Friot was never given authorization to

preside over this case after jurisdiction returned to the district court, when the

mandate was sent to district court from the 10th Circuit Court Clerk.

12.     On information and belief, Judge Friot, as a judge of the Western District of

Oklahoma but not of the Northern District of Oklahoma, does not have

authorization to preside over this case, at the present time.

13.     On information and belief, no order or official document authorized Judge

Friot to perform any official act in this case after the mandate was filed in this case

12/06/2011, Dkt. 462, and 12-20-2011, Dkt. 463.

14.     Stilley has called the clerks of both the Northern District of Oklahoma, and

the 10th Circuit, about these issues.

15.     Neither Stilley nor the clerk's office personnel to whom Stilley spoke are able to find a successor version of Misc. #23, in the court clerk files.

16.     Stilley is not able to find a successor version of Mis. #23 on the websites of the clerk's office of the Northern District of Oklahoma or the 10th Circuit.

17.     Neither Stilley nor the clerk's office personnel to whom Stilley spoke are able to determine whether or not any statute authorized the vesting of judicial authority in Judge Friot, subsequent to the filing of the mandates from the 10th Circuit Court.

18.     Therefore it appears that Judge Friot has not been legally authorized to preside or act in the captioned case, since the filing of the aforementioned mandates from the 10th Circuit Court.

WHEREFORE, Stilley respectfully requests a prompt and full rendition of all statutes or authorities whatsoever, providing Stephen P. Friot legal authorization to preside over this case after the expiration date of Misc. #23, December 31, 2009, and furthermore after the return of mandates from the 10th Circuit; and for such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted.

3

By: /s/ Oscar Stilley                    September 11, 2022
Oscar Stilley                            Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.  Stilley does not have access to Lindsey Springer's physical address, email, and phone number, and thus cannot serve him.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | **Case No. 09-cr-0043-2-SPF** |
| | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Before the court is a motion filed by defendant Oscar Amos Stilley, doc. no. 735.  The motion inquires as to the authority of the undersigned to preside in this case.  The government need not respond to the motion.  The arguments set forth in the motion are without merit.  And, although the court ordinarily does not answer legal questions posed more or less in the abstract by litigants, the court sees no harm in informing Mr. Stilley that the authority of the undersigned to preside in this matter is (and has been, since the inception of this case) established by the cross-designation order entered annually by the Chief Judge of the United States Court of Appeals for the Tenth Circuit.  The most recent such order was entered by Chief Judge Timothy M. Tymkovich on December 9, 2021.  The completion of appellate proceedings in this case eliminated any possible issues as to the authority of the District Court to proceed.[1]  Thus, although the arguments set forth in the motion are rejected, the motion is **GRANTED** to the extent set forth above, and otherwise

---

[1] The extent to which the pendency of appellate proceedings divests the District Court of jurisdiction to address matters pending before it is, in any event, a matter as to which there can be great variation, depending on the circumstances and status of the proceedings in the trial court and the appellate court.

**DENIED**.  As Mr. Stilley is aware, his supervision on supervised release has been transferred to the Western District of Oklahoma.  There is a possible issue as to whether that transfer was authorized by statute or otherwise.  It is anticipated that that matter will be addressed and promptly resolved in the Western District proceedings.

The clerk of this court is **DIRECTED** to provide a copy of this order to the assigned (or previously assigned) probation officers in the Western District and the Northern District.

DATED this 20th day of September, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p174 (Stilley) .docx

2

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )   **Case No. 09-cr-0043-2-SPF** |
| | ) |
| OSCAR AMOS STILLEY, | ) |
| | ) |
| Defendant. | ) |

## ORDER

The defendant, Oscar Amos Stilley (herein:  defendant), commenced his term of supervised release on August 10, 2022.  Thereafter, jurisdiction over the defendant, as a releasee, was transferred to the Western District of Oklahoma.  The Western District of Oklahoma has now re-transferred jurisdiction to this court.

IT IS HEREBY ORDERED that jurisdiction over the defendant releasee is accepted and assumed by this court from and after the date of entry of this order. This order shall have the same effect as a Probation form 22 transfer ("Transfer of Jurisdiction").

DATED this 3rd day of November, 2022.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p175 (Stilley) .docx

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                          Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                          DEFENDANT

### DEFENDANT OSCAR STILLEY'S MOTION FOR AN INITIAL APPEARANCE, WITH INCLUDED SUPPORTING BRIEF

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      This Court on November 4, 2022 set a hearing for revocation and sentencing, to be held November 21, 2022 at 10:30 AM.  No specific mention was made of an initial appearance within the contemplation of applicable rules.

2.      FRCrP 32.1(a)(2) requires an initial appearance before a magistrate judge.

3.      Various constitutional, statutory, and rule-based protections require as a practical matter that an initial appearance be conducted.

4.      An initial appearance must be set and conducted a reasonable time prior to any revocation hearing, in order to make the underlying constitutional rights meaningful.

5.      Stilley works for a non-profit organization at low pay.

6.      The trip to Tulsa takes about 2 hours.  Stilley drives an old car.  In case of any trip in which immediate remand is a possibility, however remote, prudence dictates bringing a driver, to ensure that the car doesn't go to impound.

7.      Early afternoon settings will allow Stilley to reasonably make the trip without overnight accommodations, the cost of which Stilley can ill afford.

8.      Stilley has inquired of counsel for the government as to their position. They don't object to an initial appearance because it is required by the rules. They object to any continuance, explaining that "[A]ny change to a later date or time would be a continuance in my view; however, I defer to the Court's calendar and discretion as to scheduling this matter."

### BRIEF IN SUPPORT OF MOTION

FRCrP 32.1(a)(2) requires an initial appearance for persons summoned to answer for an alleged violation of the terms of supervised release. Other provisions of the rule set forth requirements that demonstrate clearly that the purposes of the rule require an initial hearing a reasonable time prior to any revocation or sentencing hearing.

The rule calls for a hearing before a magistrate. This will contribute to judicial economy, since a magistrate of the Northern District of Oklahoma will be in the courthouse, and won't have to travel from Oklahoma City.

Counsel for the government say that they agree to the initial appearance but oppose any continuance. However, an initial appearance renders a continuance *of the currently set hearing* inescapable. This Court set a revocation and sentencing hearing for November 21, 2022. It is impossible to lawfully conduct such a hearing without *first* conducting an initial appearance. Indeed, the most logical time and place to discuss a subsequent setting, of whatever kind and character, would be at the initial appearance. In such case, all parties can be heard as to their schedules and legal positions with respect to upcoming hearings.

This sounds like a preference that the Court will set the initial appearance at the same time as the currently scheduled proceedings.  At the present time, the place of the hearing hasn't been determined.  There is no reason to believe that the current date and time for the hearing would necessarily be convenient for the randomly assigned magistrate judge.

The holiday season is upon us.  Stilley needs a reasonable amount of time to prepare for an initial appearance.  Stilley would respectfully propose that the initial appearance before a magistrate judge be set some time in early to mid-December, 2022.

WHEREFORE, Stilley respectfully requests an order directing the Clerk to randomly select a magistrate judge of the Northern District of Oklahoma, and set or cause to be set an initial appearance in early to mid-December 2022, for early afternoon; and for such other and further relief as may be appropriate whether or not specifically requested.

Respectfully submitted,

By: /s/ Oscar Stilley                    November 16, 2022
Oscar Stilley                            Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

3

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.  Stilley does not have access to Lindsey Springer's physical address, email, and phone number, and thus cannot serve him.

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. 09-cr-0043-2-SPF |
| | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before the court is Defendant Oscar Stilley's Motion for an Initial Appearance, doc. no. 741, filed on November 16, 2022.

For the reasons set forth below, the motion will be denied.

Rule 32.1 of the Federal Rules of Criminal Procedure states, in relevant part, as follows:

**(2) Upon a Summons.** When a person appears in response to a summons for violating probation or supervised release, a magistrate judge must proceed under this rule.

**(3) Advice.** The judge must inform the person of the following:

**(A)** the alleged violation of probation or supervised release;

**(B)** the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and

**(C)** the person's right, if held in custody, to a preliminary hearing under Rule 32.1(b)(1).

The purposes of the rule are satisfied where the defendant "possessed all the information that would have been provided to him at an initial appearance." United States v. Griggs, 130 Fed. Appx. 303, at 305 (11th Cir. 2005).

The Ninth Circuit reached the same conclusion under similar circumstances in <u>United States v. Vasquez-Perez</u>, 742 F.3d 896, at 900 (9th Cir. 2014):

> The petition alleged that he violated the terms of his supervised release by committing a crime.  Specifically, it contended that Vasquez-Perez violated 8 U.S.C. § 1326 by illegally reentering the United States near Quijota, Arizona on or before August 21, 2011.  The revocation petition properly identified the statute Vasquez-Perez was charged with violating and alleged the underlying facts.  Accordingly, we are persuaded that Vasquez-Perez was provided proper notice of the alleged violation of his supervised release.

*See also*, <u>United States v. Wimberly</u>, 368 Fed. Appx. 556, at 557 (5th Cir. 2010) (The rule is satisfied where the offender was either "aware of or was granted the Rule 32.1 protections of which he would have been admonished at an initial appearance.").

In the case at bar, Mr. Stilley, who once was a practicing lawyer, is well aware of the factual circumstances asserted to provide a basis for revocation of his supervised release.  He has long since been provided the documents from which he is well able to discern the precise nature of the asserted violations.  He is also obviously aware, by his mere citation to Rule 32.1 (if nothing else), of his right to retain counsel or to request that counsel be appointed.

Accordingly, the court quite readily concludes that the purposes of Rule 32.1(a) have been fully satisfied.  For that reason, the motion, doc. no. 741, is **DENIED**.

DATED this 16th day of November, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p176 (Stilley) .docx

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                               Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                                   DEFENDANT

### DEFENDANT OSCAR STILLEY'S MOTION TO REAPPOINT ROBERT BURTON IV AS STANDBY COUNSEL, WITH INCLUDED SUPPORTING BRIEF

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      This Court appointed Robert Burton, IV as standby counsel for Stilley before, after, and during trial.

2.      Stilley requests that Mr. Burton be appointed as standby counsel for the revocation proceedings.

3.      Stilley does not agree to any other attorney without prior consultation.

4.      Stilley does not agree to any capacity, save standby, without prior consultation.

5.      If Mr. Burton is for any reason unavailable or unwilling to serve as standby counsel, Stilley requests that this Court inform Stilley of the options that he has, if any, with respect to the question of counsel.

6.      To the extent not contrary to law or rule or Stilley's legal interests, Stilley incorporates all other motions and briefs filed on the same day as this pleading, as if set forth herein word for word.  Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first

docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP)

10(a), in support of his claims and arguments.

WHEREFORE, Stilley respectfully requests an order appointing Robert Burton, IV,

as standby counsel for the duration of these revocation proceedings; that if this

request is denied for any reason, Stilley be informed of the options available to him

with respect to the issue of counsel; and for such other and further relief as may be

appropriate whether or not specifically requested.

### BRIEF IN SUPPORT OF MOTION

FRCrP 32.1 (a)(3)(B) suggests that persons facing revocation are entitled to

retained or appointed counsel.  Otherwise it would seem very odd that the rule

requires the supervisee to be so informed.  Caselaw says that revocation of

supervised release is part of the punishment for the original crime.  If that is the

case, it makes sense the supervisee would be entitled to 6th Amendment counsel, or

perhaps to counsel under some other legal provision.

This Court seemed to be very pleased with the performance of Mr. Burton,

and allowed over $90,000 of legal fees.  Mr. Burton has familiarity with the

proceedings before, during, and after jury trial. Mr. Burton should have an

advantage over a lawyer with no prior knowledge of the case.

2

Stilley has very little experience with revocation of supervised release.

Therefore, if for whatever reason Stilley cannot have Robert Burton IV as standby

counsel, he requests that he be informed of the options available to him.


Respectfully submitted,


By: /s/ Oscar Stilley                          November 20, 2022
Oscar Stilley                                  Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF system,
thereby serving all persons having ECF privileges and entitled to service in this
case.  Stilley does not have access to Lindsey Springer's physical address, email,
and phone number, and thus cannot serve him.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                                Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                              DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION TO DISQUALIFY
STEPHEN P. FRIOT FOR LACK OF STATUTORY AUTHORIZATION, AND
MOTION FOR A LEGALLY QUALIFIED JUDGE TO BE ASSIGNED**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      Stephen P. Friot is a duly authorized district court judge for the Western
District of Oklahoma (OKWD).

2.      Judge Friot is not a duly authorized district court judge for the Northern
District of Oklahoma (OKND).  He has never been nominated by the president, or
confirmed by the senate, for any judicial office or seat in the Northern District of
Oklahoma.

3.      Judge Friot was originally assigned to this case on the authority of a "cross-
designation" order called "Misc. #23."

4.      Misc. #23 by its terms expired on the last day of 2009.

5.      The District Court was divested of jurisdiction by the appeals of the
defendants.

6.      Successor cross-designation orders have been signed by the chief judge of the
10th Circuit each year from at least 2008 (for the calendar year 2009) through 2021

(for the calendar year 2022). A full set of these orders, in chronological order, is attached hereto as Exhibit "1."

7.      Thus cross-designation orders have been outstanding continuously for at least the past 14 years.

8.      Stilley respectfully inquired of this court's jurisdiction in Docket 702.  Judge Friot acknowledged this request in the order disposing of this motion.  Dkt. 719, pg. 1.

9.      Judge Friot at page 4 of Docket 719 said he didn't have jurisdiction, and "dismissed" Docket 702.

10.     Stilley also filed a motion requesting the legal basis for Judge Friot's claim that he is the duly authorized federal judge assigned to preside over Stilley's criminal case, and particularly over Stilley's civil case under 28 USC 2255.

11.     Judge Friot, as a judge of the OKWD but not of the OKND, does not have authorization to preside over this case or over Stilley's civil case under 28 USC 2255, at any time subsequent to the mandates from the 10th Circuit in Lindsey Kent Springer's appeal and in Stilley's failed attempt to get the one direct appeal to which he is entitled by law.

12.     Stilley has called the clerks of the OKND, the OKWD, and the 10th Circuit, about these issues.  The clerks of the OKND and the OKWD both said they had no knowledge of the existence of any such cross-designation orders.

13.     On September 21, 2002, Stilley called a 10th Circuit employee named Amy, and told her that based on this Court's order (Dkt. 736) a cross designation order

was entered December 9, 2021.  Amy asked the 10th Circuit Clerk, and then told

Stilley that no such order had been entered on that date.

14.     Stilley later contacted Sheila M. Zuschek, CGMP, Office of the Circuit

Executive, who said their office had the cross-designation orders sought.  On

September 27, 2022, Ms. Zuschek sent Stilley copies of each of the orders attached

hereto.

15.     Stilley is not able to find these cross designations on the websites of the

clerk's office of the OKND, OKWD, or the 10th Circuit.  Furthermore, he was

unable to find any of their personnel knowledgeable of such orders, despite diligent

effort.

16.     Congress has created one judicial seat that simultaneously serves the OKND,

the OKWD, and the Eastern District of Oklahoma (OKED).

17.     That particular seat was occupied by the Honorable James F. Payne until he

retired.  Since that time the seat has been occupied by the Honorable John F. Heil.

18.     Judge Heil's name shows up on none of the cross-designation orders.

19.     Stilley challenges the authority of Stephen P. Friot for the reasons set forth

below.

20.     First, these cross-designation orders are not temporary, as required by the

plain language of 28 USC 292(b), cited as purported Congressional authority by

each of the challenged orders.

21.     Second, these *de facto* standing orders are not in the public interest, also

required by the plain language of 28 USC 292(b).  Rather, these orders are suitable

only for mischief such as stacking the deck against politically unpopular persons.

22.     Third, these orders render the random assignment requirements of the

various Oklahoma districts a practical nullity.  The random assignment orders don't

need to be attached as exhibits because they're public records available from their

respective court websites.  See OKND General Order 22-17;  OKWD General Order

11-1.

23.     Fourth, these cross-designation orders are essentially private laws, which

cannot with reasonable diligence be discovered by the citizens.

24.     Judge Friot has not been legally authorized to preside or act in the captioned

case, since the filing of the aforementioned mandates from the 10th Circuit Court.

25.     Nothing herein should be construed as an affirmative statement one way or

another, whether orders entered by Stephen P. Friot before the mandates are valid.

26.     Judge Friot acted contrary to the constitutional rights of Stilley, so as to

deprive him of his right to one direct criminal appeal.

27.     Stilley's petition under 28 USC 2255 is technically a civil case, with a

separate case number.

28.     Judge Friot has neglected and failed to cite any authority for him to preside

on Stilley's petition under 28 USC 2255.

29.     To the extent not contrary to law or rule or Stilley's legal interests, Stilley

incorporates all other motions and briefs filed on the same day as this pleading, as

if set forth herein word for word.  Stilley reserves and claims the right to rely on any

other part of the official record in the captioned case, from the filing of the first

docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP)

10(a), in support of his claims and arguments.


WHEREFORE, Stilley respectfully requests that Stephen P. Friot remove himself

from the captioned criminal case as well as Stilley's case under 28 USC 2255; that

Judge Friot inform the district court clerk that a duly authorized federal judge

should be randomly selected, to consider and decide motions filed subsequent to the

mandates from the 10th Circuit; that the District Court vacate all orders in the

captioned case, subsequent to the mandates from the 10th Circuit; and for such

other and further relief as may be appropriate whether or not specifically requested.


### BRIEF IN SUPPORT OF MOTION

This Court would have the world to believe that a *de facto* permanent

commission to two additional federal district courts, for a large number persons

duly seated as federal judges of a single judicial district, is legal.  But the peddlers

of this story don't believe that story themselves.

How do we know?  They don't publish these ersatz authorizations.  ***Nobody***

publishes these "authorizations." All four jurisdictions (10th Circuit,  OKWD,

OKND, OKED) have websites with local rules and general orders.  Not one posts

the orders that Stilley attacks in this motion - *anywhere*.  None of the clerks involved were even *aware* of these orders, when Stilley was doing his research.

Stilley asked this Court for the basis of his jurisdiction for a reason.  Stilley doesn't want new theories trotted out later.  Stilley doesn't want the sitting District Court to make up *legal theories* as it goes along.

This District Court waited until the most recent challenge, then stated that Judge Friot's authority was derived from the cross-designations attached to this pleading.

Stilley has otherwise briefed the court about the necessity of statutory authorization.  Without controversy, US district courts are creatures of statute, created by the Judiciary Act of 1789.  Google can tell you that much.

The pertinent statue is 28 USC 292(b).  Each of the cross-designation orders cite this statutory provision, and nothing else. The text of 28 USC 1792(b) is quite simple.  It reads as follows:

> **(b)**  The chief judge of a circuit may, **in the public interest**, designate and assign **temporarily** any district judge of the circuit to hold a district court in any district within the circuit.
> (Emphasis added)

It's pretty simple.  The elements are as follows:

1)   The chief judge of the circuit has to do the designation, of a sitting district judge;

2)  The designation has to be in the public interest;

3)  The designation has to be temporary.

These designations are anything but temporary.  They are entered at about the same time each year. Taken together, they amount to a permanent commission to all three of the districts of Oklahoma – for all the judges of all the districts of Oklahoma.

These orders aren't in the public interest.  There is no claim that the cross-designations are in the public interest, or that they are necessary for the public interest. They are an end run around the requirement for Congressional authorization of federal district court judgeships – nothing more.

The offending cross-designations render all the listed judges more powerful than the one judge with a commission to all 3 districts.  Judge Heil is listed on the publicly available general orders requiring random assignment of judges.  His commission to 3 districts doesn't amount to a *de facto* evasion of random assignment.

All the judges in the district, save Judge Heil, have the de facto power to evade the limitations of random assignment.  The judges are *hand-picked*.

That's not an inevitable feature.  The districts could enter a general order stating that in case of utilizing the cross-designation order, assignments must be random.  That would expose the scheme to public scrutiny, and apparently the powers that be don't want that to happen.

None of the excuses for assigning an unauthorized person to function as a district judge of the OKND are valid.  They were never valid, but the passage of time has eroded the excuses for evading Congressional authority.

Respectfully submitted,


By: /s/ Oscar Stilley                    November 20, 2022
Oscar Stilley                            Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case. Stilley does not have access to Lindsey Springer's physical address, email, and phone number, and thus cannot serve him.

# DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
### WITHIN THE TENTH CIRCUIT

**Defendant's Group Exhibit "1"**

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2009, through December 31, 2009, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne - Western District of Oklahoma

Frank H. Seay - Northern and Western Districts of Oklahoma

Ronald A. White - Northern and Western Districts of Oklahoma

Claire V. Eagan - Eastern and Western Districts of Oklahoma

Gregory K. Frizzell - Eastern and Western Districts of Oklahoma

Terence C. Kern - Eastern and Western Districts of Oklahoma

Robin J. Cauthron - Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti - Eastern and Northern Districts of Oklahoma

Stephen P. Friot - Eastern and Northern Districts of Oklahoma

Joe Heaton - Eastern and Northern Districts of Oklahoma

Timothy Leonard - Eastern and Northern Districts of Oklahoma

Vicki Miles-LaGrange - Eastern and Northern Districts of Oklahoma

David L. Russell - Eastern and Northern Districts of Oklahoma

Lee R. West - Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief
Judges and Clerks of the respective Districts.

12 - 30 - 2008

Date

Robert H. Henry, Chief Judge
United States Court of Appeals for
the Tenth Circuit

# DESIGNATION OF DISTRICT JUDGES
# FOR SERVICE IN OTHER DISTRICTS
# WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2010, through December 31, 2010, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

December 30, 2009
_____
Date

_____
Robert H. Henry, Chief Judge
United States Court of Appeals for
the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2011, through December 31, 2011, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma


Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.


_December 3, 2010_
Date

Mary Beck Briscoe, Chief Judge
United States Court of Appeals for
the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT


Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2012, through December 31, 2012, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

_November 30, 2011_
Date

_Mary Beck Briscoe_
Mary Beck Briscoe, Chief Judge
United States Court of Appeals for
the Tenth Circuit

**DESIGNATION OF DISTRICT JUDGES
FOR SERVICE IN OTHER DISTRICTS
WITHIN THE TENTH CIRCUIT**

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2013, through December 31, 2013, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.


_December 18, 2012_                    _Mary Beck Briscoe_
Date                                          Mary Beck Briscoe, Chief Judge
                                              United States Court of Appeals for
                                              the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT


Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2014, through December 31, 2014, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

November 21, 2013
_____
Date

Mary Beck Briscoe
_____
Mary Beck Briscoe, Chief Judge
United States Court of Appeals for
the Tenth Circuit

# DESIGNATION OF DISTRICT JUDGES
# FOR SERVICE IN OTHER DISTRICTS
# WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2015, through December 31, 2015, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

_November 25, 2014_
Date

Mary Beck Briscoe, Chief Judge
United States Court of Appeals
for the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2016, through December 31, 2016, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

11/30/2015
_____
Date

Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

**DESIGNATION OF DISTRICT JUDGES
FOR SERVICE IN OTHER DISTRICTS
WITHIN THE TENTH CIRCUIT**

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2017, through December 31, 2017, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

12/13/2016
_____
Date

Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2018, through December 31, 2018, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

Ronald A. White – Northern and Western Districts of Oklahoma

James H. Payne – Western District of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

_11/21/2017_
Date

_Timothy M. Tymkovich_
Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

**DESIGNATION OF DISTRICT JUDGES
FOR SERVICE IN OTHER DISTRICTS
WITHIN THE TENTH CIRCUIT**

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2019, through December 31, 2019, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

Ronald A. White – Northern and Western Districts of Oklahoma

James H. Payne – Western District of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Charles Goodwin – Eastern and Northern Districts of Oklahoma

Scott L. Palk – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

11/9/2018
_____
Date

Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2020, through December 31, 2020, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

Ronald A. White – Northern and Western Districts of Oklahoma

James H. Payne – Western District of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Charles Goodwin – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Scott L. Palk – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Patrick Wyrick – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

_11/18/2019_
Date

Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

## DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
## WITHIN THE TENTH CIRCUIT

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2021, through December 31, 2021, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

Ronald A. White – Northern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Jodi Dishman – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Charles Goodwin – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Bernard Jones – Eastern and Northern Districts of Oklahoma

Scott L. Palk – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Patrick Wyrick – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

11/17/2020
_____
Date

_____
Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

**DESIGNATION OF DISTRICT JUDGES**
**FOR SERVICE IN OTHER DISTRICTS**
**WITHIN THE TENTH CIRCUIT**

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2022, through December 31, 2022, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

Ronald A. White – Northern and Western Districts of Oklahoma

John E. Dowdell – Eastern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Jodi Dishman – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Charles Goodwin – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Bernard Jones – Eastern and Northern Districts of Oklahoma

Scott L. Palk – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

Patrick Wyrick – Eastern and Northern Districts of Oklahoma

Appellate Case: 22-5113   Document: 010110803141   Date Filed: 01/25/2023   Page: 682

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

December 9, 2021
_____
                    Date

_____
Timothy M. Tymkovich, Chief Judge
United States Court of Appeals
for the Tenth Circuit

Appellate Case: 22-5113    Document: 010110803141    Date Filed: 01/25/2023    Page: 683

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                          DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION TO QUASH THE
SUMMONS AND STRIKE ALL OTHER DOCUMENTS FROM THE
WESTERN DISTRICT OF OKLAHOMA AND DISMISS FOR LACK OF
JURISDICTION, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      This Court on 8-24-2022 without notice or opportunity to be heard entered

an order purporting to transfer jurisdiction over this case to the Western District of

Oklahoma (OKWD).  Dkt. 733.

2.      This Court on 9-20-2022 entered an order fixing a briefing schedule for any

challenge to jurisdiction in the OKWD.  OKWD 5:22-cr-357-F, Dkt. 13.

3.      This Court on page 1 of that order stated that "[I]f the court concludes that

the transfer was not authorized by statute, the transfer will be vacated and the

matter will proceed in the Northern District (with the undersigned presiding

pursuant to cross-designation.) "

4.      Stilley filed a challenge jurisdiction in the OKWD.  OKWD 5:22-cr-357-F,

Dkt. 14, a motion to vacate docket #1, the transfer order.  A supporting brief was

filed.  OKWD 5:22-cr-357-F Dkt. 15.

5.      Stephen P. Friot, in his capacity as an OKWD district judge, on 11-3-2022

stated that he was "…not sufficiently satisfied that the transfer from the Northern

District to the Western District was statutorily authorized. ..."  Id., OKWD 5:22-cr-357-F Dkt. 20, page 2.

6.    Stephen P. Friot did not vacate the transfer order, as promised less than 2 months previously.

7.    Rather, Stephen P. Friot entered an order purporting to transfer the entire record in OKWD 5:22-cr-357-F. *Id.*

8.    Since the OKWD had no jurisdiction, by the admission of the sitting district court, the OKWD had nothing to transfer.

9.    The purported transfer of jurisdiction is a legal nullity.  There was no jurisdiction to transfer.

10.    The petition and amended petition for summons, the summons, and the violation report are all legal nullities.

11.    The District Court in the OKND case captioned above is not relying on any claim of statutorily authorized jurisdiction in the OKWD.

12.    All the papers accusing Stilley were prepared and filed in the OKWD, by OKWD personnel, whether personnel of the US Probation Office or of the US Attorney's Office.

13.    The OKWD summons (OKWD 5:22-cr-357, Dkt. 4) upon which Stilley is commanded to come to courtroom 3 on the 4th floor of the federal courthouse in Tulsa, Oklahoma, answer certain allegations of wrongful conduct, etc., was and is altogether *ultra vires* and void.  Said summons is a legal nullity.

14.     No person acting in the capacity of an officer of the OKWD had authority to summon Stilley anywhere, on the basis of the purportedly transferred case.

15.     No personnel of OKWD US Probation had any *de jure* authority to file any petition for warrant or summons, any violation report, or any other accusatory document whatsoever, on the basis of the purported transfer of jurisdiction or otherwise.

16.     Stilley has made diligent inquiry, and has found no official or employee of the OKND US Probation office who claims any responsibility whatsoever, for the issuance of summons or other criminal process against Stilley.

17.     The government will not be prejudiced by the relief sought.

18.     The government is free to file a new petition for warrant or summons in the OKND.

19.     Any such new petition would be totally frivolous and wholly without merit, for a veritable litany of reasons not the least of which being the fact that all the claims made are wholly repugnant to the 4th and 5th Amendments.

20.     Plus, Stilley as of even date has his own motion to modify and clarify. Stilley's pleading is at least one step ahead of anything the government might file.

21.     To the extent not contrary to law or rule or Stilley's legal interests, Stilley incorporates all other motions and briefs filed on the same day as this pleading, as if set forth herein word for word.  Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first

3

docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.

WHEREFORE, Stilley respectfully requests an order quashing the summons and striking all other documents from the Western District of Oklahoma, and dismissing the petition to revoke Stilley's supervised release; and for such other and further relief as may be appropriate whether or not specifically requested.

## BRIEF IN SUPPORT OF MOTION

"Courts created by statute can have no jurisdiction but such as the statute confers." *Sheldon* v. *Sill*, 8 How. 441, 449 (1850).  This principle is aptly explained in *United States v. Dao* (N.D. Cal. 2015), where the Court said:

> Here, the Northern District of California accepted jurisdiction over Defendants' supervision on August 25, 2014. Jurisdiction to modify or terminate supervised release was therefore vested **exclusively** with the Northern District on that date. When the Eastern District of California issued orders nearly a year later purporting to terminate Defendants' terms of release, it did so without jurisdiction. Those orders are, unfortunately, void. See *In re Establishment Inspection of Hern Iron Works*, 881 F.2d 722, 726-27 (9th Cir. 1989) (stating that any court order issued without jurisdiction is a nullity or "nothing at all"). As a result, Defendants' supervisorial status remains unchanged.
> (Emphasis added)

Same problem here.  The District Court entered an order of transfer.  An OKWD Probation Officer named Jay Mauldin signed a "petition for warrant or summons...," on August 24, 2022.  Dkt. 3.  Another OKWD Probation Officer named

Aric Holloway filed an amended petition for warrant or summons…," on September 7, 2022.  Dkt 6.  Mr. Holloway filed a violation report on September 8, 2022. Dkt. 8.

The District Court doesn't even claim the transfer was statutorily authorized. The order says he was "not sufficiently satisfied that the transfer…was statutorily authorized."  An affirmative statement that one is "not sufficiently satisfied" does not state or imply that the speaker has **any** level of confidence that the transfer **was** statutorily authorized.

Stilley requested vacatur.  The District Court **did not** grant vacatur, despite having promised so to do, in OKWD 5:22-cr-357-F, Docket #13.  Rather, the District Court purported to transfer all the official acts of the OKWD back to the OKND.

The District Court in OKWD 5:22-cr-357-F, Docket #20 said "…the relief sought by defendant in his motion, doc., no. 14, is granted to the following extent: …" Thereupon the order purported to transfer both jurisdiction over Stilley, and all the prosecutorial pleadings against Stilley, back to OKND.

Stilley never sought such relief.  That "relief" is not a subset of the relief sought by Stilley.  Stilley requested "…that Docket #1 be vacated; that proceedings in the OKWD be terminated."  OKWD 5:22-cr-357-F, Docket #14, page 11.

If the OKWD didn't have jurisdiction, all the official acts of officers of OKWD are legal nullities.  When a court lacks jurisdiction, the only thing left to do is to state the fact and dismiss the case.  This principle was well explained in *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998), as follows:

> We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends

5

fundamental principles of separation of powers. This conclusion should come as no surprise, since it is reflected in a long and venerable line of our cases. "Without jurisdiction the court cannot proceed at all in any cause. **Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.**" *Ex parte McCardle*, 7 Wall. 506, 514 (1869). "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof Hotel Co.* v. *Jones*, *supra*, at 453. The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of  the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. L.M.R. Co.* v. *Swan*, 111 U.S. 379, 382 (1884).
(Emphasis added)

This District Court does not *believe* that the transfer order, filed on the dockets of both cases, was done pursuant to statutory authorization.  No judicial officer claims that the original order of transfer was done on the basis of statutory authorization or jurisdiction.

The original transfer order transferred nothing.  It amounts to a legal nullity.  The OKWD never had jurisdiction.  All the acts of OKWD officers are legal nullities.  OKWD 5:22-cr-357, Dkt. 20, transferred nothing because it had nothing to transfer.

The summons is a special case.  A criminal summons commands an alleged offender to appear and defend against allegations of misconduct.  The OKWD had no jurisdiction and thus no power to issue this summons.  It must be quashed and held for naught.

Given the lack of jurisdiction, no further explanation is required.  Stilley will provide some additional information, for his own good reasons.

6

Take a look at Federal Probation and Supervised Release Violations, page 24. This is an official document of the US Sentencing Commission.  It says that 28% of supervisees of OKWD violate the conditions of their supervised release, whereas only 14% of those in OKND do the same.

Should Americans believe that people are twice as bad and twice as deserving of a double shot of prison simply because they live on the wrong side of a political boundary?  Or should we acknowledge that political boundaries, political subdivisions, and political appointments to judicial office have life-changing consequences?

Stilley has made diligent inquiry.  Nobody in the Western District of Arkansas (ARWD) or the OKND acknowledges the slightest responsibility for the *decision* to attack Stilley criminally. That question is separate from questions about *effectuating* such a decision once made.

Stilley respectfully requested a reasonable time to seek clarification and modification of his conditions of supervised release.  This request was denied, but by whom, and in what capacity? Nobody is willing to answer that question.


Respectfully submitted,

By: /s/ Oscar Stilley                          November 20, 2022
Oscar Stilley                                  Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, thereby serving all persons having ECF privileges and entitled to service in this case.  Stilley does not have access to Lindsey Springer's physical address, email, and phone number, and thus cannot serve him.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                                    Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                              DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION FOR EARLY PSR, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      Stilley has been informed of the existence of pending criminal charges in the captioned case, in the form of revocation proceedings.

2.      Stilley has been informed, pursuant to the US Supreme Court case *Class v. US*, 200 L. Ed. 2d 37 (2018) that "[T]he plea of guilty is, of course, a confession of all the facts charged in the indictment, and also of the evil intent imputed to the defendant."  (Citing to *Commonwealth v. Hinds*, 101 Mass. 209, 210 (1869).)

3.      Stilley is entitled, at the least, to enter either a plea of "guilty" or "not guilty" as he may choose on the basis of a fair and reasonably complete understanding of the nature and cause of the accusations against him.  This is true no matter the nomenclature, for example pleas of "true" or "not true."

4.      Stilley firmly stands upon his right to enter an informed and voluntary plea at initial appearance, either personally or by and through counsel.  Even if initial appearance within the meaning of FRCrP 32.1(a)(2) is denied, the basic principle remains the same.

5.      Stilley cannot upon the bare reading of the amended petition to revoke now

pending before the bar of the court understand the charges.

6.      Stilley cannot reasonably know and comprehend the facts that will be for all

practical purposes deemed  "admitted" by a guilty plea, or the evil intent to be relied

upon by the Court in consideration of punishment.

7.      Apparently counsel for the government can't either.  They refuse to say what

specific wrongful conduct Stilley would admit to, if he chose to "take a knee."

8.      Stilley is reasonably certain that he will be able to understand the charges,

sufficient to enter an informed and voluntary plea, if he is given a chance to

promptly and fairly confer with the appropriate US Probation Officer, in the

preparation and submission to the Court, of a Presentence Investigation Report

(PSR).  It matters not that such report may be denominated a "violation report."

For purposes of this pleading, the term "PSR" should be construed to include a

"violation report."  Any PSR, by whatever name, should include all information

necessary for the statutory and rule based purposes of a PSR.

9.      More than 95% of all federal defendants ultimately plead guilty.

10.     Furthermore, statistically speaking more than 90% of all federal criminal

defendants electing a trial, whether by jury or to the court, will be convicted of one

or more counts of the indictment.

11.     Neither the government nor the US Probation nor the administration of

justice will be prejudiced or disadvantaged in any material way, by the early

production of a PSR, since a PSR is virtually always eventually required.

12.     An early PSR will contribute to judicial economy, inasmuch as it gives the defendant a better understanding of the true nature and cause of the accusation, the consequences of various findings of fact, and the government's theories of the case and their factual support.

13.     Stilley is statutorily and constitutionally entitled to a fair and speedy trial.

14.     The federal Speedy Trial chapter, in 18 USC 3161(h)(3)(A), excludes from speedy trial calculations "any period of delay resulting from the absence or unavailability of the defendant or an essential witness."

15.     The same chapter, in 18 USC 3162(b), provides punishment for counsel who knowingly allow a case to be set for trial without disclosing the fact that a "necessary" witness would be unavailable for trial.

16.     Stilley, and also the American public generally, are all beneficiaries of the right to speedy trial.   Stilley claims all such rights (whether statutory or constitutional) for himself.

17.     Stilley needs to know the identity of all witnesses known to or reasonably ascertainable by the government, so that neither Stilley nor his counsel (if any, and whether standby or not) will be liable for punishment for allowing a trial to be set despite the unavailability of any "essential" or "necessary" witness.

18.     Stilley respectfully claims and stands upon his constitutional right of compulsory process for witnesses favorable to the defense.

19.     Stilley has legal and equitable rights to evaluate witnesses known to the government, and their relevant personal knowledge, so as to determine for himself

3

whether are not such witnesses may have knowledge such that Stilley would need in order to fairly and effectively exercise his 6th Amendment constitutional right of compulsory process for witnesses in a criminal case.

20.     Stilley cannot well exercise his constitutional rights, and discharge his statutory obligations, without knowing the identity of witnesses known to the government, and the substance of their knowledge of facts material to this case, prior to the time that this court sets this case for trial.

21.     Federal criminal cases are routinely set for trial at the arraignment, or within a few days thereafter.  This case seems to be running faster than normal, with an attempt to cram everything into one hearing.

22.     Therefore, Stilley is constitutionally and statutorily entitled to knowledge of all witnesses known or believed by the government to have knowledge of facts material to the issues in this case, including but not limited to basic facts, facts establishing jurisdiction or venue, etc.

23.     Stilley is constitutionally entitled to plead according to his choice and informed decision making, whether "guilty" or "not guilty," without the threat of retaliation of any kind, including but not limited to threats of additional charges, more severe punishment, novel theories of prosecution, "plumping" of the facts, etc.

24.     Therefore Stilley respectfully requests that this Honorable District Court order the production of the PSR, with all deliberate speed, fairly and honestly upon the accusations in the indictment purportedly returned by the grand jury as well as the alleged violations of supervised release, and not otherwise.

25.    Stilley by signature below (whether personally or by and through counsel) agrees to such production of a PSR, and to its early disclosure to the District Court and other authorized persons.

26.    Stilley respectfully requests that the PSR be divided into parts that contain sensitive information about Stilley, and those that merely set forth the alleged offense conduct, etc.  Stilley requests that nothing be sealed except that which is required to protect the personal information of Stilley.

27.    Stilley respectfully requests that the District Court order and direct that the government refrain from any retaliation or adverse consequence whatsoever, based upon Stilley's election(s) with respect to any claims of constitutional right.

28.    Alternatively, Stilley respectfully requests an order commanding the government to disclose, within 5 days of the Court's order, the sum and substance of all threats, retaliation, or adverse consequences whatsoever, that the government may or will utilize in order to "incentivize" the Defendant's "waiver" or other surrender, relinquishment, or diminution of any constitutional right.

29.    Stilley needs this information in order to make an informed decision concerning his legal acts, including but not limited to his entry of a legally authorized plea, or later change of plea, in this criminal case, either personally or by and through counsel.  This request should not be construed to include any criticism of the open and honest rules providing for a 2 or 3 point reduction for acceptance of responsibility, assessed against fair, honest, evenhanded, and

disinterested calculations in the PSR.  Stilley can review these rules in various publicly available legal resources.

30.     Stilley has procured information presumably useful in the preparation of a PSR, based on his understanding of the general outline and the facts normally set forth in a PSR, in order to streamline the process and reduce the time and effort necessary to produce an early PSR.  Stilley stands ready and willing to expedite the process, reduce the burden on US Probation, etc., to the extent not unduly prejudicial to Stilley's constitutional and statutory rights.

31.     Stilley respectfully requests advance notice, at the earliest practicable time, of any unagreed facts for which the Defendant will not be permitted a determination by jury verdict, special verdict, interrogatories, or other findings of fact by the jury.

32.     Stilley claims the right to a jury trial, but only to the extent stated herein.

33.     Stilley claims a jury trial if he faces a potential *aggregate* incarceration in excess of the statutory maximum, with allowances for all vested good time.

34.     Stilley claims the right to know at the outset whether he faces potential aggregate incarceration in excess of the statutory maximum for the three counts of the purported indictment.

35.     Stilley also claims the right to a jury trial if the government proceeds on any theory except the theory stated not less than 6 times in various pretrial pleadings. Specifically, that theory is that Lindsey Springer earned money, and Stilley paid those earnings to him out of client funds.

36.     The pretrial theory is diametrically opposed to the "stealing" theory relied upon at sentencing, which should make it easy to prove Stilley's right to a judgment of acquittal, at any sentencing.

37.     Stilley respectfully requests guidance concerning the process and procedure for litigating disputes, should any arise, concerning findings of the PSR.

38.     Stilley respectfully requests formal advance notice of any intention by the Court to consider a potential upward variance or departure, and the reasons for same.  See *Irizarry v. US*, 553 US 708 (2008), which suggests that such a request is a suitable method of addressing the "distinction without a difference" between a "variance" and a "departure."  All the opinions in that case are important, including concurrences or dissents.

39.     Stilley hereby agrees to waive speedy trial as to those days necessary and proper for the expeditious preparation of an early PSR, including such time as the Court may deem appropriate for either resolving, or setting the framework for resolving, disputes with respect to fair characterization of the accusations of the indictment and any petition for warrant or summons.

40.     Stilley has a pending request for certiorari, 22A334.  Stilley was given a 60 day cure period by letter dated October 20, 2022. Stilley respectfully requests written assurances that he will not be incarcerated contrary to the language and intent of Supreme Court rule 36, which prohibits transferring the custody of a habeas litigant to his disadvantage.

41.     The government amended its petition for warrant or summons to allege a

violation of supervised release for pleading the 5th Amendment.

42.     Stilley invited the government to produce citations showing that Stilley's 5th

Amendment plea was not legally sound.  No such authorities were provided.

43.     In fact, the allegations of the amended petition for warrant or summons are

totally frivolous and wholly without merit, to the extent that they claim a 5th

amendment plea violates the terms of supervised release.

44.     Nothing within the standard or special conditions arrogates to the

government the right to punish for exercise of a constitutional right.

45.     Stilley believes that upon being confronted with the case law, the government

will have to concede that the 5th Amendment allegations are legally frivolous and

unsupportable.  The best place to hash these things out is with an honorable US

Probation officer preparing a PSR.

46.     To the extent not contrary to law or rule or Stilley's legal interests, Stilley

incorporates all other motions and briefs filed on the same day as this pleading, as

if set forth herein word for word.  Stilley reserves and claims the right to rely on any

other part of the official record in the captioned case, from the filing of the first

docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP)

10(a), in support of his claims and arguments.

        WHEREFORE, Stilley respectfully requests that this Court order an early

PSR, to be prepared as soon as reasonably practicable, conformably to the statutory

and constitutional rights of Stilley as outlined herein, and otherwise; for an order

prohibiting the government from any retaliation or adverse consequence

whatsoever, for the claim and exercise of any constitutional or statutory right;

alternatively for prompt disclosure of all threats, retaliation, or adverse

consequences that the government will or may use to "incentivize" the waiver of one

or more constitutional or other legal rights whatsoever; for notice of the maximum

punishment he faces under this or any subsequent petition for warrant or

summons; for written notice of any potential upward variance or departure, and the

reasons for same, as contemplated by the opinions in *Irizarry*, including but not

limited to the dissent; for notice of the procedure and means for challenging findings

of the PSR; for assurances that Stilley's access to the wherewithal to competently

prosecute an appeal will not be diminished; and for such other and further relief as

may be appropriate whether or not specifically requested.


### BRIEF IN SUPPORT OF MOTION

Stilley has made diligent efforts to ascertain the nature and cause of the

accusation.  Aric Holloway refuses to make further findings or clarifications.  He

claims the court has the right to impose a sentence which will, in the aggregate,

exceed the maximum sentence for all three counts of conviction.  Indeed he claims

the Court could sentence Stilley to 2 years on each of three counts, to run

consecutively for 6 years total incarceration.  He provides no authority for this

extravagant claim.

Prison time due to revocation proceedings is punishment **for the original crime**.  *United States v. Haymond*, 869 F.3d 1153, 1165 (10th Cir. 2017)  Stilley can't see any legal way to exceed the statutory maximum sentence without a jury trial.  If the government and/or this Court see things differently, Stilley needs to know before making a plea or response.  Stilley at least needs a starting place, some case law that would arguably support the government's position.

The government has inquired about the possibility of a guilty plea (however denominated) but can't provide the slightest clarification of what a guilty plea means, or the max punishment.  They apparently plan to stand silent if Stilley pleads guilty.  The plan if Stilley doesn't plead is less clear, but Stilley assumes they'd have some arguments, and some case law to back up the arguments.

Stilley needs to know the possible consequences of a guilty plea.  Stilley is entitled to enter an *informed* plea, out of whatever choices the Court may offer.

This Court at the original sentencing found a Guideline Range of 121-151 months, then sentenced Stilley to 180 months.  When Stilley complained, the Court said that it was a variance, not a departure.

The US Supreme Court has suggested the process used here, to prevent unfair surprise, denial of constitutionally required notice, etc.  The dissent in *Irizarry v. United States*, 553 U.S. 708, 722 (2008) suggested as follows:

> … " If a presentence report includes a section on whether a variance would be appropriate under § 3553(a), that would likely eliminate the possibility that the district court would wind up imposing a non-Guidelines sentence for some reason *not previously identified*."
> (Emphasis in original)

10

Stilley doesn't know the Court's intentions.  The refusal to grant an unopposed motion for initial appearance does not bode well.

Stilley doesn't know what this Court perceives to be the statutory maximum. Stilley got exactly a year off his sentence, after accounting for vested Good Conduct Time from the Department of Justice-Federal Bureau of Prisons (DOJ-FBOP).

Stilley takes the position that the statutory maximum sentence in this case, without a jury, is one year.  "Statutory" must be taken in the light of all relevant statutes, not just one statute stating a general rule.

Stilley takes the position that if the government seeks to rely upon any theory of criminal liability save the pretrial theory, Stilley is entitled to a jury trial. Of course, even the government admitted that the pretrial theory couldn't possibly support a conviction.

Stilley would like to know the position of the government and the Court before entering a plea.  The best place for that is on a PSR.

Stilley has a pending petition for certiorari case at the US Supreme Court, 22A334. Rule 36(1.) of that Court states in pertinent part:

> Pending review in this Court of a decision in a habeas corpus proceeding commenced before a court, Justice, or judge of the United States, the person having custody of the prisoner may not transfer custody to another person unless the transfer is authorized under this Rule.

The gravamen of this rule is that a habeas petitioner generally is not to be subjected to conditions less favorable for the prosecution of the proceedings.  Stilley has inquired of the government about their intentions.

11

Stilley has asked if the government is willing to commit to either a stay pending appeal or home confinement.  Stilley spent two years on home confinement, and got along fine after he got away from an individual who withheld phone bills.  Stilley has no doubt that his case manager at City of Faith halfway house in Little Rock, AR, would give him a good recommendation.

Stilley needs to know if he will be *assured* of access to common office software, internet access, competent legal resources, etc.  If that's under attack, Stilley needs to know up front, before he enters a plea.

At the original sentencing, this Court said at 466-467:

24 On the issue of remand, let me first say, gentlemen, that
25 I am fully cognizant of the seriousness of this question,

466
1 especially as it applies in your situation having invoked your
2 right, as you have, and it's an important right, to represent
3 yourselves. And I am fully cognizant of the fact that
4 incarceration may well have some impact on your ability to
5 proceed representing yourselves. **To the extent that the Court**
**6 can within the bounds of the law and common sense ameliorate**
**7 that, then I will be happy to consider anything that the Court**
**8 might properly address in that regard**.
(Emphasis added)

Stilley spent some 2 years on home confinement, without any damage to society.  Stilley wants assurance of a stay pending appeal.  However, if incarceration is imposed and that is denied, Stilley wants ***up front*** assurances that he will be allowed to return to home confinement so as to effectively pursue legal remedies at the 10th Circuit.

Stilley is asking the Court to keep its word.  The statutory scheme makes it really easy to do that.  Consider 18 USC 3583 (e)(4), which provides as one option on sentencing for a violation of supervised release:

> (4)  order the defendant to remain at his place of residence during nonworking hours and, if the court so directs, to have compliance monitored by telephone or electronic signaling devices, except that an order under this paragraph may be imposed only as an alternative to incarceration.

Stilley requests this early binding commitment for the three reasons.  One, without this commitment the District Court could intimidate Stilley into a less vigorous defense, lest he offend the District Court and bring down retaliation on himself.  Overt threats aren't required.  Everybody knows the fear in the back of Stilley's mind.

Two, without such an early commitment, the District Court *de facto* gives the government a nice big billy club useful primarily for extorting a false guilty plea.  Without assurances that his litigation capabilities will not be diminished, the **_relative_** appeal of a guilty plea is greatly enhanced.  The government gets an unlawful benefit pretrial.

Three, an order of incarceration in jail or prison simply devastates Stilley's ability to defend himself on appeal or in other proceedings, including but not limited to his 2255 petition.  Even if Stilley walks on eggshells, Stilley faces the possibility that his litigation capabilities will be utterly devastated.

The government amended the petition for warrant or summons to include allegations that Stilley violated supervised release by pleading the 5th Amendment.  The government's own exhibits will show that Stilley invited the government to

show any authority supporting their position.  Government Exhibits 2 and 4, in

each case at continuation page 2.

The government cited no authority because it can't.  The government's theory

is legally frivolous.  Consider the following extensive quotation from *United States*

*v. Richards*, 958 F.3d 961, 966-68 (10th Cir. 2020).

> … Here, neither the Government nor any other entity has threatened—
> explicitly or by implication—to revoke Defendant's supervised release if he
> refuses to answer a question during a polygraph examination on valid Fifth
> Amendment grounds. **Nothing in the record suggests the Government
> has attempted or intends "to take the extra, impermissible step" of
> compelling Defendant to incriminate himself.** *See Murphy*, 465 U.S. at
> 436. To the contrary, the Government affirms in its brief that "Defendant
> faces no risk of revocation based on validly asserting his privilege[ ] because
> such a revocation would be unlawful."
>
> Nor does the polygraph condition, on its face, spell out that forbidden
> penalty. The condition provides "[t]he results of [Defendant's] polygraph
> testing . . . can be used in a violation proceeding in this criminal case." **It
> does not follow from this language, however, that the condition
> permits revocation of Defendant's supervised release based on his
> refusal to answer polygraph questions on valid Fifth
> Amendment grounds.** We do not read the district court's order to allow—
> much less endorse—the imposition of such a **plainly unconstitutional**
> penalty. *Cf. United States v. Mike*, 632 F.3d 686, 696 (10th Cir.
> 2011) (interpreting conditions of supervised release narrowly so as not to
> implicate significant liberty interests); *see also United States v. Davis*, 242
> F.3d 49, 52 (1st Cir. 2001) (per curiam) (construing special condition
> of supervised release to avoid Fifth Amendment concerns).
>
> While Defendant would have preferred the polygraph condition to
> include language ensuring the implementation of this requirement will
> comply with the Fifth Amendment, the absence of such limiting language
> does not render the condition unconstitutional or otherwise
> infirm. *See United States v. Pabon*, 819 F.3d 26, 29, 34 (1st Cir.
> 2016) (concluding polygraph-testing condition without limiting language did
> not violate the Fifth Amendment because it did not require the defendant to
> answer incriminating questions); *United States v. Lee*, 315 F.3d 206, 212 (3d
> Cir. 2003) (same). *The Fifth Amendment—not the terms of a special
> condition—guarantees Defendant's privilege against self-
> incrimination.* Accordingly, Defendant remains free to legitimately exercise
> his Fifth Amendment right without facing the risk that a valid assertion of

his privilege and refusal to incriminate himself during a polygraph
examination will result in revocation of his supervised release.

      If, at a later date, the Government changes its position and threatens
to revoke Defendant's supervised release based on his valid invocation of his
privilege against self-incrimination during a polygraph examination,
Defendant may raise a Fifth Amendment challenge at that time. *See United
States v. Zinn*, 321 F.3d 1084, 1089 (11th Cir. 2003) ("By determining a
challenge to the polygraph testing requirement to be generally ripe, however,
we do not imply that all specific challenges to the *implementation* of this
condition are necessarily ripe."). But until such an eventuality occurs (**and
hopefully it never does**), we can only decide whether the challenged
polygraph condition facially violates the Fifth Amendment. We conclude it
does not.
(Emphases added)

Stilley made diligent effort, both orally and in writing, to explain his

quandary and offer performance consistent with the government's interests and his

own constitutional rights. The government has offered no brief or citations to

authority for its position.

Nor could it. The government's position with respect to the 5th Amendment is

*laughably* frivolous. *Of course* they want a guilty plea to their trick bag. *Of course*

they don't want to explain or elucidate on anything. Explanation and legal support

are contrary to their purposes.

Then in the future, rather than citing any legal authority, they would simply

wave Stilley's false confession in his face, and threaten further consequences. They

would say that "law of the case" requires Stilley to answer any and all questions, no

matter how repugnant to the 5th Amendment.

For all these reasons the Court should order a qualified US Probation Officer

of the OKND US Probation Office to prepare a PSR.

15

Respectfully submitted,


By: /s/ Oscar Stilley                    November 20, 2022
Oscar Stilley                            Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF system,
thereby serving all persons having ECF privileges and entitled to service in this
case. Stilley does not have access to Lindsey Springer's physical address, email,
and phone number, and thus cannot serve him.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                          DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION FOR DISCOVERY AND EVIDENCE, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.     Stilley in written conversation with opposing counsel has asked for evidence.

2.     The government has turned over their witness and exhibit list, four exhibits to be admitted into evidence by the government, and a letter from Ryan Forsyth, Stilley's Supervising Probation Officer, to the Kory McClintock, a supervisory employee of Northern District of Oklahoma (OKND) US Probation.

3.     The government identified Ryan Forsyth as their only witness, in an email November 8, 2022, stating that if this changed Stilley would be notified.

4.     Ryan Forsyth has repeatedly denied that he even has the authority to decide whether or not to seek revocation proceedings against Stilley.

5.     Indeed Mr. Forsyth, in a letter to Kory McClintock dated 8-18-2022, asked her to ask "…whether Court action is appropriate at this time, or if Mr. Stilley should be granted 30 days to file a motion requesting to remove the electronic monitoring condition."

6.     No US Probation officer with authority to make such a decision has ever told Stilley that they actually decided to pursue revocation proceedings.

7.     The constitution guarantees Stilley the right to know the nature and cause of

the accusation, to confront his accuser(s), to have compulsory process for the

production of witnesses in his favor, etc.

8.     Stilley does not at the present time know the name of his accuser, or the

names of persons with information about this case.  Without this information,

Stilley cannot reasonably and effectively exercise his right to compulsory process.

9.      On information and belief, Stephen P. Friot is actually Stilley's accuser,

within the meaning of the law.

10.     Stilley seeks the following discovery and evidence.

1) All memos or other writings reasonably falling within the ambit of FRCrP
   26.2, concerning potential testimony at any revocation proceeding, or the
   hearsay sources of same.  Stilley requests this early, not after the witness
   has testified.
2) Any communications between the Court and the personnel of US
   Probation, (any office) concerning Stilley.
3) All evidence against Stilley. This should include but not be limited to
   copies of all memos  from any employee of US Probation, to the Court,
   counsel, or another employee of US Probation, of and concerning Oscar
   Stilley and/or this prosecution.
4) The source code for the computer monitoring software (IPPC Technologies,
   AKA NCPTC).  I request the complete source code for the software that
   you use on your machines, as well as the code put on the devices of
   supervisees.  I want to find out why it hogs resources and gives users the
   "blue screen of death."  I furthermore want to determine what this
   software can access and what it can't.
5) Documents showing the full contact information of Lindsey Kent Springer,
   plus any documentation evidencing threats or inducements of any kind,
   against him attempting to contact me or communicate with me.

11.     During the underlying criminal investigation, federal agents lied to Stilley

about whether or not he was under criminal investigation.

2

12.     Based upon those lies, Stilley talked to government agents, and later testified to a grand jury.

13.     Had Stilley known he was under criminal investigation, he would have moved to quash the summons, pleaded the 5th Amendment, etc.

14.     Government agents lied to Stilley and got away with it.  Government agents stole money from Lindsey Springer and got to keep it.  The government has denied Stilley any good faith reason to believe uncorroborated claims by government agents.

15.     To the extent not contrary to law or rule or Stilley's legal interests, Stilley incorporates all other motions and briefs filed on the same day as this pleading, as if set forth herein word for word.  Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.


### BRIEF IN SUPPORT OF MOTION

The Federal Rules of Criminal Procedure (FRCrP) require the government to provide the supervisee with "the evidence against the person."  See e.g. FRCrP 32.1 (b)(2(B).

Revocations of supervised release are construed as punishments for the original crime.  This was done because any other theory would render proceedings to revoke supervised release flagrantly unconstitutional.

3

Stilley was told pretrial that the evil he committed consisted of paying
Lindsey Springer for work done, out of client funds, at the directive of the clients.
The work was constitutionally protected work, assisting the clients with due
process, peaceful petition, and other constitutional rights.

At sentencing, Stilley was denounced as a thief, and sentenced on the theory
that he helped Springer steal money from Stilley's clients.

Since we're here for yet another round of punishment for the original crime,
Stilley needs to know which crime we're talking about.  All have fatal flaws.  The
government abandoned its pretrial theories, under the purported indictment,
because any conviction and punishment under said theories would be unlawful.

The theory of sentencing had not so much as a fig leaf pretense of compliance
with the 5th Amendment right to indictment.  The sentencing theory made a
mockery out of just about everything the constitution says about the rights of a
criminal defendant.

Stilley requests all the evidence listed above.  It is Stilley's prerogative to
decide what persons with knowledge he should call as a witness.  It is his
prerogative to make those decisions ***after*** getting all the government's evidence and
carefully reviewing it.


WHEREFORE, Stilley respectfully requests an order commanding the government
to turn over all evidence, records, computer files, and information sought herein;

and for such other and further relief as may be appropriate whether or not

specifically requested.


Respectfully submitted,


By: /s/ Oscar Stilley                      November 20, 2022
Oscar Stilley                              Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF system,
thereby serving all persons having ECF privileges and entitled to service in this
case.  Stilley does not have access to Lindsey Springer's physical address, email,
and phone number, and thus cannot serve him.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                           DEFENDANT

**DEFENDANT OSCAR STILLEY'S MOTION FOR A TRUE AND
CORRECT RECORD, WITH INCLUDED SUPPORTING BRIEF**

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      The record in this case is not true and correct.

2.      Stilley has in the past sought a correction of the record, prior to a ruling on a

motion.  See e.g. Dkt. 694 and 695.

3.      The aforementioned pleadings were a motion and brief seeking a reduction

under 18 USC 3582(c).

4.      Stilley made it clear that he wanted an accurate record first, then a ruling on

the motion, no matter the tenor of the ultimate ruling on the underlying motion.

5.      This Court did not issue the order sought by Stilley.

6.      The correction of records with known falsehoods is required by the oath of

office of Oklahoma attorneys, applicable attorney ethics rules, federal criminal

statutes, etc.

7.      If Stilley is truly guilty, an accurate record will not be harmful to the

government.

8.      To the extent not contrary to law or rule or Stilley's legal interests, Stilley

incorporates all other motions and briefs filed on the same day as this pleading, as

if set forth herein word for word.  Stilley reserves and claims the right to rely on any

other part of the official record in the captioned case, from the filing of the first

docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP)

10(a), in support of his claims and arguments.


WHEREFORE, Stilley respectfully requests an order directing the government to

cooperate with Stilley to correct known or reasonably ascertainable material

falsehoods in the official record or any part thereof; and for such other and further

relief as may be appropriate whether or not specifically requested.


### BRIEF IN SUPPORT OF MOTION

Consider the oath of office taken by the Oklahoma bar licensed attorneys

involved in this case.  Specifically, the Oath of Office of Oklahoma Attorneys reads

as follows:

> You do solemnly swear that you will support, protect and defend the
> Constitution of the United States, and the Constitution of the State of
> Oklahoma; **that you will do no falsehood or consent that any be done
> in court**, and ***if you know of any*** *you will give knowledge thereof to the
> judges of the court, or some one of them, that it may be reformed*; you
> will not wittingly, willingly or **knowingly promote**, sue, or procure to be
> sued, **any false or unlawful suit, or give aid or consent to the same**;
> you will delay no man for lucre or malice, but will act in the office of attorney
> in this court according to your best learning and discretion, with all good
> fidelity as well to the court as to your client, so help you God.
> (Emphases added)

It doesn't matter whether the falsity was intentional.  It doesn't matter if the source of the falsehood had the whitest heart and the emptiest head in the history of mankind.  Mere knowledge imposes legal duties.

All the lawyers on this case, save perhaps Mr. O'Reilly, made oath to give knowledge of falsehoods to one or more judges "that it may be reformed."  Therefore it hardly seems an extravagant proposition that a court would order lawyers to keep their oaths as attorneys at law.

What kind of falsehoods?  Pretrial, the government repeatedly stated their theory that Springer **earned** the money but didn't pay taxes on it.  After trial, they said that if the jury hadn't concluded that Springer & Stilley stole Turner's $250,000, they would have acquitted.

In other words, the government admits that Stilley **could not possibly be guilty** of the charges **of the indictment**.  That means when the District Court – any District Court – does the analysis required by the Sentencing Guidelines, the only lawful outcome is a judgment of acquittal.

Stilley has proven beyond reasonable doubt that his restitution includes $7,901 arising from a math error.  Dkt. 723, pg. 32-33  I have asked US Probation for an accurate statement of account, of any lawful restitution.  They won't do it.  This Court and the world at large should know why.

Not one line item of restitution is factually correct.  Every line item can be proven factually and/or legally false from the record itself.  The government would **love** to correct the math error, save for this fact.  Correction of that one factual error

3

is a slippery slope.  If the government does the honorably and legally required

thing, the government won't stop until it hits rock bottom, with every single

economic claim against Stilley reduced to rubble.  Correction of this falsehood will

lead to the loss of the government's fraudulent judgment and commitment order.

A district court abuses its discretion when it ***bases a decision*** on a clearly

erroneous finding of fact or an erroneous conclusion of law, or when its ruling

manifests a clear error of judgment. See *Kilgore v. Attorney Gen. of Co.*, 519 F.3d

1084, 1086 (10th Cir.2008).  Therefore, correction of the record is *indispensable*,

prior to any further proceedings.

Criminal law is in accord.  See 18 USC 1001, which provides in pertinent

part:

18 U.S. Code § 1001 - Statements or entries generally

**(a)**  Except as otherwise provided in this section, whoever, in any
matter within the jurisdiction of the executive, legislative, or judicial branch
of the Government of the United States, knowingly and willfully—
    **(1)** falsifies, conceals, or covers up by any trick, scheme, or
device a material fact;
    **(2)** makes any materially false, fictitious, or fraudulent
statement or representation; or
    **(3)** makes **or uses** any false writing or document knowing the
same to contain **any materially false, fictitious, or fraudulent
statement or entry**;
shall be fined under this title, imprisoned not more than 5 years or, if
the offense involves international or domestic terrorism (as defined in section
2331), imprisoned not more than 8 years, or both. If the matter relates to an
offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term
of imprisonment imposed under this section shall be not more than 8 years.
**(b)** Subsection (a) does not apply to a party to a judicial proceeding, or
that party's counsel, for statements, representations, writings or documents
submitted by such party or counsel to a judge or magistrate in that
proceeding.
(Emphases added)

The limitation as to judicial pleadings to a judge or magistrate is a good one.
Nobody should be in fear of criminal liability for a court filing, even a truly bad one.
That would chill 1st Amendment peaceful petition.

Nothing in that limitation exonerates anyone for knowingly ***enforcing*** a
judgment based on falsehoods.  When the holder of a judgment becomes aware of
falsity infecting the judgment, the mere *use* of that judgment is a federal felony.

Thus we can see that federal criminal law is in accord with the Oklahoma
oath of office of attorney's at law.  But this is not the only federal statute that
criminalizes the government's actions in this case.  See for example 18 U.S. Code § 4
- Misprision of felony.  This statute provides that:

> Whoever, ***having knowledge*** of the actual commission of a felony
> cognizable by a court of the United States, conceals and does not as soon as
> possible make known the same to some judge or other person in civil or
> military authority under the United States, shall be fined under this title or
> imprisoned not more than three years, or both.
> (Emphasis added)

Once again, criminal liability is independent of the whiteness of the heart or
the emptiness of the head.  Criminal liability is predicated upon knowledge.
Considering the places this case has been, and the personalities involved, this
imposes legal duties on a lot of persons, to include a lot of attorneys.

Joseph Sullivan, the former chief security officer of Uber, learned on or about
October 5, 2022 that the archaic and much maligned offense of "misprision of a
felony" still has some pretty nasty teeth.  He was convicted of the offense as well as
obstruction of justice, by a jury in the Northern District of California. The US

Department of Justice still prosecutes such charges.  They should give serious

consideration to obeying the laws they enforce against others.

This case directly or indirectly involves many lawyers, including supervisory

lawyers.  Consider the following ethical rules, all from the Oklahoma Rules of

Professional Conduct (ORPC).

> **Rule 3.1. Meritorious Claims and Contentions**
> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue **therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law**. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.
> (Emphasis added)

There is no arguable basis on law and fact for opposing a true and correct

record.

Rule 3.3 provides in pertinent part.  If the government wishes to add

additional, they should feel free.

> **Rule 3.3. Candor Toward The Tribunal**
> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or **fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer**;
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
> (3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(4) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client.
(b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.
(Emphasis added)

Prosecutors have special responsibilities.  Stilley will reproduce the rule and

then comment upon it.  Bear in mind that the lack of highlighting doesn't mean the

government has not violated that portion of the rule in this case.

**RULE 3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR**
The prosecutor in a criminal case shall:
(a) **refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause**;
(b) **make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel**;
(c) *not seek to obtain from an unrepresented accused a waiver of important pretrial rights*, such as the right to a preliminary hearing;
(d) **make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor,** except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;
(e) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:
(1) the information sought is not protected from disclosure by any applicable privilege;
(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and
(3) there is no other feasible alternative to obtain the information;
(f) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused

and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule;

(g) The lawyer upon whom a subpoena is served shall be afforded a reasonable time to file a motion to quash compulsory process of his/her attendance. Whenever a subpoena is issued for a lawyer who then moves to quash it by invoking attorney/client privilege, the prosecutor may not press further in any proceeding for the subpoenaed lawyer's appearance as a witness until an adversary in camera hearing has resulted in a judicial ruling which resolves all the challenges advanced in the lawyer's motion to quash.

**(h) When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall within a reasonable time:**

**(1) disclose that evidence to an appropriate court and prosecutorial authority in the jurisdiction where the conviction occurred, and**

**(2) if the judgment of conviction was entered by a court in which the prosecutor exercises prosecutorial authority,**

**(i) unless a court authorizes delay, make reasonable efforts to disclose that evidence to the defendant's attorney or if the defendant is not represented by counsel to the defendant, and**

**(ii) if the defendant is not represented by counsel, move the court in which the defendant was convicted to appoint counsel to assist the defendant concerning the evidence, and**

**(iii) <u>request an appropriate authority to investigate whether the defendant was convicted of an offense that the defendant did not commit.</u>**

**(i) When a prosecutor learns of clear and convincing evidence establishing that a defendant was convicted in a court <u>in which the prosecutor exercises prosecutorial authority of an offense that the defendant did not commit, the prosecutor shall promptly notify the appropriate court and make reasonable efforts to notify the defendant's counsel and the defendant.</u>**

(j) A prosecutor's judgment, made in good faith, that the new evidence is not of such nature as to trigger the obligations of sections (h) and (i) of this rule, though subsequently determined to have been erroneous, does not constitute a violation of this rule.

(Emphases added)

The sum and substance of much of this rule is that a criminal defendant is

entitled to a true and correct record, even if it means the prosecutorial team has to

eat crow years after the initial jury trial proceedings. This is a continuing obligation. It doesn't go away until the government lawyer performs his ethical duties.

Jeff Gallant, the face of the government's legal team, is probably exclaiming words to the effect "Wait a minute, I didn't oppose Stilley's request for an initial appearance. In fact I agreed to it! Plus, I'm not the one doing these other things, either. I'm just caught in the middle, betwixt and between the belligerent parties."

Years ago, Scott County, Arkansas had a prosecutor nicknamed "Blue Jean." He got the tag because he routinely wore blue jeans to court. He was eccentric, but he had some good ideas.

Certain Arkansas state laws inhibited his discretion to dismiss DWI charges just because he thought they were bogus or unwarranted or otherwise in need of dismissal. He had a solution for that. When the judge called the case and told the prosecutor to call his first witness, Blue Jean would stand up and say "no witnesses." With no witnesses and no evidence, the judge had no choice but to dismiss the charges.

Supervisory lawyers have their own obligations. See

**Rule 5.1. Responsibilities of Partners, Managers, and Supervisory Lawyers**
(a) A partner in a law firm, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm **has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct.**
(b) A lawyer having direct supervisory authority over another lawyer **shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct.**

9

(c) *A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct if*:
(1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved; or
(2**) the lawyer is a partner or has comparable managerial authority in the law firm in which the other lawyer practices, or has direct supervisory authority over the other lawyer, and knows of the conduct <u>at a time when its consequences can be avoided or mitigated</u> but fails to take reasonable remedial action.**
(Emphases added)

Once again, this rule calls for some finesse.  Mr. Gallant probably doesn't want a quarrel with Clinton J. Johnson.  Mr. Gallant depends on his goodwill of Mr. Johnson for continued employment, raises, promotions, etc.

Mr. Gallant probably isn't mad at Oscar either.  Why should he be mad at Oscar?  Why should he tie one on with Oscar?  What does he have to gain from that?  *Nothing!  Nothing at all!!!*

The solution is to agree to a true and correct record.  Then let's follow the truth where it leads us.  As John Lennon said in a song by the same title, "gimme some truth."  That's how Stilley feels about the situation right now.  *Gimme some truth!!!*

More authorities could be cited, but additional effort is hardly necessary.  The authorities cited decisively demonstrate that this Court has a duty to cause the record to conform to the truth.


Respectfully submitted,

By: /s/ Oscar Stilley                    November 20, 2022
Oscar Stilley                            Date
10600 N Highway 59

Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF system,
thereby serving all persons having ECF privileges and entitled to service in this
case.  Stilley does not have access to Lindsey Springer's physical address, email,
and phone number, and thus cannot serve him.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                      Case No. 4:09-CR-043 SPF

OSCAR AMOS STILLEY                                                DEFENDANT

### DEFENDANT OSCAR STILLEY'S MOTION TO CLARIFY AND MODIFY CONDITIONS OF SUPERVISED RELEASE, WITH INCLUDED SUPPORTING BRIEF

Comes now Defendant Oscar Stilley (Stilley) and for his motion states:

1.      This Court imposed upon Stilley the standard conditions of supervision, and also certain special conditions.  Dkt. 338.

2.      All the special conditions should be stricken.

3.      Stilley asks that the standard conditions be clarified so as make it clear that Stilley retains a valid right to plead the 5th Amendment to any oral or written question propounded by US Probation, whether on a form, in casual conversation, or in some other meeting.

4.      The special conditions are all "occupational restrictions" within the meaning of the law.

5.      Stilley should not be required to release any financial information except by the Release of Financial Information form, which he has already provided.

6.      The entirety of the special conditions amount to an extortion racket.

7.      Specifically, the special conditions are made impossible of performance. When the hapless supervisee can't comply with impossible conditions, government

personnel can then demand other concessions including but not limited to waivers of constitutional rights.

8.      For example, Stilley is forbidden to use encryption.

9.      Limiting language as to encryption are all laughable frauds.  Encryption and passwords *by definition* limit access to data.  Yet Stilley is subjected to a blanket prohibition on the use of "encryption, cryptography, stenography, compression, password protected files *or other methods* that limit access to, or change the appearance of, data and/or images." (Emphasis added)

10.     Impossible conditions are antithetical to honest government, but valuable for the purpose of extorting promises not to exercise fundamental rights such as the 1st Amendment rights of speech, the press, peaceful petition, and religion.

11.     On 11-17-2022, Jeff Gallant, local counsel for the government, sent documents to Stilley via an encryption service called Proofpoint Encryption.

12.     This is a clear, indeed laughable violation of the special conditions, but if Stilley didn't sign up and agree to the terms and conditions and use encryption, he would be denied the government's exhibit list, and copies of the exhibits.

13.     The special conditions arrogate to this Court and the government the power to monitor and record all use of Stilley's computer, cell phone, and other devices that access the internet.  This would include private texts, phone calls, and video calls to any private attorney, including but not limited to any attorney who might provide 6th Amendment counsel to Stilley, or represent Stilley, or otherwise engage in attorney-client privileged communications.

2

14.     The special conditions amount to a demand to permit the government to surreptitiously make copies of all attorney-client privileged files and communications whatsoever, made and stored during the time that Stilley was a bar licensed attorney.

15.     The special conditions specifically give the power to restrict Stilley's use of email, internet connections, or an internet connection service.  See paragraph 9 of the special conditions.

16.     This special condition apparently includes the power to prohibit most or all of Stilley's use of the internet or things that access the internet, with no guidance or practical limits.

17.     The demand to turn over all screen or usernames, passwords, etc., used by Stilley amounts to a demand that Stilley accede to 24/7 monitoring of his computer work.

18.     For example, the government could install a keystroke logger, so as to allow Stilley's adversaries to record, watch, analyze, and review all Stilley's writings, including any efforts to secure justice against the fraudulent judgment and commitment order in which these onerous conditions were included.

19.     The US government hires some of the best computer hackers in the world.

20.     A computer technician of modest skills, armed with the special conditions, could get copies of every file on Stilley's computer or any other computer that Stilley uses.

21.     US Probation has demanded the installation of computer monitoring software by IPPC Technologies, AKA NCPTC.

22.     NCPTC software is a known resource hog, up to and including the blue screen of death.  IPPC technologies refuses to fix problems in a timely fashion.

23.     Other persons have been sent to prison for trying to make the computer work in spite of the wretched incompetence of IPPC Technologies.

24.     Nobody would pay for NCPTC software, absent coercion or compulsion.

25.     The purveyors of this software have virtually no incentive to competence, since the software doesn't have to satisfy anyone except the US Probation officers who monitor the activities of other people.

26.     Stilley has requested the source code of NCPTC software for the purposes of analysis, but has been denied.

27.     Stilley has made inquiry of Ryan Forsyth, his Probation Officer, about the search terms to be used against Stilley.

28.     Mr. Forsyth couldn't identify a solitary search term for which the government had a legitimate need to monitor.

29.     Nobody knows or can know of any legitimate search terms, because Stilley has committed no crime, and the government's theories are utterly inconsistent and fraudulent.

30.     The District Court made none of the findings required by US Sentencing Guidelines (USSG) §5F1.5.

31.     Aric Holloway is a US Probation Officer of the OKWD.

4

32.     Aric Holloway drafted the Violation Report, asked for 3 months in prison, with 33 months supervision afterward, with the same special conditions to be re-imposed for the additional 33 months.

33.     US Sentencing Guidelines (USSG) 5F1.5 requires certain findings prior to the imposition of occupational restrictions.

34.     The special computer restrictions imposed upon Stilley are without controversy "occupational restrictions" within the meaning of the law.

35.     Stilley asked Holloway to draft proposed findings for the District Court, as to such special conditions.

36.     Holloway refused, precisely because he knew that such findings would mandate the admission that Stilley is innocent, and cannot lawfully be subjected to any supervised release whatsoever.

37.     Holloway was hostile, threatening to hang up if Stilley continued to ask questions that he construed as "legal" or otherwise improper.  Actually, Holloway knew he couldn't punish Stilley if he was honest with Stilley and the Court. Therefore he refused to answer questions when a response would poke holes in the government's fraudulent prosecution of Stilley.

38.     Holloway already knows that the pretrial theory of criminal liability is diametrically opposed to the theory at sentencing.

39.     No matter which theory Holloway picks, it will have fatal flaws.  The first theory was abandoned, the last theory makes a complete mockery of the right to grand jury indictment.

5

40.     The special conditions amount to a continuation of the District Court's systematic attacks on Stilley's right of due process and peaceful petition.

41.     During trial, Mr. O'Reilly told Stilley he was currently under another criminal investigation. Stilley hasn't learned the source or current status of that investigation, but has never received notice that it has been discontinued.

42.     On information and belief, the intent and current plan of action is to make a mirror image of Stilley's hard drive including deleted files, give it to a team of experts to dissect for technical violations, and provide the files and information to the team currently conducting a criminal investigation of Stilley.

43.     Stilley is prohibited from "altering or destroying records of computer use…" Special condition 3.5.

44.     Evidence of deleting draft copies of files is enough to constitute a violation of the special conditions.  Plus, modern computers keep a vast amount of archival data.  Every time Stilley deletes a temporary file in Word, the program says it will keep a copy temporarily.

45.     The special conditions give the government power to secure access sufficient to plant incriminating files on Stilley's computer hard drive.

46.     The special conditions demand tax returns "for any tax years since 1987 for which the defendant has not filed a tax return."  Special condition 4.

47.     Essentially, this condition demands, at first, admissions of omissions of acts generally deemed criminal by the federal government.

6

48.     Thereupon this condition demands testimony, within the meaning of the 5th Amendment, despite full knowledge that Stilley doesn't have sufficient information to provide an accurate rendition of the testimony sought.

49.     Taken together with the other conditions, the government will have a treasure trove of information, with which to attack Stilley under a plethora of federal criminal statutes.

50.     The District Court has enormous incentive accomplish just such a result, precisely because the original judgment and commitment order is flagrantly illegal.

51.     Trick-bag special conditions are the perfect means to get more information than Stilley can process, and then use that information to turn bogus convictions into convictions that will survive appeal, even if Stilley were allowed an appeal.

52.     Additionally, the judgment and commitment in this case (Dkt. 338) proves that Stilley's good faith belief in the representations of his clients and of Lindsey Springer, nevertheless was not enough to avoid criminal liability.

53.     Demanding complex judgments and factual and legal claims spanning 35 years, all of which can be immediately turned over to prosecutorial authorities in the midst of a current criminal investigation, is utterly antithetical to the plain language and intent of the 5th Amendment.

54.     Demanding *de facto* power to copy and search all of Stilley's files going back literally decades, for a criminal investigation no less, is a breathtaking violation of the 4th Amendment.

7

55.     Stilley has attempted to get a written commitment that the government does not claim any information or performance under special condition 5, but without success.

56.     Stilley's special conditions are overly broad, unsupported by the facts, violate his Fourth Amendment privacy rights, affect his employment prospects and make it more difficult for him to pay his monthly mandatory restitution.  These special conditions violate too many constitutional protections and statutory and rule-based rights for Stilley to effectively brief them in the limited time available to him.

57.     To the extent not contrary to law or rule or Stilley's legal interests, Stilley incorporates all other motions and briefs filed on the same day as this pleading, as if set forth herein word for word.  Stilley reserves and claims the right to rely on any other part of the official record in the captioned case, from the filing of the first docket item forward, as defined by Federal Rule of Appellate Procedure (FRAP) 10(a), in support of his claims and arguments.


WHEREFORE, Stilley respectfully requests an order striking the special conditions of Stilley's supervised release; declaring that Stilley has a right to plead the 5th Amendment without fear of separate criminal sanctions for the exercise of a constitutional right; and for such other and further relief as may be appropriate whether or not specifically requested.


**BRIEF IN SUPPORT OF MOTION**

8

Stilley has a legal right under the 1st Amendment to peacefully petition for clarification or modifications of special conditions.  Here's what you'll find under FRCrP 32.1:

> *Note to Subdivision* (b). Subdivision (b) concerns proceedings on modification of probation (as provided for in 18 U.S.C. §3651). The probationer **should have the right to apply to the sentencing court for a <u>clarification</u> or <u>change</u> of conditions**. American Bar Association, Standards Relating to Probation §3.1(c) (Approved Draft, 1970). This avenue is important for two reasons: (1) the probationer should be able to obtain resolution of a dispute over an ambiguous term or the meaning of a condition ***without first having to violate it***; and (2) in cases of neglect, overwork, or simply unreasonableness on the part of the probation officer, **the probationer should have recourse to the sentencing court when a condition needs <u>clarification or modification</u>.**
> (Emphases added)

The special conditions imposed on Stilley are occupational restrictions within the meaning of the law.  Stilley has a BSBA in Administrative Management from the University of Arkansas.  It would be virtually impossible for Stilley to maintain employment consistent with his education, so long as the special conditions remain outstanding.

*United States v. Sunday*, 447 F. App'x 885, 889-90 (10th Cir. 2012) provides most of the authority needed in this case.  Excerpts are reproduced below:

> Mr. Sunday objects to the occupational restriction which prohibited him from using or possessing a computer not authorized by his probation officer, and imposing monitoring and surveillance conditions on any computer use. He argues these restrictions were imposed without the court making the findings required by USSG §5F1.5 for occupational restrictions. Mr. Sunday also argues they are overly broad, unsupported by the facts, violate his Fourth Amendment privacy rights, affect his employment prospects and make it more difficult for him to pay his monthly mandatory restitution.
> USSG §5F1.5 provides as follows:
> **Occupational Restrictions**

9

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or **limiting the terms on which the defendant may do so**, only if it determines that:

(1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

(2) imposition of such a restriction is reasonably necessary to protect the public because **there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.**

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

**The government concedes that the district court failed to make the findings required by USSG §5F1.5, and <u>thus agrees this failure was a plain error,</u>** for purposes of our plain error review.**2** We now consider whether this plain error, as well as the substance of the actual restriction on computer use and the monitoring conditions, affected Mr. Sunday's substantial rights.

We begin by noting that we have already cautioned that the broad prohibitions on computer use or possession can interfere with such routine activities as "using a computer at a library to do any research, get a weather forecast, or read a newspaper online." <u>United States v. White</u>, 244 F.3d 1199, 1206 (10th Cir. 2001). Indeed, "'although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones.'" <u>United States v. Sofsky</u>, 287 F.3d 122, 126 (2d Cir. 2002) (quoting <u>United States v. Peterson</u>, 248 F.3d 79, 83 (2d Cir. 2001)). Thus, we must ensure that the restriction is "for the minimum time and to the minimum extent necessary to protect the public," and there is a "reasonably direct relationship" between Mr. Sunday's occupation and the offense of conviction.

In this case, Mr. Sunday is a computer repairman which, obviously, requires direct contact with various computers. And while he used his computer, in part, to commit his offense of conviction, the computer was not the central or solitary means he used. He conducted his fraudulent bank transactions in a variety of ways, using the computer for some of them, undoubtedly, but presumably not all.

Furthermore, if Mr. Sunday is to resume working and becoming a productive member of society, he would most likely seek employment in the computer field. The restriction as written would seriously impair his ability to do so. <u>See United States v. Holm</u>, 326 F.3d 872, 878 (7th Cir. 2003) ("Because [defendant] is most likely to find gainful employment in the

computer field upon his release, the conditions as currently written could affect his future productivity and jeopardize his rehabilitation in violation of the command of § 3583(d)."). And, inhibiting Mr. Sunday's work prospects will make it more difficult for him to pay his mandatory monthly restitution.

We note that the government downplays the imposition caused by this restriction, arguing that Mr. Sunday simply has to ask permission from his probation officer. While we realize that such "conditional" restrictions are viewed more favorably by most courts than unconditional restrictions, this restriction could be quite burdensome to Mr. Sunday, were he to return to repairing computers.

**We therefore conclude that the computer restriction, as written, affected Mr. Sunday's substantial rights.** See United States v. Mayo, 642 F.3d 628 (8th Cir. 2011) (computer use restriction was plain error affecting substantial rights); United States v. Barsumyan, 517 F.3d 1154, 1162 (9th Cir. 2008) (same); United States v. Pruden, 398 F.3d 241, 251 (3rd Cir. 2005) ( "A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration.").

We also conclude that **imposition of an erroneous restriction "seriously affect[ed] the fairness . . . of [the] judicial proceedings."** United States v. Olano, 507 U.S. 725, 736, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). See Pruden, 398 F.3d at 251 ( '[I]mposing a sentence not authorized by law seriously affects the fairness, integrity and reputation of the proceedings.").

In sum, given the required scrutiny which we give to occupational restrictions, we conclude we must vacate the occupational restriction relating to computer use and monitoring and remand for further consideration, including making the findings required before imposition of any occupational restriction. See Mike, 632 F.3d at 698 (noting that where court failed to make §5F1.5 findings before imposing occupational restrictions, we vacated and remanded outright).
(Emphases added)

If the required findings were made, they should be in the Sentencing

Transcript, in or near pages 454 through 459.  The required findings were not

made. See Timeline pg. 55, and scroll through the relevant portions of the

transcript.

If the court made the findings, whether then or now, it would be duty bound

to grant Stilley a judgment of acquittal, ***as to everything***.  The government would

11

have to let Stilley have his passport back, and walk out of the courtroom a free and totally vindicated man.

How can we know this?  Mr. O'Reilly first claimed Springer **earned** money, and failed to pay taxes on it.  If Springer earned the money, Stilley had a **legal and ethical duty** to pay the money over, out of his IOLTA (Interest on Lawyer's Trust Account).  That's the sum and substance of Stilley's motion for judgment as a matter of law and new trial.  Dkt. 261 and 263.  Judge Friot struck those pleadings because an honest ruling on them would have completely exonerated Stilley.

Under O'Reilly's pretrial theories, Stilley's "offense" was paying the *just debts* of clients out of *client trust funds*, at the express directive of his clients.  That isn't "unlawful conduct" within the meaning of USSG §5F1.5(a)(2).  Conduct cannot be "unlawful" and a "legal and ethical duty" at the same time.

The government manufactured 4 different theories of criminal liability.  Dkt. 701, pg. 23-25.  The government cannot **lawfully** go beyond the indictment.  See *Bousley v. United States*, 523 U.S. 614, 624, 118 S. Ct. 1604, 1612 (1998), where the Court said:

> In this case, the Government maintains that petitioner must demonstrate that he is **actually innocent** of both "using" and "carrying" a firearm in violation of § 924(c)(1). But petitioner's indictment charged him only with "using" firearms in violation of § 924(c)(1). App. 5-6. And there is no record evidence that the Government elected not to charge petitioner with "carrying" a firearm in exchange for his plea of guilty. Accordingly, petitioner need demonstrate no more than that he did not "use" a firearm as that term is defined in *Bailey*.
> (Emphasis added)

The government must prove that Stilley is guilty of the charges of ***the***

***indictment***. Pretrial, the government repeatedly stated their theory that Springer

***earned*** the money but didn't pay taxes on it.  After trial, they said that if the jury

hadn't concluded that Springer & Stilley stole Turner's $250,000, they would have

acquitted.

In other words, the government admits that Stilley ***could not possibly be***

***guilty*** of the charges **of the indictment**.  That means when the District Court –

any District Court – does the analysis required by the Sentencing Guidelines

mentioned above, the only lawful outcome is a judgment of acquittal.

A district court abuses its discretion when it ***bases a decision*** on a clearly

erroneous finding of fact or an erroneous conclusion of law, or when its ruling

manifests a clear error of judgment. See *Kilgore v. Attorney Gen. of Co.*, 519 F.3d

1084, 1086 (10th Cir.2008).

Let's make this easy on ourselves.  Stilley has already served two full 5 year

prison sentences, plus over 2 years additional custody.  Therefore, the loss of ***any***

count of conviction entitles Stilley to restoration of his full liberty, without any

"supervised release."  *United States v. Haymond*, 139 S. Ct. 2369, 2379, 204 L. Ed.

2d 897, 906-907 (2019).

Prison time due to revocation proceedings is punishment ***for the original***

***crime***.  See *United States v. Haymond*, 869 F.3d 1153, 1165 (10th Cir. 2017) for an

explanation:

> Second, 18 U.S.C. § 3583(k) is unconstitutional because it circumvents
> the protections of the Fifth and Sixth Amendments by expressly imposing an

13

increased punishment for specific subsequent conduct. In <u>Johnson v. United States</u> , <u>529 U.S. 694</u>, <u>120 S.Ct. 1795</u>, <u>146 L.Ed.2d 727</u> (2000), the Supreme Court made clear that, in order to avoid serious constitutional concerns, **revocation of supervised release must be viewed as punishment for the original crime of conviction**, not as punishment for the violation of the conditions of supervised release. <u>Johnson</u> , <u>529 U.S. at 699–700</u>, <u>120 S.Ct. 1795</u> ; <u>id.</u> at 700, <u>120 S.Ct. 1795</u> (noting "the serious constitutional questions that would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release."); <u>id.</u> at 701, <u>120 S.Ct. 1795</u> ("[P]ostrevocation penalties relate to the original offense."); <u>Cordova</u> , <u>461 F.3d at 1186</u> ("It is well-settled that supervised release is 'part of the penalty for the initial offense.' " (quoting <u>Johnson</u> , <u>529 U.S. at 700</u>, <u>120 S.Ct. 1795</u> )). Specifically, **these concerns include the fact that "the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.**" <u>Johnson</u> , <u>529 U.S. at 700</u>, <u>120 S.Ct. 1795</u> (citing <u>18 U.S.C. § 3583(e)(3)</u> ). Further, "[w]here the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense." <u>Id.</u> "Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties." <u>Id.</u> (collecting cases). "We therefore attribute postrevocation penalties to the original conviction." <u>Id.</u>
(Emphases added)

These revocation proceedings have been a litany of serious problems.  None of those problems are more severe than the fact that this Court has no valid original conviction upon which to hang its hat.  There are multiple theories of criminal liability, all of which have fatal flaws.  The Court had a clear legal duty to make specific findings but didn't make them.  The government wants the same conditions reimposed, but refuses to put anything on paper about the findings.  Of course – anything the government might say would be damning to its case.


Respectfully submitted,

By: /s/ Oscar Stilley                     November 20, 2022
Oscar Stilley                             Date
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com


## CERTIFICATE OF SERVICE

Defendant Stilley hereby certifies that on the date stated above he electronically
filed the foregoing with the Clerk of the Court by using the CM/ECF system,
thereby serving all persons having ECF privileges and entitled to service in this
case.  Stilley does not have access to Lindsey Springer's physical address, email,
and phone number, and thus cannot serve him.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

### Northern District of Oklahoma

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| | ) | (For **Revocation** of Probation or Supervised Release) |
| **v.** | ) | |
| | ) | |
| OSCAR AMOS STILLEY | ) | Case Number:   09-CR-043-002-SPF |
| | ) | |
| | ) | USM Number:   10579-062 |
| | ) | |

Oscar Amos Stilley, Pro Se
Defendants Attorney

## THE DEFENDANT:

☐ admitted guilt to violation of condition (s) _____ of the term of supervision.

☒ was found in violation of condition(s) Special Conditions after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation  Ended |
|---|---|---|
| Special Condition 3 | Failed to comply with Special Computer Restrictions Conditions | 08/10/2022 |
| Special Condition 9 | Failed to provide email account password or login and password information regarding Pay Pal account. | 11/21/2022 |

     The defendant is sentenced as provided in pages 2 through 8 of this Judgment.  The sentence is imposed pursuant to the Sentencing Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the defendant must notify the Court and United States attorney of material changes in economic circumstances.

November 21, 2022
Date of Imposition of Judgment

_SP Friot_ (signature)
Signature of Judge

Stephen P. Friot, United States District Judge
Name and Title of Judge

November 23, 2022
Date

AO 245D    (Rev. 10/17) Judgment in Criminal Case for Revocations
Sheet 2 — Imprisonment

DEFENDANT:          Oscar Amos Stilley Generation
CASE NUMBER:        4:09CR00043-2

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a
total term of:      Three months.

☐   The Court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this Judgment as follows:

Defendant delivered on _____ to _____

at _____ ,with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245D     (Rev. 10/17) Judgment in a Criminal Case for Revocations
            Sheet 3 — Supervised Release

DEFENDANT:           OSCAR AMOS STILLEY
CASE NUMBER:         09-CR-043-002-SPF

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :      Thirty-three months.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from
     imprisonment and at least two periodic drug tests thereafter, as determined by the court.
          ☐   The above drug testing condition is suspended, based on the court's determination that you
              pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐   You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of
         restitution. *(check if applicable)*
5.   ☐   You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as
         directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you
         reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐   You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached
page.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 3A — Supervised Release

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:     09-CR-043-002-SPF

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervision, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when to report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by the probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
          Sheet 3B — Supervised Release

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

## SPECIAL CONDITIONS OF SUPERVISION

1.   The defendant shall submit his person, residence, office or vehicle to a search, conducted by the United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

2.   The defendant shall abide by the "Special Financial Conditions" previously adopted by the Court, as follows:

     a.   The defendant shall maintain a checking account in the defendant's name and deposit into this account all income, monetary gains or other pecuniary proceeds, and make use of this account for payment of all personal expenses.  All other bank accounts must be disclosed to the probation officer.
     b.   The defendant shall not make application for any loan or enter into any credit arrangement, without first consulting with the probation officer.
     c.   The defendant shall disclose all assets and liabilities to the probation officer.  The defendant shall not transfer, sell, give-away, or otherwise convey any asset, without first consulting with the probation officer.
     d.   If the defendant owns or maintains interest in any profit or nonprofit entity, you shall, upon request, surrender and/or make available for review, any and all documents and records of said profit or nonprofit entity to the probation officer.
     e.   The defendant shall, upon request of the probation officer, complete a personal financial affidavit and         authorize release of any and all financial information, to include income and tax return records, by execution of a Release of Financial Information form, or by any other appropriate means.

3.   The defendant shall abide by the "Special Computer Restriction Conditions" previously adopted by the Court,         as follows:

     a.   The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the probation officer; and shall immediately advise the probation officer of any changes in his or her e-mail accounts, connections, devices, or passwords.

     b.   The probation officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote monitoring software.  Unless waived by the probation officer, the cost of remote monitoring software shall be paid by the defendant.

     c.   The defendant shall not access any on-line service using an alias, or access  any on-line service using the Internet account, name, or designation of another person or entity; and report immediately to the  probation officer access to any Internet site containing prohibited material.

     d.   The defendant is prohibited from using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of, data and/or images.

     e.   The defendant is prohibited from altering or destroying records of computer use, including the use of software or functions designed to alter, clean or "wipe" computer media, block monitoring software, or restore a computer to a previous state.

     f.   If instructed, the defendant shall provide all personal and business telephone  records and credit card statements to the probation officer.

4.   While on supervision, the defendant shall cooperate with the IRS in preparing and filing true and correct income tax returns for any tax years since 1987 for which the defendant has not filed a tax return; cooperate with the IRS in civil proceedings to determine accurately his tax liabilities for the same years; establish a payment schedule with the IRS and pay all taxes, interest, and penalties owed in connection with his tax debt according to the payment schedule set by the IRS.

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
            Sheet 3B — Supervised Release

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:        09-CR-043-002-SPF

5.    The defendant shall not engage in any activity that would constitute the unauthorized or unlicensed practice of law, nor provide representation or services of any kind, advice, suggestions, or recommendations, whether paid or not, to any person or entity, public or private, other than immediate family members, with respect to any matter relating to federal or state taxation. The defendant will maintain no website that refers to any matter relating to federal or state taxation. The defendant will post no material of any kind on any website that refers to any matter relating to federal or state taxation.  The defendant will not file, without the expressed written permission of the Probation Office, any civil action relating to federal income tax.

6.    The defendant shall not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transactions with respect to any real property, securities or negotiable instruments.  The defendant will not engage in telemarketing activities, to include any telephone sales or other such business, campaign, venture, or transaction.  The defendant shall maintain employment.  All employment must be approved in advance by the Probation Officer.  The defendant shall abide by electronic monitoring, curfew requirements, and travel restrictions.

7.    If instructed by the Probation Officer, the defendant shall provide originals or copies of all personal and business telephone phone records and all credit card, checking account and PayPal statements to the U.S. Probation Officer.

8.    The defendant shall report to the Probation Officer the particulars, as specified by the Probation Officer, of all transactions consummated with a check cashing service. These reports shall be made within 10 calendar days after completion of any such transaction. The defendant shall refrain from transacting business with any check cashing service if so directed by the Probation Officer.

9.    The defendant shall disclose all email accounts, Pay Pal accounts, internet connections and communication devises, to include all screen names and passwords.  Your use of email, internet connections, or an internet connection service will be restricted and/or monitored by monitoring software and otherwise, with the costs of remote computer monitoring to be paid by the defendant.  The defendant will be prohibited from accessing any on-line service using an alias or the internet account, name or designation or another person or entity.  The defendant will be prohibited from altering or using any form of encryption or other methods that limit access to, or change, the appearance of data or images.  The defendant will be prohibited from altering or destroying records of computer use.

## U.S. Probation Officer Use Only

A U.S Probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this Judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions,* available at: www.uscourts.gov.

Defendant's Signature _____         Date _____

AO 245D    (Rev. 10/17) Judgment in a Criminal Case for Revocations
        Sheet 4 — Criminal Monetary Penalties

DEFENDANT:          OSCAR AMOS STILLEY
CASE NUMBER:       09-CR-043-002-SPF

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the Schedule of Payments set forth on Sheet 8.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | | | | $815,874.93 |

☐    The determination of restitution is deferred until _____.

      An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐    The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution | Priority or Percentage |
|---|---|---|---|
| As entered in the Judgment imposed April 23, 2010 | | | |
| TOTALS | $ _____ | $ 815,874,93 | |

☐    Restitution ordered pursuant to Plea Agreement $ _____

☒    The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the Judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐    The Court determined that the defendant does not have the ability to pay interest and it is ordered that:

      ☐    the interest requirement is waived for the    ☐  fine    ☐  restitution.

      ☐    the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245D   (Rev. 10/17) Judgment in a Criminal Case for Revocations
Sheet 5 — Schedule of Payments

DEFENDANT:        OSCAR AMOS STILLEY
CASE NUMBER:      09-CR-043-002-SPF

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☒   Lump sum payment of $ <u>815,874,93</u>   due immediately, balance due

    ☐   not later than _____ , or

    ☒   in accordance with   ☐  C,   ☐  D,   ☐  E, or   ☒  F below; or

**B**  ☐   Payment to begin immediately (may be combined with   ☐  C,   ☐  D, or   ☐  F below); or

**C**  ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this Judgment; or

**D**  ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐   Payment during the term of supervised release will commence within _____ , (e.g. 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay.

**F**  ☒   Special instructions regarding the payment of criminal monetary penalties:

    Any monetary payment is due in full immediately, but payable on a schedule to be determined pursuant to the policy provision of the Federal Bureau of Prisons' Inmate Financial Responsibility Program if the defendant voluntarily participates in this program. If a monetary balance remains, payment is to commence no later than 60 days following release from imprisonment to a term of supervised release in equal monthly payments of $50 or 10% of net income (take home pay), whichever is greater, over the duration of the term of supervised release and thereafter as prescribed by law for as long as some debt remains. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of the defendant discovered before or after the date of this Judgment.

Unless the Court has expressly ordered otherwise, if this Judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the Clerk of the Court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessments, (8) penalties, and (9) costs, including cost of prosecution and court costs.



**FILED**

DEC 08 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE US DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                                                PLAINTIFF

V.                          CASE NO. 4:09-CR-43 SPF

OSCAR STILLEY                                                DEFENDANT

### NOTICE OF CHANGE OF ADDRESS

      Defendant Oscar Stilley (Stilley) hereby gives notice that he is incarcerated at the address set

forth below.  Sentence was 90 days and he plans to request a stay.  Stilley requests that for the time

being pleadings and papers be mailed to him at the address below, in addition to service via CM/ECF.

Stilley will give further notice when hard copy service to the jail is no longer required.


By:_____                    Monday, December 5, 2022
Oscar Stilley, Inmate # 1189798
David L. Moss Correctional Center
300 North Denver
Tulsa, OK 74103


### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

Stilley by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the
date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with
sufficient US postage attached, addressed to the Clerk of the Court for filing and service via CM/ECF.


✓ Mail        ___ No Cert Svc        ___ No Orig Sign

___ C/J        ___ C/MJ        ___ C/Ret'd        ___ No Env

___ No Cpys   ✓ No Env/Cpys   ___ O/J   ___ O/MJ

Oscar Stilley #1189798
David L. Moss Correctional Center
300 N. Denver
Tulsa, OK 74103

**RECEIVED**

DEC 0 8 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

TULSA OK 740

6 DEC 2022  PM 3  L

Postage Moned 12/6/22u

09-CR-43-SPF

US District Court Clerk
333 W. 4th Street
Suite 411
Tulsa, OK 74103



74103-388199



**F I L E D**

DEC **0 8** 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

IN THE US DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES                                                           PLAINTIFF

V.                          CASE NO. 4:09-CR-43

OSCAR STILLEY                                                          DEFENDANT

## NOTICE OF APPEAL

Oscar Stilley (Stilley) hereby gives notice that he appeals to the 10th Circuit Court of Appeals the

Judgment and Commitment order dated 11-23-2022. By this notice of appeal Stilley brings up to the

10th Circuit Court of Appeals all prior adverse orders, judgments, and rulings, to the extent authorized by

law and rule.

By: _____                           Monday, December 5, 2022

Oscar Stilley, Inmate # 1189798
David L. Moss Correctional Center
300 North Denver
Tulsa, OK 74103

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

Stilley by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the
date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with
sufficient US postage attached, addressed to the Clerk of the Court for filing and service via CM/ECF.

Mail ___ No Cert Svc ___ No Orig Sign
C/J ___ C/MJ ___ C/Ret'd ___ No Env
No Cpys ___ No Env/Cpys ___ O/J ___ O/MJ



# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **Case No. 09-cr-0043-2-SPF** |
| | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On November 20, 2022, the defendant, Oscar Amos Stilley, filed a motion to clarify and modify his conditions of supervised release, doc. no. 750, asserting, among other things, that his special conditions "amount to an extortion racket." *Id.* at 1.

At the revocation hearing which was held at the next day, the motion was briefly discussed, and the defendant was given 21 days to supplement the motion. The court directed that the supplement "include exact proposed modified conditions." Doc. no. 751 (minute sheet), at 2.  Defendant has failed to supplement the motion. The motion, as filed, does not show a good reason to modify the defendant's conditions of supervision. However, at the hearing held on November 21, 2022, the court stated its intent to consider modification of the defendant's conditions of supervision to conform to his situation.  In so stating, the court assumed that it would have the benefit of a proposed modified set of conditions from the defendant, which would educate the court as to just what the defendant thought would be appropriate to his situation. The court does not have the benefit of that input.  The motion, doc. no. 750, is accordingly **DENIED**.

This denial of defendant's motion is without prejudice to consideration of a properly-supported motion (including a statement of the exact proposed modified conditions) if defendant chooses to file one.

DATED this 13th day of December, 2022.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p178 (Stilley) .docx